Page 1 of 1

**Claim Coversheet Report**

| Find | Clear | Print | Save | New | Help |
|------|-------|-------|------|-----|------|

Admin Notes    Claim    Class    Correspond    Doc List    Medical    SPELL Letters

Claim Number 8220685    Claim Last Updated 08/27/2021    Printed On 11/4/2021

**Claimant Information**

Name MARK B BUNCH    SSN ____    Birth Date ____

Address ____    Salary Amount $ 8961.96    Mode M

Date of Hire 01/04/2016

Last Work Date 02/13/2018

Federal Tax None    State Tax No

Phone ____    Phys Demands Sedentary

JobDesc DIRECT SALES REP

Claim Status Closed    Status Reason Not TD Any Occ    Received Date 07/02/2018

Disability Date 02/14/2018    Close Date 11/10/2020    Reopen Date 06/11/2019

Sick Days Left ____    Max Ben Date 09/16/2030    RTW FT / PT ____

Ben Begin Date 08/15/2018    Apprv Thru Date 11/09/2020    Gross Ben $ ____

Diagnosis 1 Code/Desc H50.53    Vertical heterophoria

Diagnosis 2 Code/Desc H52.2    Astigmatism

**Policyholder Information**

Customer ID 04 - 444809    CHARTER COMMUNICATIONS, INC.

Subsidiary MRKT    MARKETING

Location 10000000    MARKETING

Symb GF    Numeral 01    Product LTD    Funding CON    Bank Y    Calcs Y    Cntr Eff 01/01/2017

Class 01    ALL EMPLOYEES WITH BASE ANNUAL EARNINGS OF $100,000 OR MORE

Waiting Period: New/Mode-Current/Mode 12    Month    12    Month    Days in WRKWK ____

Elimination Period: Days/Type 182    Injury    COLA: Mode/Duration ____ ____

Successive Period: Period/Mode 6    Month    SS Integration:Type/Value FSS ____

Partial Disability Type/Pct QRP+    10.00    Survivor Ben Months/Wait Period 3    180

Non-Verifiable Symptoms Limit 24    Own Occupation Definition Limit 24    M/N Limit 24

Benefit % ____    Max Benefit $ ____    Min Benefit $ ____    Employer Contr % ____    Subro Ind N

**Selected Benefits**

| Symbol | Numeral | Product Type | Class | Eligibility Date | |
|--------|---------|--------------|-------|------------------|--|
| GF | 01 | LTD | 01 | 01/04/2017 | |

Additional Information:

EXHIBIT

3, part 1

**Lincoln/Bunch 0049**

---

**Note Report**

| Report | Clear | Print | Help | |
|--------|-------|-------|------|---|

AS Accom  AS Event  Add Note  Appeal  Claim  Coord Claim Note  Correspond  Doc List  Employee  Leave  Life Claim  Lve Addtl Info

Lve Correspondence  Lve Program  Lve Work Sched  Medical  Medical History  Note  SPELL Letters  Scheduled Pmt  Task Print  Task Rpt

Tasks

---

**Claim**

\* **Claim/Event/Leave Number** `8220685`    **Accommodation Number** ` `

**Note type:** ` `

**Primary Sort Order**
- Note Type
- Note Number
- ● Note Date/Time
- Accm. No.

Sec ●

---

**11/04/2021 11:50 AM - CLAIM Note 186**
Claim/Event/Leave: 8220685
NoteSubject : Legal
Other Subject : LAWSUIT FILED
Text: [11/04/2021 - MAINELLI, DEBRA]CLAIMANT HAS FILED A LAWSUIT. PLEASE DIRECT ANY FURTHER INQUIRY ON THIS CLAIM TO THE LITIGATION MANAGER.

**11/03/2021 8:50 PM - CLAIM Note 185**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : FRS
Text: THE SCORE REFERRAL FOR FINANCIAL REVIEW SERVICES REFERRAL AND SOCIAL SECURITY DISABILITY INCOME (SSDI) HAS BEEN REASSIGNED TO HEATHER O'TOOLE MURPHY.

**10/07/2021 3:21 PM - CLAIM Note 184**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [10/07/2021 - HERTERICH, KIMBERLY]INVOICE DATED 7/16/2021 FROM NETWORK MEDICAL REVIEW COMPANY, LTD. INV #506149-1 IN THE AMT OF $1207.50 FOR PEER REVIEW. INVOICE PAID IN FULL.

**10/04/2021 9:12 AM - CLAIM Note 183**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : VENDOR PAYMENT
Text: [10/04/2021 - DANIELL, JANE]INVOICE 506149-1 DATED 7/16/21 FOR PEER REVIEW FROM NMR IN THE AMT OF $1207.50. INVOICE SUBMITTED FOR PROCESSING.

**09/15/2021 11:34 AM - CLAIM Note 182**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : VENDOR PAYMENT
Text: [09/15/2021 - DANIELL, JANE]INVOICE 506141-1 DATED JULY 16 2021 FROM NMR IN THE AMOUNT OF $1207.50 FOR PEER REVIEW BY DR FRANK POLANCO OCC MED. INVOICE SUBMITTED FOR PROCESSING.

**08/31/2021 11:42 AM - OVERPMT Note 13**
Claim/Event/Leave: 8220685
NoteSubject : OP/Collections
Other Subject : CLOSED
Text: [08/31/2021 - CHAPUT, CHRISTINE]RECD CLOSURE & NOTICE OF BANKRUPTCY FROM JMC COLLECTION AGENCY ON 8/26/21 ADVISING THAT THEY HAVE CLOSED THEIR FILE & THAT THEY HAVE RECD NOTIFICATION FROM CLAIMANT'S ATTORNEY ON MM/DD/YY THAT THE CLMT HAS FILED CHAPTER 7/13 BANKRUPTCY. CHECKED THE STATUS IN PACER - CASE SUMMARY & LIST OF CREDITORS IN DOC LIST. WILL FOLLOW UP REGARDING THE DISCHARGE DATE BEFORE SENDING THE FILE TO WRITE OFF.

**08/30/2021 7:15 AM - CLAIM Note 181**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : FAX ERROR MESSAGE
Text: [08/30/2021 - DANIELL, JANE]REC'D FAX ERROR MESSAGE FROM FRIDAY --THE RIGHT FAX DISTRIBUTION FOR THE FOLLOWING CORRESPONDENCE FAILED: LETTER: DENY-FREEFORM-FRM_0001__GENERAL_FREEFORM RECIPIENT: KENNETH SHAKESHAFT FAX NUMBER: 7196350966 FAILURECODE: TRANSMISSION ERROR NO FURTHER ATTEMPTS WILL BE MADE AT THIS TIME. THUS SENT LETTER VIA US POSTAL SERVICE

---

**Lincoln/Bunch 0050**

**08/27/2021 2:14 PM - CLAIM Note 180**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : TOLLING SUMMARY
Text: [08/27/2021 - DANIELL, JANE]APPEAL REC D 4/15/2021. TOLLING/ APPEAL EXT SENT 5/4/2021; END 6/29/2021. TOLLING/ APPEAL EXT SENT 8/2/2021; DUE 8/23/2021. DETERMINATION DAYS USED 57 OF 90.

**08/27/2021 2:11 PM - CLAIM Note 179**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : OUT-UPHOLD
Text: [08/27/2021 - DANIELL, JANE]UPHOLD - 57 YOUM DOD 2/14/18 BBD 8/15/18 LTD PAID THROUGH 11/9/20 DENIED NOT TD ANY OCC. DX. POST CONCUSSION SYNDROME S/P MVA 2/13/18. ADDITIONAL MEDICAL WAS RECEIVED ON APPEAL AND PEER REVIEWS CONDUCTED BY OCC MED ANDNEUROPSYCH. REVIEW DID NOT SUPPORT R&L'S DUE TO NEUROPSYCH OR PSYCHIATRIC SYMPTOMS. HOWEVER, OCC MED PEER R/LS. TSA PERFORMED THAT IDENTIED 4 OCCUPATIONS. THUS APPEAL DECISION LETTER SENT TO ATTY ADVISING EE NOT TD ANY OCC.

**08/24/2021 2:14 PM - CLAIM Note 178**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [08/24/2021 - MICHAUD, ROBIN]INVOICE RECEIVED ON 7/16/2021 FROM NETWORK MEDICAL REVIEW COMPANY. INVOICE # 506141-1 IN THE AMOUNT OF $ 1207.50 FOR PEER REVIEW. INVOICE PAID IN FULL

**08/02/2021 1:16 PM - CLAIM Note 177**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : RTR/TOLLING
Text: [08/02/2021 - DANIELL, JANE]RTR LTR WITH PEER REVIEW REPORTS AND TSA REPORT SENT TO ATTY. NOTIFIED OF TOLLING DUE 8/23/21

**07/30/2021 2:21 PM - CLAIM Note 176**
Claim/Event/Leave: 8220685
NoteSubject : Voc Rehab
Other Subject : APPEAL TSA MEMO
Text: [07/30/2021 - HALL, NICOLE]RCVD REFERRAL FOR APPEAL TSA AS UPDATED MEDICAL INFORMATION HAS BEEN OBTAINED. COMPLETED TSA MEMORANDUM AND PLACED REPORT IN S1 WITH NOTIFICATION TO ARC. ALTERNATE OCCUPATIONS WERE IDENTIFIED.

**07/29/2021 8:51 PM - CLAIM Note 175**
Claim/Event/Leave: 8220685
NoteSubject : Voc Rehab
Other Subject : CLAIM/EVENT TO VCM
Text: 7/29/2021-REFERRAL RECEIVED BY VCM AND ASSIGNED TO HALL, NICOLE ANN. CLAIM/AS EVENT IS PENDING REVIEW.

**07/22/2021 8:04 AM - CLAIM Note 174**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : LTR FROM ATTY RE:P2P
Text: [07/22/2021 - VALLIERE, TAWNYA]REC'D LETTER FROM ATTY KENNETH SHAKESHAFT DATED 7/20/21 WHICH INDICATES HE WAS INFORMED BY DR. HIGGINBOTHAM THAT HE RECEIVED A CALL FROM PEER REVIEWER, DR. F. POLANCO. AP - HIGGINBOTHAM HAS ADVISED HE WILL NOT SPEAK WITH PEER AS HE FEELS HE HAS A SIGNFICIANT HX OF BIAS TOWARDS INSURANCE COMPANIES.

**07/20/2021 8:51 PM - CLAIM Note 173**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Voc Rehab
Other Subject : SCORE REFERRAL
Text: 7/20/2021 - REFERRED TO THE VOC UNIT FOR TRANSFERABLE SKILLS ANALYSIS.

**07/20/2021 8:57 AM - CLAIM Note 172**
Claim/Event/Leave: 8220685
NoteSubject : LTR to Atty
Other Subject : STATUS
Text: [07/20/2021 - MACK, LINDSAY]FAXED APPEAL STATUS LETTER TO ATTNY, NOTICE OF VOCATIONAL REVIEW - EXPECTED COMPLETION BY 8/20/21.

**07/20/2021 8:50 AM - CLAIM Note 171**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : STATUS
Text: [07/20/2021 - MACK, LINDSAY]CLAIM REFERRED TO VOC FOR TSA UPDATE BASED ON UPDATED R&L'S PER OCCUPATIONAL MEDICINE PEER.

**Lincoln/Bunch 0051**

**07/20/2021 8:38 AM - CLAIM Note 170**
Claim/Event/Leave: 8220685
NoteSubject : Peer Review
Other Subject : OCC MED / NEUROPSYCH
Text: [07/20/2021 - MACK, LINDSAY]RECEIVED OCC MED AND NEUROPSYCH PEER REVIEW REPORTS FROM NMR. INVOICE FORWARDED FOR PROCESSING.

**07/07/2021 1:12 PM - CLAIM Note 169**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : FILE COPY
Text: [07/07/2021 - PILAR, SARAH]COPY OF DOC LIST EXCEPT OUTBOUND CORRESPONDENCE SENT TO NMR NMRDSPEERREVIEW@NMREXAMWORKS.COM VIA ONEDRIVE.

**07/06/2021 8:51 PM - CLAIM Note 168**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 7/6/2021 - REFERRED TO NETWORK MEDICAL REVIEW FOR PEER REVIEW.

**07/06/2021 8:52 AM - CLAIM Note 167**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : STATUS
Text: [07/06/2021 - DANIELL, JANE]REVIEW OF THE FILE IS COMPLETE AND DETERMINED PHYSICIAN LEVEL REVIEW IS APPROPRIATE WITH NEUROPSYCH AND OCC MED; REFERRALS IN PROCESS AT THIS TIME. SENT MEDICAL REVIEW LETTER TO EE WITH 8/5/21 DEADLINE[07/06/2021 - DANIELL, JANE]CORRECTION - SENT MEDICAL REV LETTER TO ATTY KENNETH SHAKESHAFT

**07/06/2021 8:38 AM - CLAIM Note 166**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : TOLLING
Text: [07/06/2021 - DANIELL, JANE]APPEAL REC D 4/15/2021. TOLLING/ APPEAL EXT SENT 5/4/2021; END 6/14/2021. TOLLING/ APPEAL EXT SENT 6/15/2021; DUE 6/29/2021. APPEAL INVESTIGATION HAS RESUMED. DETERMINATION DAYS USED 27 OF 90.

**06/29/2021 12:56 PM - CLAIM Note 165**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : FAX FROM ATTY
Text: [06/29/2021 - DANIELL, JANE]REC'D FAX FROM ATTY KENNETH SHAKESHAFT WITH REPORT FROM DR HIGGINBOTHAM

**06/21/2021 8:15 AM - CLAIM Note 164**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : TOLLING
Text: [06/21/2021 - DANIELL, JANE]WTG FOR ATTY SHAKESHAFT TO SUBMIT INFORMATION FROM DR THOMAS HIGGINBOTHAM. SENT TOLLING LETTER TO ATTY WITH 7/26/21 DEADLINE.

**06/21/2021 7:30 AM - CLAIM Note 163**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : INFO FROM ATTY
Text: [06/21/2021 - DANIELL, JANE]REC'D FAX FROM ATTY KENNETH SHAKESHAFT WHICH INCLUDED INITIAL REHAB PSYCH EVALUATION AND CONCUSSION REVIEW

**06/18/2021 3:25 PM - CLAIM Note 162**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : ATTY CALLED
Text: [06/18/2021 - DANIELL, JANE]BRANDY - PARALEGAL FROM ATTY SHAKESHAFT-GORMAN CALLED AND STATED SHE JUST GOT MY FAX. SHE STATED THEY FAXED OVER INFORMATION ON 6/10/21. TO 603-334-5994. ADVISED THAT WAS COREY'S FAX NUMBER - NOT SURE WHY THE RECORDS ARE NOT IN THE FILE. HOWEVER MY CORRESPONDENCE CONTAIN MY OWN PERSONAL FAX NUMBER. BRANDY STATED SHE HAD 2 PAGES AND ATTACHMENTS SHE CAN REFAX. TOLD HER THAT I WILL CALL HER WHEN I RECEIVE THE FAX. CONFIRMED HER PHONE 719-635-5886

**06/18/2021 2:16 PM - CLAIM Note 161**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : MED REV AFTER TOLLG
Text: [06/18/2021 - DANIELL, JANE]REFERRED CLAIM TO MDS FOR REVIEW. SENT MEDICAL REVIEW LETTER TO ATTY WITH 7/9/21 DEADLINE

**Lincoln/Bunch 0052**

**06/18/2021 2:03 PM - CLAIM Note 160**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Managed Care
Other Subject : ARU REFERRAL TO MDS
Text: [06/18/2021 - DANIELL, JANE]57 YOM DX CONVERGENCY INSUFFICIENCY - VISUAL DISTURBANCE, SOMATIZATION
DISORDER AND HYPERTENSION HX OF CONCUSSION WITHOUT LOSS OF CONSCIOUSNESS FROM MVA IN FEBRUARY 2018.
LTD BENS PD 8/15/18-11/9/20 DENIED NOT TD ANY OCC. EE ATTY REPRESENTED BUT NO NEW INFORMATION SUBMITTED
ON APPEAL. ***PLEASE REVIEW THE MEDICAL DOCUMENTATION ON FILE AND PROVIDE A DESCRIPTION OF THE CLAIMANT
S IMPAIRMENTS, IF ANY, AND OUTLINE HOW ANY IMPAIRMENT TRANSLATE TO RESTRICTIONS AND LIMITATIONS FROM
11/10/20 FORWARD. PLEASE INCLUDE THE EXPECTED DURATION FOR ANY SUPPORTED RESTRICTIONS. ALSO DOES THE
(OVERALL FUNCTIONAL AND) MEDICAL EVIDENCE SUPPORT THE CLAIMANT HAS THE ABILITY TO SUSTAIN FULL TIME
CAPACITY (8/HOURS/DAY 5 DAYS/ WEEK)WITHIN THE IDENTIFIED RESTRICTIONS AND LIMITATIONS FROM 11/10/20
FORWARD? PLEASE EXPLAIN YOUR MEDICAL RATIONALE.[06/21/2021 - DANIELL, JANE]RECEIVED ADD'L INFO FROM ATTY
SHAKESHAFT'S OFFICE - THEY INDICATED IT WAS FAXED 6/10/21 BUT WE DID NOT RECEIVE. THUS CANCELLING REFERRAL
TO MDS

**06/18/2021 1:41 PM - CLAIM Note 159**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : STATUS
Text: [06/18/2021 - DANIELL, JANE]NO ADDITIONAL INFORMATION SUBMITTED BY 6/14/21. THIS WILL PROCEED W/A MEDICAL
REVIEW BY A BOARD CERTIFIED NURSE DISABILITY CONSULTANT.

**05/04/2021 1:56 PM - CLAIM Note 158**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : CALLED ATTY
Text: [05/04/2021 - DANIELL, JANE]CALLED ATTY'S OFFICE TO ENSURE THEY REC'D THE FAX. THEY DID! ALSO ADVISED
THEM OF THE NEW ADDRESS AS OUTLINED ON MY LETTER - PO BOX OMAHA NE. ALSO NOTED MY FAX NUMBER 603-334-
5704. ADVISED THEM TO CALL W/ANY QUESTIONS.

**05/04/2021 8:29 AM - CLAIM Note 157**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : EXTENSION
Text: [05/04/2021 - DANIELL, JANE]ATTY REQUESTED AN EXTENSION FOR THE SUBMISSION OF THE APPEAL. SENT APPEAL
ACKNO AND PROVIDED UNTIL JUNE 14 2021 TO SUBMIT COMPLETE APPEAL.

**05/04/2021 8:14 AM - CLAIM Note 156**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : INITIAL REVIEW
Text: [05/04/2021 - DANIELL, JANE]PRESCREEN COMPLETED. CODING IS ACCURATE. LTD FI ERISA. CLAIM FILED 07/02/2018.
JD ON FILE. AUTH ON FILE. CLAIM DENIED NOT TD ANY OCC, DATE OF DENIAL WAS 11/16/2020. APPEAL TIMEFRAME IS 180
DAYS, APPEAL DUE 05/15/2021. LETTER OF APPEAL RECEIVED 04/15/2021. ATTORNEY REPRESENTED. ACTION PLAN: ARC
INITIAL SCREEN COMPLETE. CLM FILE UNDER REVIEW. CALL ATTORNEY AND ADVISE THE EXTENSION IS GRANTED. NEED
TO NOTIFY OF ADDRESS CHANGE ETC.

**04/28/2021 8:40 AM - CLAIM Note 155**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : REFERRAL RECVD
Text: [04/28/2021 - AVERILL, REBECCA]ASSIGNED TO JANE DANIELL

**04/27/2021 8:51 PM - CLAIM Note 154**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Appeals
Other Subject : SCORE REFERRAL
Text: 4/27/2021 - REFERRED TO APPEALS UNIT FOR CLAIM REVIEW AND DETERMINATION.

**04/27/2021 3:52 PM - CLAIM Note 153**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : MNGR REVIEW
Text: [04/27/2021 - BILL, ERIN]AGREE W/ REFERRAL TO ARU

**04/27/2021 3:50 PM - CLAIM Note 152**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Appeals
Other Subject : MANAGER REVIEW
Text: [04/27/2021 - RAINESWOODLEY, ROSE]SINCE CLAIM DENIED FOR NTD AO WE RECEIVED REQ FOR APPEAL FROM
CLMNTS ATTNY DATED 4/7/2021 ALONG WITH REQ FOR 30 DAY EXT TO PROVIDE MED RECORDS. RECOMMEND REFERRAL
TO ARU FOR REVIEW.

**Lincoln/Bunch 0053**

**04/27/2021 3:50 PM - CLAIM Note 151**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : REQ FOR APPEAL
Text: [04/27/2021 - RAINESWOODLEY, ROSE]RECEIVED REQ FOR APPEAL FROM CLMNTS ATTNY DATED 4/7/2021 ALONG
WITH REQ FOR 30 DAY EXT TO PROVIDE MED RECORDS. RECOMMEND REFERRAL TO ARU FOR REVIEW.

**02/03/2021 8:50 PM - CLAIM Note 150**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : FRS
Text: THE SCORE REFERRAL FOR FINANCIAL REVIEW SERVICES REFERRAL AND SOCIAL SECURITY DISABILITY INCOME
(SSDI) HAS BEEN REASSIGNED TO CHRISTIE CHAPUT.

**01/04/2021 8:52 PM - CLAIM Note 149**
Claim/Event/Leave: 8220685
NoteSubject : OP/Collections
Other Subject : SCORE REFERRAL
Text: 1/4/2021 - REFERRED TO COLLECTIONS UNIT FOR FINANCIAL AND COLLECTION SERVICES.

**01/04/2021 2:57 PM - OVERPMT Note 12**
Claim/Event/Leave: 8220685
NoteSubject : OP/SS
Other Subject : COLLECTION REFERRAL
Text: [01/04/2021 - MCGARY, KIRSTIE]CLMT FAILED TO REMIT PAYMENT THEREFORE PROCESSED COLLECTION REFERRAL.
F/U SET FOR 30 DAYS.

**12/14/2020 10:43 AM - OVERPMT Note 11**
Claim/Event/Leave: 8220685
NoteSubject : OP/SS
Other Subject : LTR TO CLMT
Text: [12/14/2020 - MCGARY, KIRSTIE]********* LATE ENTRY FROM 11/20/20 ******* FINAL OP LTR MAILED TO CLMT. RESENDING
LTR TO ATTY TODAY.

**11/16/2020 2:00 PM - CLAIM Note 148**
Claim/Event/Leave: 8220685
NoteSubject : LTR to EE
Other Subject : AO DENIAL
Text: [11/16/2020 - ABRAMS-WEAVER, COREY]DCM SENT AO DENIAL LETTER TO EE;

**11/16/2020 2:00 PM - PHONE Note 35**
Claim/Event/Leave: 8220685
NoteSubject : Called EE
Other Subject : DENIAL NOTICE
Text: [11/16/2020 - ABRAMS-WEAVER, COREY]CALLED EE TO ADVISE DENIAL OF THE CLAIM; EE VMAIL IS FULL AND CANNOT
ACCEPT ANY MESSAGES AT THIS TIME;

**11/13/2020 5:09 PM - CLAIM Note 147**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : MANAGER REVIEW
Text: [11/13/2020 - JONES, GABRIEL]CLAIM HAS BEEN APPROVED UNTIL ROR. DCM HAS HAD SEVERAL MEDICAL REVIEWS
WHICH DO NOT SUPPORT IMPAIRMENT FROM AO. *LATE NOTE AS M1 AND DCM WAS GOING OVER THE FILE*

**11/09/2020 2:16 PM - CLAIM Note 146**
Claim/Event/Leave: 8220685
NoteSubject : Closed
Other Subject : NOT TD AO
Text: [11/09/2020 - ABRAMS-WEAVER, COREY]57YOM; LDW 02/13/2018 DOD 2/14/2018 BBD 08/15/2019 CID 8/14/20120 56 YOM
DIRECT SALES REPDX TRAUMATIC BRAIN INJURY WITH POSTCONCUSSION, VISUAL DIFFICULTIES WITH SPATIAL
DISORIENTATION, NEUROCOGNITIVE DISORDER, ADJUSTMENT DISORDER AND PERSISTENT CERVICAL STRAIN ; BASED
ON RECORDS REVIEWED R/LS ARE NOT SUPPORTIVE FOR ANY OCC BEYOND 9/24; DCM RECOMMENDS CLOSURE FOR
NOT TD ANYOCC AT THIS TIME;

**10/31/2020 2:56 PM - CLAIM Note 145**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [10/31/2020 - MUELLER, JACQUELINE]INVOICE RECEIVED ON 10/29/2020 AND DATED 10/28/2020 FROM EXAM
COORDINATORS NETWORK INV #BOCA 94480 IN THE AMOUNT OF $860.00 FOR NEURO PSYCH PEER REVIEW PERFORMED
BY JEREMY HERTZA . INVOICE PAID IN FULL

**10/29/2020 3:45 PM - CLAIM Note 144**
Claim/Event/Leave: 8220685

**Lincoln/Bunch 0054**

NoteSubject : Med Records Rcvd
Other Subject : NEUROPSYCH FFR
Text: [10/29/2020 - ABRAMS-WEAVER, COREY]NEUROPSYCH REVIEW RECEIVED;

**10/12/2020 8:51 PM - CLAIM Note 143**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 10/12/2020 - REFERRED TO EXAM COORDINATORS - ECN FOR PEER REVIEW.

**10/07/2020 11:13 AM - CLAIM Note 142**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Managed Care
Other Subject : NEUROPSYCH REFERRAL
Text: [10/07/2020 - ABRAMS-WEAVER, COREY]NEUROPSYCH REFERRAL SENT VIA CRT TOOL

**10/01/2020 10:58 AM - CLAIM Note 141**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Managed Care
Other Subject : NEUROSPSYCH
Text: [10/01/2020 - ABRAMS-WEAVER, COREY]REFERRAL SENT TO DR. BELLIEVUE TO DRAFT UP QUESTIONS FOR NEURO PSYCH TESTING

**10/01/2020 10:44 AM - CLAIM Note 140**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : CLAIM REVIEW
Text: [10/01/2020 - ABRAMS-WEAVER, COREY]DCM DISCUSSED ONGOING CLAIM DETERMINATION WITH MARY COTTON; AFTER FURTHER REVIEW IT WAS SUGGESTED TO HAVE THE CLAIM REFERRED FOR NEUROPSYCH TESTING IN ORDER TO MAKE AN ONGOING DETERMINATION ON THE CLAIM;

**09/25/2020 4:48 PM - CLAIM Note 139**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : MANAGER REVIEW
Text: [09/25/2020 - HILL, GABRIEL]M1 HAS ASKED DCM TO EVALUATE CLAIM TO DETERMINE IF NEUROPSYCH REVIEW IS NEEDED

**09/24/2020 4:23 PM - CLAIM Note 138**
Claim/Event/Leave: 8220685
NoteSubject : Closed
Other Subject : NOT TD AO
Text: [09/24/2020 - ABRAMS-WEAVER, COREY]57YOM; LDW 02/13/2018 DOD 2/14/2018 BBD 08/15/2019 CID 8/14/20120 56 YOM DIRECT SALES REPDX TRAUMATIC BRAIN INJURY WITH POSTCONCUSSION, VISUAL DIFFICULTIES WITH SPATIAL DISORIENTATION, NEUROCOGNITIVE DISORDER, ADJUSTMENT DISORDER AND PERSISTENT CERVICAL STRAIN ; BASED ON RECORDS REVIEWED R/LS ARE NOT SUPPORTIVE FOR ANY OCC BEYOND 9/24; DCM RECOMMENDS CLOSURE FOR NOT TD ANYOCC AT THIS TIME;

**09/10/2020 9:07 AM - CLAIM Note 137**
Claim/Event/Leave: 8220685
NoteSubject : Voc Rehab
Other Subject : TSA ADDENDUM
Text: [09/10/2020 - PROVOST, MEGAN]TSA ADDENDUM COMPLETED AND UPLOADED. NO FURTHER VCM ACTIVITY. SUMMARY: OCCUPATIONS IDENTIFIED: THE TRANSFERABLE SKILLS ANALYSIS ADDENDUM IDENTIFIED OCCUPATIONS THAT ARE WITHIN MR. BUNCH S PHYSICAL ABILITIES AND WITHIN HIS IDENTIFIED SKILL LEVEL. THE FOLLOWING ARE EXAMPLES OF OCCUPATIONS MR. BUNCH COULD PERFORM: MANAGER, SALES; FUND RAISER I; SUPERVISOR OF COMMUNICATIONS. THE OCCUPATIONS MEET HIS GAINFUL AMOUNT OF $5,377.18 IN THE NATIONAL ECONOMY. I HAVE NOT METWITH MR. BUNCH FOR THE PURPOSE OF THIS REVIEW. ALL OPINIONS ARE BASED ON REVIEW OF VOCATIONAL INFORMATION, MEDICAL RECORDS AND RESOURCES NOTED.

**09/09/2020 8:52 PM - CLAIM Note 136**
Claim/Event/Leave: 8220685
NoteSubject : Voc Rehab
Other Subject : CLAIM/EVENT TO VCM
Text: 9/9/2020-REFERRAL RECEIVED BY VCM AND ASSIGNED TO PROVOST, MEGAN. CLAIM/AS EVENT IS PENDING REVIEW.

**09/02/2020 8:50 PM - CLAIM Note 135**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Voc Rehab
Other Subject : SCORE REFERRAL
Text: 9/2/2020 - REFERRED TO THE VOC UNIT FOR TRANSFERABLE SKILLS ANALYSIS.

**09/02/2020 10:43 AM - CLAIM Note 134**
Claim/Event/Leave: 8220685
NoteSubject : Other

**Lincoln/Bunch 0055**

NoteSubject : Other
Other Subject :
Text: [09/02/2020 - DAVIS, DANIELLE]CLAIM ASSIGNED TO ABRAMS-WEAVER - CHANGE IN DCM LETTER MAILED

**09/02/2020 10:42 AM - CLAIM Note 133**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [09/02/2020 - DAVIS, DANIELLE]CLAIM REFERRED FOR TSA - INCORRECT REVIEW COMPLETED

**09/01/2020 8:52 PM - CLAIM Note 132**
Claim/Event/Leave: 8220685
NoteSubject : Voc Rehab
Other Subject : CLAIM/EVENT TO VCM
Text: 9/1/2020-REFERRAL RECEIVED BY VCM AND ASSIGNED TO PROVOST, MEGAN. CLAIM/AS EVENT IS PENDING REVIEW.

**09/01/2020 12:46 PM - CLAIM Note 131**
Claim/Event/Leave: 8220685
NoteSubject : Voc Rehab
Other Subject : TSA
Text: [09/01/2020 - PROVOST, MEGAN]TSA COMPLETED AND UPLOADED. NO FURTHER VCM ACTIVITY. SUMMARY: OCCUPATIONS IDENTIFIED: THE TRANSFERABLE SKILLS ANALYSIS IDENTIFIED OCCUPATIONS THAT ARE WITHIN MR. BUNCH S PHYSICAL ABILITIES AND WITHIN HIS IDENTIFIED SKILL LEVEL. THE FOLLOWING ARE EXAMPLES OF OCCUPATIONS MR. BUNCH COULD PERFORM: MANAGER, SALES; FUND RAISER I; SUPERVISOR OF COMMUNICATIONS. THE OCCUPATIONS MEET HIS GAINFUL AMOUNT OF $5,377.18 IN THE NATIONAL ECONOMY. I HAVE NOT MET WITH MR. BUNCH FOR THE PURPOSE OF THIS REVIEW. ALL OPINIONS ARE BASED ON REVIEW OF VOCATIONAL INFORMATION, MEDICAL RECORDS AND RESOURCES NOTED.

**09/01/2020 10:48 AM - CLAIM Note 130**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [09/01/2020 - MITCHELL, CATHERINE]INVOICE DATED 8/19/2020 FROM ECN INV #BOCA 90102 IN THE AMT OF $660.00 FOR NEUROLOGY PEER REVIEW INVOICE PAID IN FULL.

**08/28/2020 10:28 AM - CLAIM Note 129**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [08/28/2020 - MITCHELL, CATHERINE]INVOICE RECEIVED ON 8/4/2020 FROM RELEASEPOINT. INVOICE# 712432-606 IN THE AMOUNT $61.14 INVOICE PAID.

**08/25/2020 10:17 PM - CLAIM Note 128**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Voc Rehab
Other Subject : SCORE REFERRAL
Text: 8/25/2020 - REFERRED TO THE VOC UNIT FOR TRANSFERABLE SKILLS ANALYSIS.

**08/25/2020 3:37 PM - PHONE Note 34**
Claim/Event/Leave: 8220685
NoteSubject : Called Other
Other Subject :
Text: [08/25/2020 - DAVIS, DANIELLE]CALLED TO GET AN UPDATE. DCM TALKED WITH BRANDY AND EXPLAINED THAT I HAVE LEFT SEVERAL MSG AND I HAVE NOT RECEIVED A RESPONSE. DCM ASKED IF EE IS STILL WANTING LTD. SHE SAID YES. EXPLAINED THE CID ON THE CLAIM AGAIN. DCM ALSO ASKED IF EE IS OOW FOR BOTH PHYSICAL AND MENTAL. SHE STATED THAT EE IS ONLY OOW FOR PHYSICAL AND HE CANNOT DRIVE. SHE DID STATE THAT EE HAD AN OFFICE APPT AND SHE WILL ASK MR. SHAFT IF SHE CAN SEND THE MEDICAL RECORDS FOR THE CLAIM. DCM ALSOASKED HER ABOUT SSDI AWARD LETTER AND SHE STATED THEY HAVE NOT BEEN ABLE TO GET THE AWARD LETTER FROM EE.

**08/21/2020 12:25 PM - CLAIM Note 127**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : MANAGER REVIEW
Text: [08/21/2020 - HILL, GABRIEL]AGREE WITH ROR APPROVAL

**08/21/2020 10:44 AM - OVERPMT Note 10**
Claim/Event/Leave: 8220685
NoteSubject : OP/SS
Other Subject : APPLY BR
Text: [08/21/2020 - MCGARY, KIRSTIE]ATTY HAS NOT PROVIDED UPDATE ON SS STATUS AND NO PMT REC'D. APPLIED FULL BR AT THIS TIME HOWEVER BENEFITS ARE CURRENTLY SUSPENDED. F/U SET.

**08/19/2020 9:47 AM - CLAIM Note 126**
Claim/Event/Leave: 8220685
NoteSubject : Action Plan

**Lincoln/Bunch 0056**

Other Subject : RTW AO SEPT 2020
Text: [08/19/2020 - DAVIS, DANIELLE]LDW 02/13/2018 DOD 2/14/2018 BBD 08/15/2019 CID 8/14/20120 56 YOM DIRECT SALES REPDX TRAUMATIC BRAIN INJURY WITH POSTCONCUSSION, VISUAL DIFFICULTIES WITH SPATIAL DISORIENTATION, NEUROCOGNITIVE DISORDER, ADJUSTMENT DISORDER AND PERSISTENT CERVICAL STRAIN R/LS OF LESS THAN OCCASIONAL STAND AND WALK, NO TASK REQUIRING CONCENTRATION OR REPETITIVE STEPS, NO WORKING FROM HEIGHTS DRIVING FOR COMMERCIAL OR COMPANY PURPOSES FOR AT LEAST 8-12 MONTHS FROM THE DATE OF THIS REVIEW TO ALLOW FOR CONTINUED REDUCTION OF SYMPTOMS AND RETURN TO FULL FUNCTION.- APPROVING THE CLAIM INTO ROR FFR COMPLETED INDICATED THAT THE CLAIM NEEDS TO BE REVIEWED A NEUROLOGY TO COMMENT ON THE NEUROPSYCHOLOGY REPORTS IN THE RECORD.-ACTIONPLAN ONCE THE REVIEW HAS BEEN COMPLETED DCM WILL DETERMINE EE S ONGOING STATUS, IT THE CLAIM NEEDS TO BE REFERRED FOR TSA, AND ANY OCC STATUS.

**08/19/2020 9:46 AM - CLAIM Note 125**
Claim/Event/Leave: 8220685
NoteSubject : Approved
Other Subject : ANY OCC
Text: [08/19/2020 - DAVIS, DANIELLE]LDW 02/13/2018 DOD 2/14/2018 BBD 08/15/2019 CID 8/14/20120 56 YOM DIRECT SALES REPDX TRAUMATIC BRAIN INJURY WITH POSTCONCUSSION, VISUAL DIFFICULTIES WITH SPATIAL DISORIENTATION, NEUROCOGNITIVE DISORDER, ADJUSTMENT DISORDER AND PERSISTENT CERVICAL STRAIN R/LS OF LESS THAN OCCASIONAL STAND AND WALK, NO TASK REQUIRING CONCENTRATION OR REPETITIVE STEPS, NO WORKING FROM HEIGHTS DRIVING FOR COMMERCIAL OR COMPANY PURPOSES FOR AT LEAST 8-12 MONTHS FROM THE DATE OF THIS REVIEW TO ALLOW FOR CONTINUED REDUCTION OF SYMPTOMS AND RETURN TO FULL FUNCTION.- APPROVING THE CLAIM INTO ROR FFR COMPLETED INDICATED THAT THE CLAIM NEEDS TO BE REVIEWED A NEUROLOGY TO COMMENT ON THE NEUROPSYCHOLOGY REPORTS IN THE RECORD

**08/07/2020 8:50 PM - CLAIM Note 124**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 8/7/2020 - REFERRED TO EXAM COORDINATORS - ECN FOR PEER REVIEW.

**08/04/2020 5:24 PM - CLAIM Note 123**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [08/04/2020 - DAVIS, DANIELLE]REFERRAL TYPE: PRIORITY FILE REVIEW SPECIALITIES: NEUROLOGY - GENERAL

**08/04/2020 5:18 PM - CLAIM Note 122**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [08/04/2020 - DAVIS, DANIELLE]OPHTHALMOLOGY FFR COMPLETED - SUGGESTED- A REVIEW BY AN LFG IN-HOUSE NEUROLOGIST ADDRESSING THE IMAGING STUDIES ESPECIALLY THE MRI THAT ALLUDED TO DEMYELINATING DISEASE WOULD BE HELPFUL IN TERMS OF EXCLUDING ORGANIC CHANGES FROM THE ETIOLOGY. SUCH A NEUROLOGY REVIEWER COULD COMMENT ON THE NEUROPSYCHOLOGY REPORTS IN THE RECORD.

**07/30/2020 9:22 AM - OVERPMT Note 9**
Claim/Event/Leave: 8220685
NoteSubject : OP/SS
Other Subject : FAX TO ATTY
Text: [07/30/2020 - MCGARY, KIRSTIE]SENT FAX TO ATTY REQUESTING SSNOA BY 8/20 OR OP RECOVERY WILL BEGIN. F/U SET.

**07/29/2020 3:23 PM - CLAIM Note 121**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [07/29/2020 - DAVIS, DANIELLE]REFERRAL TYPE: PRIORITY FILE REVIEW SPECIALITIES: OPTHALMOLOGY

**07/23/2020 5:25 PM - CLAIM Note 120**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [07/23/2020 - DAVIS, DANIELLE]EMAILED THE REVIEWER ABOUT THE REVIEW AND IF IT HAS BEEN COMPLETED

**07/20/2020 10:24 AM - CLAIM Note 119**
Claim/Event/Leave: 8220685
NoteSubject : Medical Status
Other Subject : PENROSE OUTPATIENT R
Text: [07/20/2020 - WALLACH, KRYSTAL]RECEIVED NOTIFICATION FROM RP: PLEASE BE ADVISED THAT THE MEDICAL RECORD RETRIEVAL TEAM HAS NOT RECEIVED A RESPONSE TO OUR SUSPEND NOTIFICATION ON YOUR REQUEST LISTED ABOVE, AND THE REQUEST WILL NOW BE CLOSED OUT.THANK YOU, YOUR MEDICAL RECORD RETRIEVAL TEAM

**07/16/2020 4:32 PM - PHONE Note 33**
Claim/Event/Leave: 8220685
NoteSubject : Called Other

**Lincoln/Bunch 0057**

NoteSubject : Called Other
Other Subject :
Text: [07/16/2020 - DAVIS, DANIELLE]TALKED WITH THE REVIEW ABOUT THE REVIEW AND HE WILL BE POSITING IT.

**07/16/2020 4:32 PM - PHONE Note 32**
Claim/Event/Leave: 8220685
NoteSubject : Other Called
Other Subject :
Text: [07/16/2020 - DAVIS, DANIELLE]MESSAGE FROM UNKNOWN SENDER (7817089687)- THE REVIEW CALLED FROM 781-771-7268- -THU 7/16/2020 11:00 AM

**07/16/2020 7:29 AM - OVERPMT Note 8**
Claim/Event/Leave: 8220685
NoteSubject : OP/SS
Other Subject : 2ND NOTICE
Text: [07/16/2020 - MCGARY, KIRSTIE]2ND NOTICE LTR TO ATTY IS ON HOLD - PER THE 7/1/20 LTR FROM ATTY THEY ARE WORKING TO OBTAIN A COPY OF THE SS AWARD FROM SSA. F/U SET FOR 2 WEEKS.

**07/09/2020 12:30 PM - CLAIM Note 118**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [07/09/2020 - DAVIS, DANIELLE]REFERRAL TYPE: STANDARD FILE REVIEW SPECIALITIES: MEDICINE - OCCUPATIONAL & ENVIRONMENTAL

**07/09/2020 12:21 PM - CLAIM Note 117**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [07/09/2020 - DAVIS, DANIELLE]LDW 02/13/2018 DOD 2/14/2018 BBD 08/15/2019 CID 8/14/20120 56 YOM DIRECT SALES REPDX TRAUMATIC BRAIN INJURY WITH POSTCONCUSSION- SSDI AWARDED-FORMS ARE ON FILE-MEDICAL RECORDS OBTAINED FROM SHAKESHAFT GORMAN LAW FIRM- RECOMMENDING TO SEND THE CLAIM FOR FFR TO OUTLINE R/L S, DURATION AND WORK CAPACITY. THE CLAIM NEEDS TO BE REVIEWED FOR CID AND AP CONTACT NEEDED. THE LAST REVIEW COMPLETED SUPPORT DISABILITY FOR 8-12 MONTHS WITH THE FOLLOWING R/L S- R/LS OF LESS THAN OCCASIONAL STAND AND WALK, NO TASK REQUIRING CONCENTRATION OR REPETITIVE STEPS, NO WORKING FROM HEIGHTS DRIVING FOR COMMERCIAL OR COMPANY PURPOSES AND ARE PERMANENT- CLAM REFERRED FOR FFR IN ADDITION DUE TO ATTY HAD NOT RETURNED TO DCM PHONE CALL ABOUT EE HAVING ADDITIONAL APPTS

**07/02/2020 7:43 AM - OVERPMT Note 7**
Claim/Event/Leave: 8220685
NoteSubject : OP/SS
Other Subject : 2ND NOTICE
Text: [07/02/2020 - MCGARY, KIRSTIE]HOLDING OFF ON 2ND NOTICE AT THIS TIME - PER LTR FROM ATTY SSA HAS NOT SENT THE SSNOA YET. F/U SET FOR 2 WEEKS.

**07/01/2020 12:25 PM - OVERPMT Note 6**
Claim/Event/Leave: 8220685
NoteSubject : OP/SS
Other Subject : LTR FROM ATTY
Text: [07/01/2020 - MCGARY, KIRSTIE]REC'D LTR FROM ATTY ASKING HOW SS OP CALCULATED AND ADVISING NO SSNOA YET. SENT FAX BACK TO ATTY WITH COPY OF OP BREAKDOWN AS IT WAS BASED ON AN ESTIMATE AT THIS TIME AND REQUESTED HE PROVIDE NOA ASAP.

**06/30/2020 12:36 PM - PHONE Note 31**
Claim/Event/Leave: 8220685
NoteSubject : Called Other
Other Subject :
Text: [06/30/2020 - DAVIS, DANIELLE]LEFT VM A WITH BRANDY AGAIN

**06/23/2020 11:01 AM - PHONE Note 30**
Claim/Event/Leave: 8220685
NoteSubject : Other Called
Other Subject :
Text: [06/23/2020 - DAVIS, DANIELLE]LEFT MSG WITH BRANDY TO F/U ABOUT EE LOV AND THE DATE.

**06/11/2020 3:59 PM - PHONE Note 29**
Claim/Event/Leave: 8220685
NoteSubject : Called EE
Other Subject : ATTY
Text: [06/11/2020 - DAVIS, DANIELLE]TALKED WITH BRANDY- SHE GOING TO F/U WITH EE ABOUT HIS LOV- SHE WANTED TO KNOW IF I COULD OBTAIN A COPY OF HIS SSDI LETTER. DCM LET HER KNOW I COULD NOT.

**06/04/2020 3:08 PM - CLAIM Note 116**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other

**Lincoln/Bunch 0058**

Other Subject : CP REVIEW
Text: [06/04/2020 - DAVIS, DANIELLE]LDW 02/13/2018 DOD 2/14/2018 BBD 08/15/2019 CID 8/14/20120 56 YOM DIRECT SALES REPDX TRAUMATIC BRAIN INJURY WITH POSTCONCUSSION- SSDI AWARDED-FORMS ARE ON FILE-MEDICAL RECORDS OBTAINED FROM SHAKESHAFT GORMAN LAW FIRM- RECOMMENDING TO SEND THE CLAIM FOR FFR TO OUTLINE R/L S, DURATION AND WORK CAPACITY. THE CLAIM NEEDS TO BE REVIEWED FOR CID AND AP CONTACT NEEDED. THE LAST REVIEW COMPLETED SUPPORT DISABILITY FOR 8-12 MONTHS WITH THE FOLLOWING R/L S- R/LS OF LESS THAN OCCASIONAL STAND AND WALK, NO TASK REQUIRING CONCENTRATION OR REPETITIVE STEPS, NO WORKING FROM HEIGHTS DRIVING FOR COMMERCIAL OR COMPANY PURPOSES AND ARE PERMANENT. COMPLETED 11/13/2019.

**06/04/2020 7:56 AM - OVERPMT Note 5**
Claim/Event/Leave: 8220685
NoteSubject : OP/SS
Other Subject : **OP CREATION
Text: [06/04/2020 - MCGARY, KIRSTIE]******** ESTIMATE ********* THE OVERPAYMENT DUE IS $52,101.00 FOR THE PERIOD OF 08/15/18 THRU 05/14/20. CLAIMANT WAS ORIGINALLY PAID $82,590.51. PAY WAS RECALCULATED DUE TO SS DISABILITY AND CLAIMANT SHOULD HAVE BEEN PAID $30,489.51. DETAILED OP LETTER SENT TO CLAIMANT AND ATTORNEY REQUESTING FULL PAYMENT. FOLLOW UP SET FOR REPAYMENT.

**05/26/2020 11:20 AM - OVERPMT Note 4**
Claim/Event/Leave: 8220685
NoteSubject : OP/SS
Other Subject : SS ESTIMATE ADDED
Text: [05/26/2020 - MCGARY, KIRSTIE]ATTY HAS NOT PROVIDED SSNOA AS REQUESTED. ADDED SS OFFSET OF $2481.00 PER SS ONLINE ESTIMATE AND WILL MOVE FORWARD WITH OP CALC.

**05/18/2020 11:17 AM - CLAIM Note 115**
Claim/Event/Leave: 8220685
NoteSubject : Medical Status
Other Subject :
Text: [05/18/2020 - DAVIS, DANIELLE]PENROSE OUTPATIENT REHABILITATION- NO RECORDS

**05/08/2020 1:36 PM - OVERPMT Note 3**
Claim/Event/Leave: 8220685
NoteSubject : OP/SS
Other Subject : FAX TO ATTY
Text: [05/08/2020 - MCGARY, KIRSTIE]SENT FAX TO ATTY OFFICE REQUESTING SSNOA BY 5/22. F/U SET.[05/08/2020 - MCGARY, KIRSTIE]FAX CAME BACK AS UNDELIVERABLE. WILL EMAIL THE SS REQUEST.

**05/01/2020 3:52 PM - CLAIM Note 114**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [05/01/2020 - MICHAUD, ROBIN]INVOICE RECEIVED ON 4/29/2020 FROM MRO . INVOICE #34451403 IN THE AMOUNT OF $ 19.98 FOR MEDICAL RECORDS FROM PENROSE-ST FRANCIS HEALTH SERVICES. INVOICE PAID IN FULL

**04/27/2020 10:02 AM - CLAIM Note 113**
Claim/Event/Leave: 8220685
NoteSubject : Medical Status
Other Subject :
Text: [04/27/2020 - DAVIS, DANIELLE]THANK YOU FOR CONTACTING THE MRO REQUESTER SERVICES TEAM. WE HAVE RECEIVED YOUR COMMUNICATION. DUE TO THE CURRENT UNPRECEDENTED TIMES AND THE URGENCY TO PRACTICE SOCIAL DISTANCING, REPLY TIMES MAY BE LONGER THAN USUAL. WE THANK YOU FOR YOUR PATIENCE AND UNDERSTANDING.

**04/27/2020 9:34 AM - CLAIM Note 112**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [04/27/2020 - DAVIS, DANIELLE]REQ'D MEDICAL RECORDS VIA RP FROM PENROSE OUTPATIENT REHABILITATION FROM FEBRUARY 1, 2020 TO PRESENT FOR THIS PATIENT FROM FEBRUARY 1, 2020 TO PRESENT FOR THIS PATIENT

**04/27/2020 9:30 AM - CLAIM Note 111**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [04/27/2020 - DAVIS, DANIELLE]EMAIL THE MRO REQUEST

**04/24/2020 7:23 AM - OVERPMT Note 2**
Claim/Event/Leave: 8220685
NoteSubject : OP/SS
Other Subject : WAITING ON AWARD
Text: [04/24/2020 - MCGARY, KIRSTIE]WAITING COPY OF AWARD INFO TO COMPLETE OVP CALCULATION. F/U SET TO RECEIVE NEEDED INFO.

**04/23/2020 8:50 PM - CLAIM Note 110**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : FRS
Text: THE SCORE REFERRAL FOR FINANCIAL REVIEW SERVICES REFERRAL AND SOCIAL SECURITY DISABILITY INCOME
(SSDI) HAS BEEN RECEIVED AND ASSIGNED TO KIRSTIE MCGARY.

**04/23/2020 8:50 PM - CLAIM Note 109**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : FRS
Text: FOR SOCIAL SECURITY DISABILITY INCOME (SSDI).WITH A REASON OF .COMMENTS: AWARD LETTER NOT RECEIVED

**04/23/2020 7:49 AM - CLAIM Note 108**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [04/23/2020 - DAVIS, DANIELLE]FAXED SHAKESHAFT-GORMAN LAW FIRM TO PROVIDE A COPY OF THE CLAIMANT SSDI
AWARD LETTER FOR THE CLAIM

**04/20/2020 10:19 AM - CLAIM Note 107**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [04/20/2020 - DAVIS, DANIELLE]EXTENDED THE N/P 5/19/2020

**04/20/2020 8:57 AM - CLAIM Note 106**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [04/20/2020 - DAVIS, DANIELLE]FAXED UPDATED AUTHO TO MRO

**04/15/2020 11:41 AM - CLAIM Note 105**
Claim/Event/Leave: 8220685
NoteSubject : LTR to Other
Other Subject :
Text: [04/15/2020 - DAVIS, DANIELLE]SHAKESHAFT-GORMAN LAW FIRM- FAXED A BLANK AUTHO T FROM MRO

**04/13/2020 10:15 AM - CLAIM Note 104**
Claim/Event/Leave: 8220685
NoteSubject : Medical Status
Other Subject :
Text: [04/13/2020 - DAVIS, DANIELLE]NO ACTION NEEDED AUTHO FORM ON FILE

**04/06/2020 9:25 AM - CLAIM Note 103**
Claim/Event/Leave: 8220685
NoteSubject : LTR to AP
Other Subject : MEDICAL REQUEST
Text: [04/06/2020 - DAVIS, DANIELLE] CONTACTED PENROSE OUTPATIENT REHABILITATION, AND DR. HIGGINBOTHAM FOR
MEDICAL RECORDS. - REQUEST - PROVIDER - MEDICAL

**04/06/2020 9:07 AM - CLAIM Note 102**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [04/06/2020 - DAVIS, DANIELLE]CIF FORM RECEIVED

**03/23/2020 9:04 AM - CLAIM Note 101**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [03/23/2020 - DAVIS, DANIELLE]ADDED A LETTER FROM SHAKESHAFT & GORMAN LAW FIRM - WITH MEDICAL RECORDS
FROM DR. HIGGINBOTHAM 2/25/2020

**03/19/2020 3:41 PM - CLAIM Note 100**
Claim/Event/Leave: 8220685
NoteSubject : LTR to EE
Other Subject :
Text: [03/19/2020 - DAVIS, DANIELLE]45 DAY LETTER MAILED

**03/09/2020 4:52 PM - CLAIM Note 99**
Claim/Event/Leave: 8220685
NoteSubject : LTR to EE
Other Subject :
Text: [03/09/2020 - DAVIS, DANIELLE]30 DAY LETTER MAILED

**Lincoln/Bunch 0060**

Text: [03/09/2020 - DAVIS, DANIELLE]30 DAY LETTER MAILED

**03/09/2020 4:49 PM - PHONE Note 28**
Claim/Event/Leave: 8220685
NoteSubject : Called EE
Other Subject :
Text: [03/09/2020 - DAVIS, DANIELLE]DAVIS, DANIELLE TALKED TO BRANDI SHE ADVISED THAT THEY WILL BE SUBMITTING ALL OF THE MEDICAL RECORDS AND FORMS FOR THE CLAIM AND WE DO NOT NEED TO REQUEST ANYTHING.

**02/04/2020 1:32 PM - CLAIM Note 98**
Claim/Event/Leave: 8220685
NoteSubject : LTR to Other
Other Subject :
Text: [02/04/2020 - DAVIS, DANIELLE]N/P LETTER MAILED - 30 DAY 3/4/2020 45 DAY 3/19/2020 75 DAY 4/18/2020

**02/04/2020 1:15 PM - PHONE Note 27**
Claim/Event/Leave: 8220685
NoteSubject : Called Other
Other Subject :
Text: [02/04/2020 - DAVIS, DANIELLE]CALLED AND SPOKE WITH BRANDI. SHE CONFIRMED THAT SHE HAS NOT SPOKEN WITH EE AND WILL GET A VIDEO CONFERENCE SCHEDULED. SHE DOES KNOW THAT HE IS TREATING WITH SOME PROVIDERS. SHE WILL SPEAK TO EE ABOUT GETTING UPDATEDMEDICAL RECORDS FOR THE CLAIM. EXPLAINED CID ANY/OWN OCC AND WE WILL BE REVIEWING THE CLAIM. I INFORMED HER THAT I WILL BE FAXING A N/P LETTER FOR MEDICAL RECORDS NEEDED. I ALSO LET HER KNOW THAT I COULD REQUEST MEDICAL RECORDS TOO.

**01/21/2020 4:30 PM - PHONE Note 26**
Claim/Event/Leave: 8220685
NoteSubject : Other Called
Other Subject :
Text: [01/21/2020 - DAVIS, DANIELLE]MESSAGE FROM UNKNOWN SENDER (7196355886)- FRI 1/17 BRANDI CALLED EE HAS NOT RECEIVED HIS CHECK

**01/21/2020 11:40 AM - PHONE Note 25**
Claim/Event/Leave: 8220685
NoteSubject : Other Called
Other Subject :
Text: [01/21/2020 - DAVIS, DANIELLE]BRANDI CALLED AND ADVISED THAT EE HAS NOT RECEIVED HIS CHECK. ASKED HER TO CALL BACK ON 1/23/2020 IF EE HAS NOT RECEIVED HIS CHECK AND PROVIDED THE MAILING ADDRESS THAT THE CHECK WAS MAILED TO. I ALSO ASKED HER FOR AN UPDATED ON THE CLAIMANT S STATUS. ADVISED HER THAT A FAX WAS SENT ON 1/9/2020 AND I HAVE NOT RECEIVED A RESPONSE ABOUT ONGOING TREATMENT. SHE STATED THAT THEY WILL BE PROVING SOMETHING, AND SHE WILL LET THE CLAIMANT KNOW.

**01/09/2020 12:25 PM - CLAIM Note 97**
Claim/Event/Leave: 8220685
NoteSubject : LTR to Other
Other Subject :
Text: [01/09/2020 - DAVIS, DANIELLE]FAXED A LETTER TO F/U ABOUT EE'S STATUS TO SHAKESHAFT-GORMAN LAW FIRM

**01/09/2020 12:17 PM - CLAIM Note 96**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [01/09/2020 - DAVIS, DANIELLE]CID FAXED TO SHAKESHAFT-GORMAN LAW FIRM

**11/14/2019 11:23 AM - CLAIM Note 95**
Claim/Event/Leave: 8220685
NoteSubject : Action Plan
Other Subject : RTW AO AUG 2020
Text: [11/14/2019 - DAVIS, DANIELLE]LDW 02/13/2018 DOD 2/14/2018 BBD 08/15/2019 CID 8/14/20120 56 YOM DIRECT SALES REPDX TRAUMATIC BRAIN INJURY WITH POSTCONCUSSION, VISUAL DIFFICULTIES WITH SPATIAL DISORIENTATION, NEUROCOGNITIVE DISORDER, ADJUSTMENT DISORDER AND PERSISTENT CERVICAL STRAIN R/LS OF LESS THAN OCCASIONAL STAND AND WALK, NO TASK REQUIRING CONCENTRATION OR REPETITIVE STEPS, NO WORKING FROM HEIGHTS DRIVING FOR COMMERCIAL OR COMPANY PURPOSES FOR AT LEAST 8-12 MONTHS FROM THE DATE OF THIS REVIEW TO ALLOW FOR CONTINUED REDUCTION OF SYMPTOMS AND RETURN TO FULL FUNCTION. IF THE CLMT HAS NO IMPROVEMENT NOTED AT THAT TIME, R/LS SHOULD THEN BE CONSIDERED PERMANENT-ACTION PLAN DCM WILL OBTAIN UPDATED MEDICAL RECORDS IN 12 MONTHS TO REVIEWTHE CLAIM AGAIN FOR R/LS- DCM WILL ALSO F/U ABOUT SSDI STATUS AND CONTINUE TO F/U EVERY 60 DAYS FOR A STATUS. DCM WILL REVIEW THE CLAIM FOR AO

**11/13/2019 2:25 PM - MDS Note**
Claim/Leave: 8220685
Episode #: 1
Nurse Name: VAN DYKE, JACQUELINE
Service #: 16856544
Service Date: 11/13/2019
Activity: NURSE REVIEW, FILE REVIEW

**Lincoln/Bunch 0061**

Contact Information: CLAIMS, DANIELLE, DAVIS
Note Type: INFORMATION OBTAINED DESC
Text: SEE MDS MEMORANDUM IN DOC LIST.

**11/05/2019 12:57 PM - CLAIM Note 94**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Managed Care
Other Subject : FFR LVL 2
Text: [11/05/2019 - DAVIS, DANIELLE]LDW 2/13/2018 DOD 2/14/2018 BBD 8/15/2018 CID 08/14/2020 DX CONVERGENCE INSUFFICIENCY, VERTICAL HETEROPHORIA, AND MYOPIC ASTIGMATISM.FFR COMPLETED FOR AN APPEAL. IMPAIRMENT IS SUPPORTED BASED ON HIS OPHTHALMOLOGIC DIAGNOSES WHICH TRANSLATED TO RESTRICTIONS ON THE LENGTH OF TIME THE CLAIMANT WOULD BE REQUIRED TO READ OR USE A COMPUTER. HE IS LIMITED TO PERFORMING THESE TASKS FOR 15 MINUTES AT A TIME FOLLOWED BY A 15 MINUTE BREAK FROM SUCH ACTIVITIES. THE OA LISTSVISUAL ACUITY AS OCCASIONAL. PER DISCUSSION WITH VCM IT WAS NOTED THAT HIS OCCUPATION WOULD NOT AFFORD HIM THE ABILITY TO TAKE THESE NECESSARY BREAKS AS HE TRAVELS AND PRESENTS SALES IN HOMES AND TO CUSTOMERS. MDS REVIEW QUESTION- (ALL MEDICAL RECORDS HAVE BEEN OBTAIN FOR THE CLAIM- BASED ON THE UPDATED MEDICAL RECORDS ON FILE DOES IT CONTINUE TO SUPPORT DISABILITY AND IF YES FOR WHAT DURATION WITH R/L S? OKAY TO CALL AP OR SEND THE CLAIM FOR A FFR IS NEEDED)

**11/05/2019 12:54 PM - CLAIM Note 93**
Claim/Event/Leave: 8220685
NoteSubject : Action Plan
Other Subject : RTW OO DEC 2019
Text: [11/05/2019 - DAVIS, DANIELLE]LDW 2/13/2018 DOD 2/14/2018 BBD 8/15/2018 CID 08/14/2020 DX CONVERGENCE INSUFFICIENCY, VERTICAL HETEROPHORIA, AND MYOPIC ASTIGMATISM.FFR COMPLETED FOR AN APPEAL. IMPAIRMENT IS SUPPORTED BASED ON HIS OPHTHALMOLOGIC DIAGNOSES WHICH TRANSLATED TO RESTRICTIONS ON THE LENGTH OF TIME THE CLAIMANT WOULD BE REQUIRED TO READ OR USE A COMPUTER. HE IS LIMITED TO PERFORMING THESE TASKS FOR 15 MINUTES AT A TIME FOLLOWED BY A 15 MINUTE BREAK FROM SUCH ACTIVITIES. THE OA LISTSVISUAL ACUITY AS OCCASIONAL. PER DISCUSSION WITH VCM IT WAS NOTED THAT HIS OCCUPATION WOULD NOT AFFORD HIM THE ABILITY TO TAKE THESE NECESSARY BREAKS AS HE TRAVELS AND PRESENTS SALES IN HOMES AND TO CUSTOMERS.-ACTION PLAN THE CLAIM IS CURRENTLY UNDERREVIEW ONCE THE REVIEW HAS BEEN COMPLETED DCM WILL DETERMINE DISABILITY.

**11/05/2019 12:51 PM - CLAIM Note 92**
Claim/Event/Leave: 8220685
NoteSubject : Medical Status
Other Subject :
Text: [11/05/2019 - DAVIS, DANIELLE]***THIS EMAIL IS FROM AN EXTERNAL SOURCE. ONLY OPEN LINKS AND ATTACHMENTS FROM A TRUSTED SENDER.*** HI DANIELLE, PLEASE BE ADVISED, WE RECEIVED A RESPONSE, THE FACILITY WAS UNABLE TO PROCESS THE REQUEST AS THEREWERE NO RECORDS FOR THE TIME FRAME REQUESTED. WE CALLED AND SPOKE TO PATTY, AND VERIFIED THAT THE PATIENT WAS LAST SEEN ON APRIL 29, 2019 BY THE WHOLE FACILITY. HE HAS NOT BEEN SEEN BY OTHER PHYSICIAN OR DOCTOR EVER SINCE. PLEASE ADVISE ON HOW TO PROCEED. REGARDS, AYEN

**10/28/2019 3:23 PM - CLAIM Note 91**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [10/28/2019 - DAVIS, DANIELLE]EMAILED RELEASE POINT ABOUT THE REQUEST PENROSE OUTPATIENT REHABILA

**10/08/2019 8:52 AM - CLAIM Note 90**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [10/08/2019 - DAVIS, DANIELLE]A LETTER FROM SHAKESHAFT & GORMAN LAW FIRM AND MEDICAL RECORDS FROM HIGGINBOTHAM 5/7/2019-08/06/2019

**10/01/2019 10:22 AM - CLAIM Note 89**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [10/01/2019 - DAVIS, DANIELLE]AUTHO RECEIVED AND EMAILED TO RP

**09/26/2019 12:48 PM - CLAIM Note 88**
Claim/Event/Leave: 8220685
NoteSubject : LTR to EE
Other Subject :
Text: [09/26/2019 - DAVIS, DANIELLE]30 DAY LETTER MAILED

**09/26/2019 12:43 PM - PHONE Note 24**
Claim/Event/Leave: 8220685
NoteSubject : Other Called
Other Subject :
Text: [09/26/2019 - DAVIS, DANIELLE]LEFT VM FOR BRANDY ABOUT POF SSDI AND AUTHO FAXED TO OBTAIN MEDICAL RECORDS FOR THE CLAIM

**Lincoln/Bunch 0062**

**09/09/2019 2:03 PM - CLAIM Note 87**
Claim/Event/Leave: 8220685
NoteSubject : Medical Status
Other Subject :
Text: [09/09/2019 - DAVIS, DANIELLE]PENROSE MAIN ST. FRANCIS HOSPITAL-PLEASE BE ADVISED THAT WE HAVE BEEN INFORMED THAT YOUR MEDICAL PROVIDER IS REQUESTING A SIGNED HIPAA COMPLIANT AUTHORIZATION TO BE SIGNED BEFORE RECORDS WILL BE RELEASED. PLEASE USE THEINCLUDED LINK TO HAVE THE CLAIMANT SIGN THE ATTACHED HIPAA AUTHORIZATION FORM.

**09/09/2019 12:33 PM - CLAIM Note 86**
Claim/Event/Leave: 8220685
NoteSubject : Med Records Rcvd
Other Subject :
Text: [09/09/2019 - DAVIS, DANIELLE]THOMAS HIGGINBOTHAM, DO- OV NOTES DATED 06/04/2019-08/06/2019

**09/05/2019 10:15 AM - CLAIM Note 85**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [09/05/2019 - YEREMIAN, KEVORK]INVOICE RECEIVED ON 08/21/2019 AND DATED 05/23/2019 FROM MLS GROUP OF COMPANIES. INV # 51109-1, IN THE AMOUNT OF $1365.00 FOR PEER REVIEW PERFORMED BY BRADLEY DAVITT WITH A SPECIALTY IN OPHTHALMOLOGY. DATES OF SERVICE 05/23/2019 INVOICE PAID IN FULL.

**08/28/2019 3:51 PM - PHONE Note 23**
Claim/Event/Leave: 8220685
NoteSubject : Called Other
Other Subject :
Text: [08/28/2019 - DAVIS, DANIELLE]LEFT MSG WITH CINDY THAT INCOME VERIFICATION LETTER, SSDI POF, AND N/P FOR MEDICAL RECORDS WERE FAXED TO BRANDY

**08/28/2019 3:47 PM - CLAIM Note 84**
Claim/Event/Leave: 8220685
NoteSubject : LTR to Other
Other Subject :
Text: [08/28/2019 - DAVIS, DANIELLE]INCOME VERIFICATION LETTER, N/P FOR SSDI POF 30 DAY 09/26/2019 45 DAY 10/11/2019 .. N/P FOR MEDICAL RECORDS 30 DAY 09/26/2019 45 DAY 10//1/2019 75 DAY 11/10/2019 - FAXED TO ATTY

**08/28/2019 3:39 PM - CLAIM Note 83**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject :
Text: [08/28/2019 - DAVIS, DANIELLE]REQ'D MEDICAL RECORDS VIA RELEASE POINT FROM THOMAS HIGGINBOTHAM, DO / PENROSE OUTPATIENT REHABILATATION FROM MAY 1, 2019 TO PRESENT FOR THIS PATIENT YOUR WEBORDER TRANSACTION ID IS: 53826108 TRANSACTION DATE: 2019-08-28 12:38:24 WITH AUTHO

**08/28/2019 2:38 PM - PHONE Note 22**
Claim/Event/Leave: 8220685
NoteSubject : Other Called
Other Subject :
Text: [08/28/2019 - DAVIS, DANIELLE]TUESDAY, AUGUST 27, 2019 1:46:05 PM (UTC-08:00) PACIFIC TIME (US & CANADA)- WANTED A LETTER WITH EE PAYMENT INFORMATION

**08/21/2019 7:36 AM - CLAIM Note 82**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : INV
Text: [08/21/2019 - GRYGIEL, COURTNEY]REC'D PAYMENT REQUEST FOR INVOICE DATED 5/23/196 FROM MLS (51109-1) IN THE AMOUNT OF $1365.00 FOR DR. BRADLEY DAVITT PEER REVIEW. REFERRED TO J. BEST FOR PAYMENT.

**07/31/2019 12:08 PM - PHONE Note 21**
Claim/Event/Leave: 8220685
NoteSubject : Other Called
Other Subject :
Text: [07/31/2019 - RANSOM, SEAN]ATTY CALLED TO SEE IF CLM HAD BEEN PAID. DCM ADV THAT PMT WAS PROCESSED ON 7/30/19

**07/30/2019 11:50 AM - CLAIM Note 81**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : PAYMENT SERVICES
Text: [07/30/2019 - KEEFER, JESSICA]SCHEDULED BENEFITS FROM BBD OF 8/15/18 TO END OF OWN OCC PERIOD 8/14/2020 AS REQUESTED BY DCM. ADDED WC OFFSET IN THE AMOUNT OF $4108.65 FROM 8/15/18-10/16/18 PER WC INFO IN DOC LIST SHOWING A WEEKLY RATE OF $948.15. EERECEIVED WC SETTLEMENT IN THE AMOUNT OF $79899.00 DATED 1/3/19 IN THE DOC LIST. ADDED OFFSET IN THE AMOUNT OF $1331.65 MONTHLY FROM 1/3/19 1/2/2024 WHICH IS 5 YEARS BASED ON

**Lincoln/Bunch 0063**

THE DOC LIST: ADDED OFFSET IN THE AMOUNT OF $1331.65 MONTHLY FROM 1/3/19-1/2/2024 WHICH IS 5 YEARS BASED ON THE LUMP SUM PROVISION IN THE CONTRACT. EE HAS NO OTHER INCOME AT THIS TIMETO OFFSET.

**07/19/2019 2:28 AM - CLAIM Note 80**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : PMNT
Text: THE SCORE REFERRAL FOR PAYMENT SERVICES REFERRAL AND PAYMENT ADJUSTMENT AND A REASON OF OFFSETS HAS BEEN REASSIGNED TO JESSICA KEEFER.

**07/18/2019 10:43 AM - PHONE Note 20**
Claim/Event/Leave: 8220685
NoteSubject : Other Called
Other Subject :
Text: [07/18/2019 - DAVIS, DANIELLE]TALKED WITH BRANDY AND EXPLAINED I RECEIVED HER FAX AND THE UPDATED INFORMATION HAS BEEN FORWARDED TO OUR PAYMENT SPECIALIST. PLEASE ALLOW UP TO 10 BUS DAYS FOR THE CLAIM TO BE REVIEWED FOR HIS PAYMENTS. I WILL LET HERKNOW IF ANYTHING ELSE IS NEEDED OR I WILL HAVE THE PAYMENT SPECIALIST REACH OUT TO HER ABOUT THE PAYMENT IF NEEDED.

**07/18/2019 2:28 AM - CLAIM Note 79**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : PMNT
Text: THE SCORE REFERRAL FOR PAYMENT SERVICES REFERRAL AND PAYMENT ADJUSTMENT AND A REASON OF OFFSETS HAS BEEN RECEIVED AND ASSIGNED TO CATHERINE WADE.

**07/18/2019 2:28 AM - CLAIM Note 78**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : PMT SVC
Text: FOR OFFSETS. COMMENTS: WC OFFSET

**07/17/2019 3:36 PM - PHONE Note 19**
Claim/Event/Leave: 8220685
NoteSubject : Called Other
Other Subject :
Text: [07/17/2019 - DAVIS, DANIELLE]LEFT VM WITH BRANDY TO CALL DCM ON THE CLAIM 7196355886

**07/17/2019 3:35 PM - PHONE Note 18**
Claim/Event/Leave: 8220685
NoteSubject : Other Called
Other Subject :
Text: [07/17/2019 - DAVIS, DANIELLE]TUESDAY, JULY 16, 2019 10:12:51 AM (UTC-08:00) PACIFIC TIME (US & CANADA)- BRANDY

**07/17/2019 9:03 AM - CLAIM Note 77**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : PAYMENT SERVICES
Text: [07/17/2019 - KEEFER, JESSICA]OFFSET REFERRAL RECEIVED TO ADD WC SETTLEMENT OFFSET. ADVISED DCM THAT ADDITIONAL INFORMATION IS NEEDED. DCM WILL FOLLOW UP WITH ATTNY TO REQUEST ADDITIONAL PAGES OF FINAL ADMISSION OF LIABILITY DOC, CONFIRM FINAL AMOUNTOF SETTLEMENT AS MULTIPLE AMOUNTS ARE LISTED, OBTAIN A COPY OF THE SETTLEMENT WHERE THE JUDGE HAS SIGNED OFF ON IT, AND A COPY WITH THE RESPONDENT ATTORNEY'S SIGNATURE. ONCE THIS INFORMATION IS RECEIVED. DCM WILL RESCORE TO ADD THE OFFSET. CLOSINGCURRENT REFERRAL WITH NOACTION TAKEN AT THIS TIME.

**07/16/2019 1:58 PM - CLAIM Note 76**
Claim/Event/Leave: 8220685
NoteSubject : LTR to EE
Other Subject :
Text: [07/16/2019 - DAVIS, DANIELLE]FAXED UPDATED AUHTO FORMS TO BE SIGNED, SSDI PF NEEDED DEADLINE 30 DAY 8/14/2019 45 DAY 8/29/2019 AND LETTER WITH WC INFORMATION NEEDED

**07/16/2019 1:03 PM - PHONE Note 17**
Claim/Event/Leave: 8220685
NoteSubject : Called Other
Other Subject :
Text: [07/16/2019 - DAVIS, DANIELLE]TALKED WITH KENNETH AND HE TRANSFERRED TO BRANDY- STATED THAT SHE FAXED THE INFORMATION FOR CLAIM- LEFT MSG WITH BRANDY TO F/U WITH DCM ABOUT MISSING INFORMATION TO CALCU EE;S PAYMENT.

**07/16/2019 2:27 AM - CLAIM Note 75**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : PMNT
Text: THE SCORE REFERRAL FOR PAYMENT SERVICES REFERRAL AND PAYMENT ADJUSTMENT AND A REASON OF

**Lincoln/Bunch 0064**

OFFSETS HAS BEEN REASSIGNED TO JESSICA KEEFER.

**07/11/2019 9:38 AM - CLAIM Note 74**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [07/11/2019 - DAVIS, DANIELLE]ADDED A LETTER FROM SHAKESHAFT - GORMAN LAW FIRM, SSDI REIM, AND EIF.

**07/10/2019 3:43 PM - CLAIM Note 73**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [07/10/2019 - MUELLER, JACQUELINE]INVOICE RECEIVED ON 06/25/2019 AND DATED 06/24/2019 FROM MLS INV #539911 IN THE AMOUNT OF $577.50 FOR OPHTHAL PEER REVIEW PERFORMED BY BRADLEY DAVITT . INVOICE PAID IN FULL.

**07/10/2019 11:49 AM - PHONE Note 16**
Claim/Event/Leave: 8220685
NoteSubject : Called Other
Other Subject : ATTY
Text: [07/10/2019 - WALLACH, KRYSTAL]DCM CALLED (719) 635-5886 AND SPOEK WITH JENNY. DCM ASKED THAT THE FAX THAT WAS SENT OVER DATES 6/12 AND MEDICAL DATED 5/7 BE REFAXED TO 603-559-1994. CALLER ADVISED SHE WOULD ASK THE PERSON HANDLING THIS CLAIM TO SEND IT OVER. DCM THANKED AND CALL ENDED.

**07/03/2019 9:25 AM - CLAIM Note 72**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : SHAKESHAFT-GORMAN LA
Text: [07/03/2019 - WALLACH, KRYSTAL]RECEIVED LETTER FROM ATTY OFFICE DATED 6/12/19 - MEDICAL FROM HIGGINBOTHAM DATED 5/7/19.

**07/01/2019 12:33 PM - CLAIM Note 71**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : PMT SVCS
Text: [07/01/2019 - MONAHAN, JAQUELINE]REFERRAL TO ADD WCOF TO CLAIM; HOWEVER, DCM WORKING WITH ATTORNEY TO HAVE COMPLETE INFORMATION IN ORDER TO SET-UP THE OFFSET CORRECTLY. CLOSED REFERRAL AND INFORMED DCM TO SUBMIT NEW REFERRAL ONCE COMPLETE INFORMATION IN FILE.[07/01/2019 - MONAHAN, JAQUELINE] **DISREGARD PRIOR NOTE** REFERRAL WILL BE KEPT PENDING AND UPON RECEIPT OF INFORMATION, THE OFFSET WILL BE REVIEWED BY SENIOR AND ADDED BY FS.

**06/26/2019 12:56 PM - PHONE Note 15**
Claim/Event/Leave: 8220685
NoteSubject : Called Other
Other Subject :
Text: [06/26/2019 - DAVIS, DANIELLE]TALKED WITH KENNETH- EXPLAINED THAT THE FOLLOWING INFORMATION IS NEEDED- THE FINAL ADMISSION OF LIABILITY DOCUMENT IS MISSING PAGES 2,3 AND 4. WE WILL NEED THESE PAGES AS THAT IS WHERE THE BREAKDOWN OF THE SETTLEMENT SHOULD BE. ON THE WC CLAIM SETTLEMENT AGREEMENT THERE ARE SEVERAL AMOUNTS LISTED THROUGHOUT AND WE ARE NOT CLEAR ON WHAT THE ACTUAL SETTLEMENT AMOUNT WAS. ON THE WC CLAIM SETTLEMENT AGREEMENT THERE IS NO SIGNATURE FROM THE JUDGE (SEE PAGE 11 OF12). WE WILL NEED A COPY OF THE FINAL SIGNED DOCUMENT. ON THE WC CLAIM SETTLEMENT AGREEMENT THERE IS NO SIGNATURE FROM THE RESPONDENT ATTORNEY (SEE PAGE 12 OF 12). WE WILL NEED A COPY OF THE FINAL SIGNED DOCUMENT ALSO ASKED IF THE CLAIMANT OWNS APAWN SHOP AND IF HE IS CURRENTLY WRITING ARTICLE FOR ADDITIONAL INCOME.. HE CONFIRMED THAT THE CLAIMANT IS TREATING WITH DR. HELFFENSTEIN EVERY FEW MONTHS AND HE THINKS HIS LOV WAS IN MARCH. HE ALSO THINKS THAT THE CLAIMANT IS STILL IN SPEECH THERAPY. EXPLAINED THE N/P LETTER AND I WILL BE REQUESTING UPDATED MEDICAL RECORDS FOR THE CLAIM. HE ALSO INDICTED THAT THE CLAIMANT DOES NOT HAVE INSURANCE. I INFORMED HIM OF THE LAST REVIEW AND IT INDICATED RESTRICTIONS WERE NOT SUPPORTED BEYOND THEPRESENT WITHOUT REASSESSMENT AS THE CLAIMANT'S MOST RECENT RECORDS PROVIDED WAS FROM 11/21/18, OVER SIX MONTHS AGO.

**06/25/2019 11:38 AM - CLAIM Note 70**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : WC REFERRAL
Text: [06/25/2019 - MILLS, DONNA]WAITING ON SEVERAL OUTSTANDING ITEMS BEFORE THE WC OFFSET CAN BE PROCESSED.

**06/25/2019 2:27 AM - CLAIM Note 69**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : PMNT
Text: THE SCORE REFERRAL FOR PAYMENT SERVICES REFERRAL AND PAYMENT ADJUSTMENT AND A REASON OF OFFSETS HAS BEEN RECEIVED AND ASSIGNED TO DONNA MILLS.

**06/25/2019 2:27 AM - CLAIM Note 68**
Claim/Event/Leave: 8220685

Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : PMT SVC
Text: FOR OFFSETS. COMMENTS: WC-OFFSET NEEDED-LETTER RECEIVED IN THE DOC LIST

**06/21/2019 12:17 PM - OVERPMT Note 1**
Claim/Event/Leave: 8220685
NoteSubject : OP/WC
Other Subject : REJECTED REFERRAL
Text: [06/21/2019 - MCGARY, KIRSTIE]REJECTED WC REFERRAL AS NO LTD BENEFITS HAVE ISSUED. EMAIL TO DCM TO
SCORE AN OFFSET REFERRAL TO PS.

**06/21/2019 2:29 AM - CLAIM Note 67**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : FRS
Text: THE SCORE REFERRAL FOR FINANCIAL REVIEW SERVICES REFERRAL AND WORKERS COMPENSATION (WC) HAS
BEEN RECEIVED AND ASSIGNED TO KIRSTIE MCGARY.

**06/21/2019 2:28 AM - CLAIM Note 66**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : FRS
Text: FOR WORKERS COMPENSATION (WC).WITH A REASON OF .COMMENTS: AWARD LISTED IN THE DOC LIST

**06/20/2019 8:03 AM - CLAIM Note 65**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [06/20/2019 - DAVIS, DANIELLE]SCORED THE CLAIM TO FRS

**06/20/2019 7:52 AM - CLAIM Note 64**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [06/20/2019 - DAVIS, DANIELLE]ADDED- SSDI FILING AND WC INFORMATION

**06/18/2019 3:16 PM - PHONE Note 14**
Claim/Event/Leave: 8220685
NoteSubject : Called Other
Other Subject :
Text: [06/18/2019 - DAVIS, DANIELLE]CALLED AND LEFT VM WITH MY FAX NUMBER AND EMAIL ADDRESS TO DOCS.

**06/18/2019 3:12 PM - PHONE Note 13**
Claim/Event/Leave: 8220685
NoteSubject : Other Called
Other Subject :
Text: [06/18/2019 - DAVIS, DANIELLE]JUNE 18, 2019 9:36:05 AM (UTC-08:00) PACIFIC TIME (US & CANADA)-EE'S ATTORNEY
CALLED

**06/18/2019 11:51 AM - CLAIM Note 63**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : BENEFIT CALCULATION
Text: [06/18/2019 - MONAHAN, JAQUELINE]**PAYMENT NOT SET-UP, PENDING RECEIPT OF WC PAY AND DCM WILL REFER
FOR OFFSET, SET-UP PAYMENT AT THAT TIME** SET UP SCHEDULED PAYMENT BASED ON ELIG FILE EFF 01/01/18
INDICATES ANNUAL $107,543.52 / 12 MOS = $8961.96 BME. THE BENEFIT IS 60% OR $5,377.18. THE INITIAL PAYMENT
WORKSHEET HAS BEEN SAVED TO THE DOC LIST.

**06/13/2019 4:49 PM - PHONE Note 12**
Claim/Event/Leave: 8220685
NoteSubject : Other Called
Other Subject :
Text: [06/13/2019 - DAVIS, DANIELLE]THURSDAY, JUNE 13, 2019 8:09:25 AM (UTC-08:00) PACIFIC TIME (US & CANADA)

**06/13/2019 4:48 PM - PHONE Note 11**
Claim/Event/Leave: 8220685
NoteSubject : Called Other
Other Subject :
Text: [06/13/2019 - DAVIS, DANIELLE]TALKED WITH EE S ATTORNEY. HE IS GOING TO SEND SSDI POF AND WC
INFORMATION.

**06/13/2019 2:30 AM - CLAIM Note 62**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Special Invest

**Lincoln/Bunch 0066**

NoteSubject : Ref to Special Invest
Other Subject : SCORE REFERRAL
Text: 6/12/2019 - REFERRED TO SIU FOR DATABASE SEARCH. TYPE OF SERVICE(S) REQUESTED: - CHOICEPOINT - SOCIAL MEDIA.

**06/13/2019 2:29 AM - CLAIM Note 61**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : PMNT
Text: THE SCORE REFERRAL FOR PAYMENT SERVICES REFERRAL AND INITIAL PAYMENT CALCULATION HAS BEEN RECEIVED AND ASSIGNED TO JAQUELINE MONAHAN.

**06/12/2019 2:14 PM - CLAIM Note 60**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : SIU
Text: [06/12/2019 - MOORE, CURTIS]DATABASE = COVENTBRIDGE

**06/12/2019 2:09 PM - CLAIM Note 59**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [06/12/2019 - DAVIS, DANIELLE]DATABASE SEARCH -REQ'D

**06/12/2019 12:49 PM - CLAIM Note 58**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject :
Text: [06/12/2019 - DAVIS, DANIELLE]EMAILED MLS TO CONFIRM IF THE CLAIM CAN BE REVIEWED FOR AN ADDENDUM

**06/12/2019 12:26 PM - CLAIM Note 57**
Claim/Event/Leave: 8220685
NoteSubject : LTR to EE
Other Subject :
Text: [06/12/2019 - DAVIS, DANIELLE]SSDI POF DEADLINE 7/26/2019

**06/12/2019 12:23 PM - CLAIM Note 56**
Claim/Event/Leave: 8220685
NoteSubject : LTR to Other
Other Subject :
Text: [06/12/2019 - DAVIS, DANIELLE]APPROVAL LETTER WITH FORMS TO SHAKESHAFT-GORMAN LAW FIRM

**06/12/2019 2:30 AM - CLAIM Note 55**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : PMT SVC
Text: FOR INITIAL PAYMENT CALCULATION. COMMENTS: INITIAL PAYMENT

**06/11/2019 3:14 PM - CLAIM Note 54**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : MANAGER REVIEW
Text: [06/11/2019 - JONES, GABRIEL]AGREE WITH APPROVAL AND ACTION PLAN

**06/11/2019 1:37 PM - CLAIM Note 53**
Claim/Event/Leave: 8220685
NoteSubject : Action Plan
Other Subject : RTW OO AUG 2019
Text: [06/11/2019 - DAVIS, DANIELLE]LDW 2/13/2018 DOD 2/14/2018 BBD 8/15/2018 CID 08/14/2020 DX CONVERGENCE INSUFFICIENCY, VERTICAL HETEROPHORIA, AND MYOPIC ASTIGMATISM.FFR COMPLETED FOR AN APPEAL. IMPAIRMENT IS SUPPORTED BASED ON HIS OPHTHALMOLOGIC DIAGNOSES WHICH TRANSLATED TO RESTRICTIONS ON THE LENGTH OF TIME THE CLAIMANT WOULD BE REQUIRED TO READ OR USE A COMPUTER. HE IS LIMITED TO PERFORMING THESE TASKS FOR 15 MINUTES AT A TIME FOLLOWED BY A 15 MINUTE BREAK FROM SUCH ACTIVITIES. THE OA LISTSVISUAL ACUITY AS OCCASIONAL. PER DISCUSSION WITH VCM IT WAS NOTED THAT HIS OCCUPATION WOULD NOT AFFORD HIM THE ABILITY TO TAKE THESE NECESSARY BREAKS AS HE TRAVELS AND PRESENTS SALES IN HOMES AND TO CUSTOMERS. ACTION DCM WILL OBTAIN UPDATED MEDICALRECORDS FOR DETERMINE ONGOING DISABLE AND SEND A LETTER NOTING THAT SSDI POF IS NEEDED FOR THE CLAIM AND 45 DAY DEADLINE. THE CURRENT RESTRICTIONS ARE NOT SUPPORTED BEYOND THE PRESENT WITHOUT REASSESSMENT AS THE CLAIMANT'S MOST RECENT RECORD PROVIDED WAS FROM 11/21/18, SIX MONTHS AGO. THEREFORE ONGOING RECORDS ARE NEEDED[06/11/2019 - DAVIS, DANIELLE]DCM WILL ALSO REVIEW THE CLAIM FOR THE QUESTIONABLE WC CLAIM THAT IS PENDING DUE TO A MVA ON 02/13/2019

**06/11/2019 1:36 PM - CLAIM Note 52**
Claim/Event/Leave: 8220685
NoteSubject : Approved
Other Subject :

**Lincoln/Bunch 0067**

Text: [06/11/2019 - DAVIS, DANIELLE]LDW 2/13/2018 DOD 2/14/2018 BBD 8/15/2018 CID 08/14/2020 DX CONVERGENCE INSUFFICIENCY, VERTICAL HETEROPHORIA, AND MYOPIC ASTIGMATISM.FFR COMPLETED FOR AN APPEAL. IMPAIRMENT IS SUPPORTED BASED ON HIS OPHTHALMOLOGIC DIAGNOSES WHICH TRANSLATED TO RESTRICTIONS ON THE LENGTH OF TIME THE CLAIMANT WOULD BE REQUIRED TO READ OR USE A COMPUTER. HE IS LIMITED TO PERFORMING THESE TASKS FOR 15 MINUTES AT A TIME FOLLOWED BY A 15 MINUTE BREAK FROM SUCH ACTIVITIES. THE OA LISTSVISUAL ACUITY AS OCCASIONAL. PER DISCUSSION WITH VCM IT WAS NOTED THAT HIS OCCUPATION WOULD NOT AFFORD HIM THE ABILITY TO TAKE THESE NECESSARY BREAKS AS HE TRAVELS AND PRESENTS SALES IN HOMES AND TO CUSTOMERS.

**06/11/2019 1:36 PM - CLAIM Note 51**
Claim/Event/Leave: 8220685
NoteSubject : Reopen
Other Subject :
Text: [06/11/2019 - DAVIS, DANIELLE]LDW 2/13/2018 DOD 2/14/2018 BBD 8/15/2018 CID 08/14/2020 DX CONVERGENCE INSUFFICIENCY, VERTICAL HETEROPHORIA, AND MYOPIC ASTIGMATISM.FFR COMPLETED FOR AN APPEAL. IMPAIRMENT IS SUPPORTED BASED ON HIS OPHTHALMOLOGIC DIAGNOSES WHICH TRANSLATED TO RESTRICTIONS ON THE LENGTH OF TIME THE CLAIMANT WOULD BE REQUIRED TO READ OR USE A COMPUTER. HE IS LIMITED TO PERFORMING THESE TASKS FOR 15 MINUTES AT A TIME FOLLOWED BY A 15 MINUTE BREAK FROM SUCH ACTIVITIES. THE OA LISTSVISUAL ACUITY AS OCCASIONAL. PER DISCUSSION WITH VCM IT WAS NOTED THAT HIS OCCUPATION WOULD NOT AFFORD HIM THE ABILITY TO TAKE THESE NECESSARY BREAKS AS HE TRAVELS AND PRESENTS SALES IN HOMES AND TO CUSTOMERS.

**06/07/2019 8:29 AM - CLAIM Note 50**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : ATTY PAPEROWRK AND R
Text: [06/07/2019 - WALLACH, KRYSTAL]RECEIVED LETTER FROM ATTY AND ADDITIONAL MEDICAL RECORDS.

**06/05/2019 5:28 PM - CLAIM Note 49**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : OUT/OVERTURN
Text: [06/05/2019 - GRYGIEL, COURTNEY]THE APPEAL DETERMINATION TO DENY BENEFITS IS OVERTURNED. THE INFORMATION RECEIVED AND REVIEWED ON APPEAL DOES OFFER FINDINGS TO ALTER THE PRIOR DECISION TO DENY BENEFITS. LETTER TO ATTORNEY AND FILE RTF FOR ONGOING CLAIM MANAGEMENT.

**06/03/2019 2:57 PM - CLAIM Note 48**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : REVIEW
Text: [06/03/2019 - SNEIRSON, KARILANN]AGREE

**05/31/2019 11:36 AM - CLAIM Note 47**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject :
Text: [05/31/2019 - GRYGIEL, COURTNEY]APPEAL UNDER MANAGER REVIEW

**05/31/2019 10:44 AM - CLAIM Note 46**
Claim/Event/Leave: 8220685
NoteSubject : Peer Review
Other Subject : RECEIVED
Text: [05/31/2019 - GRYGIEL, COURTNEY]MLS OPHTHALMOLOGY PEER REVIEW RECEIVED AND REVIEWED.

**05/17/2019 2:29 AM - CLAIM Note 45**
Claim/Event/Leave: 8220685
NoteSubject : Voc Rehab
Other Subject : CLAIM/EVENT TO VCM
Text: 5/16/2019-REFERRAL RECEIVED BY VCM AND ASSIGNED TO HALL, NICOLE ANN. CLAIM/AS EVENT IS PENDING REVIEW.

**05/16/2019 1:58 PM - CLAIM Note 44**
Claim/Event/Leave: 8220685
NoteSubject : Voc Rehab
Other Subject : OA
Text: [05/16/2019 - HALL, NICOLE]RCVD REFERRAL FOR OA REPORT; COMPLETED OA AND PLACED IN S1 WITH NOTIFICATION TO CCM. PLACED OA SUMMARY BELOW: THE EMPLOYER REQUIREMENTS OF THE JOB ARE GREATER THAN THAT OF THE NATIONAL REQUIREMENTS OF THE OCCUPATION. THE OCCUPATION IS MOST OFTEN PERFORMED AT THE LIGHT LEVEL IN THE NATIONAL ECONOMY PER THE DOT. PART-TIME OPPORTUNITY DOES EXIST FOR THIS OCCUPATION IN THE NATIONAL ECONOMY.

**05/15/2019 3:05 PM - CLAIM Note 43**
Claim/Event/Leave: 8220685
NoteSubject : LTR to Atty
Other Subject :
Text: [05/15/2019 - GRYGIEL, COURTNEY]REPORTS BY DR. SWOTINKSY AND DR. BELLIVEAU SENT TO ATTORNEY FOR RIGHT TO REVIEW AND RESPOND. 21 DAY DUE DATE 6/4/19.

**Lincoln/Bunch 0068**

**05/15/2019 2:29 AM - CLAIM Note 42**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Voc Rehab
Other Subject : SCORE REFERRAL
Text: 5/14/2019 - REFERRED TO THE VOC UNIT FOR OCCUPATIONAL ANALYSIS.

**05/15/2019 2:28 AM - CLAIM Note 41**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 5/14/2019 - REFERRED TO MLS GROUP OF COMPANIES FOR PEER REVIEW.

**05/14/2019 3:27 PM - CLAIM Note 40**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : FILE COPY
Text: [05/14/2019 - CAMPBELL, CHERYL]COPY OF DOC LIST SENT TO MLS VIA CITRIX SHAREFILE.

**05/14/2019 10:56 AM - CLAIM Note 39**
Claim/Event/Leave: 8220685
NoteSubject : Peer Review
Other Subject :
Text: [05/14/2019 - GRYGIEL, COURTNEY]REFERRAL MADE TO FOR OPTHM. PEER REVIEW.

**05/02/2019 3:02 PM - CLAIM Note 38**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : COPY REQUEST
Text: [05/02/2019 - NILES, CATHY]SENT COPY OF THE COMPLETE FILE DATED APRIL, 4,2019 AND BELOW TO ATTY ON
SECURE THUMB DRIVE. SENT USP, 2 DAY. TRACKING #1Z24896X0297221308

**05/01/2019 2:28 AM - CLAIM Note 37**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 4/30/2019 - REFERRED TO CONSULTING PHYSICIAN FOR FULL REVIEW.

**04/30/2019 7:22 PM - CLAIM Note 36**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [04/30/2019 - GRYGIEL, COURTNEY]COPY REQUEST SENT TO ADMIN FOR COPY OF FILE, POLICY AND COVER LETTER
SENT TO ATTY

**04/30/2019 9:44 AM - CLAIM Note 35**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : ADDEDUM REFERRAL
Text: [04/30/2019 - GRYGIEL, COURTNEY]REFERRAL MADE TO DR. SWOTINKSY FOR ADDENDUM TO HIS 4/23/19 REPORT.
ADDITIONAL MEDICAL RECORDS SUBMITTED FROM ATTORNEY.

**04/29/2019 12:08 PM - PHONE Note 10**
Claim/Event/Leave: 8220685
NoteSubject : Called Other
Other Subject :
Text: [04/29/2019 - GRYGIEL, COURTNEY]VMM REC'D ON 4/24/19 FROM ATTY SHAKESHAFT. HE REQUESTED RETURN CALL
TO DISCUSS INFORMATION OR WHAT RECORDS MIGHT BE MISSING FROM FILE AND HE COMMENTED ON THE TELEPHONE
CALL MADE TO DR. HIGGINBOTHAM FROM ICP. HE ALSOSTATED THAT HE REQUESTED A COPY OF THE CLAIM FILE AND
DOES NOT BELIEVE HE REC'D A COPY. I WAS OUT OF THE OFFICE WHEN HE LEFT MESSAGE- RETURNED CALL TODAY TO
AT 12:00 EST. SPOKE WITH HIS RECEPTIONIST WHO STATED SHE TAKES ALL OF HIS MESSAGES. ADVISEDHER THAT OUR
RECORD SHOW A COPY OF THE CLAIM FILE WAS SENT UPS ON 11/12/18 TO HIS OFFICE AND THAT I RECEIVED THE
ADDITIONAL MEDICAL INFORMATION AND REQUEST FOR COPY OF THE CLAIM FILE. I TOLD HER THAT I WOULD HAVE
ANOTHER COPY OF CLAIM FILE SENT TOHIS OFFICE AND ACKNOW. THE ADDITIONAL INFORMATION SUBMITTED.

**04/18/2019 2:30 AM - CLAIM Note 34**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 4/17/2019 - REFERRED TO CONSULTING PHYSICIAN FOR FULL REVIEW.

**04/17/2019 7:08 AM - CLAIM Note 33**
Claim/Event/Leave: 8220685
NoteSubject : LTR to Atty
Other Subiect :

**Lincoln/Bunch 0069**

Other Subject :
Text: [04/17/2019 - GRYGIEL, COURTNEY]STATUS LETTER SENT TO ATTORNEY ADVISING OF DELAY AND EXTENSION DUE
TO MEDICAL REVIEW.

**04/13/2019 3:41 AM - CLAIM Note 32**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 4/12/2019 - REFERRED TO CONSULTING PHYSICIAN FOR FULL REVIEW.

**04/12/2019 9:36 AM - CLAIM Note 31**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [04/12/2019 - GRYGIEL, COURTNEY]REFERRAL MADE FOR ICP OCC MED REVIEW.

**04/10/2019 3:01 PM - CLAIM Note 30**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : IN
Text: [04/10/2019 - GRYGIEL, COURTNEY]APPEAL IN AND PROCESS.

**04/04/2019 1:22 PM - CLAIM Note 29**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : ASSIGNED TO ARC
Text: [04/04/2019 - GAUTHIER, MEGAN]PRE-SCREEN COMPLETE. CON LTD ERISA CLAIM REC'D 7/2/18. CLAIM DENIED NTD
OO; LTR SENT 9/15/18. 180 DAY APPEAL TIMEFRAME; 3/12/19 DEADLINE. JD/AUTH ON FILE. SINCE CLAIM CLOSURE, REC'D
MEDICAL RECORDS FROM AP CHRISTIANSEN 7/30/18 THRU 9/20/18. ON 11/9/18, REC'D NOTICE OF REP FROM SHAKESHAFT
& GORMAN LAW FIRM, LLP REQ CCF (SENT BY ADCM). ON 3/12/19, REC'D APPEAL LTR FROM ATTY WITH 2/19/19 OCC MED
EVAL (HIGGINBOTHAM); EE STATEMENT; EE QUESTIONNAIRES. DEADLINE HAS BEEN REACHED. ASSIGNED TO COURTNEY
GRYGIEL. APPEAL ACK TO ATTY.

**04/03/2019 8:33 AM - CLAIM Note 28**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : REC'D
Text: [04/03/2019 - GAUTHIER, MEGAN]ASSIGNED TO MEGAN GAUTHIER

**04/03/2019 2:28 AM - CLAIM Note 27**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Appeals
Other Subject : SCORE REFERRAL
Text: 4/2/2019 - REFERRED TO APPEALS UNIT FOR CLAIM REVIEW AND DETERMINATION.

**04/02/2019 2:06 PM - CLAIM Note 26**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : MANAGER REVIEW
Text: [04/02/2019 - JONES, GABRIEL]AGREE WITH REFERRAL TO ARU

**04/02/2019 11:05 AM - CLAIM Note 25**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : REASSIGNED
Text: [04/02/2019 - RAINES WOODLEY, ROSE]RAINES

**04/02/2019 11:03 AM - CLAIM Note 24**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Appeals
Other Subject : MANAGER REVIEW
Text: [04/02/2019 - RAINES WOODLEY, ROSE]DCM RECOMMENDS REFERRAL TO APPEAL AT THIS TIME TO DETERMINE
R&L'S. CLAIM WAS PREVIOUSLY DENIED FOR NTD AND ON 3/12 WE RECEIVED IME AND APPEAL FROM EES ATTNY.

**04/02/2019 11:02 AM - LEAVE Note 1**
Claim/Event/Leave: 8220685
NoteSubject : Appeal
Other Subject : REQ AND IME
Text: [04/02/2019 - RAINES WOODLEY, ROSE]RECEIVED APPEAL REQ AND IME DATED 3/12/2019.

**11/12/2018 9:27 AM - CLAIM Note 23**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : COPY SHIPPED
Text: [11/12/2018 - ROSZELLE, MICHAEL]THUMB DRIVE COPY OF CORRESPONDENCE, CURRENT DOC LIST, CURRENT CLAIM

**Lincoln/Bunch 0070**

NOTES, COVERSHEET, CLAIM DETAIL SCREENS, EMPLOYEE DETAIL SCREENS, OVERFLOW DETAIL SCREENS, CHECK DETAIL SCREENS, AND LTD POLICY SHIPPED TO SHAKESHAFT-GORMAN LAW FIRM 1935 JAMBOREE DRIVE, SUIT 202 COLORADO SPRINGS, CO 80920-0000 VIA 2ND DAY AIR UPS.

**11/09/2018 3:09 PM - CLAIM Note 22**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [11/09/2018 - WALLACH, KRYSTAL]RECEIVED REQUEST FOR FULL CLAIM FROM ATTY OFFICE.

**10/02/2018 9:58 AM - CLAIM Note 21**
Claim/Event/Leave: 8220685
NoteSubject : Med Records Rcvd
Other Subject : CHRISTIANSEN
Text: [10/02/2018 - WALLACH, KRYSTAL]RECEIVED OVN ON 9/30/18 DATED 7/30/18-9/20/18.

**09/21/2018 1:32 PM - CLAIM Note 20**
Claim/Event/Leave: 8220685
NoteSubject : Med Records Rcvd
Other Subject : CHRISTIANSEN
Text: [09/21/2018 - CARTER, KAYLA]MR RECEIVED FROM AP OFFICE. DOS: 7/30/18-9/6/18[09/27/2018 - CARTER, KAYLA] ADDITIONAL MR RECEIVED THROUGH 9/17/18.

**09/17/2018 3:15 PM - CLAIM Note 19**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [09/17/2018 - NEAULT, TAMIE]INVOICE RECEIVED ON 09/07/2018 FROM RELEASEPOINT. INV #708628, IN THE AMOUNT OF $41.50 FOR MEDICAL RECORDS. INVOICE PAID IN FULL

**09/14/2018 1:24 PM - PHONE Note 9**
Claim/Event/Leave: 8220685
NoteSubject : Called EE
Other Subject : RE DENIAL
Text: [09/14/2018 - WALLACH, KRYSTAL]DCM CALLED                 AND ADVISED THE MEDICAL DOES NOT SUPPORT HIS INABILITY TO DO HIS OWN JOB AND THEREFORE CLAIM HAS BEEN DENIED. EEDVISED HE CAN NOT DO HIS JOB AS HE HAS TO DRIVE OVER 300 MILES AND HE CAN NOT DRIVE. DCM ADVISED THE MEDICAL DID NOT SUPPORT HIS INABILITY TO DO THAT. DCM EXPLAINED HE HAS THE RIGHT TO APPEAL AND ADVISED OF THE APPEAL PROCESS. EE WAS UPSET AND DCM EXPLAINED WHEN HE GETS THE LETTER IF HE HAS ANY ADDITIONAL QUESTIONS TO CONTACTADCM. EE U/S AND CALL ENDED.

**09/14/2018 1:12 PM - CLAIM Note 18**
Claim/Event/Leave: 8220685
NoteSubject : LTR to EE
Other Subject : DENIAL
Text: [09/14/2018 - WALLACH, KRYSTAL]MAILED TO ASC.

**09/14/2018 12:58 PM - CLAIM Note 17**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : MANAGER REVIEW
Text: [09/14/2018 - BOVENDER, ANNA]AGREE WITH DENIAL

**09/13/2018 1:52 PM - CLAIM Note 16**
Claim/Event/Leave: 8220685
NoteSubject : Denied
Other Subject : REFER TO M1
Text: [09/13/2018 - CARTER, KAYLA]DCM RECOMMEND DENIAL FOR NOT TD BASED ON NEURO AND PSYCH CPIA'S ADVISING INFORMATION INSUFFICIENT TO SUPPORT R/LS AT THIS TIME.

**09/13/2018 1:46 PM - CLAIM Note 15**
Claim/Event/Leave: 8220685
NoteSubject : Peer Review
Other Subject :
Text: [09/13/2018 - CARTER, KAYLA]PEER REVIEW RECEIVED IN DOC LIST.[09/13/2018 - CARTER, KAYLA]PSYCH R/LS NOT SUPPORTED.

**09/10/2018 7:09 PM - CLAIM Note 14**
Claim/Event/Leave: 8220685
NoteSubject : Med Records Rcvd
Other Subject : CHRISTIANSEN
Text: [09/10/2018 - CARTER, KAYLA]MR RECEIVED FROM AP OFFICE. DOS: 7/30/18-8/27/18

**09/07/2018 11:54 AM - CLAIM Note 13**
Claim/Event/Leave: 8220685

**Lincoln/Bunch 0071**

Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : CPIA
Text: [09/07/2018 - CARTER, KAYLA]NEURO CPIA RECEIVED, RECOMMENDATION TO REFER TO PSYCH FOR FFR. PSYCH
CPIA PENDING.

**08/31/2018 2:59 PM - PHONE Note 8**
Claim/Event/Leave: 8220685
NoteSubject : Called EE
Other Subject :
Text: [08/31/2018 - CARTER, KAYLA]DCM R/C TO EE AT          NO ANSWER. LEFT VMM.

**08/31/2018 2:57 PM - PHONE Note 7**
Claim/Event/Leave: 8220685
NoteSubject : EE Called
Other Subject :
Text: [08/31/2018 - CARTER, KAYLA]EE CALLED AND LEFT VMM ADVISING HE RECEIVED PAPERWORK FROM SECURIAN
FINANCIAL GROUP. PHONE:

**08/28/2018 4:16 PM - PHONE Note 6**
Claim/Event/Leave: 8220685
NoteSubject : Called Other
Other Subject : ATTNY
Text: [08/28/2018 - CARTER, KAYLA]DCM R/C TO KEN AT 719-635-5886. JENNY AT FRONT DESK ADVISED HE WAS NOT
AVAILABLE AND WOULD TAKE A MESSAGE. DCM THANKED.

**08/28/2018 4:15 PM - PHONE Note 5**
Claim/Event/Leave: 8220685
NoteSubject : Other Called
Other Subject : ATTNY
Text: [08/28/2018 - CARTER, KAYLA]ATTNY KENT CALLED AND LEFT VMM REGARDING EE CLAIM. KENT ADVISED HE IS
REPRESENTING EE FOR CAR ACCIDENT. PHONE: 719-635-5886

**08/23/2018 2:28 AM - CLAIM Note 12**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 8/22/2018 - REFERRED TO CONSULTING PHYSICIAN FOR DESK CONSULT.

**08/22/2018 2:28 AM - CLAIM Note 11**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 8/21/2018 - REFERRED TO CONSULTING PHYSICIAN FOR DESK CONSULT.

**08/21/2018 12:56 PM - CLAIM Note 10**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject :
Text: [08/21/2018 - CARTER, KAYLA]REFERRED FOR PSYCH AND PM&R CPIA.

**08/21/2018 12:49 PM - CLAIM Note 9**
Claim/Event/Leave: 8220685
NoteSubject : Med Records Rcvd
Other Subject : CHRISTIANSEN
Text: [08/21/2018 - CARTER, KAYLA]MR RECEIVED FROM AP OFFICE. DOS: 7/30/18-8/6/18

**08/17/2018 11:48 AM - CLAIM Note 8**
Claim/Event/Leave: 8220685
NoteSubject : Med Records Rcvd
Other Subject : HIGGINBOTHAM
Text: [08/17/2018 - CARTER, KAYLA]MR RECEIVED FROM AP OFFICE. 2/13/18-8/13/18

**08/16/2018 4:08 PM - PHONE Note 4**
Claim/Event/Leave: 8220685
NoteSubject : Called EE
Other Subject :
Text: [08/16/2018 - CARTER, KAYLA]DCM R/C TO EE AT          TO ADVISE MR RECEIVED FROM DR. HELFENSTEIN.
DCM ADVISED STILL WAITING ON DR. HIGGINBOTHAM AND DR. CHRISTIANSEN. EE ADVISED BOTH PROVIDERS ADVISED
THEY HAVE SENT RECORDS TO RP. DCM ACK AND ADVISED WILL LOOK OUT FOR RECORDS. EE ASKED ABOUT WC PAY,
DCM ADVISED WOULD BE AN OFFSET TO LTD. EE ACK AND HAD NFQ. EE THANKED.

**08/16/2018 3:42 PM - PHONE Note 3**
Claim/Event/Leave: 8220685
NoteSubject : EE Called

**Lincoln/Bunch 0072**

Other Subject :
Text: [08/16/2018 - CARTER, KAYLA]EE CALLED AND LEFT VMM ADVISING HE RECEIVED A LETTER FROM DCM ABOUT NEEDING ADDITIONAL MEDICAL RECORDS. PHONE:

**08/16/2018 9:03 AM - CLAIM Note 7**
Claim/Event/Leave: 8220685
NoteSubject : Med Records Rcvd
Other Subject : HELFENSTEIN
Text: [08/16/2018 - CARTER, KAYLA]MR RECEIVED FROM AP OFFICE. DOS: 6/1/18

**08/07/2018 10:14 AM - CLAIM Note 6**
Claim/Event/Leave: 8220685
NoteSubject : Ref to Other
Other Subject : RELEASEPOINT
Text: [08/07/2018 - CARTER, KAYLA]MR REQUESTED VIA RELEASEPOINT FROM DR. HIGGINBOTHAM, DR. HELFENSTEIN, AND DR. CHRISTIANSEN W/ MED AUTH. DOS: 2/1/2018-THE PRESENT.

**08/07/2018 9:39 AM - CLAIM Note 5**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject : ALL LTD FORMS
Text: [08/07/2018 - CARTER, KAYLA]CIF, CSS, AQ, FIQ, WC INFO RECEIVED IN DOC LIST.

**08/07/2018 9:34 AM - CLAIM Note 4**
Claim/Event/Leave: 8220685
NoteSubject : Med Records Rcvd
Other Subject : OLSON
Text: [08/07/2018 - CARTER, KAYLA]MR RECEIVED FROM AP OFFICE. DOS: 4/13/18-7/3/18

**07/19/2018 4:12 PM - PHONE Note 2**
Claim/Event/Leave: 8220685
NoteSubject : Initial EE Interview
Other Subject :
Text: [07/19/2018 - CARTER, KAYLA]DCM CALLED EE AT              TO COMPLETE 15 DAY F/U AND II. EE CX DOB, LDW: 2/13/2018 DOD: 2/14/2018 DX: CONCUSSION, MVA EE WAS THE DRIVER AND ACCIDENT TOOK PLACE ON 2/13/18, EE ADVISED HE WAS DRIVING HOME FROM WORK. EEIS CURRENTLY STILL OUT OF WORK AND DOES NOT HAVE A RETURN TO WORK DATE. EE ADVISED HE IS SEEING DR. HIGGINBOTTOM, EE LOV ON 7/17/18 AND NOV IS ON 7/31/18. EE ADVISED HE JUST FINISHED PT AND WILL NOW SEE A CHIRO FOR NECK ISSUES. JOB: DSR (LOTS OF WALKING, STANDING, DRIVING) NO OTHER SOURCES OF INCOME. EE CX MAILING ADDRESS. EE CX HE DID RECEIVE LETTER AND FORMS, EE ADVISED HE HASNT COMPLETED THEM YET BECAUSE HE NEEDS HELP COMPLETING THEM BECAUSE HIS VISION ISNT THAT GOOD. DCM ACK. DCM EXPLAINEDLTD BBD, MONTHLY BENEFIT, OO INVESTIGATION, AND NEED FOR FORMS AND MR. DCM ADVISED I DO NOT HAVE ACCESS TO EE WC CLAIM, SO WILL HAVE TO REQUEST MR FROM PROVIDERS. EE ACK AND ADVISED HE WILL WORK ON FORMS THIS WEEKEND AND GET THEM IN. DCM ADVISED OF N&P DEADLINE FOR FORMS AND MR. EE UNDERSTOOD AND THANKED.

**07/02/2018 3:40 PM - CLAIM Note 3**
Claim/Event/Leave: 8220685
NoteSubject : LTR to AP
Other Subject :
Text: [07/02/2018 - CARTER, KAYLA]NO TREATING PROVIDERS IN SEDGWICK SYSTEM TO REQUEST MR.

**07/02/2018 3:39 PM - CLAIM Note 2**
Claim/Event/Leave: 8220685
NoteSubject : Notice/Proof Review
Other Subject :
Text: [07/02/2018 - CARTER, KAYLA]EE PLACED ON N&P FOR MR FROM EE TREATING PROVIDERS AND LTD FORMS. DOS: 2/1/2018-THE PRESENT.

**07/02/2018 3:35 PM - PHONE Note 1**
Claim/Event/Leave: 8220685
NoteSubject : Initial EE Interview
Other Subject :
Text: [07/02/2018 - CARTER, KAYLA]DCM CALLED EE AT              TO COMPLETE II. NO ANSWER. LEFT VMM.

**07/02/2018 1:17 PM - CLAIM Note 1**
Claim/Event/Leave: 8220685
NoteSubject : Other
Other Subject :
Text: [07/02/2018 - HALL, TIFFANY]DCM CLAIM INFO FROM EMAIL (SEE DOC LIST). ASSIGNED TO LTD DCM

**Lincoln/Bunch 0073**

# Network Medical Review Company, LTD.

*An ExamWorks Company*

**INVOICE**

LINCOLN FINANCIAL GROUP - LLAOB

Attn:  DANIELL, JANE
8801 INDIAN HILLS DRIVE
OMAHA, NE 68114

Invoice Number:  506149-1
Invoice Date:  7/16/2021
Account Number:  519193
File Number:  506149-1

Service Date:  11/10/20 to - ongoing
Claim Number:  8220685
Claimant Name:  Mark B Bunch

| Description | | Amount |
|---|---|---|
| Initial | LTD | **$1207.50** |

**Comments**

**Please pay this amount:**                **$1207.50**

Remit to: Network Medical Review Company, LTD
        PO Box 492260
        Redding, Ca 96049-2260
  Tax ID 76-0711128

7/16/2021 4:37 PM

**Lincoln/Bunch 0074**



Lincoln Life Assurance Company of Boston
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5704

| | |
|---|---|
| Date: August 27, 2021 | |
| To:   KENNETH SHAKESHAFT<br>SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax:   (719) 635-0966 | |
| From: Jane Daniell<br>Appeals Specialist<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-5704 | |
| Total Pages<br>(Including Cover):     16 | |
| RE:<br><br>Claim #:     8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0091**



Lincoln Life Assurance Company of Boston
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5704

August 27, 2021

Kenneth J. Shakeshaft
Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE 202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

Dear Kenneth Shakeshaft:

Lincoln Life Assurance Company of Boston (Lincoln) is responsible for managing claims for Long Term Disability (LTD) benefits under the Charter Communications, Inc.'s Group Disability Policy. We reviewed Mark Bunch's appeal request for LTD benefits under the Charter Communications, Inc.'s Group Disability Income Policy and maintained the decision to deny benefits beyond November 9, 2020.

**Initial Claim Decision**

Mr. Bunch submitted a claim for his absence from work as of February 14, 2018, due to a concussion from a motor vehicle accident. His LTD benefits began on August 15, 2018. Therefore, the change in definition of disability occurred on August 14, 2020, and to receive benefits beyond 24 months he must be disabled from Any Occupation as defined in the Policy. Benefits beyond November 9, 2020 were denied as the evaluation concluded he was no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated November 16, 2020. Mr. Bunch was provided an opportunity to request an appeal review of the denial, stating the reasons why he felt that his claim should not have been denied, and submit additional information to support his claim. Specifically, he was advised to submit the following information:

> *"Office treatment notes, diagnostic test results, prescribed medications, procedure reports, exam findings, and specific restrictions/limitations given beyond November 9, 2020, that support your inability to perform one or more of the material and substantial duties of your Any Occupation.*

1   of   15

**Lincoln/Bunch 0092**

*You should also provide any additional information that you feel will support his claim."*

## Appeal

On April 15, 2021, we received an appeal from your office on behalf of Mr. Bunch. The letter stated the 180 day deadline would be May 14, 2021. Therefore, you requested a 30 day extension to provide additional information in support of Mr. Bunch's appeal.

Lincoln sent you a letter on May 4, 2021, provide your office with the extension. The letter stated the information was due by June 14, 2021.

On June 18, 2021, we received medical records from your office. The information included a May 25, 2021 Initial Rehab Psychology Evaluation and Concussion Review from Anthony Ricci, PhD. We also received the June 1, 2021 letter from Dr. Ricci addressed to your office.

We received additional information from your office on June 29, 2021. The information included a June 17, 2021 letter from Dr. Thomas Higginbotham.

## Appeal Evaluation

During the review of Mr. Bunch's claim, his claim was also reviewed by Dr. Lloyd Wilcox., an independent physician, Board Certified in Ophthalmology. Dr. Wilcox stated the primary impairing diagnoses included convergence insufficiency and visual disturbance (unspecified). After review of the medical documentation on file, Dr. Wilcox concluded:

*"This review is from the ophthalmology perspective only and does not address the specific neuro-psychological aspects of possible "vision" issues or some of the soft neurologic signs/symptoms that may be remotely related to vision symptoms. This review addresses only the standard and conventionally accepted medical signs, symptoms, and treatments for ophthalmic conditions.*

*The claimant has had a concussion without loss of consciousness from MVA in February 2018 and has been treating with AP Dr. Thomas Higginbotham O.D. since May 3, 2018 until February 25, 2020, the most recent examination in the chart. He last saw AP on June 18, 2020 but the is not in the file documents yet. The diagnosis of convergence insufficiency (CI) was made by Dr. Saxerud O.D. the optometrist, after finding a remote near point of convergence 20" (20 inches) and is supported by the medical record. The claimant was treated appropriately by prescribing prism glasses on July 13, 2018 and appropriately orthoptic exercises were recommended but it was unclear if they were performed. The claimant returned on August 17, 2018 and September 21, 2018 and during the September exam the near point of convergence had improved to 4 inches which is near-normal for his age. This finding should be expected to improve symptoms and visual functionality. By his last exam on November 21, 2018 symptoms have improved with reported better depth perception.*

*The impairing diagnosis is convergence insufficiency (CI) of mild level of severity and is supported in the medical record. It appears the CI is somewhat responsive to traditional standard treatment with prismatic glasses and possibly with orthoptic training exercises. Convergence*

2  of 15

*insufficiency is most often treatable but even if unresponsive it is not disabling vocationally unless the specific occupation demands a high degree of stereopsis and depth perception. If all else fails with treatment of CI, the person can always resort to the monocular state with occlusion of one eye and function visually. For most occupations including those that require reading and computer usage, a monocular person has the capacity for occupational functionality if they have good vision in the better eye. The claimant has 20/20 vision in both the right and left eye so he could occlude either eye and still have capability for work. Convergence insufficiency is not considered a significantly impairing diagnosis occupationally unless there is an impingement on the capacity to perform the occupational functionality in this case reading seeing computer work. The person with CI could have some visual fatigue when concentrating in the reading seeing computer work. The claimant's occupation is largely sedentary status, and a substantial portion is driving to appointments to engage in sales conversation. The impairing diagnosis does allow the claimant to have the capacity for occupational functionality in the sedentary status of computer/reading and driving given the following R and Ls with accommodations noted.*

*The following restrictions and limitations apply for CI in this case:*

- *no use of cranes or forklifts*
- *no specific jobs that require high degree of stereopsis/depth perception*
- *no use of industrialized motor carts equipment movers*
- *no heights*
- *no ladders*
- *no extreme overhead reaching*
- *use of computer work is limited to a work period of one hour followed by a 10 minute work break then repeat*

*The period of 10 minutes is to allow resting the eyes and local/personal orthoptic exercises e.g., pencil push-ups. This cycle of one hour on, 10 minutes off repeat, does not include driving which uses the far vision rather than the near vision that brings on the symptoms of convergence insufficiency. The claimant is restricted from extremely intense lighting/high intensity fluorescent lighting and strobe lighting. The claimant meets the DMV driving standards requirement. There are no restrictions from driving from an ophthalmology perspective. Any driving restrictions (or lack of restrictions) should be evaluated by neuropsychology and occupational medicine. The duration of R and Ls and accommodations is one year with reassessment at that time.*

*The second impairing diagnosis is visual disturbance unspecified, relates to the symptoms of unformed images, photophobia, reading issues, headache, spatial disorientation, and blurred vision among others for this claimant. The AP categorizes much of the symptoms as visual spatial disorientation for which the treatment at each visit seems to be observation. The claimant has been observed by AP swaying from side to side, head forward, avoiding light, and with apparent cognitive issues manifested as an inability to answer very simple questions with some type of irregular speech. There has been no therapeutic intervention for these manifest behaviors other than recording them. The claimant symptoms are not correlated with any organic lesions by imaging studies previously done (CT scan, MRI with and without contrast). Additional clinical examinations repeatedly by AP, the "neuro-optometrist", the medically trained neurologists and Occ./Rehab. Physician specialists do not show convincing pathologic eye movements e.g., nystagmus, vertical nystagmus, skew deviation, or pathophysiologic pupil abnormalities e.g.,*

3  of 15

**Lincoln/Bunch 0094**

*Horner's syndrome/pupil. There are no convincing correlations between these diffuse, variable, and vague symptoms/mannerisms and any defined medical organic, pathophysiologic finding on testing or examination assuming the imaging studies are in fact correctly interpreted.*

*In conclusion the diagnosis of visual disturbance, unspecified/visual disorientation is not supported by medical record in terms of a pathophysiologic etiology. The claimant has 20/20 visual acuity in each eye, a normal ocular examination by the optometrist, purportedly normal visual field testing, all of which show that the diagnosis is not supported by record. From an ophthalmology perspective no restrictions and limitations can be determined because the impairing diagnosis is not specific, determined and not causally related to organic pathophysiology."*

During the review of Mr. Bunch's claim, his claim was reviewed by Dr. Jonathan Marehbian, an independent physician, Board Certified in Neurology.  Dr. Marehbian's medical evaluation indicated there was no primary impairing diagnosis.  His comorbid diagnosis included somatization disorder. After review of the medical documentation on file, Dr. Marehbian concluded:

*"The medical information does not provide clear and convincing medical evidence of ongoing impairment that would translate into restrictions and limitations from 3/1/20 to the present.*

*In conclusion, the available medical information demonstrates that the claimant reportedly suffered a concussion in the accident in February 2018. Whilst the presented history and reported symptoms on initial evaluation may indeed be seen as consistent with concussion, there was no loss of consciousness, there was no dizziness or nausea initially, and the descriptions of the accident were mild. Diagnostic imaging was normal. There is no medical evidence to support any significant concussion in February 2020. At best, a very mild concussion may be supported. It is reported that the claimant then developed post-concussive syndrome. Some reports subsequently perplex this diagnosis into a traumatic brain injury, which is not so. Whilst concussion may indeed be described as a very mild form of a brain injury, post-concussive syndrome is in no way a traumatic brain injury. Such descriptions and indications mislead to believe as if the claimant has a permanent brain damage, which then results in all of the reported issues. This is not so; the claimant has no brain damage. Post-concussive syndrome is a condition essentially resolvable with no significant treatment, but simply with time. A period of one year is more than sufficient for resolution of these issues even in the most severe instances. Oddly enough, the claimant reports most significant symptoms and is identified to have most significant examination findings only one year after the accident. It has been described above that firstly, the severity of the reported symptoms and the symptoms themselves are inconsistent with a post-concussive syndrome; secondly, the symptoms and presented findings are inconsistent within themselves – the claimant is identified to have mild issues after the accident, which then somehow developed into severe issues one year later, and were again mild by early 2020; thirdly, the fact that the condition is reported to go on for more than two years after a quantifiable mild motor vehicle accident is inconsistent with the condition that essentially resolves in one year even in very severe cases. As also described above, the medical information demonstrates on several measurable tests that the claimant is prone to exaggeration, over-reporting and possibly malingering. On his initial visit with the neurologist, the claimant is not truthful concerning the loss of consciousness. There are notes that some surveillance video (not provided for this review) has shown that the claimant was driving, albeit for a short distance, back in 2018 – an ability that is completely inconsistent with the reported issues. Medical reports consistently note that the claimant shows lack of effort. The scores and findings that the claimant obtains during examinations/evaluation are completely inconsistent with his overall presentation. Finally, after the review of the medical information, and*

4  of 15

**Lincoln/Bunch 0095**

*especially of the recent reports, there is no demonstration of any motivation by the claimant to receive any treatment. The claimant only follows up with Thomas W. Higginbotham, MD (Occupational Medicine), paying for the visits out of his pocket, who refills his blood pressure medications. When asked when he last saw a neurologist, the claimant does not even know. The claimant's preference to pay out of pocket for a visit with a physician reported to be a Worker's Compensation physician, but lack of desire to obtain a visit with a neurologist for treatment leads to a question of what exactly the claimant's motivation is. Finally, and most importantly, all the issues reported by the claimant may be measurably demonstrated by quantifiable testing, such as for example VNG/vestibular testing for reported balance issues. However, there is not a single such testing result available.*

*As such, taking into consideration the claimant's evident presentation of symptom exaggeration and over-reporting, the fact that some of the examination findings are inconsistent and questionable, the fact that recent examinations and examinations immediately after the accident only identify mild issues that are not indicative of true functional deficits, the fact that there is no quantifiable testing for the reported issues available, the medical information does not provide clear and convincing medical evidence of ongoing impairment as of 3/1/20 and beyond.*

*Briefly, whilst some the reported symptoms may be seen as consistent with multiple sclerosis, there is no full consistency and there are no definite findings to support existence of multiple sclerosis.*

*It should be noted that there are brief indications of adjustment disorder/somatization disorder noted within the medical records. It is possible that the claimant's issues, which are additionally exaggerated by the claimant, could be stemming from conditions of adjustment disorder/somatization disorder. The presently available medical information, however, does not provide clear and valid medical evidence of any true ongoing deficits. Adjustment disorder/somatization disorder are psychiatric conditions and the primary difficulty associated with these is to determine if symptoms are malingered or are indeed true. This diagnosis and this condition are outside of the scope of practice of neurological review and addressing these from neurology standpoint is inappropriate. Therefore, I respectfully defer further consideration of this to the psychiatry specialist, as this is outside my scope of practice.*

*The March 19, 2018 MRI of the brain by Curtis Harlow, MD (Radiology) identifies mild white matter disease possibly from multiple sclerosis. An April 13, 2018 office visit note by Steven Wayne Olson, MD (Family Medicine) addressed this by indicating that it was likely an incidental finding and that the fact that issues reported by the claimant started only after the accident, and that there were no issues before the accident, further supported that the symptoms are not related to multiple sclerosis. Dr. Olson, however, acknowledges that neurological evaluation is necessary and refers the claimant to a neurologist. This is the last medical report by Dr. Olson available. Further medical records do not demonstrate that the claimant was ever evaluated for multiple sclerosis or that repeat imaging was performed. As discussed above, this contradicts the standards of care. With the present available medical information, no clear conclusion can be provided and organic changes such as multiple sclerosis may not be clearly excluded. Whilst the indications by Dr. Olson are indeed reasonable, it may not be excluded that theoretically, the claimant does have some neurological symptoms even before the accident, but neurological symptoms are simply mild and were unnoticed by the claimant before the accident. The claimant's reported symptoms and complaints are consistent with multiple sclerosis to some extent – that is visual symptoms, gait/balance issues and cognitive symptoms are indeed seen with multiple sclerosis. However, visual issues with multiple sclerosis primarily include optic nerve issues/deficits. The claimant did*

**Lincoln/Bunch 0096**

*have evaluation with neuro-optometrist Dr. Saxerud, but there are no indications of a finding of any optic nerve issue recorded. Such finding is a significant one and would surely be recorded/demonstrated within the medical information. Furthermore, it is indicated that the claimant does report improvement to his reported visual symptoms with prism goggles. Such improvement would not be achieved if the underlying etiology was multiple sclerosis. The March 19, 2018 MRI of the brain itself is not sufficiency specific or focal to clearly support multiple sclerosis condition. The findings are mild and whilst these may be consistent with multiple sclerosis, they are not specific to multiple sclerosis. Therefore, there is presently no clear evidence to support existence of multiple sclerosis, but a theoretical possibility of existence of this condition does exist. An appropriate course of action would be to simply have the claimant get repeat MRI of the brain and cervical spine with contrast. This would provide complete certainty on existence of multiple sclerosis."*

During the review of Mr. Bunch's claim, his claim was also reviewed by Jeremy Hertza Psy.D., an independent physician, Board Certified in Neuropsychology. After review of the medical documentation on file, Dr. Hertza concluded:

*"The results of the remote assessments do not offer convincing evidence regarding the claimant's actual cognitive and emotional/behavioral functioning. On June 1, 2018 (Dennis Helffenstein, PhD: Neuropsychological Report) the claimant performed as follows on validity measures: VSVT – Easy Subtest 20/24 (pass), forced choice recognition 6/24 and far below chance and concerning for intentional lack of effort – total score of 26/48 is a questionable score. TOMM – trial 1 22/50 (borderline pass), trial 2 27/50 well below cutoff of 45/50, retention trial 24/50 (fail). Testing was then discontinued as it was stated that it was evident that the examiner was not going to be able to obtain a valid neuropsychological profile. Although the claimant reported headache and shoulder pain on date of testing, in addition to reporting fatigue, poor sleep, and chronic pain – factors that the examiner supports are possibly explanatory for the failure of validity measures, there are no findings to convincingly indicate the claimant's actual cognitive functioning. Additionally, the claimant reported BDI = 45 (examiner notes that after taking into account residual effects of PCS, moderate depression is likely indicated), PCL5 79/80. The score on the PCL5 is significantly overreported/exaggerated. While the claimant reported headache and shoulder pain on date of testing, in addition to reporting fatigue, poor sleep, and chronic pain, this does not provide an explanation as to why he exaggerated considerably on the PCL5. As the PCL5 is extremely questionable in combination with failed cognitive validity measures, I am unconvinced that the results of the BDI are valid and representative of his actual emotional functioning. Then, on August 6, 2018 (Herman Staudenmayer, PhD) the claimant again provided noncredible responses indicating significant overreporting of somatic, cognitive, and emotional symptoms on the MMPI (Fr = 120), rendering the protocol invalid. As there is again significant exaggeration on the MMPI, I am unconvinced that his PCL5 and SCAT2 scores on this assessment are valid. The claimant scored 20/30 on the MoCA however the examiner notes that MSE suggests exaggeration and adopting the sick role, and objective findings note no word finding difficulty, he was alert and attentive, immediate, and remote memory intact, fund intact, no signs of thought disorder or psychosis, and his thought process was coherent, logical and goal directed. The MoCA does not have a validity component, as this is a screening measure. Furthermore, examiner notes that during the interview he showed no lapses in thinking or impaired cognitive processing. As such, this assessment also does not convincingly represent the claimant's actual cognitive or emotional function.*

**Lincoln/Bunch 0097**

*What is notable is that as of the present date, over two years post injury, there has been no effort to re-assess the claimant's neuropsychological functioning with a comprehensive assessment featuring an extensive protocol of both stand-alone and embedded validity measures for both psychological and cognitive domains, as is expected due to the above-noted performances.*

*Due to validity failures and significant overreporting of cognitive symptoms, with a lack of repeat assessment (which is certainly expected in such a case), I am unable to find convincing evidence of functional cognitive deficits secondary to TBI or another etiology that interferes with or limit/restrict working. Please note that this does not automatically indicate that there is an express absence of cognitive impairment, but rather the available evidence is inconclusive.*

*As with cognitive functioning, due to significant overreporting of psychological symptoms and the lack of repeat assessment (which is expected), I am unable to find convincing evidence of functional psychological deficits secondary to TBI or another etiology that interferes with or limit/restrict working. Please note that this does not automatically indicate that there is an express absence of psychological impairment."*

The medical information received on appeal included a May 25, 2021 Initial Rehab Psychology Evaluation and Concussion Review from Anthony Ricci, PhD. The evaluation indicated Mr. Bunch's Beck Depression Inventory (BDI) score was 40. Beck Anxiety Inventory (BAI) score was 41. The pain checklist and neuropsychological symptom checklist notes persistent pain, vision changes, ringing in the ears, muscle weakness, spasms. The records indicate Dr. Ricci observed stuttering and difficulty with ambulation. Dr. Ricci's impression was that Mr. Bunch had post-concussion syndrome, adjustment reaction, and situational anxiety. Based on the history clinical presentation in screening psychological testing, Dr. Ricci opined that with a reasonable degree of psychological certainty that Mr. Bunch continued to manifest moderate post-concussion syndrome and continued to demonstrate evidence of sensory and cognitive changes which have not been completely evaluated and treated. Dr. Ricci also stated Mr. Bunch presented with significant adjustment reaction difficulties with depression and anxiety and continued with an unresolved situational anxiety pattern associated with all forms of driving and riding. Dr. Ricci stated with dysphasia, unresolved vision problems, difficulty with balance, difficulty with ambulation, and difficulty with motor control including his inability to drive, he opined Mr. Bunch was not capable of working.

The June 17, 2021 letter from Dr. Thomas Higginbotham indicated Mr. Bunch had a motor vehicle collision and suffered a closed head injury. He had a history of diffuse traumatic brain injury without loss of consciousness but with altered consciousness, post-concussion syndrome with neurocognitive disorder, visuospatial neglect, difficulty in walking, balance, dysphasia, persistent cervical strain, adjustment reaction with depressed mood and anxiety, hypertension, physical deconditioning, and lack of exercise. Dr. Higginbotham stated Mr. Bunch had difficulty in walking and with the balance which had been consistent since he began treating him on May 3, 2018. Dr. Higginbotham stated Mr. Bunch had problems bumping into doorways, walls, and gait was consistent when observed walking from the parking lot to the office as it was walking from the waiting room to the examining room. He walked without an assistive device. Dr. Higginbotham stated that Mr. Bunch was unable to perform the material and substantial duties required for employment. Dr. Higginbotham also stated Dr. Ricci concurred with his opinion that Mr. Bunch was precluded from regular employment.

**Lincoln/Bunch 0098**

During the review of Mr. Bunch's appeal, his claim was reviewed by Dr. Frank Polanco, an independent physician Board Certified in Occupational Medicine. Dr. Polanco's medical evaluation concluded the records supported the following primary impairing diagnoses: post-concussion syndrome and convergence insufficiency of mild severity. The comorbid diagnoses included: adjustment reaction with depression and anxiety, unresolved situational anxiety, hypertension, dysphagia, dysphasia, and cervical strain. However, Dr. Polanco noted the comorbid diagnoses would not require additional restrictions. After reviewing all of the medical documentation on file, Dr. Polanco concluded:

*"The claimant discontinued working on February 14, 2018 secondary to traumatic brain injury with post-concussion sequela of visual difficulties with spatial disorientation and neurocognitive disorder and visual changes including vertical heterophobia, status post MVA on February 13, 2018. The claimant was involved in a motor vehicle accident on February 13, 2018. He presented to the ED (emergency room) reporting the airbags did not deploy and he hit his head on the steering wheel, left forehead region. No loss of consciousness was reported, but he had some initial blurred vision deficits of left eye pain. He also reported problems with equilibrium when he stepped off of the car. These symptoms resolved by the time he got to the Emergency Department, where CT (computed tomography) scans of the head and cervical spine revealed no evidence for any acute traumatic process. He was given acetaminophen and was discharged. The claimant was seen by Dr. Olson for mental health complaints. The doctor notes the claimant has intact eye-movement but is not fluidly tracking. Dr. Olson has requested evaluation protocol to rule out Multiple Sclerosis which, at least until February 2021, had not been completed. Follow ups by Dr. Higginbotham noted the claimant still complained of cervical pain, changes in vision, and imbalance. Neurological and neuropsychological testing were recommended. An MRI (magnetic resonance imaging) of the brain performed March 28, 2021 revealed mild white matter disease possibly from multiple sclerosis, but he opined that it was more likely secondary to the MVA rather than MS. The claimant was evaluated by the neuro optometrist Michael Saxerud, OD on September 21, 2018, who prescribed him prism spectacles for symptoms of double vision, headaches, imbalance, problems with depth. The claimant was last seen by Dr. Saxerud in 2019. The claimant underwent a psychological evaluation in 2018 by Herman Staudenmayer, PhD, which concur that the claimant is still experiencing post-concussion syndrome sequelae. The claimant still reports problems with memory, word finding, changes in mood and behavior, significant balance issues and visual disturbances. The claimant was evaluated by Neurologist Julia Brinley, DO in 2018. On exam, the claimant presents with normal attention and concentration, normal recent and remote memory, stuttering noted at times, with intact comprehension, full orientation, normal judgment. Impressions include post-concussion syndrome. There are no subsequent follow up notes. The claimant has attended physical therapy for his cervical complaints. He has also attended psychotherapy for depression, anxiety, PTSD, adjustment disorder as well as speech therapy. There was a gap in treatment due to the claimant losing insurance, but he has been approved for SSDI and Medicaid since. Speech therapy treatment note indicates the claimant was working towards improvement with speech fluency, selective attention, recall, and problem-solving.*

*The following restrictions and functional limitations are supported in an 8-hour workday from November 10, 2020 and ongoing as follows:*

- *Frequent walking and standing, 8 hours combined, limited to 60 minutes combined at one time*

**Lincoln/Bunch 0099**

- *Constant sitting with ability to alter position as necessary for comfort*
- *Occasional crawling, kneeling, stooping, bending, and no balancing or climbing*
- *Frequent reaching at all planes, gripping, grasping, and fingering*
- *Unrestricted lifting, carrying, pushing, and pulling*
- *Full-time, 40-hour, 5 day per week capacity*

*From an occupational medicine perspective there are no clinical or diagnostic findings that would preclude fulltime capacity.*

*The findings within the medical records reflect the claimant is a 57-year-old male, date of birth            who was previously employed as a Direct Sales Representative. He discontinued working on February 14, 2018 secondary to traumatic brain injury with post-concussion sequela of visual difficulties with spatial disorientation and neurocognitive disorder and visual changes including vertical heterophobia, status post MVA on February 13, 2018. The claimant has appropriate time for recovery. During the dates under review, there is no evidence of significant motor of neurological deficits. There is no evidence of significant level of pain. No medications side effects are noted.  Thus, from an occupational medicine perspective there are no clinical or diagnostic findings that would preclude the full-time performance of the essential duties of his work activities."*

During the review of Mr. Bunch's appeal, his claim was also reviewed by David Nowell, Ph.D., an independent physician specializing in Psychology/Neuropsychology.   After reviewing all of the medical documentation on file, Dr. Polanco concluded:

*"The claimant presents with a constellation of symptoms consistent with post-concussive syndrome. The post-concussive syndrome includes symptoms which are within my area of expertise (cognitive inefficiency, irritability, sleep changes, depression) as well as symptoms which fall outside my area of practice and expertise (balance problems and headache for example). I defer to medical regarding functional impairment attributable to impairment outside my area of expertise. At the current review, records provided do not support restrictions and limitations on the basis of severe psychiatric or neurocognitive impairment.*

*Records indicate the claimant sustained head strike in motor vehicle accident. Reports initially indicated no loss of consciousness, while later clinical documentation indicates the claimant reports there was a period of loss of consciousness. Subsequent symptoms are consistent with post-concussive syndrome, including cognitive inefficiency, mood changes, sleep changes, balance, and visual changes. Records do not support a psychiatric disorder of severity which would limit daily activity. The level of behavioral health care and frequency of office visits is not consistent with severe psychiatric disorder. Records do not indicate the claimant has been referred for higher level of behavioral health care. Records do not indicate the claimant has been involved in a level of psychiatric care which would prevent daily activity. Records indicate there were rehabilitation therapies following the car accident, and these included speech-language pathology. No subsequent course of cognitive rehabilitation is noted. In 2018, an effort to evaluate neurocognitive functioning was aborted when there was indication of poor performance validity. There has evidently been no follow-up neuropsychological evaluation since that time, and exam findings noted across the records provided for review do not include clinician observed evidence of cognitive impairment which would require limitations and restrictions. The claimant's symptoms are consistently documented across records, both in narrative form and in a self-report symptom checklist form. When records indicate there was effort at assessment of symptom validity (for*

**Lincoln/Bunch 0100**

*example in personality inventory such as MMPI) there was indication of poor symptom validity. The symptom magnification noted at 2018 MMPI administration was such that in a self-report including symptom checklist that evaluation would be difficult to interpret, and it would not be possible to form impressions of actual capacities and limitations on the basis of those self-report data. No subsequent administration of personality inventory of other symptom validity assessment is noted since that 2018 exam. Without exam findings or test results are neuropsychological data to support cognitive impairment, review of the records provided here do not support psychiatric or neurocognitive impairment within the timeframe under consideration.*

*The May 25, 2021 rehabilitation psychology evaluation and concussion review by Anthony Ricci, PhD, notes the claimant was referred by his attorney. BDI score is 40. BAI score is 41. Pain checklist and neuropsychological symptom checklist notes persistent pain, vision changes, ringing in the ears, muscle weakness, spasms. The doctor notes observed stuttering and difficulty with ambulation. The doctor offers impression of post-concussion syndrome, adjustment reaction, and situational anxiety. The results of cognitive testing are noted. No performance validity or symptom validity indicators are noted. For these reasons, it is difficult for an independent reviewer to form impression of capacities and limitations on the basis of these data alone. Records provided do not support restrictions and limitations on the basis of severe psychiatric or neurocognitive impairment.*

*Records reviewed do not provide clear and credible support for inability to sustain full time employment on the basis of functional impairment attributed to severe psychiatric or neurocognitive impairment. At the current review, records provided do not support restrictions and limitations on the basis of severe psychiatric or neurocognitive impairment."*

## Vocational Review

Mr. Bunch's claim was *previously* reviewed by a Vocational Case Manager (VCM) for a transferable skills analysis based on his prior work history, educational background, life experience, and restrictions and limitations outlined by Dr. Lloyd Wilcox. The analysis showed based on his capabilities, training, education, and experience, he has the ability to perform the following sedentary occupations:

- Manager, Sales
- Fundraiser I
- Supervisor of Communications

During the review of Mr. Bunch's appeal, his claim was reviewed by a VCM to determine if the above occupations remained viable. The VCM reviewed the additional information received on appeal and Dr. Frank Polanco's medical evaluation. The VCM concluded the previously identified occupations remain viable given the updated restrictions.

*"An additional OASYS analysis was performed and given the updated restrictions and limitations, the insured's own occupation was identified as an additional alternative. These occupations would allow one the ability to alter positions as needed for comfort."*

- Sales Representative, Television Cable Service
- Manager, Sales

**Lincoln/Bunch 0101**

- Fundraiser I
- Supervisor of Communications

On August 2, 2021, we wrote to you and sent you a copy of the medical reports from David Nowell, PhD, Dr. Frank Polanco, and the transferrable skills assessment offering you the opportunity to provide additional information for further consideration of Mr. Bunch's appeal, prior to the rendering a final decision on his appeal. Any new information was due in our office by August 23, 2021. No additional medical information was submitted. Therefore, we rendered a decision based on the information contained in Mr. Bunch's file.

This appeal review and analysis considered all the medical and claim documentation contained in Mr. Bunch's LTD administrative record, whether or not specifically referenced in this document. We acknowledge Mr. Bunch's diagnosis of post-concussion syndrome and convergence insufficiency of mild severity. Based on the medical documentation on file, the medical records outline restrictions and limitations that would not prevent Mr. Bunch from performing the occupations outlined in the vocational review. The records do not provide any evidence of significant motor or neurological deficits, there is no evidence of significant level of pain, and there is no evidence of medications side effects noted. In summary, without examination findings or neuropsychological test results to support cognitive impairment, the records on file do not support psychiatric or neurocognitive impairment.

We acknowledge Mr. Bunch's conditions; however, the medical records on file do not document detailed examination findings including measurable physical or neurological deficits. Our role in reviewing Mr. Bunch's file is to determine whether his medical condition(s) and the medical documentation contained in his file supports he is unable to perform the material and substantial duties of Any Occupation beyond November 9, 2020. Based on our review of the information contained in his claim file, we have determined he can perform, with reasonable continuity, the material and substantial duties of the above occupation(s) based on his capacity and skill level. We have determined he does not meet the Charter Communications, Inc.'s definition of disability from Any Occupation beyond November 9, 2020. Furthermore, the medical evaluations do not preclude him from the identified occupations outlined in the TSA.

As a result of technological advancement, employers are providing a variety of workstation types and associated equipment that would allow an individual opportunity to experience and sustain comfort in their respective work settings within the occupations. This would allow you to change positions at will for comfort.

Determinations made by Lincoln Financial Group are based on the provisions outlined in the LTD Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. Therefore, an award of Social Security Disability Benefits is not determinative of entitlement to benefits under the specific terms and conditions of the Group Disability Income Policy.

In our review of Mr. Bunch's claim, we fully considered the totality of all medical documentation received. We also obtained and considered independent medical reviews that were not considered by the Social Security Administration in its determination process.

Lincoln/Bunch 0102

Mr. Bunch was notified on November 21, 2020 that his claim had been overpaid in the amount of $47,668.16. Payment should be made payable to Lincoln Life Assurance Company of Boston, due to his Social Security Disability Award for the benefits paid with no reduction for Social Security Benefits. Please work with Kirstie McGary, Recovery Specialist, at the following phone number (888)437-7611 extension 16383 with regard to repayment.

**Conclusion**

We acknowledge he may have continued to experience some symptoms associated with his conditions beyond November 9, 2020. However, the medical documentation on file does not contain physical examination findings, mental status examination findings, diagnostic test results, neuropsychological test results, cognitive test results, or other forms of medical documentation supporting his symptoms and impairments remained of such severity, frequency, and duration that they resulted in restrictions or limitations rendering him unable to perform the duties of the occupations identified as being with in his functional capacity and vocational skills beyond November 9, 2020.

After a complete evaluation of the claim, including all information submitted with the appeal, all medical reviews completed on the file, and taking into consideration the opinion of his providers as set forth in their written record, we determined the clinical evidence does not support he is precluded from performing Any Occupation beyond November 9, 2020. Our position remains that Proof of continued disability in accordance with the Policy provisions has not been provided, and our original determination to deny benefits is upheld. Therefore, no further benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**Policy Provisions**

In order to continue receiving benefits, you must satisfy the requirements of all Policy provisions that state, in part:

*LONG TERM DISABILITY COVERAGE*

*Disability Benefit*

*When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Liberty Proof of continued:*

*1. Disability;*
*2. Regular Attendance of a Physician; and*
*3. Appropriate Available Treatment.*

**Lincoln/Bunch 0103**

*The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining whether the Covered Person is Disabled, Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.*

***"Disability"*** *or* ***"Disabled"****, with respect to Long Term Disability, means:*

*1. For persons other than truck drivers, pilots, co-pilots, and crewmembers of an aircraft:*

*i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*

*ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

***"Any Occupation"*** *means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.*

***"Proof"*** *means the evidence in support of a claim for benefits and includes, but is not limited to, the following:*

1. *a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;*
2. *an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and*
3. *the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.*

*Proof must be submitted in a form or format satisfactory to Liberty.*

### *LONG TERM DISABILITY COVERAGE*

### *Discontinuation of the Long-Term Disability Benefit*

*The Monthly Benefit will cease on the earliest of:*

*...*
   9. *the date the Covered Person is no longer Disabled according to this policy;*
*...*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, she was entitled to appeal the decision made by Lincoln, and to submit any additional information she wished to be considered as part of the appeal. Lincoln has conducted a full and fair review of his appeal and accompanying materials and has concluded that the denial of benefits will be maintained.

**Lincoln/Bunch 0104**

At this time, his administrative right to review has been exhausted; no further review will be conducted by Lincoln and his claim will remain closed. She may request to receive, free of charge, copies of all documents relevant to his claim. She has the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

The Charter Communications, Inc.'s Group Disability Income Policy contains the below provision:

*Legal Proceedings*

*A claimant or the claimant's authorized representative cannot start any legal action:*

1. *until 60 days after Proof of claim has been given; or*

2. *more than three years after the time Proof of claim is required.*

If his policy is subject to ERISA, she may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact his local U.S. Department of Labor Office or his state insurance regulatory agency. In addition, once all required reviews of his claim have been completed, she has the right to bring a civil action under applicable law. His employer's policy has a contractual limitations period of three years, which means that a lawsuit must be brought within three years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is November 24, 2024.

Nothing in this letter should be construed as a waiver of any Lincoln rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Lincoln are based on the provisions outlined in Charter Communications, Inc.'s LTD Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact Lincoln to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłįį' dóó ná'ookąąh nííní'ąągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtįįł nínízingo doo bąąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

14 of 15

**Lincoln/Bunch 0105**

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Jane Daniell
Appeals Specialist
Phone No.: (888) 437-7611 Ext. 16393
Secure Fax No.: (603) 334-5704

**Lincoln/Bunch 0106**



Lincoln Life Assurance Company of Boston
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5704

| | |
|---|---|
| Date:  August 2, 2021 | |
| To:    KENNETH SHAKESHAFT<br>SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax:    (719) 635-0966 | |
| From:  Jane Daniell<br>Appeals Specialist<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-5704 | |
| Total Pages<br>(Including Cover):     30 | |
| RE:<br><br>Claim #:     8220685<br>Claimant:  Mark Bunch<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0107**



Lincoln Life Assurance Company of Boston
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5704

August 2, 2021

Kenneth J. Shakeshaft
Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

Dear Kenneth Shakeshaft:

Lincoln Life Assurance Company of Boston (Lincoln) is responsible for managing claims for Long Term Disability (LTD) benefits under the Charter Communications, Inc. Group Disability Policy. We are writing regarding Mr. Bunch's claim for LTD benefits under the Policy.

We are in the process of reviewing Mr. Bunch's appeal of our denial determination regarding the above-referenced claim.  The purpose of this letter and enclosure(s) is to provide you with an opportunity to review and comment on new/additional evidence that has been received before a decision is rendered on Mr. Bunch's appeal.

Please find attached a copy of David Nowell, Ph.D. and Dr. Frank Polanco's medical reports, which is new or additional evidence in connection with Mr. Bunch's appeal.  You may review the medical reports, and provide a response to us, which we will consider in making our decision on Mr. Bunch's appeal.  You can fax your response to **603-334-5704** or email it to DisabilityDocuments@lfg.com.  If we do not receive your response within 21 days of the date of this letter or by **August 23, 2021**, we will proceed with making a determination on Mr. Bunch's appeal.

Upon receipt of your response, we will promptly complete our review and render a determination on Mr. Bunch's appeal.  If your response is not received by **August 23, 2021** (21 days from the date of this letter), we will render a determination based on the information contained in Mr. Bunch's file.

Due to these special circumstances, an extension of time to process Mr. Bunch's appeal is required and we are exercising our right to take such an extension under the Employee Retirement Income Security Act.

**Lincoln/Bunch 0108**

Under the Employee Retirement Income Security Act (ERISA), an appeal determination should be rendered within 45 days of receipt of appeal, unless there are special circumstances beyond Lincoln's control, which require a delay in making a determination. If additional time is needed, ERISA allows for a 45-day extension to evaluate and render an appeal decision. [Pursuant to ERISA Regulations, additional time for a final decision may exceed 90 days to the extent that the timeframe is tolled while Lincoln is awaiting receipt of requested documentation needed to fully evaluate Mr. Bunch's claim. (Tolled: accumulation of time is suspended.)]

Should you have any questions pertaining to the status Mr. Bunch's appeal, please contact me at the telephone number below.  Please include the claim number listed above in all communications.

If you have any questions regarding this matter, please contact me.

Sincerely,

Jane Daniell
Appeals Specialist
Phone No.: (888) 437-7611 Ext. 16393
Secure Fax No.: (603) 334-5704

Attachments:   8220685-MEDICAL-CP/PEER REVIEW-07.16.2021
                8220685-MEDICAL-CP/PEER REVIEW-07.16.2021
                8220685-VOC-TRANSFERRABLE SKILLS ASSESSMENT-07.30.2021

**Lincoln/Bunch 0109**



**Network Medical Review Co. Ltd.**

An ExamWorks Company

| | |
|---|---|
| **REFERRED BY:** | JANE DANIELL |
| **CLIENT:** | Lincoln Life Insurance |
| **NAME:** | Mark B Bunch |
| **CLAIM #:** | 8220685 |
| **NMR #:** | 506149 |
| **DATE:** | 7/16/2021 |

**RECORDS PROVIDED FOR REVIEW:**

| | | |
|---|---|---|
| PROGRESS NOTES | Parkview Medical Center | 02/13/18 |
| PROGRESS NOTES | Centura Health | 02/27/18-04/13/18 |
| PROGRESS NOTES | T. W. Higginbotham, D.O., FAADEP | 05/03/18-06/17/21 +Undated |
| PROGRESS NOTES | Colorado Springs Neuro Associates, P.C. | 05/30/18-06/01/21 |
| PROGRESS NOTES | Gleneagle Vision Center, PC | 06/30/18-09/21/18 |
| PROGRESS NOTES | M. V. Christiansen, D.C. | 07/30/18-10/30/18 +Undated |
| PROGRESS NOTES | H. Staudenmayer, Ph.D. | 08/06/18-08/13/18 |
| PROGRESS NOTES | Pine Creek Vision Clinic | 11/02/18-11/21/18 |
| PHYSICAL THERAPY | Centura Health | 05/31/18-04/24/19 |
| FILE REVIEWS | J. Young, M.D. | 09/10/18 |
| FILE REVIEWS | R. Swotinsky, M.D. | 04/23/19 |
| FILE REVIEWS | T. Belliveau, Ph.D., ABPP | 04/29/19-10/04/20 |
| FILE REVIEWS | J. Brinley, D.O. | 05/11/19 |
| FILE REVIEWS | B. Davitt, M.D. | 05/23/19-06/24/19 |
| FILE REVIEWS | D. Teehan, M.D., MPH | 07/15/20 |
| FILE REVIEWS | L. M. Wilcox, Jr., M.D. | 08/04/20 |
| FILE REVIEWS | J. Marehbian, M.D. | 08/19/20 |
| FILE REVIEWS | J. B. Hertza, Psy.D. | 10/28/20 |
| CT | Parkview Medical Center | 02/13/18 |
| JOB | | 01/03/19 |
| OTHER | N. Hall, M.S., CRC | 05/16/19 |
| OTHER | M. Provost, M.A., CRC | 09/01/20-09/10/20 |
| MISC | | 11/15/17-06/29/21 +Undated |
| ROI | | 09/19/19 +Undated |

**Lincoln/Bunch 0110**

RE:  Mark B Bunch                                             NMR #: 506149
Page 2

TELECONFERENCE
    1) AP NAME: Thomas Higginbotham DO
    2) PHONE: (719) 260 8190
    3) DATE(S): 7/13/2021, 7/14/2021
    4) TIME(S): 2:33 PM MDT, 9:57 AM MDT
    5) PERSON(S) SPOKEN WITH: Jessica, Bernadette
    6) POSITION OF PERSON(S) SPOKEN WITH: Medical records, Receptionist

SUMMARY OF DISCUSSION(S): The office was called on 07/13/21. I left a detailed message with Jessica providing the case details, due date and time, the claimant's information and my contact information.

The office was called on 07/14/21. I left a detailed message with Bernadette providing the case details, due date and time, the claimant's information and my contact information.

**ASSESSMENT:** All medical and nonmedical documentation has been reviewed, summarized, and considered regarding the claimant, Mark Bunch. The claimant is a 57-year-old male (DOB            who was previously employed as a Direct Sales Representative. He discontinued working on 02/14/2018 secondary to traumatic brain injury with post-concussion sequela of visual difficulties with spatial disorientation and neurocognitive disorder and visual changes including vertical heterophobia, status post MVA on 02/13/2018.

He has comorbid conditions of: adjustment reaction with depression and anxiety; unresolved situational anxiety; hypertension; dysphagia, dysphasia; cervical strain.

The time period in question from 11/10/2020 forward.

06/17/2021: Letter from Thomas Higginbotham, DO to Attorney Shakeshaft described the claimant's diagnoses as follows: 1. History of motor vehicle collision; 2. History of closed head injury; 3. History of diffuse traumatic brain injury without loss of consciousness but with altered consciousness; 4. Post-concussion syndrome with neurocognitive disorder, visuospatial neglect, difficulty in walking/imbalance, dysphasia; 5. Persistent cervical strain; 6. Adjustment reaction with depressed mood and anxiety. Dr. Higginbotham opined that Mr. Bunch would not be able to perform on a regular basis the material and substantial duties required for employment; Dr. Ricci concurred.

05/25/2021: Initial Rehab psychology Evaluation and Concussion Review by Anthony Ricci, PhD noted that the claimant has an injury. While walking away from the waiting room to the interview office, he ambulated slowly and guardedly, and with an antalgic gait pattern. He was off balance to the left on several occasions and again impacted the left side door threshold. Based on the history, clinical presentation, and screening psychological testing, Dr. Ricci opined that within a reasonable degree of psychological certainty Mark Bunch continued to manifest moderate postconcussion syndrome (F07.81) and continues to demonstrate evidence of sensory and cognitive changes which have not been completely evaluated and treated. Additionally, he presents with significant adjustment reaction difficulties, depression, anxiety and unresolved situational anxiety pattern associated with all forms of driving and riding. Due to his presentation of pronounced dysgraphia, unresolved vision issues, and very evident difficulty with balance, ambulation, and motor control including ability to drive, the claimant is currently not capable of any form of remunerative employment. Additive to this opinion is his qualification for SSDI benefits in late 2019. There is objective evidence of speech disarticulation, and a documented history of working and incidental memory deficits. His clinical presentation is reminiscent of unresolved TBI (post concussion syndrome) sequelae, but also presents with a physiologic feature of muscle weakness and unusual posturing, which may be associated with disuse syndrome. However, it is noted that Dr.

**Lincoln/Bunch 0111**

Olson had requested a Multiple Sclerosis evaluation protocol due to brain MRI findings and it does not appear from a review of the record that this issue has been ruled out. It is Dr. Ricci's opinion that Mr. Bunch is not malingering.

10/28/2020: Neuropsychology Peer Review by Jeremy Hertza, Psy D: "Regarding validity: Describe the results of validity assessment. Are the obtained results considered to represent valid measures of the examinee's actual cognitive and emotional -behavioral functioning? No. The results of these remote assessments do not offer convincing evidence regarding the claimant's actual cognitive and emotional/behavioral functioning. On 06/01/18 (Dennis Helffenstein, PhD: Neuropsychological Report) the claimant performed as follows on validity measures: VSVT Easy Subtest20/24 (pass), forced choice recognition 6/24 and far below chance and concerning for intentional lack of effort total score of 26/48 is a questionable score. TOMM trial 1 22/50 (borderline pass), trial 2 27/50 well below cutoff of 45/50, retention trial 24/50 (fail). Testing was then discontinued as it was stated that it was evident that the examiner was not going to be able to obtain a valid neuropsychological profile. Although the claimant reported headache and shoulder pain on date of testing, in addition to reporting fatigue, poor sleep, and chronic pain factors that the examiner supports are possibly explanatory for the failure of validity measures, there are no findings to convincingly indicate the claimant's actual cognitive functioning. Additionally, the claimant reported BDI = 45 (examiner notes that after taking into account residual effects of PCS, moderate depression is likely indicated), PCL5 79/80. The score on the PCL5 is significantly overreported/exaggerated. While the claimant reported headache and shoulder pain on date of testing, in addition to reporting fatigue, poor sleep, and chronic pain, this does not provide an explanation as to why he exaggerated considerably on the PCL5. As the PCL5 is extremely questionable in 366 3combination with failed cognitive validity measures, I am unconvinced that the results of the BDI are valid and representative of his actual emotional functioning. Then, on 08/06/18 (Herman Staudenmayer, PhD) the claimant again provided noncredible responses indicating significant overreporting of somatic, cognitive and emotional symptoms on the MMPI (Fr = 120), rendering the protocol invalid. As there is again significant exaggeration on the MMPI, I am unconvinced that his PCL5 and SCAT2 scores on this assessment are valid. The claimant scored 20/30 on the MoCA however the examiner notes that MSE suggests exaggeration and adopting the sick role, and objective findings note no word finding difficulty, he was alert and attentive, immediate and remote memory intact, fund intact, no signs of thought disorder or psychosis, and his thought process was coherent, logical and goal directed. The MoCA does not have a validity component, as this is a screening measure. Furthermore, examiner notes that during the interview he showed no lapses in thinking or impaired cognitive processing. As such, this assessment also does not convincingly represent the claimant's actual cognitive or emotional function. What is notable is that as of the present date, over two years post injury, there has been no effort to re-assess the claimant's neuropsychological functioning with a comprehensive assessment featuring an extensive protocol of both stand-alone and embedded validity measures for both psychological and cognitive domains, as is expected due to the above-noted performances."

08/19/2020: Peer Review by Jonathan Marehbian, MD (Neurology) listed somatization disorder; other psychological and psychiatric diagnoses, "...which are outside the scope of practice of the present review." Dr. Marehbian opined: "a. If the medical records in the file do not support impairment and the need for restrictions and/or limitations during the above timeframe(s), provide a detailed explanation No, the medical information does not provide clear and convincing medical evidence of ongoing impairment that would translate into restrictions and limitations from 3/1/20 to the present. The medical information demonstrates that the claimant was in a motor vehicle accident on 2/13/18. 2/13/18 ED report immediately after the accident describes that the accident itself was mild, as the claimant was struck at the speed of approximately 25 miles per hour when the other driver was backing up. Nevertheless, the claimant struck his head on the steering wheel. On 2/13/18 evaluation, the initial symptoms of blurred vision and some left eye pain had resolved. There was no loss of consciousness and there was no dizziness, nausea or other symptoms. The claimant was only given

RE: Mark B Bunch                                                    NMR #: 506149
Page 4

Acetaminophen for his headache and was discharged. Imaging during ED evaluation and namely the CT scans of head and cervical spine shows no concussion. Contrary to what was stated by some of the attending physicians, concussion can be seen on diagnostic imaging. The subsequent medical reports, however, describe a very severe debilitation reported by the claimant. As of 2/23/18 the claimant is found to have eye findings, namely coordination problems, positive Romberg, but no cranial deficits. The claimant had MRI of the brain taken on 3/19/18, which identifies concern for multiple sclerosis (this point will be discussed separately below), but no concussion. 4/13/18 report by the claimant's PCP Dr. Olson indicates referrals were made to appropriate physicians and no further reports from Steven Wayne Olson, MD (Family Medicine) are provided. The claimant is first seen by Dennis A. Helffenstein, PhD for neuropsychological screening, which indicates that the claimant has a multitude of complains, including physical, fatigue, visual, cognitive and emotional coping deficits, which are indicated to be consistent with post-concussive syndrome. This screening is discontinued, as the administered tests, including Performance Validity Test and other demonstrate significant exaggeration and over-reporting of the symptoms by the claimant. It is evident that neuropsychological test score will not be possible to obtain. After this, the claimant follow up with Thomas W. Higginbotham, MD (Occupational Medicine). It is indicated that this physician is the claimant's Worker's Compensation physician, but recent reports demonstrate that the claimant is only following up with this specialist and recent reports include visits for refill of blood pressure medications. This essentially makes Thomas W. Higginbotham, MD (Occupational Medicine) the claimant's PCP. Thomas W. Higginbotham, MD (Occupational Medicine) defended the claimant's performance on neuropsychological and argued that this is affected by the claimant's visual issues and inability to read. The claimant then had another psychological evaluation, this time by Herman Staudenmayer, PhD. This evaluation is performed in dark environment and almost fully in oral form, to ensure that there is no effect of possible visual issues on the testing. Again, the claimant is identified to exaggerate and over-report his symptoms. Report specifically identifies there is bias to over-report symptoms, which make the reported symptoms invalid. It is indicated that mental status examination suggests exaggeration and adopting of the sick role. Thomas W. Higginbotham, MD (Occupational Medicine) does not provide any comments concerning this evaluation and only comments on the claimant's first evaluation. It is evident that there is no visual issue effect on the second evaluation and therefore, the initial explanation that the testing is invalid due to visual issues is not supported and is disproven by the second evaluation. The established conclusion is that the claimant is indeed prone to exaggeration of his symptoms, to over-reporting of the symptoms and to adopting the sick role. On 10/19/18 the claimant is finally seen by a neurologist Julia Brinley, DO (Neurology). The claimant was previously referred to a neurologist by his original PCP Dr. Olson back in April 2018, however, the medical information does not provide any neurology evaluation report before 10/19/18. It should be noted that throughout the reports, Thomas W. Higginbotham, MD (Occupational Medicine) and other providers indicate that the primary diagnosis is post-concussion syndrome, which is a neurological diagnosis. After reportedly suffering a concussion in February 2018 and then developing post-concussive syndrome, the claimant is seen by a neurologist for the first time only in October 2018. Furthermore, out of 187 pages of the medical records provide, the 10/19/18 report is the only report by a neurology specialist. 10/19/18 report indicates that the claimant is seen for evaluation of traumatic brain injury. A significant note should be made that the claimant specifically reports that he had loss of consciousness (and he is unsure for how long) on the day of the accident. It is evident that this information reported by the claimant is untruthful the initial ED report and all subsequent reports specifically indicate that the claimant had no loss of consciousness. On 10/19/18, Dr. Brinley supported post-concussion syndrome diagnosis and indicates the diagnoses of intractable chronic migraine without aura and without status migrainosus, diplopia, other symptoms and signs involving appearance and behavior, other symptoms and signs involving cognitive functions and awareness, insomnia, and imbalance. The claimant is warranted to start Nortriptyline 10 mg and speech therapy. Nortriptyline helps with the sleep. There are no further neurological reports provided whatsoever. The claimant was then seen for cognitive/linguistic evaluation by Carolyn K. Lyon, CCC-SLP (Speech Language Pathology) on 10/31/18 and his overall RBANS classification of performance is in reported to be in the extremely low range, placing the

**Lincoln/Bunch 0113**

RE: Mark B Bunch                                                    NMR #: 506149
Page 5

claimant at the 0.2% for age matched peers. Such score essentially demonstrates that the evaluated person has no consistent cognitive function whatsoever. That is, the person is incapable not only of talking, but of no significant thinking process at all. This is clearly not the claimant's presentation. As evident from all other reports, the claimant, whilst reported to have some issues with speech, is in fact capable of talking and, is reported to have normal cognitive examination on numerous reports. This, again, shows a complete inconsistency between the claimant's clinical presentation and the scores that are obtained during evaluations. Carolyn K. Lyon, CCC-SLP (Speech Language Pathology) in fact specifically indicates on 1/30/19 that the claimant has inconsistent responses at times, there is lack of effort and lack of attendance. When combined with these findings, with other findings on psychological evaluations and with the extremely low score that is inconsistent with the claimant's presentation, it is again evident that the claimant is exaggerating his symptoms. This raises suspicion of malingering. 4/24/19 response by Thomas W. Higginbotham, MD (Occupational Medicine) indicates that it is unknown if the claimant saw therapists for vestibular, occupational and physical therapy. There are indications that the claimant was seen by Dr. Frank Polanco, who, reportedly, performed and IME-type evaluation, and then dismissed the claimant, but this report is not provided with the medical records. There are also indications that Dr. Polanco reviewed some extensive surveillance video, which is also not available. Thomas W. Higginbotham, MD (Occupational Medicine) again states that the claimant's neuropsychological tests are compromised due to vision and balance problems. The fact that the second evaluation is almost completely in oral form is not commented in any way. Reports by Thomas W. Higginbotham, MD (Occupational Medicine) also indicate that the claimant is seen by neuro-optometrist on several occasions and that reportedly, there are follow ups with a neurologist as well (these reports, nor their conclusions, are not available). One 11/2/18 encounter note by Michael Saxerud, DO (Optometry) is provided with the medical reports. This encounter note indicates that the claimant has 20/20 visual acuity in all planes, which is inconsistent with the reported blurred vision, and that the claimant had 3+ losses with pursuits. Michael Saxerud, DO, recommends that physical therapy rules out BPPV and for the claimant to continue exercises. This recommendation to rule out BPPV demonstrates uncertainty that the claimant has any true neurological/visual issues. Performed examination is not indicative of any visual deficits, either, as the identifies issues with pursuits can in fact be seen in a completely healthy person and this finding not demonstrate of any specific and significant functional deficit. This finding surely does not constitute the reported severe visual issues and issues with visual-spatial difficulties. Previously, it is reported that the visual issues had improved significantly with the use of provided goggles. The claimant was then seen, after some period of time, on 5/7/19 by Thomas W. Higginbotham, MD (Occupational Medicine) and the provided examination is completely inconsistent with the findings provided before this or with the diagnostic etiologies reported previously. Examination on 5/7/19, which is summarized above, demonstrate that the claimant in fact has severe difficulty, or more appropriately, complete inability to maintain balance or ambulate. It is described that the claimant is grabbing for the walls when walking, the claimant has truncal imbalance (a findings seen with ataxic gait, which in its turn is usually seen with significant cerebral issues), the claimant is rocking forward to backwards and falling backwards with Romberg, extending the neck causes falling, the claimant does recognize Donald Trump as the president and cannot recall 3 words after just repeating them. It must be noted that previous examinations are essentially limited to abnormal Romberg and difficulty with tandem. No such severe findings are ever identified. With all these findings provided, the 5/7/19 report does not clarify if how did the claimant manage to present to the visit. It has been noted that the claimant is not driving, but is using a driver, however, the claimant still needs to physically present to the physician's office. The identified findings essentially demonstrate that the claimant is to ambulate in a wheelchair. However, there are no indications of a wheelchair being used. In fact, there are no indications of any assistive device being used. This inconsistency is not explained. With the previous findings of exaggeration and over-reporting taken into consideration, this inconsistency of the claimant's examination on 5/7/19 to his overall clinical presentation before, during and after the visit, leads to a question if the claimant, who previously exaggerated symptoms on psychological evaluation, does not simply pretend to have such significant difficulties on 5/7/19. Of a note is

**Lincoln/Bunch 0114**

RE: Mark B Bunch                                         NMR #: 506149
Page 6

that Thomas W. Higginbotham, MD (Occupational Medicine) previously (in previous reports) indicates that on Romberg testing, the claimant would fall backwards "readily". Furthermore, there is complete lack of explanation if where from could such difficulties/examination findings stem from. The indicated post-concussive syndrome, which, it should be noted, is slowly exaggerated in later reports to essentially indicate that the claimant had a severe traumatic brain injury, which is not so, does not explain the findings on this examination. It also does not explain the fact that the claimant had no such difficulties in 2018, had them in 2019 (one year after the accident) and then had no such difficulties again in 2020. This complete inconsistency is not explained by the attending providers. There is also no explanation whatsoever to the fact that the identified findings are essentially periodical there is no explanation whatsoever to the fact that the claimant had no such issues after the accident, but somehow had them one year after the accident. In summary, these 5/7/19 examination findings are inconsistent, are questionable, and cannot be seen as valid representation of the claimant's functional capabilities. Going on, 10/10/19 report then indicates that the claimant's gait down the hallway into the exam room is without a cane, although the gait is unsure. It is also indicated that the claimant wobbles from side-to-side but corrects himself. The claimant reels backwards with Romberg but does not fall. The claimant still cannot tandem walk. A 3/20/20 attorney letter indicates that the claimant only continues to treat with Dr. Higginbotham and speech therapy. If the 5/7/19 and 10/10/19 examination are considered and accepted as presented, it is unclear if what allows the claimant to have such a drastic improvement from complete inability to walk on 5/7/19 to almost normal gait on 10/10/19. To note again, all of this leads to only one conclusion that the available examination findings are questionable in terms of their validity, that the examination findings are inconsistent, and that there is likely a significant degree of exaggeration or malingering by the claimant. In conclusion, the available medical information demonstrates that the claimant reportedly suffered a concussion in the accident in February 2018. Whilst the presented history and reported symptoms on initial evaluation may indeed be seen as consistent with concussion, there was no loss of consciousness, there was no dizziness or nausea initially, and the descriptions of the accident were mild. Diagnostic imaging was normal. There is no medical evidence to support any significant concussion in February 2020. At best, a very mild concussion may be supported. It is reported that the claimant then developed post-concussive syndrome. Some reports subsequently perplex this diagnosis into a traumatic brain injury, which is not so. Whilst concussion may indeed be described as a very mild form of a brain injury, post-concussive syndrome is in no way a traumatic brain injury. Such descriptions and indications mislead to believe as if the claimant has a permanent brain damage, which then results in all of the reported issues. This is not so the claimant has no brain damage. Post-concussive syndrome is a condition essentially resolvable with no significant treatment, but simply with time. A period of one year is more than sufficient for resolution of these issues even in the most severe instances. Oddly enough, the claimant reports most significant symptoms and is identified to have most significant examination findings only one year after the accident. It has been described above that firstly, the severity of the reported symptoms and the symptoms themselves are inconsistent with a post-concussive syndrome; secondly, the symptoms and presented findings are inconsistent within themselves the claimant is identified to have mild issues after the accident, which then somehow developed into severe issues one year later, and were again mild by early 2020; thirdly, the fact that the condition is reported to go on for more than two years after a quantifiable mild motor vehicle accident is inconsistent with the condition that essentially resolves in one year even in very severe cases. As also described above, the medical information demonstrates on several measurable tests that the claimant is prone to exaggeration, over-reporting and possibly malingering. On his initial visit with the neurologist, the claimant is not truthful concerning the loss of consciousness. There are notes that some surveillance video (not provided for this review) has shown that the claimant was driving, albeit for a short distance, back in 2018 an ability that is completely inconsistent with the reported issues. Medical reports consistently note that the claimant shows lack of effort. The scores and findings that the claimant obtains during examinations/evaluation are completely inconsistent with his overall presentation. Finally, after the review of the medical information, and especially of the recent reports, there is no demonstration of any motivation by the claimant to receive any treatment. The claimant only follows up with

**Lincoln/Bunch 0115**

RE: Mark B Bunch                                           NMR #: 506149
Page 7

Thomas W. Higginbotham, MD (Occupational Medicine), paying for the visits out of his pocket, who refills his blood pressure medications. When asked when he last saw a neurologist, the claimant does not even know. The claimant's preference to pay out of pocket for a visit with a physician reported to be a Worker's Compensation physician, but lack of desire to obtain a visit with a neurologist for treatment leads to a question of what exactly the claimant's motivation is. Finally, and most importantly, all the issues reported by the claimant may be measurably demonstrated by quantifiable testing, such as for example VNG/vestibular testing for reported balance issues. However, there is not a single such testing result available. As such, taking into consideration the claimant's evident presentation of symptom exaggeration and over-reporting, the fact that some of the examination findings are inconsistent and questionable, the fact that recent examinations and examinations immediately after the accident only identify mild issues that are not indicative of true functional deficits, the fact that there is no quantifiable testing for the reported issues available, the medical information does not provide clear and convincing medical evidence of ongoing impairment as of 3/1/20 and beyond. Concerning the concerns of multiple sclerosis, please see answers to questions 4 and 7 below. Briefly, whilst some the reported symptoms may be seen as consistent with multiple sclerosis, there is no full consistency and there are no definite findings to support existence of multiple sclerosis. It should be noted that there are brief indications of adjustment disorder/somatization disorder noted within the medical records. It is possible that the claimant's issues, which are additionally exaggerated by the claimant, could be stemming from conditions of adjustment disorder/somatization disorder. The presently available medical information, however, does not provide clear and valid medical evidence of any true ongoing deficits. Adjustment disorder/somatization disorder are psychiatric conditions and the primary difficulty associated with these is to determine if symptoms are malingered or are indeed true. This diagnosis and this condition are outside of the scope of practice of neurological review and addressing these from neurology standpoint is inappropriate. Therefore, I respectfully defer further consideration of this to the psychiatry specialist, as this is outside my scope of practice."

7/15/2020: Dr. Teehan (Occupational Medicine) stated in his file review report that there is no available evidence to support any medical diagnosis causing impairment. He notes that restrictions from an ophthalmologic perspective are deferred to the recent ophthalmology review. Similarly, neuropsychiatric restrictions are deferred. He notes that the available evidence does not indicate any nanomedical circumstance identified in the medical records that interfere with work related activities. Dr. Teehan notes that in the available clinical evidence there are no identified restrictions and limitations from 3/1/2020 to the present that would preclude full-time work capacity. "The claimant reports cognitive and visual disturbance for which prior peer review was noted. On 05/07/2019, the claimant continued to wear corrective lenses from the neuro-optometrist, but this correction is an older prescription, he has been wearing them about 2 hours on and 1 hour off. Dr Higginbotham noted "His presentation is concerning. His gait and stance are abnormal. He grabs the wall when walking because of complaints of imbalance and visual spatial distortion. His head is significantly forward-flexed and held. When coaxed to stand erect, he has truncal imbalance and progressive dizziness. He continues to have difficulty speaking and has difficulty with word-finding. He speaks very softly and under his breath. He does not make eye-to-eye contact. He is unsure about current world events but does recognize that Mr. Trump is the president. He cannot recall 3 words after just repeating them, let alone 5 minutes later. He continues to stutter He is photosensitive. He is wearing his corrective goggles. Midline vision testing is abnormal. Strength and sensation are normal for the upper and lower extremities. On palpation, he is tender about the left suprascapular musculature as well as along the left cervical paraspinal muscles. He has a mild degree of tension with mild limitations with side bending and rotation to the right and backward extension. Backward extension of the neck causes him dizziness and a fall. Assessment: Traumatic brain injury with post-concussion sequela of visual difficulties with spatial disorientation, neurocognitive disorder, adjustment disorder with depressed mood; persistent cervical strain."

**Lincoln/Bunch 0116**

RE: Mark B Bunch                                                    NMR #: 506149
Page 8

04/23/2019: Review by Swotinsky MD (Occupational Medicine) opined, "From 02/14/18 until as late as 08/14/18, impairment is supported by postconcussion syndrome and a pending neuro-optometry appointment. There is not support for a diagnosis causing functional impairment from 08/15/18 to the present Postconcussion syndrome: a. The symptoms are consistent with post concussion syndrome. The claimant reports headache, dizziness, cognitive impairment, and psychological symptoms after a mild traumatic brain injury (TBI) on 02/13/18. These are symptoms of postconcussion syndrome. b. The prolonged symptoms and related factors are consistent with a nonmedical cause. The vast majority of patients have largely recovered from post concussion syndrome by three months. Litigation and compensation issues are a strong consistent risk factor for persistent symptoms and disability after mild TBI. While Attorney Shakeshaft states that the claimant's condition is physical and not psychologic/psychiatric, treatment guidelines advise that in patient with persistent post-concussive symptoms which have been refractory to treatment, consideration should be given to other factors including psychiatric disorders, lack of psychosocial support, and compensation/litigation. Potential indicators of malingering include inconsistencies in neuropsychological test performance, financial stressors, lack of reasonable follow-through on treatments, and engaging in activities inconsistent with reported deficits The claimant's records present scant evaluation/treatment for post concussion syndrome. The evaluation has not been managed by a specialist with expertise in postconcussion syndrome. The treatment that Dr. Higginbotham has prescribed for the claimant's postconcussion symptoms has consisted of 5/22/18 prescriptions for three pain medications  indomethacin, Robaxin, and betamethasone - and recommendations for nutritional supplements and self-help brain (e.g., memory) exercises.  (Nutritional supplements and self-help brain exercises are not established in the evidence-based medical literature as effective and recommended treatments for post concussion syndrome.) The file has no records from the various referrals made by Dr. Higginbotham, with the exception of the session with psychologist Dr. Staudenmayer."

02/19/2019: Letter from Thomas Higginbotham, DO to Attorney Shakeshaft described Mr. Bunch's current complaints as follows: neck discomfort, pain, and diminished range of motion and added "he recently was asses with a swallow study which was abnormal and lent to the impression of him having significant anterior muscle myotonia"; right scapulothoracic and anterior shoulder tension of a mild-moderate degree; his memory is moderately compromised, judgement is affected, speech is improved but still has difficulty with prosody, word finding, stuttering, inappropriate pauses; headaches; tinnitus; difficulty with balance and intermittent dizziness; frequently overwhelmed with noises, bright lights, and crows, affected visually by fast moving things like watching TV or being in public or riding in a vehicle. He is able to perform activities of daily living but generally much slower than usual since his motor vehicle collision. He listed forgetfulness, needs assistance with household chores, cannot do yard work, needs assistance with grocery shopping, difficulty carrying groceries in and out of the car. Diagnoses: 1. History of motor vehicle accident; 2. History of a mild traumatic brain injury with post-concussion with the following sequela: emotional and behavioral disturbance/changes, neurocognitive disorder, visual difficulties with spatial disorientation, post traumatic headache, not intractable; 3. Cervical strain/sprain; 4. Thoracic sprain; 5. Ulnar neuritis; 6. Imbalance; 7. Dysphasia; 8. Dysphagia; 9. History of falls; 10. Generalized anxiety with depressed mood over health status; 11. PTSD, chronic; 12. Situational adjustment reactions with mixed anxiety and depressed mood; 13. Sleep disturbance; 14. Overweight; 15. Hypertension, malignant.

10/19/2018: Julia Brinley, DO (Neurology) evaluated the claimant and noted, "He has been working with workmen's comp and overall he is undergone physical therapy, psychotherapy, vision therapy and has had neuropsych testing. He reports that overall he has gotten better but is not back to his baseline. He continues to have balance issues, headaches, memory difficulties in addition to speech difficulties and double vision. He is doing vision therapy and is currently wearing prism glasses through Dr Saxerud. He continues to see a therapist to help with his significant mood symptoms which he feels as though has gotten better He continues with headaches. He reports that these are bilateral temples, worse on the left side that will radiate everywhere, he

**Lincoln/Bunch 0117**

RE:  Mark B Bunch                                      NMR #: 506149
Page 9

also has radiation into his neck more so on the left." Massage and speech therapy have been recommended but they had not been approved yet. On examination it was noted that he had difficulty with tandem, Romberg was positive. Neurological examination revealed normal attention span and concentration, normal recent remote memory, speech fluent although stuttering at times, comprehension and language intact, alert and oriented x 3, general knowledge and judgment within normal variation. Cranial Nerves: I. Not tested; II. Pupils 4mms reacting briskly to 2mms. No afferent pupil defect; III, IV, VI. EOM were full with normal pursuit and saccade. No ptosis or nystagmus; V. Motor V intact, pinprick, light touch intact in all three divisions; VII. No asymmetry or weakness; VIII. Acuity intact to finger rub bilaterally; IX,X. Palate rose in middle; XI, Sternocleidomastoid, trapezius strength intact; XII. Tongue protruded midline w/o atrophy or fasciculations. With finger to nose, patient will often miss my finger by an inch bilaterally, often has to close one eye. Assessment: 1. Post-concussion syndrome; 2. Intractable chronic migraine without aura and without status migrainosus; 3. Diplopia; 4. Other symptoms and signs involving appearance and behavior; 5. Other symptoms and signs involving cognitive functions and awareness; 6. Insomnia; 7. Imbalance." Dr. Brinley added "his most bothersome complaints are double vision, cognitive issues, sleep disturbances, imbalance and headaches. Based on the patient's history and exam I do believe he has continued post concussive syndrome with worsening factors to include mood disturbances."

09/25/2018: Initial Rehab Psychology Evaluation and Concussion Review and Anthony Ricci, MD stated, "In reviewing the presentation at the time of impact and following evaluations and treatment, it is my opinion that the mechanism of injury is clearly related to the 2/13/2018 MVA sequelae. There is no question that he's had confounding issues secondary to his recovery patterns and his adjustment to disability has been difficult to this point. I agree with Dr Helffenstein and Dr Studenmayer's observations that formal neuropsychological testing is not appropriate at this time. Mr. Bunch presents with specific visual/vestibular changes and with significant elements of anxiety, depression, and adjustment to disability which contributes to the cognitive dysfunction and creates a pattern of response, which is frustrating and confusing." Diagnostic impressions: Concussion without loss of consciousness; situational anxiety; adjustment disorder with anxiety and depression; psychological factors affecting other medical conditions."

09/21/2018: Letter from Michael Saxerud, OD, to Whom It May Concern stated, "Mark is under my care for a visual perceptual disorder secondary to a concussion. At this time, Mark is not capable of working as his depth perception and eye movements are not adequate to keep him safe in the workplace. He is making progress with his therapy and we are hopeful that in the next few months we will have his visual system capable for returning to work, at least part time."

09/17/2018: Thomas Higginbotham, DO noted the claimant had improved his balance with physical therapy and chiro had improved his cervical complaints. Physical examination revealed abnormal gait and stance, brushing against the hallway while walking to treatment room, pivoting gives a sense of imbalance, and positive Romberg's. He continued with blurred vision with reading a document, and he must cover his left eye and hold the document at an arm's length to read it.

08/17/2018:  Michael Saxerud, OD noted the claimant reported ongoing vision issues, double vision and overlapping images on occasion. With current spectacles, he was able to watch TV, balance and walking more comfortable. But he was still having issues with stairs and depth. Symptoms lessening. Physical examination of the extraocular muscles revealed pursuits, moderate fixation loss, and severe underaction during adduction. Diagnoses: Post-concussional syndrome; visual disorders of shape and size; Chronic post-traumatic headache, intractable; Diplopia; Other irregular eye movements; Convergence insufficiency; Vertical heterophobia; Other abnormalities of gait and mobility; and Visual discomfort, bilateral.

RE: Mark B Bunch                                              NMR #: 506149
Page 10

07/13/2018: Michael Saxerud, OD evaluated the claimant and noted he complained of headaches, visual fatigue, loss of concentration, covering one eye while reading, poor ability to judge depth, bumping into objects, double vision, photosensitivity. Diplopia is constant and persistent, greater when looking at near. Impressions: Convergence insufficiency; headache; visual perceptual disorder; pursuit eye movement disorder, focal midline right; dizziness; myopia; astigmatism; diplopia; vertical heterophobia; bilateral visual discomfort. RX prism spectacles are recommended.

07/03/2018: Thomas Higginbotham, DO noted the claimant reported his headaches worsened with stress and getting tunnel vision. He has photosensitivity noted, slightly unsteady gait, inability to perform left-sided finger-to-nose testing even while watching the finger. He still persists with midline visual shift on testing. Dr Higginbotham added, "I reviewed Dr. Heffelstein's report, and it is likely invalid because of his visual difficulties, headaches, and inability to concentrate and focus. I believe these issues were brought up by Dr. Helffenstein. I believe the respondent attorney finds the word 'invalid' as meaning something else. Probably the basic premise that a neuropsychologist is to understand the nature of the medical conditions that are present when evaluating a person for neuropsychologic sequela from a head injury. When I provided Mr. Bunch with something to read, he can't see it very well, complaining of double vision and blurred vision and moves the paper and his neck in angles in order to see it and even when he sees it, he cannot maintain his glance but for a couple of seconds. I cannot imagine him attending to detailed questioning of validity testing, let alone psychometric testing with his visual difficulties."

06/19/2018: Thomas Higginbotham, DO noted, "...he continued with physical therapy and I received some notes from the therapist. The therapist apparently concurs with my concerns of visual vestibular disruption related to his head injury. The therapist is working on strategies on helping Mr. Bunch. My hope is to have a neuropsych evaluation and based on the findings, direct cognitive-behavioral therapy through early speech language pathologist. On observation of walking in and about the exam room and with positive Romberg's maneuver and balance testing, there are still concerns with coordination and proprioception. He still has positive visual midline shift testing that regressed from the last visit and consistent with our initial visit. He relates of having a fall in physical therapy when trying to attend to some balance exercises while under the care of the therapist." Assessment: Concussion with emotional and behavioral changes, neurocognitive disorder, visual difficulties with spatial disorientation, posttraumatic headache, not intractable; Cervicalgia; Cervical strain.

06/05/2018: Thomas Higginbotham, DO noted, "From my initial visit, he raised concerns for post-concussion syndrome with visual spatial disorientation and cognitive and behavioral concerns. Based on the initial exam, he was referred for neuro-optometry and neurology consults."

05/22/2018: Thomas Higginbotham, DO states that the claims adjuster stopped all involvement on his claim. Dr Higginbotham stated, "He still has evidence of not visualizing items in the midline of his vision. He still demonstrates issues with imbalance, albeit slightly improved." He continued with headache and neck tension, facial pain, difficulty sleeping, irritability. He continued physical therapy. Assessment: History of head trauma with emotional and behavioral disturbance/changes, neurocognitive disorder, visual difficulties with spatial disorientation; cervicalgia; cervical strain; cephalgia, combination of myofascial tension and posttraumatic; situational adjustment reactions with anxiety and depressed mood. Request for Neuropsychologic screening with considerations for cognitive behavioral therapy was noted.

06/08/2018: Psychological Evaluation / Medical Records Review by Herman Staudenmayer, PhD concluded, "Mr. Bunch was involved in a MVA and was referred for a psychological evaluation and screening for comprehensive neuropsychological testing. Mental Status Exam suggest exaggeration and adopting the sick role. Psychological testing indicated that his self-report reflects over-reporting bias, making the self-reported

Lincoln/Bunch 0119

RE: Mark B Bunch                                           NMR #: 506149
Page 11

symptoms invalid. Comprehensive neuropsychological testing is contraindicating at this time. He may benefit from psychotherapy to address this issues Working diagnoses: Psychological factors affecting other medical conditions."

5/31/2018: Physical therapy note stated the claimant was seen with acute on chronic left-sided cervical pain, muscle restrictions post MVA. He reported improvement in symptoms, but was very sore last session. Cervical spine range of motion was 25% restricted on flexion and extension with tightness, right side bending was 25%, and scapular elevation painful and weak all others W FL. Reflexes were 2+, sensation was intact, shoulder range of motion was 0-160 degrees on flexion, and 0-142 degrees on abduction. The left bilateral upper extremity strength was 5/5. He has tenderness to palpation in the neck.

05/22/2018: Thomas Higginbotham, DO noted the claimant reported the triple drug combination of betamethasone-Robaxin-indomethacin had been helpful. Cervical range of motion still quite limited with sharp pain about the left mid cervical area radiating into the left scapulothoracic area.

05/10/2018: Thomas Higginbotham, DO noted the claimant still complained of headache, neck pain, visual difficulties, imbalance, dizziness and cognitive issues such as forgetfulness and word finding. He denied any radicular component into upper extremities. He was unable to return to work in any capacity until further evaluation.

05/03/2018 and 05/18/2018: Neuropsychological Screening by Dr Dennis Helffenstein, PhD provided conclusion, "Based on Mr. Bunch's retrospective description of the motor vehicle accident of February 13, 2018, he does met the diagnostic criteria for a Post-Concussive Syndrome/Mild Traumatic Brain Injury While he did not experience loss of consciousness related to the accident, he did experience altered consciousness in the form of being dazed and confused. This altered consciousness lasted for approximately four weeks He experienced nausea, vomiting, dizziness, and lethargy post-accident, which would all be behavioral indicators of a concussion. Mr. Bunch continues to report a constellation of physical fatigue, visual, cognitive, and emotional coping deficits consistent with post-concussive syndrome. He reports a clear temporal onset of cognitive problems immediately post-accident Mr. Bunch is reporting a variety of vision problems consistent with a post-traumatic vision syndrome. It appears that ocular motor and smooth pursuit deficits have been identified post-accident. He is also reporting symptoms suggestive of a possible left visual inattention." Assessment: Mild neurocognitive disorder due to traumatic brain injury with behavioral disturbance (includes irritability, reduced stress tolerance, and anger outburst); depressive disorder due to traumatic brain injury, mild; and post-traumatic stress disorder.

05/03/2018: Thomas Higginbotham, DO at Occupational and Environmental Health Services evaluated the claimant for complaints of pain and discomfort about the head, left scapulothoracic area, left upper hup, left elbow, and left thumb. It was stated that "he identifies numbness and tingling sensations about the dorsum of the left hand and the back of his head." He reported dizziness, headaches, muscle cramps, depression and nervousness, nausea, recent change in vision with blurred vision and photophobia, marked tiredness, trouble falling and staying asleep, mood swings and panic attacks, neck and back pain. On physical examination, it was noted, "He is quite uncomfortable with his headaches and neck discomforts he shows me pictures of his head and face that were taken within the hour of the collision. He has a positive Romberg's sign in that he falls to the back rather readily. He cannot recognize a pencil being in the center of his vision when coming from the periphery of either side. He has difficulty tracking, particularly to the right horizon, but the eyes do move in all directions. Pupils are equal and reactive to light. He puffs his cheeks symmetrically, and his smile is symmetrical and can shrug his shoulder symmetrically." Assessment: History of a work-related motor vehicle collision; history of head trauma without loss of consciousness; post concussion sequela with spatial

**Lincoln/Bunch 0120**

RE: Mark B Bunch                                                    NMR #: 506149
Page 12

disorientation, imbalance, cervicalgia, headaches, tinnitus, cognitive difficulties, and sound and light sensitivity; cervical myofascial strain; thoracic myofascial strain; and right thumb sprain.

04/13/2018: Steven Olson, MD noted, "He continues to have headaches and neck pain. Given the positive findings on exam from last visit, Brain MRI was done showing some white matter change, possible MS. There was no previous history of neuro deficits before the trauma. He continues to have neck pain." Limited physical examination revealed fluent speech, positive Romberg, and more fluent eye movement. Extremities, neck, back, gait were not addressed.

04/04/2018: Steven Olson, MD noted, "He is here for follow up TBI. He had significant eye findings but these have resolved. For symptoms to be present an accident seems coincidental for MS without previous symptoms. More likely the changes are secondary to the trauma. Referral already done for Neurology to evaluate. He is requesting PT and chiropractor for help with the chronic neck pain." Limited physical examination revealed fluent speech, positive Romberg,and more fluent eye movement. Extremities, neck, back, gait were not addressed.

03/28/2018: MRI of the brain showed mild white matter disease possibly from multiple sclerosis.

02/27/2018: Steven Olson, MD evaluated the claimant and noted, "He is here for follow up TBI. He has significant eye findings, namely coordination problems. He doesn't exactly have cranial nerve deficits. His eyes have full ROM but the coordination and smoothness of tracking is not present. Romberg is also positive. Since the CT scan was negative and symptoms are perhaps worse, I am going to order an MRI." Assessment: Traumatic brain injury, without loss of consciousness, subsequent encounter; cranial nerve impairment; balance problem.

02/13/2018:  David Wilson, MD, noted "(he) presents after a motor vehicle accident. He was going about 15 miles per hour at the exit ramp, when someone stopped in front of him and then started to back up. He estimates the total force of collusion was around 25 miles per hour. No airbags deployed, though he does not believe his vehicle has airbags. He was restrained, but hit hard enough that his head struck the steering wheel on the left forehead region. He denies loss of consciousness. Initially he felt like he had some blurred vision and maybe even some left eye pain, but this has resolved. When he first got out of the car, he felt like his equilibrium was off, like he has felt previously with sports injuries to the head. He no longer has that symptom. He does have a pounding headache. He denies any anticoagulated use. No history of hypertension in the past, although his blood pressures were noted to be ultimately high here. No other acute complaints Patient having left eye, neck/shoulder muscle pain. Pt denies visual changes, denies extremity numbness/weakness, nausea/vomiting." Physical examination revealed left scalp tenderness and a mild abrasion. Eye exam was normal. There was some left masseter muscle tenderness. There appeared to be developing right periorbital ecchymosis. Neck supple, no cervical adenopathy, paraspinal muscle tenderness bilaterally. Normal range of motion of upper and lower extremities. Normal gait. Cranial nerves II-XII intact. Dr. Wilson added the claimant reported blurred vision and dizziness had resolved, "this does seem consistent with concussion." CT of the head and cervical spine performed at EDE revealed no evidence for any acute traumatic process. He was given acetaminophen and discharged home. Assessment: Concussion with closed head injury; cervical strain; right periorbital ecchymosis; elevated blood pressure; status post MVA.

All available medical documentation was reviewed.

**IN ANSWER TO YOUR SPECIFIC QUESTIONS:**

**Lincoln/Bunch 0121**

RE:  Mark B Bunch                                      NMR #: 506149
Page 13

---

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

The primary impairing diagnoses are:
Post concussion syndrome (F07.81).
Convergence insufficiency of mild severity (H51.11).

**2. If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

He has comorbid conditions of: adjustment reaction with depression and anxiety; unresolved situational anxiety; hypertension; dysphagia, dysphasia; cervical strain. These diagnoses would not cause additional restrictions.

**3.**
**Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 11/10/20 to ongoing, and comment on the expected duration.**

The claimant discontinued working on 02/14/2018 secondary to traumatic brain injury with post-concussion sequela of visual difficulties with spatial disorientation and neurocognitive disorder and visual changes including vertical heterophobia, status post MVA on 02/13/2018.

The claimant was involved in a motor vehicle accident on 02/13/2018. He presented to the ED (emergency room) reporting the airbags did not deploy and he hit his head on the steering wheel, left forehead region. No loss of consciousness was reported, but he had some initial blurred visiodeficitseft eye pain. He also reported problems with equilibrium when he stepped off of the car. These symptoms resolved by the time he got to the Emergency Department, where CT (computed tomography) scans of the head and cervical spine revealed no evidence for any acute traumatic process. He was given acetaminophen and was discharged. The claimant was seen  by Dr. Olson for mental health complaints. The doctor notes the claimant has intact eye-movement but is not fluidly tracking. Dr. Olson has requested evaluation protocol to rule out Multiple Sclerosis which, at least until February 2021, had not been completed. Follow ups by Dr. Higginbotham noted the claimant still complained of cervical pain, changes in vision, and imbalance. Neurological and neuropsychological testing were recommended. An MRI (magnetic resonance imaging) of the brain performed 03/28/2018 revealed mild white matter disease possibly from multiple sclerosis, but he opined that it was more likely secondary to the MVA rather than MS. The claimant was evaluated by the neuro optometrist Michael Saxerud, OD on 09/21/2018, who prescribed hi prism spectacles for symptoms of double vision, headaches, imbalance, problems with depth. The claimant was last seen by Dr. Saxerud in 2019. Theclaimanty underwent a psychological evaluations in 2018 by Herman Staudenmayer, PhD, which concur that the claimant is still experiencing post-concussion syndrome sequelae. The claimant still reports problems with memory, word finding, changes in mood and behavior, significant balance issues and visual disturbances.The claimant was evaluated by Neurologist Julia Brinley, DO in 2018. On exam, the claimant presents with normal attention and concentration, normal recent and remote memory, stuttering noted at times, with intact comprehension, full orientation, normal judgment. Impressions include postconcussion syndrome.There are no subsequent follow up notes. The claimant has attended physical therapy for his cervical complaints. He has also attended psychotherapy for depression, anxiety, PTSD, adjustment disorder as well as speech therapy. There was a gap in treatment due to the claimant losing insurance, but he has been approved for SSDI and Medicaid since. Speech

**Lincoln/Bunch 0122**

RE:  Mark B Bunch                                                NMR #: 506149
Page 14

therapy treatment note indicates the claimant was  working towards improvement with speech fluency, selective attention, recall, and problem-solving.

The following restrictions and functional limitations are supported in an 8-hour workday from 11/10/20 and ongoing as follows:
Frequent walking and standing, 8 hours combined, limited to 60 minutes combined at one time.
Constant sitting with ability to alter position as necessary for comfort.
Occasional crawling, kneeling, stooping, bending, and no balancing or climbing.
Frequent reaching at all planes, gripping, grasping and fingering.
Unrestricted lifting, carrying, pushing and pulling.
Full-time, 40-hour, 5 day per week capacity.

From an occupational medicine perspective there are no clinical or diagnostic findings that would preclude full-time capacity. Reassessment is recommended in six months from the date of this review.

**4. Do medical records support any R&Ls that were recommended by treating providers for the timeframes in question?**

From an occupational medicine perspective, the restrictions placed by Dr. Higginbotham are not supported by the clinical findings within the medical records.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

The medical management has been reasonable and consistent with the level of severity of the reported condition.

**6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?**

There are no nonmedical issues identified impacting functionality in the workplace.

**7.**
**Please initiate AP contact when it may clarify any significant areas such as diagnosis, R&Ls, treatment opportunities, prognosis, or reason for work absence. AP contact information is Thomas Higginbotham DO.**

The office of the provider was contacted as requested. I did not receive a call back.

**8. Based on the totality of medical evidence, does the (overall functional and) medical evidence support the claimant has the ability to sustain full time capacity (8/hours/day 5 days/ week) within any identified restrictions and limitations from 11/10/20 forward? Please explain your medical rationale.**

The findings within the medical records reflect the claimant is a 57-year-old male, DOB           who was previously employed as a Direct Sales Representative. He discontinued working on 02/14/2018 secondary to traumatic brain injury with post-concussion sequela of visual difficulties with spatial disorientation and neurocognitive disorder and visual changes including vertical heterophobia, status post MVA on 02/13/2018. The claimant has appropriate time for recovery. During the dates under review, there is no evidence of

**Lincoln/Bunch 0123**

RE: Mark B Bunch                                                    NMR #: 506149
Page 15

significant motor of neurological deficits. There is no evidence of significant level of pain. No medications side effects are noted.Thus, from an occupational medicine perspective there are no clinical or diagnostic findings that would preclude the full-time performance of the essential duties of his work activities.

## CONFLICT OF INTEREST ATTESTATION:

I certify that I do not accept compensation for review activities that is dependent in any way on the specific outcome of the case. To the best of my knowledge, I was not involved with the specific episode of care prior to referral of the case for review. I do not have a material professional, familial, or financial conflict of interest (financial conflict of interest is defined as ownership interest of greater than 5%) regarding any of the following: the referring entity; the insurance issuer or group health plan that is the subject of the review the covered person whose treatment is the subject of the review and the covered person's authorized representative, if applicable; any officer, director or management employee of the insurance issuer that is the subject of the review; any group health plan administrator, plan fiduciary, or plan employee; the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of the review; the facility at which the recommended health care service or treatment would be provided; or the developer or manufacturer of the principle drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of the review.

This attestation certifies that the peer reviewer named below has the appropriate scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review and has current, relevant experience and/or knowledge to render a determination for the case under review.

## ADVISING REVIEWER:

Frank D. Polanco, M.D.
Board Certified in Occupational Medicine
Licensed in State of AK #7384
Licensed in State of AZ #48391
Licensed in State of CO #DR.0026542
Colorado Level II Accreditation
Licensed in State of HI #MD-16038
Licensed in State of MN #55138
Licensed in State of TX #F3581
Licensed in State of WA #MD60413205

*NMR Conflict of Interest Attestation:*

*NMR attests to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure. NMR attests that its compensation is not dependent on the specific outcome of this review or has had any involvement with this case prior to this referral.*

**Lincoln/Bunch 0124**



**Network Medical Review Co. Ltd.**

*An ExamWorks Company*

| | | |
|---|---|---|
| **REFERRED BY:** | JANE DANIELL | |
| **CLIENT:** | Lincoln Life Insurance | |
| **NAME:** | Mark B Bunch | |
| **CLAIM #:** | 8220685 | |
| **NMR #:** | 506141 | |
| **DATE:** | 7/16/2021 | |

**RECORDS PROVIDED FOR REVIEW:**

| PROGRESS NOTES | Parkview Medical Center | 02/13/18 |
|---|---|---|
| PROGRESS NOTES | Centura Health | 02/27/18-04/13/18 |
| PROGRESS NOTES | T. W. Higginbotham, D.O., FAADEP | 05/03/18-06/17/21 +Undated |
| PROGRESS NOTES | Colorado Springs Neuro Associates, P.C. | 05/30/18-06/01/21 |
| PROGRESS NOTES | Gleneagle Vision Center, PC | 06/30/18-09/21/18 |
| PROGRESS NOTES | M. V. Christiansen, D.C. | 07/30/18-10/30/18 +Undated |
| PROGRESS NOTES | H. Staudenmayer, Ph.D. | 08/06/18-08/13/18 |
| PROGRESS NOTES | Pine Creek Vision Clinic | 11/02/18-11/21/18 |
| PHYSICAL THERAPY | Centura Health | 05/31/18-04/24/19 |
| FILE REVIEWS | J. Young, M.D. | 09/10/18 |
| FILE REVIEWS | R. Swotinsky, M.D. | 04/23/19 |
| FILE REVIEWS | T. Belliveau, Ph.D., ABPP | 04/29/19-10/04/20 |
| FILE REVIEWS | J. Brinley, D.O. | 05/11/19 |
| FILE REVIEWS | B. Davitt, M.D. | 05/23/19-06/24/19 |
| FILE REVIEWS | D. Teehan, M.D., MPH | 07/15/20 |
| FILE REVIEWS | L. M. Wilcox, Jr., M.D. | 08/04/20 |
| FILE REVIEWS | J. Marehbian, M.D. | 08/19/20 |
| FILE REVIEWS | J. B. Hertza, Psy.D. | 10/28/20 |
| CT | Parkview Medical Center | 02/13/18 |
| JOB | | 01/03/19 |
| OTHER | N. Hall, M.S., CRC | 05/16/19 |

**4960 E. State Street ❖ Rockford, IL 61108 ❖ Phone 815.964.6334 ❖ Fax 815.964.1162**
*website* www.nmrco.com ▓ *email* info@nmrco.com

**Lincoln/Bunch 0125**

RE: Mark B Bunch                                              NMR #: 506141
Page 2

| OTHER | M. Provost, M.A., CRC | 09/01/20-09/10/20 |
|---|---|---|
| MISC | | 11/15/17-06/29/21 +Undated |
| ROI | | 09/19/19 +Undated |

TELECONFERENCE
    1) AP NAME: Anthony Ricci PhD
    2) PHONE: (719) 594 4407
    3) DATE(S): 7/8/2021, 7/9/2021, 7/9/2021
    4) TIME(S): 3:31 PM MDT, 2:19 PM MDT, 2:37 PM MDT
    5) PERSON(S) SPOKEN WITH: Carol, Voicemail from AP, Voicemail box of AP
    6) POSITION OF PERSON(S) SPOKEN WITH: Office staff, Voicemail from AP, Voicemail

SUMMARY OF DISCUSSION(S): The office was called on 07/08/21. I spoke with Carol and left a detailed message noting the reason for my call and requesting a return call. I provided name and date of birth of claimant. My name and contact number were provided. A time frame for call back was provided.

On 07/09/21, The AP leaves voicemail, indicating availability for a phone consultation.

I called on 07/09/21 and left a message thanking the AP for his attempt to reach me and requesting a return call. I provided name and date of birth of claimant. My name and contact number were provided. A time frame for call back was provided.

**ASSESSMENT:** I have reviewed all of the records provided. I will summarize those portions of the records reviewed that have relevance to the questions and timeframe identified for this review and within the scope of my area of specialty. Records include physical therapy treatment notes, chiropractic notes, as well as office visit notes, letters from the claimant's attorney, and activities questionnaire from prior to the timeframe under consideration.

The claimant (DOB:                          is a male.

Job description for a direct sales representative is provided for review.

An undated daily activities questionnaire, evidently completed by the claimant, notes difficulty with daily activities due to headache, blurred vision, lack of concentration, balance problems, ringing in the ears. Difficulty with sleep is noted. The claimant is involved in speech therapy at the time of this form. He does not go out by himself.

An undated statement from the claimant notes he was involved in February 2018 motor vehicle accident, and has been unable to work since that time with headaches, ringing in the ears, balance problems, insomnia, depression, neck pain, loss of range of motion, difficulty with stairs, double vision, problems focusing and reading. The claimant notes and embarrassing stutter.

An undated statement by the claimant indicates he has not worked since February 2018 following car accident. Indicates he is not able to drive.

**Lincoln/Bunch 0126**

RE:  Mark  B Bunch                                          NMR #: 506141
Page 3

February 13, 2018 emergency room note indicates the claimant presents following motor vehicle accident, head strike noted, no loss of consciousness noted, some initial complaint of blurred vision and eye pain which resolved, stepping out of the car feelings of his equilibrium was off. Previous history of sports injuries to the head is noted.

February 27, 2018 consultation with Steven Olson, MD notes no anxiety or depression on review of systems. Mental status observations described the claimant is pleasant, cooperative, with normal judgment and affect, fluent speech. The doctor notes the claimant has intact eye-movement but is not fluidly tracking.

March 21, 2018 brain MRI (magnetic resonance imaging) is interpreted as revealing mild white matter disease possibly for multiple sclerosis.

April 4, 2018 progress note by Steven Olson, MD states the claimant is referred to chiropractic and physical therapy. The doctor notes there had been significant eye findings but these have resolved. impressions include concussion. Review of systems is negative for behavioral health complaints. Mental status observations are benign.

May 3, 2018 occupational and environmental health services evaluation with Thomas Higginbotham, DO notes the claimant is referred by Steven Olson, MD, for evaluation of traumatic brain injury. The claimant endorses headache and sensitivity to sound and light. Difficulty with visual tracking is noted. Impressions include motor vehicle accident in history of head trauma without loss of consciousness.

May 22, 2018 progress note by Thomas Higginbotham, DO states the claimant has been involved with physical therapy, is awaiting authorization for other consultations. The claimant drive to this office visit. He is described as alert and oriented, appears more cogent on the day of this exam. Impressions include posttraumatic headache and cognitive changes.

May 23, 2018 request for information is returned by Dennis Heffelstein, PhD, notes impressions of postconcussive syndrome, PTSD (posttraumatic stress disorder), and major depressive disorder.

June 1, 2018 neuropsychological report by Dennis Heffelstein, PhD, notes the claimant was seen May 3, 2018 and May 18, 2018 for evaluation. Educational attainment is master's degree, with no history of learning disorder. He most recently worked as a sales representative. No substance use history is noted. Testing was discontinued due to poor performance on a freestanding validity indicator (VSVT and TOMM).  significant symptoms are noted on self-report checklists. The doctor notes impression of postconcussive syndrome/mild traumatic brain injury. Additional diagnoses include mild neurocognitive disorder, depressive disorder, and PTSD.

August 6, 2018 psychological evaluation with Herman Staudenmayer, PhD indicates claimant was referred by Thomas Higginbotham, DO. On exam, gait is normal, posture is unimpaired, claimant makes eye contact, expressions suggest a sad and tearful affect. The claimant presents with low energy, normal speech and language, no word finding difficulties noted. Affect is sad and blunt. Thought process is logical and goal-directed. MMPI administration was invalidated (F-r scale at T score of 120). Montreal Cognitive Assessment (MoCA) score was 20/30. concussion symptom checklist notes headache, nausea, balance problems, dizziness, fatigue, sleep changes, light and sound sensitivity, irritability and sadness, nervousness, feeling slow and foggy with difficulty concentrating and remembering. Trauma related symptoms are noted on self-report symptom checklist. The doctor notes unusual and bizarre mannerisms which the claimant attributes to visual impairment.

**Lincoln/Bunch 0127**

RE: Mark B Bunch                                                    NMR #: 506141
Page 4

The doctor observes no lapses in thinking or impaired cognitive processing which could be detected. Impression is psychological factors affecting other medical conditions.

September 10, 2018 psychiatric clinical case review by John Young, MD opines that there is insufficient medical evidence to support psychiatric symptoms of the severity which would require restrictions and limitations.

September 21, 2018 letter from Michael Saxerud, OD notes the claimant is treated for a visual perceptual disorder secondary to concussion.

September 25, 2018 letter from Anthony Ricci, PhD to the claimant's attorney notes the attorney referred the claimant for evaluation. Beck Depression Inventory (BDI) score of 27 is noted. Beck Anxiety Inventory (BAI) T score of 23 is noted. Pain questionnaire and neuropsychological symptom checklist notes complaint of pain, headache, double vision, memory difficulties. The doctor offers impressions of concussion, situational anxiety, adjustment disorder, with rule out consideration of psychological factors affecting other medical conditions. The report does not review formal cognitive testing or performance validity indicators or symptom validity indicators.

October 19, 2018 progress note by Julia Brinley, DO states a history of traumatic brain injury. At this office visit, the claimant indicates that he lost consciousness for uncertain duration. On exam, the claimant presents with normal attention and concentration, normal recent and remote memory, stuttering noted at times, with intact comprehension, full orientation, normal judgment. Impressions include postconcussion syndrome.

November 9, 2018 daily speech therapy treatment note indicates the claimant presents with flat affect. Goals include working towards improvement with speech fluency, selective attention, recall, and problem-solving.

November 20, 2018 letter from Thomas Higginbotham, DO makes a correction two office visit note on May 26, 2018, noting that the claimant did in fact not drive himself to the appointment but rather has transportation.

February 19, 2019 letter from Thomas Higginbotham, DO to the claimant's attorney notes symptoms include pain and impaired memory and judgment. Speech difficulties are noted, as well as challenges with balance and headache. His writing has worsened. Impressions include mild traumatic brain injury, generalized anxiety, PTSD, sleep disturbance.

March 12, 2019 letter from Dennis Heffelstein, PhD to the claimant's attorney notes the doctor has reviewed additional medical records. The doctor again notes that his previous evaluation yields impression of mild neurocognitive disorder, depressive disorder, and PTSD. The doctor notes there was August 2018 evaluation with Herman Staudenmayer, PhD, which included administration of personality inventory which was invalidated. The doctor emphasized however that elevations on self-report skills and personality inventory may be related to honest report of persistent symptoms.

April 23, 2019 file review by Robert Swotinsky, MD stated that the records describe treatment for hypertension and post concussive disorder with cognitive impairment and visual impairment, records also noting treatment for neuropathy and cervical and thoracic spine injury. The doctor opines that impairment is supported by postconcussion syndrome through August 14, 2018.

April 29, 2019 clinical case review by Timothy Belliveau, PhD notes the records support a diagnosis of concussion with insufficient supported beyond May 2018 for cognitive impairment.

**Lincoln/Bunch 0128**

RE: Mark B Bunch                                           NMR #: 506141
Page 5

May 6, 2019 occupational analysis prepared by Nicole Hall, MS notes the occupation reviewed is in the light level, with part-time opportunity in the national economy.

May 7, 2019 progress note by Thomas Higginbotham, DO stated impressions include traumatic brain injury with postconcussion sequela. The doctor opines the claimant is limited due to visual spatial disorientation, imbalance, and prosody of speech. The doctor indicates the claimant cannot drive, cannot walk or stand for five minutes without imbalance, has limited concentration and focusing and pacing, and is incapable of gainful employment.

May 23, 2019 file review by Bradley Davitt, MD notes that the records support convergence insufficiency, heterophoria, and astigmatism . The doctor opines restrictions are supported on the length of time the claimant would be required to read or to use a computer.

June 4, 2019 letter from the claimant's attorney notes that the additional information is provided in support of appeal for long-term disability benefits.

June 17, 2019 confidential investigative report is provided for review.

July 10, 2019 letter from the claimant's attorney notes the claimant used to own a pawn shop but is no longer involved in any such business. The claimant used to write blogs or articles but has not published since 2016.

August 19, 2020 peer-reviewed by Jonathan Marehbian, MD opines that no impairing diagnosis is identified from a neurology perspective.

September 1, 2020 transferable skills analysis by Megan Provost, MA identifies occupations within the claimant's physical capacities.

October 18, 2020 file review by Jeremy Hertza, PsyD notes psychological evaluations do not support impairment with no subsequent effort to assess neuropsychological functioning of the copperheads of assessment since the 2018 examinations.

April 7, 2021 letter from the claimant's attorney notes the office represents the claimant in pursuit of long-term disability benefits.

May 25, 2021 rehabilitation psychology evaluation and concussion review by Anthony Ricci, PhD notes the claimant was referred by his attorney. Beck Depression Inventory (BDI) score is 40. Beck Anxiety Inventory (BAI) score is 41. Pain checklist and neuropsychological symptom checklist notes persistent pain, vision changes, ringing in the ears, muscle weakness, spasms. The doctor notes observed stuttering and difficulty with ambulation. The doctor offers impression of postconcussion syndrome, adjustment reaction, and situational anxiety. The results of cognitive testing are noted. No performance validity or symptom validity indicators are noted.

June 1, 2021 letter from Anthony Ricci, PhD to the claimant's attorney notes impressions of postconcussion syndrome, adjustment reaction, and situational anxiety.

June 10, 2021 letter from the claimant's attorney notes that the additional information is submitted including a narrative report from Anthony Ricci, PhD.

**Lincoln/Bunch 0129**

RE: Mark B Bunch                                                    NMR #: 506141
Page 6

All available medical documentation was reviewed.

**IN ANSWER TO YOUR SPECIFIC QUESTIONS:**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

The claimant presents with a constellation of symptoms consistent with post-concussive syndrome. The post-concussive syndrome includes symptoms which are within my area of expertise (cognitive inefficiency, irritability, sleep changes, depression) as well as symptoms which fall outside my area of practice and expertise (balance problems and headache for example). I defer to medical regarding functional impairment attributable to impairment outside my area of expertise. At the current review, records provided do not support restrictions and limitations on the basis of severe psychiatric or neurocognitive impairment.

**2. If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

Not applicable. Records provided do not support restrictions and limitations on the basis of severe psychiatric or neurocognitive impairment.

**3.**
**Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 11/10/20 to ongoing, and comment on the expected duration.**

Records indicate the claimant sustained head strike in motor vehicle accident. Reports initially indicated no loss of consciousness, while later clinical documentation indicates the claimant reports there was a period of loss of consciousness. Subsequent symptoms are consistent with postconcussive syndrome, including cognitive inefficiency, mood changes, sleep changes, balance, and visual changes. Records do not support a psychiatric disorder of severity which would limit daily activity. The level of behavioral health care and frequency of office visits is not consistent with severe psychiatric disorder. Records do not indicate the claimant has been referred for higher level of behavioral health care. Records do not indicate the claimant has been involved in a level of psychiatric care which would prevent daily activity. Records indicate there were rehabilitation therapies following the car accident, and these included speech language pathology. No subsequent course of cognitive rehabilitation is noted. In 2018, an effort to evaluate neurocognitive functioning was aborted when there was indication of poor performance validity. There has evidently been no follow-up neuropsychological evaluation since that time, and exam findings noted across the records provided for review do not include clinician-observed evidence of cognitive impairment which would require limitations and restrictions. The claimant's symptoms are consistently documented across records, both in narrative form and in a self-report symptom checklist form. When records indicate there was effort at assessment of symptom validity (for example in personality inventory such as MMPI) there was indication of poor symptom validity. The symptom magnification noted at 2018 MMPI administration was such that in a self-report including symptom checklist that evaluation would be difficult to interpret, and it would not be possible to form impressions of actual capacities and limitations on the basis of those self-report data. No subsequent administration of personality inventory of other symptom validity assessment is noted since that 2018 exam. Without exam findings or test

**Lincoln/Bunch 0130**

RE: Mark B Bunch                                          NMR #: 506141
Page 7

results are neuropsychological data to support cognitive impairment, review of the records provided here do not support psychiatric or neurocognitive impairment within the timeframe under consideration.

**4. Do medical records support any R&Ls that were recommended by treating providers for the timeframes in question?**

May 25, 2021 rehabilitation psychology evaluation and concussion review by Anthony Ricci, PhD, notes the claimant was referred by his attorney. BDI score is 40. BAI score is 41. Pain checklist and neuropsychological symptom checklist notes persistent pain, vision changes, ringing in the ears, muscle weakness, spasms. The doctor notes observed stuttering and difficulty with ambulation. The doctor offers impression of postconcussion syndrome, adjustment reaction, and situational anxiety. The results of cognitive testing are noted. No performance validity or symptom validity indicators are noted. For these reasons, it is difficult for an independent reviewer to form impression of capacities and limitations on the basis of these data alone. Records provided do not support restrictions and limitations on the basis of severe psychiatric or neurocognitive impairment.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

Records indicate there has been multidisciplinary consultation and treatment, including rehabilitation therapies. These interventions are appropriate for the type and severity of symptoms endorsed by the claimant. There has not been a validated neuropsychological evaluation. Records do not indicate there has been attempt at neuropsychological evaluation since the 2018 exam noted above.

**6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?**

Records do not indicate any workplace, clicks or childcare or eldercare issues or legal issues or other nonmedical circumstances.

**7. Please initiate AP contact when it may clarify any significant areas such as diagnosis, R&Ls, treatment opportunities, prognosis, or reason for work absence. AP contact information: Name: Anthony Ricci PHD**

I was not able to establish phone consultation with treating provider.

**8. Additional question: Based on the totality of medical evidence, does the (overall functional and) medical evidence support the claimant has the ability to sustain full time capacity (8/hours/day 5 days/week) within any identified restrictions and limitations from 11/10/20 forward? Please explain your medical rationale.**

Records provided note the claimant is treated for both medical as well as mental health conditions. I will limit my responses to my areas of expertise, psychology and neuropsychology. Records reviewed do not provide clear and credible support for inability to sustain full time employment on the basis of functional impairment attributed to severe psychiatric or neurocognitive impairment. At the current review, records provided do not support restrictions and limitations on the basis of severe psychiatric or neurocognitive impairment.

**Lincoln/Bunch 0131**

RE: Mark  B Bunch                                    NMR #: 506141
Page 8

**CONFLICT OF INTEREST ATTESTATION:**

I certify that I do not accept compensation for review activities that is dependent in any way on the specific outcome of the case. To the best of my knowledge, I was not involved with the specific episode of care prior to referral of the case for review. I do not have a material professional, familial, or financial conflict of interest (financial conflict of interest is defined as ownership interest of greater than 5%) regarding any of the following: the referring entity; the insurance issuer or group health plan that is the subject of the review the covered person whose treatment is the subject of the review and the covered person's authorized representative, if applicable; any officer, director or management employee of the insurance issuer that is the subject of the review; any group health plan administrator, plan fiduciary, or plan employee; the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of the review; the facility at which the recommended health care service or treatment would be provided; or the developer or manufacturer of the principle drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of the review.

This attestation certifies that the peer reviewer named below has the appropriate scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review and has current, relevant experience and/or knowledge to render a determination for the case under review.

**ADVISING REVIEWER:**

David Nowell, Ph.D.
Licensed Psychologist
Practicing Neuropsychologist
Licensed in State of MA #7226

*NMR Conflict of Interest Attestation:*

*NMR attests to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure.  NMR attests that its compensation is not dependent on the specific outcome of this review or has had any involvement with this case prior to this referral.*

**Lincoln/Bunch 0132**



**Vocational Memorandum – Appeal Transferable Skills Analysis**

**From:** Nicole Hall, MS, CRC
**Date:** 07/30/2021
**To:** Jane Daniell, Appeal Review Consultant
**Claim#:** 8220685
**Claimant:** Mark Bunch
**Policyholder:** Charter Communications, Inc.

**Vocational Assessment:**
This file was referred for an Appeal Transferable Skills Analysis (TSA) as updated medical information has been obtained. The insured is a 57-year-old Direct Sales Representative employed with Charter Communications, Inc. since 01/04/16. The insured discontinued work on 02/04/18 due to post-concussion syndrome and convergence insufficiency of mild severity. For the purpose of this report, I reviewed the claim file and researched standard vocational resources. I also reviewed the previously completed TSA report dated 09/01/20 as well as the TSA Addendum dated 09/10/20, both completed by Megan Provost, MA, CRC (please see the completed reports for full details regarding demographics, capacities utilized, education, work history, transferable skills, and alternative occupations with accompanying wages). Per Appeal Review Consultant request, the updated restrictions and limitations to be reviewed are outlined within the Occupational Medicine Peer Review completed by Dr. Polanco, M.D., dated 07/16/21. Upon review of the available information, this VCM has found that the previously identified occupational alternatives (i.e. Manager Sales, Fund Raiser I, and Supervisor of Communications) continue to remain viable given the updated restrictions as provided by Dr. Polanco. An additional OASYS analysis was performed and given the updated restrictions and limitations, the insured's own occupation was identified as an additional alternative. These occupations would allow one the ability to alter positions as needed for comfort. The updated information, including updated wages, has been provided below. This memorandum will serve in lieu of a formal report. No further vocational services rendered.

| DOT Code | Occupation | Str | National Monthly Wage |
|---|---|---|---|
| 259.357-022 | [*] Sales Representative, Television Cable Service | L | $8,961.96 |
| 163.167-018 | Manager, Sales | S | $11,024.00 |
| 293.157-010 | Fund Raiser I | L | $9,869.60 |
| 184.167-230 | Supervisor of Communications | S | $9,696.27 |

*Wage Information is based on median 2020 Bureau of Labor Statistical Data*
*[*] Own Occupation- Based on further review of the insured's work history and skills acquired, it is reasonable that they would have the ability to earn their pre-disability wages in their own occupation.*

Respectfully submitted,

**Electronically Signed by**
Nicole Hall, MS, CRC
Vocational Case Manager
Group Protection
Lincoln Financial Group

**Lincoln/Bunch 0133**

| DOT Code | Occupation Title | SVP | Yrs | Mos | Inc | Has CWF | Uses CWF | Str | GOE Code |
|---|---|---|---|---|---|---|---|---|---|
| 259.357-022 | Sales Representative, Television Cable Service | 3 | 2 | 0 | Y | N | N | L | 08.02.06 |
| 163.167-018 | Manager, Sales | 8 | 15 | 0 | Y | N | N | S | 11.05.04 |

**ADJUSTED VARIABLES SUMMARY**

This report summarizes the changes made to the person's ability profile.

|  | **Changed From** | **Changed To** |
|---|---|---|
| **Specific Vocational Preparation** | | |
| Maximum | 8 (4 to 10 years) | No Change |
| Minimum | 3 (1 to 3 months) | 1 (Short demo only) |
| | | |
| **General Educational Development** | | |
| Reasoning | 5 Grades 13-14 | 6 Grades 15-16+ |
| Mathematics | 3 Grades 7-8 | 6 Grades 15-16+ |
| Language | 5 Grades 13-14 | 6 Grades 15-16+ |

**Physical Demands**

| | | | |
|---|---|---|---|
| Strength | Maximum | L Light | No Change |
| | Minimum | S Sedentary | No Change |
| Climbing | | Never | No Change |
| Balancing | | Never | No Change |
| Stooping | | Never | Occasionally |
| Kneeling | | Never | Occasionally |
| Crouching | | Never | Unknown |
| Crawling | | Never | Occasionally |
| Reaching | | Occasionally | Frequently |
| Handling | | Frequently | No Change |
| Fingering | | Frequently | No Change |
| Feeling | | Never | Frequently |
| Talking | | Constantly | Unknown |
| Hearing | | Constantly | Unknown |
| Tasting/Smelling | | Never | Unknown |
| Near Acuity | | Frequently | Unknown |
| Far Acuity | | Never | Unknown |
| Depth Perception | | Never | Unknown |
| Accommodation | | Never | Unknown |
| Color Vision | | Occasionally | Unknown |
| Field of Vision | | Never | Unknown |

**Environmental Conditions**

| | | |
|---|---|---|
| Exposure to Weather | Never | Unknown |
| Extreme Cold | Never | Unknown |
| Extreme Heat | Never | Unknown |
| Wet and/or Humid | Never | Unknown |
| Vibration | Never | Unknown |
| Atmospheric Conditions | Never | Unknown |
| Proximity to Moving Mechanical Parts | Never | Unknown |
| Exposure to Electrical Shock | Never | Unknown |
| Working in High Exposed Places | Never | Unknown |
| Exposure to Radiation | Never | Unknown |
| Working with Explosives | Never | Unknown |

Lincoln/Bunch 0134

| Exposure to Toxic or Caustic Chemicals | Never | Unknown |
| Other Environmental Conditions | Never | Unknown |
| Noise Intensity Level | Moderate | Very Loud |

**DOT Aptitudes**

| General Learning Ability | 2 (67-89 Percentile) | No Change |
| Verbal Aptitude | 2 (67-89 Percentile) | No Change |
| Numerical Aptitude | 2 (67-89 Percentile) | No Change |
| Spatial Aptitude | 3 (34-66 Percentile) | No Change |
| Form Perception | 3 (34-66 Percentile) | No Change |
| Clerical Aptitude | 3 (34-66 Percentile) | No Change |
| Motor Coordination | 4 (11-33 Percentile) | No Change |
| Finger Dexterity | 4 (11-33 Percentile) | No Change |
| Manual Dexterity | 4 (11-33 Percentile) | No Change |
| Eye-Hand-Foot Coordination | 5 (Below 11 Percentile) | No Change |
| Color Discrimination | 4 (11-33 Percentile) | No Change |

**Work Situations (Temperaments)**

| Directing, Controlling, Planning | Yes | | No Change |
| Performing Repetitive Work | No | | Yes |
| Influencing People | Yes | | No Change |
| Performing a Variety of Duties | Yes | | No Change |
| Expressing Personal Feelings | No | | No Change |
| Working Alone or in Isolation | No | | No Change |
| Performing Under Stress | No | | No Change |
| Attaining Precise Limits/Tolerances | No | | Yes |
| Following Specific Instructions | No | Yes | |
| Dealing with People | Yes | | No Change |
| Making Judgments and Decisions | Yes | | No Change |

**Work Functions - Data**

| 0 Synthesizing | No | No Change |
| 1 Coordinating | Yes | No Change |
| 2 Analyzing | No | Yes |
| 3 Compiling | Yes | No Change |
| 4 Computing | No | Yes |
| 5 Copying | No | Yes |
| 6 Comparing | No | Yes |

**Work Functions - People**

| 0 Mentoring | No | No Change |
| 1 Negotiating | No | No Change |
| 2 Instructing | No | No Change |
| 3 Supervising | No | No Change |
| 4 Diverting | No | No Change |
| 5 Persuading | Yes | No Change |
| 6 Speaking-Signaling | Yes | No Change |
| 7 Serving | No | Yes |
| 8 Taking Instructions-Helping | No | Yes |

**Work Functions - Things**

| 0 Setting Up | No | No Change |
| 1 Precision Working | No | No Change |
| 2 Operating-Controlling | No | No Change |
| 3 Driving-Operating | No | No Change |

3

Lincoln/Bunch 0135

| 4 Manipulating | No | No Change |
| 5 Tending | No | No Change |
| 6 Feeding-Offbearing | No | No Change |
| 7 Handling | Yes | No Change |

4

Lincoln/Bunch 0136



---

**Vocational Memorandum – Appeal Transferable Skills Analysis**

**From:**  Nicole Hall, MS, CRC
**Date**: 07/30/2021
**To:**  Jane Daniell, Appeal Review Consultant
**Claim#:**  8220685
**Claimant:**  Mark Bunch
**Policyholder:**  Charter Communications, Inc.

**Vocational Assessment:**
This file was referred for an Appeal Transferable Skills Analysis (TSA) as updated medical information has been obtained. The insured is a 57-year-old Direct Sales Representative employed with Charter Communications, Inc. since 01/04/16. The insured discontinued work on 02/04/18 due to post-concussion syndrome and convergence insufficiency of mild severity. For the purpose of this report, I reviewed the claim file and researched standard vocational resources. I also reviewed the previously completed TSA report dated 09/01/20 as well as the TSA Addendum dated 09/10/20, both completed by Megan Provost, MA, CRC (please see the completed reports for full details regarding demographics, capacities utilized, education, work history, transferable skills, and alternative occupations with accompanying wages). Per Appeal Review Consultant request, the updated restrictions and limitations to be reviewed are outlined within the Occupational Medicine Peer Review completed by Dr. Polanco, M.D., dated 07/16/21. Upon review of the available information, this VCM has found that the previously identified occupational alternatives (i.e. Manager Sales, Fund Raiser I, and Supervisor of Communications) continue to remain viable given the updated restrictions as provided by Dr. Polanco. An additional OASYS analysis was performed and given the updated restrictions and limitations, the insured's own occupation was identified as an additional alternative. These occupations would allow one the ability to alter positions as needed for comfort. The updated information, including updated wages, has been provided below. This memorandum will serve in lieu of a formal report. No further vocational services rendered.

| DOT Code | Occupation | Str | National Monthly Wage |
|---|---|---|---|
| 259.357-022 | [*] Sales Representative, Television Cable Service | L | $8,961.96 |
| 163.167-018 | Manager, Sales | S | $11,024.00 |
| 293.157-010 | Fund Raiser I | L | $9,869.60 |
| 184.167-230 | Supervisor of Communications | S | $9,696.27 |

*Wage Information is based on median 2020 Bureau of Labor Statistical Data
[*] Own Occupation- Based on further review of the insured's work history and skills acquired, it is reasonable that they would have the ability to earn their pre-disability wages in their own occupation.*

Respectfully submitted,

**Electronically Signed by**
Nicole Hall, MS, CRC
Vocational Case Manager
Group Protection
Lincoln Financial Group

**Lincoln/Bunch 0137**

| DOT Code | Occupation Title | SVP | Yrs | Mos | Inc | Has CWF | Uses CWF | Str | GOE Code |
|---|---|---|---|---|---|---|---|---|---|
| 259.357-022 | Sales Representative, Television Cable Service | 3 | 2 | 0 | Y | N | N | L | 08.02.06 |
| 163.167-018 | Manager, Sales | 8 | 15 | 0 | Y | N | N | S | 11.05.04 |

**ADJUSTED VARIABLES SUMMARY**

This report summarizes the changes made to the person's ability profile.

|  | **Changed From** | **Changed To** |
|---|---|---|
| **Specific Vocational Preparation** | | |
| Maximum | 8 (4 to 10 years) | No Change |
| Minimum | 3 (1 to 3 months) | 1 (Short demo only) |
| | | |
| **General Educational Development** | | |
| Reasoning | 5 Grades 13-14 | 6 Grades 15-16+ |
| Mathematics | 3 Grades 7-8 | 6 Grades 15-16+ |
| Language | 5 Grades 13-14 | 6 Grades 15-16+ |

**Physical Demands**

| | | | | |
|---|---|---|---|---|
| Strength | Maximum | L  Light | No Change |
| | Minimum | S  Sedentary | No Change |
| Climbing | | Never | No Change |
| Balancing | | Never | No Change |
| Stooping | | Never | Occasionally |
| Kneeling | | Never | Occasionally |
| Crouching | | Never | Unknown |
| Crawling | | Never | Occasionally |
| Reaching | | Occasionally | Frequently |
| Handling | | Frequently | No Change |
| Fingering | | Frequently | No Change |
| Feeling | | Never | Frequently |
| Talking | | Constantly | Unknown |
| Hearing | | Constantly | Unknown |
| Tasting/Smelling | | Never | Unknown |
| Near Acuity | | Frequently | Unknown |
| Far Acuity | | Never | Unknown |
| Depth Perception | | Never | Unknown |
| Accommodation | | Never | Unknown |
| Color Vision | | Occasionally | Unknown |
| Field of Vision | | Never | Unknown |

**Environmental Conditions**

| | | |
|---|---|---|
| Exposure to Weather | Never | Unknown |
| Extreme Cold | Never | Unknown |
| Extreme Heat | Never | Unknown |
| Wet and/or Humid | Never | Unknown |
| Vibration | Never | Unknown |
| Atmospheric Conditions | Never | Unknown |
| Proximity to Moving Mechanical Parts | Never | Unknown |
| Exposure to Electrical Shock | Never | Unknown |
| Working in High Exposed Places | Never | Unknown |
| Exposure to Radiation | Never | Unknown |
| Working with Explosives | Never | Unknown |

2

**Lincoln/Bunch 0138**

| | | |
|---|---|---|
| Exposure to Toxic or Caustic Chemicals | Never | Unknown |
| Other Environmental Conditions | Never | Unknown |
| Noise Intensity Level | Moderate | Very Loud |

**DOT Aptitudes**

| | | |
|---|---|---|
| General Learning Ability | 2  (67-89 Percentile) | No Change |
| Verbal Aptitude | 2  (67-89 Percentile) | No Change |
| Numerical Aptitude | 2  (67-89 Percentile) | No Change |
| Spatial Aptitude | 3  (34-66 Percentile) | No Change |
| Form Perception | 3  (34-66 Percentile) | No Change |
| Clerical Aptitude | 3  (34-66 Percentile) | No Change |
| Motor Coordination | 4  (11-33 Percentile) | No Change |
| Finger Dexterity | 4  (11-33 Percentile) | No Change |
| Manual Dexterity | 4  (11-33 Percentile) | No Change |
| Eye-Hand-Foot Coordination | 5  (Below 11 Percentile) | No Change |
| Color Discrimination | 4  (11-33 Percentile) | No Change |

**Work Situations (Temperaments)**

| | | |
|---|---|---|
| Directing, Controlling, Planning Yes | | No Change |
| Performing Repetitive Work | No | Yes |
| Influencing People | Yes | No Change |
| Performing a Variety of Duties | Yes | No Change |
| Expressing Personal Feelings | No | No Change |
| Working Alone or in Isolation | No | No Change |
| Performing Under Stress | No | No Change |
| Attaining Precise Limits/Tolerances | No | Yes |
| Following  Specific Instructions No | | Yes |
| Dealing with People | Yes | No Change |
| Making Judgments and Decisions | Yes | No Change |

**Work Functions - Data**

| | | |
|---|---|---|
| 0 Synthesizing | No | No Change |
| 1 Coordinating | Yes | No Change |
| 2 Analyzing | No | Yes |
| 3 Compiling | Yes | No Change |
| 4 Computing | No | Yes |
| 5 Copying | No | Yes |
| 6 Comparing | No | Yes |

**Work Functions - People**

| | | |
|---|---|---|
| 0 Mentoring | No | No Change |
| 1 Negotiating | No | No Change |
| 2 Instructing | No | No Change |
| 3 Supervising | No | No Change |
| 4 Diverting | No | No Change |
| 5 Persuading | Yes | No Change |
| 6 Speaking-Signaling | Yes | No Change |
| 7 Serving | No | Yes |
| 8 Taking Instructions-Helping | No | Yes |

**Work Functions - Things**

| | | |
|---|---|---|
| 0 Setting Up | No | No Change |
| 1 Precision Working | No | No Change |
| 2 Operating-Controlling | No | No Change |
| 3 Driving-Operating | No | No Change |

3

**Lincoln/Bunch 0139**

| | | |
|---|---|---|
| 4 Manipulating | No | No Change |
| 5 Tending | No | No Change |
| 6 Feeding-Offbearing | No | No Change |
| 7 Handling | Yes | No Change |

**Lincoln/Bunch 0140**



### SHAKESHAFT-GORMAN
#### LAW FIRM, LLP

| | | Main Office |
|---|---|---|
| Kenneth J. Shakeshaft • Attorney at Law | | Shakeshaft-Gorman Law Firm |
| Joseph M. Gorman • Attorney at Law | | 627 North Weber Street, Suite 1 |
| Cindy Maddux • Paralegal | | Colorado Springs, CO 80903 |
| Brandy Newton • Paralegal | | |

July 20, 2021

Via facsimile: 603-334-5704

Lincoln Life Assurance Company of Boston
Attn: Jane Daniell, Appeals Specialist
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213

      RE:    Our client:    Mark Bunch
                Claim No.:    8220685
                Charter Communications, Inc.

Dear Ms. Daniell,

I have been informed by Dr. Higginbotham that he received a call from Lincoln Financial regarding a peer review with Dr. Frank Polanco.

Dr. Higginbotham will not speak with Dr. Polanco as he feels Dr. Polanco has a significant history of bias towards insurance companies.

Lincoln Financial should be aware Dr. Polanco has a reputation as an insurance doctor whose opinions often are not based on the facts but on arriving at a conclusion to support the termination of benefits or treatment.

Lincoln Financial needs to choose a different physician -non-biased one- to review if it is seeking a non-bias opinion.

Sincerely,

*Kenneth J. Shakeshaft*

Kenneth J. Shakeshaft
KJS/bn

PHONE 719.635.5886 · FAX 719.635.0966 · TOLL FREE 1.800.383.5886
WWW.SHAKESHAFTANDGORMANLAW.COM · OFFICE@SHAKESHAFTANDGORMANLAW.COM

**Lincoln/Bunch 0141**

**VOC Suite**

# VOCATIONAL CASE MANAGEMENT

## Transferable Skills Analysis

---

**PLEASE HAVE THE FOLLOWING IN THE CLAIM FILE BEFORE REFERRING**

☑ JOB DESCRIPTION   (if cannot obtain in writing, must have phone doc from discussions with EE/ER detailing job duties)

☐ PHYSICAL JOB EVALUATION FORM (if available)

☑ UPDATED MEDICAL WITH CLEAR R&L'S          ☑ TRAINING-EDUCATION-EXPERIENCE FORM

☐ MANAGER APPROVAL (if required)               ☐ ATTORNEY INFO (if applicable)

---

FROM:     Lindsay Mack                    DATE:          Tuesday, July 20, 2021

## CLAIM BACKGROUND

---

Claimant Name:     MARK BUNCH                    Claim Number:          8220685

☐ STD   ☑ FULLY INSURED               ( THRESHOLD $ )

☑ LTD   ☐ ASO   ☐ LIFE          Has MDS worked the claim?  ☑ YES   ☐ NO

Employer:  CHARTER COMMUNICATIONS, INC.

Change In DEF. Date:     08/14/2020

Pre-Disability Earnings:     $8,961.96   /  M          Claim Service Type:     ADOP
                                              (mode)

---

**Document Locations**

☑ Document List          ☐ Correspondence          ☐ Paper File

---

**Case Manager's Recommendations / Reason For Referral:**

---

Appeal. Previous TSA completed 9/10/20. Please complete TSA update based on R&L's per 7/16/21 occupational medicine peer review by Dr. Frank Polanco and advise if previously identified occupations remain viable. GMB $5,377.18. (Referred on behalf of Jane Daniel).

---

DP 512

**Lincoln/Bunch 0142**



Lincoln Life Assurance Company of Boston
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5711

| | |
|---|---|
| Date: July 20, 2021 | |
| To:    KENNETH SHAKESHAFT<br>SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax:    (719) 635-0966 | |
| From: Lindsay Mack<br>Appeals Specialist<br>On Behalf Of: Jane Daniell<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-5704 | |
| Total Pages<br>(Including Cover):    2 | |
| RE:<br><br>Claim #:    8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0143**



Lincoln Life Assurance Company of Boston
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5711

July 20, 2021

Kenneth J. Shakeshaft
Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

Dear Kenneth Shakeshaft:

Lincoln Life Assurance Company of Boston (Lincoln) is responsible for managing claims for Long Term Disability (LTD) benefits under the Charter Communications, Inc.'s Group Disability Policy. We are writing in reference to Mark Bunch's claim for LTD benefits under the Policy.

We are in the process of reviewing Mr. Bunch's appeal.  To assist us in evaluating his eligibility for benefits, we have referred his file for vocational review and assessment by a Vocational Consultant.

We anticipate a response from the reviewing vocational consultant no later than August 20, 2021. If there is an unexpected delay in receiving a response, we will contact you.  Otherwise, we will proceed with our review of Mr. Bunch's appeal once the response is received.  We regret any inconveniences this delay may cause; however, the assessment is necessary to ensure a thorough review of his eligibility for benefits under the terms of the Policy.

If you have any questions regarding this matter, please contact his assigned Disability Case Manager at the number below.

Sincerely,

Lindsay Mack
Appeals Specialist
On Behalf Of: Jane Daniell
Phone No.: (888) 437-7611 Ext. 16393
Secure Fax No.: (603) 334-5704

1  of  1

**Lincoln/Bunch 0144**



**Network Medical Review Co. Ltd.**

An ExamWorks Company

| | | |
|---|---|---|
| **REFERRED BY:** | JANE DANIELL | |
| **CLIENT:** | Lincoln Life Insurance | |
| **NAME:** | Mark B Bunch | |
| **CLAIM #:** | 8220685 | |
| **NMR #:** | 506149 | |
| **DATE:** | 7/16/2021 | |

**RECORDS PROVIDED FOR REVIEW:**

| | | |
|---|---|---|
| PROGRESS NOTES | Parkview Medical Center | 02/13/18 |
| PROGRESS NOTES | Centura Health | 02/27/18-04/13/18 |
| PROGRESS NOTES | T. W. Higginbotham, D.O., FAADEP | 05/03/18-06/17/21 +Undated |
| PROGRESS NOTES | Colorado Springs Neuro Associates, P.C. | 05/30/18-06/01/21 |
| PROGRESS NOTES | Gleneagle Vision Center, PC | 06/30/18-09/21/18 |
| PROGRESS NOTES | M. V. Christiansen, D.C. | 07/30/18-10/30/18 +Undated |
| PROGRESS NOTES | H. Staudenmayer, Ph.D. | 08/06/18-08/13/18 |
| PROGRESS NOTES | Pine Creek Vision Clinic | 11/02/18-11/21/18 |
| PHYSICAL THERAPY | Centura Health | 05/31/18-04/24/19 |
| FILE REVIEWS | J. Young, M.D. | 09/10/18 |
| FILE REVIEWS | R. Swotinsky, M.D. | 04/23/19 |
| FILE REVIEWS | T. Belliveau, Ph.D., ABPP | 04/29/19-10/04/20 |
| FILE REVIEWS | J. Brinley, D.O. | 05/11/19 |
| FILE REVIEWS | B. Davitt, M.D. | 05/23/19-06/24/19 |
| FILE REVIEWS | D. Teehan, M.D., MPH | 07/15/20 |
| FILE REVIEWS | L. M. Wilcox, Jr., M.D. | 08/04/20 |
| FILE REVIEWS | J. Marehbian, M.D. | 08/19/20 |
| FILE REVIEWS | J. B. Hertza, Psy.D. | 10/28/20 |
| CT | Parkview Medical Center | 02/13/18 |
| JOB | | 01/03/19 |
| OTHER | N. Hall, M.S., CRC | 05/16/19 |
| OTHER | M. Provost, M.A., CRC | 09/01/20-09/10/20 |
| MISC | | 11/15/17-06/29/21 +Undated |
| ROI | | 09/19/19 +Undated |

**4960 E. State Street** ● **Rockford, IL 61108** ● **Phone  815.964.6334** ● **Fax  815.964.1162**
*website* **www.nmrco.com** ■ *email* **info@nmrco.com**

**Lincoln/Bunch 0145**

RE:  Mark B Bunch                                           NMR #: 506149
Page 2

TELECONFERENCE
    1) AP NAME: Thomas Higginbotham DO
    2) PHONE: (719) 260 8190
    3) DATE(S): 7/13/2021, 7/14/2021
    4) TIME(S): 2:33 PM MDT, 9:57 AM MDT
    5) PERSON(S) SPOKEN WITH: Jessica, Bernadette
    6) POSITION OF PERSON(S) SPOKEN WITH: Medical records, Receptionist

SUMMARY OF DISCUSSION(S): The office was called on 07/13/21. I left a detailed message with Jessica providing the case details, due date and time, the claimant's information and my contact information.

The office was called on 07/14/21. I left a detailed message with Bernadette providing the case details, due date and time, the claimant's information and my contact information.

**ASSESSMENT:** All medical and nonmedical documentation has been reviewed, summarized, and considered regarding the claimant, Mark Bunch. The claimant is a 57-year-old male (DOB           who was previously employed as a Direct Sales Representative. He discontinued working on 02/14/2018 secondary to traumatic brain injury with post-concussion sequela of visual difficulties with spatial disorientation and neurocognitive disorder and visual changes including vertical heterophobia, status post MVA on 02/13/2018.

He has comorbid conditions of: adjustment reaction with depression and anxiety; unresolved situational anxiety; hypertension; dysphagia, dysphasia; cervical strain.

The time period in question from 11/10/2020 forward.

06/17/2021: Letter from Thomas Higginbotham, DO to Attorney Shakeshaft described the claimant's diagnoses as follows: 1. History of motor vehicle collision; 2. History of closed head injury; 3. History of diffuse traumatic brain injury without loss of consciousness but with altered consciousness; 4. Post-concussion syndrome with neurocognitive disorder, visuospatial neglect, difficulty in walking/imbalance, dysphasia; 5. Persistent cervical strain; 6. Adjustment reaction with depressed mood and anxiety. Dr. Higginbotham opined that Mr. Bunch would not be able to perform on a regular basis the material and substantial duties required for employment; Dr. Ricci concurred.

05/25/2021: Initial Rehab psychology Evaluation and Concussion Review by Anthony Ricci, PhD noted that the claimant has an injury. While walking away from the waiting room to the interview office, he ambulated slowly and guardedly, and with an antalgic gait pattern. He was off balance to the left on several occasions and again impacted the left side door threshold. Based on the history, clinical presentation, and screening psychological testing, Dr. Ricci opined that within a reasonable degree of psychological certainty Mark Bunch continued to manifest moderate postconcussion syndrome (F07.81) and continues to demonstrate evidence of sensory and cognitive changes which have not been completely evaluated and treated. Additionally, he presents with significant adjustment reaction difficulties, depression, anxiety and unresolved situational anxiety pattern associated with all forms of driving and riding. Due to his presentation of pronounced dysgraphia, unresolved vision issues, and very evident difficulty with balance, ambulation, and motor control including ability to drive, the claimant is currently not capable of any form of remunerative employment. Additive to this opinion is his qualification for SSDI benefits in late 2019. There is objective evidence of speech disarticulation, and a documented history of working and incidental memory deficits. His clinical presentation is reminiscent of unresolved TBI (post concussion syndrome) sequelae, but also presents with a physiologic feature of muscle weakness and unusual posturing, which may be associated with disuse syndrome. However, it is noted that Dr.

**Lincoln/Bunch 0146**

RE:  Mark B Bunch                                                    NMR #: 506149
Page 3

Olson had requested a Multiple Sclerosis evaluation protocol due to brain MRI findings and it does not appear from a review of the record that this issue has been ruled out. It is Dr. Ricci's opinion that Mr. Bunch is not malingering.

10/28/2020: Neuropsychology Peer Review by Jeremy Hertza, Psy D: "Regarding validity:  Describe the results of validity assessment.  Are the obtained results considered to represent valid measures of the examinee's actual cognitive and emotional -behavioral functioning? No. The results of these remote assessments do not offer convincing evidence regarding the claimant's actual cognitive and emotional/behavioral functioning. On 06/01/18 (Dennis Helffenstein, PhD: Neuropsychological Report) the claimant performed as follows on validity measures: VSVT Easy Subtest20/24 (pass), forced choice recognition 6/24 and far below chance and concerning for intentional lack of effort total score of 26/48 is a questionable score. TOMM trial 1 22/50 (borderline pass), trial 2 27/50 well below cutoff of 45/50, retention trial 24/50 (fail). Testing was then discontinued as it was stated that it was evident that the examiner was not going to be able to obtain a valid neuropsychological profile. Although the claimant reported headache and shoulder pain on date of testing, in addition to reporting fatigue, poor sleep, and chronic pain factors that the examiner supports are possibly explanatory for the failure of validity measures, there are no findings to convincingly indicate the claimant's actual cognitive functioning. Additionally, the claimant reported BDI = 45 (examiner notes that after taking into account residual effects of PCS, moderate depression is likely indicated), PCL5 79/80. The score on the PCL5 is significantly overreported/exaggerated. While the claimant reported headache and shoulder pain on date of testing, in addition to reporting fatigue, poor sleep, and chronic pain, this does not provide an explanation as to why he exaggerated considerably on the PCL5. As the PCL5 is extremely questionable in 366 3combination with failed cognitive validity measures, I am unconvinced that the results of the BDI are valid and representative of his actual emotional functioning. Then, on 08/06/18 (Herman Staudenmayer, PhD) the claimant again provided noncredible responses indicating significant overreporting of somatic, cognitive and emotional symptoms on the MMPI (Fr = 120), rendering the protocol invalid. As there is again significant exaggeration on the MMPI, I am unconvinced that his PCL5 and SCAT2 scores on this assessment are valid. The claimant scored 20/30 on the MoCA however the examiner notes that MSE suggests exaggeration and adopting the sick role, and objective findings note no word finding difficulty, he was alert and attentive, immediate and remote memory intact, fund intact, no signs of thought disorder or psychosis, and his thought process was coherent, logical and goal directed. The MoCA does not have a validity component, as this is a screening measure. Furthermore, examiner notes that during the interview he showed no lapses in thinking or impaired cognitive processing. As such, this assessment also does not convincingly represent the claimant's actual cognitive or emotional function. What is notable is that as of the present date, over two years post injury, there has been no effort to re-assess the claimant's neuropsychological functioning with a comprehensive assessment featuring an extensive protocol of both stand-alone and embedded validity measures for both psychological and cognitive domains, as is expected due to the above-noted performances."

08/19/2020: Peer Review by Jonathan Marehbian, MD (Neurology) listed somatization disorder; other psychological and psychiatric diagnoses, "...which are outside the scope of practice of the present review." Dr. Marehbian opined: "a. If the medical records in the file do not support impairment and the need for restrictions and/or limitations during the above timeframe(s), provide a detailed explanation No, the medical information does not provide clear and convincing medical evidence of ongoing impairment that would translate into restrictions and limitations from 3/1/20 to the present. The medical information demonstrates that the claimant was in a motor vehicle accident on 2/13/18. 2/13/18 ED report immediately after the accident describes that the accident itself was mild, as the claimant was struck at the speed of approximately 25 miles per hour when the other driver was backing up. Nevertheless, the claimant struck his head on the steering wheel. On 2/13/18 evaluation, the initial symptoms of blurred vision and some left eye pain had resolved. There was no loss of consciousness and there was no dizziness, nausea or other symptoms. The claimant was only given

**Lincoln/Bunch 0147**

RE: Mark B Bunch                                          NMR #: 506149
Page 4

Acetaminophen for his headache and was discharged. Imaging during ED evaluation and namely the CT scans of head and cervical spine shows no concussion. Contrary to what was stated by some of the attending physicians, concussion can be seen on diagnostic imaging. The subsequent medical reports, however, describe a very severe debilitation reported by the claimant. As of 2/23/18 the claimant is found to have eye findings, namely coordination problems, positive Romberg, but no cranial deficits. The claimant had MRI of the brain taken on 3/19/18, which identifies concern for multiple sclerosis (this point will be discussed separately below), but no concussion. 4/13/18 report by the claimant's PCP Dr. Olson indicates referrals were made to appropriate physicians and no further reports from Steven Wayne Olson, MD (Family Medicine) are provided. The claimant is first seen by Dennis A. Helffenstein, PhD for neuropsychological screening, which indicates that the claimant has a multitude of complains, including physical, fatigue, visual, cognitive and emotional coping deficits, which are indicated to be consistent with post-concussive syndrome. This screening is discontinued, as the administered tests, including Performance Validity Test and other demonstrate significant exaggeration and over-reporting of the symptoms by the claimant. It is evident that neuropsychological test score will not be possible to obtain. After this, the claimant follow up with Thomas W. Higginbotham, MD (Occupational Medicine). It is indicated that this physician is the claimant's Worker's Compensation physician, but recent reports demonstrate that the claimant is only following up with this specialist and recent reports include visits for refill of blood pressure medications. This essentially makes Thomas W. Higginbotham, MD (Occupational Medicine) the claimant's PCP. Thomas W. Higginbotham, MD (Occupational Medicine) defended the claimant's performance on neuropsychological and argued that this is affected by the claimant's visual issues and inability to read. The claimant then had another psychological evaluation, this time by Herman Staudenmayer, PhD. This evaluation is performed in dark environment and almost fully in oral form, to ensure that there is no effect of possible visual issues on the testing. Again, the claimant is identified to exaggerate and over-report his symptoms. Report specifically identifies there is bias to over-report symptoms, which make the reported symptoms invalid. It is indicated that mental status examination suggests exaggeration and adopting of the sick role. Thomas W. Higginbotham, MD (Occupational Medicine) does not provide any comments concerning this evaluation and only comments on the claimant's first evaluation. It is evident that there is no visual issue effect on the second evaluation and therefore, the initial explanation that the testing is invalid due to visual issues is not supported and is disproven by the second evaluation. The established conclusion is that the claimant is indeed prone to exaggeration of his symptoms, to over-reporting of the symptoms and to adopting the sick role. On 10/19/18 the claimant is finally seen by a neurologist Julia Brinley, DO (Neurology). The claimant was previously referred to a neurologist by his original PCP Dr. Olson back in April 2018, however, the medical information does not provide any neurology evaluation report before 10/19/18. It should be noted that throughout the reports, Thomas W. Higginbotham, MD (Occupational Medicine) and other providers indicate that the primary diagnosis is post-concussion syndrome, which is a neurological diagnosis. After reportedly suffering a concussion in February 2018 and then developing post-concussive syndrome, the claimant is seen by a neurologist for the first time only in October 2018. Furthermore, out of 187 pages of the medical records provide, the 10/19/18 report is the only report by a neurology specialist. 10/19/18 report indicates that the claimant is seen for evaluation of traumatic brain injury. A significant note should be made that the claimant specifically reports that he had loss of consciousness (and he is unsure for how long) on the day of the accident. It is evident that this information reported by the claimant is untruthful the initial ED report and all subsequent reports specifically indicate that the claimant had no loss of consciousness. On 10/19/18, Dr. Brinley supported post-concussion syndrome diagnosis and indicates the diagnoses of intractable chronic migraine without aura and without status migrainosus, diplopia, other symptoms and signs involving appearance and behavior, other symptoms and signs involving cognitive functions and awareness, insomnia, and imbalance. The claimant is warranted to start Nortriptyline 10 mg and speech therapy. Nortriptyline helps with the sleep. There are no further neurological reports provided whatsoever. The claimant was then seen for cognitive/linguistic evaluation by Carolyn K. Lyon, CCC-SLP (Speech Language Pathology) on 10/31/18 and his overall RBANS classification of performance is in reported to be in the extremely low range, placing the

**Lincoln/Bunch 0148**

RE: Mark B Bunch                                                    NMR #: 506149
Page 5

claimant at the 0.2% for age matched peers. Such score essentially demonstrates that the evaluated person has no consistent cognitive function whatsoever. That is, the person is incapable not only of talking, but of no significant thinking process at all. This is clearly not the claimant's presentation. As evident from all other reports, the claimant, whilst reported to have some issues with speech, is in fact capable of talking and, is reported to have normal cognitive examination on numerous reports. This, again, shows a complete inconsistency between the claimant's clinical presentation and the scores that are obtained during evaluations. Carolyn K. Lyon, CCC-SLP (Speech Language Pathology) in fact specifically indicates on 1/30/19 that the claimant has inconsistent responses at times, there is lack of effort and lack of attendance. When combined with these findings, with other findings on psychological evaluations and with the extremely low score that is inconsistent with the claimant's presentation, it is again evident that the claimant is exaggerating his symptoms. This raises suspicion of malingering. 4/24/19 response by Thomas W. Higginbotham, MD (Occupational Medicine) indicates that it is unknown if the claimant saw therapists for vestibular, occupational and physical therapy. There are indications that the claimant was seen by Dr. Frank Polanco, who, reportedly, performed and IME-type evaluation, and then dismissed the claimant, but this report is not provided with the medical records. There are also indications that Dr. Polanco reviewed some extensive surveillance video, which is also not available. Thomas W. Higginbotham, MD (Occupational Medicine) again states that the claimant's neuropsychological tests are compromised due to vision and balance problems. The fact that the second evaluation is almost completely in oral form is not commented in any way. Reports by Thomas W. Higginbotham, MD (Occupational Medicine) also indicate that the claimant is seen by neuro-optometrist on several occasions and that reportedly, there are follow ups with a neurologist as well (these reports, nor their conclusions, are not available). One 11/2/18 encounter note by Michael Saxerud, DO (Optometry) is provided with the medical reports. This encounter note indicates that the claimant has 20/20 visual acuity in all planes, which is inconsistent with the reported blurred vision, and that the claimant had 3+ losses with pursuits. Michael Saxerud, DO, recommends that physical therapy rules out BPPV and for the claimant to continue exercises. This recommendation to rule out BPPV demonstrates uncertainty that the claimant has any true neurological/visual issues. Performed examination is not indicative of any visual deficits, either, as the identifies issues with pursuits can in fact be seen in a completely healthy person and this finding not demonstrate of any specific and significant functional deficit. This finding surely does not constitute the reported severe visual issues and issues with visual-spatial difficulties. Previously, it is reported that the visual issues had improved significantly with the use of provided goggles. The claimant was then seen, after some period of time, on 5/7/19 by Thomas W. Higginbotham, MD (Occupational Medicine) and the provided examination is completely inconsistent with the findings provided before this or with the diagnostic etiologies reported previously. Examination on 5/7/19, which is summarized above, demonstrate that the claimant in fact has severe difficulty, or more appropriately, complete inability to maintain balance or ambulate. It is described that the claimant is grabbing for the walls when walking, the claimant has truncal imbalance (a findings seen with ataxic gait, which in its turn is usually seen with significant cerebral issues), the claimant is rocking forward to backwards and falling backwards with Romberg, extending the neck causes falling, the claimant does recognize Donald Trump as the president and cannot recall 3 words after just repeating them. It must be noted that previous examinations are essentially limited to abnormal Romberg and difficulty with tandem. No such severe findings are ever identified. With all these findings provided, the 5/7/19 report does not clarify if how did the claimant manage to present to the visit. It has been noted that the claimant is not driving, but is using a driver, however, the claimant still needs to physically present to the physician's office. The identified findings essentially demonstrate that the claimant is to ambulate in a wheelchair. However, there are no indications of a wheelchair being used. In fact, there are no indications of any assistive device being used. This inconsistency is not explained. With the previous findings of exaggeration and over-reporting taken into consideration, this inconsistency of the claimant's examination on 5/7/19 to his overall clinical presentation before, during and after the visit, leads to a question if the claimant, who previously exaggerated symptoms on psychological evaluation, does not simply pretend to have such significant difficulties on 5/7/19. Of a note is

**Lincoln/Bunch 0149**

RE: Mark B Bunch                                                    NMR #: 506149
Page 6

that Thomas W. Higginbotham, MD (Occupational Medicine) previously (in previous reports) indicates that on Romberg testing, the claimant would fall backwards "readily". Furthermore, there is complete lack of explanation if where from could such difficulties/examination findings stem from. The indicated post-concussive syndrome, which, it should be noted, is slowly exaggerated in later reports to essentially indicate that the claimant had a severe traumatic brain injury, which is not so, does not explain the findings on this examination. It also does not explain the fact that the claimant had no such difficulties in 2018, had them in 2019 (one year after the accident) and then had no such difficulties again in 2020. This complete inconsistency is not explained by the attending providers. There is also no explanation whatsoever to the fact that the identified findings are essentially periodical there is no explanation whatsoever to the fact that the claimant had no such issues after the accident, but somehow had them one year after the accident. In summary, these 5/7/19 examination findings are inconsistent, are questionable, and cannot be seen as valid representation of the claimant's functional capabilities. Going on, 10/10/19 report then indicates that the claimant's gait down the hallway into the exam room is without a cane, although the gait is unsure. It is also indicated that the claimant wobbles from side-to-side but corrects himself. The claimant reels backwards with Romberg but does not fall. The claimant still cannot tandem walk. A 3/20/20 attorney letter indicates that the claimant only continues to treat with Dr. Higginbotham and speech therapy. If the 5/7/19 and 10/10/19 examination are considered and accepted as presented, it is unclear if what allows the claimant to have such a drastic improvement from complete inability to walk on 5/7/19 to almost normal gait on 10/10/19. To note again, all of this leads to only one conclusion that the available examination findings are questionable in terms of their validity, that the examination findings are inconsistent, and that there is likely a significant degree of exaggeration or malingering by the claimant. In conclusion, the available medical information demonstrates that the claimant reportedly suffered a concussion in the accident in February 2018. Whilst the presented history and reported symptoms on initial evaluation may indeed be seen as consistent with concussion, there was no loss of consciousness, there was no dizziness or nausea initially, and the descriptions of the accident were mild. Diagnostic imaging was normal. There is no medical evidence to support any significant concussion in February 2020. At best, a very mild concussion may be supported. It is reported that the claimant then developed post-concussive syndrome. Some reports subsequently perplex this diagnosis into a traumatic brain injury, which is not so. Whilst concussion may indeed be described as a very mild form of a brain injury, post-concussive syndrome is in no way a traumatic brain injury. Such descriptions and indications mislead to believe as if the claimant has a permanent brain damage, which then results in all of the reported issues. This is not so the claimant has no brain damage. Post-concussive syndrome is a condition essentially resolvable with no significant treatment, but simply with time. A period of one year is more than sufficient for resolution of these issues even in the most severe instances. Oddly enough, the claimant reports most significant symptoms and is identified to have most significant examination findings only one year after the accident. It has been described above that firstly, the severity of the reported symptoms and the symptoms themselves are inconsistent with a post-concussive syndrome; secondly, the symptoms and presented findings are inconsistent within themselves the claimant is identified to have mild issues after the accident, which then somehow developed into severe issues one year later, and were again mild by early 2020; thirdly, the fact that the condition is reported to go on for more than two years after a quantifiable mild motor vehicle accident is inconsistent with the condition that essentially resolves in one year even in very severe cases. As also described above, the medical information demonstrates on several measurable tests that the claimant is prone to exaggeration, over-reporting and possibly malingering. On his initial visit with the neurologist, the claimant is not truthful concerning the loss of consciousness. There are notes that some surveillance video (not provided for this review) has shown that the claimant was driving, albeit for a short distance, back in 2018 an ability that is completely inconsistent with the reported issues. Medical reports consistently note that the claimant shows lack of effort. The scores and findings that the claimant obtains during examinations/evaluation are completely inconsistent with his overall presentation. Finally, after the review of the medical information, and especially of the recent reports, there is no demonstration of any motivation by the claimant to receive any treatment. The claimant only follows up with

**Lincoln/Bunch 0150**

RE: Mark B Bunch                                                                    NMR #: 506149
Page 7

Thomas W. Higginbotham, MD (Occupational Medicine), paying for the visits out of his pocket, who refills his blood pressure medications. When asked when he last saw a neurologist, the claimant does not even know. The claimant's preference to pay out of pocket for a visit with a physician reported to be a Worker's Compensation physician, but lack of desire to obtain a visit with a neurologist for treatment leads to a question of what exactly the claimant's motivation is. Finally, and most importantly, all the issues reported by the claimant may be measurably demonstrated by quantifiable testing, such as for example VNG/vestibular testing for reported balance issues. However, there is not a single such testing result available. As such, taking into consideration the claimant's evident presentation of symptom exaggeration and over-reporting, the fact that some of the examination findings are inconsistent and questionable, the fact that recent examinations and examinations immediately after the accident only identify mild issues that are not indicative of true functional deficits, the fact that there is no quantifiable testing for the reported issues available, the medical information does not provide clear and convincing medical evidence of ongoing impairment as of 3/1/20 and beyond. Concerning the concerns of multiple sclerosis, please see answers to questions 4 and 7 below. Briefly, whilst some the reported symptoms may be seen as consistent with multiple sclerosis, there is no full consistency and there are no definite findings to support existence of multiple sclerosis. It should be noted that there are brief indications of adjustment disorder/somatization disorder noted within the medical records. It is possible that the claimant's issues, which are additionally exaggerated by the claimant, could be stemming from conditions of adjustment disorder/somatization disorder. The presently available medical information, however, does not provide clear and valid medical evidence of any true ongoing deficits. Adjustment disorder/somatization disorder are psychiatric conditions and the primary difficulty associated with these is to determine if symptoms are malingered or are indeed true. This diagnosis and this condition are outside of the scope of practice of neurological review and addressing these from neurology standpoint is inappropriate. Therefore, I respectfully defer further consideration of this to the psychiatry specialist, as this is outside my scope of practice."

7/15/2020: Dr. Teehan (Occupational Medicine) stated in his file review report  that there is no available evidence to support any medical diagnosis causing impairment. He notes that restrictions from an ophthalmologic perspective are deferred to the recent ophthalmology review. Similarly, neuropsychiatric restrictions are deferred. He notes that the available evidence does not indicate any nanomedical circumstance identified in the medical records that interfere with work related activities. Dr. Teehan notes that in the available clinical evidence there are no identified restrictions and limitations from 3/1/2020 to the present that would preclude full-time work capacity. "The claimant reports cognitive and visual disturbance for which prior peer review was noted. On 05/07/2019,  the claimant continued to wear corrective lenses from the neuro-optometrist, but this correction is an older prescription, he has been wearing them about 2 hours on and 1 hour off. Dr Higginbotham noted "His presentation is concerning. His gait and stance are abnormal. He grabs the wall when walking because of complaints of imbalance and visual spatial distortion. His head is significantly forward-flexed and held. When coaxed to stand erect, he has truncal imbalance and progressive dizziness. He continues to have difficulty speaking and has difficulty with word-finding. He speaks very softly and under his breath. He does not make eye-to-eye contact. He is unsure about current world events but does recognize that Mr. Trump is the president. He cannot recall 3 words after just repeating them, let alone 5 minutes later. He continues to stutter He is photosensitive. He is wearing his corrective goggles. Midline vision testing is abnormal. Strength and sensation are normal for the upper and lower extremities. On palpation, he is tender about the left suprascapular musculature as well as along the left cervical paraspinal muscles. He has a mild degree of tension with mild limitations with side bending and rotation to the right and backward extension. Backward extension of the neck causes him dizziness and a fall. Assessment: Traumatic brain injury with post-concussion sequela of visual difficulties with spatial disorientation, neurocognitive disorder, adjustment disorder with depressed mood; persistent cervical strain."

**Lincoln/Bunch 0151**

RE: Mark B Bunch                                               NMR #: 506149
Page 8

04/23/2019: Review by Swotinsky MD (Occupational Medicine) opined, "From 02/14/18 until as late as 08/14/18, impairment is supported by postconcussion syndrome and a pending neuro-optometry appointment. There is not support for a diagnosis causing functional impairment from 08/15/18 to the present Postconcussion syndrome: a. The symptoms are consistent with post concussion syndrome. The claimant reports headache, dizziness, cognitive impairment, and psychological symptoms after a mild traumatic brain injury (TBI) on 02/13/18.  These are symptoms of postconcussion syndrome. b. The prolonged symptoms and related factors are consistent with a nonmedical cause. The vast majority of patients have largely recovered from post concussion syndrome by three months. Litigation and compensation issues are a strong consistent risk factor for persistent symptoms and disability after mild TBI. While Attorney Shakeshaft states that the claimant's condition is physical and not psychologic/psychiatric, treatment guidelines advise that in patient with persistent post-concussive symptoms which have been refractory to treatment, consideration should be given to other factors including psychiatric disorders, lack of psychosocial support, and compensation/litigation. Potential indicators of malingering include inconsistencies in neuropsychological test performance, financial stressors, lack of reasonable follow-through on treatments, and engaging in activities inconsistent with reported deficits The claimant's records present scant evaluation/treatment for post concussion syndrome. The evaluation has not been managed by a specialist with expertise in postconcussion syndrome. The treatment that Dr. Higginbotham has prescribed for the claimant's postconcussion symptoms has consisted of 5/22/18 prescriptions for three pain medications  indomethacin, Robaxin, and betamethasone - and recommendations for nutritional supplements and self-help brain (e.g., memory) exercises.  (Nutritional supplements and self-help brain exercises are not established in the evidence-based medical literature as effective and recommended treatments for post concussion syndrome.) The file has no records from the various referrals made by Dr. Higginbotham, with the exception of the session with psychologist Dr. Staudenmayer."

02/19/2019: Letter from Thomas Higginbotham, DO to Attorney Shakeshaft described Mr. Bunch's current complaints as follows: neck discomfort, pain, and diminished range of motion and added "he recently was asses with a swallow study which was abnormal and lent to the impression of him having significant anterior muscle myotonia"; right scapulothoracic and anterior shoulder tension of a mild-moderate degree; his memory is moderately compromised, judgement is affected, speech is improved but still has difficulty with prosody, word finding, stuttering, inappropriate pauses; headaches; tinnitus; difficulty with balance and intermittent dizziness; frequently overwhelmed with noises, bright lights, and crows, affected visually by fast moving things like watching TV or being in public or riding in a vehicle. He is able to perform activities of daily living but generally much slower than usual since his motor vehicle collision. He listed forgetfulness, needs assistance with household chores, cannot do yard work, needs assistance with grocery shopping, difficulty carrying groceries in and out of the car. Diagnoses: 1. History of motor vehicle accident; 2. History of a mild traumatic brain injury with post-concussion with the following sequela: emotional and behavioral disturbance/changes, neurocognitive disorder, visual difficulties with spatial disorientation, post traumatic headache, not intractable; 3. Cervical strain/sprain; 4. Thoracic sprain; 5. Ulnar neuritis; 6. Imbalance; 7. Dysphasia; 8. Dysphagia; 9. History of falls; 10. Generalized anxiety with depressed mood over health status; 11. PTSD, chronic; 12. Situational adjustment reactions with mixed anxiety and depressed mood; 13. Sleep disturbance; 14. Overweight; 15. Hypertension, malignant.

10/19/2018: Julia Brinley, DO (Neurology) evaluated the claimant and noted, "He has been working with workmen's comp and overall he is undergone physical therapy, psychotherapy, vision therapy and has had neuropsych testing. He reports that overall he has gotten better but is not back to his baseline. He continues to have balance issues, headaches, memory difficulties in addition to speech difficulties and double vision. He is doing vision therapy and is currently wearing prism glasses through Dr Saxerud. He continues to see a therapist to help with his significant mood symptoms which he feels as though has gotten better He continues with headaches. He reports that these are bilateral temples, worse on the left side that will radiate everywhere, he

**Lincoln/Bunch 0152**

RE: Mark B Bunch                                                    NMR #: 506149
Page 9

also has radiation into his neck more so on the left." Massage and speech therapy have been recommended but they had not been approved yet. On examination it was noted that he had difficulty with tandem, Romberg was positive. Neurological examination revealed normal attention span and concentration, normal recent remote memory, speech fluent although stuttering at times, comprehension and language intact, alert and oriented x 3, general knowledge and judgment within normal variation. Cranial Nerves: I. Not tested; II. Pupils 4mms reacting briskly to 2mms. No afferent pupil defect; III, IV, VI. EOM were full with normal pursuit and saccade. No ptosis or nystagmus; V. Motor V intact, pinprick, light touch intact in all three divisions; VII. No asymmetry or weakness; VIII. Acuity intact to finger rub bilaterally; IX,X. Palate rose in middle; XI, Sternocleidomastoid, trapezius strength intact; XII. Tongue protruded midline w/o atrophy or fasciculations. With finger to nose, patient will often miss my finger by an inch bilaterally, often has to close one eye. Assessment: 1. Post-concussion syndrome; 2. Intractable chronic migraine without aura and without status migrainosus; 3. Diplopia; 4. Other symptoms and signs involving appearance and behavior; 5. Other symptoms and signs involving cognitive functions and awareness; 6. Insomnia; 7. Imbalance." Dr. Brinley added "his most bothersome complaints are double vision, cognitive issues, sleep disturbances, imbalance and headaches. Based on the patient's history and exam I do believe he has continued post concussive syndrome with worsening factors to include mood disturbances."

09/25/2018: Initial Rehab Psychology Evaluation and Concussion Review and Anthony Ricci, MD stated, "In reviewing the presentation at the time of impact and following evaluations and treatment, it is my opinion that the mechanism of injury is clearly related to the 2/13/2018 MVA sequelae. There is no question that he's had confounding issues secondary to his recovery patterns and his adjustment to disability has been difficult to this point. I agree with Dr Helffenstein and Dr Studenmayer's observations that formal neuropsychological testing is not appropriate at this time. Mr. Bunch presents with specific visual/vestibular changes and with significant elements of anxiety, depression, and adjustment to disability which contributes to the cognitive dysfunction and creates a pattern of response, which is frustrating and confusing." Diagnostic impressions: Concussion without loss of consciousness; situational anxiety; adjustment disorder with anxiety and depression; psychological factors affecting other medical conditions."

09/21/2018: Letter from Michael Saxerud, OD, to Whom It May Concern stated, "Mark is under my care for a visual perceptual disorder secondary to a concussion. At this time, Mark is not capable of working as his depth perception and eye movements are not adequate to keep him safe in the workplace. He is making progress with his therapy and we are hopeful that in the next few months we will have his visual system capable for returning to work, at least part time."

09/17/2018: Thomas Higginbotham, DO noted the claimant had improved his balance with physical therapy and chiro had improved his cervical complaints. Physical examination revealed abnormal gait and stance, brushing against the hallway while walking to treatment room, pivoting gives a sense of imbalance, and positive Romberg's. He continued with blurred vision with reading a document, and he must cover his left eye and hold the document at an arm's length to read it.

08/17/2018: Michael Saxerud, OD noted the claimant reported ongoing vision issues, double vision and overlapping images on occasion. With current spectacles, he was able to watch TV, balance and walking more comfortable. But he was still having issues with stairs and depth. Symptoms lessening. Physical examination of the extraocular muscles revealed pursuits, moderate fixation loss, and severe underaction during adduction. Diagnoses: Post-concussional syndrome; visual disorders of shape and size; Chronic post-traumatic headache, intractable; Diplopia; Other irregular eye movements; Convergence insufficiency; Vertical heterophobia; Other abnormalities of gait and mobility; and Visual discomfort, bilateral.

**Lincoln/Bunch 0153**

RE:  Mark B Bunch                                              NMR #: 506149
Page 10

---

07/13/2018: Michael Saxerud, OD evaluated the claimant and noted he complained of headaches, visual fatigue, loss of concentration, covering one eye while reading, poor ability to judge depth, bumping into objects, double vision, photosensitivity. Diplopia is constant and persistent, greater when looking at near. Impressions: Convergence insufficiency; headache; visual perceptual disorder; pursuit eye movement disorder, focal midline right; dizziness; myopia; astigmatism; diplopia; vertical heterophobia; bilateral visual discomfort. RX prism spectacles are recommended.

07/03/2018: Thomas Higginbotham, DO noted the claimant reported his headaches worsened with stress and getting tunnel vision. He has photosensitivity noted, slightly unsteady gait, inability to perform left-sided finger-to-nose testing even while watching the finger. He still persists with midline visual shift on testing. Dr Higginbotham added, "I reviewed Dr. Heffelstein's report, and it is likely invalid because of his visual difficulties, headaches, and inability to concentrate and focus. I believe these issues were brought up by Dr. Helffenstein. I believe the respondent attorney finds the word 'invalid' as meaning something else. Probably the basic premise that a neuropsychologist is to understand the nature of the medical conditions that are present when evaluating a person for neuropsychologic sequela from a head injury. When I provided Mr. Bunch with something to read, he can't see it very well, complaining of double vision and blurred vision and moves the paper and his neck in angles in order to see it and even when he sees it, he cannot maintain his glance but for a couple of seconds. I cannot imagine him attending to detailed questioning of validity testing, let alone psychometric testing with his visual difficulties."

06/19/2018: Thomas Higginbotham, DO noted, "...he continued with physical therapy and I received some notes from the therapist. The therapist apparently concurs with my concerns of visual vestibular disruption related to his head injury. The therapist is working on strategies on helping Mr. Bunch. My hope is to have a neuropsych evaluation and based on the findings, direct cognitive-behavioral therapy through early speech language pathologist. On observation of walking in and about the exam room and with positive Romberg's maneuver and balance testing, there are still concerns with coordination and proprioception. He still has positive visual midline shift testing that regressed from the last visit and consistent with our initial visit. He relates of having a fall in physical therapy when trying to attend to some balance exercises while under the care of the therapist." Assessment: Concussion with emotional and behavioral changes, neurocognitive disorder, visual difficulties with spatial disorientation, posttraumatic headache, not intractable; Cervicalgia; Cervical strain.

06/05/2018: Thomas Higginbotham, DO noted, "From my initial visit, he raised concerns for post-concussion syndrome with visual spatial disorientation and cognitive and behavioral concerns. Based on the initial exam, he was referred for neuro-optometry and neurology consults."

05/22/2018: Thomas Higginbotham, DO states that the claims adjuster stopped all involvement on his claim. Dr Higginbotham stated, "He still has evidence of not visualizing items in the midline of his vision. He still demonstrates issues with imbalance, albeit slightly improved." He continued with headache and neck tension, facial pain, difficulty sleeping, irritability. He continued physical therapy. Assessment: History of head trauma with emotional and behavioral disturbance/changes, neurocognitive disorder, visual difficulties with spatial disorientation; cervicalgia; cervical strain; cephalgia, combination of myofascial tension and posttraumatic; situational adjustment reactions with anxiety and depressed mood. Request for Neuropsychologic screening with considerations for cognitive behavioral therapy was noted.

06/08/2018: Psychological Evaluation / Medical Records Review by Herman Staudenmayer, PhD concluded, "Mr. Bunch was involved in a MVA and was referred for a psychological evaluation and screening for comprehensive neuropsychological testing. Mental Status Exam suggest exaggeration and adopting the sick role. Psychological testing indicated that his self-report reflects over-reporting bias, making the self-reported

**Lincoln/Bunch 0154**

RE: Mark B Bunch                                                          NMR #: 506149
Page 11

symptoms invalid. Comprehensive neuropsychological testing is contraindicating at this time. He may benefit from psychotherapy to address this issues Working diagnoses: Psychological factors affecting other medical conditions."

5/31/2018: Physical therapy note stated the claimant was seen with acute on chronic left-sided cervical pain, muscle restrictions post MVA. He reported improvement in symptoms, but was very sore last session. Cervical spine range of motion was 25% restricted on flexion and extension with tightness, right side bending was 25%, and scapular elevation painful and weak all others W FL. Reflexes were 2+, sensation was intact, shoulder range of motion was 0-160 degrees on flexion, and 0-142 degrees on abduction. The left bilateral upper extremity strength was 5/5. He has tenderness to palpation in the neck.

05/22/2018: Thomas Higginbotham, DO noted the claimant reported the triple drug combination of betamethasone-Robaxin-indomethacin had been helpful. Cervical range of motion still quite limited with sharp pain about the left mid cervical area radiating into the left scapulothoracic area.

05/10/2018: Thomas Higginbotham, DO noted the claimant still complained of headache, neck pain, visual difficulties, imbalance, dizziness and cognitive issues such as forgetfulness and word finding. He denied any radicular component into upper extremities. He was unable to return to work in any capacity until further evaluation.

05/03/2018 and 05/18/2018: Neuropsychological Screening by Dr Dennis Helffenstein, PhD provided conclusion, "Based on Mr. Bunch's retrospective description of the motor vehicle accident of February 13, 2018, he does met the diagnostic criteria for a Post-Concussive Syndrome/Mild Traumatic Brain Injury While he did not experience loss of consciousness related to the accident, he did experience altered consciousness in the form of being dazed and confused. This altered consciousness lasted for approximately four weeks He experienced nausea, vomiting, dizziness, and lethargy post-accident, which would all be behavioral indicators of a concussion. Mr. Bunch continues to report a constellation of physical fatigue, visual, cognitive, and emotional coping deficits consistent with post-concussive syndrome. He reports a clear temporal onset of cognitive problems immediately post-accident Mr. Bunch is reporting a variety of vision problems consistent with a post-traumatic vision syndrome. It appears that ocular motor and smooth pursuit deficits have been identified post-accident. He is also reporting symptoms suggestive of a possible left visual inattention." Assessment: Mild neurocognitive disorder due to traumatic brain injury with behavioral disturbance (includes irritability, reduced stress tolerance, and anger outburst); depressive disorder due to traumatic brain injury, mild; and post-traumatic stress disorder.

05/03/2018: Thomas Higginbotham, DO at Occupational and Environmental Health Services evaluated the claimant for complaints of pain and discomfort about the head, left scapulothoracic area, left upper hup, left elbow, and left thumb. It was stated that "he identifies numbness and tingling sensations about the dorsum of the left hand and the back of his head." He reported dizziness, headaches, muscle cramps, depression and nervousness, nausea, recent change in vision with blurred vision and photophobia, marked tiredness, trouble falling and staying asleep, mood swings and panic attacks, neck and back pain. On physical examination, it was noted, "He is quite uncomfortable with his headaches and neck discomforts he shows me pictures of his head and face that were taken within the hour of the collision. He has a positive Romberg's sign in that he falls to the back rather readily. He cannot recognize a pencil being in the center of his vision when coming from the periphery of either side. He has difficulty tracking, particularly to the right horizon, but the eyes do move in all directions. Pupils are equal and reactive to light. He puffs his cheeks symmetrically, and his smile is symmetrical and can shrug his shoulder symmetrically." Assessment:  History of a work-related motor vehicle collision; history of head trauma without loss of consciousness; post concussion sequela with spatial

**Lincoln/Bunch 0155**

RE: Mark B Bunch                                                NMR #: 506149
Page 12
_____

disorientation, imbalance, cervicalgia, headaches, tinnitus, cognitive difficulties, and sound and light sensitivity; cervical myofascial strain; thoracic myofascial strain; and right thumb sprain.

04/13/2018: Steven Olson, MD noted, "He continues to have headaches and neck pain. Given the positive findings on exam from last visit, Brain MRI was done showing some white matter change, possible MS. There was no previous history of neuro deficits before the trauma. He continues to have neck pain." Limited physical examination revealed fluent speech, positive Romberg, and more fluent eye movement. Extremities, neck, back, gait were not addressed.

04/04/2018: Steven Olson, MD noted, "He is here for follow up TBI. He had significant eye findings but these have resolved. For symptoms to be present an accident seems coincidental for MS without previous symptoms. More likely the changes are secondary to the trauma. Referral already done for Neurology to evaluate. He is requesting PT and chiropractor for help with the chronic neck pain." Limited physical examination revealed fluent speech, positive Romberg,and more fluent eye movement. Extremities, neck, back, gait were not addressed.

03/28/2018: MRI of the brain showed mild white matter disease possibly from multiple sclerosis.

02/27/2018: Steven Olson, MD evaluated the claimant and noted, "He is here for follow up TBI. He has significant eye findings, namely coordination problems. He doesn't exactly have cranial nerve deficits. His eyes have full ROM but the coordination and smoothness of tracking is not present. Romberg is also positive. Since the CT scan was negative and symptoms are perhaps worse, I am going to order an MRI." Assessment: Traumatic brain injury, without loss of consciousness, subsequent encounter; cranial nerve impairment; balance problem.

02/13/2018: David Wilson, MD, noted "(he) presents after a motor vehicle accident. He was going about 15 miles per hour at the exit ramp, when someone stopped in front of him and then started to back up. He estimates the total force of collusion was around 25 miles per hour. No airbags deployed, though he does not believe his vehicle has airbags. He was restrained, but hit hard enough that his head struck the steering wheel on the left forehead region. He denies loss of consciousness. Initially he felt like he had some blurred vision and maybe even some left eye pain, but this has resolved. When he first got out of the car, he felt like his equilibrium was off, like he has felt previously with sports injuries to the head. He no longer has that symptom. He does have a pounding headache. He denies any anticoagulated use. No history of hypertension in the past, although his blood pressures were noted to be ultimately high here. No other acute complaints Patient having left eye, neck/shoulder muscle pain. Pt denies visual changes, denies extremity numbness/weakness, nausea/vomiting." Physical examination revealed left scalp tenderness and a mild abrasion. Eye exam was normal. There was some left masseter muscle tenderness. There appeared to be developing right periorbital ecchymosis. Neck supple, no cervical adenopathy, paraspinal muscle tenderness bilaterally. Normal range of motion of upper and lower extremities. Normal gait. Cranial nerves II-XII intact. Dr. Wilson added the claimant reported blurred vision and dizziness had resolved, "this does seem consistent with concussion." CT of the head and cervical spine performed at EDE revealed no evidence for any acute traumatic process. He was given acetaminophen and discharged home. Assessment: Concussion with closed head injury; cervical strain; right periorbital ecchymosis; elevated blood pressure; status post MVA.

All available medical documentation was reviewed.

**IN ANSWER TO YOUR SPECIFIC QUESTIONS:**

**Lincoln/Bunch 0156**

RE: Mark B Bunch                                        NMR #: 506149
Page 13

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

The primary impairing diagnoses are:
Post concussion syndrome (F07.81).
Convergence insufficiency of mild severity (H51.11).

**2. If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

He has comorbid conditions of: adjustment reaction with depression and anxiety; unresolved situational anxiety; hypertension; dysphagia, dysphasia; cervical strain. These diagnoses would not cause additional restrictions.

**3.**
**Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 11/10/20 to ongoing, and comment on the expected duration.**

The claimant discontinued working on 02/14/2018 secondary to traumatic brain injury with post-concussion sequela of visual difficulties with spatial disorientation and neurocognitive disorder and visual changes including vertical heterophobia, status post MVA on 02/13/2018.

The claimant was involved in a motor vehicle accident on 02/13/2018. He presented to the ED (emergency room) reporting the airbags did not deploy and he hit his head on the steering wheel, left forehead region. No loss of consciousness was reported, but he had some initial blurred visiodeficitseft eye pain. He also reported problems with equilibrium when he stepped off of the car. These symptoms resolved by the time he got to the Emergency Department, where CT (computed tomography) scans of the head and cervical spine revealed no evidence for any acute traumatic process. He was given acetaminophen and was discharged. The claimant was seen by Dr. Olson for mental health complaints. The doctor notes the claimant has intact eye-movement but is not fluidly tracking. Dr. Olson has requested evaluation protocol to rule out Multiple Sclerosis which, at least until February 2021, had not been completed. Follow ups by Dr. Higginbotham noted the claimant still complained of cervical pain, changes in vision, and imbalance. Neurological and neuropsychological testing were recommended. An MRI (magnetic resonance imaging) of the brain performed 03/28/2018 revealed mild white matter disease possibly from multiple sclerosis, but he opined that it was more likely secondary to the MVA rather than MS. The claimant was evaluated by the neuro optometrist Michael Saxerud, OD on 09/21/2018, who prescribed hi prism spectacles for symptoms of double vision, headaches, imbalance, problems with depth. The claimant was last seen by Dr. Saxerud in 2019. Theclaimanty underwent a psychological evaluations in 2018 by Herman Staudenmayer, PhD, which concur that the claimant is still experiencing post-concussion syndrome sequelae. The claimant still reports problems with memory, word finding, changes in mood and behavior, significant balance issues and visual disturbances.The claimant was evaluated by Neurologist Julia Brinley, DO in 2018. On exam, the claimant presents with normal attention and concentration, normal recent and remote memory, stuttering noted at times, with intact comprehension, full orientation, normal judgment. Impressions include postconcussion syndrome.There are no subsequent follow up notes. The claimant has attended physical therapy for his cervical complaints. He has also attended psychotherapy for depression, anxiety, PTSD, adjustment disorder as well as speech therapy. There was a gap in treatment due to the claimant losing insurance, but he has been approved for SSDI and Medicaid since. Speech

**Lincoln/Bunch 0157**

RE: Mark B Bunch                                    NMR #: 506149
Page 14

therapy treatment note indicates the claimant was  working towards improvement with speech fluency, selective attention, recall, and problem-solving.

The following restrictions and functional limitations are supported in an 8-hour workday from 11/10/20 and ongoing as follows:
Frequent walking and standing, 8 hours combined, limited to 60 minutes combined at one time.
Constant sitting with ability to alter position as necessary for comfort.
Occasional crawling, kneeling, stooping, bending, and no balancing or climbing.
Frequent reaching at all planes, gripping, grasping and fingering.
Unrestricted lifting, carrying, pushing and pulling.
Full-time, 40-hour, 5 day per week capacity.

From an occupational medicine perspective there are no clinical or diagnostic findings that would preclude full-time capacity. Reassessment is recommended in six months from the date of this review.

**4. Do medical records support any R&Ls that were recommended by treating providers for the timeframes in question?**

From an occupational medicine perspective, the restrictions placed by Dr. Higginbotham are not supported by the clinical findings within the medical records.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

The medical management has been reasonable and consistent with the level of severity of the reported condition.

**6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?**

There are no nonmedical issues identified impacting functionality in the workplace.

**7.**
**Please initiate AP contact when it may clarify any significant areas such as diagnosis, R&Ls, treatment opportunities, prognosis, or reason for work absence. AP contact information is Thomas Higginbotham DO.**

The office of the provider was contacted as requested. I did not receive a call back.

**8. Based on the totality of medical evidence, does the (overall functional and) medical evidence support the claimant has the ability to sustain full time capacity (8/hours/day 5 days/ week) within any identified restrictions and limitations from 11/10/20 forward? Please explain your medical rationale.**

The findings within the medical records reflect the claimant is a 57-year-old male, DOB                    who was previously employed as a Direct Sales Representative. He discontinued working on 02/14/2018 secondary to traumatic brain injury with post-concussion sequela of visual difficulties with spatial disorientation and neurocognitive disorder and visual changes including vertical heterophobia, status post MVA on 02/13/2018. The claimant has appropriate time for recovery. During the dates under review, there is no evidence of

**Lincoln/Bunch 0158**

RE:  Mark B Bunch                                          NMR #: 506149
Page 15

significant motor of neurological deficits. There is no evidence of significant level of pain. No medications side effects are noted.Thus, from an occupational medicine perspective there are no clinical or diagnostic findings that would preclude the full-time performance of the essential duties of his work activities.

**CONFLICT OF INTEREST ATTESTATION:**

I certify that I do not accept compensation for review activities that is dependent in any way on the specific outcome of the case. To the best of my knowledge, I was not involved with the specific episode of care prior to referral of the case for review. I do not have a material professional, familial, or financial conflict of interest (financial conflict of interest is defined as ownership interest of greater than 5%) regarding any of the following: the referring entity; the insurance issuer or group health plan that is the subject of the review the covered person whose treatment is the subject of the review and the covered person's authorized representative, if applicable; any officer, director or management employee of the insurance issuer that is the subject of the review; any group health plan administrator, plan fiduciary, or plan employee; the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of the review; the facility at which the recommended health care service or treatment would be provided; or the developer or manufacturer of the principle drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of the review.

This attestation certifies that the peer reviewer named below has the appropriate scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review and has current, relevant experience and/or knowledge to render a determination for the case under review.

**ADVISING REVIEWER:**

Frank D. Polanco, M.D.
Board Certified in Occupational Medicine
Licensed in State of AK #7384
Licensed in State of AZ #48391
Licensed in State of CO #DR.0026542
Colorado Level II Accreditation
Licensed in State of HI #MD-16038
Licensed in State of MN #55138
Licensed in State of TX #F3581
Licensed in State of WA #MD60413205

*NMR Conflict of Interest Attestation:*

*NMR attests to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure.  NMR attests that its compensation is not dependent on the specific outcome of this review or has had any involvement with this case prior to this referral.*

**Lincoln/Bunch 0159**



**Network Medical Review Co. Ltd.**

An ExamWorks Company

**REFERRED BY:**     JANE DANIELL
**CLIENT:**          Lincoln Life Insurance
**NAME:**            Mark  B Bunch
**CLAIM #:**         8220685
**NMR #:**           506141
**DATE:**            7/16/2021

**RECORDS PROVIDED FOR REVIEW:**

| | | |
|---|---|---|
| PROGRESS NOTES | Parkview Medical Center | 02/13/18 |
| PROGRESS NOTES | Centura Health | 02/27/18-04/13/18 |
| PROGRESS NOTES | T. W. Higginbotham, D.O., FAADEP | 05/03/18-06/17/21 +Undated |
| PROGRESS NOTES | Colorado Springs Neuro Associates, P.C. | 05/30/18-06/01/21 |
| PROGRESS NOTES | Gleneagle Vision Center, PC | 06/30/18-09/21/18 |
| PROGRESS NOTES | M. V. Christiansen, D.C. | 07/30/18-10/30/18 +Undated |
| PROGRESS NOTES | H. Staudenmayer, Ph.D. | 08/06/18-08/13/18 |
| PROGRESS NOTES | Pine Creek Vision Clinic | 11/02/18-11/21/18 |
| PHYSICAL THERAPY | Centura Health | 05/31/18-04/24/19 |
| FILE REVIEWS | J. Young, M.D. | 09/10/18 |
| FILE REVIEWS | R. Swotinsky, M.D. | 04/23/19 |
| FILE REVIEWS | T. Belliveau, Ph.D., ABPP | 04/29/19-10/04/20 |
| FILE REVIEWS | J. Brinley, D.O. | 05/11/19 |
| FILE REVIEWS | B. Davitt, M.D. | 05/23/19-06/24/19 |
| FILE REVIEWS | D. Teehan, M.D., MPH | 07/15/20 |
| FILE REVIEWS | L. M. Wilcox, Jr., M.D. | 08/04/20 |
| FILE REVIEWS | J. Marehbian, M.D. | 08/19/20 |
| FILE REVIEWS | J. B. Hertza, Psy.D. | 10/28/20 |
| CT | Parkview Medical Center | 02/13/18 |
| JOB | | 01/03/19 |
| OTHER | N. Hall, M.S., CRC | 05/16/19 |

**4960 E. State Street** ● **Rockford, IL 61108** ● **Phone  815.964.6334** ● **Fax  815.964.1162**
*website* **www.nmrco.com** ■ *email* **info@nmrco.com**

**Lincoln/Bunch 0160**

RE: Mark B Bunch                                         NMR #: 506141
Page 2

| OTHER | M. Provost, M.A., CRC | 09/01/20-09/10/20 |
|-------|----------------------|-------------------|
| MISC  |                      | 11/15/17-06/29/21 +Undated |
| ROI   |                      | 09/19/19 +Undated |

TELECONFERENCE
    1) AP NAME: Anthony Ricci PhD
    2) PHONE: (719) 594 4407
    3) DATE(S): 7/8/2021, 7/9/2021, 7/9/2021
    4) TIME(S): 3:31 PM MDT, 2:19 PM MDT, 2:37 PM MDT
    5) PERSON(S) SPOKEN WITH: Carol, Voicemail from AP, Voicemail box of AP
    6) POSITION OF PERSON(S) SPOKEN WITH: Office staff, Voicemail from AP, Voicemail

SUMMARY OF DISCUSSION(S): The office was called on 07/08/21. I spoke with Carol and left a detailed message noting the reason for my call and requesting a return call. I provided name and date of birth of claimant. My name and contact number were provided. A time frame for call back was provided.

On 07/09/21, The AP leaves voicemail, indicating availability for a phone consultation.

I called on 07/09/21 and left a message thanking the AP for his attempt to reach me and requesting a return call. I provided name and date of birth of claimant. My name and contact number were provided. A time frame for call back was provided.

**ASSESSMENT:** I have reviewed all of the records provided. I will summarize those portions of the records reviewed that have relevance to the questions and timeframe identified for this review and within the scope of my area of specialty. Records include physical therapy treatment notes, chiropractic notes, as well as office visit notes, letters from the claimant's attorney, and activities questionnaire from prior to the timeframe under consideration.

The claimant (DOB:                          is a male.

Job description for a direct sales representative is provided for review.

An undated daily activities questionnaire, evidently completed by the claimant, notes difficulty with daily activities due to headache, blurred vision, lack of concentration, balance problems, ringing in the ears. Difficulty with sleep is noted. The claimant is involved in speech therapy at the time of this form. He does not go out by himself.

An undated statement from the claimant notes he was involved in February 2018 motor vehicle accident, and has been unable to work since that time with headaches, ringing in the ears, balance problems, insomnia, depression, neck pain, loss of range of motion, difficulty with stairs, double vision, problems focusing and reading. The claimant notes and embarrassing stutter.

An undated statement by the claimant indicates he has not worked since February 2018 following car accident. Indicates he is not able to drive.

**Lincoln/Bunch 0161**

RE:  Mark  B Bunch                                                    NMR #: 506141
Page 3

February 13, 2018 emergency room note indicates the claimant presents following motor vehicle accident, head strike noted, no loss of consciousness noted, some initial complaint of blurred vision and eye pain which resolved, stepping out of the car feelings of his equilibrium was off. Previous history of sports injuries to the head is noted.

February 27, 2018 consultation with Steven Olson, MD notes no anxiety or depression on review of systems. Mental status observations described the claimant is pleasant, cooperative, with normal judgment and affect, fluent speech. The doctor notes the claimant has intact eye-movement but is not fluidly tracking.

March 21, 2018 brain MRI (magnetic resonance imaging) is interpreted as revealing mild white matter disease possibly for multiple sclerosis.

April 4, 2018 progress note by Steven Olson, MD states the claimant is referred to chiropractic and physical therapy. The doctor notes there had been significant eye findings but these have resolved. impressions include concussion. Review of systems is negative for behavioral health complaints. Mental status observations are benign.

May 3, 2018 occupational and environmental health services evaluation with Thomas Higginbotham, DO notes the claimant is referred by Steven Olson, MD, for evaluation of traumatic brain injury. The claimant endorses headache and sensitivity to sound and light. Difficulty with visual tracking is noted. Impressions include motor vehicle accident in history of head trauma without loss of consciousness.

May 22, 2018 progress note by Thomas Higginbotham, DO states the claimant has been involved with physical therapy, is awaiting authorization for other consultations. The claimant drive to this office visit. He is described as alert and oriented, appears more cogent on the day of this exam. Impressions include posttraumatic headache and cognitive changes.

May 23, 2018 request for information is returned by Dennis Heffelstein, PhD, notes impressions of postconcussive syndrome, PTSD (posttraumatic stress disorder), and major depressive disorder.

June 1, 2018 neuropsychological report by Dennis Heffelstein, PhD, notes the claimant was seen May 3, 2018 and May 18, 2018 for evaluation. Educational attainment is master's degree, with no history of learning disorder. He most recently worked as a sales representative. No substance use history is noted. Testing was discontinued due to poor performance on a freestanding validity indicator (VSVT and TOMM).  significant symptoms are noted on self-report checklists. The doctor notes impression of postconcussive syndrome/mild traumatic brain injury. Additional diagnoses include mild neurocognitive disorder, depressive disorder, and PTSD.

August 6, 2018 psychological evaluation with Herman Staudenmayer, PhD indicates claimant was referred by Thomas Higginbotham, DO. On exam, gait is normal, posture is unimpaired, claimant makes eye contact, expressions suggest a sad and tearful affect. The claimant presents with low energy, normal speech and language, no word finding difficulties noted. Affect is sad and blunt. Thought process is logical and goal-directed. MMPI administration was invalidated (F-r scale at T score of 120). Montreal Cognitive Assessment (MoCA) score was 20/30. concussion symptom checklist notes headache, nausea, balance problems, dizziness, fatigue, sleep changes, light and sound sensitivity, irritability and sadness, nervousness, feeling slow and foggy with difficulty concentrating and remembering. Trauma related symptoms are noted on self-report symptom checklist. The doctor notes unusual and bizarre mannerisms which the claimant attributes to visual impairment.

**Lincoln/Bunch 0162**

RE:  Mark  B Bunch                                                    NMR #: 506141
Page 4
_____

The doctor observes no lapses in thinking or impaired cognitive processing which could be detected. Impression is psychological factors affecting other medical conditions.

September 10, 2018 psychiatric clinical case review by John Young, MD opines that there is insufficient medical evidence to support psychiatric symptoms of the severity which would require restrictions and limitations.

September 21, 2018 letter from Michael Saxerud, OD notes the claimant is treated for a visual perceptual disorder secondary to concussion.

September 25, 2018 letter from Anthony Ricci, PhD to the claimant's attorney notes the attorney referred the claimant for evaluation. Beck Depression Inventory (BDI) score of 27 is noted. Beck Anxiety Inventory (BAI) T score of 23 is noted. Pain questionnaire and neuropsychological symptom checklist notes complaint of pain, headache, double vision, memory difficulties. The doctor offers impressions of concussion, situational anxiety, adjustment disorder, with rule out consideration of psychological factors affecting other medical conditions. The report does not review formal cognitive testing or performance validity indicators or symptom validity indicators.

October 19, 2018 progress note by Julia Brinley, DO states a history of traumatic brain injury. At this office visit, the claimant indicates that he lost consciousness for uncertain duration. On exam, the claimant presents with normal attention and concentration, normal recent and remote memory, stuttering noted at times, with intact comprehension, full orientation, normal judgment. Impressions include postconcussion syndrome.

November 9, 2018 daily speech therapy treatment note indicates the claimant presents with flat affect. Goals include working towards improvement with speech fluency, selective attention, recall, and problem-solving.

November 20, 2018 letter from Thomas Higginbotham, DO makes a correction two office visit note on May 26, 2018, noting that the claimant did in fact not drive himself to the appointment but rather has transportation.

February 19, 2019 letter from Thomas Higginbotham, DO to the claimant's attorney notes symptoms include pain and impaired memory and judgment. Speech difficulties are noted, as well as challenges with balance and headache. His writing has worsened. Impressions include mild traumatic brain injury, generalized anxiety, PTSD, sleep disturbance.

March 12, 2019 letter from Dennis Heffelstein, PhD to the claimant's attorney notes the doctor has reviewed additional medical records. The doctor again notes that his previous evaluation yields impression of mild neurocognitive disorder, depressive disorder, and PTSD. The doctor notes there was August 2018 evaluation with Herman Staudenmayer, PhD, which included administration of personality inventory which was invalidated. The doctor emphasized however that elevations on self-report skills and personality inventory may be related to honest report of persistent symptoms.

April 23, 2019 file review by Robert Swotinsky, MD stated that the records describe treatment for hypertension and post concussive disorder with cognitive impairment and visual impairment, records also noting treatment for neuropathy and cervical and thoracic spine injury. The doctor opines that impairment is supported by postconcussion syndrome through August 14, 2018.

April 29, 2019 clinical case review by Timothy Belliveau, PhD notes the records support a diagnosis of concussion with insufficient supported beyond May 2018 for cognitive impairment.

**Lincoln/Bunch 0163**

RE:  Mark  B Bunch                                                    NMR #: 506141
Page 5

May 6, 2019 occupational analysis prepared by Nicole Hall, MS notes the occupation reviewed is in the light level, with part-time opportunity in the national economy.

May 7, 2019 progress note by Thomas Higginbotham, DO stated impressions include traumatic brain injury with postconcussion sequela. The doctor opines the claimant is limited due to visual spatial disorientation, imbalance, and prosody of speech. The doctor indicates the claimant cannot drive, cannot walk or stand for five minutes without imbalance, has limited concentration and focusing and pacing, and is incapable of gainful employment.

May 23, 2019 file review by Bradley Davitt, MD  notes that the records support convergence insufficiency, heterophoria,  and astigmatism . The doctor opines restrictions are supported on the length of time the claimant would be required to read or to use a computer.

June 4, 2019 letter from the claimant's attorney notes that the additional information is provided in support of appeal for long-term disability benefits.

June 17, 2019 confidential investigative report is provided for review.

July 10, 2019 letter from the claimant's attorney notes the claimant used to own a pawn shop but is no longer involved in any such business. The claimant used to write blogs or articles but has not published since 2016.

August 19, 2020 peer-reviewed by Jonathan Marehbian, MD opines that no impairing diagnosis is identified from a neurology perspective.

September 1, 2020 transferable skills analysis by Megan Provost, MA identifies occupations within the claimant's physical capacities.

October 18, 2020 file review by Jeremy Hertza, PsyD notes psychological evaluations do not support impairment with no subsequent effort to assess neuropsychological functioning of the copperheads of assessment since the 2018 examinations.

April 7, 2021 letter from the claimant's attorney notes the office represents the claimant in pursuit of long-term disability benefits.

May 25, 2021 rehabilitation psychology evaluation and concussion review by Anthony Ricci, PhD notes the claimant was referred by his attorney. Beck Depression Inventory (BDI) score is 40. Beck Anxiety Inventory (BAI) score is 41. Pain checklist and neuropsychological symptom checklist notes persistent pain, vision changes, ringing in the ears, muscle weakness, spasms. The doctor notes observed stuttering and difficulty with ambulation. The doctor offers impression of postconcussion syndrome, adjustment reaction, and situational anxiety. The results of cognitive testing are noted. No performance validity or symptom validity indicators are noted.

June 1, 2021 letter from Anthony Ricci, PhD to the claimant's attorney notes impressions of postconcussion syndrome, adjustment reaction, and situational anxiety.

June 10, 2021 letter from the claimant's attorney notes that the additional information is submitted including a narrative report from Anthony Ricci, PhD.

**Lincoln/Bunch 0164**

RE:  Mark  B Bunch                                          NMR #: 506141

Page 6

All available medical documentation was reviewed.

**IN ANSWER TO YOUR SPECIFIC QUESTIONS:**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

The claimant presents with a constellation of symptoms consistent with post-concussive syndrome. The post-concussive syndrome includes symptoms which are within my area of expertise (cognitive inefficiency, irritability, sleep changes, depression) as well as symptoms which fall outside my area of practice and expertise (balance problems and headache for example). I defer to medical regarding functional impairment attributable to impairment outside my area of expertise. At the current review, records provided do not support restrictions and limitations on the basis of severe psychiatric or neurocognitive impairment.

**2. If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

Not applicable. Records provided do not support restrictions and limitations on the basis of severe psychiatric or neurocognitive impairment.

**3.**
**Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 11/10/20 to  ongoing, and comment on the expected duration.**

Records indicate the claimant sustained head strike in motor vehicle accident. Reports initially indicated no loss of consciousness, while later clinical documentation indicates the claimant reports there was a period of loss of consciousness. Subsequent symptoms are consistent with postconcussive syndrome, including cognitive inefficiency, mood changes, sleep changes, balance, and visual changes. Records do not  support a psychiatric disorder of severity which would limit daily activity. The level of behavioral health care and frequency of office visits is not consistent with severe psychiatric disorder. Records do not indicate the claimant has been referred for higher level of behavioral health care. Records do not indicate the claimant has been involved in a level of psychiatric care which would prevent daily activity. Records indicate there were rehabilitation therapies following the car accident, and these included speech language pathology. No subsequent course of cognitive rehabilitation is noted. In 2018, an effort to evaluate neurocognitive functioning was aborted when there was indication of poor performance validity. There has evidently been no follow-up neuropsychological evaluation since that time, and exam findings noted across the records provided for review do not include clinician-observed evidence of cognitive impairment which would require limitations and restrictions. The claimant's symptoms are consistently documented across records, both in narrative form and in a self-report symptom checklist form. When records indicate there was effort at assessment of symptom validity (for example in personality inventory such as MMPI) there was indication of poor symptom validity. The symptom magnification noted at 2018 MMPI administration was such that in a self-report including symptom checklist that evaluation would be difficult to interpret, and it would not be possible to form impressions of actual capacities and limitations on the basis of those self-report data. No subsequent administration of personality inventory of other symptom validity assessment is noted since that 2018 exam. Without exam findings or test

**Lincoln/Bunch 0165**

RE:  Mark  B Bunch                                    NMR #: 506141
Page 7

results are neuropsychological data to support cognitive impairment, review of the records provided here do not support psychiatric or neurocognitive impairment within the timeframe under consideration.

**4. Do medical records support any R&Ls that were recommended by treating providers for the timeframes in question?**

May 25, 2021 rehabilitation psychology evaluation and concussion review by Anthony Ricci, PhD, notes the claimant was referred by his attorney. BDI score is 40. BAI score is 41. Pain checklist and neuropsychological symptom checklist notes persistent pain, vision changes, ringing in the ears, muscle weakness, spasms. The doctor notes observed stuttering and difficulty with ambulation. The doctor offers impression of postconcussion syndrome, adjustment reaction, and situational anxiety. The results of cognitive testing are noted. No performance validity or symptom validity indicators are noted. For these reasons, it is difficult for an independent reviewer to form impression of capacities and limitations on the basis of these data alone. Records provided do not support restrictions and limitations on the basis of severe psychiatric or neurocognitive impairment.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

Records indicate there has been multidisciplinary consultation and treatment, including rehabilitation therapies. These interventions are appropriate for the type and severity of symptoms endorsed by the claimant. There has not been a validated neuropsychological evaluation. Records do not indicate there has been attempt at neuropsychological evaluation since the 2018 exam noted above.

**6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?**

Records do not indicate any workplace, clicks or childcare or eldercare issues or legal issues or other nonmedical circumstances.

**7. Please initiate AP contact when it may clarify any significant areas such as diagnosis, R&Ls, treatment opportunities, prognosis, or reason for work absence. AP contact information: Name: Anthony Ricci PHD**

I was not able to establish phone consultation with treating provider.

**8. Additional question: Based on the totality of medical evidence, does the (overall functional and) medical evidence support the claimant has the ability to sustain full time capacity (8/hours/day 5 days/ week) within any identified restrictions and limitations from 11/10/20 forward?  Please explain your medical rationale.**

Records provided note the claimant is treated for both medical as well as mental health conditions. I will limit my responses to my areas of expertise, psychology and neuropsychology. Records reviewed do not provide clear and credible support for inability to sustain full time employment on the basis of functional impairment attributed to severe psychiatric or neurocognitive impairment. At the current review, records provided do not support restrictions and limitations on the basis of severe psychiatric or neurocognitive impairment.

**Lincoln/Bunch 0166**

RE:  Mark  B Bunch                                    NMR #: 506141
Page 8

**CONFLICT OF INTEREST ATTESTATION:**

I certify that I do not accept compensation for review activities that is dependent in any way on the specific outcome of the case. To the best of my knowledge, I was not involved with the specific episode of care prior to referral of the case for review. I do not have a material professional, familial, or financial conflict of interest (financial conflict of interest is defined as ownership interest of greater than 5%) regarding any of the following: the referring entity; the insurance issuer or group health plan that is the subject of the review the covered person whose treatment is the subject of the review and the covered person's authorized representative, if applicable; any officer, director or management employee of the insurance issuer that is the subject of the review; any group health plan administrator, plan fiduciary, or plan employee; the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of the review; the facility at which the recommended health care service or treatment would be provided; or the developer or manufacturer of the principle drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of the review.

This attestation certifies that the peer reviewer named below has the appropriate scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review and has current, relevant experience and/or knowledge to render a determination for the case under review.

**ADVISING REVIEWER:**

David Nowell, Ph.D.
Licensed Psychologist
Practicing Neuropsychologist
Licensed in State of MA #7226

*NMR Conflict of Interest Attestation:*

*NMR attests to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure.  NMR attests that its compensation is not dependent on the specific outcome of this review or has had any involvement with this case prior to this referral.*

**Lincoln/Bunch 0167**

**From:**natallia.davydzenkava-washburn@nmrexamworks.com
**Sent:**Fri, 16 Jul 2021 16:38:10 -0500
**To:**Daniell, Jane;VendorReferrals
**Subject:**NMR report notification for case - Case : 8220685 - NMR 506149
**Attachments:**Report_NMR_Peer__LLAOBinv_506149-1_v1.doc, Report_NMR_Peer__LLAOBinv_506149-1_v1.pdf, Report_NMR_Peer__LTD-R01_506149-1_v1.doc, Report_NMR_Peer__LTD-R01_506149-1_v1.pdf

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

This is to inform you that the report for your case #8220685 (NMR # 506149) has been completed and is ready to be viewed on our website.

You can access the report via https://client.nmrco.com using your username and password.

Thank you for the referral,

Network Medical Review Co.

*"Privileged and Confidential: The information contained in this e-mail message, including any attachments, is intended only for the personal and confidential use of the intended recipient(s) and may contain confidential and privileged information as well as information protected by the Privacy Act of 1974. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please immediately contact the sender by reply e-mail and delete all copies of the original message."*

**Lincoln/Bunch 0168**

**From:**natallia.davydzenkava-washburn@nmrexamworks.com
**Sent:**Fri, 16 Jul 2021 16:34:38 -0500
**To:**Daniell, Jane;VendorReferrals
**Subject:**NMR report notification for case - Case 8220685 - NMR 506141
**Attachments:**Report_NMR_Peer__LLAOBinv_506141-1_v1.pdf, Report_NMR_Peer__LTD-R01_506141-1_v1.pdf

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

This is to inform you that the report for your case #8220685 (NMR # 506141) has been completed and is ready to be viewed on our website.

You can access the report via https://client.nmrco.com using your username and password.

Thank you for the referral,

Network Medical Review Co.

*"Privileged and Confidential: The information contained in this e-mail message, including any attachments, is intended only for the personal and confidential use of the intended recipient(s) and may contain confidential and privileged information as well as information protected by the Privacy Act of 1974. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please immediately contact the sender by reply e-mail and delete all copies of the original message."*

**Lincoln/Bunch 0169**

# Network Medical Review Company, LTD.
*An ExamWorks Company*

**INVOICE**

LINCOLN FINANCIAL GROUP - LLAOB

Attn:  DANIELL, JANE
8801 INDIAN HILLS DRIVE
OMAHA, NE 68114

Invoice Number:  506141-1
Invoice Date:  7/16/2021
Account Number:  519193
File Number:  506141-1

Service Date:  11/10/20 to - ongoing
Claim Number:  8220685
Claimant Name:  Mark  B Bunch

| Description | | Amount |
| --- | --- | --- |
| Initial | LTD | **$1207.50** |

**Comments**

**Please pay this amount:**          **$1207.50**

Remit to: Network Medical Review Company, LTD
         PO Box 492260
         Redding, Ca 96049-2260
  Tax ID 76-0711128

7/16/2021 4:33 PM

**Lincoln/Bunch 0170**

**Clinical Review Memo**

| Customer Name | Claimant Name | Claim Number |
|---|---|---|
| CHARTER COMMUNICATIONS, INC. | MARK BUNCH | 8220685 |

| Report Date: | | | |
|---|---|---|---|
| Referred By: | Jane Daniell | Claimant DOB: | |
| Referral Date: | 07/06/2021 | Job Title: | DIRECT SALES REP |
| Due Date: | 07/20/2021 | Medical/ Surgical Condition: | S/P MVA, closed head injury, Post concussion syndrome, neurocognitive disorder & adjustment reaction |
| Referral Type: | Appeal Referral | Disability Occupational Type: | |
| Reason for Priority Handling: | | Product Type: | LTD |
| Other Considerations | TCMS Special Circumstance | LDW: | 02/13/2018 |
| | | DOD: | 02/14/2018 |
| Physical Demands: | | BBD: | 08/15/2018 |
| Non-Medical Issue: | No | Non-Medical Issue Details: | |

**Referral Questions**

1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s) on up to the first 3 diagnoses.

2. If applicable please identify clinical significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s) on up to the first 3 diagnoses.

**Lincoln/Bunch 0171**

3. Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 11/10/20 to ongoing, and comment on the expected duration.

4. Do the medical records reviewed support the R&Ls, if any, that were recommended by treating providers for the time frames in question? (If "No," please discuss differences in the comment section below).

**Lincoln/Bunch 0172**

5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition? (If "No" please explain in the comment section below).

6. Are there any non-medical circumstances identified in the medical records  (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?

7. If AP contact may clarify any significant area such as diagnosis, restrictions and limitations, treatment opportunities, prognosis, or reason for work absence, currently available information for AP contact is as follows:

**Name: Anthony Ricci PHD   Phone Number: 1 (719) 594 4407 ex -----   Fax Number: 1 719 594 4409**

Date of call _____, Time _____
Date of call _____, Time _____
Date letter sent to AP

**Lincoln/Bunch 0173**

**Additional Questions**

Please note that this claim is also currently being reviewed by the following specialty or specialties: Occ Medicine

Other unrelated to covid

Other 8.  Additional question:  Based on the totality of medical evidence, does the (overall functional and) medical evidence support the claimant has the ability to sustain full time capacity (8/hours/day 5 days/ week) within any identified restrictions and limitations from 11/10/20 forward?  Please explain your medical rationale.

**Other Comments**
There are no other comments.

**Analysis of Medical Documentation and Support for Responses to Referral Questions:**

**All medical records provided by Lincoln Financial Group as of today's date were reviewed, including the most recent record in the file which is:**

**Electronically Signed:**

**Lincoln/Bunch 0174**

**Clinical Review Memo**

| Customer Name | Claimant Name | Claim Number |
|---|---|---|
| CHARTER COMMUNICATIONS, INC. | MARK BUNCH | 8220685 |

| Report Date: | | | |
|---|---|---|---|
| **Referred By:** | Jane Daniell | **Claimant DOB:** | |
| **Referral Date:** | 07/06/2021 | **Job Title:** | DIRECT SALES REP |
| **Due Date:** | 07/20/2021 | **Medical/ Surgical Condition:** | s/p MVA, closed head injury, post-concussion syndrome, neurocognitive d/o visuospatial difficulties, gait & imbalance deficits, dysphasia, cerv strain |
| **Referral Type:** | Appeal Referral | **Disability Occupational Type:** | |
| **Reason for Priority Handling:** | | **Product Type:** | LTD |
| **Other Considerations** | TCMS Special Circumstance | **LDW:** | 02/13/2018 |
| | | **DOD:** | 02/14/2018 |
| **Physical Demands:** | | **BBD:** | 08/15/2018 |
| **Non-Medical Issue:** | No | **Non-Medical Issue Details:** | |

**Referral Questions**

1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s) on up to the first 3 diagnoses.

**Lincoln/Bunch 0175**

2. If applicable please identify clinical significant comorbid Diagnosis(es) with ICD with ICD
10 Codes(s) on up to the first 3 diagnoses.

3. Taking into consideration the entire clinical picture, including evidence based medicine
and any medication or other treatment side effects, please describe how any supported
level of impairment translates into restrictions and limitations from 11/10/20 to ongoing,
and comment on the expected duration.

4. Do the medical records reviewed support the R&Ls, if any, that were recommended by
treating providers for the time frames in question? (If "No," please discuss differences in the
comment section below).

**Lincoln/Bunch 0176**

5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition? (If "No" please explain in the comment section below).

6. Are there any non-medical circumstances identified in the medical records  (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?

7. If AP contact may clarify any significant area such as diagnosis, restrictions and limitations, treatment opportunities, prognosis, or reason for work absence, currently available information for AP contact is as follows:

**Name: Thomas Higginbotham DO   Phone Number: 1 (719) 260 8190 ex -----   Fax Number: 1 (719) 260-6086**

**Lincoln/Bunch 0177**

Date of call _____, Time _____
Date of call _____, Time _____
Date letter sent to AP

**Additional Questions**

Please note that this claim is also currently being reviewed by the following specialty or specialties: Neuropsychology

Other unrelated to covid

Other Based on the totality of medical evidence, does the (overall functional and) medical evidence support the claimant has the ability to sustain full time capacity (8/hours/day 5 days/ week) within any identified restrictions and limitations from 11/10/20 forward? Please explain your medical rationale.

**Other Comments**
There are no other comments.

**Analysis of Medical Documentation and Support for Responses to Referral Questions:**

**All medical records provided by Lincoln Financial Group as of today's date were reviewed, including the most recent record in the file which is:**

**Electronically Signed:**

**Lincoln/Bunch 0178**

**Lincoln/Bunch 0179**



Lincoln Life Assurance Company of Boston
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5704

| | |
|---|---|
| Date: July 6, 2021 | |
| To: KENNETH SHAKESHAFT<br>SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE 202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax: (719) 635-0966 | |
| From: Jane Daniell<br>Appeals Specialist<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-5704 | |
| Total Pages<br>(Including Cover): 3 | |
| RE:<br><br>Claim #: 8220685<br>Claimant: Mark Bunch<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0180**



Lincoln Life Assurance Company of Boston
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5704

July 6, 2021

Kenneth J. Shakeshaft
Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
         Charter Communications, Inc.
         Claim #: 8220685
         Claimant: Mark Bunch

Dear Kenneth Shakeshaft:

Lincoln Life Assurance Company of Boston (Lincoln) is responsible for managing claims for Long Term Disability (LTD) benefits under the Charter Communications, Inc.'s Group Disability Policy. We are writing in reference to Mark Bunch's claim for LTD benefits under the Policy.

We received your request for review of the recent claim determination on his LTD claim on April 15, 2021.  Your office requested an extension to submit medical information.  We wrote to you on May 4, 2021 and June 21, 2021, advising you that Lincoln would allow an extension to provide documentation for Mr. Bunch's appeal.  We received additional medical records from your office on June 18, 2021 and June 29, 2021.   We understand this is all of the information you intend to submit for our consideration of Mr. Bunch's LTD appeal.

To assist us in evaluating Mr. Bunch's eligibility for benefits, we have referred his file for a medical review and assessment by Board Certified Physicians.

We anticipate a response from the reviewing Board Certified Physicians no later than August 5, 2021.  If there is an unexpected delay in receiving a response, we will contact you.  Otherwise, we will proceed with our review of Mr. Bunch's appeal once the response is received.  We regret any inconveniences this delay may cause; however, the assessment is necessary to ensure a thorough review of Mr. Bunch's eligibility for benefits under the terms of the Policy.

In accordance with the Employee Retirement Income Security Act, under normal circumstances, you will be notified in writing of a final decision within 45 days from the date your request for review was received, excluding any days in which we are waiting for you to submit documentation.  We will contact you if there are special circumstances requiring a delay in Lincoln's response, and you will be notified of our decision no later than 90 days after the request for review was received.

1  of 2

**Lincoln/Bunch 0181**

If you have any questions regarding this matter, please contact me.

Sincerely,

Jane Daniell
Appeals Specialist
Phone No.: (888) 437-7611 Ext. 16393
Secure Fax No.: (603) 334-5704

2  of  2

**Lincoln/Bunch 0182**

# FAX

**To**: +16033345704

**From**: office@shakeshaftandgormanlaw.com

**Fax**: 17196350966

---

**NOTES:**

Total Pages - 4

**Date of transmission: Tuesday, June 29, 2021**
**Number of pages including this cover sheet: 2**

Lincoln/Bunch 0183



### SHAKESHAFT-GORMAN
##### LAW FIRM, LLP

| | | | Main Office |
|---|---|---|---|
| Kenneth J. Shakeshaft | • Attorney at Law | | Shakeshaft–Gorman Law Firm |
| Joseph M. Gorman | • Attorney at Law | | 627 North Weber Street, Suite 1 |
| Cindy Maddux | • Paralegal | | Colorado Springs, CO 80903 |
| Brandy Newton | • Paralegal | | |

June 29, 2021

Via facsimile: 603-334-5704

Lincoln Life Assurance Company of Boston
Attn:  Jane Daniell, Appeals Specialist
Group Benefits Disability Claims
P.O. Box 7213
London, KY  40742-7213

      RE:    Our client:    Mark Bunch
                Claim No.:    8220685
                Charter Communications, Inc.

Dear Ms. Daniell,

Attached please find a report by Dr. Higginbotham dated June 17, 2021.

Please consider this as additional information for the Appeal to the decision regarding Mark Bunch.

This is the final report for Mark Bunch.

Sincerely,

*Kenneth J. Shakeshaft*

Kenneth J. Shakeshaft
KJS/bn
Attachment – Report by Dr. Higginbotham dated 6/17/21

PHONE 719.635.5886 · FAX 719.635.0966 · TOLL FREE 1.800.383.5886
WWW.SHAKESHAFTANDGORMANLAW.COM · OFFICE@SHAKESHAFTANDGORMANLAW.COM

**Lincoln/Bunch 0184**



**To**: +16033345704

**From**: office@shakeshaftandgormanlaw.com

**Fax**: 17196350966

---

**NOTES:**

Cover Notes

**Date of transmission: Tuesday, June 29, 2021**
**Number of pages including this cover sheet: 5**

PAGE 1/5 * RCVD AT 6/29/2021 12:36:35 PM [Eastern Daylight Time] * SVR:VA1PWFAX201/0 * DNIS:6033345704 * CSID:eComFax Service * ANI:12486023158 * DURATION (mm-ss):02-03

**Lincoln/Bunch 0185**



**SHAKESHAFT-GORMAN**
**···· LAW FIRM, LLP ····**

| | | |
|---|---|---|
| Kenneth J. Shakeshaft | • Attorney at Law | **Main Office** |
| Joseph M. Gorman | • Attorney at Law | Shakeshaft · Gorman Law Firm |
| Cindy Maddux | • Paralegal | 627 North Weber Street, Suite 1 |
| Brandy Newton | • Paralegal | Colorado Springs, CO 80903 |

June 29, 2021

Via facsimile: 603-334-5704

Lincoln Life Assurance Company of Boston
Attn:  Jane Daniell, Appeals Specialist
Group Benefits Disability Claims
P.O. Box 7213
London, KY  40742-7213

       RE:    Our client:    Mark Bunch
                Claim No.:    8220685
                Charter Communications, Inc.

Dear Ms. Daniell,

Attached please find a report by Dr. Higginbotham dated June 17, 2021.

Please consider this as additional information for the Appeal to the decision regarding Mark Bunch.

This is the final report for Mark Bunch.

Sincerely,

*Kenneth J. Shakeshaft*

Kenneth J. Shakeshaft
KJS/bn
Attachment – Report by Dr. Higginbotham dated 6/17/21

PHONE 719.635.5886 · FAX 719.635.0966 · TOLL FREE 1.800.383.5886
WWW.SHAKESHAFTANDGORMANLAW.COM · OFFICE@SHAKESHAFTANDGORMANLAW.COM

**Lincoln/Bunch 0186**

## Occupational
## And
## Environmental Health Services

Thomas W. Higginbotham, DO
Board Certified,
Occupational And
Environmental Medicine

June 17, 2021

Kenneth Shakeshaft, Esq.
627 North Weber Street, Suite 1
Colorado Springs, CO 80903

**Re:   Mark Bunch**
       **DOB:**

Dear Attorney Shakeshaft:

I reviewed your letter of 06/01/2021. You requested a letter from me, addressing several queries.  You have asked if I agreed with Dr. Ricci's conclusions. You asked that I comment on whether I felt he was malingering.

1.   **What Mr. Bunch's diagnoses are and whether they are "specific" diagnoses.**
     History of a motor vehicle collision V43.52XS
     History of closed head injury Z87.820
     History of diffuse traumatic brain injury without loss of consciousness but with altered consciousness S06.2XOS
     Post-concussion syndrome (PCS) F07.81
     PCS with
           Neurocognitive disorder G31.84
           Visuospatial neglect R41.4
           Difficulty in walking/imbalance R26.81
           Dysphasia R47.02
     Persistent cervical strain S16.1XXS
     Adjustment reaction with depressed mood and anxiety F43.23

     Hypertension I10
     Physical deconditioning R53.81
     Lack of exercise Z72.3

2.   **Does Mr. Bunch have difficulties in ambulating and with his balance? Please describe your testing and/or observations.**
     Yes. His difficulty in walking and with balance have been consistent since I began treating with Mr. Bunch on 05/03/2018. He shuffles his gait and, when extending his stride, he lists to the left.

1430 South 21st Street, Suite 101
Colorado Springs, CO  80904
(719)260-8190
FAX: 260-6086

**Lincoln/Bunch 0187**

Page 2
Re:   Mark Bunch
      DOB:

At times, he has bumped into the doorway or wall.  His gait has been consistent when observed walking from the parking lot to the office as it is when walking from the waiting room to the examination room. He, however, walks without any assistive devices such as a walker, cane, or staff.

In addition, and as consistently noted on multiple medical visits, he has difficulty reaching for a pen or a piece of paper during extended reach.  He must grope to retrieve an item.  Sometimes he must close his left eye when reaching for an item.  He consistently closes his left eye when reading documents that he has been provided to review. This is when wearing his older corrective lenses with prisms.

3.   **Is the severity of an actual collision necessarily an indicator of whether a person can suffer long-term injuries?**
     No.  A recent published article entitled, "Is Acceleration a Valid Proxy for Injury Risk and Minimal Damage Traffic Classes?  A Comparative Review of Volunteer, ADL and Real-World Studies" of 03/12/2021, noted that the biomechanical, or "delta V", approach to injury causation in minimal damage crashes invariably results in the vast underestimation of the actual risk of such crashes. The author recommended that such approach be discontinued as it is scientifically an invalid practice.

4.   **Did Mr. Bunch hit his head in the collision?**
     Irrevocably, yes.

5.   **Was the crash Mr. Bunch was involved in such a minor one that it caused no injuries to Mr. Bunch? Or was the collision one that caused injuries to Mr. Bunch, including a post-concussive syndrome?**
     If it wasn't for this motor vehicle collision, Mr. Bunch would not have permanent sequela consistent with post-concussion syndrome.

6.   **In your opinion is Mr. Bunch malingering or does he suffer from medical disorders which are the cause of his symptoms?**
     Since treating with Mr. Bunch since 05/03/2018, I have never raised the concern of him malingering or feigning his condition or maximizing his symptoms and signs of post-concussion syndrome.

7.   **In your opinion, is Mr. Bunch able to perform, on a regular basis, the material and substantial duties required for employment?**
     No.

**Lincoln/Bunch 0188**

Page 3
Re:   Mark Bunch
      DOB:

**8.    Is Mr. Bunch, as Dr. Ricci opines, precluded from regular employment?**
Dr. Ricci has concurred with my opinion that Mr. Bunch is precluded
from regular employment.

If any further information or clarification is needed, please contact me as
soon as possible.

Sincerely,

Thomas Higginbotham D.O.
Board Certified in Occupational Medicine
Fellow, International Academy of Independent Medical Examiners

**Lincoln/Bunch 0189**



Lincoln Life Assurance Company of Boston
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5704

| | |
|---|---|
| Date: | June 21, 2021 |
| To: | KENNETH SHAKESHAFT<br>SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 |
| Attn: | |
| Fax: | (719) 635-0966 |
| From: | Jane Daniell<br>Appeals Specialist<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-5704 |
| Total Pages<br>(Including Cover): | 3 |
| RE: | |
| Claim #: | 8220685 |
| Claimant: | Mark Bunch |
| | Charter Communications, Inc. |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0190**



Lincoln Life Assurance Company of Boston
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5704

June 21, 2021

Kenneth J. Shakeshaft
Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

Dear Kenneth Shakeshaft:

Lincoln Life Assurance Company of Boston (Lincoln) is responsible for managing claims for Long Term Disability (LTD) benefits under the Charter Communications, Inc., Group Disability Policy. We are writing regarding Mark Bunch's claim for LTD benefits under the Policy.

On April 15, 2021, we received a written request for review.  No additional information was provided.  Your office requested an extension.  We granted the extension until June 14, 2021. As discussed in our telephone conversation June 18, 2021, your office submitted information on June 10, 2021 from Anthony Ricci, Ph. D.  However, we did not receive the information, so it was refaxed.  In your June 10, 2021 letter, you indicated you were awaiting a final report from Dr. Higginbotham.

For Lincoln to conduct a timely review of Mr. Bunch's appeal, we ask that he submit any information he wishes to have considered by **July 26, 2021**. Please contact us should you need additional time. You may submit the information to fax number **603-334-5704** or email to **DisabilityDocuments@lfg.com**

If we do not hear from you and do not receive additional information by **July 26, 2021**, we will proceed with our appeal review and make a final determination based on the information currently contained in Mr. Bunch's file.

Due to these special circumstances, an extension of time to process Mr. Bunch's appeal is required and we are exercising our right to take such an extension under the Employee Retirement Income Security Act.

1  of  2

**Lincoln/Bunch 0191**

Under the Employee Retirement Income Security Act (ERISA), an appeal determination should be rendered within 45 days of receipt of appeal, unless there are special circumstances beyond Lincoln's control, which require a delay in making a determination. If additional time is needed, ERISA allows for a 45-day extension to evaluate and render an appeal decision. [Pursuant to ERISA Regulations, additional time for a final decision may exceed 90 days to the extent that the timeframe is tolled while Lincoln is awaiting receipt of requested documentation needed to fully evaluate your claim. (Tolled: accumulation of time is suspended.)]

Since we are waiting for your office to submit additional documentation for Mr. Bunch's appeal, the days from the date of this letter until we receive your submission are not counted as part of the appeal determination period.

If you have any questions regarding this matter, please contact me.

Sincerely,

Jane Daniell
Appeals Specialist
Phone No.: (888) 437-7611 Ext. 16393
Secure Fax No.: (603) 334-5704

2  of  2

**Lincoln/Bunch 0192**



**COLORADO SPRINGS
PSYCHOLOGICAL
CENTER**

ANTHONY M. RICCI, PhD, ABPP(RP), PC
5085 List Dr. Suite 110
Colorado Springs, CO 80919
(719) 594-4407
Fax (719) 594-4409

LICENSED PSYCHOLOGIST, #416
DIPLOMATE, REHABILITATION PSYCHOLOGY
AMERICAN BOARD OF PROFESSIONAL PSYCHOLOGY

PSYCHOTHERAPY AND PSYCHOLOGICAL EVALUATIONS
STRESS AND PAIN MANAGEMENT
VOCATIONAL AND REHABILITATION SERVICES
BIOFEEDBACK • HYPNOSIS • EMDR II • TIR• TFT
DISABILITY EVALUATIONS
SPORTS PSYCHOLOGY

May 25, 2021

Kenneth Shakeshaft, Esq
Shakeshaft-Gorman Law Firm
627 North Weber, Suite 1
Colorado Springs, CO  80903

RE:     Mark Bunch
DOB:
DOI:    2/13/18 Work MVA

### Initial Rehab Psychology Evaluation and Concussion Review

Dear Mr. Shakeshaft,

Thank you for the referral of Mark Bunch for evaluation.

Mr. Bunch presented for initial interview and completed screening psychological testing. He returned to review the results of the testing to help formulate diagnostic impressions and treatment recommendations.

During the course of our evaluation, we compared prior evaluation and treatment data, and clarified his qualification for SSDI benefits.

Based on his clinical presentation, we have discussed, and he agreed to consultation with Dr. Higginbotham, his Primary Care Physician, to recommend completion of neurooptometry services. He has declined in physical status since the prior evaluation.

It is my opinion, within a reasonable degree of psychological certainty, that Mr. Bunch's clinical presentation is such that he is precluded from remunerative employment without an extended and significant vocational rehabilitation program.

### Pertinent Background and Behavioral Observations

Mark Bunch presented for initial interview on 4/13/2. He wore curved prism lenses and ambulated with significant difficulty from the waiting room to the interview office and testing

**Lincoln/Bunch 0193**

Kenneth Shakeshaft, Esq
RE:  Mark Bunch
5/25/2021
Page 2

area.  His speech patterns were slow and deliberate, and at times he had difficulty sequencing information.

He spoke carefully, and was responsive to redirection and requests for clarification.  His affect was clinically reduced, and his mood was variable.  He was oriented in all spheres, and in my opinion is a credible historian for available information.

At the outset we clarified his referral to our office for evaluation only.  He recalled prior contact.

He noted that he is still treating only with Dr. Higginbotham.  He discontinued working Dr. Staudenmayer shortly after the Workers' Compensation matter was resolved.  He and his fiancée, Nikki,  broke up, noting that she could no longer tolerate the changes associated with the motor vehicle accident, and she left the relationship.

Since the MVA injury he has not been able to return to work, and due to the Workers' Compensation carrier's refusal to provide services, he decided to settle the matter.  In October 2019 he was approved for SSDI benefits.

He attended a number of evaluations, but doesn't recall any specifics.  He has been unable to drive since the MVA because he could  not continue in his vision therapy program, and has not driven since that time.  In the earlier stages of his injury, he was transported to appointments by his fiancée, Nikki, and recently he relies on friends.

He is continuing on SSDI benefits, and also had Long Term Disability available until he was terminated from that benefit about 9 months ago.  He doesn't know the reason for the termination of benefits, indicating that your office was sent a letter to that effect.

In specific response, he clarified that he and Nikki broke up about a year ago, reporting that he thinks she left because "he's not much good any more".  They did not attend counseling, and have not had contact since she left the relationship.

At this point, he lives alone.  He is unable to go out to meet anyone, and his meals consist of microwaving "bowls" and heating cans of soup, and beans.

His work with Dr. Higginbotham consists of evaluating and monitoring his cervical symptoms, his balance, vision, and speech.

He acknowledges and reports that his vision continues to be "messed up".   He was involved in a prism therapy program with Dr. Mike Saxerud, and was scheduled for a prism change, which did not take place because Dr. Saxerud's office was not reimbursed by the Workers' Compensation carrier, and he couldn't afford to make those payments.

**Lincoln/Bunch 0194**

Kenneth Shakeshaft, Esq
RE:  Mark Bunch
5/25/2021
Page 3

He reported that he lost his employment following the motor vehicle accident injury, and when he lost his job he also lost his insurance.  He has had Medicare eligibility for about 6 months.

We reviewed this issue in detail, and noted that Dr. Blair, who is a Diplomated Neurooptometric Vision Specialist, is located in Canon City, and we discussed the availability of services through that office.  He has requested consultation with Dr. Higginbotham to process that referral.

Mr. Bunch reiterated that he has not driven since the accident because he feels unsafe on the road.  He has a friend that drives him to lengthier appointments, and tries to obtain help from others for shorter trips around town.

He feels that in addition to the vision problems, he is unable to react quickly enough to be able to drive.   At one point he was enrolled in a Driver Safety Program through Health South, but the COVID-19 isolation stopped the program.   His license is currently valid.

It should be noted that throughout our discussion, Mr. Bunch spoke with a halting and deliberate speech pattern.  His upper quadrant movements were not fluid.

He discussed the speech therapy program through Penrose Hospital, which he feels was helpful, and ended in 2019.

Mr. Bunch had difficulty getting up from the seat in the interview office, and while walking to the testing area, he ambulated with a shuffling and irregular gait.   On several occasions he became imbalanced to the left, impacting the door jamb while exiting the room, and also the left hallway.   His physical presentation is reminiscent of postconcussion visual/vestibular issues combined with neuromuscular weakness.

**Psychological Test Results**

The screening psychological testing is helpful in specifying Mr. Bunches clinical presentation, and with differential diagnosis.

It is noteworthy that the completion of the psychological testing and Patient Information and Services Agreement form demonstrates severe dysgraphia, congruent with Mr. Bunch's stated visual and fine motor coordination problems.

**Beck Depression Inventory II**

The BDI-II indicates occupation as Disability Status, and education includes the completion of an MBA in 2000 from the University of Phoenix.

**Lincoln/Bunch 0195**

Kenneth Shakeshaft, Esq
RE: Mark Bunch
5/25/2021
Page 4

He presents a total score of 40, and specifies post injury/disability considerations.

He feels sad, doesn't expect things will work out for him, has a sense of failure, and gets very little pleasure from the things that he used to enjoy, including the inability to read, hike, nor drive.

His expectation is to be punished, indicating that he feels that he's living in an "unfriendly world". He dislikes himself because of the situation, and is critical of himself, continuously wondering why he's not improving. He's more emotional than he used to be prior to the MVA injury.

He has a feeling of being restless and agitated with a short attention span, is very asocial, has trouble making decisions because he can't process information or research data. He feels worthless compared to others because of the situation, and doesn't have enough energy to do very much.

He's much more irritable than usual, feels it, and friends have to told him. His appetite is reduced, indicating that he eats only a meal per day. In this regard we discussed specific dietary changes directed at helping him to improve healing patterns.

He finds it hard to keep his mind on anything for very long, is too tired or fatigued to do most of the things that he used to do, and is much less interested in sex now due to libido and dysfunction. His sleep patterns have been altered, and he describes a highly disturbed sleep pattern with non-restorative features.

**Beck Anxiety Inventory**

The BAI presents a total score of 41, and specifies a high number of psychophysiologic patterns of response. He's unable to relax everywhere, and is worse on the road. He has a fear of the worst happening, which is not improving.

He indicates a feeling of being dizzy and lightheaded, with heart pounding and racing sensations, indicating that he's a cardiac anxiety responder.

He has a fear of losing physical and emotional control, has a fear of dying isolated, is terrified on the road, has feelings of choking associated with breathing difficulty, and hands trembling response patterns.

**Pain Questionnaire**

The Pain Questionnaire presents a specific protocol which is usually a positive prognostic indicator.

**Lincoln/Bunch 0196**

Kenneth Shakeshaft, Esq
RE:  Mark Bunch
5/25/2021
Page 5

Mr. Bunch reports the experience of throbbing sensations in the left side of the cranium in the temporalis and eye orbital region that started at the time of the motor vehicle accident, and have not changed.  In this respect he's been advised of the possibility of a postconcussion headache which has never resolved, and the Chiropractor that he treated with initially also advised it might be related to neck trauma.

He describes left sided cervical pain that feels like a "pinching nerve" sensation, and the top of the left shoulder pain pattern without radiculopathy in the upper extremities.   He also indicates that absence of radiculopathy in the lower extremities.

He reports that his general pain perception averages 4-7/10, indicating that stress and tension worsens the pain, and occasional restorative sleep patterns improve symptoms.

He utilizes adjectival descriptors, including flickering, pinching, hurting, fearful, radiating, jumping, tugging, tender, grueling, tight, pricking, burning, tiring, binding, cold, cutting, tingling, suffocating, annoying, and nagging in describing the pain patterns.

**Neuropsychological Symptom Checklist**

The NSC indicates Dr. Thomas Higginbotham treating for his head injury, and also has become his Primary Care Physician.

He endorses a number of sensory changes, including reduction in the sense of taste, and specification of a high number of issues with blurred vision, double vision, reduced vision, blanks spots in the field of vision, and flashing lights in the vision.  He feels "stuck" in these symptoms, noting that there was some initial improvement, but then neurooptometry services were ended, and he has not felt improvement since that time.

He describes ringing in the ears that started following the motor vehicle accident.

At times, during the course of our discussion, Mr. Bunch had difficulty articulating and appeared to stutter when he seemed to have difficulty with word finding.

He endorses a number of proprioceptive changes, including muscle weakness, twitching, and spasms, primarily left sided; and difficulty with walking, coordination, and balance problems, noting that he drifts to the left, or finds himself off balance to the left side.   He describes tremors and shakiness, and problems with dropping things, which is described as a CNS issue, and also possible vision convergence causing him to miss retrieving items.

He endorses several trophic skin changes, including "tingling skin", "pins and needles", loss of feeling, and change in skin texture.

**Lincoln/Bunch 0197**

Kenneth Shakeshaft, Esq
RE:   Mark Bunch
5/25/2021
Page 6

Mr. Bunch endorses a number of short term memory, incidental, and working memory considerations.   He frequently forgets where he is, time of day, meetings, can't think as quickly as before, finds it hard to think clearly, is more easily distracted, and can't concentrate.

He has trouble using tools due to vision, and has difficulty with speech articulation, noting the prior discussed stuttering response pattern.

He endorses affirmative for head injury following the motor vehicle accident, and specifying possible high school concussion while playing football when he had his "bell rung" on one occasion.

He endorses high blood pressure, is negative for surgery, does not utilize alcohol nor smoke tobacco.

Current medications are limited to blood pressure control, and OTC Tylenol.

**Mooney Problem Checklist**

The adult form of the Mooney Problem Checklist indicates marital status as divorced and no children.

He highlights a number of concerns primarily related to health, physical, and self improvement considerations.

A summary of what he considers to be additional problems is "Hard to read and my unsteady walking".

A summary of he would consider to be chief problems is "I'm not able to read very well or walk very far".

He indicates affirmative in reviewing the matters professionally.

The previously mentions dysgraphia is very much in evidence.

**Adult Neuropsychological History Questionnaire**

The brief form of the Adult Neuropsychological History Questionnaire indicates primary language as English with no secondary language.  He is right hand dominant.

He indicates medical diagnosis of brain injury, and your office referring him for evaluation.  He has a specific question that he would like answered by the evaluation that includes "What can I do for my vision and balance?".

**Lincoln/Bunch 0198**

Kenneth Shakeshaft, Esq
RE:  Mark Bunch
5/25/2021
Page 7

He presents with a high number of problem solving, speech and language, nonverbal, concentration, memory, motor coordination, and sensory concerns.

He endorses affirmative for headaches, dizziness, and excessive fatigue.

He highlights a number of prior discussed behavioral issues, including onset and duration sleep problems, and feels that there's definitely something wrong with his clinical presentation.

**Review of Prior Evaluation and Treatment Summaries**

The file contains a number of prior evaluation and treatment records.

His Primary Care Physician, Dr. Steven Wayne Olson, M.D., notes post 2/13/18 MVA injury considerations, and refers Mr. Bunch for a number of services, including evaluation by Neurology, Occupational Medicine, TBI review, and rule out of MS.

On 2/27/18 Dr. Olson Dr. Steven Wayne Olson, M.D., on 2/27/18, refers Mr. Bunch to Colorado Springs Neurological Associates for evaluation of Traumatic Brain Injury, without loss of consciousness, subsequent encounter.  He specifies cranial nerve impairment-balance problem.

On March 21, 2018 Dr. Olson again refers Mr. Bunch to Colorado Springs Neurological Associates for evaluation of Multiple Sclerosis, Primary Chronic Progressive, based on his evaluation of an MRI positive for white matter changes.

On April 6, 2018 Dr. Olson refers Mr. Bunch to Dr. Christianson for evaluation of chronic neck pain secondary to motor vehicle accident sequelae.

On April 13, 2018 Dr. Olson refers Mr. Bunch to Dr. Thomas Higginbotham for evaluation of Traumatic Brain Injury, indicating that Mr. Bunch has significant eye finding that appear to have resolved, and specifying that Mr. Bunch did suffer a concussion, and raises the question of whether the symptoms are related to the motor vehicle, that is very likely, but unable to confirm.

Dr. Olson specifies that Mr. Bunch continues to have headaches and neck pain probably due to the 2/13/18 MVA, and given the  positive findings on exam from the prior visit, and brain MRI showing white matter changes with possibility of MS.  There was no previous history of neurological deficits before the trauma, and he and he continues to have neck pain.

On 4/13/2018 Dr. Olson also refers Mr. Bunch to Colorado Neuropsychological Associates-Dennis Helffenstein, M.D. (Ph.D.) for services.

**Lincoln/Bunch 0199**

Kenneth Shakeshaft, Esq
RE:  Mark Bunch
5/25/2021
Page 8

On April 26, 2018 Dr. Olson authors a To Whom It May Concern letter, specifying that it is his medical opinion that Mr. Bunch is unable to return to work until 6/4/18.

A Summary Evaluation by Neurologist Julia Brinley, D.O., dated 10/19/2018, presents a general history of Mr. Bunch's presentation; and following neurological review, she provides an assessment of  1. Postconcussion,  2. Intractable chronic migraine without aura and without status migrainosus; diplopia; other symptoms and signs involving appearance and behavior; other symptoms and signs involving cognitive function and awareness; insomnia; and imbalance.

She also highlights the opinion that "Patient with concussion and Postconcussive Syndrome from a motor vehicle accident in February of 2018.  His most bothersome complaints are double vision, cognitive issues, sleep disturbance, imbalance, and headaches.  Based on patient's history and exam, I do believe he has continued Postconcussive Syndrome with worsening factors to include mood disturbance.

I feel as though patient would best be served with psychological treatment in addition to more aggressive headache/migraine management.  She recommends Speech Therapy and recommendation to obtain MRI of the brain for further review of the white matter disease, potentially suggestive of MS, although his symptoms appear more related to head injury rather than demyelinating process.

Speech Therapy evaluation and consultation, dated 10/31/2018 recommends 1. Skilled speech therapy to improve functional cognitive/linguistic, speech, and  swallowing skills.  2. PT consultation for continued fall risk.  3. MBS for evaluation of symptoms of dysphasia, and reported choking on thin fluids.  A certification period from 11/1/2018 through 1/31/2019 is recommended, and frequency of treatment is 2x per week for 10 to 12 weeks.

On 11/21/2018 Neurooptometrist, Michael Saxerud, O.D., advises "Mark continues to make steady progress under my care for his visual perceptual disorder.  While his depth perception and eye movements are improving, he continues to have difficulties in these areas. I'm hopeful that in the next couple of months we will be able to say that Mark will once again be safe to drive a vehicle, and to return to work on at least a part time basis.  Until that time, however, Mark is not ready to return to those activities".

A Neuropsychological Review by Dennis Helffenstein presents a DSM-5 diagnosis of: Mild Neurocognitive Disorder due to  Traumatic Brain Injury with behavioral disturbance; Depressive Disorder due to Traumatic Brain Injury, Posttraumatic Stress Disorder.

It is noted that most of Mr. Bunch's evaluation and treatment was discontinued after he lost insurance (both Workers' Compensation and Personal Insurance), and the MS issue does not appear to have been further evaluated.

Lincoln/Bunch 0200

Kenneth Shakeshaft, Esq
RE:   Mark Bunch
5/25/2021
Page 9

**Diagnostic Impressions and Treatment Recommendations**

Mark Bunch returned to review the results of the screening psychological testing on 4/27/21.

On this day he again presented with significant anxiety and with reduced affect.  He was driven to the appointment.

We clarified evaluation status of visit and consultation, and he candidly reported that the single most disturbing sequelae of his post MVA injury circumstances is the social isolation due to his inability to be independent in his driving.   He feels that he can't make any progress in this regard because he doesn't trust his vision.

During this interview, stuttering was in evidence as was the difficulty ambulating.  While walking from the waiting room to the interview office, he ambulated slowly and guardedly, and with an antalgic gait pattern.  He was off balance to the left on several occasions, and again impacted the left side door threshold.

We reviewed the results of the screening psychological testing, and he is accepting of interpretation and impressions.

Based on the history, clinical presentation, and screening psychological testing, it is my opinion within a reasonable degree of psychological certainty that Mark Bunch continues to manifest moderate Postconcussion Syndrome (F07.81); and continues to demonstrate evidence of sensory and cognitive changes, which have not been completely evaluated and treated. Additionally, he presents with significant Adjustment Reaction difficulties with Depression and Anxiety (F43.23); and continues with an unresolved Situational Anxiety (F41.8) pattern associated with all forms of driving and riding.

Due to his presentation of  pronounced dysgraphia; unresolved vision issues; and very evident difficulty with balance, ambulation, and motor control including inability to drive, it is my opinion that he is currently not capable of any form of remunerative employment.

Additive to this opinion is his qualification for SSDI benefits in late 2019.   There is objective evidence of speech disarticulation, and a documented history of working and incidental memory deficits.

His clinical presentation is reminiscent of unresolved TBI (Postconcussion Syndrome) sequelae; but also presents with a physiologic feature of muscle weakness and unusual posturing, which may be associated with Disuse Syndrome. However, it is noted that Dr. Olson had requested a Multiple Sclerosis evaluation protocol due to brain MRI findings, and it does not appear from of a review of the record that this issue has been ruled out.

**Lincoln/Bunch 0201**

Kenneth Shakeshaft, Esq
RE:  Mark Bunch
5/25/2021
Page 10

Mr. Bunch and I discussed his speaking with Dr. Higginbotham to generate a referral to Neurooptometrist, Dr. Nicholas Blair in Canon City, for further evaluation assistance and help with the vision issues.    Dr. Blair specializes in Neurooptometric Rehabilitation.

We also discussed Mr. Bunch speaking with Dr. Higginbotham about developing  a more activating personal rehabilitation plan, and certainly his gaining driving independence would go a long way in initiating that process.

There is a consideration of  Mr. Bunch's candidacy for a more thorough evaluation of concussion sequelae and comorbid issues, through functional MRI evaluation and/or thorough Neurology review so that he can slowly develop increased personal independence, reduction in driving and riding anxiety, and improvement in his visual symptoms, might help him slowly achieve personal independence.

I hope this information is helpful in your work with Mark Bunch.    Thank you for thinking of us in your evaluation planning for this deserving, motivated, and complex patient presentation.  Please feel free to call if you have any questions regarding this report.  I would be pleased to elaborate in any reasonable format with Mr. Bunch's permission.

Respectfully,

Anthony M. Ricci, PhD., ABPP (RP), PC
Diplomate, Rehabilitation Psychology
American Board of Professional Psychology

AMR/cb

Lincoln/Bunch 0202



**COLORADO SPRINGS
PSYCHOLOGICAL
CENTER**

ANTHONY M. RICCI, PhD, ABPP(RP), PC
5085 List Dr. Suite 110
Colorado Springs, CO 80919
(719) 594-4407
Fax (719) 594-4409

LICENSED PSYCHOLOGIST, #416
DIPLOMATE, REHABILITATION PSYCHOLOGY
AMERICAN BOARD OF PROFESSIONAL PSYCHOLOGY

June 1, 2021

PSYCHOTHERAPY AND PSYCHOLOGICAL EVALUATIONS
STRESS AND PAIN MANAGEMENT
VOCATIONAL AND REHABILITATION SERVICES
BIOFEEDBACK - HYPNOSIS - EMDR II - TIR- TFT
DISABILITY EVALUATIONS
SPORTS PSYCHOLOGY

Kenneth Shakeshaft, Esq
Shakeshaft-Gorman Law Firm
627 North Weber, Suite 1
Colorado Springs, CO  80903

RE:    Mark Bunch
DOB:
DOI:    2/13/18 Work MVA

Dear Mr. Shakeshaft,

Thank you for the May 27, 2021 correspondence and attachments regarding Mark Bunch.

I will attempt to be responsive to your questions.

Mr. Mark Bunch's specific presenting diagnoses, based on history, screening psychological testing, and clinical presentation are Postconcussion Syndrome (F07.81); Adjustment Reaction with Depression and Anxiety (F43.23); and Unresolved Situational Anxiety (F41.8).

Mr. Bunch has significant difficulty ambulating and with balance.  This was noted in our meeting, during our discussion, during testing, and following a review of the testing.

The severity of a collision is one indicator of whether a person can suffer a concussion.   The mechanism of injury described by Mr. Bunch, other evaluators, as well as Mr. Robert Cortez describe the plausible mechanism of injury necessary to sustain a concussion.

Mr. Bunch very evidently impacted his cranium at the time of the collision, and there are residual indicators, including the observations of Mr. Cortez, that he did, indeed, sustain a concussion at the time of the event.

**Lincoln/Bunch 0203**

Kenneth Shakeshaft, Esq
RE:  Mark Bunch
6/1/21
Page 2

It is highly likely that the motor vehicle accident was the event that caused the injuries described as concussion and Postconcussion Syndrome.  It is also possible that Mr. Bunch may have been manifesting a compromised  neurological system, and the event was superimposed on that process.

It is my opinion that Mr. Bunch is not malingering, and he does, indeed, suffer from the medical disorders described previously, and by my 5/25/21 report.

Postconcussive Syndrome is a diagnosis derived to explain concussion symptoms which have not resolved.  It is fortunately typical that most concussion do resolve, and do not lead to Postconcussion Syndrome.  Unfortunately, in this case that has not happened, partially due to incomplete treatment.  It is also well documented that concussion and Postconcussion Syndrome is highly idiosyncratic to patient presentation, including psychological and neurological vulnerability.  It was noted by Dr. Saxerud on 11/21/18 that he was not yet ready to return to driving, and unfortunately the neurooptometry treatment ended before Mr. Bunch was able to return to driving.  Unfortunately, most paper reviews  do not frequently provide information useful in these matters, and that is certainly the case in my review of the current circumstances.  I believe that Mark Bunch's history, initiating with his Primary Care Physician, course of treatment, and circumstances following the motor vehicle accident are self evident, and consistent with his presentation of an individual unfortunately not recovered from concussion, and therefore manifesting Postconcussion Syndrome with neurological, cognitive, sensory, and psychological features.

I hope this information is of assistance.

Respectfully,

Anthony M. Ricci, PhD., ABPP (RP), PC
Diplomate, Rehabilitation Psychology
American Board of Professional Psychology

AMR/cb

Lincoln/Bunch 0204

Based on this information, please update the applicable systems appropriately, including PeopleSoft system.

Thank you for your assistance,

Gary Covington |Sr. Human Resources Generalist |Office. 458.225.9235|Fax: 541.500.8775

Cell: 541.690.6744|3581 Excel Drive Medford, OR. 97504| gary.covington@charter.com

From: Cortez, Robert J
Sent: Tuesday, February 13, 2018 7:35 PM
To: Trammell, Doyle D; Finn, Jody P; Covington, Gary; Allen, Grady P
Subject: Mark Bunch Accident

Doyle,

I'm currently with Mark Bunch at the Parkview Medical Center Emergency Room, in Pueblo, Co.

Mark was invloved in a vehicle accident at approximately 6.20 Pm. He was waiting for a light on US 50 West and Elizabeth Ave, when the vehicle in front of him reversed and backed into the front of his vehicle at a fast speed. When his vehicle was hit, Mark hit his head on the center of his steering wheel. The other driver took off, but Mark followed him, and got him to pull over one block later.

Mark called me, and informed what happenned, and he also called the Pueblo Police. When I arrived at the scene, the Pueblo Police were at the scene, and had concluded their investigation. They issued a citation to the other driver.

000313

Sent to OC
03/23/2018
by PM LLC

Lincoln/Bunch 0205

I had Mark call the ESIS Hotline, and he spoke with the Nurse. He described what had happenned, and they advised him to seek medical attention.

When Mark got out of his vehicle, he was wobbly on his feet, and unsteady. I assisted Mark to my vehicle, and drove him here to the Emergency Room. Mark pretty well collapsed when we got him out of my vehicle, and the Emergency Room staff brought a wheelchair out for him.

I'll send another email once he is seen by the medical staff, and let you know what they determine. I will do the Supervisor's Investigation Report and the Vehicular Accident Report and have them submitted within 24 hours.

I advised Doyle Trammell if what happenned after I received Mark's initial call. I called Doyle again after we arrived at the hospital. He advised me to keep him posted via email once we have more info from the Emergency Room.

Bob Cortez | Direct Sales Supervisor

719-345-4155 (Desk) 719-251-5782 (Cell)

117 S Greydene Ave, Canon City, CO 81212

Sent from my Verizon 4G LTE smartphone

The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment

000114

Sent to OC
03/23/2018
by PM LLC

**Lincoln/Bunch 0206**



**SHAKESHAFT-GORMAN**
······ LAW FIRM, LLP ······

| | | | |
|---|---|---|---|
| Kenneth J. Shakeshaft | • | Attorney at Law | **Main Office** |
| Joseph M. Gorman | • | Attorney at Law | Shakeshaft - Gorman Law Firm |
| Cindy Maddux | • | Paralegal | 627 North Weber Street, Suite 1 |
| Brandy Newton | • | Paralegal | Colorado Springs, CO 80903 |

June 10, 2021

Via facsimile: 603-334-5994

Lincoln Life Assurance Company of Boston
Attn: Appeal Review Unit
Group Benefits Disability Claims
P.O. Box 7213
London, KY  40742-7213

> RE:    Our client:    Mark Bunch
>           Claim No.:    8220685
>           Charter Communications, Inc.

To Whom It May Concern:

Please accept this as an appeal of the termination/denial of the claimant, Mark Bunch, long-term disability benefits. This information is addition to the previous information provided to Lincoln Life with our letter of June 12, 2019.  All the information supplied to Lincoln Life supports Mr. Bunch's disability.

On behalf of Mr. Bunch, we are submitting new information.

The information is as follows:

  a.    A detailed narrative report from specialist Dr. Anthony M. Ricci outlining Mr. Bunch's recent examination, diagnostics, diagnosis, symptoms and outlook.  Dr. Ricci confirms Mr. Bunch suffered a concussion from the car accident he was involved in which turned into Post Concussive Syndrome.  A review of Dr. Ricci's report confirms he met with and observed Mr. Bunch including his balance and walking difficulties. Dr. Ricci confirms Mr. Bunch underwent clinical testing which is outlined in Dr. Ricci's report and the testing results support the post concussive syndrome diagnosis.

  b.    In a second report from Dr. Ricci dated June 1, 2021, Dr. Ricci says Mr. Bunch is not malingering, or faking. Dr. Ricci also states Mr. Bunch is unable to work in any occupation at this time.

  c.    A copy of an email from the supervisor of Mr. Bunch who went to the accident scene. The supervisor – Mr. Cortez – notes in his email his observations of Mr. Bunch at the scene

PHONE 719.635.5886 · FAX 719.635.0966 · TOLL FREE 1.800.383.5886
WWW.SHAKESHAFTANDGORMANLAW.COM · OFFICE@SHAKESHAFTANDGORMANLAW.COM

**Lincoln/Bunch 0207**

which he described as "When Mark got out of his vehicle, he was wobbly on his feet, and unsteady. I assisted Mark to my vehicle and drove him here to the Emergency Room.  Mark pretty much collapsed when we got him out of my vehicle, and the Emergency Room staff brought a wheelchair out for him."

        d.      A copy of a photograph of Mr. Bunch which shows the head injury he suffered in the crash.  It is important to note this was not a "minor" crash. The crash occurred when the driver in front of Mr. Bunch put his car in reverse and backed into Mr. Bunch's car causing Mr. Bunch to hit his head. From the crash Mr. Bunch suffered injuries which include a concussion which is developed into a post concussive syndrome.

At the time of the crash, Mr. Bunch was employed full-time. He was employed as a Sales Rep. His annual income was approximately $103,698.71.

Since the crash, Mr. Bunch lost his job, lost his income and is now solely supported by Social Security disability. There is no motivation for Mr. Bunch to be on disability as the financial loss as he is suffering is extremely significant. There is no open personal injury claim as the person who hit Mr. Bunch and caused the crash had limited insurance coverage. There is no motivation for Mr. Bunch to be disability based on an argument that he is going to receive a large injury settlement.

At the time of the crash, Mr. Bunch was involved in a serious relationship with a significant other. These folks were planning to be married. As a result of the crash, and the impact on Mr. Bunch's health, his long-term relationship and plans to be married fell apart.  They are no longer together.

As one can see, this was not a minor accident. It has cause long-term injuries for Mr. Bunch. It has cost him his long-term personal relationship. It has cost him his financial security, his career and the high income he was earning.

We request the decision terminating Mr. Bunch's long-term disability benefits be reversed. It appears the basis of the decision is the document reviews by the unidentified physicians who assumed this was simply a minor accident. The facts do not support that underlying assertion.

There simply is no motivation for Mr. Bunch to continue on disability whether it's LTD disability or Social Security disability other than he has significant injuries which continue to impact him and cause him to be unemployable.

We are also awaiting a final report from Dr. Higginbotham, Mr. Bunch's treating physician. We request additional time to submit this report.

Sincerely,

*Kenneth J. Shakeshaft*

Kenneth J. Shakeshaft

Attachments

PHONE 719.635.5886 · FAX 719.635.0966 · TOLL FREE 1.800.383.5886
WWW.SHAKESHAFTANDGORMANLAW.COM · OFFICE@SHAKESHAFTANDGORMANLAW.COM

Lincoln/Bunch 0208



PAGE 17/17 * RCVD AT 6/18/2021 3:24:44 PM [Eastern Daylight Time] * SVR:VA1PWFAX101/4 * DNIS:6033345704 * CSID:eComFax Service * ANI:12486023158 * DURATION (mm-ss):11-37

Lincoln/Bunch 0209



Lincoln Life Assurance Company of Boston
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5704

| | |
|---|---|
| Date: June 18, 2021 | |
| To: KENNETH SHAKESHAFT<br>SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax: (719) 635-0966 | |
| From: Jane Daniell<br>Appeals Specialist<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-5704 | |
| Total Pages<br>(Including Cover):     3 | |
| RE:<br><br>Claim #:     8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0210**



Lincoln Life Assurance Company of Boston
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5704

June 18, 2021

Kenneth J. Shakeshaft
Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

Dear Kenneth Shakeshaft:

Lincoln Life Assurance Company of Boston (Lincoln) is responsible for managing claims for Long Term Disability (LTD) benefits under the Charter Communications, Inc.'s Group Disability Policy. We are writing in reference to Mark Bunch's claim for LTD benefits under the Policy.

We received your request for review of the recent claim determination on his LTD claim on April 15, 2021.  Your office requested an extension to submit medical information.  We wrote to you on May 4, 2021, advising you that Lincoln would allow an extension to provide documentation for Mr. Bunch's appeal.  We provided your office until June 14, 2021 to submit the information.  No additional information has been provided.

To assist us in evaluating Mr. Bunch's eligibility for benefits, we have referred his file for a medical review and assessment by a Board Certified Nurse.

We anticipate a response from the reviewing Board Certified Nurse no later than July 9, 2021.  If there is an unexpected delay in receiving a response, we will contact you.  Otherwise, we will proceed with our review of Mr. Bunch's appeal once the response is received.  We regret any inconveniences this delay may cause; however, the assessment is necessary to ensure a thorough review of Mr. Bunch's eligibility for benefits under the terms of the Policy.

In accordance with the Employee Retirement Income Security Act, under normal circumstances, you will be notified in writing of a final decision within 45 days from the date your request for review was received, excluding any days in which we are waiting for you to submit documentation.  We will contact you if there are special circumstances requiring a delay in Lincoln's response, and you will be notified of our decision no later than 90 days after the request for review was received.

**Lincoln/Bunch 0211**

If you have any questions regarding this matter, please contact me.

Sincerely,

Jane Daniell
Appeals Specialist
Phone No.: (888) 437-7611 Ext. 16393
Secure Fax No.: (603) 334-5704

2  of  2

**Lincoln/Bunch 0212**



Lincoln Life Assurance Company of Boston
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5704

| | |
|---|---|
| Date:  May 4, 2021 | |
| To:    KENNETH SHAKESHAFT<br>SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax:    (719) 635-0966 | |
| From:  Jane Daniell<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-5704 | |
| Total Pages<br>(Including Cover):     2 | |
| RE:<br><br>Claim #:     8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0213**



Lincoln Life Assurance Company of Boston
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5704

May 4, 2021

Kenneth J. Shakeshaft
Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

Dear Kenneth Shakeshaft:

Lincoln Life Assurance Company of Boston (Lincoln) is responsible for managing claims for Long Term Disability (LTD) benefits under the Charter Communications, Inc.'s Group Disability Policy. We are writing in reference to Mark Bunch's claim under the Policy.

This letter serves as a response to your letter dated April 7, 2021, (received on April 15, 2021) request for an extension. Lincoln will allow a 30 day extension from the May 15, 2021 deadline for Mr. Bunch's to submit all documentation in support of his claim. All additional documentation must be submitted on or before June 14, 2021.

For Lincoln to conduct a timely review of the appeal, we must receive confirmation of the complete appeal by June 14, 2021.  If no additional information is received by June 14, 2021, we will proceed with our appeal review and make a final determination based on the information currently contained in Mr. Bunch's file.

If you have any questions regarding this matter, please contact me.

Sincerely,

Jane Daniell
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16393
Secure Fax No.: (603) 334-5704

1  of  1

**Lincoln/Bunch 0214**

# Lincoln Financial Group Appeal Referral

**Appeal Referral From:    WALMART**

| | | |
|---|---|---|
| Office: 88D | Manager: BILL, ERIN | Case Mgr: ABRAMS-WEAVER, COREY |

Claimant Name: MARK  B  BUNCH          Claim #: 8220685

Occupation (Job Title): SALES REP          Date Sent: 4/27/2021

Diagnosis: H50.53 Vertical heterophoria,  H52.2 Astigmatism

| | | |
|---|---|---|
| Date of Disability: 2/14/2018 | Date Benefits Began: 8/15/2018 | |
| Maximum Duration: 9/16/2030 | Paid Through: 11/9/2020 | |
| Date of Denial or (DB451): 11/10/2020 | Date Appeal Received: 4/15/2021 | |

*This is the date that the full appeal was received by the Field Claim Office*

Policyholder/Self-Insured Plan Holder: CHARTER COMMUNICATIONS, INC.

Product: LTD          Funding: CON

Is Claimant Eligible for LTD? Y

Erisa or Non-Erisa? ERISA Plan

Document Locations
- ☑ Paperless
- ☐ Bilingual - translation complete
- ☐ Paper File
- ☐ Surveillance disk(s)

*Please be sure to send all claim paper files & all surveillance disks to the ARU.*

ER Contacts/CC (if applicable):

na

ER Contact Addresses (including email address):

na

Phone No. 0000000000          FAX No. 0000000000

Account Specific or Unique Contract Issues / Additional Info:

LTD Appeals:    Service Level (for ASO see the listing below): FI    Appeal Receipt Timeline (non-ERISA): 180 days    Appeal  Decision Timeline (non-ERISA): 45+45 days    Employer Communications (please note if email or copy of the letter):  o Receipt: None  o Decision: None

**Lincoln/Bunch 0215**



**SHAKESHAFT-GORMAN**
LAW FIRM, LLP

| | | |
|---|---|---|
| Kenneth J. Shakeshaft | • Attorney at Law | **Main Office** |
| Joseph M. Gorman | • Attorney at Law | Shakeshaft - Gorman Law Firm |
| Cindy Maddox | • Paralegal | 627 North Weber Street, Suite 1 |
| Brandy Newton | • Paralegal | Colorado Springs, CO 80903 |

April 7, 2021

Via facsimile: 603-334-5994

Lincoln Life Assurance Company of Boston
Attn: Appeal Review Unit
Group Benefits Disability Claims
P.O. Box 7213
London, KY  40742-7213

> RE:    Our client:    Mark Bunch
> Claim No.:    8220685
> Charter Communications, Inc.

To Whom It May Concern:

Please accept this as an Appeal of the denial (in the letter of November 16, 2020) of Mr. Bunch's claim for LTD benefits.

Our office represents Mark Bunch regarding the above referenced claim.

Pursuant to Lincoln Life Assurance Company of Boston's denial of benefits' correspondence dated November 16, 2020, Mr. Bunch has 180 days to request of review this denial, making the request due May 14, 2021.

At this time, our office would request a 30 days extention to provide any additional information in support of this appeal.

Please confirm Lincoln Life's deadline for the Request for Review of May 14, 2021, and confirm the requested 30 days extension for receipt of the Request for Review.

Sincerely,

*Kenneth J. Shakeshaft*

Kenneth J. Shakeshaft

PHONE 719.635.5886 · FAX 719.635.0966 · TOLL FREE 1.800.383.5886
WWW.SHAKESHAFTANDGORMANLAW.COM · OFFICE@SHAKESHAFTANDGORMANLAW.COM

**Lincoln/Bunch 0216**

00001 04/15/2021 01027636  001 001

**Lincoln/Bunch 0217**

## OVERPAYMENT REFERRAL (Collection Agency and Closed File Administration)

**Instructions:** Written approval from the ASO customer is required prior to referral completion. All overpayments and all applicable claim note(s) must be entered into SystemOne prior to submitting this referral.

*Referral Type:*

☑ Collection Agency

☑ Closed Claim (Operations Analysis)

The ASO customer must know that a Collection Agency recovery fee of 25 - 30% of the total overpayment collected will be incurred by the ASO customer.

All closed claims with outstanding WC or Subrogation liens should be referred to the Subrogation Unit.

| | |
|---|---|
| Today's Date: | **1/4/2021** |
| Case Managers Name | **Kirstie McGary** |
| Office #: | **0096** |
| Phone: | **(888) 437-7611** |
| Extension: | **16383** |

Claim Number(s): **8220685**

Reason(s) For Overpayment:
☐ Social Security  ☐ Pension  ☐ RTW
☐ Partial Disability  ☐ Stat Benefits  ☐ WC

**Document Location**
☑ Document List
☐ Correspondence
☐ Paper File

| | |
|---|---|
| Total SystemOne Overpayment Due Amount: | **$47,668.16** |
| Total ASO or RBO Takeover Overpayment: | |
| **Less Attorney Fees** | |
| Total Overpayment to be Collected: | **$47,668.16** |
| Date Overpayment Incurred: | **6/4/2020** |
| Date Overpayment Communication Sent to Claimant | Letter 1: **6/4/2020** |
| | Letter 2: **11/20/2020** |
| Future Benefit Reduction Recovery Amount (if any): | |

| | Weekly | Bi-weekly | Monthly |
|---|---|---|---|
| Date of next payment: **N/A** | ☐ | ☐ | ☑ |

| | |
|---|---|
| Date of last claimant phone contact (or attempt): | **12/14/2020** |
| Claim Closure Date (if applicable): | **11/10/2020** |
| Claim Closure Reason (if applicable): | **NOAO** |
| Is Claim Closure in Appeal? (if applicable): | ☐ Yes  ☑ No |

**DEBTOR**

| | |
|---|---|
| Claimant Name: | **MARK  BUNCH** |
| Claimant Social Security Number: | Claimant Telephone Number: |
| Claimant Address: | Street 1 |
| | Street 2 |
| | City, St, Zip |

| | |
|---|---|
| Customer Name: | **CHARTER COMMUNICATIONS, INC.** |
| Product Type (STAT, STD, LTD): | **LTD** |
| Funding Type (ASO w/checks or Fully Insured: | **FI** |

*Comments (if any)*

*For Operations Analysis Use Only*

| | |
|---|---|
| *Collection Agency Assigned:* | *Record #* |
| *Date of Referral:* | *File Recommendation/Notes:* |
| *Referred by:* | |
| *Date of Closure:* | |

DIS OPS ANAL-OP MGT 1 (7/99)

**Lincoln/Bunch 0218**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, ne 68172-9688
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-3516

| | |
|---|---|
| Date:  December 14, 2020 | |
| To:  SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax:  (719) 635-0966 | |
| From:  Kirstie McGary<br>Recovery Specialist II, LFG<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 334-3516 | |
| Total Pages<br>(Including Cover):  4 | |
| RE:<br><br>Claim #:  8220685<br>Claimant:  Mark Bunch<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0219**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, ne 68172-9688
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-3516

December 14, 2020

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

This letter is regarding your client's outstanding overpayment with Lincoln Life Assurance Company of Boston, in the amount of $47,668.16. As you are aware, this overpayment is the result of his Social Security award. While his disability claim remained open, your client's benefit was applied to this balance.

We have been notified that your client's disability claim has recently closed.

Please remit the outstanding balance of $47,668.16, payable to Lincoln Life Assurance Company of Boston to the following address:

**Refund/Recoveries**
**Group Protection Disability Claims**
**Lincoln Life Assurance Company of Boston**
**PO Box 26028**
**Greensboro, NC 27420-6028**

**Please ensure your payment contains your claim number provided in this letter.**

Lincoln Life Assurance Company of Boston can also process a one-time debit from your account. If you prefer this method of refund, you may complete the enclosed **Authori ation to Debit** form and return it via fax back to my attention at 603-334-3516 or the form can be emailed to me at kirstie.mcgary@lfg.com; or contact our office at 888-437-7611 extension *16383 to process a phone debit payment.

1  of  2

**Lincoln/Bunch 0220**

If you are unable to remit payment in full, please contact our office by December 28, 2020 to make appropriate arrangements to refund this amount.

If we do not receive payment or a response by December 28, 2020, under the terms of your client's policy, Lincoln Life Assurance Company of Boston reserves the right to forward his file to an external Collection Agency.

If you have any questions regarding this matter, please contact me.

Sincerely,

Kirstie McGary
Recovery Specialist II, LFG
Phone No.: (888) 437-7611 Ext. 16383
Secure Fax No.: (603) 334-3516

Attachments:   8220685-RECOVERY/REPAYMENT-CORRESPONDENCE-11.20.2020

2  of  2

**Lincoln/Bunch 0221**

**LINCOLN LIFE ASSURANCE COMPANY OF BOSTON**
**Group Protection Disability Claims**
**Refund/Recoveries** PO Box 7213
London, KY 40742-7213
888-437-7611

**One Time Debit Payment Authorization Form**

Sign and complete this form to authorize Lincoln Life Insurance Company of Boston to make a one-time debit to your account listed below.

By signing this form, you give us permission to debit your account for the amount indicated on or after the indicated date. This is permission for a single transaction only and does not provide authorization for any additional unrelated debits or credits to your account.

**Please complete the information below:**

**Lincoln Life Assurance Co Disability Claim Number:** _____

I _____ authorize Lincoln Life Assurance Company of Boston to debit my
      (full name)

account at the financial institution listed below for _____ on or after _____.
                                                      (amount)                  (date)

This authority will remain in effect until Lincoln Life Assurance Company of Boston is notified by me (us) in writing to cancel it in such time to afford Lincoln Life Assurance Company of Boston and the Financial Institution a reasonable opportunity to act on it.

Billing Address _____        Phone# _____

City, State, Zip _____        Email _____

| |
|---|
| Account Type: ☐ Checking    ☐ Savings |
| Financial Institution Name    _____ |
| Financial Institution Address    _____ |
| Routing Number   _____ |
| Account Number   _____ |

SIGNATURE _____        DATE _____

I authorize the above-named business to debit the account indicated in this authorization form according to the terms outlined above. This payment authorization is for the goods/services described above, for the amount indicated above only, and is valid for one time use only. I certify that I am an authorized user of this account and that I will not dispute the payment with financial institution; so long as the transaction corresponds to the terms indicated in this form.

**Lincoln/Bunch 0222**

**LINCOLN LIFE ASSURANCE COMPANY OF BOSTON**
**Group Protection Disability Claims**
**Refund/Recoveries** PO Box 7213
London, KY  40742-7213
888-437-7611

## One Time Debit Payment Authorization Form

Sign and complete this form to authorize Lincoln Life Insurance Company of Boston to make a one-time debit to your account listed below.

By signing this form, you give us permission to debit your account for the amount indicated on or after the indicated date.  This is permission for a single transaction only and does not provide authorization for any additional unrelated debits or credits to your account.

**Please complete the information below:**

**Lincoln Life Assurance Co Disability Claim Number: _____**

I _____ authorize Lincoln Life Assurance Company of Boston to debit my

      (full name)

account at the financial institution listed below for _____ on or after _____ .

                                  (amount)                         (date)

This authority will remain in effect until Lincoln Life Assurance Company of Boston is notified by me (us) in writing to cancel it in such time to afford Lincoln Life Assurance Company of Boston and the Financial Institution a reasonable opportunity to act on it.

Billing Address _____      Phone# _____

City, State, Zip _____      Email _____

Account Type: ☐ Checking    ☐ Savings

Financial Institution Name _____

Financial Institution Address _____

Routing Number _____

Account Number _____

SIGNATURE _____    DATE _____

I authorize the above-named business to debit the account indicated in this authorization form according to the terms outlined above. This payment authorization is for the goods/services described above, for the amount indicated above only, and is valid for one time use only. I certify that I am an authorized user of this account and that I will not dispute the payment with financial institution; so long as the transaction corresponds to the terms indicated in this form.

**Lincoln/Bunch 0223**

Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, ne 68172-9688

MR. MARK BUNCH

**Lincoln/Bunch 0224**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, ne 68172-9688
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-3516

November 21, 2020

Mr. Mark B. Bunch

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685

Dear Mr. Mark Bunch:

This letter is regarding your outstanding overpayment with Lincoln Life Assurance Company of Boston, in the amount of $47,668.16.  As you are aware, this overpayment is the result of your Social Security award.  While your disability claim remained open, your benefit was applied to this balance.

We have been notified that your disability claim has recently closed.

Please remit the outstanding balance of $47,668.16, payable to Lincoln Life Assurance Company of Boston to the following address:

Refund/Recoveries
Group Protection Disability Claims
Lincoln Life Assurance Company of Boston
PO Box 26028
Greensboro, NC 27420-6028

Please ensure your payment contains your claim number provided in this letter.

Lincoln Life Assurance Company of Boston can also process a one-time debit from your account. If you prefer this method of refund, you may complete the enclosed Authorization to Debit form and return it via fax back to my attention at 603-334-3516 or the form can be emailed to me at kirstie.mcgary@lfg.com; or contact our office at 888-437-7611 extension *16383 to process a phone debit payment.

If you are unable to remit payment in full, please contact our office by December 11, 2020 to make appropriate arrangements to refund this amount.

If we do not receive payment or a response by December 11, 2020, under the terms of your policy,

1  of  2

**Lincoln/Bunch 0225**

Lincoln Life Assurance Company of Boston reserves the right to forward your file to an external Collection Agency.

If you have any questions regarding this matter, please contact me.

Sincerely,

Kirstie McGary
Recovery Specialist II, LFG
Phone No.: (888) 437-7611 Ext. 16383
Secure Fax No.: (603) 334-3516

Attachments:   8220685-RECOVERY/REPAYMENT-CORRESPONDENCE-11.20.2020

2  of  2

**Lincoln/Bunch 0226**

**LINCOLN LIFE ASSURANCE COMPANY OF BOSTON**
**Group Protection Disability Claims**
**Refund/Recoveries** PO Box 7213
London, KY 40742-7213
888-437-7611

## One Time Debit Payment Authorization Form

Sign and complete this form to authorize Lincoln Life Insurance Company of Boston to make a one-time debit to your account listed below.

By signing this form, you give us permission to debit your account for the amount indicated on or after the indicated date. This is permission for a single transaction only and does not provide authorization for any additional unrelated debits or credits to your account.

**Please complete the information below:**

**Lincoln Life Assurance Co Disability Claim Number:** _____

I _____ authorize Lincoln Life Assurance Company of Boston to debit my
       (full name)

account at the financial institution listed below for _____ on or after _____.
                          (amount)               (date)

This authority will remain in effect until Lincoln Life Assurance Company of Boston is notified by me (us) in writing to cancel it in such time to afford Lincoln Life Assurance Company of Boston and the Financial Institution a reasonable opportunity to act on it.

Billing Address _____       Phone# _____

City, State, Zip _____       Email _____

---

Account Type: ☐ Checking     ☐ Savings

Financial Institution Name     _____

Financial Institution Address     _____

Routing Number     _____

Account Number     _____

---

SIGNATURE _____     DATE _____

I authorize the above-named business to debit the account indicated in this authorization form according to the terms outlined above. This payment authorization is for the goods/services described above, for the amount indicated above only, and is valid for one time use only. I certify that I am an authorized user of this account and that I will not dispute the payment with financial institution; so long as the transaction corresponds to the terms indicated in this form.

**Lincoln/Bunch 0227**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

| | |
|---|---|
| **Date:** November 16, 2020 | |
| **To:** SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE 202<br>COLORADO SPRINGS CO 80920 | |
| **Attn:** Rep for Mr. Mark Bunch | |
| **Fax:** (719) 635-0966 | |
| **From:** Corey Abrams-Weaver<br>Ltd Specialist II<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 334-5994 | |
| **Total Pages**<br>**(Including Cover):** 11 | |
| **RE:**<br><br>Claim #: 8220685<br>Claimant: Mark Bunch<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0228**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

November 16, 2020

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

Lincoln Life Assurance Company of Boston is responsible for managing claims for Long Term Disability (LTD) benefits under Charter Communications, Inc.'s Group Disability Policy.  We are writing in reference to Mark Bunch's claim for LTD benefits under the Policy.

We have completed a thorough review of Mr. Bunch's eligibility for benefits and have determined that benefits are not payable beyond November 9, 2020. Charter Communications, Inc. s LTD Policy requires that to receive benefits Mr. Bunch must meet the following definition of disability:

"*Disability*" or "*Disabled*" means:

1.  For persons other than pilots, co-pilots, and crewmembers of an aircraft:

    i.    that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

    ii.   thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

2.  With respect to Covered Persons employed as pilots, co-pilots and crewmembers of an aircraft:

    "*Disability*" or "*Disabled*" means as a result of Injury or Sickness: (a) the Covered Person cannot perform the material and substantial duties of his own occupation; and (b) after benefits have been paid for 12 months, the Covered Person is unable to perform the Material and Substantial Duties of Any Occupation

1  of 10

**Lincoln/Bunch 0229**

**"*Any Occupation*"** means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

Mr. Bunch has been receiving LTD benefits for his disability since August 15, 2018.

In order to evaluate whether or not he continued to meet the above definition of disability, we requested medical information from his physician(s).

Mr. Bunch submitted a claim for a traumatic brain injury with post concussion and his claim file contains the following medical documentation:

Medical Records Reviewed By Neurology, Neuropsych, and Opthalmology:

Mark Abboit, MD/Diagnostic Radiology, on 02/13/2018;
Steven Wayne Olson, MD/Family Medicine, on 03/21/2018 to 04/3/2018;
David R. Wilson, MD/Emergency Medicine, on 02/13/2018;
Dennis A. Helffenstein, PhD, C.R.C/Licensed Psychologist, on 05/03/2018;
Thomas W. Higginbotham, DO, FAADEP/Preventive Medicine, extending from 05/03/2018 to 02/25/2020;
Ethan J. Freedman, PT/Physical Therapist, extending from 05/31/2018 to 06/11/2018;
Herman Staudenmayer, PhD/Psychologist, on 08/13/2018; Julia Brinley, MD/Neurologist, extending from 10/31/2018 to 03/11/2019;
Michael Saxerud, OD/Optometry, on 11/02/2018; Carolyn K. Lyon, CCC-SLP/Speech Language Pathologist, extending from 11/09/2018 to 04/24/2019;
Robert Swotinsky, MD/Occupational Medicine, on 04/24/2019.

Ap Contact:
Called Dr. Higginbottom on Tue 08/11 1:50PM, left a message at Occupational & Environmental Health with receptionist, Bernadette H.

Called Dr. Higginbottom on Wed 08/12 2:07PM, left a message at Occupational & Environmental Health on the front office voicemail.

Medical Records Reviewed By Opthalmalogy: Medical documents referred by Lincoln Financial Group as of today's date were reviewed, including the most recent medical treatment record in the file which is: 02/25/2020 OV, AP Dr. Thomas Higginbottham and latest office visit, 06/18/2020 confirmed by AP phone conversation but not in the chart.

Name: Dr. Higginbotthom, Phone Number: - (719) 260 8190 ex ----Reviewer had teleconference with AP Dr. Thomas Higginbotham on 08/03/20 at 11:54amET Monday about claimant Mark Bunche Claim# 8220685and his case. I identified myself as an ICP working for LFG and he asked me   is this in regards (to) long-term disability  and I replied I was not sure because my focus was strictly on the medical issues not the insurance classification. The AP spoke in a very low modulated voice and on a few occasions asked me to repeat things because he had difficulty hearing or understanding them, not hearing the words but their intonation. The AP is  treating  the claimant for  visual-spatial disorientation  as his primary diagnosis. He last saw the claimant on 06/18/20 and at

**Lincoln/Bunch 0230**

that visit claimant s blood pressure was 150/94. I asked what specific treatments, procedures, physically employed procedures he used to treat (excluding hypertension) the claimant during the office visits. His response was a very slow and with vague delivery, but he obliquely referenced some early neck maneuvers and repeatedly referred to  neural-optometry  He was possibly checking his paper charts as he does not use electronic medical record, but his notes are well typed. He explained to me that he was issues behind the globe (eyeball) in the visual pathway specifically  the occipital cortex  where there were organic lesions. I reminded him that a CAT scan and an MRI did not demonstrate findings in the occipital cortex, but there were some questions about findings suggestive of demyelinating disease. We re-discussed the issue of occipital lobe lesions and I again reaffirmed the negative finding for organic lesions in the occipital cortex that would explain causality for any claimant  symptoms. The AP did not assent to this view and appears to believe that a  PET scan  would demonstrate the organic lesions in the occipital cortex. We discussed the issue of driving and the AP is firmly convinced that the claimant cannot drive. He stated that claimant was driven to the last appointment. Reviewer asked why he cannot drive, and AP stated the spatial disorientation/balance theory. He stated that he has observed claimant s imbalance both directly and when the claimant was unaware of observation. After AP had some re-referencing to
 Neural-optometry  eviewer reminded the AP that when the claimant was treated for convergence insufficiency with prismatic glasses there was some therapeutic response with an improved near point of convergence (NPC) and a documented decrease in symptoms. AP  response was not direct, noninformative, and noncommittal. Instead of discussing why the convergence improved with prism glasses decreasing symptoms, AP avoided the topic by segueing into phraseology of  Vision therapy or the claimant s multitude of symptoms. At one point in the discussion this reviewer did mention that monocular vision does not preclude occupational functionality assuming the specific task does not require stereopsis/depth perception. Monocular persons can drive by almost all state standards assuming good vision in the functioning eye. The AP seemed somewhat flustered by this observation/suggestion, but that is reality. The AP clearly appears to believe in his assessment and a certain social moralism could fuel his cause because he repeatedly stated the problem was no insurance and that should be put in reviewer s report. Reviewer asked about others that he has treated with similar or exact condition especially persons with physical damage (documented by imaging) from war injuries. This part of the conversation resulted in a discourse tinged with the social aspect of his practice in that he took a great many patients who did not have any medical insurance and this fact resulted in claimant s inability to obtain or diagnostic testing that would prove APs hypotheses about spatial disorientation. I asked AP if claimant was paying for each visit and after a pause the answer was that he was paying for each visit. We concluded our discussion pleasantly and this reviewer made no suggestions or recommendations.


So we could further understand what was preventing you from returning to your pre-disability activities, we consulted a physician, Board Certified in Opthalmology.

Based on records received the Physician opined the following:

"This review is from the ophthalmology perspective only and does not address the specific neuro-psychological aspects of possible  vision  issues or some of the soft neurologic signs/symptoms that may be remotely related to vision symptoms. This review addresses only the standard and conventionally accepted medical signs, symptoms and treatments for ophthalmic conditions.
The claimant has had a concussion without loss of consciousness from MVA in February 2018 and

**Lincoln/Bunch 0231**

has been treating with AP Dr. Thomas Higginbotham O.D. since 05/03/18 until OV 02/25/20, the most recent examination in the chart. He last saw AP on June 18, 2020 but the is not in the file documents yet. The diagnosis of convergence insufficiency (CI) was made by Dr. Saxerud O.D. the optometrist, after finding a remote near point of convergence 20 (20 inches) and is supported by the medical record. The claimant was treated appropriately by prescribing prism glasses on 07/13/18 and appropriately orthoptic exercises were recommended but it was unclear if they were performed. The claimant returned on 8/17/18 and 09/21/18 and during the September exam the near point of convergence had improved to 4 inches which is near-normal for his age. This finding should be expected to improve symptoms and visual functionality. By his last exam on 11/21/18 symptoms have improved with reported better depth perception.

The impairing diagnosis is convergence insufficiency (CI) of mild level of severity and is supported in the medical record. It appears the CI is somewhat responsive to traditional standard treatment with prismatic glasses and possibly with orthoptic training exercises. Convergence insufficiency is most often treatable but even if unresponsive it is not disabling vocationally unless the specific occupation demands a high degree of stereopsis and depth perception. If all else fails with treatment of CI, the person can always resort to the monocular state with occlusion of one eye and function v isually. For most occupations including those that require reading and computer usage, a monocular person has the capacity for occupational functionality if they have good vision in the better eye. The Claimant has 20/20 vision in both the right and left eye so he could occlude either eye and still have capability for work. Convergence insufficiency is not considered a significantly impairing diagnosis occupationally unless there is an impingement on the capacity to perform the occupational functionality in this case reading seeing computer work. The person with CI could have some visual fatigue when concentrating in the reading seeing computer work. The claimant s occupation is largely sedentary status, and a substantial portion is driving to appointments to engage in sales conversation. The impairing diagnosis does allow the claimant to have the capacity for occupational functionality in the sedentary status of computer/reading and driving given the following R and Ls with accommodations noted.

The following restrictions and limitations apply for CI in this case: no use of cranes or forklifts, no specific jobs that require high degree of stereopsis/depth perception, no use of industriali ed motor carts equipment movers, no heights, no ladders, no extreme overhead reaching, use of computer work is limited to a work period of one hour followed by a 10minute work break then repeat. The period of 10 minutes is to allow resting the eyes and local/personal orthoptic exercises e.g. pencil push-ups. This cycle of one hour on, 10 minutes off repeat, does not include driving which uses the far vision rather than the near vision that brings on the symptoms of convergence insufficiency. The claimant is restricted from extremely intense lighting/high intensity fluorescent lighting and strobe lighting. The claimant meets the DMV driving standards requirement. There are no restrictions from driving from an ophthalmology perspective. Any driving restrictions (or lack of restrictions), should be evaluated by neuropsychology and occupational medicine. The duration of R and Ls and accommodations is one year with reassessment at that time.

The second impairing diagnosis is visual disturbance unspecified, relates to the symptoms of unformed images, photophobia, reading issues, headache, spatial disorientation and blurred vision among others for this claimant. The AP categori es much of the symptoms as visual spatial disorientation for which the treatment at each visit seems to be observation. The claimant has been observed by AP swaying from side to side, head forward, avoiding light, and with apparent cognitive issues manifested as an inability to answer very simple questions with some type of

**Lincoln/Bunch 0232**

irregular speech. There has been no therapeutic intervention for these manifest behaviors other than recording them. The claimant symptoms are not correlated with any organic lesions by imaging studies previously done (CT scan, MRI with and without contrast). Additional clinical examinations repeatedly by AP, the  neurooptometrist  the medically trained neurologists and Occ./Rehab. Physician specialists do not show convincing pathologic eye movements e.g. nystagmus, vertical nystagmus, skew deviation, or pathophysiologic pupil abnormalities e.g. Horner  syndrome/pupil.

There are no convincing correlations between these diffuse, variable and vague symptoms/mannerisms and any defined medical organic, pathophysiologic finding on testing or examination assuming the imaging studies are in fact correctly interpreted. In conclusion the diagnosis of visual disturbance, unspecified/visual disorientation is not supported by medical record in terms of a pathophysiologic etiology. The claimant has 20/20 visual acuity in each eye, a normal ocular examination by the optometrist, purportedly normal visual field testing, all of which show that the diagnosis is not supported by record. From an ophthalmology perspective no restrictions and limitations can be determined because the impairing diagnosis is not specific, determined and not causally related to organic pathophysiology."

So we could further understand what was preventing you from returning to your pre-disability activities, we consulted a physician, Board Certified in Neurology.

Based on records received the Physician opined the following:

"The claimant has no primary impairing diagnosis.  In conclusion, the available medical information demonstrates that the claimant reportedly suffered a concussion in the accident in February 2018. Whilst the presented history and reported symptoms on initial evaluation may indeed be seen as consistent with concussion, there was no loss of consciousness, there was no di  iness or nausea initially, and the descriptions of the accident were mild. Diagnostic imaging was normal. There is no medical evidence to support any significant concussion in February 2020. At best, a very mild concussion may be supported. It is reported that the claimant then developed post-concussive syndrome. Some reports subsequently perplex this diagnosis into a traumatic brain injury, which is not so. Whilst concussion may indeed be described as a very mild form of a brain injury, post-concussive syndrome is in no way a traumatic brain injury. Such descriptions and indications mislead to believe as if the claimant has a permanent brain damage, which then results in all of the reported issues. This is not so; the claimant has no brain damage. Post-concussive syndrome is a condition essentially resolvable with no significant treatment, but simply with time. A period of one year is more than sufficient for resolution of these issues even in the most severe instances. Oddly enough, the claimant reports most significant symptoms and is identified to have most significant examination findings only one year after the accident. It has been described above that firstly, the severity of the reported symptoms and the symptoms themselves are inconsistent with a post-concussive syndrome; secondly, the symptoms and presented findings are inconsistent within themselves   the claimant is identified to have mild issues after the accident, which then somehow developed into severe issues one year later, and were again mild by early 2020; thirdly, the fact that the condition is reported to go on for more than two years after a quantifiable mild motor vehicle accident is inconsistent with the condition that essentially resolves in one year even in very severe cases. As also described above, the medical information demonstrates on several measurable tests that the claimant is prone to exaggeration, over-reporting and possibly malingering. On his initial visit with the neurologist, the claimant is not truthful concerning the loss of consciousness. There are notes that some surveillance video (not provided for this review) has shown that the claimant was

5  of  10

**Lincoln/Bunch 0233**

driving, albeit for a short distance, back in 2018   an ability that is completely inconsistent with the reported issues. Medical reports consistently note that the claimant shows lack of effort. The scores and findings that the claimant obtains during examinations/evaluation are completely inconsistent with his overall presentation. Finally, after the review of the medical information, and especially of the recent reports, there is no demonstration of any motivation by the claimant to receive any treatment. The claimant only follows up with Thomas W. Higginbotham, MD (Occupational Medicine), paying for the visits out of his pocket, who refills his blood pressure medications. When asked when he last saw a neurologist, the claimant does not even know. The claimant s preference to pay out of pocket for a visit with a physician reported to be a Worker s Compensation physician, but lack of desire to obtain a visit with a neurologist for treatment leads to a question of what exactly the claimant s motivation is. Finally, and most importantly, all the issues reported by the claimant may be measurably demonstrated by quantifiable testing, such as for example VNG/vestibular testing for reported balance issues. However, there is not a single such testing result available. As such, taking into consideration the claimant s evident presentation of symptom exaggeration and over-reporting, the fact that some of the examination findings are inconsistent and questionable, the fact that recent examinations and examinations immediately after the accident only identify mild issues that are not indicative of true functional deficits, the fact that there is no quantifiable testing for the reported issues available, the medical information does not provide clear and convincing medical evidence of ongoing impairment as of 3/1/20 and beyond. Concerning the concerns of multiple sclerosis, please see answers to questions 4 and 7 below. Briefly, whilst some the reported symptoms may be seen as consistent with multiple sclerosis, there is no full consistency and there are no definite findings to support existence of multiple sclerosis. It should be noted that there are brief indications of adjustment disorder/somati ation disorder noted within the medical records. It is possible that the claimant s issues, which are additionally exaggerated by the claimant, could be stemming from conditions of adjustment disorder/somati ation disorder. The presently available medical information, however, does not provide clear and valid medical evidence of any true ongoing deficits. Adjustment disorder/somati ation disorder are psychiatric conditions and the primary difficulty associated with these is to determine if symptoms are malingered or are indeed true. This diagnosis and this condition are outside of the scope of practice of neurological review and addressing these from neurology standpoint is inappropriate. Therefore, I respectfully defer further consideration of this to the psychiatry specialist, as this is outside my scope of practice. "

So we could further understand what was preventing you from returning to your pre-disability activities, we consulted a physician, Board Certified in Neuropsychology.

Based on records received the Physician opined the following:

" The results of these remote assessments do not offer convincing evidence regarding the claimant s actual cognitive and emotional/behavioral functioning. On 06/01/18 (Dennis Helffenstein, PhD: Neuropsychological Report) the claimant performed as follows on validity measures: VSVT   Easy Subtest 20/24 (pass), forced choice recognition 6/24 and far below chance and concerning for intentional lack of effort   total score of 26/48 is a questionable score. TOMM   trial 1 22/50 (borderline pass), trial 227/50 well below cutoff of 45/50, retention trial 24/50 (fail). Testing was then discontinued as it was stated that it was evident that the examiner was not going to be able to obtain a valid neuropsychological profile. Although the claimant reported headache and shoulder pain on date of testing, in addition to reporting fatigue, poor sleep, and chronic pain   factors that the examiner supports are possibly explanatory for the failure of validity measures, there are no findings to convincingly indicate the claimant s actual cognitive functioning. Additionally, the claimant

6  of 10

**Lincoln/Bunch 0234**

reported BDI = 45 (examiner notes that after taking into account residual effects of PCS, moderate depression is likely indicated), PCL5 79/80. The score on the PCL5 is significantly overreported/exaggerated.

While the claimant reported headache and shoulder pain on date of testing, in addition to reporting fatigue, poor sleep, and chronic pain, this does not provide an explanation as to why he exaggerated considerably on the PCL5. As the PCL5 is extremely questionable in combination with failed cognitive validity measures, I am unconvinced that the results of the BDI are valid and representative of his actual emotional functioning.

Then, on 08/06/18 (Herman Staudenmayer, PhD) the claimant again provided noncredible responses indicating significant overreporting of somatic, cognitive and emotional symptoms on the MMPI (Fr = 120), rendering the protocol invalid. As there is again significant exaggeration on the MMPI, I am unconvinced that his PCL5 and SCAT2 scores on this assessment are valid. The claimant scored 20/30 on the MoCA however the examiner notes that MSE suggests exaggeration and adopting the sick role, and objective findings note no word finding difficulty, he was alert and attentive, immediate and remote memory intact, fund intact, no signs of thought disorder or psychosis, and his thought process was coherent, logical and goal directed. The MoCA does not have a validity component, as this is a screening measure. Furthermore, examiner notes that during the interview he showed no lapses in thinking or impaired cognitive processing. As such, this assessment also does not convincingly represent the claimant s actual cognitive or emotional function. What is notable is that as of the present date, over two years post injury, there has been no effort to re-assess the claimant  neuropsychological functioning with a comprehensive assessment featuring an extensive protocol of both stand-alone and embedded validity measures for both psychological and cognitive domains, as is expected due to the above-noted performances.

Due to validity failures and significant overreporting of cognitive symptoms, with a lack of repeat assessment (which is certainly expected in such a case), I am unable to find convincing evidence of functional cognitive deficits secondary to TBI or another etiology that interferes with or limit/restrict working. Please note that this does not automatically indicate that there is an express absence of cognitive impairment, but rather the available evidence is inconclusive."

Additionally, his file was referred to a Vocational Specialist to conduct a vocational analysis of his current capabilities, training, education, and experience.  The review identified his transferable skills as:

Skills & Abilities: Using basic math skills to total costs, make change, and compute percentages; keeping records of sales, customers contacted, and expenses incurred; demonstrating and selling products; completing sales forms and time payment contracts; talking easily and persuasively to people; and being physically active and alert. Analy ing and interpreting mathematical information in written or diagrammatic form; speaking to large groups and writing clearly and authoritatively; making decision based on personal experience and judgment as well as verifiable facts and figures; planning long range or future projects; directing work of others; working with complex financial and statistical data; and dealing with individuals and groups of people with diverse interests.

**Lincoln/Bunch 0235**

Based on this information Mr. Bunch has the ability to perform the following occupation(s):

| Occupation | National Monthly Wage |
| --- | --- |
| Manager, Sales | $10,554.26 |
| Fund Raiser I | $9,682.40 |
| Supervisor of Communications | $9,219.60 |

Based on our review of the information contained in his claim file we have determined that Mr. Bunch can perform, with reasonable continuity, the material and substantial duties of the above occupation(s) based on his capacity and skill level.

Therefore, he does not meet Charter Communications, Inc. s definition of disability beyond November 9, 2020 and we must deny his claim for further benefit consideration.  Benefits will be paid through November 9, 2020, and his claim is closed as of November 12, 2020.

Any pending application(s) for benefits that are considered an offset under the disability Policy continue to be applicable to Mr. Bunch's claim. If benefits are awarded retroactive to his period of disability with Lincoln Life Assurance Company of Boston, Mr. Bunch is expected to repay the amount of any other benefit he would have received during the time period that he received disability per the language of the disability Policy. Should Lincoln Life Assurance Company of Boston receive notification of any such award, a representative from our Financial Review Services will notify him regarding any repayment due.

In our review of Mr. Bunch's claim, Lincoln Life Assurance Company of Boston has fully considered the Social Security Administration s ruling to approve Social Security Disability benefits. It should be noted, however, that while we have fully considered the Social Security Administration s ruling, the decision by the Social Security Administration does not determine entitlement to benefits under the terms and conditions of Charter Communications, Inc.'s Policy. Moreover, Lincoln Life Assurance Company of Boston has obtained and considered records that were not considered by the Social Security Administration in its determination process.

This claim determination reflects an evaluation of the claim facts and the Policy provisions.  No internal rules, guidelines, protocols, standards or other similar criteria were relied upon in rendering the claim determination.  We reserve the right to make a determination on any additional information that may be submitted.

Under the Employee Retirement Income Security Act of 1974 (ERISA), Mr. Bunch may request a review of this denial by writing to the address below:

Lincoln Life Assurance Company of Boston
Attn: Appeal Review Unit
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213

8  of 10

**Lincoln/Bunch 0236**

The written request for review must be sent within 180 days from the receipt of this letter and state the reasons Mr. Bunch feels his claim should not have been denied. In his request for review please include the following documentation:

Office treatment notes, diagnostic test results, prescribed medications, procedure reports, exam findings, and specific restrictions/limitations given beyond November 9, 2020, that support your inability to perform one or more of the material and substantial duties of your Any Occupation.


Typically you would have 180 days to appeal this decision. Due to the impact of COVID-19, please be aware the Department of Labor has published guidance providing an additional 60 days past the  outbreak period  to appeal a claim. The  outbreak period  started March 1, 2020 and will end when the end of the National Emergency is announced or such other date is declared by the Department of Labor.  While Lincoln Financial Group will allow this additional time, which is as of yet undefined, for you to file an appeal, we encourage you to file any planned appeal as soon as possible.

You should also provide any additional information that you feel will support his claim.

Mr. Bunch is entitled to receive, upon request and free of charge, copies of all claim file documents relevant to the claim determination. If Lincoln Financial Group does not receive his written request for review within 180 days from the receipt of this notice, our claim decision will be final, his file will remain closed, and no further review will be conducted.

Under normal circumstances, Mr. Bunch will be notified of the final decision within 45 days from the date his request is received.

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłį̨' dóó ná'ookąąh nííní'ą́ągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtį̨́ł nínízingo doo bą́ą́h ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducci n, cont cteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelaci n.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If special circumstances cause a delay in our decision, Mr. Bunch will be notified of the final decision no later than 90 days from the date his request is received.

Lincoln/Bunch 0237

Nothing in this letter should be construed as a waiver of any rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved by Lincoln Financial Group, whether or not they are specifically mentioned herein.

If Mr. Bunch has any questions regarding this matter, please contact me.

Sincerely,

Corey Abrams-Weaver
Ltd Specialist II
Phone No.: (844) 384-5858 Ext. 18336
Secure Fax No.: (603) 334-5994

**Lincoln/Bunch 0238**

# Jeremy B. Hertza, Psy.D.
## *Neuropsychology*

CLAIMANT NAME: Bunch, Mark B.
EXAMINER: Jeremy B. Hertza, Psy.D.
ECN #: 154128-2
CLAIM #: 8220685
DATE OF LOSS:  2/14/2018
DATE OF SERVICE:  10/28/2020

### Peer Review

This is a peer review regarding Bunch, Mark B. On behalf of ECN I reviewed records from 2/13/2018 through 2/25/2020 including: Herman Staudenmayer, PhD / Clinical Psychologist, Medical Records Review, on 8/6/2018 and on 8/13/2018; Mark Abbott, MD / Vascular and Interventional Radiology, on 2/13/2018; Curtis Harlow, MD / Diagnostic Radiology, on 3/19/2018; David R. Wilson, MD / Emergency Medicine, on 2/13/2018; Medication Administration Summary/Rehab Pre-Admission Screening/Medication Discharge Summary, on 2/13/2018; Bridgette D. Drejer, RN / Registered Nurse, on 2/13/2018; Megan K. Sillaman, RN / Registered Nurse, on 2/13/2018; Steven Wayne Olson, MD / Family Medicine, extending from 2/23/2018 to 4/13/2018; Brianna K. Rowell, MA / Medical Assistant, on 4/13/2018; Thomas W. Higginbotham, DO / Occupational and Environmental Medicine, extending from 5/3/2018 to 2/25/2020; Pain Questionnaire, on 5/3/2018; Dennis A. Helffenstein, Ph.D., CRC / Licensed Clinical Psychologist/Certified Rehabilitation Counselor, extending from 5/30/2018 to 6/1/2018; Ethan J. Freedman, PT / Physical Therapy, extending from 5/31/2018 to 6/11/2018; PHI Questionnaire, on 7/30/2018; Unknown provider, extending from 7/30/2018 to 9/24/2018; Authorization for PHI, undated; Photo, undated; HICF Bills, extending from 8/28/2018 to 9/25/2018.

The claimant is a 57-year-old male with a past medical history of Vertical heterophoria; TBI; Umbilical hernia; Depression; PTSD; Postconcussion syndrome.

06/01/18 Dennis Helffenstein, PhD: Neuropsychological Report. VSVT – Easy Subtest 20/24 (pass), forced choice recognition 6/24 and far below chance and concerning for intentional lack of effort – total core of 26/48 is a questionable score. TOMM – trial 1 22/50 (borderline pass), trial 2 27/50 well below cutoff of 45/50, retention trial 24/50 (fail). Testing discontinued as it was evident that the examiner was not going to be able to obtain a valid neuropsychological profile. BDI = 45 (after taking into account residual effects of PCS, moderate depression is indicated), PCL5 79/80. Reported headache and L shoulder pain on date of testing, also reported fatigue, poor sleep, chronic pain. Mild NCD due to TBI with behavioral disturbance (reports irritability, reduced stress tolerance, anger outburst), Depressive disorder due to TBI, mild; and PTSD.

**Lincoln/Bunch 0239**

08/06/18 Herman Staudenmayer, PhD: Objective/MSE: appropriate appearance and dress, facial expressions changed with content (sad, tearful), made eye contact, low energy, normal speech and language, no word finding difficulty, tearful and at times he reported overwhelm, cooperative, agreeable, friendly, focused, unusual behavior of placing reading material on the floor while seated so he could see it, answers focused, good effort, reports mood is unhappy, tearful, sad, depressed, anxious, nervous, hostile, angry, frustrated, irritable, short-tempered, reliving trauma anxiety; affect dysphoric and blunted, Ox3, alert and attentive, immediate and remote memory intact, fund intact, no signs of thought disorder or psychosis, thought process coherent, logical and goal directed; denies SI/HI, fair insight. Reports emotional dysfunction, depression, anxiety, hostility, PTSD. MMPI: Fr = 120/indicates overreporting/invalid. MoCA 20/30 with impairment on visual/spatial and executive functioning and language. Reports severe post concussional symptoms (SCAT2 = 90). PCL5 66/80. Presents in distress with some unusual, bizarre mannerisms that he attributes to visual impairment. During interview he showed no lapses in thinking or impaired cognitive processing. Reports cognitive dysfunction secondary to injury, he is 6 months post injury, reports emotional dysfunction secondary to injury and financial distress. Bias to overreport suggests invalid SCAT2 and PCL5 and precludes comprehensive neuropsych testing. MSE suggests exaggeration and adopting the sick role. Psychological factors affecting other medical conditions.

**RESPONSE TO QUESTIONS:**

1. **Regarding validity:  Describe the results of validity assessment.  Are the obtained results considered to represent valid measures of the examinee's actual cognitive and emotional - behavioral functioning?**

No. The results of these remote assessments do not offer convincing evidence regarding the claimant's actual cognitive and emotional/behavioral functioning. On 06/01/18 (Dennis Helffenstein, PhD: Neuropsychological Report) the claimant performed as follows on validity measures: VSVT – Easy Subtest 20/24 (pass), forced choice recognition 6/24 and far below chance and concerning for intentional lack of effort – total score of 26/48 is a questionable score. TOMM – trial 1 22/50 (borderline pass), trial 2 27/50 well below cutoff of 45/50, retention trial 24/50 (fail). Testing was then discontinued as it was stated that it was evident that the examiner was not going to be able to obtain a valid neuropsychological profile. Although the claimant reported headache and shoulder pain on date of testing, in addition to reporting fatigue, poor sleep, and chronic pain – factors that the examiner supports are possibly explanatory for the failure of validity measures, there are no findings to convincingly indicate the claimant's actual cognitive functioning. Additionally, the claimant reported BDI = 45 (examiner notes that after taking into account residual effects of PCS, moderate depression is likely indicated), PCL5 79/80. The score on the PCL5 is significantly overreported/exaggerated. While the claimant reported headache and shoulder pain on date of testing, in addition to reporting fatigue, poor sleep, and chronic pain, this does not provide an explanation as to why he exaggerated considerably on the PCL5. As the PCL5 is extremely questionable in

2

**Lincoln/Bunch 0240**

combination with failed cognitive validity measures, I am unconvinced that the results of the BDI are valid and representative of his actual emotional functioning.

Then, on 08/06/18 (Herman Staudenmayer, PhD) the claimant again provided noncredible responses indicating significant overreporting of somatic, cognitive and emotional symptoms on the MMPI (Fr = 120), rendering the protocol invalid. As there is again significant exaggeration on the MMPI, I am unconvinced that his PCL5 and SCAT2 scores on this assessment are valid. The claimant scored 20/30 on the MoCA however the examiner notes that MSE suggests exaggeration and adopting the sick role, and objective findings note no word finding difficulty, he was alert and attentive, immediate and remote memory intact, fund intact, no signs of thought disorder or psychosis, and his thought process was coherent, logical and goal directed. The MoCA does not have a validity component, as this is a screening measure. Furthermore, examiner notes that during the interview he showed no lapses in thinking or impaired cognitive processing. As such, this assessment also does not convincingly represent the claimant's actual cognitive or emotional function.

What is notable is that as of the present date, over two years post injury, there has been no effort to re-assess the claimant's neuropsychological functioning with a comprehensive assessment featuring an extensive protocol of both stand-alone and embedded validity measures for both psychological and cognitive domains, as is expected due to the above-noted performances.

2. **Regarding cognitive functioning:  Are the evaluation results indicative of cognitive impairment?  If so, please identify specific functional cognitive deficits, the severity of any such deficits, and the most likely etiology for them.  If present, would such cognitive impairment likely interfere with the examinee's occupational functioning, or require occupational restrictions or limitations?  If cognitive impairment is present, and to the extent possible, please comment on the anticipated duration.**

Please see my response to Question #1 above for a detailed discussion regarding the evaluation results. Due to validity failures and significant overreporting of cognitive symptoms, with a lack of repeat assessment (which is certainly expected in such a case), I am unable to find convincing evidence of functional cognitive deficits secondary to TBI or another etiology that interferes with or limit/restrict working. Please note that this does not automatically indicate that there is an express absence of cognitive impairment, but rather the available evidence is inconclusive.

3. **Regarding psychological functioning:  Are the evaluation results indicative of psychological dysfunction or mental disorder?  If so, please identify the psychiatric diagnosis, and the severity of any associated dysfunction.  If present, would such psychiatric impairment likely interfere with the examinee's occupational functioning, or require occupational restriction or**

3

**Lincoln/Bunch 0241**

**limitations? If psychiatrically based impairment is present, and to the extent possible, please comment on the anticipated duration.**

Again, please see my response to Question #1 above for a detailed discussion regarding the evaluation results. As with cognitive functioning, due to significant overreporting of psychological symptoms and the lack of repeat assessment (which is expected), I am unable to find convincing evidence of functional psychological deficits secondary to TBI or another etiology that interferes with or limit/restrict working. Please note that this does not automatically indicate that there is an express absence of psychological impairment.

Sincerely,

Jeremy Hertza, Psy.D.
Neuropsychology
Psychologist
PSY003309

4

**Lincoln/Bunch 0242**



**Corporate Office**
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881

E-mail: info@ecnime.com • Web: www.ecnime.com

Claimant Name: Mark B. Bunch
Claim Number: 8220685
Case Number: 154128-2

"I, Jeremy B Hertza, PsyD, am a psychologist duly licensed to practice in the State of GA. I am an independent contractor and I am paid to review claim files and render opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my professional license is current and is in good standing in the jurisdiction in which my practice is located.

10/28/2020

_____
Signature of Provider                                    Date

Professional License # PSY003309

**Lincoln/Bunch 0243**



Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
**Toll Free: (877) 463-9463**
Local: (561) 922-5200
Fax: (561) 392-5881

E-mail: info@ecnime.com    Web: www.ecnime.com

**Invoice:**    **BOCA 94480**

**Date**    **10/28/2020**

*Bill To:*

**Corey Abrams-Weaver**
**Lincoln Financial-London, KY**
**P.O. Box 7207**
**London, KY  40742**

| | |
|---|---|
| **Claim #** | 8220685 |
| **Date of Loss:** | 2/14/2018 |
| **ECN #** | 154128-2 |
| **Account #** | |

---

| **Claimant** | Mark B. Bunch | |
|---|---|---|
| 10/16/2020 | Peer Review - Long Term Disability: Service Provider: Jeremy B Hertza, PsyD Specialty: NeuroPsychology | $860.00 |

|  |  |
|---|---|
| **SubTotal** | $860.00 |

|  |  |
|---|---|
| **Final Invoice Total** | $860.00 |

*Remit To:*
Exam Coordinators Network
440 E. Swedesford Road
Suite 3000
Wayne, PA  19087

Terms:  Net 30 days
Tax Id #: 95-3327434

THANK YOU FOR THE OPPORTUNITY TO PROVIDE THIS
SERVICE FOR YOU. PLEASE REMIT PAYMENT PROMPTLY.

**Lincoln/Bunch 0244**

**Addendum to ICP Memo**

| Customer Name | Claimant Name | Claim Number |
|---|---|---|
| CHARTER COMMUNICATIONS, INC. | MARK BUNCH | 8220685 |

| | | | |
|---|---|---|---|
| **Referred By:** | Corey Abrams-weaver | **Claimant DOB:** | |
| **Referral Date:** | 10/01/2020 | **Job Title:** | DIRECT SALES REP |
| **Due Date:** | 10/10/2020 | **Medical/ Surgical Condition:** | Post concussion syndrome/ cognitive impairment |
| **Referral Type:** | Addendum | **Disability Occupational Type:** | |
| **Reason for Priority Handling:** | | **Product Type:** | LTD |
| **Other Considerations** | | **LDW:** | 02/13/2018 |
| **Report Date:** | 10/04/20 | **DOD:** | 02/14/2018 |
| **Physical Demands:** | | **BBD:** | 08/15/2018 |
| **Non-Medical Issue:** | No | **Non-Medical Issue Details:** | |

**Other Comments** - Please draft up some questions for a Neuro Psych Review

**Response to Referral Question**:

*Guidelines for the vendor*:

Recommend that any independent examiner identified to provide the neuropsychological examination be board certified in Clinical Neuropsychology with the American Board of Professional Psychology. A member directory is available through the website for The American Academy of Clinical Neuropsychology (www.theaacn.org), cross referenced by State of practice.

*Recommended procedures and questions for the examiner*:

*General orientation*: Documentation of the neuropsychological evaluation should encompass record review, clinical interview, relevant behavioral observations, objective evaluation of performance / symptom validity, cognitive evaluation, psychological evaluation, diagnosis, and response to specific referral questions. Please include a list of all neuropsychological evaluation procedures used, relevant observations of the examinee's behavior during the assessment process, and description of any procedural adaptations. Please include all relevant validity and clinical test scores in the report of neuropsychological examination or a *Data Summary*.

*Procedures*: The validity of the obtained exam results cannot be interpreted with confidence in the absence of objective psychometric indicators of examinee effort and symptom validity. Therefore, it is expected that the neuropsychological examination include the use of multiple indices of performance validity and symptom validity, including both "stand alone" validity tests and "embedded" validity indices.

**Lincoln/Bunch 0245**

*Specific issues / questions*:

1) <u>Regarding validity</u>: Describe the results of validity assessment.  Are the obtained results considered to represent valid measures of the examinee's actual cognitive and emotional - behavioral functioning?

2) <u>Regarding cognitive functioning</u>: Are the evaluation results indicative of cognitive impairment?  If so, please identify specific functional cognitive deficits, the severity of any such deficits, and the most likely etiology for them.  If present, would such cognitive impairment likely interfere with the examinee's occupational functioning, or require occupational restrictions or limitations?  If cognitive impairment is present, and to the extent possible, please comment on the anticipated duration.

3) <u>Regarding psychological functioning</u>: Are the evaluation results indicative of psychological dysfunction or mental disorder?  If so, please identify the psychiatric diagnosis, and the severity of any associated dysfunction.  If present, would such psychiatric impairment likely interfere with the examinee's occupational functioning, or require occupational restriction or limitations?  If psychiatrically-based impairment is present, and to the extent possible, please comment on the anticipated duration.

Electronically Signed

Timothy Belliveau, PhD, ABPP
B*oard Certified in Clinical Neuropsychology*
*Board Certified in Rehabilitation Psychology*

2                          8220685 A 10 04 20

**Lincoln/Bunch 0246**

# S/G

## SHAKESHAFT-GORMAN
### LAW FIRM, LLP

| | | |
|---|---|---|
| **Kenneth J. Shakeshaft** | • Attorney at Law | |
| **Joseph M. Gorman** | • Attorney at Law | |
| Cindy Maddox | • Paralegal | |
| Brandy Newton | • Paralegal | |

**Main Office**
Shakeshaft - Gorman Law Firm
1935 Jamboree Drive, Suite 202
Colorado Springs, CO 80920

September 25, 2020

Via facsimile: 603-334-5994

Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
Attn: Corey Abrams-Weaver
P.O. Box 7207
London, KY 40742

      RE:   Our client:   Mark Bunch
            Claim No.:   8220685
            Charter Communications, Inc.

To Whom it may concern:

This letter is in follow-up to my prior letters and requests for information from Lincoln Life. Lincoln Life is now offsetting Mr. Bunch's LTD benefits, and, he is no longer receiving actual payments.

In my prior letter of 06/30/2020, I requested information regarding the calulations of the claimed offset by Lincoln Life. I provide another copy of my prior letterwith this letter. AGAIN, I request Linciln Life provide a resonse to this request concerning the offset calualtions.

Sincerely,

*Kenneth J. Shakeshaft*

Kenneth J. Shakeshaft
KSJ/bn

PAGE 1/2 * RCVD AT 9/25/2020 1:22:50 PM [Eastern Daylight Time] * SVR:VA1PWFAX401/4 * DNIS:6033345994 * CSID:eComFax Service * ANI:12486023158 * DURATION (mm-ss):01-31

**Lincoln/Bunch 0247**

**S/G**

SHAKESHAFT-GORMAN
LAW FIRM, LLP

| | | |
|---|---|---|
| Kenneth J. Shakeshaft | • Attorney at Law | **Main Office** |
| Joseph M. Gorman | • Attorney at Law | Shakeshaft – Gorman Law Firm |
| Cindy Maddox | • Paralegal | 1935 Jamboree Drive, Suite 202 |
| Brandy Newton | • Paralegal | Colorado Springs, CO 80920 |

June 19, 2019

Via facsimile: 603-559-0490

Lincoln Financial Group
Attn: Danielle Davis
Charlotte, NC

RE:    Our client:    Mark Bunch
       Claim No.:     8220685
       Charter Communications, Inc.

Dear Ms. Davis,

Regarding the above claim of Mark Bunch, I am providing information for Lincoln Life regarding Mr. Bunch's Social Security disability status and Workers' Compensation status.

Mr. Bunch has filed for Social Security Disability. I attach a copy of his application. He has not yet received a decision on his initial application.

Mr. Bunch did have a Workers' Compensation claim arising out of the incident which caused his disability. I attach a copy of the Final Admission of Liability from the Workers' Compensation carrier dated November 7, 2018.

Mr. Bunch objected to the Final Admission of Liability and eventually a settlement was reached with the Workers' Compensation carrier regarding his claim for Workers' Compensation benefits for disability, permanent disability and medical. I attach a copy of the Workers' Compensation Settlement Agreement of Mr. Bunch.

Please advise as to what further information you folks need to get this finalized for payment to Mr. Bunch.

Sincerely,

Kenneth J. Shakeshaft
KJS/bn
Attachments

PHONE 719.635.5886 - FAX 719.635.0066 - TOLL FREE 1.800.383.5886
WWW.SHAKESHAFTANDGORMANLAW.COM - OFFICE@SHAKESHAFTANDGORMANLAW.COM

**Lincoln/Bunch 0248**

## Transferable Skills Analysis Addendum

**Date:** 9/10/2020
**Claimant:** Mark Bunch
**Claim #:** 8220685
**Policyholder:** Charter Communications, Inc.

A Transferable Skills Analysis utilizing the Occupational Access System (OASYS) was completed to assess Mr. Bunch's transferable skills.

**The following documentation was reviewed:**
Job Description, DOT, TEE, dated 7/27/2018, OA completed by Nicole Hall, VCM, dated 5/16/2019, & Peer Review from Dr. Lloyd M. Wilcox, Jr., MD, dated 8/4/2020.

**Education & Training:**
Education: High school diploma, Bachelor's degree in communications, Master's degree

Last 15 years of Work History:

**Work History:**

| DOT Code | Job Title/Occupation Title | SVP | Yrs. | Strength |
|---|---|---|---|---|
| 259.357-022 | Sales Representative, Television Cable Service | 3 | 2 | L |
| 163.167-018 | Manager, Sales | 8 | 15 | S |

**Restrictions and Limitations:**
Restrictions and Limitations used for this analysis was based off of
Peer Review dated 9/10/2020 completed by Dr. Lloyd M. Wilcox, Jr., MD:

- No use of cranes or forklifts
- No specific jobs that require high degree of stereopsis/depth perception
- No use of industrialized motor carts equipment movers
- No heights, no ladders, no extreme overhead reaching
- Use of computer work is limited to a work period of one hour followed by a 10minute work break then repeat
- The claimant is restricted from extremely intense lighting/high intensity fluorescent lighting and strobe lighting
- There are no restrictions from driving from an ophthalmology perspective
- The diagnosis of visual disturbance, unspecified/visual disorientation is not supported by medical record in terms of a pathophysiologic etiology

**Skills & Abilities:** Using basic math skills to total costs, make change, and compute percentages; keeping records of sales, customers contacted, and expenses incurred; demonstrating and selling products; completing sales forms and time payment contracts; talking easily and persuasively to people; and being physically active and alert. Analyzing and interpreting mathematical information in written or diagrammatic form; speaking to large groups and writing clearly and authoritatively; making decision based on personal experience and judgment as well as verifiable facts and figures; planning long range or future projects; directing work of others; working with complex financial and statistical data; and dealing with individuals and groups of people with diverse interests.

**Profile Adjustments:** GED: adjusted to Grades 15-16+ since Mr. Bunch has a master's degree.

Environment: adjusted to Unknown since no restrictions or limitations noted.

Noise: adjusted to Very Loud since no restrictions or limitations noted.

**Lincoln/Bunch 0249**

Situations: Performing repetitive or short-cycle work; Attaining precise set limits, tolerances, and standards; and Working under specific instructions adjusted to yes. Sales Representatives, Television Cable Service perform tasks, some of which are repetitive and short-cycle such as calling on potential customers, identifying opportunities to sell upgrades, conducting follow ups, and completing paperwork. They must attain precise set limits, tolerances, and standards of meeting sales goals. Sales Representatives, Television Cable Service must follow specific instructions as they complete their duties.

Data/People/Things: Data: Analyzing; Computing; and Comparing adjusted to yes. Sales Representative, Television Cable Service analyze, compare, and compute information and prices related to their products versus competitors services in order to persuade potential customers to purchase services. People: Taking Instructions-Helping adjusted to yes. Sales Representatives, Television Cable Service help customers by identifying their needs and offering the best solution.

**Examples of Occupations identified based on National labor market and claimant's ability profile analysis:**

| DOT Code | Occupation | SVP | Str | National Monthly Wage |
|---|---|---|---|---|
| 163.167-018 | Manager, Sales | 8 | S | $10,554.26 |
| 293.157-010 | Fund Raiser I | 6 | L | $9,682.40 |
| 184.167-230 | Supervisor of Communications | 8 | S | $9,219.60 |

*Wage Information is based on median 2019 Bureau of Labor Statistical Data*

**Summary:**

***Occupations Identified:***
The Transferable Skills Analysis Addendum identified occupations that are within Mr. Bunch's physical abilities and within his identified skill level. The following are examples of occupations Mr. Bunch could perform: Manager, Sales; Fund Raiser I; Supervisor of Communications. The occupations meet his gainful amount of $5,377.18 in the national economy.

I have not met with Mr. Bunch for the purpose of this review.  All opinions are based on review of vocational information, medical records and resources noted.

Megan Provost, MA, CRC
Vocational Case Manager

**Name:** Bunch, Mark                                        **SSN:**
                                                            **Case:**

| DOT Code | Occupation Title | SVP | Yrs | Mos | Inc | Has CWF | Uses CWF | Str | GOE Code |
|---|---|---|---|---|---|---|---|---|---|
| 259.357-022 | Sales Representative, Television Cable Service | 3 | 2 | 0 | Y | N | N | L | 08.02.06 |
| 163.167-018 | Manager, Sales | 8 | 15 | 0 | Y | N | N | S | 11.05.04 |

**Name:** Bunch, Mark                                        **SSN:**
                                                            **Case:**

**ADJUSTED VARIABLES SUMMARY**

This report summarizes the changes made to the person's ability profile.

**Lincoln/Bunch 0250**

|  |  | Changed From | Changed To |
|---|---|---|---|
| **Specific Vocational Preparation** |  |  |  |
| Maximum |  | 8 (4 to 10 years) | No Change |
| Minimum |  | 3 (1 to 3 months) | 1 (Short demo only) |
|  |  |  |  |
| **General Educational Development** |  |  |  |
| Reasoning |  | 5 Grades 13-14 | 6 Grades 15-16+ |
| Mathematics |  | 3 Grades 7-8 | 6 Grades 15-16+ |
| Language |  | 5 Grades 13-14 | 6 Grades 15-16+ |
|  |  |  |  |
| **Physical Demands** |  |  |  |
| Strength | Maximum | L  Light | No Change |
|  | Minimum | S  Sedentary | No Change |
| Climbing |  | Never | No Change |
| Balancing |  | Never | No Change |
| Stooping |  | Never | No Change |
| Kneeling |  | Never | No Change |
| Crouching |  | Never | No Change |
| Crawling |  | Never | No Change |
| Reaching |  | Occasionally | Frequently |
| Handling |  | Frequently | No Change |
| Fingering |  | Frequently | No Change |
| Feeling |  | Never | Frequently |
| Talking |  | Constantly | Unknown |
| Hearing |  | Constantly | Unknown |
| Tasting/Smelling |  | Never | Unknown |
| Near Acuity |  | Frequently | Unknown |
| Far Acuity |  | Never | Unknown |
| Depth Perception |  | Never | No Change |
| Accommodation |  | Never | Unknown |
| Color Vision |  | Occasionally | Unknown |
| Field of Vision |  | Never | Unknown |
|  |  |  |  |
| **Environmental Conditions** |  |  |  |
| Exposure to Weather |  | Never | Unknown |
| Extreme Cold |  | Never | Unknown |
| Extreme Heat |  | Never | Unknown |
| Wet and/or Humid |  | Never | Unknown |
| Vibration |  | Never | Unknown |
| Atmospheric Conditions |  | Never | Unknown |
| Proximity to Moving Mechanical Parts |  | Never | No Change |
| Exposure to Electrical Shock |  | Never | Unknown |
| Working in High Exposed Places |  | Never | No Change |
| Exposure to Radiation |  | Never | Unknown |
| Working with Explosives |  | Never | Unknown |
| Exposure to Toxic or Caustic Chemicals |  | Never | Unknown |
| Other Environmental Conditions |  | Never | Unknown |
| Noise Intensity Level |  | Moderate | Very Loud |
|  |  |  |  |
| **DOT Aptitudes** |  |  |  |
| General Learning Ability |  | 2  (67-89 Percentile) | No Change |
| Verbal Aptitude |  | 2  (67-89 Percentile) | No Change |
| Numerical Aptitude |  | 2  (67-89 Percentile) | No Change |
| Spatial Aptitude |  | 3  (34-66 Percentile) | No Change |
| Form Perception |  | 3  (34-66 Percentile) | No Change |
| Clerical Aptitude |  | 3  (34-66 Percentile) | No Change |
| Motor Coordination |  | 4  (11-33 Percentile) | No Change |
| Finger Dexterity |  | 4  (11-33 Percentile) | No Change |
| Manual Dexterity |  | 4  (11-33 Percentile) | No Change |

**Lincoln/Bunch 0251**

| | | |
|---|---|---|
| Eye-Hand-Foot Coordination | 5  (Below 11 Percentile) | No Change |
| Color Discrimination | 4  (11-33 Percentile) | No Change |

**Work Situations (Temperaments)**

| | | |
|---|---|---|
| Directing, Controlling, Planning | Yes | No Change |
| Performing Repetitive Work | No | Yes |
| Influencing People | Yes | No Change |
| Performing a Variety of Duties | Yes | No Change |
| Expressing Personal Feelings | No | No Change |
| Working Alone or in Isolation | No | No Change |
| Performing Under Stress | No | No Change |
| Attaining Precise Limits/Tolerances | No | Yes |
| Following  Specific Instructions | No | Yes |
| Dealing with People | Yes | No Change |
| Making Judgments and Decisions | Yes | No Change |

**Work Functions - Data**

| | | |
|---|---|---|
| 0 Synthesizing | No | No Change |
| 1 Coordinating | Yes | No Change |
| 2 Analyzing | No | Yes |
| 3 Compiling | Yes | No Change |
| 4 Computing | No | Yes |
| 5 Copying | No | No Change |
| 6 Comparing | No | Yes |

**Work Functions - People**

| | | |
|---|---|---|
| 0 Mentoring | No | No Change |
| 1 Negotiating | No | No Change |
| 2 Instructing | No | No Change |
| 3 Supervising | No | No Change |
| 4 Diverting | No | No Change |
| 5 Persuading | Yes | No Change |
| 6 Speaking-Signaling | Yes | No Change |
| 7 Serving | No | No Change |
| 8 Taking Instructions-Helping | No | Yes |

**Work Functions - Things**

| | | |
|---|---|---|
| 0 Setting Up | No | No Change |
| 1 Precision Working | No | No Change |
| 2 Operating-Controlling | No | No Change |
| 3 Driving-Operating | No | No Change |
| 4 Manipulating | No | No Change |
| 5 Tending | No | No Change |
| 6 Feeding-Offbearing | No | No Change |
| 7 Handling | Yes | No Change |

**Lincoln/Bunch 0252**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

| | |
|---|---|
| Date: September 2, 2020 | |
| To: | SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 |
| Attn: | |
| Fax: | (719) 635-0966 |
| From: | Danielle Davis<br>Ltd Specialist I<br>On Behalf Of: Corey Abrams-Weaver<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 334-5994 |
| Total Pages<br>(Including Cover):    2 | |
| RE:<br><br>Claim #:    8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0253**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

September 2, 2020

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

Lincoln Life Assurance Company of Boston is responsible for managing claims for Long Term
Disability (LTD) benefits under Charter Communications, Inc.'s Group Disability Policy.  We are
writing in reference to Mark Bunch's claim for LTD benefits under the Policy.

In our continued efforts to serve Mr. Bunch promptly and courteously, we have adjusted our
caseload assignments.

As a result, Corey Abrams-Weaver has been assigned as his dedicated Disability Case Manager.

Nothing in this process should affect the servicing of Mark Bunch's claim.

If Mr. Bunch has any questions regarding this matter, please contact his assigned Disability Case
Manager at the number below.

Sincerely,

Danielle Davis
Ltd Specialist I
On Behalf Of: Corey Abrams-Weaver
Phone No.: (844) 384-5858 Ext. 18336
Secure Fax No.: (603) 334-5994

1  of  1

**Lincoln/Bunch 0254**

## Transferable Skills Analysis

**Date:** 9/1/2020
**Claimant:** Mark Bunch
**Claim #:** 8220685
**Policyholder:** Charter Communications, Inc.

A Transferable Skills Analysis utilizing the Occupational Access System (OASYS) was completed to assess Mr. Bunch's transferable skills.

**The following documentation was reviewed:**
Job Description, DOT, TEE, dated 7/27/2018, OA completed by Nicole Hall, VCM, dated 5/16/2019, & Peer Review from Dr. Dennis Teehan, MD, dated 7/15/2020.

**Education & Training:**
Education: High school diploma, Bachelor's degree in communications, Master's degree

Last 15 years of Work History:

**Work History:**

| DOT Code | Job Title/Occupation Title | SVP | Yrs. | Strength |
|---|---|---|---|---|
| 259.357-022 | Sales Representative, Television Cable Service | 3 | 2 | L |
| 163.167-018 | Manager, Sales | 8 | 15 | S |

**Restrictions and Limitations:**
Restrictions and Limitations used for this analysis was based off of
Peer Review dated 7/15/2020 completed by Dr. Dennis Teehan, MD:

- The available clinical evidence does not support medically appropriate restrictions and limitations outside the above noted reviews.

**Skills & Abilities:** Using basic math skills to total costs, make change, and compute percentages; keeping records of sales, customers contacted, and expenses incurred; demonstrating and selling products; completing sales forms and time payment contracts; talking easily and persuasively to people; and being physically active and alert. Analyzing and interpreting mathematical information in written or diagrammatic form; speaking to large groups and writing clearly and authoritatively; making decision based on personal experience and judgment as well as verifiable facts and figures; planning long range or future projects; directing work of others; working with complex financial and statistical data; and dealing with individuals and groups of people with diverse interests.

**Profile Adjustments:** GED: adjusted to Grades 15-16+ since Mr. Bunch has a master's degree.

Environment: adjusted to Unknown since no restrictions or limitations noted.

Noise: adjusted to Very Loud since no restrictions or limitations noted.

Situations: Performing repetitive or short-cycle work; Attaining precise set limits, tolerances, and standards; and Working under specific instructions adjusted to yes. Sales Representatives, Television Cable Service perform tasks, some of which are repetitive and short-cycle such as calling on potential customers, identifying opportunities to sell upgrades, conducting follow ups, and completing paperwork. They must attain precise set limits, tolerances, and standards of meeting sales goals. Sales Representatives, Television Cable Service must follow specific instructions as they complete their duties.

Data/People/Things: Data: Analyzing; Computing; and Comparing adjusted to yes. Sales Representative, Television Cable Service analyze, compare, and compute information and prices related to their products

**Lincoln/Bunch 0255**

versus competitors services in order to persuade potential customers to purchase services. People: Taking Instructions-Helping adjusted to yes. Sales Representatives, Television Cable Service help customers by identifying their needs and offering the best solution.

**Examples of Occupations identified based on National labor market and claimant's ability profile analysis:**

| DOT Code | Occupation | SVP | Str | National Monthly Wage |
|----------|-----------|-----|-----|----------------------|
| 163.167-018 | Manager, Sales | 8 | S | $10,554.26 |
| 293.157-010 | Fund Raiser I | 6 | L | $9,682.40 |
| 184.167-230 | Supervisor of Communications | 8 | S | $9,219.60 |

*Wage Information is based on median 2019 Bureau of Labor Statistical Data*

**Summary:**

***Occupations Identified:***
The Transferable Skills Analysis identified occupations that are within Mr. Bunch's physical abilities and within his identified skill level. The following are examples of occupations Mr. Bunch could perform: Manager, Sales; Fund Raiser I; Supervisor of Communications.  The occupations meet his gainful amount of $5,377.18 in the national economy.

I have not met with Mr. Bunch for the purpose of this review.  All opinions are based on review of vocational information, medical records and resources noted.

Megan Provost, MA, CRC
Vocational Case Manager

**Name:** Bunch, Mark                                    **SSN:**
                                                         **Case:**

| DOT Code | Occupation Title | SVP | Yrs | Mos | Inc | Has CWF | Uses CWF | Str | GOE Code |
|----------|-----------------|-----|-----|-----|-----|---------|----------|-----|----------|
| 259.357-022 | Sales Representative, Television Cable Service | 3 | 2 | 0 | Y | N | N | L | 08.02.06 |
| 163.167-018 | Manager, Sales | 8 | 15 | 0 | Y | N | N | S | 11.05.04 |

**Name:** Bunch, Mark                                    **SSN:**
                                                         **Case:**

**ADJUSTED VARIABLES SUMMARY**

This report summarizes the changes made to the person's ability profile.

|  | **Changed From** | **Changed To** |
|--|------------------|----------------|
| **Specific Vocational Preparation** | | |
| Maximum | 8 (4 to 10 years) | No Change |
| Minimum | 3 (1 to 3 months) | 1 (Short demo only) |
| **General Educational Development** | | |
| Reasoning | 5 Grades 13-14 | 6 Grades 15-16+ |
| Mathematics | 3 Grades 7-8 | 6 Grades 15-16+ |
| Language | 5 Grades 13-14 | 6 Grades 15-16+ |

**Lincoln/Bunch 0256**

**Physical Demands**

| | | | |
|---|---|---|---|
| Strength | Maximum | L  Light | No Change |
| | Minimum | S  Sedentary | No Change |
| Climbing | | Never | No Change |
| Balancing | | Never | No Change |
| Stooping | | Never | No Change |
| Kneeling | | Never | No Change |
| Crouching | | Never | No Change |
| Crawling | | Never | No Change |
| Reaching | | Occasionally | No Change |
| Handling | | Frequently | No Change |
| Fingering | | Frequently | No Change |
| Feeling | | Never | No Change |
| Talking | | Constantly | No Change |
| Hearing | | Constantly | No Change |
| Tasting/Smelling | | Never | No Change |
| Near Acuity | | Frequently | No Change |
| Far Acuity | | Never | No Change |
| Depth Perception | | Never | No Change |
| Accommodation | | Never | No Change |
| Color Vision | | Occasionally | No Change |
| Field of Vision | | Never | Unknown |

**Environmental Conditions**

| | | |
|---|---|---|
| Exposure to Weather | Never | Unknown |
| Extreme Cold | Never | Unknown |
| Extreme Heat | Never | Unknown |
| Wet and/or Humid | Never | Unknown |
| Vibration | Never | Unknown |
| Atmospheric Conditions | Never | Unknown |
| Proximity to Moving Mechanical Parts | Never | Unknown |
| Exposure to Electrical Shock | Never | Unknown |
| Working in High Exposed Places | Never | Unknown |
| Exposure to Radiation | Never | Unknown |
| Working with Explosives | Never | Unknown |
| Exposure to Toxic or Caustic Chemicals | Never | Unknown |
| Other Environmental Conditions | Never | Unknown |
| Noise Intensity Level | Moderate | Very Loud |

**DOT Aptitudes**

| | | |
|---|---|---|
| General Learning Ability | 2  (67-89 Percentile) | No Change |
| Verbal Aptitude | 2  (67-89 Percentile) | No Change |
| Numerical Aptitude | 2  (67-89 Percentile) | No Change |
| Spatial Aptitude | 3  (34-66 Percentile) | No Change |
| Form Perception | 3  (34-66 Percentile) | No Change |
| Clerical Aptitude | 3  (34-66 Percentile) | No Change |
| Motor Coordination | 4  (11-33 Percentile) | No Change |
| Finger Dexterity | 4  (11-33 Percentile) | No Change |
| Manual Dexterity | 4  (11-33 Percentile) | No Change |
| Eye-Hand-Foot Coordination | 5  (Below 11 Percentile) | No Change |
| Color Discrimination | 4  (11-33 Percentile) | No Change |

**Work Situations (Temperaments)**

| | | |
|---|---|---|
| Directing, Controlling, Planning | Yes | No Change |
| Performing Repetitive Work | No | Yes |
| Influencing People | Yes | No Change |
| Performing a Variety of Duties | Yes | No Change |
| Expressing Personal Feelings | No | No Change |

**Lincoln/Bunch 0257**

| | | |
|---|---|---|
| Working Alone or in Isolation | No | No Change |
| Performing Under Stress | No | No Change |
| Attaining Precise Limits/Tolerances | No | Yes |
| Following  Specific Instructions | No | Yes |
| Dealing with People | Yes | No Change |
| Making Judgments and Decisions | Yes | No Change |

**Work Functions - Data**

| | | |
|---|---|---|
| 0 Synthesizing | No | No Change |
| 1 Coordinating | Yes | No Change |
| 2 Analyzing | No | Yes |
| 3 Compiling | Yes | No Change |
| 4 Computing | No | Yes |
| 5 Copying | No | No Change |
| 6 Comparing | No | Yes |

**Work Functions - People**

| | | |
|---|---|---|
| 0 Mentoring | No | No Change |
| 1 Negotiating | No | No Change |
| 2 Instructing | No | No Change |
| 3 Supervising | No | No Change |
| 4 Diverting | No | No Change |
| 5 Persuading | Yes | No Change |
| 6 Speaking-Signaling | Yes | No Change |
| 7 Serving | No | No Change |
| 8 Taking Instructions-Helping | No | Yes |

**Work Functions - Things**

| | | |
|---|---|---|
| 0 Setting Up | No | No Change |
| 1 Precision Working | No | No Change |
| 2 Operating-Controlling | No | No Change |
| 3 Driving-Operating | No | No Change |
| 4 Manipulating | No | No Change |
| 5 Tending | No | No Change |
| 6 Feeding-Offbearing | No | No Change |
| 7 Handling | Yes | No Change |

**Lincoln/Bunch 0258**

# Billing Statement:



**Invoice Date: 08/04/2020**          **Invoice #: 712432-606**
**Lincoln Financial Group**

**Invoice for Requests for Medical Information completed between Jul 1 2020 and Jul 31 2020**

**L-CLTMJR**                                              **Bill Code: LIBSFU**

| RP # Cust ID | Patient Name Provider Name | Status | Date Req By | RP Fee | Med Fee | Rush | QC Amt Pages | Total |
|---|---|---|---|---|---|---|---|---|
| 6426292 8220685 | BUNCH, MARK PENROSE OUTPATIENT REHABILITAT... | Canceled | 07/20/20 D Davis | $ 4.00 | $ 57.14 | $ 0.00 | $ 0.00 5 | **$ 61.14** |

**ReleasePoint**

                                        **Total Amount Due:**          **$ 61.14**

**405 W. Foothill Blvd**
**Suite 204**
**Claremont, CA 91711**                 **Tax ID: 95-2843455**

**Lincoln/Bunch 0259**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date:  August 25, 2020 | |
| To:    SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax:   (719) 635-0966 | |
| From:  Danielle Davis<br>Ltd Specialist I<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 | |
| Total Pages<br>(Including Cover):    3 | |
| RE:<br><br>Claim #:    8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0260**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

August 25, 2020

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

Lincoln Life Assurance Company of Boston is responsible for managing claims for Long Term Disability (LTD) benefits under Charter Communications, Inc.'s Group Disability Policy. We are writing in reference to your claim for LTD benefits under the Policy.

You have been receiving disability benefits based on your inability to perform the duties of your own occupation as a(n) Direct Sales.

However, Charter Communications, Inc. s LTD Policy contains a change in the definition of disability, which states that after 24 months, disability will be evaluated based upon your inability to perform the material and substantial duties of your own or any other occupation for which you are or become reasonably fitted for by training, education or experience.

Therefore, to remain eligible for benefits beyond the change in the definition of disability, you must be disabled from any occupation. As your benefits began on August 13, 2020, the change in definition occurred on August 14, 2020. We are currently gathering information to assess your continued eligibility for benefits beyond this date.

To assist us in evaluating your eligibility for benefits we have referred your file for a(n) full file review by a Board-Certified Physician.

You will continue to receive benefits during this review; however, this payment or any future payments should not be interpreted as an admission of present or ongoing liability. We reserve our right to enforce any and all provisions of the Policy at any time. We will notify you of our decision upon completion of our review.

If you have any questions regarding this matter, please contact me.

1  of  2

**Lincoln/Bunch 0261**

Sincerely,

Danielle Davis
Ltd Specialist I
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

2  of  2

**Lincoln/Bunch 0262**

# S/G

## SHAKESHAFT-GORMAN
— LAW FIRM, LLP —

| | | **Main Office** |
|---|---|---|
| **Kenneth J. Shakeshaft** • Attorney at Law | | Shakeshaft - Gorman Law Firm |
| **Joseph M. Gorman** • Attorney at Law | | 1935 Jamboree Drive, Suite 202 |
| Cindy Maddox • Paralegal | | Colorado Springs, CO 80920 |
| Brandy Newton • Paralegal | | |

August 25, 2020

Via facsimile: 603-334-3516

Lincoln Financial Group
Attn: Kirstie McGray
Charlotte, NC

   RE: Our client:  Mark Bunch
      Claim No.:  8220685
      Charter Communications, Inc.

Dear Ms. McGray:

Attached please find Dr. Higginbotham's report dated August 18, 2020.

Please contact our office with any questions.

Sincerely,

*Brandy Newton*

 Paralegal to Kenneth J. Shakeshaft

**Lincoln/Bunch 0263**

BUNCH, Mark
08/18/20
DOB:

S:    Mr. Bunch returns for monitoring his blood pressure and sequela from a traumatic brain injury. He has not established primary care provider treating relationship yet primarily because of lack of insurance. He has been unable to attend to laboratory studies because of finances. Because of lack of insurance, he has not been able to pursue follow-up neurology or neuro-optometry consultations. He states however that he heard from Medicare and is eligible for this insurance to begin on the first of next month. He is a bit confused as to what type of supplemental insurance to obtain. Back in February 2020, I spent considerable time reviewing the different plans under Medicare as well as supplemental insurances. At that time, I provided him with the name of a benefits broker.

I informed him of a peer-to-peer conference that I had with an ophthalmologist, Dr. Wilcox. I had difficulties with that conference call because of our phone connection, my hearing difficulties, and his speech. I asked that he put his concerns on paper and he did. He forwarded his concerns by fax on 08/08/2020. I have not yet reviewed the letter, let alone respond to it but do plan on doing so shortly.

O:    His body habitus remains the same. His gait is still abnormal but without assistance. His balance is suboptimal with a drift to the right. He is wearing corrective lenses. He still has difficulty reaching appropriately for paperwork. Temperature is 98.0°. Blood pressure is 134/94. Heart rate is 74. Pulse oximetry is 94% O2 on room air.

A:    Hypertension I10
      History of traumatic brain injury Z87.828
      Neurocognitive disorder G31.84
      Visual difficulties with spatial disorientation H53.30

P:    I provided him with the name of the benefits broker who can assist him with obtaining a supplemental insurance. I recommended that in addition to the basic parts A and B that he obtain at least Part D and consider either Part F for G if he can afford the premiums. He felt that this is something that I provided to him anew, even though I discussed this with him about 6 months ago. He has enough of the amlodipine 5 mg prescribed from 06/20/2020. I refilled the telmisartan 40 mg, #90.

**Lincoln/Bunch 0264**

Page 2
BUNCH, Mark
08/18/20

A message was left on 08/07/20 20 by Jacob at Lincoln Financial to set up a peer to peer review with a neurologist, Dr. Marehbian (424.201.0205). I attempted to reach Lincoln Financial Group and after being put on hold for a lengthy period of time, the phone was disconnected. I would appreciate instead of a peer-to-peer call that if there are any issues to be addressed that it be sent to me by mail.

I've asked that he return in 2-3 weeks to direct specialty referrals for sequela from the traumatic brain injury sequela. I've asked that he obtain a primary care provider for medical issues specifically his blood pressure.

Thomas Higginbotham D.O.

Lincoln/Bunch 0265

# Jonathan Marehbian, MD
## *Board-Certified in Neurology*

**CLAIMANT NAME:** Bunch, Mark B.
**EXAMINER:** Jonathan Marehbian, MD
**ECN #:** 154128-1
**CLAIM #:** 8220685
**DATE OF LOSS:** 02/14/2018
**DATE OF SERVICE:** 8/19/2020

### Peer Review

I have been asked to review the medical records on behalf of ECN. This is a peer review regarding Bunch, Mark B. I reviewed 187 pages including records from 02/13/2018 through 02/25/2020 including:

Mark Abboit, MD/Diagnostic Radiology, on 02/13/2018; Steven Wayne Olson, MD/Family Medicine, on 03/21/2018 to 04/3/2018; David R. Wilson, MD/Emergency Medicine, on 02/13/2018; Dennis A. Helffenstein, PhD, C.R.C/Licensed Psychologist, on 05/03/2018; Thomas W. Higginbotham, DO, FAADEP/Preventive Medicine, extending from 05/03/2018 to 02/25/2020; Ethan J. Freedman, PT/Physical Therapist, extending from 05/31/2018 to 06/11/2018; Herman Staudenmayer, PhD/Psychologist, on 08/13/2018; Julia Brinley, MD/Neurologist, extending from 10/31/2018 to 03/11/2019; Michael Saxerud, OD/Optometry, on 11/02/2018; Carolyn K. Lyon, CCC-SLP/Speech Language Pathologist, extending from 11/09/2018 to 04/24/2019; Robert Swotinsky, MD/Occupational Medicine, on 04/24/2019.

The claimant is a 56-year-old male with vertical heterophoria.

2/13/18 CT of the head by Mark Abbott, MD (Radiology) identifies no acute intracranial process.

2/13/18 CT of the cervical spine by Mark Abbott, MD (Radiology) identifies no acute cervical spine fracture.

2/13/18 ED report by David R. Wilson, MD (Emergency Medicine) indicates the claimant presents after a motor vehicle accident. The claimant was going about 15 miles per hour at the exit ramp, when someone stopped in front of him and then started to back up. The claimant estimated the total force of collision was around 25 miles per hour. Airbags did not deploy, though the claimant does not believe his vehicle has airbags. The claimant was restrained, but the hit was hard enough that the claimant struck his head on the steering wheel on the left forehead region. The claimant denies any loss of consciousness. Initially, the claimant felt he had some blurred vision and maybe even some left eye pain, as he has felt previously with sports injuries to the head. The claimant no longer has this symptom. Examination reveals some left masseter muscle tenderness; there appears to be developing right periorbital ecchymosis; otherwise normal findings.

**Lincoln/Bunch 0266**

Assessment indicates the claimant's symptoms immediately after the collision, which are now resolved, are consistent with concussion. The claimant was given Acetaminophen for his headache. Assessment diagnoses are concussion with closed head injury, cervical strain, right periorbital ecchymosis, elevated blood pressure, and s/p MVA.

2/23/18 office visit note by Steven Wayne Olson, MD (Family Medicine) indicates the claimant presents for a follow up on TBI. The claimant has significant eye findings, namely coordination problems. The claimant does not exactly have cranial nerve deficits. Eyes have full range of motion, but coordination and smoothness of tracking is not present. Romberg is positive. Assessment diagnoses are traumatic brain injury without loss of consciousness, cranial nerve impairment, balance problem, and right bunion.

3/19/18 MRI of the brain by Curtis Harlow, MD (Radiology) identifies mild white matter disease possibly from multiple sclerosis.

4/13/18 office visit note by Steven Wayne Olson, MD (Family Medicine) indicates that the claimant presents for a follow up. The claimant has significant eye findings, but these have resolved. For symptoms to be present after an accident seems coincidental for multiple sclerosis without previous symptoms. More likely, the changes are secondary to the trauma. Referral is already done for neurology to evaluate. The claimant is requesting physical therapy and chiropractor care for chronic neck pain. It is indicated that the claimant did suffer a concussion, it is very likely that the current symptoms are related to the MVA, but this cannot be confirmed without additional testing (referral to neurology is placed) and return to work is unknown.

5/3/18 neuropsychological screening by Dennis A. Helffenstein, PhD (Licensed Psychologist) indicates the claimant was referred for neuropsychological consultation by his Worker's Compensation physician. The claimant showed pictures of his forehead from the accident. The claimant's forehead was red and swollen just to the right of center high on his forehead. The claimant states he had altered consciousness after the accident in the form of being dazed and confused. In addition, the claimant reports problems with communication after the accident, as he is transposing words when he talks. The claimant reports that his altered consciousness lasted four weeks. The claimant continues to report a constellation of physical, fatigue, visual, cognitive and emotional coping deficits consistent with a post-concussive syndrome. The claimant is referred to more fully evaluate his current neurocognitive and neurobehavioral status. A formal neuropsychological testing was attempted with the claimant. The claimant was experiencing headache that day, which he rates as 4/10. The claimant also reports significant pain in his left shoulder when he moves his left arm. The claimant was administered a standalone Performance Validity Test and other tests, including Tombaugh Test of Memory Malingering. Based on the claimant's performance, a decision was made to discontinue the testing. At that point in time, it was evident that a valid neuropsychological test score would not be possible to obtain. It is indicated that the claimant does meet the diagnostic criteria for a post-concussive syndrome/mild traumatic brain injury. The claimant also meets the criteria for grade II (moderate)

**Lincoln/Bunch 0267**

concussion. It is indicated that the claimant experiences nausea, vomiting, dizziness and lethargy post-accident, which would all be behavioral indicators of a concussion. It is indicated that once the claimant's pain, depression and fatigue are better resolved, the claimant can be seen for a neuropsychological update. DMS-5 diagnoses are mild neurocognitive disorder due to traumatic brain injury with behavioral disturbance, mild depressive disorder due to traumatic brain injury, and post-traumatic stress disorder.

5/3/18 evaluation by Thomas W. Higginbotham, MD (Occupational Medicine) indicates the claimant is referred for an evaluation of a traumatic brain injury. Examination reveals the claimant is quite uncomfortable with his headaches and neck discomforts; positive Romberg sign in that the claimant falls to the back rather readily; the claimant cannot recognize a pencil being in the center of his vision when coming from the periphery of either side; difficulty tracking, particularly to the right horizon, but the eyes to move to all directions; blood pressure 188/100; backward extension of the head results in dizziness; diffuse tenderness over the cervical anterior and posterior musculature. Assessment indicates history of a work-related motor vehicle collision; history of a head trauma without loss of consciousness; post-concussion sequela with spatial disorientation, imbalance, cervicalgia, headache, tinnitus, cognitive difficulties, and sound and light sensitivity; cervical myofascial strain; thoracic myofascial strain; right thumb sprain. The claimant is to return for a complete physical examination. Referrals are placed for the claimant to see a neurologist and a neuro-optometrist. The claimant is to attend physical therapy. The claimant is not endorsed to drive.

5/10/18 evaluation by Thomas W. Higginbotham, MD (Occupational Medicine) indicates the claimant presents for a second visit. The claimant still has difficulty with gaze to the right; a positive Romberg's sign; palpatory tenderness about the suboccipital, scalp and cervical paraspinal musculature.

7/3/18 report by Thomas W. Higginbotham, MD (Occupational Medicine) indicates the claimant presents for a follow and was last seen on 6/19/18. The claimant relates that when he is stressed, his headaches worsen, and he gets tunnel vision. The claimant is attending physical therapy and they are doing balance exercises. Examination reveals the claimant is photosensitive; the claimant holds his head in his hands, complaining of a throbbing headache; gait is slightly unsteady; the claimant cannot attend to left-sided finger-to-nose testing even while watching his finger; the claimant still persists with a midline visual shift on testing; Romberg is improved in that the claimant does not fall backwards readily, but he does rock and reel and must catch himself a couple of times. It is indicated that Dr. Hellfenstein's report is likely invalid due to visual difficulties, headaches and inability to concentrate and focus. When presented with something to read, the claimant can't see it very well, complaining of double vision and blurred vision and the claimant moves the paper and his neck in angles in order to see it and, even when he sees it, the claimant cannot maintain his glance but for a couple seconds. Assessment diagnoses are concussion with emotional and behavioral disturbance and changes, neurocognitive disorder, visual difficulties with spatial disorientation, cervicalgia, cephalgia.

3

**Lincoln/Bunch 0268**

7/17/17 report by Thomas W. Higginbotham, MD (Occupational Medicine) indicates the claimant had a neuro-optometry evaluation the day before and was provided with corrective lenses and other measures for his vision difficulties. The claimant already notes marked improvement with corrective lenses. In fact, the claimant was able to watch TV the night before and this morning. It is noted that the previous surveillance capturing the claimant driving 0.4 miles from his home does not entail him going to a grocery store or to a pawnshop, but rather to the car repair shop to discuss further details on repairing his vehicle. The claimant was apparently told by the neuro-optometrist not to drive.

8/6/18 psychological evaluation by Herman Staudenmayer, PhD (Psychology) indicates medical records were reviewed and diagnostic interview was performed. It is indicated that MOCA score is 20/30 and Sport Concussion Assessment Tool 2 score is 90/132. It is indicated that the claimant presents in distress, with some unusual, bizarre mannerisms that he attributes to visual impairment. During the interview, the claimant shows no lapses in thinking or impaired cognitive processing that could be detected. The interview was conducted in a room with no fluorescent lights and only lamps with incandescent bulbs, which the claimant stated he tolerates. All the psychological testing and questionnaires were administered orally, and the claimant did not have to read any of the material. The only exception was the MOCA for the trails B and the copy cube test. The claimant reports symptoms of cognitive dysfunction that he attributes to post-concussion effects. The claimant is 6 months post injury. The claimant reports thoughts and feeling of emotional dysfunction that he attributes to the injury as well as the impact on his daily functioning. The claimant is not working at this time and reports financial distress. The MMPI2-RF was invalid because F-r = 120, indicating over-reporting of psychiatric, somatic, and cognitive symptoms. The SCAT2 results indicate the claimant reports severe post-concussion symptoms including neurological, emotional, and cognitive impairments approximately 6 months post injury. The PCL-5 indicate the claimant reports a high level of trauma symptoms indicating he meets DSM5 criteria B, C and D for a diagnosis of PTSD. The bias to over-report symptoms on the MMPI2-RF suggests the self-reported symptoms on the PCL-5 and the SCAT2 are not valid. The bias to over-report symptoms precludes recommendations for comprehensive neuropsychological testing at this time. The claimant may benefit from psychotherapy to address the bias and its motivation. It is indicated that mental status examination suggests exaggeration and adopting the sick role. Psychological testing indicates that the claimant's self-report reflects over-reporting bias, making the self-reported symptoms invalid. Working diagnosis is psychological factors affecting other medical conditions.

8/13/18 treatment note by Herman Staudenmayer, PhD (Psychology) addressed psychological issues and conditions. Diagnosis is psychological factors affecting other medical conditions.

10/19/18 progress note by Julia Brinley, DO (Neurology) indicates the claimant is seen for evaluation of traumatic brain injury. The claimant reports that on the day of the accident, he did lose his consciousness, unclear for how long. The claimant states that

4

directly afterwards he could not see out of his left eye. The claimant reports he continues to have balance issues, headaches, memory difficulties, speech difficulties and double vision. The claimant is doing vision therapy and is wearing prism glasses. The claimant's headaches are associated with light and sound sensitivity along with nausea, but no vomiting. These occur 2-3 times per week and can last up to whole day. Pain is rated 5/10. Examination reveals cranial nerves I not tested; the claimant often missed by an inch on finger to nose bilaterally; positive Romberg and difficulty with tandem gait. Assessment diagnoses are post-concussion syndrome, intractable chronic migraine without aura and without status migrainosus, diplopia, other symptoms and signs involving appearance and behavior, other symptoms and signs involving cognitive functions and awareness, insomnia, and imbalance. The claimant is warranted to start Nortriptyline 10 mg and speech therapy.

10/31/18 cognitive/linguistic evaluation by Carolyn K. Lyon, CCC-SLP (Speech Language Pathology) indicates results of the RBANS indicate overall classification of performance in the extremity low range, placing the claimant at the 0.2% for age matched peers. The claimant demonstrated marked dysfluencies throughout the evaluation.

11/2/18 encounter note by Michael Saxerud, DO (Optometry) indicates the claimant presents for a follow up on post-concussion syndrome. The claimant states that he has good vision for 3 weeks, but then vision declines again. Bending down to tie his shoes causes dizziness. Headaches continue to improve and are less frequent in nature. Distance vision seems to do pretty well, but there is trouble with near vision. The claimant's OTC readers are broken. Double vision occurs only occasionally, depth perception is improving, and stairs are not as difficult. Examination reveals aided visual acuity 20/20 in all tests; 3+ losses with pursuits with taped (ineligible), worse without (ineligible). Assessment indicates the claimant is to have physical therapy rule out BPPV and to continue exercises.

11/6/18 report by Thomas W. Higginbotham, MD (Occupational Medicine) indicates the claimant was seen by neuro-optometrist and has been offered early improvement. The claimant followed up with the neurologist and is has notable improvement with sleep form the Nortriptyline.

1/30/19 report by Carolyn K. Lyon, CCC-SLP (Speech Language Pathology) indicates the claimant has increased his speech, cognitive and swallowing skills, although progress is affected by attendance and inconsistency in the claimant's performance as a result. The claimant continues to display the most difficulty with speech fluency, with milder cognitive and swallowing deficits. The claimant has inconsistent responses at times, has responded with partial progress to voicing techniques for his speech deficits. The claimant's cognition is variable at progress, although part of the claimant's goals were met, and SLP has noted a possible lack of effort in this area. The claimant has demonstrated unusual oral phase swallowing movements during the MBS on this date.

5

3/12/19 letter by Dennis A. Helffenstein, PhD (Licensed Psychologist) addressed to the claimant's attorney Kenneth J. Shakeshaft indicates there was opportunity to review additional records regarding the claimant's treatment since the claimant was originally seen. It is indicated that neuropsychological evaluation with the claimant was attempted on 5/18/18 and it was discontinued based on the claimant's inconsistent performance on Performance Validity Testing. As noted in the original report, it was felt that there were a number of factors that were negatively impacting the claimant's performance on Performance Validity Tests, such as pain, depression, fatigue, and possibly an intention lack of effort. It was also felt that comorbid factors, including pain, depression and fatigue individually, or in combination, could explain most of the suboptimal scores on Performance Validity Testing. Based on the assessment, mild neurocognitive disorder due to traumatic brain injury with behavioral disturbance; depressive disorder due to traumatic brain injury; and post-traumatic stress disorder were diagnosed. It is indicated that in his 9/3/18 report, Dr. Higginbotham indicates that the neuropsychological screening was reviewed, and it is concluded that the results of the attempted testing are likely invalid because of the visual difficulties, headaches, and inability to concentrate and focus. In Dr. Higginbotham's own assessment of the claimant's functioning, he notes that the claimant has difficulty reading due to double vision and blurry vision. Opinion is rendered that these visual difficulties alone would likely invalidate any psychometric testing including validity testing. Opinion is also rendered by Dr. Higginbotham that the claimant is unable to drive and therefore is unable to resume his work, which requires extensive driving. Dr. Higginbotham also documents the claimant's emotional response to daily surveillance by the Worker's Compensation insurance company. The claimant clearly found the surveillance to be highly distressing and intrusive. Dr. Higginbotham documents increased depression in response to what appeared to be a long-term surveillance program by the insurance company. It is noted that based on the 39 years of experience, such emotional response is quite typical and understandable. A review of records by Dr. Staudenmayer is reviewed, indicated that it is concluded with addition of a diagnosis of conversion disorder with mixed symptoms. It is indicated that the most difficult aspect of conversion disorder is to identify the specific motivation underlying it, including malingering, primary gain or secondary gain. It is indicated that in experience, it is not secondary gain but primary gain. Under such circumstances, persons with primary gain are extremely difficult to treat because they are vested in their disorder beliefs. This additional diagnosis essentially reinforces Dr. Staudenmayer's initial impression that the claimant is adopting the 'not well role' and that this is a psychological component to his symptom presentation. It is indicated that the initial evaluation by Dr. Polanco appears to be more of an IME as opposed to a true clinical assessment, as Dr. Polanco spent 2 ½ hours reviewed surveillance video, which is unusual. It is indicated that Dr. Polanco's personal assessment of the brain injury/concussion is inadequate and incomplete. In summary, it is indicated that the claimant's providers are all in agreement that the claimant has experienced notable feelings of depression post-accident. It is indicated that the claimant does not have proper treatment for his depression and that the claimant requires additional treatment to address accident-related issues such as depression, reduced stress tolerance and PTSD related to the motor vehicle accident. With regard to the issue of symptom over-reporting and/or malingering, it is indicated

6

**Lincoln/Bunch 0271**

that an individual may over-report symptoms for a number of reasons, including experiencing a high level of emotional or psychological distress (a cry of help), or over-reporting symptoms for some primary or secondary gain reason. It is indicated that at this point, there is not enough data to render an opinion regarding this issue. It is indicated that it is the opinion that the bulk of the suboptimal scores on Performance Validity Testing are, in fact, explained by the residual high level of pain, depression, anxiety, and fatigue at the time of the assessment. It is indicated that at this point, there is only one score from one test that would suggest malingering and that this is not enough date for any provider to render the professional opinion or diagnosis of malingering.

4/24/19 response by Thomas W. Higginbotham, MD (Occupational Medicine) indicates it is unknown if the claimant saw therapists for vestibular, occupational and physical therapy. It is indicated that the claimant was seen by Dr. Frank Polanco, who treated the visit as an IME for the insurance company and dismissed the claimant. It is indicated that there is a paragraph from the neuro-optometrist written on 11/21/18 stating that the claimant has perception problems. It is believed that the neuropsychological tests were compromised because the claimant had vision and balance problems.

5/7/19 report by Thomas W. Higginbotham, MD (Occupational Medicine) indicates the claimant presents for a follow up. The claimant continues to wear corrective lenses from the neuro-optometrist, but this is an older prescription. The claimant has been wearing them about 2 hours on and 1 hour off. The claimant has no scheduled appointment with the neuro-optometrist. The claimant is not sure when he saw the neurologist last time. It is indicated that the claimant's presentation is concerning; his gait and stance are abnormal; the claimant grabs for the wall when walking because of complaints of imbalance and visual spatial distortion; the claimant is significantly forward-flexed and held; when coaxed to stand erect, he has truncal imbalance and progressive dizziness; the claimant continues to have difficulty speaking and has difficulty with word finding; the claimant cannot recall 3 words after just repeating them; the claimant did not recognize Donald Trump as the president; finger to finger testing is near normal to the right, but not the left; positive Romberg maneuver and rocking forward to backwards and falling backwards up against the wall repeatedly; photosensitivity; the claimant is wearing his corrective goggles; backward extension of the neck causes dizziness and a fall. Assessment diagnoses are traumatic brain injury with post-concussion sequela of visual difficulties with spatial disorientation, neurocognitive disorder, adjustment disorder with depressed mood; persistent cervical strain. It is indicated that the claimant is severely limited because of his visual-spatial disorientation and imbalance and prosody of speech. It is indicated that the claimant cannot drive. It is indicated that the claimant cannot walk and stand for even up to 5 minutes without moderate issues with imbalance and bumping into items and falling. It is indicated that the claimant has very limited concentration, focus, and pacing of any tasks, even those of activities of daily living. The claimant is incapable of sustaining employment even on a part-time basis.

6/4/19 attorney letter by Kenneth J. Shakeshaft indicates that additional information is provided in support of the claimant's appeal for long-term disability benefits. The

**Lincoln/Bunch 0272**

claimant confirms the events of the motor vehicle collision which led to his injury. The claimant confirms he still has issues with his post-concussion/mild TBI, such as headaches, ringing in ears, balance, insomnia, depression at times, neck pain and loss of range of motion. The claimant also experiences double vision and difficulties with focusing and reading. It is indicated that it appears that some of the information provided by the document-reviewing doctors is questioning the claimant's financial motivation. It is indicated that at the time of the crash the claimant was employed earning over 6 figures per year. It is indicated that the claimant has no financial motivation not to continue working. It is indicated that the claimant has significant medical problems resulting from the concussion syndrome which have prevented him from returning to any employment. It is indicated that while the claimant has shown improvement, he has not been released to work by his physicians.

10/10/19 report by Thomas W. Higginbotham, MD (Occupational Medicine) indicates the claimant presents for a follow up. The claimant is noticed to be dozing off in the waiting room and when asked why he was sleepy, the claimant states that he was comfortable in the waiting room. Transition from sit to stand is slow, but unassisted. Gait down the hallway into the exam room is without a cane and his gait is unsure. The claimant wobbles form side-to-side but corrects himself. Head is significantly forward-rolled. The claimant reels backward with Romberg testing, but does not fall. The claimant cannot do tandem walking.

2/25/20 report by Thomas W. Higginbotham, MD (Occupational Medicine) indicates the claimant still has difficulty with articulation and particularly with word finding. The claimant still has profound visual spatial disorientation. The claimant closes one eye when reading because of double vision. The claimant walks with a forward held carriage to watch his feet to make sure he does not trip. The claimant has difficulty with pivoting.

3/20/20 attorney letter by Kenneth J. Shakeshaft indicates that the claimant continues to treat with Dr. Higginbotham. The claimant has also continued with speech therapy.

**DIAGNOSES:** Vertical heterophoria.

**RESPONSE TO QUESTIONS:**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 code(s).**

The claimant has no primary impairing diagnosis.

**2. If applicable, please identify clinically significant comorbid Diagnosis(es) with ICD 10 code(s).**

Somatization disorder (F45.0).

8

**Lincoln/Bunch 0273**

Other psychological and psychiatric diagnoses which are outside the scope of practice of the present review and which cannot be indicated/addressed due to the complexity of the case.

**3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine, and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from - 03/01/2020 to - present, and comment on the expected duration.**

**a. If the medical records in the file do not support impairment and the need for restrictions and/or limitations during the above timeframe(s), provide a detailed explanation.**

No, the medical information does not provide clear and convincing medical evidence of ongoing impairment that would translate into restrictions and limitations from 3/1/20 to the present.

The medical information demonstrates that the claimant was in a motor vehicle accident on 2/13/18. 2/13/18 ED report immediately after the accident describes that the accident itself was mild, as the claimant was struck at the speed of approximately 25 miles per hour when the other driver was backing up. Nevertheless, the claimant struck his head on the steering wheel. On 2/13/18 evaluation, the initial symptoms of blurred vision and some left eye pain had resolved. There was no loss of consciousness and there was no dizziness, nausea or other symptoms. The claimant was only given Acetaminophen for his headache and was discharged. Imaging during ED evaluation and namely the CT scans of head and cervical spine shows no concussion. Contrary to what was stated by some of the attending physicians, concussion can be seen on diagnostic imaging. The subsequent medical reports, however, describe a very severe debilitation reported by the claimant. As of 2/23/18 the claimant is found to have eye findings, namely coordination problems, positive Romberg, but no cranial deficits. The claimant had MRI of the brain taken on 3/19/18, which identifies concern for multiple sclerosis (this point will be discussed separately below), but no concussion. 4/13/18 report by the claimant's PCP Dr. Olson indicates referrals were made to appropriate physicians and no further reports from Steven Wayne Olson, MD (Family Medicine) are provided. The claimant is first seen by Dennis A. Helffenstein, PhD for neuropsychological screening, which indicates that the claimant has a multitude of complains, including physical, fatigue, visual, cognitive and emotional coping deficits, which are indicated to be consistent with post-concussive syndrome. This screening is discontinued, as the administered tests, including Performance Validity Test and other demonstrate significant exaggeration and over-reporting of the symptoms by the claimant. It is evident that neuropsychological test score will not be possible to obtain. After this, the claimant follows up with Thomas W. Higginbotham, MD (Occupational Medicine). It is indicated that this physician is the claimant's Worker's Compensation physician, but recent reports demonstrate that the claimant is only following up with this specialist and recent reports include visits for

9

**Lincoln/Bunch 0274**

refill of blood pressure medications. This essentially makes Thomas W. Higginbotham, MD (Occupational Medicine) the claimant's PCP. Thomas W. Higginbotham, MD (Occupational Medicine) defended the claimant's performance on neuropsychological and argued that this is affected by the claimant's visual issues and inability to read. The claimant then had another psychological evaluation, this time by Herman Staudenmayer, PhD. This evaluation is performed in dark environment and almost fully in oral form, to ensure that there is no effect of possible visual issues on the testing. Again, the claimant is identified to exaggerate and over-report his symptoms. Report specifically identifies there is bias to over-report symptoms, which make the reported symptoms invalid. It is indicated that mental status examination suggests exaggeration and adopting of the sick role. Thomas W. Higginbotham, MD (Occupational Medicine) does not provide any comments concerning this evaluation and only comments on the claimant's first evaluation. It is evident that there is no visual issue effect on the second evaluation and therefore, the initial explanation that the testing is invalid due to visual issues is not supported and is disproven by the second evaluation. The established conclusion is that the claimant is indeed prone to exaggeration of his symptoms, to over-reporting of the symptoms and to adopting the sick role.

On 10/19/18 the claimant is finally seen by a neurologist Julia Brinley, DO (Neurology). The claimant was previously referred to a neurologist by his original PCP Dr. Olson back in April 2018, however, the medical information does not provide any neurology evaluation report before 10/19/18. It should be noted that throughout the reports, Thomas W. Higginbotham, MD (Occupational Medicine) and other providers indicate that the primary diagnosis is post-concussion syndrome, which is a neurological diagnosis. After reportedly suffering a concussion in February 2018 and then developing post-concussive syndrome, the claimant is seen by a neurologist for the first time only in October 2018. Furthermore, out of 187 pages of the medical records provide, the 10/19/18 report is the only report by a neurology specialist. 10/19/18 report indicates that the claimant is seen for evaluation of traumatic brain injury. A significant note should be made that the claimant specifically reports that he had loss of consciousness (and he is unsure for how long) on the day of the accident. It is evident that this information reported by the claimant is untruthful – the initial ED report and all subsequent reports specifically indicate that the claimant had no loss of consciousness. On 10/19/18, Dr. Brinley supported post-concussion syndrome diagnosis and indicates the diagnoses of intractable chronic migraine without aura and without status migrainosus, diplopia, other symptoms and signs involving appearance and behavior, other symptoms and signs involving cognitive functions and awareness, insomnia, and imbalance. The claimant is warranted to start Nortriptyline 10 mg and speech therapy. Nortriptyline helps with the sleep. There are no further neurological reports provided whatsoever.

The claimant was then seen for cognitive/linguistic evaluation by Carolyn K. Lyon, CCC-SLP (Speech Language Pathology) on 10/31/18 and his overall RBANS classification of performance is in reported to be in the extremely low range, placing the claimant at the 0.2% for age matched peers. Such score essentially demonstrates that the evaluated person has no consistent cognitive function whatsoever. That is, the person is incapable

10

**Lincoln/Bunch 0275**

not only of talking, but of no significant thinking process at all. This is clearly not the claimant's presentation. As evident from all other reports, the claimant, whilst reported to have some issues with speech, is in fact capable of talking and, is reported to have normal cognitive examination on numerous reports. This, again, shows a complete inconsistency between the claimant's clinical presentation and the scores that are obtained during evaluations. Carolyn K. Lyon, CCC-SLP (Speech Language Pathology) in fact specifically indicates on 1/30/19 that the claimant has inconsistent responses at times, there is lack of effort and lack of attendance. When combined with these findings, with other findings on psychological evaluations and with the extremely low score that is inconsistent with the claimant's presentation, it is again evident that the claimant is exaggerating his symptoms. This raises suspicion of malingering.

4/24/19 response by Thomas W. Higginbotham, MD (Occupational Medicine) indicates that it is unknown if the claimant saw therapists for vestibular, occupational and physical therapy. There are indications that the claimant was seen by Dr. Frank Polanco, who, reportedly, performed and IME-type evaluation, and then dismissed the claimant, but this report is not provided with the medical records. There are also indications that Dr. Polanco reviewed some extensive surveillance video, which is also not available. Thomas W. Higginbotham, MD (Occupational Medicine) again states that the claimant's neuropsychological tests are compromised due to vision and balance problems. The fact that the second evaluation is almost completely in oral form is not commented in any way. Reports by Thomas W. Higginbotham, MD (Occupational Medicine) also indicate that the claimant is seen by neuro-optometrist on several occasions and that reportedly, there are follow ups with a neurologist as well (these reports, nor their conclusions, are not available). One 11/2/18 encounter note by Michael Saxerud, DO (Optometry) is provided with the medical reports. This encounter note indicates that the claimant has 20/20 visual acuity in all planes, which is inconsistent with the reported blurred vision, and that the claimant had 3+ losses with pursuits. Michael Saxerud, DO recommends that physical therapy rules out BPPV and for the claimant to continue exercises. This recommendation to rule out BPPV demonstrates uncertainty that the claimant has any true neurological/visual issues. Performed examination is not indicative of any visual deficits, either, as the identifies issues with pursuits can in fact be seen in a completely healthy person and this finding not demonstrate of any specific and significant functional deficit. This finding surely does not constitute the reported severe visual issues and issues with visual-spatial difficulties. Previously, it is reported that the visual issues had improved significantly with the use of provided goggles.

The claimant was then seen, after some period of time, on 5/7/19 by Thomas W. Higginbotham, MD (Occupational Medicine) and the provided examination is completely inconsistent with the findings provided before this or with the diagnostic etiologies reported previously. Examination on 5/7/19, which is summarized above, demonstrate that the claimant in fact has severe difficulty, or more appropriately, complete inability to maintain balance or ambulate. It is described that the claimant is grabbing for the walls when walking, the claimant has truncal imbalance (a findings seen with ataxic gait, which in its turn is usually seen with significant cerebral issues), the claimant is rocking forward

11

**Lincoln/Bunch 0276**

to backwards and falling backwards with Romberg, extending the neck causes falling, the claimant does not recognize Donald Trump as the president and cannot not recall 3 words after just repeating them. It must be noted that previous examinations are essentially limited to abnormal Romberg and difficulty with tandem. No such severe findings are ever identified. With all these findings provided, the 5/7/19 report does not clarify if how did the claimant manage to present to the visit. It has been noted that the claimant is not driving, but is using a driver, however, the claimant still needs to physically present to the physician's office. The identified findings essentially demonstrate that the claimant is to ambulate in a wheelchair. However, there are no indications of a wheelchair being used. In fact, there are no indications of any assistive device being used. This inconsistency is not explained. With the previous findings of exaggeration and over-reporting taken into consideration, this inconsistency of the claimant's examination on 5/7/19 to his overall clinical presentation before, during and after the visit, leads to a question if the claimant, who previously exaggerated symptoms on psychological evaluation, does not simply pretend to have such significant difficulties on 5/7/19. Of a note is that Thomas W. Higginbotham, MD (Occupational Medicine) previously (in previous reports) indicates that on Romberg testing, the claimant would fall backwards "readily". Furthermore, there is complete lack of explanation if where from could such difficulties/examination findings stem from. The indicated post-concussive syndrome, which, it should be noted, is slowly exaggerated in later reports to essentially indicate that the claimant had a severe traumatic brain injury, which is not so, does not explain the findings on this examination. It also does not explain the fact that the claimant had no such difficulties in 2018, had them in 2019 (one year after the accident) and then had no such difficulties again in 2020. This complete inconsistency is not explained by the attending providers. There is also no explanation whatsoever to the fact that the identified findings are essentially periodical – there is no explanation whatsoever to the fact that the claimant had no such issues after the accident, but somehow had them one year after the accident. In summary, these 5/7/19 examination findings are inconsistent, are questionable, and cannot be seen as valid representation of the claimant's functional capabilities.

Going on, 10/10/19 report then indicates that the claimant's gait down the hallway into the exam room is without a cane, although the gait is unsure. It is also indicated that the claimant wobbles from side-to-side but corrects himself. The claimant reels backwards with Romberg but does not fall. The claimant still cannot tandem walk. A 3/20/20 attorney letter indicates that the claimant only continues to treat with Dr. Higginbotham and speech therapy. If the 5/7/19 and 10/10/19 examination are considered and accepted as presented, it is unclear if what allows the claimant to have such a drastic improvement from complete inability to walk on 5/7/19 to almost normal gait on 10/10/19. To note again, all of this leads to only one conclusion – that the available examination findings are questionable in terms of their validity, that the examination findings are inconsistent, and that there is likely a significant degree of exaggeration or malingering by the claimant.

In conclusion, the available medical information demonstrates that the claimant reportedly suffered a concussion in the accident in February 2018. Whilst the presented

12

**Lincoln/Bunch 0277**

history and reported symptoms on initial evaluation may indeed be seen as consistent with concussion, there was no loss of consciousness, there was no dizziness or nausea initially, and the descriptions of the accident were mild. Diagnostic imaging was normal. There is no medical evidence to support any significant concussion in February 2020. At best, a very mild concussion may be supported. It is reported that the claimant then developed post-concussive syndrome. Some reports subsequently perplex this diagnosis into a traumatic brain injury, which is not so. Whilst concussion may indeed be described as a very mild form of a brain injury, post-concussive syndrome is in no way a traumatic brain injury. Such descriptions and indications mislead to believe as if the claimant has a permanent brain damage, which then results in all of the reported issues. This is not so; the claimant has no brain damage. Post-concussive syndrome is a condition essentially resolvable with no significant treatment, but simply with time. A period of one year is more than sufficient for resolution of these issues even in the most severe instances. Oddly enough, the claimant reports most significant symptoms and is identified to have most significant examination findings only one year after the accident. It has been described above that firstly, the severity of the reported symptoms and the symptoms themselves are inconsistent with a post-concussive syndrome; secondly, the symptoms and presented findings are inconsistent within themselves – the claimant is identified to have mild issues after the accident, which then somehow developed into severe issues one year later, and were again mild by early 2020; thirdly, the fact that the condition is reported to go on for more than two years after a quantifiable mild motor vehicle accident is inconsistent with the condition that essentially resolves in one year even in very severe cases. As also described above, the medical information demonstrates on several measurable tests that the claimant is prone to exaggeration, over-reporting and possibly malingering. On his initial visit with the neurologist, the claimant is not truthful concerning the loss of consciousness. There are notes that some surveillance video (not provided for this review) has shown that the claimant was driving, albeit for a short distance, back in 2018 – an ability that is completely inconsistent with the reported issues. Medical reports consistently note that the claimant shows lack of effort. The scores and findings that the claimant obtains during examinations/evaluation are completely inconsistent with his overall presentation. Finally, after the review of the medical information, and especially of the recent reports, there is no demonstration of any motivation by the claimant to receive any treatment. The claimant only follows up with Thomas W. Higginbotham, MD (Occupational Medicine), paying for the visits out of his pocket, who refills his blood pressure medications. When asked when he last saw a neurologist, the claimant does not even know. The claimant's preference to pay out of pocket for a visit with a physician reported to be a Worker's Compensation physician, but lack of desire to obtain a visit with a neurologist for treatment leads to a question of what exactly the claimant's motivation is. Finally, and most importantly, all the issues reported by the claimant may be measurably demonstrated by quantifiable testing, such as for example VNG/vestibular testing for reported balance issues. However, there is not a single such testing result available.

As such, taking into consideration the claimant's evident presentation of symptom exaggeration and over-reporting, the fact that some of the examination findings are

13

**Lincoln/Bunch 0278**

inconsistent and questionable, the fact that recent examinations and examinations immediately after the accident only identify mild issues that are not indicative of true functional deficits, the fact that there is no quantifiable testing for the reported issues available, the medical information does not provide clear and convincing medical evidence of ongoing impairment as of 3/1/20 and beyond.

Concerning the concerns of multiple sclerosis, please see answers to questions 4 and 7 below. Briefly, whilst some the reported symptoms may be seen as consistent with multiple sclerosis, there is no full consistency and there are no definite findings to support existence of multiple sclerosis.

It should be noted that there are brief indications of adjustment disorder/somatization disorder noted within the medical records. It is possible that the claimant's issues, which are additionally exaggerated by the claimant, could be stemming from conditions of adjustment disorder/somatization disorder. The presently available medical information, however, does not provide clear and valid medical evidence of any true ongoing deficits. Adjustment disorder/somatization disorder are psychiatric conditions and the primary difficulty associated with these is to determine if symptoms are malingered or are indeed true. This diagnosis and this condition are outside of the scope of practice of neurological review and addressing these from neurology standpoint is inappropriate. Therefore, I respectfully defer further consideration of this to the psychiatry specialist, as this is outside my scope of practice.

**4. Treatment Opportunities: Is the treatment provided consistent with the standard of care for the apparent level of severity of the condition(s)? Is there any evidence that the claimant is not compliant with treatment that meets the standard of care?**

No, the treatment provided was not consistent with the standard of care.

First, although it is unknown if the neurologist Dr. Brinley is provided with the copy of 3/19/18 MRI of the brain, which identifies concern for multiple sclerosis, the claimant has to be evaluated for possibility of multiple sclerosis. The claimant had to be referred for a detailed neurological evaluation for possible multiple sclerosis immediately after the 3/19/18 MRI. The claimant's original PCP Dr. Olson in fact referred the claimant for this, but the available medical information does not demonstrate that any address to the concern of multiple sclerosis is provided whatsoever. Dr. Brinley only evaluates the reported post-concussion syndrome, although once again, it is unknown if Dr. Brinley has seen the 3/19/18 MRI of the brain. The standard of care with the identified MRI findings is to evaluate the claimant specifically for multiple sclerosis, if necessary – to perform lumbar puncture, and to make sure the claimant has follow up imaging taken at least a year later. None of this was done. As noted above, the claimant's clinical presentation is completely inconsistent with the indicated post-concussion syndrome diagnosis, but this presentation is in fact consistent with multiple sclerosis. The multiple sclerosis, however, due to lack of any evaluation, remains unconfirmed. Simultaneously, whilst multiple sclerosis remains unconfirmed, it also remains not clearly excluded. There is a possibility

14

**Lincoln/Bunch 0279**

that the claimant does in fact have the condition of multiple sclerosis, but due to lack of evaluation, the claimant was never diagnosed with this and did not receive any treatment for more than 2 years.

Secondly, whilst the claimant's psychologists have established that the claimant is prone to exaggerating and over-reporting, which makes the claimant's self-reported complaints questionable, especially that there is no clear etiology to these complains, the claimant's attending physicians have not referred the claimant for or performed any quantifiable diagnostical tests to clearly validate existence of any deficits/issues. For example, the claimant's balance issues and visual issues, which are the primary reported issues as of recently, can be easily addressed with VNG and other vestibular testing. Such testing, however, was never performed.

Thirdly, although this point cannot be answered in more than one way, it should be noted that the medical information, which consists of 187 pages of medical records, does not demonstrate any clear and specific treatment plan. Treatment plan was clearly visible initially, especially when the claimant was followed by PCP Dr. Olson, but since the claimant was referred to the specialists, there has been no consistent treatment plan established. The claimant's neurologist Dr. Brinley has only prescribed the claimant with 10 mg of Nortriptyline, which helps with the claimant's sleep, but has no significant effect in terms of achieving resolution of complaints. All other reported issues, such as the headaches, the balance issues, the visual issues and the cognitive complaints are not addressed with any consistent treatment plan. Recent reports simply do not demonstrate that the claimant is being treated at all, except to occasional refills of blood pressure medications by a Worker's Compensation physician Thomas W. Higginbotham, MD (Occupational Medicine). Such treatment does not correspond to the standard of care. However, on the other hand, it may also be stated that some of the claimant's attending physicians recognize that the claimant simply does not have any real and true condition, or any real or true functional deficits and the claimant's presentation is that of exaggeration, and therefore, there simply cannot be any consistent treatment plan. Both statements are supported by the available medical information and therefore, no clear indication can be provided on the consistency of the overall treatment plan to the standards of care.

Yes, there is evidence that the claimant is not compliant with the treatment that meets the standard of care. The claimant's speech therapist Carolyn K. Lyon, CCC-SLP notes on 1/30/19 that the claimant demonstrates lack of effort, inconsistency and lack of attendance during the therapy. Lack of effort during evaluations has also been discussed by the claimant's psychologists.

**5. Are there any non-medical circumstances identified in the medical records that may interfere with work-related activities (e.g. workplace conflicts, child or elder care issues, or legal issues)?**

15

**Lincoln/Bunch 0280**

No, there are no non-medical circumstances identified in the medical records that may interfere with work-related activities.

**6. If AP contact may clarify any significant areas such as diagnosis, R&L's, treatment opportunities, prognosis, or reason for work absence, then please contact the claimant`s attending physician(s).**

Called Dr. Higginbottom on Tue 08/11 1:50PM, left a message at Occupational & Environmental Health with receptionist, Bernadette H.

Called Dr. Higginbottom on Wed 08/12 2:07PM, left a message at Occupational & Environmental Health on the front office voicemail.

**7. A review by an LFG in-house neurologist addressing the imaging studies especially the MRI that alluded to demyelinating disease would be helpful in terms of excluding organic changes from the etiology. Please review the imaging addressed. Does the (overall functional and) medical evidence support the claimant has the ability to sustain fulltime capacity (8/hours/day 5 days/ week) within the identified restrictions and limitations from 03/01/2020 to Present.**

The 3/19/18 MRI of the brain by Curtis Harlow, MD (Radiology) identifies mild white matter disease possibly from multiple sclerosis. A 4/13/18 office visit note by Steven Wayne Olson, MD (Family Medicine) addressed this by indicating that it was likely an incidental finding and that the fact that issues reported by the claimant started only after the accident, and that there were no issues before the accident, further supported that the symptoms are not related to multiple sclerosis. Dr. Olson, however, acknowledges that neurological evaluation is necessary and refers the claimant to a neurologist. This is the last medical report by Dr. Olson available. Further medical records do not demonstrate that the claimant was ever evaluated for multiple sclerosis or that repeat imaging was performed. As discussed above, this contradicts the standards of care. With the present available medical information, no clear conclusion can be provided and organic changes such as multiple sclerosis may not be clearly excluded. Whilst the indications by Dr. Olson are indeed reasonable, it may not be excluded that theoretically, the claimant does have some neurological symptoms even before the accident, but neurological symptoms are simply mild and were unnoticed by the claimant before the accident. The claimant's reported symptoms and complaints are consistent with multiple sclerosis to some extent – that is visual symptoms, gait/balance issues and cognitive symptoms are indeed seen with multiple sclerosis. However, visual issues with multiple sclerosis primarily include optic nerve issues/deficits. The claimant did have evaluation with neuro-optometrist Dr. Saxerud, but there are no indications of a finding of any optic nerve issue recorded. Such finding is a significant one and would surely be recorded/demonstrated within the medical information. Furthermore, it is indicated that the claimant does report improvement to his reported visual symptoms with prism goggles. Such improvement would not be achieved if the underlying etiology was multiple sclerosis. The 3/19/18 MRI of the brain itself is not sufficiency specific or focal to clearly support multiple

16

**Lincoln/Bunch 0281**

sclerosis condition. The findings are mild and whilst these may be consistent with multiple sclerosis, they are not specific to multiple sclerosis. Therefore, there is presently no clear evidence to support existence of multiple sclerosis, but a theoretical possibility of existence of this condition does exist. An appropriate course of action would be to simply have the claimant get repeat MRI of the brain and cervical spine with contrast. This would provide complete certainty on existence of multiple sclerosis.

Sincerely,

**Jonathan Marehbian, MD**
**Assistant Professor of Clinical Neurology**
**Board certified, Neurology**
**Medical License CA 151052**

17

**Lincoln/Bunch 0282**



Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881

Exam Coordinators Network    A division of Genex Services, LLC.    E-mail: info@ecnime.com  •  Web: www.ecnime.com

Claimant Name: Mark B. Bunch
Claim Number: 8220685
Case Number: 154128-1

"I, Jonathan Marehbian, MD, am a physician duly licensed to practice medicine in the State of CA. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

August 19, 2020

Signature of Physician                                    Date

Medical/Professional License # CA 151052

**Lincoln/Bunch 0283**



**Corporate Office**
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
**Toll Free: (877) 463-9463**
Local: (561) 922-5200
Fax: (561) 392-5881

Exam Coordinators Network    A division of Genex Services, LLC    E-mail: info@ecnime.com    Web: www.ecnime.com

| **Invoice:** | **BOCA 90102** | **Date** | **8/19/2020** |

*Bill To:*

**Danielle Davis**
**Lincoln Financial-London, KY**
**P.O. Box 7207**
**London, KY  40742**

| **Claim #** | 8220685 |
| **Date of Loss:** | 2/14/2018 |
| **ECN #** | 154128-1 |
| **Account #** | |

| **Claimant** | Mark B. Bunch |

| 8/10/2020 | Peer Review - Long Term Disability: Service Provider: Jonathan Marehbian, MD Specialty: Neurology | $660.00 |

| | **SubTotal** | $660.00 |

| | **Final Invoice Total** | $660.00 |

*Remit To:*
Exam Coordinators Network
440 E. Swedesford Road
Suite 3000
Wayne, PA  19087

Terms:  Net 30 days
Tax Id #: 95-3327434

THANK YOU FOR THE OPPORTUNITY TO PROVIDE THIS
SERVICE FOR YOU. PLEASE REMIT PAYMENT PROMPTLY.

**Lincoln/Bunch 0284**

**ICP Memo-Lloyd M. Wilcox, Jr. M.D.**

| Customer Name | Claimant Name | Claim Number |
|---|---|---|
| CHARTER COMMUNICATIONS, INC. | MARK BUNCH | 8220685 |

| Referred By: | Danielle Davis | Claimant DOB: | |
|---|---|---|---|
| Referral Date: | 07/29/2020 | Job Title: | DIRECT SALES REP |
| Due Date: | 08/05/2020 | Medical/ Surgical Condition: | Vertical heterophoria |
| Referral Type: | Priority File Review | Disability Occupational Type: | |
| Reason for Priority Handling: | Manager Request | Product Type: | LTD |
| Other Considerations | | LDW: | 02/13/2018 |
| Report Date: | 08/04/2020 | DOD: | 02/14/2018 |
| Physical Demands: | | BBD: | 08/15/2018 |
| Non-Medical Issue: | No | Non-Medical Issue Details: | |

**Core Questions**

1. Please identify the primary impairing Diagnosis(es) with ICD 10 code(s).
   Convergence insufficiency                                    H51.11
   Visual Disturbance, unspecified                              H53.9

2. If applicable, please identify clinically significant comorbid Diagnosis(es) with ICD 10 code(s). Essential hypertension

3. Taking into consideration the entire clinical picture, including standards of care and evidence based medicine, and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 03/01/2020 to present, and comment on the expected duration.
   This review is from the ophthalmology perspective only and does not address the specific neuro-psychological aspects of possible "vision" issues or some of the soft neurologic signs/symptoms that may be remotely related to vision symptoms. This review addresses only the standard and conventionally accepted medical signs, symptoms and treatments for ophthalmic conditions.

   The claimant has had a concussion without loss of consciousness from MVA in February 2018 and has been treating with AP Dr. Thomas Higginbotham O.D. since 05/03/18 until OV 02/25/20, the most recent examination in the chart. He last saw AP on June 18, 2020 but the is not in the file documents yet. The diagnosis of convergence insufficiency (CI) was made by Dr. Saxerud O.D. the optometrist, after finding a remote near point of convergence

20" (20 inches) and is supported by the medical record. The claimant was treated appropriately by prescribing prism glasses on 07/13/18 and appropriately orthoptic exercises were recommended but it was unclear if they were performed. The claimant returned on 8/17/18 and 09/21/18 and during the September exam the near point of convergence had improved to 4 inches which is near-normal for his age. This finding should be expected to improve symptoms and visual functionality. By his last exam on 11/21/18 symptoms have improved with reported better depth perception.

The impairing diagnosis is convergence insufficiency (CI) of mild level of severity and is supported in the medical record. It appears the CI is somewhat responsive to traditional standard treatment with prismatic glasses and possibly with orthoptic training exercises. Convergence insufficiency is most often treatable but even if unresponsive it is not disabling vocationally unless the specific occupation demands a high degree of stereopsis and depth perception. If all else fails with treatment of CI, the person can always resort to the monocular state with occlusion of one eye and function visually. For most occupations including those that require reading and computer usage, a monocular person has the capacity for occupational functionality if they have good vision in the better eye. The. Claimant has 20/20 vision in both the right and left eye so he could occlude either eye and still have capability for work. Convergence insufficiency is not considered a significantly impairing diagnosis occupationally unless there is an impingement on the capacity to perform the occupational functionality in this case reading seeing computer work. The person with CI could have some visual fatigue when concentrating in the reading seeing computer work. The claimant's occupation is largely sedentary status, and a substantial portion is driving to appointments to engage in sales conversation. The impairing diagnosis does allow the claimant to have the capacity for occupational functionality in the sedentary status of computer/reading and driving given the following R and Ls with accommodations noted.

The following restrictions and limitations apply for CI in this case: no use of cranes or forklifts, no specific jobs that require high degree of stereopsis/depth perception, no use of industrialized motor carts equipment movers, no heights, no ladders, no extreme overhead reaching, use of computer work is limited to a work period of one hour followed by a 10minute work break then repeat. The period of 10 minutes is to allow resting the eyes and local/personal orthoptic exercises e.g. pencil push-ups. This cycle of one hour on, 10 minutes off repeat, does not include driving which uses the far vision rather than the near vision that brings on the symptoms of convergence insufficiency. The claimant is restricted from extremely intense lighting/high intensity fluorescent lighting and strobe lighting. The claimant meets the DMV driving standards requirement. There are no restrictions from driving from an ophthalmology perspective. Any driving restrictions (or lack of restrictions), should be evaluated by neuropsychology and occupational medicine. The duration of R and Ls and accommodations is one year with reassessment at that time.

The second impairing diagnosis is visual disturbance unspecified, relates to the symptoms of unformed images, photophobia, reading issues, headache, spatial disorientation and blurred vision among others for this claimant. The AP categorizes much of the symptoms as visual spatial disorientation for which the treatment at each visit seems to be observation. The claimant has been observed by AP swaying from side to side, head forward, avoiding light, and with apparent cognitive issues manifested as an inability to answer very simple questions with some type of irregular speech. There has been no therapeutic intervention for these manifest behaviors other than recording them. The claimant symptoms are not

correlated with any organic lesions by imaging studies previously done (CT scan, MRI with and without contrast). Additional clinical examinations repeatedly by AP, the "neuro-optometrist", the medically trained neurologists and Occ./Rehab. Physician specialists do not show convincing pathologic eye movements e.g. nystagmus, vertical nystagmus, skew deviation, or pathophysiologic pupil abnormalities e.g. Horner's syndrome/pupil. There are no convincing correlations between these diffuse, variable and vague symptoms/mannerisms and any defined medical organic, pathophysiologic finding on testing or examination assuming the imaging studies are in fact correctly interpreted. In conclusion the diagnosis of visual disturbance, unspecified/visual disorientation is not supported by medical record in terms of a pathophysiologic etiology. The claimant has 20/20 visual acuity in each eye, a normal ocular examination by the optometrist, purportedly normal visual field testing, all of which show that the diagnosis is not supported by record. From an ophthalmology perspective no restrictions and limitations can be determined because the impairing diagnosis is not specific, determined and not causally related to organic pathophysiology.

a. If the medical records in the file do not support impairment and the need for restrictions and/or limitations during the above timeframe(s), provide a detailed explanation.  N/A.

4. Treatment Opportunities: Is the treatment provided consistent with the standard of care for the apparent level of severity of the condition(s)? Is there any evidence that the claimant is not compliant with treatment that meets the standard of care?

   The treatment provided may possibly not meet the standard of care for the medical diagnosis. There is no evaluation of the essential hypertension and although Dr. Higginbotham is interested in the disability symptoms, the clinical notes reflect that he is following claimant for hypertension as well. The standard of care for this convergence insufficiency treatment is unclear, but clearly the claimant has separated from the optometrist and there is no follow-up. It is unclear if the claimant is compliant with treatment.

5. Are there any non-medical circumstances identified in the medical records that may interfere with work-related activities (e.g. workplace conflicts, child or elder care issues, or legal issues)?  none

6. If AP contact may clarify any significant areas such as diagnosis, R&L's, treatment opportunities, prognosis, or reason for work absence, the AP contact information is:

**Name: Dr. Higginbotthom,    Phone Number: - (719) 260 8190 ex -----**
- Reviewer had teleconference with AP Dr. Thomas Higginbotham on 08/03/20 at 11:54amET Monday about claimant Mark Bunche Claim# 8220685 and his case. I identified myself as an ICP working for LFG and he asked me "is this in regards (to) long-term disability" and I replied I was not sure because my focus was strictly on the medical issues not the insurance classification. The AP spoke in a very low

modulated voice and on a few occasions asked me to repeat things because he had difficulty hearing or understanding them, not hearing the words but their intonation. The AP is "treating" the claimant for "visual-spatial disorientation" as his primary diagnosis. He last saw the claimant on 06/18/20 and at that visit claimant's blood pressure was 150/94. I asked what specific treatments, procedures, physically employed procedures he used to treat (excluding hypertension) the claimant during the office visits. His response was a very slow and with vague delivery, but he obliquely referenced some early neck maneuvers and repeatedly referred to "neural-optometry". He was possibly checking his paper charts as he does not use electronic medical record, but his notes are well typed. He explained to me that he was treating issues behind the globe (eyeball) in the visual pathway specifically "the occipital cortex" where there were organic lesions. I reminded him that a CAT scan and an MRI did not demonstrate findings in the occipital cortex, but there were some questions about findings suggestive of demyelinating disease. We re-discussed the issue of occipital lobe lesions and I again reaffirmed the negative finding for organic lesions in the occipital cortex that would explain causality for any claimant's symptoms. The AP did not assent to this view and appears to believe that a "PET scan" would demonstrate the organic lesions in the occipital cortex. We discussed the issue of driving and the AP is firmly convinced that the claimant cannot drive. He stated that claimant was driven to the last appointment. Reviewer asked why he cannot drive, and AP stated the spatial disorientation/balance theory. He stated that he has observed claimant's imbalance both directly and when the claimant was unaware of observation. After AP had some re-referencing to "neural-optometry" Reviewer reminded the AP that when the claimant was treated for convergence insufficiency with prismatic glasses there was some therapeutic response with an improved near point of convergence (NPC) and a documented decrease in symptoms. AP's response was not direct, noninformative, and noncommittal. Instead of discussing why the convergence improved with prism glasses decreasing symptoms, AP avoided the topic by segueing into phraseology of 'vision therapy' or the claimant's multitude of symptoms. At one point in the discussion this reviewer did mention that monocular vision does not preclude occupational functionality assuming the specific task does not require stereopsis/depth perception. Monocular persons can drive by almost all state standards assuming good vision in the functioning eye. The AP seemed somewhat flustered by this observation/suggestion, but that is reality. The AP clearly appears to believe in his assessment and a certain social moralism could fuel his cause because he repeatedly stated the problem was no insurance and that should be put in reviewer's report. Reviewer asked about others that he has treated with similar or exact condition especially persons with physical damage (documented by imaging) from war injuries. This part of the conversation resulted in a discourse tinged with the social aspect of his practice in that he took a great many patients who did not have any medical insurance and this fact resulted in claimant's inability to obtain or diagnostic testing that would prove APs hypotheses about spatial disorientation. I asked AP if claimant was paying for each visit and after a pause the answer was that he was paying for each visit. We concluded our discussion pleasantly and this reviewer made no suggestions or recommendations.

Other**: Q1.** Does the (overall functional and) medical evidence support the claimant has the ability to sustain fulltime capacity (8/hours/day 5 days/ week) within the identified restrictions and limitations from 03/01/2020 to present? **Ans.1.** Yes, from an ophthalmology perspective with regards to convergence insufficiency. With regards to the second impairing diagnosis visual disturbance, unspecified, the reviewer cannot make any determination of restrictions or limitations because the etiology for the symptoms is undetermined.

 For each impairing diagnosis that is supported by the medical evidence, please outline reasonably supported restrictions and limitations, including duration and prognosis. Please define in terms of frequency (never, occasional, frequent, constant) and task (sit, stand, lift/carry, type etc.). See above specific restrictions and limitations.

Additional action to consider (if applicable)
A review by an LFG in-house neurologist addressing the imaging studies especially the MRI that alluded to demyelinating disease would be helpful in terms of excluding organic changes from the etiology. Such a neurology reviewer could comment on the neuro-psychology reports in the record.


Other (if applicable):


Brief overview of clinical presentation and course:
- The claimant is a 56year old man who was in MVA 02/13/18, hitting the steering wheel with forehead sustaining a concussion without loss of consciousness. He was seen in ED, examined, and CT of head and neck were negative and he was discharged. Essential hypertension was noted during ED visit. Further imaging studies have failed to show any organic CNS pathology to explain symptoms post-concussion although an MRI with and without contrast did raise an issue of demyelination.
- The claimant since the MVA has had visual complaints of visual fatigue, photophobia, headache and difficulty with depth perception. Claimant has been followed by AP Dr. Higginbotham D.O. (occupational medicine) with periodic visits related mainly to treat his "disabling" symptoms e.g. dizziness, balance issues, speech issues, but he has also been treating his essential hypertension. The claimant was followed by an optometrist who diagnosed convergence insufficiency (CI) and initiated vision therapy treatment with prismatic glasses for the CI. The treatment resulted in definite improvement with the remote NPC decreasing to 4 inches. The subjective sensation of depth perception was also said to be improved. The visual acuity was 20/20 in each eye with a small myopic astigmatic refractive error.
- The first examination by the AP was 05/05/18 and the last examination 06/18/20 and during that time he has been treated for a variety of vision related symptoms largely under the categories of visual disturbance, unspecified and spatial disorientation. The convergence insufficiency treatment terminated in November 2018 and claimant separated from neuro-optometry possibly related to nonpayment for his visits.

- AP has acted as claimant's PCP for treatment of his essential hypertension first noted in the ED and still not controlled on last examination in June 2020.


Analysis and Support for Conclusions:

- The treatment for the convergence insufficiency is not detailed, monitored nor is there follow-up since 11/2018. Some of the problems with the optometric record are that there is no record of Worth Four Dot Test for binocularity, no stereopsis testing (measure of depth perception), no recording of detailed Cover Testing, no complete oculomotor testing, no complete phoria measurements, no detail of the orthoptic exercises prescribed, no mention of home computer software exercises, and no documentation of discussion with claimant of treatment plan/progress/goals and MMI, termination. There is reference by the AP to the fact that optometrist did not get paid for his services.
- The APs involvement has been over the course of more than a two-year period for a variety of poorly defined neurologic symptoms in the absence of confirmatory examination or imaging studies as to etiology. The examination record is paper not EHR largely confirming the ongoing symptoms most often related to speech, motor/ambulation balance issues, cognitive findings with little formal notations of the eye findings only the vague symptoms. Worrisome is the fact that the blood pressure is uncontrolled in many of the office visits despite treatment with medication by the AP. In many of office visits the BP reading is the only substantive and substantiated medical fact.
- No eye provider has seen the claimant in over 20 months and there is no evaluation by an ophthalmologist in the record. The AP constantly refers to the fact that claimant has no insurance as the implied reason he does not get the appropriate follow-up and evaluation, yet AP continues to see and receive payment (relayed in conversation with AP) while conveying a morally superior social stance about lack of insurance coverage that he insisted I relate and document in this report. The blood pressure is not controlled by the treatment provided by AP yet there is only vague reference to referral to a PCP in claimant's immediate residential area. There is minimal or no reference to repeated counseling to the claimant, part of standard exam/EHR protocol. The claimant with at least 2 ½ years of uncontrolled blood pressure remains a serious risk for an SAE either cardiovascular or cerebrovascular as well as end organ damage.
- In summary the medical facts support a mild concussion from MVA with subsequent diagnosis of convergence insufficiency which showed some definite positive response to optometric treatment. Imaging studies have not revealed causality for a wide range of symptoms. The diagnosis and continued treatment for the "spatial disorientation" from an ophthalmology perspective is not substantiated by any findings on the MRI or clinical eye examination, despite the AP's saying that the occipital lobe is involved in the pathology. Aside from the convergence insufficiency the causality of other vision related diagnoses would appear to be non-physiologic.


Records Reviewed:


**Lincoln/Bunch 0290**

Medical documents referred by Lincoln Financial Group as of today's date were reviewed, including the most recent medical treatment record in the file which is: 02/25/2020 OV, AP and latest office visit, 06/18/2020 confirmed by AP phone conversation but not in the chart.

AP Contact (if applicable)
Date of call 08/03/2020, Time 11:54amET
Date of call _____, Time _____
Date letter sent to AP: 08/06/2020
Electronically Signed:
Lloyd M. Wilcox, Jr. M.D.
Board Certified in Ophthalmology by the American Board of Ophthalmology
**Other Comments**
Other Comments - null

**Lincoln/Bunch 0291**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-3516

| | |
|---|---|
| Date:  July 30, 2020 | |
| To:   SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax:   (719) 635-0966 | |
| From:  Kirstie McGary<br>Recovery Specialist II, LFG<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 334-3516 | |
| Total Pages<br>(Including Cover):    2 | |
| RE:<br><br>Claim #:    8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0292**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-3516

July 30, 2020

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE 202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

I am following up on my letter dated June 30, 2020.   Please provide our office with a copy of Mr.
Bunch's Social Security Award as soon as possible.  Mr. Bunch should be able to obtain the
information by logging onto the SSA website and logging into his SS online account.

There he should be able to print out his benefit payment history showing when his benefits started,
the monthly amount due to him, any attorney fees paid and any lump sum payment he has received.
If he is unable to obtain this information via the website, please contact SSA to have a copy of the
original Notice of Award mailed.

If we do not receive this information by August 20, 2020 we will pursue overpayment recovery
through Mr. Bunch's monthly LTD benefits.

We appreciate your cooperation in this matter.

If you have any questions regarding this matter, please contact me.

Sincerely,

Kirstie McGary
Recovery Specialist II, LFG
Phone No.: (888) 437-7611 Ext. 16383
Secure Fax No.: (603) 334-3516

1  of  1

**Lincoln/Bunch 0293**

**ICP Memo**

| Customer Name | Claimant Name | Claim Number |
|---|---|---|
| CHARTER COMMUNICATIONS, INC. | MARK BUNCH | 8220685 |

| | | | |
|---|---|---|---|
| **Referred By:** | Danielle Davis | **Claimant DOB:** | |
| **Referral Date:** | 07/09/2020 | **Job Title:** | DIRECT SALES REP |
| **Due Date:** | 07/24/2020 | **Medical/ Surgical Condition:** | Vertical heterophoria |
| **Referral Type:** | Standard File Review | **Disability Occupational Type:** | |
| **Reason for Priority Handling:** | | **Product Type:** | LTD |
| **Other Considerations** | | **LDW:** | 02/13/2018 |
| **Report Date:** | 07/15/2020 | **DOD:** | 02/14/2018 |
| **Physical Demands:** | | **BBD:** | 08/15/2018 |
| **Non-Medical Issue:** | No | **Non-Medical Issue Details:** | |

**Core Questions**

1. Please identify the primary impairing Diagnosis(es) with ICD 10 code(s).

**This review is from an Occupational Medicine Perspective. Diagnoses from an Ophthalmologic perspective are deferred to recent Ophthalmology review. Neurologic and Neuropsychiatric Review were completed in April 2019. Diagnoses related to neurologic and neuropsychiatric perspective are deferred to these reports. Psychiatric review was completed in October 2019. Psychiatric Diagnoses are deferred to this report. Outside of the above noted areas there is no available evidence to support any medical diagnoses causing impairment.**

2. If applicable, please identify clinically significant comorbid Diagnosis(es) with ICD 10 code(s).

**The available medical evidence supports the following clinically significant comorbid diagnoses:**
- **Essential Hypertension**

3. Taking into consideration the entire clinical picture, including standards of care and evidence based medicine, and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 03/01/2020 to present, and comment on the expected duration.
a. If the medical records in the file do not support impairment and the need for restrictions and/or limitations during the above timeframe(s), provide a detailed explanation.

**Lincoln/Bunch 0294**

**This review is from an Occupational Medicine Perspective. Restrictions from an ophthalmologic perspective are deferred to recent ophthalmology review. Neurologic and Neuropsychiatric Review were completed in April 2019. Restrictions and limitations related to neurologic and neuropsychiatric perspective are deferred to these reports. Psychiatric review was completed in October 2019. Psychiatric Restrictions and limitations are deferred to this report. The available clinical evidence does not support medically appropriate restrictions and limitations outside the above noted reviews.**

4. Treatment Opportunities: Is the treatment provided consistent with the standard of care for the apparent level of severity of the condition(s)? Is there any evidence that the claimant is not compliant with treatment that meets the standard of care?

**Yes. The claimant underwent neuropsychiatric testing in May and August 2018. The initial testing was not validated in performance validity measures. Repeat testing could be performed to quantify neuropsychiatric dysfunction but has not been completed. The claimant reports severe neuropsychiatric dysfunction but does not appear to be under the care of a psychiatrist or a neurologist. The last Neurology visit in the available records is from October 2018. The claimant reports balance issues but no neuroimaging has been performed since the initial Emergency Room visit, and no physical or vestibular therapy has been completed except for a few sessions in June 2018. The claimant has reported post concussive symptoms but has not consistently been to a neurologist and has not been referred to a concussion clinic. No trial of rehabilitation related to this appears to have been tried. The records with Dr. Higginbotthom, Dr. Heffenstein and Dr. Staudenmeyer all make numerous references to ongoing psychiatric issues and depression, however there is no indication the claimant has undergone any meaningful treatment for these issues such as psychotherapy or pharmacological interventions. The claimant was briefly trialed on a Tricyclic Antidepressant for headaches after seeing Neurology Consult in October 2018. Overall there appear to be significant deficiencies in the claimant's treatment for ongoing issues.**

5. Are there any non-medical circumstances identified in the medical records that may interfere with work-related activities (e.g. workplace conflicts, child or elder care issues, or legal issues)?

**The available evidence does not indicate any non medical circumstance identified in the medical records that interfere with work related activities**

6. If AP contact may clarify any significant areas such as diagnosis, R&L's, treatment opportunities, prognosis, or reason for work absence, the AP contact information is:

**Name: DR. HIGGINBOTHAM  Phone Number: - (719) 260 8190 ex -----      Fax Number: (719) 260-6086**

**Additional Questions**

Other Please review the claim for change in definition as of 8/14/2020. Does the (overall functional and) medical evidence support the claimant has the ability to sustain fulltime

capacity (8/hours/day 5 days/ week) within the identified restrictions and limitations from 03/01/2020  to present? For each impairing diagnosis that is supported by the medical evidence, please outline reasonably supported restrictions and limitations, including duration and prognosis. Please define in terms of frequency (never, occasional, frequent, constant) and task (sit, stand, lift/carry, type etc.).

**From an Occupational Medicine perspective based on the available clinical evidence there are no identified restrictions and limitations from 03/01/2020 to present that would preclude full time work capacity.   The claimant reports cognitive and visual disturbance for which prior peer review has noted medically appropriate restrictions and limitations. The claimant underwent full battery of neuropsychiatric testing in May 2018 with Dr. Higginbotthom which failed to pass performance validity measures.  Case review was completed by Neuropsychologist Dr. Bellue 04/29/19 and restrictions related to neuropsychiatric conditions are deferred to this review.  Opthalmologic review was completed by Dr. Davitt 05/20/2019 and restrictions related to ophthalmologic condition are deferred to this review**.   **Psychiatric Review was completed 09/10/2018 by Dr. Young and restrictions and limitations related to these conditions are deferred to this review. The available records fail to reflect evidence to support otherwise medically necessary restrictions and limitations and there is no indication the claimant would require restrictions and limitations that would preclude full time work.**

**Case Summary/Analysis**

**This is a 57 year old male Direct Sales Representative Date of Disability 02/14/2018.**

**The claimant suffered a motor vehicle accident o 02/13/2018.   Emergency Room records from the incident note the claimant banged head off the steering wheel.  CT of the Head and Cervical Spine were unremarkable and the patient was discharged home after diagnosis of concussion.  The claimant reported persistent Headache, visual disturbance and cognitive dysfunction to PCP Dr Olson.  He completed a short course of Physical Therapy in May and June 2018.  He also completed Chiropractic Treatments with Dr. Michael Christiansen in July and August 2018.   On 05/03/2018 and 05/18/18 he underwent neuropsychiatric testing with Dr. Heffenstein which failed to pass performance validity measures and was inconclusive.  A second evaluation was completed with Dr. Staudemeyer 08/13/2018.   The claimant was referred to Dr. Higginbotthom Occupational Medicine for ongoing management of the injury and remained under his care from 05/03/2018 through at least 02/20/2020 for symptoms related to post concussion syndrome including headache, neck pain, anxiety, depression, vision problems and balance issues.  The claimant has not seen a neurologist since October 2018 and has completed no specific care for post concussion syndrome.  Brain MRI from March 21, 2018 was unremarkable.  The medical records reflect significant issues with anxiety and depression but there is no evidence the claimant has received ongoing psychiatric care. The claimant notes continued visual disturbance but the most recent ophthalmology notes from Dr. Saxerud appear to be from November 2018.**

**In Summary, the claimant reports continued varied symptoms of post concussion syndrome since MVA with minor head trauma over two years ago.   It is unusual for post concussion syndrome to last beyond 3 months.  The claimant has not completed any neuropsychiatric testing to quantify deficit and testing failed to pass performance validity measures.  There appears to be psychiatric comorbidities but the claimant does not get psychiatric care.   The available records indicate that the claimant has not seen his ophthalmologist since November 2018. Previous Psychiatric, Neurologic, Neuropsychiatric and Opthalmologic Reviews have provided medically necessary restrictions for these domains.  From an Occupational Medicine perspective there is no available clinical evidence that supports additional restrictions and limitations from 03/01/2020 to present. Review is reasonable 6 months from this report or if new information becomes available.**

**Records Reviewed**
**Dr Olson PCP Notes 04/03/18-07/06/2018**
**Emergency Room Records 02/13/2018**
**Neuropsychiatric Evaluation Dr Heffenstein 05/03/2018 and 05/18/2018**
**Physical Therapy Notes 05/31/2018-06/11/2018**
**Psychiatric Evaluation 08/13/2018 Dr. Staudemeyer**
**Job Description 01/31/2019**
**Occupational Medicine Peer Review Dr. Swotinsky 04/23/2019**
**Surveillance Report 05/03/2018**
**Neurology Consult 10/19/2018 Dr. Brinely**
**Rehabilitation Psychiatric Review 08/31/2018**
**Opthalmology Notes Dr. Saxerud 07/13/18-11/12/18**
**Abilities Form 02/18/2019 Dr. Higginbotthom**
**Neurology Review Dr. Markovitz 08/21/18**
**Psychiatric Review Dr Young 09/01/2018**
**Neuropsychiatric Review Dr. Bellue 04/29/2019**
**Occupational Analysis 05/16/2019**
**Opthalmology Review 05/20/2019 Dr. Davitt**
**Records Dr. Brinley DO 10/19/19**
**Correspondence Attorney Shakeshaft 06/04/19, 03/12/19**
**Surveillance Investigation 06/17/2019**
**Nursing Case Review November 13, 2019**
**Occupational Medicine Notes Dr. Higginbottham 05/03/2018-02/20/2018**

**Dr. Dennis Teehan MD MPH**
**Board Certified Occupational & Environmental Medicine**
**Electronically Signed**

**Lincoln/Bunch 0297**

# SHAKESHAFT & GORMAN LAW FIRM, LLP

1935 Jamboree Dr. | Suite 202 | Colorado Springs, CO 80920
Tel 719.635.5886 | Fax 719.635.0966 | www.shakeshaftlawfirm.com

FACSIMILE TRANSMISSION

**DATE**:                   June 30, 2020

**TO**:                       **Lincoln Financial Group – Kristie McCray**

**FROM**:                  Kenneth J. Shakeshaft

**PAGES INCLUDING COVER SHEET**:        2

**FAX NUMBER**:        603-334-3516

**REGARDING**:        Mark Bunch

**Comments**:           Claim Number: 8220685

                            Please see correspondence of today's date.

IF YOU DO NOT RECEIVE ALL THE PAGES OR IF ANY PART IS ILLEGIBLE, PLEASE CALL (719) 635-5886.

## NOTICE

THIS MESSAGE IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN PRIVILEGED OR CONFIDENTIAL INFORMATION WHICH IS EXEMPT FROM DISCLOSURE PURSUANT TO APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR IS NOT AN EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY OF THIS MESSAGE TO THE INTENDED RECIPIENT, DISTRIBUTION, COPYING OR OTHER DISSEMINATION OF THE INFORMATION CONTAINED IN THIS COMMUNICATION IS PROHIBITED. PLEASE CONTACT (719) 635-5886 AND RETURN THE ORIGINAL MESSAGE TO SHAKESHAFT LAW FIRM, 1935 JAMBOREE DRIVE, STE. 202, COLORADO SPRINGS, CO 80920.

**Lincoln/Bunch 0298**



**SHAKESHAFT-GORMAN**
······· LAW FIRM, LLP ·······

| | | |
|---|---|---|
| **Kenneth J. Shakeshaft** | • Attorney at Law | **Main Office** |
| **Joseph M. Gorman** | • Attorney at Law | Shakeshaft - Gorman Law Firm |
| Cindy Maddox | • Paralegal | 1935 Jamboree Drive, Suite 202 |
| Brandy Newton | • Paralegal | Colorado Springs, CO 80920 |

June 30, 2020

Via facsimile: 603-334-3516

Lincoln Financial Group
Attn: Kirstie McGray
Charlotte, NC

      RE:    Our client:    Mark Bunch
                    Claim No.:    8220685
                    Charter Communications, Inc.

Dear Ms. McGray:

In regard to your letter of June 4, 2020, I have some questions for you. First, it appears from the Lincoln Financial prior letter of 08/24/2019-the Workers' Compensation offset was considered and deducted starting with the 08/15/2019 check.

The only offset now at issue is his Social Security. Mr. Bunch does not recall getting an award letter from Social Security. I have found with my cases it is not unusual for Social Security not to send out an award letter. We are going to be requesting a copy of his Social Security file so we can verify the actual amounts and the retroactive date of his benefits.

Since the Workers' Compensation offset has been deducted effective 08/15/2019, please explain why the gross offset is at $52,101.00?

Also, Mr. Bunch incurred attorney fees and costs in obtaining his Workers' Compensation benefits. This obviously helps Lincoln Financial by providing an offset against the LTD benefits. Are these fees and costs deducted from the gross amount?

We ask action on the overpayment be put on hold until we can confirm the correct amount of the overpayment.

Sincerely,

*Kenneth J. Shakeshaft*

PHONE 719.635.5886 - FAX 719.635.0966 - TOLL FREE 1.800.383.5886
WWW.SHAKESHAFTANDGORMANLAW.COM - OFFICE@SHAKESHAFTANDGORMANLAW.COM

**Lincoln/Bunch 0299**

| Claim # | Check # | From Date | Thru Date | Check Issued | Gross Amt | SS Primary Disability |
|---|---|---|---|---|---|---|
| 8220685 | 32729149 | 8/15/2018 | 7/14/2019 | 7/30/2019 | $59,148.98 | $27,291.00 |
| 8220685 | 32744821 | 7/15/2019 | 8/14/2019 | 8/8/2019 | $5,377.18 | $2,481.00 |
| 8220685 | 32797919 | 8/15/2019 | 9/14/2019 | 9/9/2019 | $5,377.18 | $2,481.00 |
| 8220685 | 32849234 | 9/15/2019 | 10/14/2019 | 10/8/2019 | $5,377.18 | $2,481.00 |
| 8220685 | 100173479 | 10/15/2019 | 11/14/2019 | 11/8/2019 | $5,377.18 | $2,481.00 |
| 8220685 | 100369588 | 11/15/2019 | 12/14/2019 | 12/9/2019 | $5,377.18 | $2,481.00 |
| 8220685 | 100572454 | 12/15/2019 | 1/14/2020 | 1/8/2020 | $5,377.18 | $2,481.00 |
| 8220685 | 100779092 | 1/15/2020 | 2/14/2020 | 2/10/2020 | $5,377.18 | $2,481.00 |
| 8220685 | 100966227 | 2/15/2020 | 3/14/2020 | 3/9/2020 | $5,377.18 | $2,481.00 |
| 8220685 | 101169024 | 3/15/2020 | 4/14/2020 | 4/8/2020 | $5,377.18 | $2,481.00 |
| 8220685 | 101373196 | 4/15/2020 | 5/14/2020 | 5/8/2020 | $5,377.18 | $2,481.00 |
| 0 | 0 | 1/0/1900 | 1/0/1900 | 1/0/1900 | $0.00 | |
| 0 | 0 | 1/0/1900 | 1/0/1900 | 1/0/1900 | $0.00 | |
| 0 | 0 | 1/0/1900 | 1/0/1900 | 1/0/1900 | $0.00 | |
| 0 | 0 | 1/0/1900 | 1/0/1900 | 1/0/1900 | $0.00 | |
| | | | | Totals: | $112,920.78 | $52,101.00 |

**Lincoln/Bunch 0300**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-3516

| | |
|---|---|
| Date:  July 1, 2020 | |
| To:    SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax:   (719) 635-0966 | |
| From:  Kirstie McGary<br>Recovery Specialist II, LFG<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 334-3516 | |
| Total Pages<br>(Including Cover):    3 | |
| RE:<br><br>Claim #:    8220685<br>Claimant:  Mark Bunch<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0301**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-3516

July 1, 2020

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

We are responding to your letter dated June 30, 2020.  Attached please find a breakdown of all checks issued to Mr. Bunch and how they should have been paid with the estimated Social Security offset.

Since we have not received the Social Security Award information, this calculation is an estimate based on information obtained from the Social Security website effective back to the earliest date entitlement or August 2018.

The first check that issued to Mr. Bunch covered 11 months of benefits as you can see on the attached spreadsheet.

Please provide me with a copy of the Award Notice as soon as it is received from Social Security so we can update Mr. Bunch's LTD benefits and recalculate the overpayment if necessary.

If you have any questions regarding this matter, please contact me.

Sincerely,

Kirstie McGary
Recovery Specialist II, LFG
Phone No.: (888) 437-7611 Ext. 16383
Secure Fax No.: (603) 334-3516

Attachments:   8220685-RECOVERY/REPAYMENT-CALCULATION WORKSHEET-07.01.2020

1  of 1

**Lincoln/Bunch 0302**

| Claim # | Check # | From Date | Thru Date | Check Issued | Gross Amt | SS Primary Disability |
|---------|---------|-----------|-----------|--------------|-----------|------------------------|
| 8220685 | 32729149 | 8/15/2018 | 7/14/2019 | 7/30/2019 | $59,148.98 | $27,291.00 |
| 8220685 | 32744821 | 7/15/2019 | 8/14/2019 | 8/8/2019 | $5,377.18 | $2,481.00 |
| 8220685 | 32797919 | 8/15/2019 | 9/14/2019 | 9/9/2019 | $5,377.18 | $2,481.00 |
| 8220685 | 32849234 | 9/15/2019 | 10/14/2019 | 10/8/2019 | $5,377.18 | $2,481.00 |
| 8220685 | 100173479 | 10/15/2019 | 11/14/2019 | 11/8/2019 | $5,377.18 | $2,481.00 |
| 8220685 | 100369588 | 11/15/2019 | 12/14/2019 | 12/9/2019 | $5,377.18 | $2,481.00 |
| 8220685 | 100572454 | 12/15/2019 | 1/14/2020 | 1/8/2020 | $5,377.18 | $2,481.00 |
| 8220685 | 100779092 | 1/15/2020 | 2/14/2020 | 2/10/2020 | $5,377.18 | $2,481.00 |
| 8220685 | 100966227 | 2/15/2020 | 3/14/2020 | 3/9/2020 | $5,377.18 | $2,481.00 |
| 8220685 | 101169024 | 3/15/2020 | 4/14/2020 | 4/8/2020 | $5,377.18 | $2,481.00 |
| 8220685 | 101373196 | 4/15/2020 | 5/14/2020 | 5/8/2020 | $5,377.18 | $2,481.00 |
| 0 | 0 | 1/0/1900 | 1/0/1900 | 1/0/1900 | $0.00 | |
| 0 | 0 | 1/0/1900 | 1/0/1900 | 1/0/1900 | $0.00 | |
| 0 | 0 | 1/0/1900 | 1/0/1900 | 1/0/1900 | $0.00 | |
| 0 | 0 | 1/0/1900 | 1/0/1900 | 1/0/1900 | $0.00 | |
| | | | | Totals: | $112,920.78 | $52,101.00 |

**Lincoln/Bunch 0303**

| | | | | |
|---|---|---|---|---|
| | | **Claim Number (s): 8220685** | | |
| | | | | |
| | | **New Monthly Benefit** | | |
| Your Gross Benefit | | | | $5,377.18 |
| Less:  Other Income | | | | $3,812.65 |
| | | SS Primary | $2,481.00 | |
| | | SS Dependent | $0.00 | |
| | | Pension | $0.00 | |
| | | State Disability | $0.00 | |
| | | Workers Comp | $1,331.65 | |
| | | Total Other Income | $3,812.65 | |
| Your Adjusted Gross | | | | $1,564.53 |
| Less:  Taxes and Deductions | | | | $0.00 |
| | | | | |
| **Your Net Benefit** | | | | **$1,564.53** |
| | | | | |
| | | **Overpayment Calculation** | | |
| | | | | |
| Originally Paid | *8/15/2018* | *through* | *5/14/2020* | $82,590.51 |
| Less:  Should have Paid | *8/15/2018* | *through* | *5/14/2020* | $30,489.51 |
| | | | | |
| Overpayment Due | | | | $52,101.00 |
| Less:  Recovery of Prior Overpayment | | | | $0.00 |
| Less:  Attorney Fees | | | | $0.00 |
| Less:  Excess Fee | | | | $0.00 |
| | | | | |
| **Amount Due** | | | | **$52,101.00** |

**Lincoln/Bunch 0304**

## Calculation Worksheet

**Claimant Name: Mark Bunch**                                    **Customer: Charter Communications**

**Claim Number (s): 8220685**

| | | Overpayment Amount: | $ 52,101.00 |
|---|---|---|---|
| | | Underpayment Amount: | $0.00 |

| Originally Paid | | Should have Paid | |
|---|---|---|---|
| From Date | 8/15/2018 | From Date | 8/15/2018 |
| Thru Date | 5/14/2020 | Thru Date | 5/14/2020 |
| Total | $82,590.51 | Total | $30,489.51 |

| Credit | |
|---|---|
| OP Recovered (To Date): | $0.00 |
| Attorney Fees: | $0.00 |
| Excess Fees | $0.00 |
| Total: | $0.00 |

\* (-) indicates an underpayment

### ORIGINALLY PAID

| Claim # | Check # | From Date | Thru Date | Check Issued | Gross Amt | Offset(s) | Adjusted Gross Amt | Taxes/ Deductions | Net Amount |
|---|---|---|---|---|---|---|---|---|---|
| 8220685 | 32729149 | 8/15/2018 | 7/14/2019 | 7/30/2019 | $59,148.98 | $17,013.77 | $42,135.21 | $0.00 | $42,135.21 |
| 8220685 | 32744821 | 7/15/2019 | 8/14/2019 | 8/8/2019 | $5,377.18 | $1,331.65 | $4,045.53 | $0.00 | $4,045.53 |
| 8220685 | 32797919 | 8/15/2019 | 9/14/2019 | 9/9/2019 | $5,377.18 | $1,331.65 | $4,045.53 | $0.00 | $4,045.53 |
| 8220685 | 32849234 | 9/15/2019 | 10/14/2019 | 10/8/2019 | $5,377.18 | $1,331.65 | $4,045.53 | $0.00 | $4,045.53 |
| 8220685 | 100173479 | 10/15/2019 | 11/14/2019 | 11/8/2019 | $5,377.18 | $1,331.65 | $4,045.53 | $0.00 | $4,045.53 |
| 8220685 | 100369588 | 11/15/2019 | 12/14/2019 | 12/9/2019 | $5,377.18 | $1,331.65 | $4,045.53 | $0.00 | $4,045.53 |
| 8220685 | 100572454 | 12/15/2019 | 1/14/2020 | 1/8/2020 | $5,377.18 | $1,331.65 | $4,045.53 | $0.00 | $4,045.53 |
| 8220685 | 100779092 | 1/15/2020 | 2/14/2020 | 2/10/2020 | $5,377.18 | $1,331.65 | $4,045.53 | $0.00 | $4,045.53 |
| 8220685 | 100966227 | 2/15/2020 | 3/14/2020 | 3/9/2020 | $5,377.18 | $1,331.65 | $4,045.53 | $0.00 | $4,045.53 |
| 8220685 | 101169024 | 3/15/2020 | 4/14/2020 | 4/8/2020 | $5,377.18 | $1,331.65 | $4,045.53 | $0.00 | $4,045.53 |
| 8220685 | 101373196 | 4/15/2020 | 5/14/2020 | 5/8/2020 | $5,377.18 | $1,331.65 | $4,045.53 | $0.00 | $4,045.53 |
| 0 | 0 | 1/0/1900 | 1/0/1900 | 1/0/1900 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | | | | | | Totals: | $82,590.51 | $0.00 | $82,590.51 |

### SHOULD HAVE PAID

| Claim # | Check # | From Date | Thru Date | Check Issued | Gross Amt | SS Primary Disability | SS Dependent Disability | Workers' Comp | Adjusted Gross Amt | Taxes/ Deductions | Revised Net Amount | Amount Due* |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8220685 | 32729149 | 8/15/2018 | 7/14/2019 | 7/30/2019 | $59,148.98 | $27,291.00 | | $17,013.77 | $14,844.21 | $0.00 | $14,844.21 | $27,291.00 |
| 8220685 | 32744821 | 7/15/2019 | 8/14/2019 | 8/8/2019 | $5,377.18 | $2,481.00 | | $1,331.65 | $1,564.53 | $0.00 | $1,564.53 | $2,481.00 |
| 8220685 | 32797919 | 8/15/2019 | 9/14/2019 | 9/9/2019 | $5,377.18 | $2,481.00 | | $1,331.65 | $1,564.53 | $0.00 | $1,564.53 | $2,481.00 |
| 8220685 | 32849234 | 9/15/2019 | 10/14/2019 | 10/8/2019 | $5,377.18 | $2,481.00 | | $1,331.65 | $1,564.53 | $0.00 | $1,564.53 | $2,481.00 |
| 8220685 | 100173479 | 10/15/2019 | 11/14/2019 | 11/8/2019 | $5,377.18 | $2,481.00 | | $1,331.65 | $1,564.53 | $0.00 | $1,564.53 | $2,481.00 |
| 8220685 | 100369588 | 11/15/2019 | 12/14/2019 | 12/9/2019 | $5,377.18 | $2,481.00 | | $1,331.65 | $1,564.53 | $0.00 | $1,564.53 | $2,481.00 |
| 8220685 | 100572454 | 12/15/2019 | 1/14/2020 | 1/8/2020 | $5,377.18 | $2,481.00 | | $1,331.65 | $1,564.53 | $0.00 | $1,564.53 | $2,481.00 |
| 8220685 | 100779092 | 1/15/2020 | 2/14/2020 | 2/10/2020 | $5,377.18 | $2,481.00 | | $1,331.65 | $1,564.53 | $0.00 | $1,564.53 | $2,481.00 |
| 8220685 | 100966227 | 2/15/2020 | 3/14/2020 | 3/9/2020 | $5,377.18 | $2,481.00 | | $1,331.65 | $1,564.53 | $0.00 | $1,564.53 | $2,481.00 |
| 8220685 | 101169024 | 3/15/2020 | 4/14/2020 | 4/8/2020 | $5,377.18 | $2,481.00 | | $1,331.65 | $1,564.53 | $0.00 | $1,564.53 | $2,481.00 |
| 8220685 | 101373196 | 4/15/2020 | 5/14/2020 | 5/8/2020 | $5,377.18 | $2,481.00 | | $1,331.65 | $1,564.53 | $0.00 | $1,564.53 | $2,481.00 |
| 0 | 0 | 1/0/1900 | 1/0/1900 | 1/0/1900 | $0.00 | | | | $0.00 | $0.00 | $0.00 | $0.00 |
| 0 | 0 | 1/0/1900 | 1/0/1900 | 1/0/1900 | $0.00 | | | | $0.00 | $0.00 | $0.00 | $0.00 |
| 0 | 0 | 1/0/1900 | 1/0/1900 | 1/0/1900 | $0.00 | | | | $0.00 | $0.00 | $0.00 | $0.00 |
| 0 | 0 | 1/0/1900 | 1/0/1900 | 1/0/1900 | $0.00 | | | | $0.00 | $0.00 | $0.00 | $0.00 |
| | | | | Totals: | $112,920.78 | $52,101.00 | $0.00 | $30,330.27 | $30,489.51 | $0.00 | $30,489.51 | $52,101.00 |

**Lincoln/Bunch 0305**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-3516

| | |
|---|---|
| Date:  June 4, 2020 | |
| To:    SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax:    (719) 635-0966 | |
| From:  Kirstie McGary<br>Recovery Specialist II, LFG<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 334-3516 | |
| Total Pages<br>(Including Cover):    4 | |
| RE:<br><br>Claim #:    8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0306**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-3516

June 4, 2020

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

Your client's file has been referred to Financial Review Services for an overpayment calculation as we have been advised that he was awarded Social Security benefits back to the effective date of August 1, 2018.  As we have not received a copy of the complete Award Notice, this calculation is an estimate based on the effective date above.  This letter and the attached estimated overpayment summary outline the impact of that award on your client's benefits from Lincoln Life Assurance Company of Boston.

Since Lincoln Life Assurance Company of Boston paid your client disability benefits for the period of May 15, 2018 through May 14, 2020 with no reduction for Social Security benefits, he is now overpaid under the terms of his Policy.

Total Overpayment Amount:     $52,101.00
Payment Due Date:             June 25, 2020

The attached exhibit explains the calculation of your client's $52,101.00 overpayment balance, which you are required to repay Lincoln Life Assurance Company of Boston and we ask that this matter receive your immediate attention.

Please send a check or money order payable to Lincoln Life Assurance Company of Boston in the return envelope provided or to the following address:

Refund/Recoveries
Group Protection Disability Claims
Lincoln Life Assurance Company of Boston
PO Box 26028
Greensboro, NC 27420-6028

**Lincoln/Bunch 0307**

Please ensure your payment contains the claim number provided in this letter.

If you are unable to remit payment in full please contact our office by June 25, 2020 to make appropriate arrangements to refund this amount.

If we do not hear from you or if we do not receive payment by June 25, 2020, under the terms of your client's policy we are required to apply his disability benefit to the above overpayment until the balance is paid in full.  Lincoln Life Assurance Company of Boston reserves the right to forward this file to an external Collection Agency.

If this information is incorrect, please provide a copy of your client's <u>complete</u> Award letter so that we can determine if a recalculation is necessary on your claim. If we do not receive a complete copy of your award letter by June 25, 2020 the overpayment amount stated in this letter will be due and payable to Lincoln Life Assurance Company of Boston.

If you have any questions regarding this matter, please contact me.

Sincerely,

Kirstie McGary
Recovery Specialist II, LFG
Phone No.: (888) 437-7611 Ext. 16383
Secure Fax No.: (603) 334-3516

CC:    Mark Bunch


Attachments:   8220685-RECOVERY/REPAYMENT-CORRESPONDENCE-06.04.2020

Lincoln/Bunch 0308

| Claim Number (s): 8220685 | | | |
|---|---|---|---|
| **New Monthly Benefit** | | | |
| Your Gross Benefit | | | $5,377.18 |
| Less: Other Income | | | $3,812.65 |
| | SS Primary | $2,481.00 | |
| | SS Dependent | $0.00 | |
| | Pension | $0.00 | |
| | State Disability | $0.00 | |
| | Workers Comp | $1,331.65 | |
| | Total Other Income | $3,812.65 | |
| Your Adjusted Gross | | | $1,564.53 |
| Less: Taxes and Deductions | | | $0.00 |
| **Your Net Benefit** | | | **$1,564.53** |
| **Overpayment Calculation** | | | |
| Originally Paid | *8/15/2018 through* | *5/14/2020* | $82,590.51 |
| Less: Should have Paid | *8/15/2018 through* | *5/14/2020* | $30,489.51 |
| Overpayment Due | | | $52,101.00 |
| Less: Recovery of Prior Overpayment | | | $0.00 |
| Less: Attorney Fees | | | $0.00 |
| Less: Excess Fee | | | $0.00 |
| **Amount Due** | | | **$52,101.00** |

**Lincoln/Bunch 0309**

Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213

MR. MARK BUNCH

**Lincoln/Bunch 0310**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-3516

June 4, 2020

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE 202
COLORADO SPRINGS, CO 80920

RE:   Long Term Disability (LTD) Benefits
      Charter Communications, Inc.
      Claim #: 8220685
      Claimant: Mark Bunch

To Whom It May Concern:

Your client's file has been referred to Financial Review Services for an overpayment calculation as we have been advised that he was awarded Social Security benefits back to the effective date of August 1, 2018.  As we have not received a copy of the complete Award Notice, this calculation is an estimate based on the effective date above.  This letter and the attached estimated overpayment summary outline the impact of that award on your client's benefits from Lincoln Life Assurance Company of Boston.

Since Lincoln Life Assurance Company of Boston paid your client disability benefits for the period of May 15, 2018 through May 14, 2020 with no reduction for Social Security benefits, he is now overpaid under the terms of his Policy.

Total Overpayment Amount:      $52,101.00
Payment Due Date:              June 25, 2020

The attached exhibit explains the calculation of your client's $52,101.00 overpayment balance, which you are required to repay Lincoln Life Assurance Company of Boston and we ask that this matter receive your immediate attention.

Please send a check or money order payable to Lincoln Life Assurance Company of Boston in the return envelope provided or to the following address:

Refund/Recoveries
Group Protection Disability Claims
Lincoln Life Assurance Company of Boston
PO Box 26028
Greensboro, NC 27420-6028

Lincoln/Bunch 0311

Please ensure your payment contains the claim number provided in this letter.

If you are unable to remit payment in full please contact our office by June 25, 2020 to make appropriate arrangements to refund this amount.

If we do not hear from you or if we do not receive payment by June 25, 2020, under the terms of your client's policy we are required to apply his disability benefit to the above overpayment until the balance is paid in full.  Lincoln Life Assurance Company of Boston reserves the right to forward this file to an external Collection Agency.

If this information is incorrect, please provide a copy of your client's <u>complete</u> Award letter so that we can determine if a recalculation is necessary on your claim. If we do not receive a complete copy of your award letter by June 25, 2020 the overpayment amount stated in this letter will be due and payable to Lincoln Life Assurance Company of Boston.

If you have any questions regarding this matter, please contact me.

Sincerely,

Kirstie McGary
Recovery Specialist II, LFG
Phone No.: (888) 437-7611 Ext. 16383
Secure Fax No.: (603) 334-3516

CC:    Mark Bunch


Attachments:   8220685-RECOVERY/REPAYMENT-CORRESPONDENCE-06.04.2020

**Lincoln/Bunch 0312**



**SHAKESHAFT-GORMAN**
LAW FIRM, LLP

| | | |
|---|---|---|
| **Kenneth J. Shakeshaft** | • Attorney at Law | **Main Office** |
| **Joseph M. Gorman** | • Attorney at Law | Shakeshaft - Gorman Law Firm |
| Cindy Maddox | • Paralegal | 1935 Jamboree Drive, Suite 202 |
| Brandy Newton | • Paralegal | Colorado Springs, CO 80920 |

May 27, 2020

Via facsimile: 603-559-0490

Lincoln Financial Group
Attn: Danielle Davis
Charlotte, NC

RE:    Our client:    Mark Bunch
       Claim No.:    8220685
       Charter Communications, Inc.

Dear Ms. Davis,

We have asked Mr. Bunch for this information and as soon as it is received, we will provide to Lincoln Financial.

If you would like to send a release so you can obtain his payment information, please let us know.

Sincerely,

*Kenneth J. Shakeshaft*

Kenneth J. Shakeshaft

PAGE 1/1 * RCVD AT 5/27/2020 6:40:02 PM [Eastern Daylight Time] * SVR:VA1PWFAX101/4 * DNIS:6035590490 * CSID:eComFax Service * ANI:12486023158 * DURATION (mm-ss):00-35

**Lincoln/Bunch 0313**

Case No. 1:21-cv-02896-LTB-MDB    Document 14-3    filed 05/03/22    USDC Colorado    pg 250 of 658

Social Security Online

# Benefit Calculators

Benefit Calculators



## Quick Calculator Benefit Estimates
May 26, 2020

### Retirement

At right is the information you provided. Below that are estimated benefit amounts for retirement at 3 different ages, including your normal (or full) retirement age (67). We assume you will work every year up to the year in which you begin receiving benefits.

As shown in the table, you can receive a monthly benefit starting at age 62 and 1 month that would be reduced for life due to early retirement. If you choose to delay the start of benefits to a higher age, you can then receive a larger monthly benefit for the rest of your life.

For example, if you start taking benefits at age 62 and 1 month, you will receive $1,788 per month for the rest of your life. But if you wait until age 67 to start receiving benefits, you will get $2,628 for the rest of your life. So by waiting until age 67, you can then receive $840 more per month than if you started lower monthly benefits at 62 and 1 month. Remember, these estimated figures are in today's dollars.

Social Security benefits are the foundation on which to build a financially secure retirement. Savings and pensions also are key components of your retirement plan.

### Information you submitted

| Date of birth: | |
|---|---|
| Current earnings: **$107,543.00** | |
| Benefit in **year-2020** dollars | |

### Retirement Benefit Estimates

| Retirement age | Monthly benefit amount [1] |
|---|---|
| 62 and 1 month in 2025 | $1,788.00 |
| 67 in 2030 | $2,628.00 |
| 70 in 2033 | $3,318.00 |

[1] Assumes no future increases in prices or earnings.

We have calculated your benefits by making certain assumptions about your past earnings. Please look at these earnings to see if they appear reasonable to you. You can change them and see the effect on your benefit estimates!

See the earnings we used

### Disability/Survivor

For disability and survivors estimates, we assumed that you became disabled or died **today**. We did not use future earnings in calculating those estimates.

| Disability | Monthly benefit amount |
|---|---|
| You | $2,481.00 |

Your spouse and children may also qualify for benefits.

| Survivors | Monthly benefit amount |
|---|---|
| Your child | $1,861.00 |
| Your spouse caring for your child | $1,861.00 |
| Your spouse at normal retirement age | $2,481.00 |
| Family maximum | $4,343.50 |

Lincoln/Bunch 0314



Centura Health
8140 S. Holly Street
Centennial, CO 80122

# PLEASE DO NOT DISCARD

## INITIAL CLAIM

## and/or

## MEDICAL RECORDS ENCLOSED

Date:                  5/11/2020
Request Number:  34451403
Page Count:        19

**Attached you will find either a Claim and Medical Records
or Medical Records Only to assist in processing a claim
already received for the following:**

Patient Name:       MARK BUNCH
Medical Facility:    Penrose-St. Francis Health Services

Payor on file:       Danielle Davis
Organization:       Lincoln Financial Group

Medical Records retrieved and sent by:

MRO Corporation on behalf of Centura Health

**Lincoln/Bunch 0315**

**Penrose St. Francis Health Services**
2222 N. Nevada Ave.
Colorado Springs, CO 80907

## NO RECORDS STATEMENT

I, the undersigned, being the assigned employee for the Release of Information Company contracted by Centura Health to process medical record requests for this facility, declare that a thorough search of the hospital's files, revealed:

- o No Patient matching the given name, DOB or SSN has had treatment at the facility named above

- ☒ No records for the Date of Service(s) requested at the facility named above

- o No Additional records to be released from the facility named above

- o Records have been destroyed pursuant to the Standards of Hospitals & Health Care Facilities of the Colorado Department of Public Health

- o Other ___No Records from 2-26-20 – 4-6-20.___

Records requested for: ___Mark Bunch___
<span>Patient Name</span>

<span>Patient date of birth</span>

Records requested by: ___Lincoln Financial Group___
<span>Name of requesting party or organization</span>

Date of request: ___4/6/20___
<span>Date</span>

Name: ___Lyndsey Blackwell___
<span>Print Name</span>

Title: ___Release of Information Specialist___
<span>Print Title</span>

Signed On: ___4/29/20___
<span>Date</span>

**Lincoln/Bunch 0316**

04/06/20  09:26:23  Lincoln Financial    →    7197765125 Lincoln Financial Gr Page 001



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| **Date:** April 6, 2020 | |
| **To:** PENROSE OUTPATIENT REHABILITATION | |
| **Attn:** | MRO<br>APR 0 6 2020<br>Initials: |
| **Fax:** (719) 776-5125 | |
| **From:** Danielle Davis<br>Ltd Specialist I<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 | |
| **Total Pages**<br>**(Including Cover):**   5 | |
| **RE:**<br><br>Claim #:   8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1.ª de septiembre de 2019, Liberty Life Assurance Company of Boston cambió su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto plazo recibirá un Endoso que debe adjuntarse a su póliza una vez recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

Lincoln/Bunch 0317

04/06/20  09:26:34  Lincoln Financial    →    7197765125 Lincoln Financial Gr Page 002



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

April 6, 2020

Penrose Outpatient Rehabilitation

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch
       Claimant D.O.B.:

To Whom It May Concern:

We are the Disability Claim Administrator for your patient, Mark Bunch.

To evaluate Mr. Bunch's eligibility for disability benefits and to help facilitate a return to work,
when appropriate, we are requesting the following information:

- Office treatment notes, test results, prescription histories, and treatment plans from
  February 26, 2020 through present

We ask that you provide this information by April 13, 2020. Failure to provide the requested
information may result in an adverse benefit or claim determination. The information can be faxed
to our office at our secure fax number (603) 559-0490 or mailed to the above address.

If prepayment is required, please fax an invoice indicating the number of pages, federal tax ID# and
amount due.

If you have any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
Ltd Specialist I
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

Attachments:  8220685-EMPLOYEE/CLAIMANT-AUTHORIZATION-10.01.2019

1 of 1

Lincoln/Bunch 0318

04/06/20   09:26:45   Lincoln Financial  ->           7197765125 Lincoln Financial Gr Page 003

# SHAKESHAFT & GORMAN LAW FIRM, LLP

1935 Jamboree Dr. | Suite 202 | Colorado Springs, CO 80920
Tel 719.635.5886 | Fax 719.635.0966 ; www.shakeshaftlawfirm.com

## FACSIMILE TRANSMISSION

| | |
|---|---|
| **DATE:** | September 30, 2019 |
| **TO:** | Lincoln Financial Group |
| **FROM:** | Brandy Newton| Paralegal |
| **PAGES INCLUDING COVER SHEET:** | 3 |
| **FAX NUMBER:** | 603-559-0490 |
| **REGARDING:** | Mark Bunch |
| **Comments:** | Claim Number: 8220685 |

Please see the following correspondence of today's date.

IF YOU DO NOT RECEIVE ALL THE PAGES OR IF ANY PART IS ILLEGIBLE, PLEASE CALL (719) 635-5886.

### NOTICE

THIS MESSAGE IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN PRIVILEGED OR CONFIDENTIAL INFORMATION WHICH IS EXEMPT FROM DISCLOSURE PURSUANT TO APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR IS NOT AN EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY OF THIS MESSAGE TO THE INTENDED RECIPIENT, DISTRIBUTION, COPYING OR OTHER DISSEMINATION OF THE INFORMATION CONTAINED IN THIS COMMUNICATION IS PROHIBITED. PLEASE CONTACT (719) 635-5886 AND RETURN THE ORIGINAL MESSAGE TO SHAKESHAFT LAW FIRM, 1935 JAMBOREE DRIVE, STE. 202, COLORADO SPRINGS, CO 80920.

PAGE 1/3 * RCVD AT 9/30/2019 7:32:33 PM [Eastern Daylight Time] * SVR:VA1PWFAX301/3 * DNIS:6035590490 * CSID:7196350956 * ANI:7196350956 * DURATION (mm-ss):01-31___

Lincoln/Bunch 0319

04/86/28  09:26:56  Lincoln Financial    ->    7197765125 Lincoln Financial Gr Page 004



## SHAKESHAFT-GORMAN
### — LAW FIRM, LLP —

| | | |
|---|---|---|
| Kenneth J. Shakeshaft | • Attorney at Law | Main Office |
| Joseph M. Gorman | • Attorney at Law | Shakeshaft - Gorman Law Firm |
| Cindy Maddox | • Paralegal | 1935 Jamboree Drive, Suite 102 |
| Brandy Newton | • Paralegal | Colorado Springs, CO 80910 |

September 30, 2019

Via facsimile: 603-559-0490

Lincoln Financial Group
Attn: Danielle Davis
Charlotte, NC

      RE:    Our client:    Mark Bunch
                Claim No.:    8220685
                Charter Communications, Inc.

Dear Ms. Davis,

Attached please find the executed Release for Centura Health.

Please contact our office with any questions.

Sincerely,

Brandy Newton, Paralegal
Attachments

PHONE 719.633.5196 - FAX 719.633.0966 - TOLL FREE 1.800.HURT.975
WWW.SHAKESHAFTANDGORMANLAW.COM - OFFICE@SHAKESHAFTANDGORMANLAW.COM

PAGE 2/3 * RCVD AT 9/30/2019 7:32:33 PM [Eastern Daylight Time] * SVR:VA1PVEFAX301/3 * DNIS:6035590490 * CSID:7195350955 * ANI:17195350955 * DURATION (mm-ss):01-31

Lincoln/Bunch 0320

04/06/20  09:27:04  Lincoln Financial    →    7197765125 Lincoln Financial Gr Page 005

Sep 03 2019 14:00:30 EDT Liberty Mutual Insur    MSG# 1661057256-005-1    Page 003 OF 003
5854344

## Centura Health.  Page 1 of 1

Patient Authorization to Disclose Protected Health Information
#CHGR-004 rev. 12/12

Patient Label

## Patient Authorization to Disclose Protected Health Information

| Patient Name | Date of Birth | Last 4 of Social Security Number |
|---|---|---|
| BUNCH, MARK | | |

| Address | City, State Zip Code | Telephone Number |
|---|---|---|

I hereby authorize the facility listed below to disclose/release the Protected Health Information specified in this request to the organization, agency or patient named.

**Release by:** PENROSE MAIN ST. FRANCIS HOSPITAL
Facility
2222 N NEVADA AVE
Address
COLORADO SPRINGS CO 80907
City, State, Zip Code

HIM Phone/Fax Number

**Release to:** Lincoln Financial Group (c/o Release Point)
Organization, Agency, Individual
Attn: PO Box 1390
Address: St. Peters MO 63376
City, State Zip Code

**Treatment Dates:** From Patient:  To, From:

**Purpose:** ☐ Further Medical Care  ☐ Workers' Comp  ☐ Personal Use  ☐ Insurance  ☐ Legal  ☐ Marketing/Fundraising  ☒ Other  Claims, Disability Insurance

**Type of Disclosure Authorized & Delivery Instructions:**
☒ Provide copies of records to organization/agency/individual
☐ Mail records directly to address above
☐ Call to pick-up records
☐ Fax records for

**Patient Protected Health Information Allowed to be Included:**
☒ Discharge Summary    ☐ Radiology    ☐ Special Studies    ☐ Entire Medical Record
☐ History & Physical/Consult    ☐ Output Record    ☐ Medication Records
☐ Operative Report    ☐ Progress Notes    ☐ Psych Health Records
☐ Labs    ☐ Physician Orders    ☒ Other specify: all PHI excluding x-ray films

*Psychotherapy Notes are distinct and may not be included with the disclosure of any other protected health information. A Patient Authorization to Disclose Psychotherapy Notes must be completed.

**SIGNATURE:** [signature]    **DATE:** 9/19/19

Minor's signature is required for release of any records for treatment which the minor may authorize under Colorado Law.
Relationship (if other than patient): _____  ☐ Power of Attorney  ☐ Death Certificate
Name of individual signing on behalf of patient: _____
Verification: ☐ Drivers License #_____  ☐ Other Appropriate ID _____

**OFFICE USE ONLY:** Attach copies of required identification.
Number of pages released: _____  Completion date: _____  Delivery method: _____
Name of individual who received request: _____  Date received: _____
Patient Medical Record Number / Account Number: _____

Lincoln/Bunch 0321

04/13/20  10:18:47  Lincoln Financial    → FAXCOMAnywhere    Lincoln Financial Gr Page 001



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date: April 13, 2020 | |
| To:    MRO | |
| Attn: | |
| Fax:    (610) 962-8421 | |
| From:  Danielle Davis<br>Ltd Specialist I<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 | |
| Total Pages<br>(Including Cover):    7 | |
| RE:<br><br>Claim #:    8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1.ª de septiembre de 2019, Liberty Life Assurance Company of Boston cambió su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto plazo recibirá un Endoso que debe adjuntarse a su póliza una vez recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

Lincoln/Bunch 0322



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

April 13, 2020

Mro

RE:   Long Term Disability (LTD) Benefits
      Charter Communications, Inc.
      Claim #: 8220685
      Claimant: Mark Bunch
      Claimant D.O.B.:

To Whom It May Concern:

Enclosed is a copy of Mark Bunch's authorization form.

If you have any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
Ltd Specialist I
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

Attachments:   8220685-EMPLOYEE/CLAIMANT-AUTHORIZATION-10.01.2019
               8220685-MEDICAL-CORRESPONDENCE-04.13.2020

1 of 1

Lincoln/Bunch 0323

04/13/20  18:19:22  Lincoln Financial    -> FAXCOMAnywhere    Lincoln Financial Gr Page 083

# SHAKESHAFT & GORMAN LAW FIRM, LLP

1935 Jamboree Dr. | Suite 202 | Colorado Springs, CO 80920
Tel 719.635.5886 | Fax 719.635.0966 | www.shakeshaftlawfirm.com

## FACSIMILE TRANSMISSION

**DATE:**          September 30, 2019

**TO:**            Lincoln Financial Group

**FROM:**          Brandy Newton| Paralegal

**PAGES INCLUDING COVER SHEET:** 3

**FAX NUMBER:**    603-559-0490

**REGARDING:**     Mark Bunch

**Comments:**      Claim Number: 8220685

Please see the following correspondence of today's date.

IF YOU DO NOT RECEIVE ALL THE PAGES OR IF ANY PART IS ILLEGIBLE, PLEASE CALL (719) 635-5886.

### NOTICE

THIS MESSAGE IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN PRIVILEGED OR CONFIDENTIAL INFORMATION WHICH IS EXEMPT FROM DISCLOSURE PURSUANT TO APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR IS NOT AN EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY OF THIS MESSAGE TO THE INTENDED RECIPIENT, DISTRIBUTION, COPYING OR OTHER DISSEMINATION OF THE INFORMATION CONTAINED IN THIS COMMUNICATION IS PROHIBITED. PLEASE CONTACT (719) 635-5886 AND RETURN THE ORIGINAL MESSAGE TO SHAKESHAFT LAW FIRM, 1935 JAMBOREE DRIVE, STE. 202, COLORADO SPRINGS, CO 80920.

PAGE 1/3 * RCVD AT 9/30/2019 7:32:38 PM [Eastern Daylight Time] * SVR:VA1PWFAX301/3 * DNIS:6035590490 * CSID:7196350956 * ANI:17196350956 * DURATION (mm-ss):01-31

Lincoln/Bunch 0324



# SHAKESHAFT-GORMAN
## — LAW FIRM, LLP —

| | | |
|---|---|---|
| Kenneth J. Shakeshaft | • Attorney at Law | **Main Office** |
| Joseph M. Gorman | • Attorney at Law | Shakeshaft - Gorman Law Firm |
| Cindy Maddox | • Paralegal | 1935 Jamboree Drive, Suite 202 |
| Brandy Newton | • Paralegal | Colorado Springs, CO 80920 |

September 30, 2019

Via facsimile: 603-559-0490

Lincoln Financial Group
Attn: Danielle Davis
Charlotte, NC

     RE:    Our client:    Mark Bunch
               Claim No.:    8220685
               Charter Communications, Inc.

Dear Ms. Davis,

Attached please find the executed Release for Centura Health.

Please contact our office with any questions.

Sincerely,

Brandy Newton / Paralegal
Attachments

PHONE 719.635.5135 - FAX 719.635.0966 - TOLL FREE 1.800.383.5875
WWW.SHAKESHAFTANDGORMANLAW.COM - OFFICE@SHAKESHAFTANDGORMANLAW.COM

Lincoln/Bunch 0325

Sep 09 2019 14:00:30 EDT Liberty Mutual Insur    HSG 1661852260-005-1    Page 003 OF 003
5054344

## ✚ Centura Health    Page 1 of 1

Patient Authorization to Disclose Protected Health Information
#CHGR-004 rev. 12/12

| Patient Label |
| --- |

### Patient Authorization to Disclose Protected Health Information

| Patient Name | Date of Birth | Last 4 of Social Security Number |
| --- | --- | --- |
| BUNCH, MARK | | |
| Address | City, State, Zip Code | Telephone Number |

I hereby authorize the facility listed below to disclose/release the Protected Health Information specified in this request to the organization, agency or patient named.

| Release by: PENROSE MAIN ST. FRANCIS HOSPITAL | Release to: Lincoln Financial Group (c/o ReleasePoint) |
| --- | --- |
| Facility | Organization, Agency, Individual |
| 2222 N. NEVADA AVE | Attn: PO Box 1380 |
| Address | Address: St. Peters  MO  63376 |
| COLORADO SPRINGS CO 80907 | City, State, Zip Code |
| City, State, Zip Code | |
| H&S Phone/Fax Numbers | |

Treatment Dates: From  To, From
Purpose: ☐ Further Medical Care  ☐ Workers' Comp
☐ Personal Use  ☐ Insurance  ☐ Legal
☐ Marketing/Fundraising
☒ Other  Claims - Disability Insurance

Type of Disclosure Authorized & Delivery Instructions:
☒ Provide copies of records to organization/agency/individual
☒ Mail records directly to address above
☐ Call to pick-up records
☐ Fax records to _____

Pertinent Protected Health Information Allowed to be included:
☐ Discharge Summary    ☐ Radiology    ☐ Special Studies    ☐ Entire Medical Record
☐ History & Physical/Consult    ☐ O/Pt Record    ☐ Medication Records
☐ Operative Report    ☐ Progress Notes    ☐ Psych Health Records
☐ Labs    ☐ Physician Orders    ☒ Other specify  all PHI excluding x-ray films

Psychotherapy Notes are distinct and may not be included with the disclosure of any other protected health information. A Patient Authorization to Disclose Psychotherapy Notes must be completed.

Authorization: I certify that this list is made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time in writing by submitting my request in writing to the designated Health Information Management / Medical Records department. If I have authorized the disclosure of my health information to someone who is not legally required to keep it private, it may be re-disclosed and may no longer be protected. A copy or fax of this authorization will be as valid as the original.

I understand that authorizing disclosure of health information is voluntary. I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment, payment, or my eligibility to obtain benefits. I understand that I may inspect or obtain a copy of the information to be disclosed. I understand a fee may be charged for copies of my medical record. I understand the facility will provide me a copy of the signed authorization form. If I have questions about disclosure of my health information, I can contact the designated Corporate Responsibility and Privacy Officer.

Expiration: Without my express revocation, this authorization will automatically expire upon satisfaction of the need for disclosure, but in any event will expire 90 days from the date hereof, unless a different date is specified herein. 180 days after signature date.

Acknowledgement: I understand that the information to be disclosed may include any or all information involving communicable or venereal disease, psychological or psychiatric conditions, drug or alcohol abuse and/or alcoholism. It may also include, but is not limited to, diseases such as hepatitis, syphilis, gonorrhea and human immunodeficiency virus (HIV), also known as acquired immune deficiency syndrome (AIDS).

For Marketing/Fundraising Purposes Only: If applicable, I understand that Centura Health ☐ will ☐ will not  receive remuneration, either direct or indirect, as a result of the marketing that I hereby authorize.

Signature: _____    Date: 9/5/11
Patient (Parent if Dependent Authorized)

Minor's signature is required for release of any records for treatment which the minor may authorize under Colorado Law.
Relationship (if other than patient): _____    ☐ Power of Attorney    ☐ Death Certificate
Name of individual signing on behalf of patient: _____
Verification: ☐ Drivers License #    ☐ Other Appropriate ID _____

OFFICE USE ONLY: Attach copies of required identification.
Number of pages released: _____    Completion date: _____    Delivery method: _____
Name of individual who received request: _____    Date /s/ /sign: _____
Patient Medical Record Number / Account Number: _____

Lincoln/Bunch 0326

04/13/28  18:28:59  Lincoln Financial    -> FAXCOMAnywhere    Lincoln Financial Gr Page 886



**MRO**
1000 Madison Avenue, Suite 100
Norristown, PA 19403

Fax:    (610) 962-8421
Phone: (610) 994-7500 Opt. 1

Request ID: 34451403
Tracking #: CENTE9MDEF9KX

**Danielle Davis**
Lincoln Financial Group
P.O. Box 7207
Liberty Life Assur. Co. of Boston
London, KY  40742

Track your request at www.roilog.com.
Enter your Tracking # and Request ID.

Date:    4/8/2020
Phone:  8443845858
Fax:     603-559-0490

### Notice of an Issue Regarding Your Medical Record Information Request

MRO works with your healthcare provider to process requests for copies of medical records on their behalf. There is an issue with your medical record request (see below). In order to resolve this issue; please fax the information requested to MRO at (610) 962-8421. Upon receipt of the requested information, your request will be processed as quickly as possible.

**Please note that you may be billed for a search/retrieval fee if you cancel your request.**

Should you have any questions, please feel free to contact MRO directly regarding this request by dialing (610) 994-7500 Opt. 1 or by submitting an email to RequestInformation@mrocorp.com. To help us better assist you, please be sure to include your Request ID in the subject line of your email.

MRO is processing your request in accordance with HIPAA regulations. Please notify the patient that the provision of treatment, payment, enrollment, or eligibility for benefits will not be conditioned on the elements of the authorization provided or your request for copies of the patient's records, unless permitted under 45 CFR 164.508(c)(2)(ii)(A)-(B).

Thank you,
**MRO**

Patient Name:  **MARK BUNCH**          Your Request Date:
                                        Your Reference Number:
                                        Date Received at Facility:  4/7/2020

Your request is being processed by MRO on behalf of the following facility:

Facility:      **Penrose-St. Francis Health Services**
               2222 North Nevada Avenue
               Colorado Springs, CO  80907

| ISSUE LIST |
| --- |
| **Illegible Authorization**<br>Your authorization is illegible. Please mail/fax a legible authorization to the address/fax number shown above. |

Lincoln/Bunch 0327

04/13/20  18:21:25  Lincoln Financial    -> FAXCOMAnywhere    Lincoln Financial Gr Page 007

## ✚ Centura Health® Page 1 of 1

**Patient Authorization to Disclose Protected Health Information**
**#CHCR-004 rev. 12/12**

AUTHP10

| Patient Label |
| --- |
|  |

# Patient Authorization to Disclose Protected Health Information

| Patient Name | Date of Birth | Last 4 of Social Security Number |
| --- | --- | --- |
|  |  |  |

| Address | City, State, Zip Code | Telephone Number |
| --- | --- | --- |
|  |  |  |

**I hereby authorize the facility listed below to disclose/release the Protected Health Information specified in this request to the organization, agency or patient named.**

| Release by: _____ | Release to: _____ |
| --- | --- |
| Facility | Organization, Agency, Individual |
| Address | Attn: |
| City, State, Zip Code | Address |
| HIM Phone/Fax Numbers | City, State, Zip Code |

| Treatment Date(s): _____ | Type of Disclosure Authorized & Delivery Instructions: |
| --- | --- |
| **Purpose:** ☐ Further Medical Care  ☐ Workers' Comp  ☐ Personal Use  ☐ Insurance  ☐ Legal  ☐ Marketing/Fundraising  ☐ Other:___ | ☐ Provide copies of records to organization/agency/individual  ☐ Mail records directly to address above  ☐ Call to pick-up records: ___  ☐ Fax records to: ___ |

**Pertinent Protected Health Information Allowed to be included:**

| | | | |
| --- | --- | --- | --- |
| ☐ Discharge Summary | ☐ Radiology | ☐ Special Studies | ☐ Entire Medical Record |
| ☐ History & Physical/Consult | ☐ Outpt Record | ☐ Medication Records | |
| ☐ Operative Report | ☐ Progress Notes | ☐ Psych Health Records | |
| ☐ Labs | ☐ Physician Orders | ☐ Other (specify): ___ | |

*Psychotherapy Notes are distinct and may not be included with the disclosure of any other protected health information.*
*A Patient Authorization to Disclose Psychotherapy Notes must be completed.*

**Authorization:** I certify that this request is made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time in writing by submitting my request in writing to the designated Health Information Management / Medical Records department. If I have authorized the disclosure of my health information to someone who is not legally required to keep it private, it may be re-disclosed and may no longer be protected. A copy or fax of this authorization will be as valid as the original.
I understand that authorizing disclosure of health information is voluntary. I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment, payment, or my eligibility to obtain benefits. I understand that I may inspect or obtain a copy of the information to be disclosed. I understand a fee may be charged for copies of my medical record. I understand the facility will provide me a copy of the signed authorization form. If I have questions about disclosure of my health information, I can contact the designated Corporate Responsibility and Privacy Officer.
**Expiration:** Without my express revocation, this authorization will automatically expire upon satisfaction of the need for disclosure, but in any event will expire 90 days from the date hereof, unless a different date is specified here:___
**Acknowledgement:** I understand that the information to be disclosed may include any or all information involving communicable or venereal disease, psychological or psychiatric conditions, drug or alcohol abuse and/or alcoholism. It may also include, but is not limited to, diseases such as hepatitis, syphilis, gonorrhea and human immunodeficiency viruses (HIV), also known as acquired immune deficiency syndrome (AIDS).
**For Marketing/Fundraising Purposes Only, if applicable:** I understand that Centura Health ☐ will  ☐ will not  receive remuneration, either direct or indirect, as a result of the marketing that I hereby authorize.

**SIGNATURE:** _____    **DATE:** _____
Patient (Parent or Legal Guardian)

Minor's signature is required for release of any records for treatment which the minor may authorize under Colorado Law.
*Relationship (if other than patient):* _____    ☐ Power of Attorney    ☐ Death Certificate
*Name of individual signing on behalf of patient:*
**Verification:** ☐ Drivers License # _____    ☐ Other Appropriate ID:_____

**OFFICE USE ONLY: Attach copies of required identification.**
Number of pages released: ___    Completion date: ___    Delivery method: ___
Name of individual who received request: ___    Date received: ___
Patient Medical Record Number / Account Number: ___ / ___

**Lincoln/Bunch 0328**

04/20/20  08:58:11  Lincoln Financial    -> FAXCOMAnywhere    Lincoln Financial Gr Page 001



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| **Date:** April 20, 2020 | |
| **To:** MRO | |
| **Attn:** | |
| **Fax:** (610) 962-8421 | |
| **From:** Danielle Davis<br>Ltd Specialist I<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 | |
| **Total Pages**<br>(Including Cover):   5 | |
| **RE:**<br><br>Claim #:    8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1.º de septiembre de 2019, Liberty Life Assurance Company of Boston cambió su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto plazo recibirá un Endoso que debe adjuntarse a su póliza una vez recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

Lincoln/Bunch 0329

04/20/20  08:58:31  Lincoln Financial    -> FAXCOMAnywhere    Lincoln Financial Gr Page 002



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

April 20, 2020

Mro

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch
       Claimant D.O.B.:

To Whom It May Concern:

Please review the update.

If you have any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
Ltd Specialist I
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

Attachments:    8220685-MEDICAL-CORRESPONDENCE-04.15.2020
                8220685-EMPLOYEE/CLAIMANT-AUTHORIZATION-04.20.2020

1 of 1

Lincoln/Bunch 0330

04/28/20  88:58:46  Lincoln Financial      -> FAXCOMAnywhere      Lincoln Financial Gr Page 883



**MRO**
1000 Madison Avenue, Suite 100
Norristown, PA 19403

Fax:     (610) 962-8421
Phone:   (610) 994-7500 Opt. 1

Request ID: 34451403
Tracking #: CENTE9MDEF9KX

**Danielle Davis**
Lincoln Financial Group
P.O. Box 7207
Liberty Life  Assur. Co. of Boston
London, KY  40742

Track your request at www.roilog.com.
Enter your Tracking # and Request ID.

Date:    4/14/2020
Phone:   8443845858
Fax:     603-559-0490

### Notice of an Issue Regarding Your Medical Record Information Request

MRO works with your healthcare provider to process requests for copies of medical records on their behalf.
There is an issue with your medical record request (see below). In order to resolve this issue; please fax the
information requested to MRO at (610) 962-8421. Upon receipt of the requested information, your request will be
processed as quickly as possible.

Please note that you may be billed for a search/retrieval fee if you cancel your request.

Should you have any questions, please feel free to contact MRO directly regarding this request by dialing
(610) 994-7500 Opt. 1 or by submitting an email to Requestinformation@mrocorp.com.
To help us better assist you, please be sure to include your Request ID in the subject line of your email.

MRO is processing your request in accordance with HIPAA regulations. Please notify the patient that the provision of
treatment, payment, enrollment, or eligibility for benefits will not be conditioned on the elements of the authorization
provided or your request for copies of the patient's records, unless permitted under 45 CFR 164.508(c)(2)(ii)(A)-(B).

Thank you,
**MRO**

Patient Name:  **MARK BUNCH**        Your Request Date:
                                      Your Reference Number:
                                      Date Received at Facility:  4/7/2020

**Your request is being processed by MRO on behalf of the following facility:**

Facility:    **Penrose-St. Francis Health Services**
             2222 North Nevada Avenue
             Colorado Springs, CO  80907

| ISSUE LIST |
| --- |
| **Illegible Authorization**<br>Your authorization is illegible. Please mail/fax a legible authorization to the address/fax number shown above. |

Page 1 of 1

Lincoln/Bunch 0331

04/20/20  00:59:12  Lincoln Financial       -> FAXCOMAnywhere       Lincoln Financial Gr Page 004

✚ **Centura Health®** Page 1 of 1

| | Patient Label |
|---|---|

Patient Authorization to Disclose Protected Health Information
#CHCR-004 rev. 12/12

AUTIPII

## Patient Authorization to Disclose Protected Health Information

| Patient Name | Date of Birth | Last 4 of Social Security Number |
|---|---|---|
| Address | City, State, Zip Code | Telephone Number |

I hereby authorize the facility listed below to disclose/release the Protected Health Information specified in this request to the organization, agency or patient named.

| Release by: | Release to: |
|---|---|
| Facility | Organization, Agency, Individual |
| Address | Attn: |
| City, State, Zip Code | Address |
| HIM Phone/Fax Numbers | City, State, Zip Code |

Treatment Date(s):_____

**Purpose:** ☐ Further Medical Care  ☐ Workers' Comp
☐ Personal Use  ☐ Insurance  ☐ Legal
☐ Marketing/Fundraising
☐ Other:_____

**Type of Disclosure Authorized & Delivery Instructions:**
☐ Provide copies of records to organization/agency/individual
  ☐ Mail records directly to address above
  ☐ Call to pick-up records:_____
  ☐ Fax records to: _____

**Pertinent Protected Health Information Allowed to be Included:**

| | | | |
|---|---|---|---|
| ☐ Discharge Summary | ☐ Radiology | ☐ Special Studies | ☐ Entire Medical Record |
| ☐ History & Physical/Consult | ☐ Outpt Record | ☐ Medication Records | |
| ☐ Operative Report | ☐ Progress Notes | ☐ Psych Health Records | |
| ☐ Labs | ☐ Physician Orders | ☐ Other (specify): _____ | |

*\*Psychotherapy Notes are distinct and may not be included with the disclosure of any other protected health information. A Patient Authorization to Disclose Psychotherapy Notes must be completed.*

**Authorization:** I certify that this request is made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time in writing by submitting my request in writing to the designated Health Information Management / Medical Records department. If I have authorized the disclosure of my health information to someone who is not legally required to keep it private, it may be re-disclosed and may no longer be protected. A copy or fax of this authorization will be as valid as the original.

I understand that authorizing disclosure of health information is voluntary. I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment, payment, or my eligibility to obtain benefits. I understand that I may inspect or obtain a copy of the information to be disclosed. I understand a fee may be charged for copies of my medical record. I understand the facility will provide me a copy of the signed authorization form. If I have questions about disclosure of my health information, I can contact the designated Corporate Responsibility and Privacy Officer.

**Expiration:** Without my express revocation, this authorization will automatically expire upon satisfaction of the need for disclosure, but in any event will expire 90 days from the date hereof, unless a different date is specified here:_____

**Acknowledgement:** I understand that the information to be disclosed may include any or all information involving communicable or venereal disease, psychological or psychiatric conditions, drug or alcohol abuse and/or alcoholism. It may also include, but is not limited to, diseases such as hepatitis, syphilis, gonorrhea and human immunodeficiency viruses (HIV), also known as acquired immune deficiency syndrome (AIDS).

**For Marketing/Fundraising Purposes Only, if applicable:** I understand that Centura Health ☐ will  ☐ will not  receive remuneration, either direct or indirect, as a result of the marketing that I hereby authorize.

| SIGNATURE: _____ | DATE: _____ |
|---|---|
| Patient (Parent or Legal Guardian) | |

Minor's signature is required for release of any records for treatment which the minor may authorize under Colorado Law.

Relationship (if other than patient): _____  ☐ Power of Attorney  ☐ Death Certificate

Name of individual signing on behalf of patient:

Verification: ☐ Drivers License # _____  ☐ Other Appropriate ID: _____

**OFFICE USE ONLY: Attach copies of required identification.**

Number of pages released:          Completion date:          Delivery method:

Name of individual who received request: _____          Date received:_____

Patient Medical Record Number / Account Number: _____  / _____

Lincoln/Bunch 0332

04/28/20  08:59:52  Lincoln Financial      -> FAXCOMAnywhere     Lincoln Financial Gr Page 005

## Patient Authorization to Disclose Protected Health Information

BUNCH, MARCI.

Lincoln/Bunch 0333



**Centura Health.** Page 1 of 1

Patient Authorization to Disclose Protected Health Information
#CHCR-004 rev. 12/12

AUTIPH

| | Patient Label |
|---|---|

## Patient Authorization to Disclose Protected Health Information

| Patient Name | Date of Birth | Last 4 of Social Security Number |
|---|---|---|
| BUNCH, MARK | | |
| **Address** | **City, State, Zip Code** | **Telephone Number** |

I hereby authorize the facility listed below to disclose/release the Protected Health Information specified in this request to the organization, agency or patient named.

| Release by: PENROSE MAIN ST. FRANCIS HOSPITAL | Release to: Lincoln Financial Group (c/o ReleasePoint) |
|---|---|
| Facility 2222 N NEVADA AVE | Organization, Agency, Individual |
| Address COLORADO SPRINGS CO 80907 | Attn: PO Box 1390 |
| City, State, Zip Code | Address St. Peters  MO  63376 |
| HIM Phone/Fax Numbers | City, State, Zip Code |

| Treatment Date(s): FROM: 2301/2019   TO: Present | Type of Disclosure Authorized & Delivery Instructions: |
|---|---|
| Purpose: ☐ Further Medical Care  ☐ Workers' Comp | ☒ Provide copies of records to organization/agency/individual |
| ☐ Personal Use  ☐ Insurance  ☐ Legal | ☒ Mail records directly to address above |
| ☐ Marketing/Fundraising | ☐ Call to pick-up records: _____ |
| ☒ Other: Claims - Disability Insurance | ☐ Fax records to: _____ |

Pertinent Protected Health Information Allowed to be Included:

| | | |
|---|---|---|
| ☐ Discharge Summary | ☐ Radiology | ☐ Special Studies   ☐ Entire Medical Record |
| ☐ History & Physical/Consult | ☐ Outpt Record | ☐ Medication Records |
| ☐ Operative Report | ☐ Progress Notes | ☐ Psych Health Records |
| ☐ Labs | ☐ Physician Orders | ☒ Other (specify: all PHI, excluding x-ray films _____ |

*Psychotherapy Notes are distinct and may not be included with the disclosure of any other protected health information. A Patient Authorization to Disclose Psychotherapy Notes must be completed.*

**Authorization:** I certify that this request is made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time in writing by submitting my request in writing to the designated Health Information Management / Medical Records department. If I have authorized the disclosure of my health information to someone who is not legally required to keep it private, it may be re-disclosed and may no longer be protected. A copy or fax of this authorization will be as valid as the original.

I understand that authorizing disclosure of health information is voluntary. I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment, payment, or my eligibility to obtain benefits. I understand that I may inspect or obtain a copy of the information to be disclosed. I understand a fee may be charged for copies of my medical record. I understand the facility will provide me a copy of the signed authorization form. If I have questions about disclosure of my health information, I can contact the designated Corporate Responsibility and Privacy Officer.

**Expiration:** Without my express revocation, this authorization will automatically expire upon satisfaction of the need for disclosure, but in any event will expire 90 days from the date hereof, unless a different date is specified here: 180 days after signature date

**Acknowledgement:** I understand that the information to be disclosed may include any or all information involving communicable or venereal disease, psychological or psychiatric conditions, drug or alcohol abuse and/or alcoholism. It may also include, but is not limited to, diseases such as hepatitis, syphilis, gonorrhea and human immunodeficiency viruses (HIV), also known as acquired immune deficiency syndrome (AIDS).

**For Marketing/Fundraising Purposes Only,** if applicable: I understand that Centura Health ☐ will  ☐ will not  receive remuneration, either direct or indirect, as a result of the marketing that I hereby authorize.

| SIGNATURE: _____ | DATE: 9/19/17 |
|---|---|
| Patient, Parent or Legal Guardian | |

Minor's signature is required for release of any records for treatment which the minor may authorize under Colorado Law.

Relationship (if other than patient): _____ ☐ Power of Attorney   ☐ Death Certificate

Name of individual signing on behalf of patient: _____

Verification: ☐ Drivers License # _____ ☐ Other Appropriate ID: _____

**OFFICE USE ONLY:** Attach copies of required identification.

Number of pages released: _____ Completion date: _____ Delivery method: _____

Name of individual who received request: _____ Date received: _____

Patient Medical Record Number / Account Number: _____ /_____

**Lincoln/Bunch 0334**

MRO
1000 Madison Avenue
Suite 100
Norristown, PA 19403

Shipment #23055520
MARK BUNCH
Invoice #34451403
19 pages

Danielle Davis
Lincoln Financial Group
P.O. Box 7207
Liberty Life Assur. Co. of Boston
London, KY 40742

Lincoln/Bunch 0335



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-3516

| | |
|---|---|
| **Date:** May 8, 2020 | |
| **To:** | SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 |
| **Attn:** | |
| **Fax:** | (719) 635-0966 |
| **From:** | Kirstie McGary<br>Recovery Specialist II, LFG<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 334-3516 |
| **Total Pages**<br>**(Including Cover):** 2 | |
| **RE:**<br><br>Claim #:    8220685<br>Claimant:  Mark Bunch<br><br>Charter Communications, Inc. | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1.  de septiembre de 2019, Liberty Life Assurance Company of Boston cambi   su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto pla o recibir   un Endoso que debe adjuntarse a su p li a una ve recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0336**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-3516

May 8, 2020

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

Mr. Bunch's claim has been referred to me by his Disability Case Manager because he has been awarded Social Security Benefits.

To assist us with the proper recalculation of his claim, please provide a ***complete*** copy of his, and/or his dependents, Notice of Award letters, which have been received from the Social Security Administration.

As Mr. Bunch's case manager discussed, Charter Communications, Inc.'s disability policy requires us to reduce his disability benefits by the amount of income received from other sources of income, including Social Security. This also includes anything paid to his dependents if applicable.

We expect to receive these documents by May 22, 2020.

Should you wish to remit the award information electronically you can send this via email to: Disabilitydocuments@LFG.com

If we do not receive the requested information by May 22, 2020, we will calculate the overpayment back to the earliest date of entitlement.
If you have any questions regarding this matter, please contact me.

Sincerely,

Kirstie McGary
Recovery Specialist II, LFG
Phone No.: (888) 437-7611 Ext. 16383
Secure Fax No.: (603) 334-3516

1  of  1

**Lincoln/Bunch 0337**

| From: | LFGNotifications@LFG.com |
|---|---|
| Sent: | Friday, May 8, 2020 2:42:54 PM |
| To: | OFFICE@SHAKESHAFTLAWFIRM.COM; |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Charter Communications, Inc. Claim No. 8220685 Mark Bunch |
| Attachments: | 2hryhy6gkom1kgj3algp_8316856.pdf; |

**Important**

Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

**Importante**

Vigente a partir del 1.º de septiembre de 2019, Liberty Life Assurance Company of Boston cambió su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto plazo recibirá un Endoso que debe adjuntarse a su póliza una vez recibido.

This notification contains important information regarding a claim with Liberty Life Assurance Company of Boston, now a Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

**Lincoln/Bunch 0338**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-3516

May 8, 2020

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

Mr. Bunch's claim has been referred to me by his Disability Case Manager because he has been awarded Social Security Benefits.

To assist us with the proper recalculation of his claim, please provide a *complete* copy of his, and/or his dependents, Notice of Award letters, which have been received from the Social Security Administration.

As Mr. Bunch's case manager discussed, Charter Communications, Inc.'s disability policy requires us to reduce his disability benefits by the amount of income received from other sources of income, including Social Security. This also includes anything paid to his dependents if applicable.

We expect to receive these documents by May 22, 2020.

Should you wish to remit the award information electronically you can send this via email to: Disabilitydocuments@LFG.com

If we do not receive the requested information by May 22, 2020, we will calculate the overpayment back to the earliest date of entitlement.
If you have any questions regarding this matter, please contact me.

Sincerely,

Kirstie McGary
Recovery Specialist II, LFG
Phone No.: (888) 437-7611 Ext. 16383
Secure Fax No.: (603) 334-3516

1  of  1

**Lincoln/Bunch 0339**

04/29/2020 3:54:47 PM -0400 FAXCOM                                        PAGE 1    OF 1

*PREPAYMENT REQUIRED*

**MRO**
1000 Madison Avenue, Suite 100
Norristown, PA 19403

**Invoice**
34451403
April 29, 2020


**MRO**

Phone: **(610) 994-7500 Opt. 1**
Fax: **(610) 962-8421**

**Danielle Davis**
Lincoln Financial Group
P.O. Box 7207
Liberty Life  Assur. Co. of Boston
London, KY  40742

On  4/7/2020   the following healthcare provider received your request for copies of medical records:
**Penrose-St. Francis Health Services**
2222 North Nevada Avenue
Colorado Springs, CO  80907

You requested records for:  MARK BUNCH

This is your invoice for providing the copies of the medical records.

Your Reference ID:

MRO Request ID:    34451403
MRO Online Tracking Number:  CENTE9MDEF9KX

**You can track and pay for your request online at:**
**www.roilog.com**

Records consisting of more than 75 pages may
be sent on CD-ROM.

Cancelled requests or unpaid invoices may be
subject to a cancellation fee.

**Fees**

| | |
|---|---|
| Search and Retrieval Fee: | $18.53 |
| Number of Pages: | 1 |
| Tier 1: | $0.00 |
| Tier 2: | $0.00 |
| Tier 3: | $0.00 |
| Media pages/materials: | 0 |
| Media Fee: | $0.00 |
| Certification Fee: | $0.00 |
| Adjustments: | $0.00 |
| Postage: | $1.45 |
| Sales Tax: | $0.00 |
| TOTAL: | $19.98 |
| Paid at Facility: | ( $0.00) |
| Paid to MRO: | ( $0.00) |
| **BALANCE DUE:** | $19.98 |

**PAYMENT**

*You may pay  this invoice online at:*
**www.roilog.com**
*You can send  a check* to:
**MRO**
P.O. Box 6410,
Southeastern, PA 19398-6410

MRO Tax ID (EIN): 01-0661910

*Please write the Invoice # on the check or
return this invoice with the payment.*

By paying this invoice, you are representing that you: have reviewed, understood, and approved the charges; have agreed to pay them; and have agreed to the following terms. Any dispute relating to the charges in this invoice must be presented before paying this invoice. Any dispute not so presented is waived.  Presentation of a dispute must be made by telephone (610) 994-7500 Opt. 1. Upon presentation of a dispute, your payment of the invoice will be noted as made under protest pending resolution of the dispute presented. All disputes regarding the charges in this invoice, whether presented by you or by MRO, must be resolved by arbitration under the Federal Arbitration Act through one or more neutral arbitrators before the American Arbitration Association (AAA). Your dispute will be resolved by the arbitrators, and not by a judge or a jury. Class arbitrations are not permitted. Disputes must be brought only in the claimant's individual capacity and not as a representative or member of a class. An arbitrator may not consolidate your dispute with the dispute of anyone else nor preside over any form of class proceeding. Upon request by you at the time a dispute is presented, MRO will pay the AAA fee for arbitration of your dispute.

**Please contact MRO at (610) 994-7500 Opt. 1 for any questions regarding this invoice.**
**MRO is the medical copy request processor for:**
**Penrose-St. Francis Health Services.**

**Lincoln/Bunch 0340**

04/24/2020 11:00:56 AM -0400 FAXCOM                                          PAGE 1    OF 2

**MRO**
1000 Madison Avenue, Suite 100
Norristown, PA 19403



Fax:      (610) 962-8421
Phone:    (610) 994-7500 Opt. 1

**Request ID: 34451403**
**Tracking #: CENTE9MDEF9KX**

**Danielle Davis**
Lincoln Financial Group
P.O. Box 7207
Liberty Life  Assur. Co. of Boston
London, KY  40742

**Track your request at www.roilog.com.**
**Enter your Tracking # and Request ID.**

Date:      4/24/2020
Phone:    8443845858
Fax:        603-559-0490

### Notice of an Issue Regarding Your Medical Record Information Request

MRO works with your healthcare provider to process requests for copies of medical records on their behalf. There is an issue with your medical record request (see below). In order to resolve this issue; please fax the information requested to MRO at (610) 962-8421. Upon receipt of the requested information, your request will be processed as quickly as possible.

**Please note that you may be billed for a search/retrieval fee if you cancel your request.**

Should you have any questions, please feel free to contact MRO directly regarding this request by dialing (610) 994-7500 Opt. 1 or by submitting an email to Requestinformation@mrocorp.com.
To help us better assist you, please be sure to include your Request ID in the subject line of your email.

MRO is processing your request in accordance with HIPAA regulations. Please notify the patient that the provision of treatment, payment, enrollment, or eligibility for benefits will not be conditioned on the elements of the authorization provided or your request for copies of the patient's records, unless permitted under 45 CFR 164.508(c)(2)(ii)(A)-(B).

Thank you,
**MRO**

Patient Name:  **MARK BUNCH**

Your Request Date:
Your Reference Number:
Date Received at Facility:   4/7/2020

**Your request is being processed by MRO on behalf of the following facility:**

Facility:        **Penrose-St. Francis Health Services**
2222 North Nevada Avenue
Colorado Springs, CO  80907

| ISSUE LIST |
| --- |
| **Illegible Authorization**<br>Your authorization is illegible. Please mail/fax a legible authorization to the address/fax number shown above. |

PAGE 1/2 * RCVD AT 4/24/2020 11:01:05 AM [Eastern Daylight Time] * SVR:VA1PWFAX401/11 * DNIS:6035590490 * CSID: * ANI: * DURATION (mm-ss):01-20

**Lincoln/Bunch 0341**

 **Page 1 of 1**

Patient Authorization to Disclose Protected Health Information
#CHCR-004 rev. 12/12

| Patient Label |
| --- |


AUTHPHI

## Patient Authorization to Disclose Protected Health Information

| Patient Name | Date of Birth | Last 4 of Social Security Number |
| --- | --- | --- |
| Address | City, State, Zip Code | Telephone Number |

**I hereby authorize the facility listed below to disclose/release the Protected Health Information specified in this request to the organization, agency or patient named.**

Release by:
Facility _____
Address _____
City, State, Zip Code _____
HIM Phone/Fax Numbers _____

Release to:
Organization, Agency, Individual _____
Attn: _____
Address _____
City, State, Zip Code _____

**Treatment Date(s):** _____
**Purpose:** ☐ Further Medical Care  ☐ Workers' Comp
☐ Personal Use  ☐ Insurance  ☐ Legal
☐ Marketing/Fundraising
☐ Other: _____

**Type of Disclosure Authorized & Delivery Instructions:**
☐ Provide copies of records to organization/agency/individual
☐ Mail records directly to address above
☐ Call to pick-up records: _____
☐ Fax records to: _____

**Pertinent Protected Health Information Allowed to be Included:**
☐ Discharge Summary   ☐ Radiology        ☐ Special Studies      ☐ Entire Medical Record
☐ History & Physical/Consult  ☐ Outpt Record  ☐ Medication Records
☐ Operative Report    ☐ Progress Notes   ☐ Psych Health Records
☐ Labs               ☐ Physician Orders ☐ Other (specify): _____
*Psychotherapy Notes are distinct and may not be included with the disclosure of any other protected health information.*
*A Patient Authorization to Disclose Psychotherapy Notes must be completed.*

**Authorization:** I certify that this request is made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time in writing by submitting my request in writing to the designated Health Information Management / Medical Records department. If I have authorized the disclosure of my health information to someone who is not legally required to keep it private, it may be re-disclosed and may no longer be protected. A copy or fax of this authorization will be as valid as the original.
I understand that authorizing disclosure of health information is voluntary. I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment, payment, or my eligibility to obtain benefits. I understand that I may inspect or obtain a copy of the information to be disclosed. I understand a fee may be charged for copies of my medical record. I understand the facility will provide me a copy of the signed authorization form. If I have questions about disclosure of my health information, I can contact the designated Corporate Responsibility and Privacy Officer.
**Expiration:** Without my express revocation, this authorization will automatically expire upon satisfaction of the need for disclosure, but in any event will expire 90 days from the date hereof, unless a different date is specified here: _____
**Acknowledgement:** I understand that the information to be disclosed may include any or all information involving communicable or venereal disease, psychological or psychiatric conditions, drug or alcohol abuse and/or alcoholism. It may also include, but is not limited to, diseases such as hepatitis, syphilis, gonorrhea and human immunodeficiency viruses (HIV), also known as acquired immune deficiency syndrome (AIDS).
**For Marketing/Fundraising Purposes Only, if applicable:** I understand that Centura Health ☐ will  ☐ will not  receive remuneration, either direct or indirect, as a result of the marketing that I hereby authorize.

**SIGNATURE:** _____  **DATE:** _____
Patient (Parent or Legal Guardian)
Minor's signature is required for release of any records for treatment which the minor may authorize under Colorado Law.
*Relationship (if other than patient):* _____  ☐ Power of Attorney    ☐ Death Certificate
*Name of individual signing on behalf of patient:* _____
**Verification:** ☐ Drivers License # _____  ☐ Other Appropriate ID: _____

**OFFICE USE ONLY: Attach copies of required identification.**
Number of pages released: _____ Completion date: _____  Delivery method: _____
Name of individual who received request: _____  Date received: _____
Patient Medical Record Number / Account Number: _____ / _____

**Lincoln/Bunch 0342**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date:  April 23, 2020 | |
| **To:**  SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax:    (719) 635-0966 | |
| From:  Danielle Davis<br>Ltd Specialist I<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 | |
| Total Pages<br>(Including Cover):    2 | |
| RE:<br><br>Claim #:    8220685<br>Claimant:  Mark Bunch<br><br>Charter Communications, Inc. | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1. de septiembre de 2019, Liberty Life Assurance Company of Boston cambi  su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto pla o recibir  un Endoso que debe adjuntarse a su p li a una ve recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0343**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

April 23, 2020

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

If you  are approved for Social Security Disability benefits, the disability benefits received by you
from Liberty Life Assurance Company of Boston will be reduced by the amount you receive from
Social Security. In other words, you will continue to receive the same amount of monthly benefits,
but the money will come from two sources. If you are entitled to retroactive benefits, you may
receive a significant payment from Social Security. This money is essentially money that Liberty
Life Assurance Company of Boston advanced to you while you were waiting for Social Security s
decision, and you must repay it immediately upon our request.

Please confirm if the claimant has been approved for Social Security Disability benefits and provide
a copy of his award letter for the claim.

If you have any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
Ltd Specialist I
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

1  of 1

**Lincoln/Bunch 0344**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date:  April 20, 2020 | |
| To:    MRO | |
| Attn: | |
| Fax:   (610) 962-8421 | |
| From:  Danielle Davis<br>Ltd Specialist I<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 | |
| Total Pages<br>(Including Cover):    5 | |
| RE:<br><br>Claim #:    8220685<br>Claimant:  Mark Bunch<br><br>Charter Communications, Inc. | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1. de septiembre de 2019, Liberty Life Assurance Company of Boston cambi  su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto pla o recibir  un Endoso que debe adjuntarse a su p li a una ve recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0345**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

April 20, 2020

 Mro

RE:     Long Term Disability (LTD) Benefits
        Charter Communications, Inc.
        Claim #: 8220685
        Claimant: Mark Bunch
        Claimant D.O.B.:

To Whom It May Concern:

Please review the update.

If you have any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
Ltd Specialist I
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

Attachments:   8220685-MEDICAL-CORRESPONDENCE-04.15.2020
               8220685-EMPLOYEE/CLAIMANT-AUTHORIZATION-04.20.2020

**Lincoln/Bunch 0346**

04/14/2020 11:07:26 AM -0400 FAXCOM

PAGE 1     OF 2

**MRO**
1000 Madison Avenue, Suite 100
Norristown, PA 19403

**MRO**

Fax:     (610) 962-8421
Phone:   (610) 994-7500 Opt. 1

**Request ID: 34451403**
**Tracking #: CENTE9MDEF9KX**

**Danielle Davis**
Lincoln Financial Group
P.O. Box 7207
Liberty Life  Assur. Co. of Boston
London, KY  40742

**Track your request at www.roilog.com.**
**Enter your Tracking # and Request ID.**

Date:    4/14/2020
Phone:   8443845858
Fax:     603-559-0490

### Notice of an Issue Regarding Your Medical Record Information Request

MRO works with your healthcare provider to process requests for copies of medical records on their behalf.
There is an issue with your medical record request (see below). In order to resolve this issue; please fax the
information requested to MRO at (610) 962-8421. Upon receipt of the requested information, your request will be
processed as quickly as possible.

**Please note that you may be billed for a search/retrieval fee if you cancel your request.**

Should you have any questions, please feel free to contact MRO directly regarding this request by dialing
(610) 994-7500 Opt. 1 or by submitting an email to Requestinformation@mrocorp.com.
To help us better assist you, please be sure to include your Request ID in the subject line of your email.

MRO is processing your request in accordance with HIPAA regulations. Please notify the patient that the provision of
treatment, payment, enrollment, or eligibility for benefits will not be conditioned on the elements of the authorization
provided or your request for copies of the patient's records, unless permitted under 45 CFR 164.508(c)(2)(ii)(A)-(B).

Thank you,
**MRO**

Patient Name:  **MARK BUNCH**

Your Request Date:
Your Reference Number:
Date Received at Facility:   4/7/2020

**Your request is being processed by MRO on behalf of the following facility:**

Facility:        **Penrose-St. Francis Health Services**
2222 North Nevada Avenue
Colorado Springs, CO  80907

| ISSUE LIST |
| --- |
| **Illegible Authorization**<br>Your authorization is illegible. Please mail/fax a legible authorization to the address/fax number shown above. |

Page 1 of 1

PAGE 1/2 * RCVD AT 4/14/2020 11:07:36 AM [Eastern Daylight Time] * SVR:VA1PWFAX201/10 * DNIS:6035590490 * CSID: * ANI: * DURATION (mm-ss):01-09

**Lincoln/Bunch 0347**

04/14/2020 11:07:26 AM -0400 FAXCOM                              PAGE 2    OF 2



**Patient Authorization to Disclose Protected Health Information**
**#CHCR-004 rev. 12/12**


AUTHPHI

| Patient Label |

## Patient Authorization to Disclose Protected Health Information

| Patient Name | Date of Birth | Last 4 of Social Security Number |
|---|---|---|
| Address | City, State, Zip Code | Telephone Number |

**I hereby authorize the facility listed below to disclose/release the Protected Health Information specified in this request to the organization, agency or patient named.**

Release by: _____
Facility

Address

City, State, Zip Code

HIM Phone/Fax Numbers

Release to: _____
Organization, Agency, Individual

Attn:

Address

City, State, Zip Code

**Treatment Date(s):** _____
**Purpose:** ☐ Further Medical Care  ☐ Workers' Comp
☐ Personal Use  ☐ Insurance  ☐ Legal
☐ Marketing/Fundraising
☐ Other:_____

**Type of Disclosure Authorized & Delivery Instructions:**
☐ Provide copies of records to organization/agency/individual
  ☐ Mail records directly to address above
  ☐ Call to pick-up records: _____
  ☐ Fax records to: _____

**Pertinent Protected Health Information Allowed to be Included:**
☐ Discharge Summary     ☐ Radiology          ☐ Special Studies        ☐ Entire Medical Record
☐ History & Physical/Consult  ☐ Outpt Record   ☐ Medication Records
☐ Operative Report      ☐ Progress Notes     ☐ Psych Health Records
☐ Labs                  ☐ Physician Orders   ☐ Other (specify):_____

*\*Psychotherapy Notes are distinct and may not be included with the disclosure of any other protected health information.*
*A Patient Authorization to Disclose Psychotherapy Notes must be completed.*

**Authorization:** I certify that this request is made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time in writing by submitting my request in writing to the designated Health Information Management / Medical Records department. If I have authorized the disclosure of my health information to someone who is not legally required to keep it private, it may be re-disclosed and may no longer be protected. A copy or fax of this authorization will be as valid as the original.
I understand that authorizing disclosure of health information is voluntary. I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment, payment, or my eligibility to obtain benefits. I understand that I may inspect or obtain a copy of the information to be disclosed. I understand a fee may be charged for copies of my medical record. I understand the facility will provide me a copy of the signed authorization form. If I have questions about disclosure of my health information, I can contact the designated Corporate Responsibility and Privacy Officer.
**Expiration:** Without my express revocation, this authorization will automatically expire upon satisfaction of the need for disclosure, but in any event will expire 90 days from the date hereof, unless a different date is specified here:_____
**Acknowledgement:** I understand that the information to be disclosed may include any or all information involving communicable or venereal disease, psychological or psychiatric conditions, drug or alcohol abuse and/or alcoholism. It may also include, but is not limited to, diseases such as hepatitis, syphilis, gonorrhea and human immunodeficiency viruses (HIV), also known as acquired immune deficiency syndrome (AIDS).
**For Marketing/Fundraising Purposes Only, if applicable:** I understand that Centura Health ☐ will  ☐ will not  receive remuneration, either direct or indirect, as a result of the marketing that I hereby authorize.

**SIGNATURE:** _____  **DATE:** _____
Patient (Parent or Legal Guardian)
Minor's signature is required for release of any records for treatment which the minor may authorize under Colorado Law.
*Relationship (if other than patient):* _____  ☐ Power of Attorney  ☐ Death Certificate
*Name of individual signing on behalf of patient:*_____
**Verification:** ☐ Drivers License # _____  ☐ Other Appropriate ID:_____

**OFFICE USE ONLY: Attach copies of required identification.**
Number of pages released: _____ Completion date: _____    Delivery method: _____
Name of individual who received request: _____    Date received:_____
Patient Medical Record Number / Account Number: _____    /_____

**Lincoln/Bunch 0348**

✦ **Centura Health**

Patient Authorization to Disclose Protected Health Information

## Patient Authorization to Disclose Protected Health Information

BUNCH, MARK

Lincoln/Bunch 0349



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date:  April 20, 2020 | |
| To:  SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax:  (719) 635-0966 | |
| From:  Danielle Davis<br>Ltd Specialist I<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 | |
| Total Pages<br>(Including Cover):    2 | |
| RE:<br><br>Claim #:    8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1.  de septiembre de 2019, Liberty Life Assurance Company of Boston cambi  su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto pla o recibir  un Endoso que debe adjuntarse a su p  li  a una ve  recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0350**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

April 20, 2020

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

On April 13, 2020, Penrose Outpatient Rehabilitation advised that a provider specific authori ation form was needed to be completed by you in order for the medical records to be released. A blank copy of this authori ation form was sent to you that same day for completion and was received back from you on April 20, 2020.

Since the provider specific authori ation form was just received back from you on April 20, 2020, an extension has been granted until May 19, 2020 to allow for the requested medical information to be received. If the medical information requested from Penrose Outpatient Rehabilitation is not received by May 19, 2020, your claim will then be closed.

If you have any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
Ltd Specialist I
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

1  of  1

**Lincoln/Bunch 0351**

Sep 09 2019 14:08:38 EDT Liberty Mutual Insur       MSG# 1661062260-006-1      Page 003 Of 003
                       5654344

 **Centura Health**®  Page 1 of 1

| Patient Label |
| --- |

Patient Authorization to Disclose Protected Health Information
#CHCR-004 rev. 12/12



AUTHPHI

## Patient Authorization to Disclose Protected Health Information

| Patient Name | Date of Birth | Last 4 of Social Security Number |
| --- | --- | --- |
| BUNCH, MARK | | |
| **Address** | **City, State, Zip Code** | **Telephone Number** |

I hereby authorize the facility listed below to disclose/release the Protected Health Information specified in this request to the organization, agency or patient named.

Release by: PENROSE MAIN ST. FRANCIS HOSPITAL
Facility
2222 N NEVADA AVE
Address
COLORADO SPRINGS CO 80907
City, State, Zip Code

HIM Phone/Fax Numbers

Release to: Lincoln Financial Group (c/o ReleasePoint)
Organization, Agency, Individual
Attn: PO Box 1390
Address St. Peters    MO    63376
City, State, Zip Code

Treatment Date(s): FROM: 26/01/2019    TO: Present
Purpose: ☐ Further Medical Care  ☐ Workers' Comp
☐ Personal Use  ☐ Insurance  ☐ Legal
☐ Marketing/Fundraising
☒ Other: Claims - Disability Insurance

Type of Disclosure Authorized & Delivery Instructions:
☒ Provide copies of records to organization/agency/individual
☒ Mail records directly to address above
☐ Call to pick-up records: _____
☐ Fax records to: _____

Pertinent Protected Health Information Allowed to be Included:
☐ Discharge Summary       ☐ Radiology
☐ History & Physical/Consult  ☐ Outpt Record
☐ Operative Report        ☐ Progress Notes
☐ Labs               ☐ Physician Orders

☐ Special Studies        ☐ Entire Medical Record
☐ Medication Records
☐ Psych Health Records
☒ Other (specify): all PHI, excluding x-ray films

*Psychotherapy Notes are distinct and may not be included with the disclosure of any other protected health information. A Patient Authorization to Disclose Psychotherapy Notes must be completed.*

Authorization: I certify that this request is made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time in writing by submitting my request in writing to the designated Health Information Management / Medical Records department. If I have authorized the disclosure of my health information to someone who is not legally required to keep it private, it may be re-disclosed and may no longer be protected. A copy or fax of this authorization will be as valid as the original.
I understand that authorizing disclosure of health information is voluntary. I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment, payment, or my eligibility to obtain benefits. I understand that I may inspect or obtain a copy of the information to be disclosed. I understand a fee may be charged for copies of my medical record. I understand the facility will provide me a copy of the signed authorization form. If I have questions about disclosure of my health information, I can contact the designated Corporate Responsibility and Privacy Officer.
Expiration: Without my express revocation, this authorization will automatically expire upon satisfaction of the need for disclosure, but in any event will expire 90 days from the date hereof, unless a different date is specified here: 180 days after signature date
Acknowledgement: I understand that the information to be disclosed may include any or all information involving communicable or venereal disease, psychological or psychiatric conditions, drug or alcohol abuse and/or alcoholism. It may also include, but is not limited to, diseases such as hepatitis, syphilis, gonorrhea and human immunodeficiency viruses (HIV), also known as acquired immune deficiency syndrome (AIDS).
For Marketing/Fundraising Purposes Only, if applicable: I understand that Centura Health ☐ will  ☐ will not  receive remuneration, either direct or indirect, as a result of the marketing that I hereby authorize.

SIGNATURE: _____  DATE: 9/19/19
              Patient (Parent or Legal Guardian)

Minor's signature is required for release of any records for treatment which the minor may authorize under Colorado Law.
Relationship (if other than patient): _____  ☐ Power of Attorney  ☐ Death Certificate
Name of Individual signing on behalf of patient: _____
Verification: ☐ Drivers License # _____  ☐ Other Appropriate ID: _____

OFFICE USE ONLY: Attach copies of required identification.
Number of pages released: _____  Completion date: _____  Delivery method: _____
Name of individual who received request: _____  Date received: _____
Patient Medical Record Number / Account Number: _____  /

**Lincoln/Bunch 0352**

**✚ Centura Health.** Page 1 of 1

Patient Authorization to Disclose Protected Health Information
#CHCR-004  rev. 12/12

[barcode] AU7171

Patient Label

## Patient Authorization to Disclose Protected Health Information

| Patient Name | Date of Birth | Last 4 or Social Security Number |
|---|---|---|
| BUNCH, MARK | | |
| Address | City, State, Zip Code | Telephone Number |

I hereby authorize the facility listed below to disclose/release the Protected Health Information specified in this request to the organization, agency or patient named.

Release by: PENROSE MAIN-ST. FRANCIS HOSPITAL
Facility
2222 N NEVADA AVE
Address
COLORADO SPRINGS CO 80907
City, State, Zip Code
Time Phone/Fax Number:

Release to: Lincoln Financial Group (c/o ReleasePoint)
Organization, Agency, Individual
Attn: PO Box 1390
Address
St. Peters    MO    63376
City, State, Zip Code

**Treatment Date(s):** FROM: in service    TO: Present
**Purpose:** ☐ Further Medical Care  ☐ Workers' Comp
☐ Personal Use  ☐ Insurance  ☐ Legal
☐ Marketing/Fundraising
☒ Other: Claims - Disability Insurance

**Type of Disclosure Authorized & Delivery Instructions:**
☒ Provide copies of records to organization/agency/individual
☒ Mail records directly to address above
☐ Call to pick-up records:
☐ Fax records to:

**Pertinent Protected Health Information Allowed to be Included:**
☐ Discharge Summary  ☐ Radiology  ☐ Special Studies  ☐ Entire Medical Record
☐ History & Physical/Consult  ☐ Outpt Record  ☐ Medication Records
☐ Operative Report  ☐ Progress Notes  ☐ Psych Health Records
☐ Labs  ☐ Physician Orders  ☒ Other (specify): all PHL excluding x-ray films

*Psychotherapy Notes are distinct and may not be included with the disclosure of any other protected health information. A Patient Authorization to Disclose Psychotherapy Notes must be completed.*

**Authorization:** I certify that this request is made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time in writing by submitting my request in writing to the designated Health Information Management / Medical Records department. If I have authorized the disclosure of my health information to someone who is not legally required to keep it private, it may be re-disclosed and may no longer be protected. A copy or fax of this authorization will be as valid as the original.

I understand that authorizing disclosure of health information is voluntary. I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment, payment, or my eligibility to obtain benefits. I understand that I may inspect or obtain a copy of the information to be disclosed. I understand a fee may be charged for copies of my medical record. I understand the facility will provide me a copy of the signed authorization form. If I have questions about disclosure of my health information, I can contact the designated Corporate Responsibility and Privacy Officer.

**Expiration:** Without my express revocation, this authorization will automatically expire upon satisfaction of the need for disclosure, but in any event will expire 90 days from the date hereof, unless a different date is specified here: 180 days after signature date

**Acknowledgement:** I understand that the information to be disclosed may include any or all information involving communicable or venereal disease, psychological or psychiatric conditions, drug or alcohol abuse and/or alcoholism. It may also include, but is not limited to, diseases such as hepatitis, syphilis, gonorrhea and human immunodeficiency viruses (HIV), also known as acquired immune deficiency syndrome (AIDS).

**For Marketing/Fundraising Purposes Only, if applicable:** I understand that Centura Health ☐ will ☐ will not receive remuneration, either direct or indirect, as a result of the marketing that I hereby authorize.

SIGNATURE [signature]    DATE: 9/19/17

Minor's signature is required for release of any records for treatment which the minor may authorize under Colorado Law:
Relationship (if other than patient): _____    ☐ Power of Attorney  ☐ Death Certificate
Name of individual signing on behalf of patient: _____
Verification: ☐ Drivers License #: _____    ☐ Other Appropriate ID: _____

**OFFICE USE ONLY: Attach copies of required identification**
Number of pages released: _____    Completion date: _____    Delivery method: _____
Name of individual who received request: _____    Date received: _____
Patient Medical Record Number / Account Number: _____

**Lincoln/Bunch 0353**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date: April 15, 2020 | |
| To: SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax:    (719) 635-0966 | |
| From: Danielle Davis<br>Ltd Specialist I<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 | |
| Total Pages<br>(Including Cover):    7 | |
| RE:<br><br>Claim #:    8220685<br>Claimant:  Mark Bunch<br><br>Charter Communications, Inc. | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1.  de septiembre de 2019, Liberty Life Assurance Company of Boston cambi  su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto pla o recibir  un Endoso que debe adjuntarse a su p li a una ve recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0354**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

April 15, 2020

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:


Do you have an illegible copy of the authori ation form or can you provide us with a new
authori ation form?  MRO rejected the form we have on file.  Please complete the following form
and fax it back to my attention at (603)-559-0490, mail, or email it to CLTCSUDocs@lfg.com.


If you have any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
Ltd Specialist I
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

Attachments:    8220685-EMPLOYEE/CLAIMANT-AUTHORIZATION-10.01.2019
                8220685-MEDICAL-CORRESPONDENCE-04.15.2020

1  of  1

**Lincoln/Bunch 0355**

09/30/2019  18:32    7196350966                                                                PAGE  01/03

# SHAKESHAFT & GORMAN LAW FIRM, LLP

1935 Jamboree Dr. | Suite 202 | Colorado Springs, CO 80920
Tel 719.635.5886 | Fax 719.635.0966 | www.shakeshaftlawfirm.com

### FACSIMILE TRANSMISSION

**DATE:**         September 30, 2019

**TO:**           **Lincoln Financial Group**

**FROM:**         Brandy Newton| Paralegal

**PAGES INCLUDING COVER SHEET:** 3

**FAX NUMBER:**   603-559-0490

**REGARDING:**    Mark Bunch

**Comments:**     Claim Number: 8220685

Please see the following correspondence of today's date.

IF YOU DO NOT RECEIVE ALL THE PAGES OR IF ANY PART IS ILLEGIBLE, PLEASE CALL (719) 635-5886.

### NOTICE

THIS MESSAGE IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN PRIVILEGED OR CONFIDENTIAL INFORMATION WHICH IS EXEMPT FROM DISCLOSURE PURSUANT TO APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR IS NOT AN EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY OF THIS MESSAGE TO THE INTENDED RECIPIENT, DISTRIBUTION, COPYING OR OTHER DISSEMINATION OF THE INFORMATION CONTAINED IN THIS COMMUNICATION IS PROHIBITED. PLEASE CONTACT (719) 635-5886 AND RETURN THE ORIGINAL MESSAGE TO SHAKESHAFT LAW FIRM, 1935 JAMBOREE DRIVE, STE. 202, COLORADO SPRINGS, CO 80920.

**Lincoln/Bunch 0356**



**SHAKESHAFT-GORMAN**
**— LAW FIRM, LLP —**

| | | | |
|---|---|---|---|
| Kenneth J. Shakeshaft | • Attorney at Law | | **Main Office** |
| Joseph M. Gorman | • Attorney at Law | | Shakeshaft - Gorman Law Firm |
| Cindy Maddox | • Paralegal | | 1935 Jamboree Drive, Suite 202 |
| Brandy Newton | • Paralegal | | Colorado Springs, CO 80920 |

September 30, 2019

Via facsimile: 603-559-0490

Lincoln Financial Group
Attn: Danielle Davis
Charlotte, NC

       RE:     Our client:    Mark Bunch
                Claim No.:    8220685
                Charter Communications, Inc.

Dear Ms. Davis,

Attached please find the executed Release for Centura Health.

Please contact our office with any questions.

Sincerely,

Brandy Newton / Paralegal
Attachments

PHONE 719.635.5886 - FAX 719.635.0966 - TOLL FREE 1.800.389.5886
WWW.SHAKESHAFTANDGORMANLAW.COM - OFFICE@SHAKESHAFTANDGORMANLAW.COM

**Lincoln/Bunch 0357**

09/30/2019  18:32    7196350966                                          PAGE 03/03

Sep 09 2019 14:08:30 EDT Liberty Mutual Insur      MSG# 1661062260-006-1     Page 003 OF 003
5654344

## ✚ Centura Health. Page 1 of 1

Patient Authorization to Disclose Protected Health Information
#CHCR-004 rev. 12/12

| Patient Label |
| --- |

AUTIPHI

# Patient Authorization to Disclose Protected Health Information

| Patient Name | Date of Birth | Last 4 of Social Security Number |
| --- | --- | --- |
| BUNCH, MARK | | |
| Address | City, State, Zip Code | Telephone Number |

I hereby authorize the facility listed below to disclose/release the Protected Health Information specified in this request to the organization, agency or patient named.

| Release by: | PENROSE MAIN ST. FRANCIS HOSPITAL | Release to: | Lincoln Financial Group (c/o ReleasePoint) |
| --- | --- | --- | --- |
| | Facility 2222 N NEVADA AVE | | Organization, agency, individual |
| | Address | | Attn: PO Box 1390 |
| | COLORADO SPRINGS CO 80907 | | Address: St. Peters   MO   63376 |
| | City, State, Zip Code | | City, State, Zip Code |
| | HIM Phone/Fax Numbers | | |

Treatment Date(s):  FROM: Discharge   TO: Present
Purpose: ☐ Further Medical Care ☐ Workers' Comp
☐ Personal Use ☐ Insurance ☐ Legal
☐ Marketing/Fundraising
☒ Other: Claims - Disability Insurance

Type of Disclosure Authorized & Delivery Instructions:
☒ Provide copies of records to organization/agency/individual
☒ Mail records directly to address above
☐ Call to pick-up records: _____
☐ Fax records to: _____

Pertinent Protected Health Information Allowed to be Included:
☐ Discharge Summary          ☐ Radiology          ☐ Entire Medical Record
☐ History & Physical/Consult  ☐ Outpt Record
☐ Operative Report           ☐ Progress Notes     ☐ Medication Records
☐ Labs                       ☐ Physician Orders   ☐ Psych Health Records
                                                    ☒ Other (specify): all PHI excluding x-ray films

*Psychotherapy Notes are distinct and may not be included with the disclosure of any other protected health information. A Patient Authorization to Disclose Psychotherapy Notes must be completed.*

Authorization: I certify that this request is made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time in writing by submitting my request in writing to the designated Health Information Management / Medical Records department. If I have authorized the disclosure of my health information to someone who is not legally required to keep it private, it may be re-disclosed and may no longer be protected. A copy or fax of this authorization will be as valid as the original.
I understand that authorizing disclosure of health information is voluntary. I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment, payment, or my eligibility to obtain benefits. I understand that I may inspect or obtain a copy of the information to be disclosed. I understand a fee may be charged for copies of my medical record. I understand the facility will provide me a copy of the signed authorization form. If I have questions about disclosure of my health information, I can contact the designated Corporate Responsibility and Privacy Officer.
Expiration: Without my express revocation, this authorization will automatically expire upon satisfaction of the need for disclosure, but in any event will expire 90 days from the date hereof, unless a different date is specified here: 180 days after signature date.
Acknowledgement: I understand that the information to be disclosed may include any or all information involving communicable or venereal disease, psychological or psychiatric conditions, drug or alcohol abuse and/or alcoholism. It may also include, but is not limited to, diseases such as hepatitis, syphilis, gonorrhea and human immunodeficiency viruses (HIV), also known as acquired immune deficiency syndrome (AIDS).
For Marketing/Fundraising Purposes Only, if applicable: I understand that Centura Health ☐ will ☐ will not receive remuneration, either direct or indirect, as a result of the marketing that I hereby authorize.

SIGNATURE: _____     DATE: 9/9/19
Patient (Parent or Legal Guardian)

Minor's signature is required for release of any records for treatment which the minor may authorize under Colorado Law.
Relationship (if other than patient): _____     ☐ Power of Attorney     ☐ Death Certificate
Name of individual signing on behalf of patient: _____
Verification: ☐ Drivers License # _____     ☐ Other Appropriate ID: _____

OFFICE USE ONLY: Attach copies of required identification.
Number of pages released: _____ Completion date: _____     Delivery method: _____
Name of individual who received request: _____     Date received: _____
Patient Medical Record Number / Account Number: _____

**Lincoln/Bunch 0358**

04/14/2020 11:07:26 AM -0400 FAXCOM                                    PAGE 1    OF 2

**MRO**
1000 Madison Avenue, Suite 100
Norristown, PA 19403



Fax:     (610) 962-8421
Phone:  (610) 994-7500 Opt. 1

**Request ID: 34451403**
**Tracking #: CENTE9MDEF9KX**

**Danielle Davis**
Lincoln Financial Group
P.O. Box 7207
Liberty Life  Assur. Co. of Boston
London, KY  40742

**Track your request at www.roilog.com.**
**Enter your Tracking # and Request ID.**

Date:    4/14/2020
Phone:  8443845858
Fax:     603-559-0490

### Notice of an Issue Regarding Your Medical Record Information Request

MRO works with your healthcare provider to process requests for copies of medical records on their behalf.
There is an issue with your medical record request (see below). In order to resolve this issue; please fax the
information requested to MRO at (610) 962-8421. Upon receipt of the requested information, your request will be
processed as quickly as possible.

**Please note that you may be billed for a search/retrieval fee if you cancel your request.**

Should you have any questions, please feel free to contact MRO directly regarding this request by dialing
(610) 994-7500 Opt. 1 or by submitting an email to Requestinformation@mrocorp.com.
To help us better assist you, please be sure to include your Request ID in the subject line of your email.

MRO is processing your request in accordance with HIPAA regulations. Please notify the patient that the provision of
treatment, payment, enrollment, or eligibility for benefits will not be conditioned on the elements of the authorization
provided or your request for copies of the patient's records, unless permitted under 45 CFR 164.508(c)(2)(ii)(A)-(B).

Thank you,
**MRO**

Patient Name:  **MARK BUNCH**          Your Request Date:
                                        Your Reference Number:
                                        Date Received at Facility:  4/7/2020

**Your request is being processed by MRO on behalf of the following facility:**

Facility:      **Penrose-St. Francis Health Services**
                2222 North Nevada Avenue
                Colorado Springs, CO  80907

| ISSUE LIST |
| --- |
| **Illegible Authorization**<br>Your authorization is illegible. Please mail/fax a legible authorization to the address/fax number shown above. |

Page 1 of 1

**Lincoln/Bunch 0359**

04/14/2020 11:07:26 AM -0400 FAXCOM                                          PAGE 2    OF 2



**Centura Health**®  **Page 1 of 1**

Patient Authorization to Disclose Protected Health Information
#CHCR-004 rev. 12/12

AUTHPHI

Patient Label

## Patient Authorization to Disclose Protected Health Information

| Patient Name | Date of Birth | Last 4 of Social Security Number |
|---|---|---|
| Address | City, State, Zip Code | Telephone Number |

**I hereby authorize the facility listed below to disclose/release the Protected Health Information specified in this request to the organization, agency or patient named.**

Release by: _____
Facility

Address

City, State, Zip Code

HIM Phone/Fax Numbers

Release to: _____
Organization, Agency, Individual

Attn:

Address

City, State, Zip Code

**Treatment Date(s):** _____
**Purpose:** ☐ Further Medical Care  ☐ Workers' Comp
☐ Personal Use  ☐ Insurance  ☐ Legal
☐ Marketing/Fundraising
☐ Other:_____

**Type of Disclosure Authorized & Delivery Instructions:**
☐ Provide copies of records to organization/agency/individual
  ☐ Mail records directly to address above
  ☐ Call to pick-up records: _____
  ☐ Fax records to: _____

**Pertinent Protected Health Information Allowed to be Included:**
☐ Discharge Summary          ☐ Radiology          ☐ Special Studies          ☐ Entire Medical Record
☐ History & Physical/Consult ☐ Outpt Record       ☐ Medication Records
☐ Operative Report           ☐ Progress Notes     ☐ Psych Health Records
☐ Labs                       ☐ Physician Orders   ☐ Other (specify): _____
*Psychotherapy Notes are distinct and may not be included with the disclosure of any other protected health information.*
*A Patient Authorization to Disclose Psychotherapy Notes must be completed.*

**Authorization:** I certify that this request is made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time in writing by submitting my request in writing to the designated Health Information Management / Medical Records department. If I have authorized the disclosure of my health information to someone who is not legally required to keep it private, it may be re-disclosed and may no longer be protected. A copy or fax of this authorization will be as valid as the original.
I understand that authorizing disclosure of health information is voluntary. I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment, payment, or my eligibility to obtain benefits. I understand that I may inspect or obtain a copy of the information to be disclosed. I understand a fee may be charged for copies of my medical record. I understand the facility will provide me a copy of the signed authorization form. If I have questions about disclosure of my health information, I can contact the designated Corporate Responsibility and Privacy Officer.
**Expiration:** Without my express revocation, this authorization will automatically expire upon satisfaction of the need for disclosure, but in any event will expire 90 days from the date hereof, unless a different date is specified here: _____
**Acknowledgement:** I understand that the information to be disclosed may include any or all information involving communicable or venereal disease, psychological or psychiatric conditions, drug or alcohol abuse and/or alcoholism. It may also include, but is not limited to, diseases such as hepatitis, syphilis, gonorrhea and human immunodeficiency viruses (HIV), also known as acquired immune deficiency syndrome (AIDS).
**For Marketing/Fundraising Purposes Only, if applicable:** I understand that Centura Health ☐ will  ☐ will not  receive remuneration, either direct or indirect, as a result of the marketing that I hereby authorize.

**SIGNATURE:** _____          **DATE:** _____
Patient (Parent or Legal Guardian)

Minor's signature is required for release of any records for treatment which the minor may authorize under Colorado Law.

*Relationship (if other than patient):* _____  ☐ Power of Attorney    ☐ Death Certificate

*Name of individual signing on behalf of patient:* _____

**Verification:** ☐ Drivers License # _____  ☐ Other Appropriate ID: _____

**OFFICE USE ONLY: Attach copies of required identification.**

Number of pages released: _____ Completion date: _____          Delivery method: _____

Name of individual who received request: _____          Date received: _____

Patient Medical Record Number / Account Number: _____          / _____

**Lincoln/Bunch 0360**

04/14/2020 11:07:26 AM -0400 FAXCOM                                    PAGE 1    OF 2

**MRO**
1000 Madison Avenue, Suite 100
Norristown, PA 19403



Fax:     (610) 962-8421
Phone:  (610) 994-7500 Opt. 1

**Request ID: 34451403**
**Tracking #: CENTE9MDEF9KX**

**Danielle Davis**
Lincoln Financial Group
P.O. Box 7207
Liberty Life  Assur. Co. of Boston
London, KY  40742

**Track your request at www.roilog.com.**
**Enter your Tracking # and Request ID.**

Date:     4/14/2020
Phone:   8443845858
Fax:      603-559-0490

### Notice of an Issue Regarding Your Medical Record Information Request

MRO works with your healthcare provider to process requests for copies of medical records on their behalf. There is an issue with your medical record request (see below). In order to resolve this issue; please fax the information requested to MRO at (610) 962-8421. Upon receipt of the requested information, your request will be processed as quickly as possible.

**Please note that you may be billed for a search/retrieval fee if you cancel your request.**

Should you have any questions, please feel free to contact MRO directly regarding this request by dialing (610) 994-7500 Opt. 1 or by submitting an email to Requestinformation@mrocorp.com.
To help us better assist you, please be sure to include your Request ID in the subject line of your email.

MRO is processing your request in accordance with HIPAA regulations. Please notify the patient that the provision of treatment, payment, enrollment, or eligibility for benefits will not be conditioned on the elements of the authorization provided or your request for copies of the patient's records, unless permitted under 45 CFR 164.508(c)(2)(ii)(A)-(B).

Thank you,
**MRO**

Patient Name:  **MARK BUNCH**          Your Request Date:
                                        Your Reference Number:
                                        Date Received at Facility:   4/7/2020

**Your request is being processed by MRO on behalf of the following facility:**

Facility:        **Penrose-St. Francis Health Services**
                 2222 North Nevada Avenue
                 Colorado Springs, CO  80907

---

**ISSUE LIST**

**Illegible Authorization**
Your authorization is illegible. Please mail/fax a legible authorization to the address/fax number shown above.

---

Page 1 of 1

**Lincoln/Bunch 0361**


**Centura Health.®** Page 1 of 1

**Patient Authorization to Disclose Protected Health Information**
**#CHCR-004 rev. 12/12**

AUTHPHI

| | |
|---|---|
| | Patient Label |

## Patient Authorization to Disclose Protected Health Information

| Patient Name | Date of Birth | Last 4 of Social Security Number |
|---|---|---|
| Address | City, State, Zip Code | Telephone Number |

**I hereby authorize the facility listed below to disclose/release the Protected Health Information specified in this request to the organization, agency or patient named.**

Release by: _____
Facility

Address

City, State, Zip Code

HIM Phone/Fax Numbers

Release to: _____
Organization, Agency, Individual

Attn:

Address

City, State, Zip Code

**Treatment Date(s):**_____
**Purpose:** ☐ Further Medical Care  ☐ Workers' Comp
☐ Personal Use  ☐ Insurance  ☐ Legal
☐ Marketing/Fundraising
☐ Other:_____

**Type of Disclosure Authorized & Delivery Instructions:**
☐ Provide copies of records to organization/agency/individual
  ☐ Mail records directly to address above
  ☐ Call to pick-up records:_____
  ☐ Fax records to: _____

**Pertinent Protected Health Information Allowed to be Included:**

☐ Discharge Summary          ☐ Radiology          ☐ Special Studies          ☐ Entire Medical Record
☐ History & Physical/Consult  ☐ Outpt Record       ☐ Medication Records
☐ Operative Report            ☐ Progress Notes     ☐ Psych Health Records
☐ Labs                        ☐ Physician Orders   ☐ Other (specify):_____

*Psychotherapy Notes are distinct and may not be included with the disclosure of any other protected health information.*
*A Patient Authorization to Disclose Psychotherapy Notes must be completed.*

**Authorization:** I certify that this request is made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time in writing by submitting my request in writing to the designated Health Information Management / Medical Records department. If I have authorized the disclosure of my health information to someone who is not legally required to keep it private, it may be re-disclosed and may no longer be protected. A copy or fax of this authorization will be as valid as the original.
I understand that authorizing disclosure of health information is voluntary. I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment, payment, or my eligibility to obtain benefits. I understand that I may inspect or obtain a copy of the information to be disclosed. I understand a fee may be charged for copies of my medical record. I understand the facility will provide me a copy of the signed authorization form. If I have questions about disclosure of my health information, I can contact the designated Corporate Responsibility and Privacy Officer.
**Expiration:** Without my express revocation, this authorization will automatically expire upon satisfaction of the need for disclosure, but in any event will expire 90 days from the date hereof, unless a different date is specified here:_____
**Acknowledgement:** I understand that the information to be disclosed may include any or all information involving communicable or venereal disease, psychological or psychiatric conditions, drug or alcohol abuse and/or alcoholism. It may also include, but is not limited to, diseases such as hepatitis, syphilis, gonorrhea and human immunodeficiency viruses (HIV), also known as acquired immune deficiency syndrome (AIDS).
**For Marketing/Fundraising Purposes Only, if applicable:** I understand that Centura Health ☐ will  ☐ will not  receive remuneration, either direct or indirect, as a result of the marketing that I hereby authorize.

**SIGNATURE:** _____  **DATE:** _____
              Patient (Parent or Legal Guardian)

Minor's signature is required for release of any records for treatment which the minor may authorize under Colorado Law.
*Relationship (if other than patient):* _____  ☐ Power of Attorney    ☐ Death Certificate
*Name of individual signing on behalf of patient:*_____
**Verification:** ☐ Drivers License #_____  ☐ Other Appropriate ID:_____

**OFFICE USE ONLY: Attach copies of required identification.**
Number of pages released:_____ Completion date:_____  Delivery method:_____
Name of individual who received request:_____  Date received:_____
Patient Medical Record Number / Account Number:_____/_____

Lincoln/Bunch 0362



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date:  April 13, 2020 | |
| To:    MRO | |
| Attn: | |
| Fax:    (610) 962-8421 | |
| From:  Danielle Davis<br>Ltd Specialist I<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 | |
| Total Pages<br>(Including Cover):    7 | |
| RE:<br><br>Claim #:    8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1. de septiembre de 2019, Liberty Life Assurance Company of Boston cambi su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto pla o recibir un Endoso que debe adjuntarse a su p li a una ve recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0363**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

April 13, 2020

Mro

RE:   Long Term Disability (LTD) Benefits
      Charter Communications, Inc.
      Claim #: 8220685
      Claimant: Mark Bunch
      Claimant D.O.B.:

To Whom It May Concern:

Enclosed is a copy of Mark Bunch's authori ation form.

If you have any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
Ltd Specialist I
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

Attachments:   8220685-EMPLOYEE/CLAIMANT-AUTHORIZATION-10.01.2019
               8220685-MEDICAL-CORRESPONDENCE-04.13.2020

1  of  1

**Lincoln/Bunch 0364**

09/30/2019　18:32　7196350966　　　　　　　　　　　　　　　　　　　　　PAGE 01/03

# SHAKESHAFT & GORMAN LAW FIRM, LLP

1935 Jamboree Dr. | Suite 202 | Colorado Springs, CO 80920
Tel 719.635.5886 | Fax 719.635.0966 | www.shakeshaftlawfirm.com

### FACSIMILE TRANSMISSION

**DATE:**　　　　　September 30, 2019

**TO:**　　　　　**Lincoln Financial Group**

**FROM:**　　　　Brandy Newton| Paralegal

**PAGES INCLUDING COVER SHEET:** 3

**FAX NUMBER:**　　603-559-0490

**REGARDING:**　　Mark Bunch

**Comments:**　　　Claim Number: 8220685

Please see the following correspondence of today's date.

IF YOU DO NOT RECEIVE ALL THE PAGES OR IF ANY PART IS ILLEGIBLE, PLEASE CALL (719) 635-5886.

### NOTICE

THIS MESSAGE IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN PRIVILEGED OR CONFIDENTIAL INFORMATION WHICH IS EXEMPT FROM DISCLOSURE PURSUANT TO APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR IS NOT AN EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY OF THIS MESSAGE TO THE INTENDED RECIPIENT, DISTRIBUTION, COPYING OR OTHER DISSEMINATION OF THE INFORMATION CONTAINED IN THIS COMMUNICATION IS PROHIBITED. PLEASE CONTACT (719) 635-5886 AND RETURN THE ORIGINAL MESSAGE TO SHAKESHAFT LAW FIRM, 1935 JAMBOREE DRIVE, STE. 202, COLORADO SPRINGS, CO 80920.

**Lincoln/Bunch 0365**



# SHAKESHAFT-GORMAN
## — LAW FIRM, LLP —

| | | |
|---|---|---|
| Kenneth J. Shakeshaft | • Attorney at Law | **Main Office** |
| Joseph M. Gorman | • Attorney at Law | Shakeshaft - Gorman Law Firm |
| Cindy Maddox | • Paralegal | 1935 Jamboree Drive, Suite 202 |
| Brandy Newton | • Paralegal | Colorado Springs, CO 80920 |

September 30, 2019

Via facsimile: 603-559-0490

Lincoln Financial Group
Attn: Danielle Davis
Charlotte, NC

      RE:    Our client:    Mark Bunch
                   Claim No.:    8220685
                   Charter Communications, Inc.

Dear Ms. Davis,

Attached please find the executed Release for Centura Health.

Please contact our office with any questions.

Sincerely,

Brandy Newton / Paralegal
Attachments

PHONE 719.635.5886 - FAX 719.635.0966 - TOLL FREE 1.800.383.5886
WWW.SHAKESHAFTANDGORMANLAW.COM - OFFICE@SHAKESHAFTANDGORMANLAW.COM

**Lincoln/Bunch 0366**

09/30/2019   18:32    7196350966                                                      PAGE 03/03

Sep 09 2019 14:08:38 EDT Liberty Mutual Insur        MSG# 1661862260-006-1    Page 003 OF 003
                               5654344

## ✚ Centura Health.  Page 1 of 1

Patient Authorization to Disclose Protected Health Information
#CHCR-004 rev. 12/12

AI1PHI

| | | Patient Label |
|---|---|---|

# Patient Authorization to Disclose Protected Health Information

| Patient Name | Date of Birth | Last 4 of Social Security Number |
|---|---|---|
| BUNCH, MARK | | |
| Address | City, State, Zip Code | Telephone Number |
| | | |

I hereby authorize the facility listed below to disclose/release the Protected Health Information specified in this request to the organization, agency or patient named.

| Release by: PENROSE MAIN ST. FRANCIS HOSPITAL<br>Facility<br>2222 N NEVADA AVE<br>Address<br>COLORADO SPRINGS CO 80907<br>City, State, Zip Code<br><br>HIM Phone/Fax Numbers | Release to: Lincoln Financial Group (c/o ReleasePoint)<br>Organization, agency, individual<br><br>Attn: PO Box 1390<br>Address<br>St. Peters    MO    63376<br>City, State, Zip Code |
|---|---|

Treatment Date(s):    FROM: Discharge    TO: Present
Purpose: ☐ Further Medical Care  ☐ Workers' Comp
☐ Personal Use  ☐ Insurance  ☐ Legal
☐ Marketing/Fundraising
☒ Other: Claims - Disability Insurance

Type of Disclosure Authorized & Delivery Instructions:
☒ Provide copies of records to organization/agency/individual
☒ Mail records directly to address above
☐ Call to pick-up records:_____
☐ Fax records to:_____

**Pertinent Protected Health Information Allowed to be Included:**

| ☐ Discharge Summary | ☐ Radiology | ☐ Special Studies | ☐ Entire Medical Record |
|---|---|---|---|
| ☐ History & Physical/Consult | ☐ Outpt Record | ☐ Medication Records | |
| ☐ Operative Report | ☐ Progress Notes | ☐ Psych Health Records | |
| ☐ Labs | ☐ Physician Orders | ☒ Other (specify): all PHI excluding x-ray films | |

*Psychotherapy Notes are distinct and may not be included with the disclosure of any other protected health information. A Patient Authorization to Disclose Psychotherapy Notes must be completed.*

**Authorization:** I certify that this request is made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time in writing by submitting my request in writing to the designated Health Information Management / Medical Records department. If I have authorized the disclosure of my health information to someone who is not legally required to keep it private, it may be re-disclosed and may no longer be protected. A copy or fax of this authorization will be as valid as the original.

I understand that authorizing disclosure of health information is voluntary. I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment, payment, or my eligibility to obtain benefits. I understand that I may inspect or obtain a copy of the information to be disclosed. I understand a fee may be charged for copies of my medical record. I understand the facility will provide me a copy of the signed authorization form. If I have questions about disclosure of my health information, I can contact the designated Corporate Responsibility and Privacy Officer.

**Expiration:** Without my express revocation, this authorization will automatically expire upon satisfaction of the need for disclosure, but in any event will expire 90 days from the date hereof, unless a different date is specified here: 180 days after signature date.

**Acknowledgement:** I understand that the information to be disclosed may include any or all information involving communicable or venereal disease, psychological or psychiatric conditions, drug or alcohol abuse and/or alcoholism. It may also include, but is not limited to, diseases such as hepatitis, syphilis, gonorrhea and human immunodeficiency viruses (HIV), also known as acquired immune deficiency syndrome (AIDS).

**For Marketing/Fundraising Purposes Only,** if applicable: I understand that Centura Health ☐ will  ☐ will not  receive remuneration, either direct or indirect, as a result of the marketing that I hereby authorize.

SIGNATURE: _____ Patient (Parent or Legal Guardian) _____  DATE: 9/19/19

Minor's signature is required for release of any records for treatment which the minor may authorize under Colorado Law.
Relationship (if other than patient):_____    ☐ Power of Attorney    ☐ Death Certificate
Name of individual signing on behalf of patient:_____
Verification: ☐ Drivers License #_____    ☐ Other Appropriate ID:_____

OFFICE USE ONLY: Attach copies of required identification.
Number of pages released:_____  Completion date:_____    Delivery method:_____
Name of individual who received request:_____    Date received:_____
Patient Medical Record Number / Account Number:_____  /_____

**Lincoln/Bunch 0367**

04/10/2020 2:06:00 PM -0400 FAXCOM                                    PAGE 1    OF 2

**MRO**
1000 Madison Avenue, Suite 100
Norristown, PA 19403



Fax:     (610) 962-8421
Phone:   (610) 994-7500 Opt. 1

**Request ID: 34451403**
**Tracking #: CENTE9MDEF9KX**

**Danielle Davis**
Lincoln Financial Group
P.O. Box 7207
Liberty Life  Assur. Co. of Boston
London, KY  40742

**Track your request at www.roilog.com.**
**Enter your Tracking # and Request ID.**

Date:    4/8/2020
Phone:   8443845858
Fax:     603-559-0490

### Notice of an Issue Regarding Your Medical Record Information Request

MRO works with your healthcare provider to process requests for copies of medical records on their behalf.
There is an issue with your medical record request (see below). In order to resolve this issue; please fax the
information requested to MRO at (610) 962-8421. Upon receipt of the requested information, your request will be
processed as quickly as possible.

**Please note that you may be billed for a search/retrieval fee if you cancel your request.**

Should you have any questions, please feel free to contact MRO directly regarding this request by dialing
(610) 994-7500 Opt. 1 or by submitting an email to Requestinformation@mrocorp.com.
To help us better assist you, please be sure to include your Request ID in the subject line of your email.

MRO is processing your request in accordance with HIPAA regulations. Please notify the patient that the provision of
treatment, payment, enrollment, or eligibility for benefits will not be conditioned on the elements of the authorization
provided or your request for copies of the patient's records, unless permitted under 45 CFR 164.508(c)(2)(ii)(A)-(B).

Thank you,
**MRO**

Patient Name:  **MARK BUNCH**              Your Request Date:
                                           Your Reference Number:
                                           Date Received at Facility:   4/7/2020

**Your request is being processed by MRO on behalf of the following facility:**

Facility:      **Penrose-St. Francis Health Services**
               2222 North Nevada Avenue
               Colorado Springs, CO  80907

| ISSUE LIST |
| --- |
| **Illegible Authorization**<br>Your authorization is illegible. Please mail/fax a legible authorization to the address/fax number shown above. |

Page 1 of 1

**Lincoln/Bunch 0368**

04/10/2020 2:06:00 PM -0400 FAXCOM                              PAGE 2   OF 2



**Centura Health.** Page 1 of 1

Patient Authorization to Disclose Protected Health Information
#CHCR-004 rev. 12/12



AUTHPHI

Patient Label

## Patient Authorization to Disclose Protected Health Information

| Patient Name | Date of Birth | Last 4 of Social Security Number |
|---|---|---|
| Address | City, State, Zip Code | Telephone Number |

**I hereby authorize the facility listed below to disclose/release the Protected Health Information specified in this request to the organization, agency or patient named.**

Release by: _____
  Facility
  _____
  Address
  _____
  City, State, Zip Code
  _____
  HIM Phone/Fax Numbers

Release to: _____
  Organization, Agency, Individual
  _____
  Attn:
  _____
  Address
  _____
  City, State, Zip Code

**Treatment Date(s):** _____
**Purpose:** ☐ Further Medical Care  ☐ Workers' Comp
☐ Personal Use  ☐ Insurance  ☐ Legal
☐ Marketing/Fundraising
☐ Other: _____

**Type of Disclosure Authorized & Delivery Instructions:**
☐ Provide copies of records to organization/agency/individual
  ☐ Mail records directly to address above
  ☐ Call to pick-up records: _____
  ☐ Fax records to: _____

**Pertinent Protected Health Information Allowed to be Included:**

☐ Discharge Summary    ☐ Radiology         ☐ Special Studies       ☐ Entire Medical Record
☐ History & Physical/Consult  ☐ Outpt Record  ☐ Medication Records
☐ Operative Report      ☐ Progress Notes    ☐ Psych Health Records
☐ Labs                  ☐ Physician Orders  ☐ Other (specify): _____

*Psychotherapy Notes are distinct and may not be included with the disclosure of any other protected health information.*
*A Patient Authorization to Disclose Psychotherapy Notes must be completed.*

**Authorization:** I certify that this request is made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time in writing by submitting my request in writing to the designated Health Information Management / Medical Records department. If I have authorized the disclosure of my health information to someone who is not legally required to keep it private, it may be re-disclosed and may no longer be protected. A copy or fax of this authorization will be as valid as the original.
I understand that authorizing disclosure of health information is voluntary. I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment, payment, or my eligibility to obtain benefits. I understand that I may inspect or obtain a copy of the information to be disclosed. I understand a fee may be charged for copies of my medical record. I understand the facility will provide me a copy of the signed authorization form. If I have questions about disclosure of my health information, I can contact the designated Corporate Responsibility and Privacy Officer.
**Expiration:** Without my express revocation, this authorization will automatically expire upon satisfaction of the need for disclosure, but in any event will expire 90 days from the date hereof, unless a different date is specified here: _____
**Acknowledgement:** I understand that the information to be disclosed may include any or all information involving communicable or venereal disease, psychological or psychiatric conditions, drug or alcohol abuse and/or alcoholism. It may also include, but is not limited to, diseases such as hepatitis, syphilis, gonorrhea and human immunodeficiency viruses (HIV), also known as acquired immune deficiency syndrome (AIDS).
**For Marketing/Fundraising Purposes Only, if applicable:** I understand that Centura Health ☐ will  ☐ will not  receive remuneration, either direct or indirect, as a result of the marketing that I hereby authorize.

**SIGNATURE:** _____      **DATE:** _____
  Patient (Parent or Legal Guardian)

Minor's signature is required for release of any records for treatment which the minor may authorize under Colorado Law.
*Relationship (if other than patient):* _____   ☐ Power of Attorney   ☐ Death Certificate
*Name of individual signing on behalf of patient:* _____
**Verification:** ☐ Drivers License # _____   ☐ Other Appropriate ID: _____

**OFFICE USE ONLY: Attach copies of required identification.**
Number of pages released: _____ Completion date: _____   Delivery method: _____
Name of individual who received request: _____   Date received: _____
Patient Medical Record Number / Account Number: _____ / _____

**Lincoln/Bunch 0369**

04/10/2020 2:06:00 PM -0400 FAXCOM                                    PAGE 1    OF 2

**MRO**
1000 Madison Avenue, Suite 100
Norristown, PA 19403



Fax:      (610) 962-8421
Phone:  (610) 994-7500 Opt. 1

**Request ID: 34451403**
**Tracking #: CENTE9MDEF9KX**

**Danielle Davis**
Lincoln Financial Group
P.O. Box 7207
Liberty Life  Assur. Co. of Boston
London, KY  40742

**Track your request at www.roilog.com.**
**Enter your Tracking # and Request ID.**

Date:     4/8/2020
Phone:  8443845858
Fax:      603-559-0490

### Notice of an Issue Regarding Your Medical Record Information Request

MRO works with your healthcare provider to process requests for copies of medical records on their behalf.
There is an issue with your medical record request (see below). In order to resolve this issue; please fax the
information requested to MRO at (610) 962-8421. Upon receipt of the requested information, your request will be
processed as quickly as possible.

**Please note that you may be billed for a search/retrieval fee if you cancel your request.**

Should you have any questions, please feel free to contact MRO directly regarding this request by dialing
(610) 994-7500 Opt. 1 or by submitting an email to Requestinformation@mrocorp.com.
To help us better assist you, please be sure to include your Request ID in the subject line of your email.

MRO is processing your request in accordance with HIPAA regulations. Please notify the patient that the provision of
treatment, payment, enrollment, or eligibility for benefits will not be conditioned on the elements of the authorization
provided or your request for copies of the patient's records, unless permitted under 45 CFR 164.508(c)(2)(ii)(A)-(B).

Thank you,
**MRO**

Patient Name:  **MARK BUNCH**        Your Request Date:
                                      Your Reference Number:
                                      Date Received at Facility:   4/7/2020

**Your request is being processed by MRO on behalf of the following facility:**

Facility:        **Penrose-St. Francis Health Services**
                 2222 North Nevada Avenue
                 Colorado Springs, CO  80907

| ISSUE LIST |
|---|
| **Illegible Authorization**<br>Your authorization is illegible. Please mail/fax a legible authorization to the address/fax number shown above. |

Page 1 of 1

**Lincoln/Bunch 0370**

**Centura Health.** Page 1 of 1

**Patient Authorization to Disclose Protected Health Information**
**#CHCR-004  rev. 12/12**

AUTHPHI

| Patient Label |
| --- |
|  |

## Patient Authorization to Disclose Protected Health Information

| Patient Name | Date of Birth | Last 4 of Social Security Number |
| --- | --- | --- |
| Address | City, State, Zip Code | Telephone Number |

**I hereby authorize the facility listed below to disclose/release the Protected Health Information specified in this request to the organization, agency or patient named.**

Release by: _____
Facility

Address

City, State, Zip Code

HIM Phone/Fax Numbers

Release to: _____
Organization, Agency, Individual

Attn:

Address

City, State, Zip Code

**Treatment Date(s):**_____
**Purpose:** ☐ Further Medical Care  ☐ Workers' Comp
☐ Personal Use  ☐ Insurance  ☐ Legal
☐ Marketing/Fundraising
☐ Other:_____

**Type of Disclosure Authorized & Delivery Instructions:**
☐ Provide copies of records to organization/agency/individual
  ☐ Mail records directly to address above
  ☐ Call to pick-up records:_____
  ☐ Fax records to: _____

**Pertinent Protected Health Information Allowed to be Included:**

☐ Discharge Summary          ☐ Radiology          ☐ Special Studies          ☐ Entire Medical Record
☐ History & Physical/Consult ☐ Outpt Record       ☐ Medication Records
☐ Operative Report           ☐ Progress Notes     ☐ Psych Health Records
☐ Labs                       ☐ Physician Orders   ☐ Other (specify):_____

*Psychotherapy Notes are distinct and may not be included with the disclosure of any other protected health information.*
*A Patient Authorization to Disclose Psychotherapy Notes must be completed.*

**Authorization:** I certify that this request is made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time in writing by submitting my request in writing to the designated Health Information Management / Medical Records department. If I have authorized the disclosure of my health information to someone who is not legally required to keep it private, it may be re-disclosed and may no longer be protected. A copy or fax of this authorization will be as valid as the original.
I understand that authorizing disclosure of health information is voluntary. I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment, payment, or my eligibility to obtain benefits. I understand that I may inspect or obtain a copy of the information to be disclosed. I understand a fee may be charged for copies of my medical record. I understand the facility will provide me a copy of the signed authorization form. If I have questions about disclosure of my health information, I can contact the designated Corporate Responsibility and Privacy Officer.
**Expiration:** Without my express revocation, this authorization will automatically expire upon satisfaction of the need for disclosure, but in any event will expire 90 days from the date hereof, unless a different date is specified here:_____
**Acknowledgement:** I understand that the information to be disclosed may include any or all information involving communicable or venereal disease, psychological or psychiatric conditions, drug or alcohol abuse and/or alcoholism. It may also include, but is not limited to, diseases such as hepatitis, syphilis, gonorrhea and human immunodeficiency viruses (HIV), also known as acquired immune deficiency syndrome (AIDS).
**For Marketing/Fundraising Purposes Only, if applicable:** I understand that Centura Health ☐ will  ☐ will not  receive remuneration, either direct or indirect, as a result of the marketing that I hereby authorize.

**SIGNATURE:** _____  **DATE:** _____
Patient (Parent or Legal Guardian)

Minor's signature is required for release of any records for treatment which the minor may authorize under Colorado Law.

*Relationship (if other than patient):* _____  ☐ Power of Attorney    ☐ Death Certificate

*Name of individual signing on behalf of patient:*_____

**Verification:** ☐ Drivers License # _____  ☐ Other Appropriate ID: _____

**OFFICE USE ONLY: Attach copies of required identification.**

Number of pages released: _____  Completion date:          Delivery method: _____

Name of individual who received request: _____  Date received:_____

Patient Medical Record Number / Account Number: _____ /_____

**Lincoln/Bunch 0371**

HER-13-2020(MON) 11:38    DR HIGGINBOTHAM    (FAX)719 260 6086    P. 001/005

# Occupational
## And
# Environmental Health Services

Thomas W. Higginbotham, DC
Board Certified
Occupational And
Environmental Medicine

## FAX COVER SHEET

TO: _Danielle Davis_    FAX NO. _603-559-0490_

FROM: ___Thomas Higginbotham, D.O.___    FAX NO. ___(719) 260-6086___

DATE: _4-13-20_  NO. OF PAGES ___5___  (INCLUDES COVER SHEET)

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CONTACT US AS SOON AS
POSSIBLE FOR RE-TRANSMISSSION.

*Re: Mark Bunch*

*DOB:*

*8220685*

*your request for records is addressed to Dr. Higginbotham
but your consent is for Centura Health. Pls send
a signed consent for Dr. Higginbotham's records.*

*Bernadette*

The information contained in this facsimile transmission is intended solely for the *714-260-8190*
addressee(s) named above and is privileged and/or confidential. If the reader of this
message is not the intended recipient or the person responsible to deliver it to the
intended recipient, you are prohibited from reading or disclosing the information
contained in this transmission. Any examination, use, dissemination, distribution, or
copying of this communication is strictly prohibited. If you have received this
communication in error, please notify us immediately by phone for instructions.

1430 South 21ˢᵗ Street, Suite 101
Colorado Springs, CO 80904
(719)260-8190
FAX 260-6086

**Lincoln/Bunch 0372**



**Lincoln**
**Financial Group®**

Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

April 6, 2020

Dr. Higginbotham

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch
       Claimant D.O.B.:

To Whom It May Concern:

We are the Disability Claim Administrator for your patient, Mark Bunch.

To evaluate Mr. Bunch's eligibility for disability benefits and to help facilitate a return to work, when appropriate, we are requesting the following information:

- Office treatment notes, test results, prescription histories, and treatment plans from February 26, 2020 through present

We ask that you provide this information by April 13, 2020. Failure to provide the requested information may result in an adverse benefit or claim determination. The information can be faxed to our office at our secure fax number (603) 559-0490 or mailed to the above address.

If prepayment is required, please fax an invoice indicating the number of pages, federal tax ID# and amount due.

If you have any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
Ltd Specialist I
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

Attachments:   8220685-EMPLOYEE/CLAIMANT-AUTHORIZATION-10.01.2019

1  of 1

**Lincoln/Bunch 0373**

APR-13-2020(MON) 11:39    DR HIGGINBOTHAM                      (FAX)719 260 6086          P. 003/005

04/06/20  09:26:28  Lincoln Financial      →      719 260 6086 Lincoln Financial Gr Page 001



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date:  April 6, 2020 | |
| To:    DR. HIGGINBOTHAM | |
| Attn: | |
| Fax:   (719) 260-6086 | |
| From:  Danielle Davis<br>Ltd Specialist I<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 | |
| Total Pages<br>(Including Cover):    5 | |
| RE:<br><br>Claim #:    8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1.º de septiembre de 2019, Liberty Life Assurance Company of Boston cambió su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto plazo recibirá un Endoso que debe adjuntarse a su póliza una vez recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

Lincoln/Bunch 0374

APR-13-2020(MON) 11:39    DR HIGGINBOTHAM                  (FAX)719 260 6086         P.004/005

04/16/20  09:27:37  Lincoln Financial    ->        719 260 6086 Lincoln Financial Gr Page 004



### SHAKESHAFT-GORMAN
— LAW FIRM, LLP —

| | | |
|---|---|---|
| Kenneth J. Shakeshaft | • Attorney at Law | **Main Office** |
| Joseph M. Gorman | • Attorney at Law | Shakeshaft - Gorman Law Firm |
| Cindy Maddox | • Paralegal | 1935 Jamboree Drive, Suite 202 |
| Brandy Newton | • Paralegal | Colorado Springs, CO 80920 |

September 30, 2019

Via facsimile: 603-559-0490

Lincoln Financial Group
Attn: Danielle Davis
Charlotte, NC

       RE:    Our client:    Mark Bunch
                 Claim No.:   8220685
                 Charter Communications, Inc,

Dear Ms. Davis,

Attached please find the executed Release for Centura Health.

Please contact our office with any questions.

Sincerely,

Brandy Newton / Paralegal
Attachments

PHONE 719.633.5896 - FAX 719.633.5966 - TOLL FREE 1.800.383.5896
WWW.SHAKESHAFTANDGORMANLAW.COM - OFFICE@SHAKESHAFTANDGORMANLAW.COM

PAGE 2/3 * RCVD AT 9/30/2019 7:32:38 PM [Eastern Daylight Time] * SVR:VA1PWFAX301/3 * DNIS:6035590490 * CSID:7196350966 * ANI:17196350966 * DURATION (mm-ss):01-31

PAGE 4/5 * RCVD AT 4/13/2020 2:42:12 PM [Eastern Daylight Time] * SVR:VA1PWFAX301/7 * DNIS:6035590490 * CSID:719 260 6086 * ANI:17192606086 * DURATION (mm-ss):01-44

**Lincoln/Bunch 0375**

APR-13-2020(MON) 11:39    DR HIGGINBOTHAM    (FAX)719 260 6086    P. 005/005

.04/06/20  09:27:54  Lincoln Financial   ->    719 260 6086 Lincoln Financial Gr Page 005

Sep 09 2019 14:00:30 EDT Liberty Mutual Insur    MSG# 1661652250-006-1    Page 003 OF 003
5054344

 **Centura Health**   Page 1 of 1

Patient Authorization to Disclose Protected Health Information.
#CHCB-004 rev: 12/12

[barcode]

Patient Label

## Patient Authorization to Disclose Protected Health Information

| Patient Name | Date of Birth | Last 4 of Social Security Number |
|---|---|---|
| BUNCH, MARK | | |
| Address | City, State, Zip Code | Telephone Number |

I hereby authorize the facility listed below to disclose/release the Protected Health Information specified in this request to the organization, agency or patient named.

**Release by:** PENROSE MAIN ST. FRANCIS HOSPITAL
Facility
2222 N NEVADA AVE
Address
COLORADO SPRINGS CO 80907
City, State, Zip Code

HIS Phone/Fax Numbers

**Release to:** Lincoln Financial Group (c/o ReleasePoint)
Organization, Agency, Individual
Attn: PO Box 1390
Address: St. Peters   MO   63376
City, State, Zip Code

**Treatment Date(s):** From Discharge   To, Present
Purpose: ☐ Further Medical Care  ☐ Workers' Comp
☐ Personal Use  ☐ Insurance  ☐ Legal
☐ Marketing/Fundraising
☒ Other: Claims - Disability Insurance

**Type of Disclosure Authorized & Delivery Instructions:**
☒ Provide copies of records to organization/agency/individual
☒ Mail records directly to address above
☐ Call to pick-up records
☐ Fax records to: _____

**Pertinent Protected Health Information Allowed to be Included:**
☐ Discharge Summary    ☐ Radiology    ☐ Special Studies    ☐ Entire Medical Record
☐ History & Physical/Consult    ☐ Outpt Record    ☐ Medication Records
☐ Operative Report    ☐ Progress Notes    ☐ Psych Health Records
☐ Labs    ☐ Physician Orders    ☒ Other (specify): all PHI excluding x-ray films

*Psychotherapy Notes are distinct and may not be included with the disclosure of any other protected health information. A Patient Authorization to Disclose Psychotherapy Notes must be completed.*

**Authorization:** I certify that this request is made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time in writing by submitting my request in writing to the designated Health Information Management / Medical Records department. If I have authorized the disclosure of my health information to someone who is not legally required to keep it private, it may be re-disclosed and may no longer be protected. A copy or fax of this authorization will be as valid as the original.

I understand that authorizing disclosure of health information is voluntary. I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment, payment, or my eligibility to obtain benefits. I understand that I may inspect or obtain a copy of the information to be disclosed. I understand a fee may be charged for copies of my medical record. I understand the facility will provide me a copy of the signed authorization form. If I have questions about disclosure of my health information, I can contact the designated Corporate Responsibility and Privacy Officer.

Expiration: Without my express revocation, this authorization will automatically expire upon satisfaction of the need for disclosure, but in any event will expire 90 days from the date hereof, unless a different date is specified here: 180 days after signature date.

Acknowledgement: I understand that the information to be disclosed may include any or all information involving communicable or venereal disease, psychological or psychiatric conditions, drug or alcohol abuse and/or alcoholism. It may also include, but is not limited to, diseases such as hepatitis, syphilis, gonorrhea and human immunodeficiency viruses (HIV), also known as acquired immune deficiency syndrome (AIDS).

For Marketing/Fundraising Purposes Only, if applicable: I understand that Centura Health ☐ will ☐ will not  receive remuneration, either direct or indirect, as a result of the marketing that I hereby authorize.

**SIGNATURE:** _____   **DATE:** _____
Patient (Parent or Legal Guardian)

Minor's signature is required for release of any records for treatment which the minor may authorize under Colorado Law.
Relationship (if other than patient): _____   ☐ Power of Attorney   ☐ Death Certificate
Name of individual signing on behalf of patient: _____
Verification: ☐ Driver's License #: _____   ☐ Other Appropriate ID _____

**OFFICE USE ONLY: Attach copies of required identification.**
Number of pages released: _____  Completion date: _____   Delivery method: _____
Name of individual who received request: _____   Date received: _____
Patient Medical Record Number / Account Number: _____

PAGE 3/3 * RCVD AT 9/30/2019 7:32:38 PM [Eastern Daylight Time] * SVR:VA1PWFAX301/3 * DNIS:6033590490 * CSID:7196350066 * ANI:17196350066 * DURATION (mm-ss):01-31

PAGE 5/5 * RCVD AT 4/13/2020 2:42:12 PM [Eastern Daylight Time] * SVR:VA1PWFAX301/7 * DNIS:6035590490 * CSID:719 260 6086 * ANI:17192606086 * DURATION (mm-ss):01-44

**Lincoln/Bunch 0376**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date: April 6, 2020 | |
| To: PENROSE OUTPATIENT REHABILITATION | |
| Attn: | |
| Fax: (719) 776-5125 | |
| From: Danielle Davis<br>Ltd Specialist I<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 | |
| Total Pages<br>(Including Cover):     5 | |
| RE:<br><br>Claim #:     8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1.  de septiembre de 2019, Liberty Life Assurance Company of Boston cambi  su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto pla  o recibir  un Endoso que debe adjuntarse a su p  li  a una ve  recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0377**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

April 6, 2020

Penrose Outpatient Rehabilitation

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch
       Claimant D.O.B.:

To Whom It May Concern:

We are the Disability Claim Administrator for your patient, Mark Bunch.

To evaluate Mr. Bunch s eligibility for disability benefits and to help facilitate a return to work, when appropriate, we are requesting the following information:

       Office treatment notes, test results, prescription histories, and treatment plans from February 26, 2020 through present

We ask that you provide this information by April 13, 2020.  Failure to provide the requested information may result in an adverse benefit or claim determination.  The information can be faxed to our office at our secure fax number (603) 559-0490 or mailed to the above address.

If prepayment is required, please fax an invoice indicating the number of pages, federal tax ID# and amount due.

If you have any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
Ltd Specialist I
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

Attachments:   8220685-EMPLOYEE/CLAIMANT-AUTHORIZATION-10.01.2019

1  of 1

Lincoln/Bunch 0378

# SHAKESHAFT & GORMAN LAW FIRM, LLP

1935 Jamboree Dr. | Suite 202 | Colorado Springs, CO 80920
Tel 719.635.5886 | Fax 719.635.0966 | www.shakeshaftlawfirm.com

## FACSIMILE TRANSMISSION

**DATE:**              September 30, 2019

**TO:**                **Lincoln Financial Group**

**FROM:**              Brandy Newton| Paralegal

**PAGES INCLUDING COVER SHEET:** 3

**FAX NUMBER:**        603-559-0490

**REGARDING:**         Mark Bunch

**Comments:**          Claim Number: 8220685

Please see the following correspondence of today's date.

IF YOU DO NOT RECEIVE ALL THE PAGES OR IF ANY PART IS ILLEGIBLE, PLEASE CALL (719) 635-5886.

### NOTICE

THIS MESSAGE IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN PRIVILEGED OR CONFIDENTIAL INFORMATION WHICH IS EXEMPT FROM DISCLOSURE PURSUANT TO APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR IS NOT AN EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY OF THIS MESSAGE TO THE INTENDED RECIPIENT, DISTRIBUTION, COPYING OR OTHER DISSEMINATION OF THE INFORMATION CONTAINED IN THIS COMMUNICATION IS PROHIBITED. PLEASE CONTACT (719) 635-5886 AND RETURN THE ORIGINAL MESSAGE TO SHAKESHAFT LAW FIRM, 1935 JAMBOREE DRIVE, STE. 202, COLORADO SPRINGS, CO 80920.

Lincoln/Bunch 0379



## SHAKESHAFT·GORMAN
### — LAW FIRM, LLP —

| | | | |
|---|---|---|---|
| Kenneth J. Shakeshaft | • Attorney at Law | | **Main Office** |
| Joseph M. Gorman | • Attorney at Law | | Shakeshaft - Gorman Law Firm |
| Cindy Maddox | • Paralegal | | 1935 Jamboree Drive, Suite 202 |
| Brandy Newton | • Paralegal | | Colorado Springs, CO 80920 |

September 30, 2019

Via facsimile: 603-559-0490

Lincoln Financial Group
Attn: Danielle Davis
Charlotte, NC

      RE:    Our client:    Mark Bunch
               Claim No.:    8220685
               Charter Communications, Inc.

Dear Ms. Davis,

Attached please find the executed Release for Centura Health.

Please contact our office with any questions.

Sincerely,

Brandy Newton, Paralegal
Attachments

PHONE 719.635.5886 - FAX 719.635.0966 - TOLL FREE 1.800.383.5886
WWW.SHAKESHAFTANDGORMANLAW.COM - OFFICE@SHAKESHAFTANDGORMANLAW.COM

**Lincoln/Bunch 0380**

Sep 09 2819 14:88:30 EDT Liberty Mutual Insur        MSG# 1661862260-886-1     Page 883 OF 883
5654344

## ✚ Centura Health. Page 1 of 1

Patient Authorization to Disclose Protected Health Information
#CHCR-004  rev. 12/12

Patient Label

### Patient Authorization to Disclose Protected Health Information

| Patient Name | Date of Birth | Last 4 of Social Security Number |
|---|---|---|
| BUNCH, MARK | | |
| Address | City, State, Zip Code | Telephone Number |

I hereby authorize the facility listed below to disclose/release the Protected Health Information specified in this request to the organization, agency or patient named.

| Release by:  PENROSE MAIN ST. FRANCIS HOSPITAL | Release to:  Lincoln Financial Group (c/o ReleasePoint) |
|---|---|
| Facility  2222 N NEVADA AVE | Organization, agency, individual |
| Address  COLORADO SPRINGS CO 80907 | Attn:  PO Box 1390 |
| City, State, Zip Code | Address:  St. Peters   MO   63376 |
| HIM Phone/Fax Numbers | City, State, Zip Code |

Treatment Date(s):    FROM: Various    TO: Present
Purpose: ☐ Further Medical Care  ☐ Workers' Comp
☐ Personal Use  ☐ Insurance  ☐ Legal
☐ Marketing/Fundraising
☒ Other:  Claims - Disability Insurance

Type of Disclosure Authorized & Delivery Instructions:
☒ Provide copies of records to organization/agency/individual
☒ Mail records directly to address above
☐ Call to pick-up records: _____
☐ Fax records to: _____

**Pertinent Protected Health Information Allowed to be Included:**

☐ Discharge Summary          ☐ Radiology            ☐ Special Studies          ☐ Entire Medical Record
☐ History & Physical/Consult  ☐ Outpt Record         ☐ Medication Records
☐ Operative Report            ☐ Progress Notes       ☐ Psych Health Records
☐ Labs                        ☐ Physician Orders     ☒ Other (specify):  all PHI  excluding x-ray films

*Psychotherapy Notes are distinct and may not be included with the disclosure of any other protected health information. A Patient Authorization to Disclose Psychotherapy Notes must be completed.*

Authorization: I certify that this request is made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time in writing by submitting my request in writing to the designated Health Information Management / Medical Records department. If I have authorized the disclosure of my health information to someone who is not legally required to keep it private, it may be re-disclosed and may no longer be protected. A copy or fax of this authorization will be as valid as the original.

I understand that authorizing disclosure of health information is voluntary. I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment, payment, or my eligibility to obtain benefits. I understand that I may inspect or obtain a copy of the information to be disclosed. I understand a fee may be charged for copies of my medical record. I understand the facility will provide me a copy of the signed authorization form. If I have questions about disclosure of my health information, I can contact the designated Corporate Responsibility and Privacy Officer.

Expiration: Without my express revocation, this authorization will automatically expire upon satisfaction of the need for disclosure, but in any event will expire 90 days from the date hereof, unless a different date is specified here: 180 days after signature date.

Acknowledgement: I understand that the information to be disclosed may include any or all information involving communicable or venereal disease, psychological or psychiatric conditions, drug or alcohol abuse and/or alcoholism. It may also include, but is not limited to, diseases such as hepatitis, syphilis, gonorrhea and human immunodeficiency viruses (HIV), also known as acquired immune deficiency syndrome (AIDS).

For Marketing/Fundraising Purposes Only, if applicable: I understand that Centura Health ☐ will  ☐ will not  receive remuneration, either direct or indirect, as a result of the marketing that I hereby authorize.

| SIGNATURE: | DATE:  9/19/19 |
|---|---|
| Patient (Parent or Legal Guardian) | |

Minor's signature is required for release of any records for treatment which the minor may authorize under Colorado Law.

Relationship (if other than patient): _____          ☐ Power of Attorney    ☐ Death Certificate

Name of individual signing on behalf of patient: _____

Verification: ☐ Drivers License # _____          ☐ Other Appropriate ID: _____

**OFFICE USE ONLY: Attach copies of required identification.**

Number of pages released: _____ Completion date: _____          Delivery method: _____
Name of individual who received request: _____          Date received: _____
Patient Medical Record Number / Account Number: _____ / _____

**Lincoln/Bunch 0381**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date:  April 6, 2020 | |
| To:    DR. HIGGINBOTHAM | |
| Attn: | |
| Fax:    (719) 260-6086 | |
| From:  Danielle Davis<br>Ltd Specialist I<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 | |
| Total Pages<br>(Including Cover):    5 | |
| RE:<br><br>Claim #:    8220685<br>Claimant:  Mark Bunch<br><br>Charter Communications, Inc. | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1. de septiembre de 2019, Liberty Life Assurance Company of Boston cambi su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto pla o recibir un Endoso que debe adjuntarse a su p li a una ve recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0382**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

April 6, 2020

Dr. Higginbotham

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch
       Claimant D.O.B.:

To Whom It May Concern:

We are the Disability Claim Administrator for your patient, Mark Bunch.

To evaluate Mr. Bunch s eligibility for disability benefits and to help facilitate a return to work, when appropriate, we are requesting the following information:

       Office treatment notes, test results, prescription histories, and treatment plans from
       February 26, 2020 through present

We ask that you provide this information by April 13, 2020.  Failure to provide the requested information may result in an adverse benefit or claim determination.  The information can be faxed to our office at our secure fax number (603) 559-0490 or mailed to the above address.

If prepayment is required, please fax an invoice indicating the number of pages, federal tax ID# and amount due.

If you have any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
Ltd Specialist I
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

Attachments:   8220685-EMPLOYEE/CLAIMANT-AUTHORIZATION-10.01.2019

1  of 1

**Lincoln/Bunch 0383**

09/30/2019  18:32    7196350966                                               PAGE 01/03

# SHAKESHAFT & GORMAN LAW FIRM, LLP

1935 Jamboree Dr. | Suite 202 | Colorado Springs, CO 80920
Tel 719.635.5886 | Fax 719.635.0966 | www.shakeshaftlawfirm.com

<u>FACSIMILE TRANSMISSION</u>

**DATE:**           September 30, 2019

**TO:**             **Lincoln Financial Group**

**FROM:**           Brandy Newton| Paralegal

**PAGES INCLUDING COVER SHEET:** 3

**FAX NUMBER:**     603-559-0490

**REGARDING:**      Mark Bunch

**Comments:**       Claim Number: 8220685

Please see the following correspondence of today's date.

IF YOU DO NOT RECEIVE ALL THE PAGES OR IF ANY PART IS ILLEGIBLE, PLEASE CALL (719) 635-5886.

<u>NOTICE</u>

THIS MESSAGE IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN PRIVILEGED OR CONFIDENTIAL INFORMATION WHICH IS EXEMPT FROM DISCLOSURE PURSUANT TO APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR IS NOT AN EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY OF THIS MESSAGE TO THE INTENDED RECIPIENT, DISTRIBUTION, COPYING OR OTHER DISSEMINATION OF THE INFORMATION CONTAINED IN THIS COMMUNICATION IS PROHIBITED. PLEASE CONTACT (719) 635-5886 AND RETURN THE ORIGINAL MESSAGE TO SHAKESHAFT LAW FIRM, 1935 JAMBOREE DRIVE, STE. 202, COLORADO SPRINGS, CO 80920.

PAGE 1/3 * RCVD AT 9/30/2019 7:32:38 PM [Eastern Daylight Time] * SVR:VA1PWFAX301/3 * DNIS:6035590490 * CSID:7196350966 * ANI:17196350966 * DURATION (mm-ss):01-31____

**Lincoln/Bunch 0384**



## SHAKESHAFT-GORMAN
### — LAW FIRM, LLP —

| | | |
|---|---|---|
| **Kenneth J. Shakeshaft** | • Attorney at Law | **Main Office** |
| **Joseph M. Gorman** | • Attorney at Law | Shakeshaft - Gorman Law Firm |
| Cindy Maddox | • Paralegal | 1935 Jamboree Drive, Suite 202 |
| Brandy Newton | • Paralegal | Colorado Springs, CO 80920 |

September 30, 2019

Via facsimile: 603-559-0490

Lincoln Financial Group
Attn: Danielle Davis
Charlotte, NC

RE:    Our client:    Mark Bunch
       Claim No.:      8220685
       Charter Communications, Inc.

Dear Ms. Davis,

Attached please find the executed Release for Centura Health.

Please contact our office with any questions.

Sincerely,

Brandy Newton / Paralegal
Attachments

PHONE 719.635.5886 - FAX 719.635.0966 - TOLL FREE 1.800.383.5886
WWW.SHAKESHAFTANDGORMANLAW.COM - OFFICE@SHAKESHAFTANDGORMANLAW.COM

**Lincoln/Bunch 0385**

Sep 09 2019 14:00:30 EDT Liberty Mutual Insur        MSG# 1661062266-006-1    Page 003 OF 003
                  5654344

## ✚ Centura Health. Page 1 of 1

Patient Authorization to Disclose Protected Health Information
#CHCR-004  rev. 12/12

‖‖‖‖‖‖‖‖‖‖‖
AUTHPHI

| | Patient Label |

## Patient Authorization to Disclose Protected Health Information

| Patient Name | Date of Birth | Last 4 of Social Security Number |
|---|---|---|
| BUNCH, MARK | | |
| **Address** | **City, State, Zip Code** | **Telephone Number** |
| | | |

I hereby authorize the facility listed below to disclose/release the Protected Health Information specified in this request to the organization, agency or patient named.

| Release by: | PENROSE MAIN ST. FRANCIS HOSPITAL | Release to: | Lincoln Financial Group (c/o ReleasePoint) |
|---|---|---|---|
| | Facility | | Organization, agency, individual |
| | 2222 N NEVADA AVE | | |
| | Address | Attn: | PO Box 1390 |
| | COLORADO SPRINGS CO 80907 | | |
| | City, State, Zip Code | Address: | St. Peters   MO   63376 |
| | HIM Phone/Fax Numbers | | City, State, Zip Code |

**Treatment Date(s):**  FROM: Discharge   TO: Present
**Purpose:** ☐ Further Medical Care  ☐ Workers' Comp
☐ Personal Use  ☐ Insurance  ☐ Legal
☐ Marketing/Fundraising
☒ Other: Claims - Disability Insurance

**Type of Disclosure Authorized & Delivery Instructions:**
☒ Provide copies of records to organization/agency/individual
☒ Mail records directly to address above
☐ Call to pick-up records: _____
☐ Fax records to: _____

**Pertinent Protected Health Information Allowed to be Included:**

| ☐ Discharge Summary | ☐ Radiology | ☐ Special Studies | ☐ Entire Medical Record |
|---|---|---|---|
| ☐ History & Physical/Consult | ☐ Outpt Record | ☐ Medication Records | |
| ☐ Operative Report | ☐ Progress Notes | ☐ Psych Health Records | |
| ☐ Labs | ☐ Physician Orders | ☒ Other (specify): all PHI  excluding x-ray films | |

**\*Psychotherapy Notes** are distinct and may not be included with the disclosure of any other protected health information. A Patient Authorization to Disclose Psychotherapy Notes must be completed.

**Authorization:** I certify that this request is made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time in writing by submitting my request in writing to the designated Health Information Management / Medical Records department. If I have authorized the disclosure of my health information to someone who is not legally required to keep it private, it may be re-disclosed and may no longer be protected. A copy or fax of this authorization will be as valid as the original.

I understand that authorizing disclosure of health information is voluntary. I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment, payment, or my eligibility to obtain benefits. I understand that I may inspect or obtain a copy of the information to be disclosed. I understand a fee may be charged for copies of my medical record. I understand the facility will provide me a copy of the signed authorization form. If I have questions about disclosure of my health information, I can contact the designated Corporate Responsibility and Privacy Officer.

**Expiration:** Without my express revocation, this authorization will automatically expire upon satisfaction of the need for disclosure, but in any event will expire 90 days from the date hereof, unless a different date is specified here: 180 days after signature date.

**Acknowledgement:** I understand that the information to be disclosed may include any or all information involving communicable or venereal disease, psychological or psychiatric conditions, drug or alcohol abuse and/or alcoholism. It may also include, but is not limited to, diseases such as hepatitis, syphilis, gonorrhea and human immunodeficiency viruses (HIV), also known as acquired immune deficiency syndrome (AIDS).

**For Marketing/Fundraising Purposes Only,** if applicable: I understand that Centura Health ☐ will  ☐ will not   receive remuneration, either direct or indirect, as a result of the marketing that I hereby authorize.

| **SIGNATURE:** _(signature)_ | **DATE:** 9/19/19 |
|---|---|

Minor's signature is required for release of any records for treatment which the minor may authorize under Colorado Law.
Relationship (if other than patient): _____        ☐ Power of Attorney   ☐ Death Certificate
Name of individual signing on behalf of patient: _____
Verification: ☐ Drivers License #_____        ☐ Other Appropriate ID: _____

**OFFICE USE ONLY: Attach copies of required identification.**
Number of pages released: _____  Completion date: _____      Delivery method: _____
Name of individual who received request: _____            Date received: _____
Patient Medical Record Number / Account Number: _____ / _____

**Lincoln/Bunch 0386**

# SHAKESHAFT & GORMAN LAW FIRM, LLP

1935 Jamboree Dr. | Suite 202 | Colorado Springs, CO 80920
Tel 719.635.5886 | Fax 719.635.0966 | www.shakeshaftlawfirm.com

## FACSIMILE TRANSMISSION

**DATE:**               April 3, 2020

**TO:**                 **Lincoln Financial Group – Danielle Davis**

**FROM:**               Brandy Newton| Paralegal

**PAGES INCLUDING COVER SHEET:**        3

**FAX NUMBER:**         603-559-0490

**REGARDING:**          Mark Bunch

**Comments:**           Claim Number: 8220685

                        Please see Mr. Bunch's Claimant Information form.  Thank you

IF YOU DO NOT RECEIVE ALL THE PAGES OR IF ANY PART IS ILLEGIBLE, PLEASE CALL (719) 635-5886.

### NOTICE

THIS MESSAGE IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN PRIVILEGED OR CONFIDENTIAL INFORMATION WHICH IS EXEMPT FROM DISCLOSURE PURSUANT TO APPLICABLE LAW.  IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR IS NOT AN EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY OF THIS MESSAGE TO THE INTENDED RECIPIENT, DISTRIBUTION, COPYING OR OTHER DISSEMINATION OF THE INFORMATION CONTAINED IN THIS COMMUNICATION IS PROHIBITED.  PLEASE CONTACT (719) 635-5886 AND RETURN THE ORIGINAL MESSAGE TO SHAKESHAFT LAW FIRM, 1935 JAMBOREE DRIVE, STE. 202, COLORADO SPRINGS, CO 80920.

**Lincoln/Bunch 0387**

03/09/20  16:53:56  Lincoln Financial

**CLAIMANT INFORMATION FORM**

## Lincoln Financial Group®

Return To: Danielle Davis

EMPLOYEE/CLAIMANT NAME: Mark Bunch

CLAIM NO: 8220685

EMPLOYER/SPONSOR: Charter Communications, Inc.

DATE OF BIRTH: 09/17/1965

**TO BE COMPLETED BY EMPLOYEE:**

Please provide us with the names of all medical providers, hospitals, medical insurance carriers, and pharmacies used during the time period from 11/01/2019 to present. *If additional space is needed, please use a separate sheet of paper.*

**MEDICAL PROVIDERS/THERAPISTS/CLINICS/HOSPITALS:**

Name: Thomas Higginbotham, D.O.
Specialty: Occupational Medicine
Address: 1430 S. 21st Street, Ste. 101
Colorado Springs, CO 80904
Telephone No.: (719) 260-8190     Fax No.: (719) 260-8086

Name: 
Specialty: 
Address: 
Telephone No.: (   )     Fax No.: (   )

Name: St. Thomas More Hospital
Specialty: Outpatient Rehabilitation
Address: 1338 Phay Avenue
Canon City, CO 81212
Telephone No.: (   )     Fax No.: (   )

Name: 
Specialty: 
Address: 
Telephone No.: (   )     Fax No.: (   )

**MEDICAL INSURANCE CARRIER(S):**

Name: 
Specialty: 
Address: 
Telephone No.: (   )     Fax No.: (   )

Name: 
Specialty: 
Address: 
Telephone No.: (   )     Fax No.: (   )

**PHARMACY(S):**

Name: Safeway Pharmacy
Specialty: 
Address: 1414 Main Street
Canon City, CO
Telephone No.: (719) 276-7811     Fax No.: (   )

Name: 
Specialty: 
Address: 
Telephone No.: (   )     Fax No.: (   )

I hereby attest the above statement is true. I understand that any person who knowingly and with intent to injure, defraud, or deceive the insurance company files a statement or claim containing any false or misleading information may be guilty of a criminal act punishable under law.

Lincoln/Bunch 0388



03/09/20  16:54:85  Lincoln Financial     →     7:96358966 Lincoln Financial Co Page 03

SIGNATURE: _____ DATE: _____

**Lincoln/Bunch 0389**

03/20/2020   12:36    7196350966                                                      PAGE 01/06

# SHAKESHAFT & GORMAN LAW FIRM, LLP

1935 Jamboree Dr. | Suite 202 | Colorado Springs, CO 80920
Tel 719.635.5886 | Fax 719.635.0966 | www.shakeshaftlawfirm.com

## FACSIMILE TRANSMISSION

**DATE:**        March 20, 2020

**TO:**          Lincoln Financial / Danielle Davis

**FROM:**        Brandy Newton| Paralegal

**PAGES INCLUDING COVER SHEET**:

**FAX NUMBER:**  **603-559-0490**

**REGARDING:**   Mark Bunch
                 Claim No.: 8220685

**Comments:**    Please see attached correspondence of today's date.


IF YOU DO NOT RECEIVE ALL THE PAGES OR IF ANY PART IS ILLEGIBLE, PLEASE CALL (719) 635-5886.

### NOTICE

THIS MESSAGE IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN PRIVILEGED OR CONFIDENTIAL INFORMATION WHICH IS EXEMPT FROM DISCLOSURE PURSUANT TO APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR IS NOT AN EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY OF THIS MESSAGE TO THE INTENDED RECIPIENT, DISTRIBUTION, COPYING OR OTHER DISSEMINATION OF THE INFORMATION CONTAINED IN THIS COMMUNICATION IS PROHIBITED. PLEASE CONTACT (719) 635-5886 AND RETURN THE ORIGINAL MESSAGE TO SHAKESHAFT LAW FIRM, 1935 JAMBOREE DRIVE, STE. 202, COLORADO SPRINGS, CO 80920.

**Lincoln/Bunch 0390**



## SHAKESHAFT-GORMAN
### ~~ LAW FIRM, LLP ~~

| | | | Main Office |
|---|---|---|---|
| Kenneth J. Shakeshaft | • Attorney at Law | | Shakeshaft - Gorman Law Firm |
| Joseph M. Gorman | • Attorney at Law | | 1935 Jamboree Drive, Suite 202 |
| Cindy Maddox | • Paralegal | | Colorado Springs, CO 80920 |
| Brandy Newton | • Paralegal | | |

March 20, 2020

Via facsimile: 603-559-0490

Lincoln Financial Group
Attn: Danielle Davis
Charlotte, NC

       RE:   Our client:   Mark Bunch
               Claim No.:   8220685
               Charter Communications, Inc.

Dear Ms. Davis,

In response to your correspondence dated March 9, 2020, please be advised Mark Bunch is still treating with Dr. Higginbotham. I have attached reports from Dr. Higginbotham dated October 10, 2019, December 17, 2019 and February 25, 2020.

Mr. Bunch has also continued with speech therapy with St. Thomas More Hospital in Canon City, CO. Our office has requested these records and will forward them onto Lincoln Financial as soon as they are received.

We have also requested Mr. Bunch fill out and sign the Claimant Information Form. Once he provides this to our office we will forward it onto Lincoln Financial.

Please contact our office if any additional information is needed.

Sincerely,

Kenneth J. Shakeshaft

**Lincoln/Bunch 0391**

BUNCH, Mark
10/10/19
DOB:

S:   Mr. Bunch is here primarily at this point to monitor his blood
pressure.   He missed his appointment on 10/01/2019 because of
transportation issues.   He relates that he was given a favorable
decision for his long-term disability, but he still hasn't heard yet
from his application for disability through Social Security.   The
latter has been pivotal for pursuing further consultative and
diagnostic evaluations as he is without health insurance.   He
continues with telmisartan hydrochlorothiazide 40/12.5 mg. He states
that the swelling is improved, and he is wearing compression
stockings.   He denies any chest pain.   He denies any shortness of
breath.   He continues to have some speech difficulties and visual
spatial disorientation.   He still does not trust himself to drive.
He relates that in some respects, he has improved but in others, he
persists.   He is newly married.   His wife is working. He cannot watch
TV for long periods of time as the visual stimulation is too much for
his eyes.   It causes headaches.   He still does fatigue through the
day.   He will still bump into things.

O:   He was noticed dozing off in the waiting room.   When asked why he was
sleepy, he stated that he was comfortable in the waiting room. His
transition from sit to stand was slow but unassisted.   His gait down
the hallway into the exam room was without a cane and his gait is
unsure.   He will wobble from side-to-side but corrected himself.   His
head is significantly forward-rolled.   With Romberg testing, he will
reel backwards but doesn't fall.   He cannot do tandem walking.   He
has better eye-to-eye contact today. His prosody is improved but not
fluent.  He is not as dysarthric as he has been.  Blood pressure is
180/102.   Heart rate is 90.   Pulse oximetry is 94% O2 on room air; no
pedal edema was noted. He was wearing compression stockings.

A:   Closed head injury sequela S06.2X0D
Unspecified abnormalities of gait and mobility R26.9
Imbalance R26.2
Malignant hypertension I10

P:   He will continue with telmisartan hydrochlorothiazide 40/12.5 mg, but
twice a day now; #180 with 2 refills was prescribed.   I also added
amlodipine 5 mg a day; #30 with 2 refills was prescribed.   I reviewed
their use, indications, and side effects.   I've asked that he attend
to a basic laboratory panel and provided him with prescriptions for
such.   I will see him again in one month. Reassurances were given.

Thomas Higginbotham D.O.

Lincoln/Bunch 0392

03/20/2020  12:36    7196350966                                        PAGE 04/06

BUNCH, Mark
12/17/19
DOB:

S:   Mr. Bunch returns for periodic blood pressure monitoring and
     medication refill.   I had added amlodipine to the Micardis and with
     the Micardis, I added hydrochlorothiazide at our last visit.   At out
     last visit his blood pressure was 180/102.   He hasn't heard yet from
     Social Security regarding his disability application.    He relates
     that this stall had to do the Social Security not receiving the
     speech therapy information from St. Thomas-Moore Hospital in Canon
     City, Colorado.

O:   Blood pressure is 144/92.   Heart rate is 92.   Pulse oximetry is 93%
     O2 on room air; he has no pedal edema.   His presentation is somewhat
     improved, but he still has issues with imbalance, word finding, and
     visual spatial disorientation.

A:   Hypertension I10

P:   He will continue with the present medications.   Amlodipine 5 mg, #90
     and Micardis-hydrochlorothiazide 40-12.5 mg was prescribed for 90
     days.   Reassurances were given.

Thomas Higginbotham D.O.

**Lincoln/Bunch 0393**

BUNCH, Mark
02/25/20
DOB:

S:  Mr. Bunch is here for periodic visit.  He was last seen on 12/17/2019.  He has been requested to follow up with a PCP, but he has no health insurance.  He is pleased to let me know that just recently, about the end of December, he qualified for disability under Social Security.  Apparently Medicare insurance starts in March.  He apparently had some Skype interviews with a Social Security provider/evaluator from the State of Washington.

The provider recommended that he see a primary care provider closer to his home in Canon City than coming to Colorado Springs.  The provider recommended some forms of therapy.  He started music therapy and has had one session to date.  It appears that the Social Security provider recognized his traumatic brain injury sequela.

O:  Blood pressure is 150/94.  Heart rate is 83.  Pulse oximetry is 92% O2 on room air; there is no pedal edema.  He seems to be tolerating the Micardis/hydrochlorothiazide 40/12.5 mg.  This was recently refilled on 02/18/202 for #90.  He still has speech difficulties.  He has difficulty with articulation and particularly with word finding.  This is still problematic, but it is a little better.  He still has profound visual spatial disorientation.  When reaching for a paper or a pen, he must grope for them.  When attempting to read, he closes one eye because of double vision.  This has been a problem all along.  His balance is not good.  He walks with a forward-held carriage to watch his feet to make sure he doesn't trip.  He has difficulty with pivoting.  Looking up and over with his head creates some imbalance but no frank dizziness.  He does not drive.

A:  Hypertension I10
History of traumatic brain injury Z87.828
Adjustment disorder with depressed mood F06.30
Emotional and behavioral disturbance/changes F59
Neurocognitive disorder G31.84
Visual difficulties with spatial disorientation H53.30

P:  Our final pursuit is waiting until he obtains Medicare.  I gave him the name of an insurance broker to assist him with a secondary supplemental insurance to Medicare.  I discussed Subparts D and F. Once he is well insured, then he will follow-up with a long-standing recommendation of mine to see a PCP in Canon City for his medical management.

**Lincoln/Bunch 0394**

03/20/2020  12:36    7196350966                                                  PAGE 06/06

Page 2
BUNCH, Mark
02/25/20

We will then be able to attend to additional therapies including a
neuro-optometry assessment for corrective lenses and vestibular
therapy.   It took about a year and a half to get him approved for
Social Security Disability.  Reassurances were given.

Thomas Higginbotham D.O.

**Lincoln/Bunch 0395**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date: March 19, 2020 | |
| To: | SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE 202<br>COLORADO SPRINGS CO 80920 |
| Attn: | |
| Fax: | (719) 635-0966 |
| From: | Danielle Davis<br>Ltd Specialist I<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 |
| Total Pages (Including Cover): 9 | |
| RE:<br><br>Claim #: 8220685<br>Claimant: Mark Bunch<br><br>Charter Communications, Inc. | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1. de septiembre de 2019, Liberty Life Assurance Company of Boston cambi su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto pla o recibir un Endoso que debe adjuntarse a su p li a una ve recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0396**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

March 19, 2020

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

Lincoln Life Assurance Company of Boston is responsible for managing claims for Long Term
Disability (LTD) benefits under Charter Communications, Inc.'s Group Disability Policy.  We are
writing in reference to Mark Bunch's claim for LTD benefits under the Policy.

Please find the enclosed request(s) for information previously sent to Shakeshaft-Gorman Law Firm.
This is the third request for this information.  Further delay may result in an adverse claim
determination.  Please submit the requested information by April 18, 2020.

If you have any questions regarding this correspondence, please contact me.

Sincerely,

Danielle Davis
Ltd Specialist I
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

Attachments:   8220685-REQUEST-CLAIMANT OTHER-03.09.2020

1  of  1

**Lincoln/Bunch 0397**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date: March 9, 2020 | |
| To: SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE 202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax: (719) 635-0966 | |
| From: Danielle Davis<br>Ltd Specialist I<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 | |
| Total Pages<br>(Including Cover): 7 | |
| RE:<br><br>Claim #: 8220685<br>Claimant: Mark Bunch<br><br>Charter Communications, Inc. | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1.º de septiembre de 2019, Liberty Life Assurance Company of Boston cambió su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto plazo recibirá un Endoso que debe adjuntarse a su póliza una vez recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

Lincoln/Bunch 0398



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

March 9, 2020

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
        Charter Communications, Inc.
        Claim #: 8220685
        Claimant: Mark Bunch

To Whom It May Concern:

Lincoln Life Assurance Company of Boston is responsible for managing claims for Long Term
Disability (LTD) benefits under Charter Communications, Inc.'s Group Disability Policy.  We are
writing in reference to Mark Bunch's claim for LTD benefits under the Policy.

Please find the enclosed request(s) for information previously sent to Shakeshaft & Gorman Law
Firm.  This is the second request for this information.  Further delay may result in an adverse claim
determination.  Please submit the requested information by April 18, 2020.

If you have any questions regarding this correspondence, please contact me.

Sincerely,

Danielle Davis
Ltd Specialist I
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

Attachments:    8220685-REQUEST-CLAIMANT PROOF OF DISABILITY/FORMS-02.04.2020

1  of  1

**Lincoln/Bunch 0399**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date: February 4, 2020 | |
| To: SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE 202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax: (719) 635-0966 | |
| From: Danielle Davis<br>Ltd Specialist I<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 | |
| Total Pages<br>(Including Cover): 5 | |
| RE:<br><br>Claim #: 8220685<br>Claimant: Mark Bunch<br><br>Charter Communications, Inc. | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1.º de septiembre de 2019, Liberty Life Assurance Company of Boston cambió su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto plazo recibirá un Endoso que debe adjuntarse a su póliza una vez recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0400**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

February 4, 2020

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

Lincoln Life Assurance Company of Boston is responsible for managing claims for Long Term
Disability (LTD) benefits under Charter Communications, Inc.'s Group Disability Policy.  We are
writing in reference to Mark Bunch's claim for LTD benefits under the Policy.

We are currently reviewing Mr. Bunch's eligibility for continued disability benefits, and are in need
of additional information.

To be eligible to receive benefits, the Policy requires that Mr. Bunch provide proof of disability in
order to receive benefits. However, there are currently no medical providers on file, so we are
unable to request his medical records which are needed to evaluate his claim eligibility.

To assist us with our investigation, please complete the enclosed Claimant Information Form and
provide us the full names, addresses, and telephone numbers of all medical providers, you are
currently treating with for this condition.

Additionally, please contact each of his medical providers and request that they provide our office
with the following information:

- A copy of all office treatment notes, test results, therapy records, hospital admission records,
  operative reports, prescription history and treatment plans from November 1, 2019 through
  present.

Charter Communications, Inc.'s LTD Policy requires that Mr. Bunch provide proof of disability in
order to receive benefits. This proof must be provided by April 18, 2020. Without the information
specified above, we will be unable to evaluate his claim eligibility and your disability benefits may
be closed.

Lincoln/Bunch 0401

Charter Communications, Inc.'s LTD Policy requires that, in order to receive ongoing benefits, Mr. Bunch provide proof of disability within a required timeframe.  His cooperation in providing the requested information is essential to our claim investigation.

If we do not receive all of the requested information by March 19, 2020, 45 days from the date of this request, Mr. Bunch's benefits will be suspended. If we do not receive all of this requested information by April 18, 2020, 30 days from the date of suspension, his claim will be closed.

We ask that Mr. Bunch provide us with this information no later than April 18, 2020 as required under the terms of the Policy.

If Mr. Bunch has any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
Ltd Specialist I
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

Attachments:   Claimant Information Form

2  of  2

**Lincoln/Bunch 0402**

# CLAIMANT INFORMATION FORM



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

**Return To:** Danielle Davis

EMPLOYEE/CLAIMANT NAME: Mark Bunch

CLAIM NO: 8220685

EMPLOYER/SPONSOR: Charter Communications, Inc.                    DATE OF BIRTH:

### TO BE COMPLETED BY EMPLOYEE:

Please provide us with the names of all medical providers, hospitals, medical insurance carriers, and pharmacies used during the time period from 11/01/2019 to present.   *If additional space is needed, please use a separate sheet of paper.*

### MEDICAL PROVIDERS/THERAPISTS/CLINICS/HOSPITALS:

Name: _____     Name: _____
Specialty:_____     Specialty:_____
Address: _____     Address: _____
_____     _____
Telephone No. :(___)_____ Fax No. :(___)_____   Telephone No. :(___)_____ Fax No. :(___)_____

Name: _____     Name: _____
Specialty:_____     Specialty:_____
Address: _____     Address: _____
_____     _____
Telephone No. :(___)_____ Fax No. :(___)_____   Telephone No. :(___)_____ Fax No. :(___)_____

### MEDICAL INSURANCE CARRIER(S):

Name: _____     Name: _____
Specialty:_____     Specialty:_____
Address: _____     Address: _____
_____     _____
Telephone No. :(___)_____ Fax No. :(___)_____   Telephone No. :(___)_____ Fax No. :(___)_____

### PHARMACY(S):

Name: _____     Name: _____
Specialty:_____     Specialty:_____
Address: _____     Address: _____
_____     _____
Telephone No. :(___)_____ Fax No. :(___)_____   Telephone No. :(___)_____ Fax No. :(___)_____

I hereby attest the above statement is true. I understand that any person who knowingly and with intent to injure, defraud, or deceive the insurance company files a statement or claim containing any false or misleading information may be guilty of a criminal act punishable under law.

**Lincoln/Bunch 0403**

SIGNATURE: _____ DATE: _____

**Lincoln/Bunch 0404**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date: March 9, 2020 | |
| To: SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE 202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax: (719) 635-0966 | |
| From: Danielle Davis<br>Ltd Specialist I<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 | |
| Total Pages<br>(Including Cover): 7 | |
| RE:<br><br>Claim #: 8220685<br>Claimant: Mark Bunch<br><br>Charter Communications, Inc. | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1. de septiembre de 2019, Liberty Life Assurance Company of Boston cambi su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto pla o recibir un Endoso que debe adjuntarse a su p li a una ve recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0405**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

March 9, 2020

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

Lincoln Life Assurance Company of Boston is responsible for managing claims for Long Term
Disability (LTD) benefits under Charter Communications, Inc.'s Group Disability Policy.  We are
writing in reference to Mark Bunch's claim for LTD benefits under the Policy.

Please find the enclosed request(s) for information previously sent to Shakeshaft & Gorman Law
Firm.  This is the second request for this information.  Further delay may result in an adverse claim
determination.  Please submit the requested information by April 18, 2020.

If you have any questions regarding this correspondence, please contact me.

Sincerely,

Danielle Davis
Ltd Specialist I
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

Attachments:   8220685-REQUEST-CLAIMANT PROOF OF DISABILITY/FORMS-02.04.2020

1  of  1

**Lincoln/Bunch 0406**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date: February 4, 2020 | |
| To: SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax:    (719) 635-0966 | |
| From: Danielle Davis<br>Ltd Specialist I<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 | |
| Total Pages<br>(Including Cover):    5 | |
| RE:<br><br>Claim #:    8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1.º de septiembre de 2019, Liberty Life Assurance Company of Boston cambió su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto plazo recibirá un Endoso que debe adjuntarse a su póliza una vez recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

Lincoln/Bunch 0407



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

February 4, 2020

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

Lincoln Life Assurance Company of Boston is responsible for managing claims for Long Term
Disability (LTD) benefits under Charter Communications, Inc.'s Group Disability Policy.  We are
writing in reference to Mark Bunch's claim for LTD benefits under the Policy.

We are currently reviewing Mr. Bunch's eligibility for continued disability benefits, and are in need
of additional information.

To be eligible to receive benefits, the Policy requires that Mr. Bunch provide proof of disability in
order to receive benefits. However, there are currently no medical providers on file, so we are
unable to request his medical records which are needed to evaluate his claim eligibility.

To assist us with our investigation, please complete the enclosed Claimant Information Form and
provide us the full names, addresses, and telephone numbers of all medical providers, you are
currently treating with for this condition.

Additionally, please contact each of his medical providers and request that they provide our office
with the following information:

   •   A copy of all office treatment notes, test results, therapy records, hospital admission records,
       operative reports, prescription history and treatment plans from November 1, 2019 through
       present.

Charter Communications, Inc.'s LTD Policy requires that Mr. Bunch provide proof of disability in
order to receive benefits. This proof must be provided by April 18, 2020. Without the information
specified above, we will be unable to evaluate his claim eligibility and your disability benefits may
be closed.

Lincoln/Bunch 0408

Charter Communications, Inc.'s LTD Policy requires that, in order to receive ongoing benefits, Mr. Bunch provide proof of disability within a required timeframe.  His cooperation in providing the requested information is essential to our claim investigation.

If we do not receive all of the requested information by March 19, 2020, 45 days from the date of this request, Mr. Bunch's benefits will be suspended. If we do not receive all of this requested information by April 18, 2020, 30 days from the date of suspension, his claim will be closed.

We ask that Mr. Bunch provide us with this information no later than April 18, 2020 as required under the terms of the Policy.

If Mr. Bunch has any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
Ltd Specialist I
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

Attachments:   Claimant Information Form

**Lincoln/Bunch 0409**



# CLAIMANT INFORMATION FORM

Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

**Return To:** Danielle Davis

EMPLOYEE/CLAIMANT NAME: Mark Bunch

CLAIM NO: 8220685

EMPLOYER/SPONSOR: Charter Communications, Inc.      DATE OF BIRTH:

## TO BE COMPLETED BY EMPLOYEE:

Please provide us with the names of all medical providers, hospitals, medical insurance carriers, and pharmacies used during the time period from 11/01/2019 to present.   *If additional space is needed, please use a separate sheet of paper.*

## MEDICAL PROVIDERS/THERAPISTS/CLINICS/HOSPITALS:

Name: _____     Name: _____
Specialty: _____     Specialty: _____
Address: _____     Address: _____
_____     _____
Telephone No. :(___)_____ Fax No. :(___)_____     Telephone No. :(___)_____ Fax No. :(___)_____

Name: _____     Name: _____
Specialty: _____     Specialty: _____
Address: _____     Address: _____
_____     _____
Telephone No. :(___)_____ Fax No. :(___)_____     Telephone No. :(___)_____ Fax No. :(___)_____

## MEDICAL INSURANCE CARRIER(S):

Name: _____     Name: _____
Specialty: _____     Specialty: _____
Address: _____     Address: _____
_____     _____
Telephone No. :(___)_____ Fax No. :(___)_____     Telephone No. :(___)_____ Fax No. :(___)_____

## PHARMACY(S):

Name: _____     Name: _____
Specialty: _____     Specialty: _____
Address: _____     Address: _____
_____     _____
Telephone No. :(___)_____ Fax No. :(___)_____     Telephone No. :(___)_____ Fax No. :(___)_____

I hereby attest the above statement is true. I understand that any person who knowingly and with intent to injure, defraud, or deceive the insurance company files a statement or claim containing any false or misleading information may be guilty of a criminal act punishable under law.

**Lincoln/Bunch 0410**

SIGNATURE: _____ DATE: _____

**Lincoln/Bunch 0411**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date:  February 4, 2020 | |
| To:    SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax:    (719) 635-0966 | |
| From:  Danielle Davis<br>Ltd Specialist I<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 | |
| Total Pages<br>(Including Cover):    5 | |
| RE:<br><br>Claim #:    8220685<br>Claimant:  Mark Bunch<br><br>Charter Communications, Inc. | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1.º de septiembre de 2019, Liberty Life Assurance Company of Boston cambió su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto plazo recibirá un Endoso que debe adjuntarse a su póliza una vez recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0412**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

February 4, 2020

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

Lincoln Life Assurance Company of Boston is responsible for managing claims for Long Term Disability (LTD) benefits under Charter Communications, Inc.'s Group Disability Policy.  We are writing in reference to Mark Bunch's claim for LTD benefits under the Policy.

We are currently reviewing Mr. Bunch's eligibility for continued disability benefits, and are in need of additional information.

To be eligible to receive benefits, the Policy requires that Mr. Bunch provide proof of disability in order to receive benefits. However, there are currently no medical providers on file, so we are unable to request his medical records which are needed to evaluate his claim eligibility.

To assist us with our investigation, please complete the enclosed Claimant Information Form and provide us the full names, addresses, and telephone numbers of all medical providers, you are currently treating with for this condition.

Additionally, please contact each of his medical providers and request that they provide our office with the following information:

- A copy of all office treatment notes, test results, therapy records, hospital admission records, operative reports, prescription history and treatment plans from November 1, 2019 through present.

Charter Communications, Inc.'s LTD Policy requires that Mr. Bunch provide proof of disability in order to receive benefits. This proof must be provided by April 18, 2020. Without the information specified above, we will be unable to evaluate his claim eligibility and your disability benefits may be closed.

Lincoln/Bunch 0413

Charter Communications, Inc.'s LTD Policy requires that, in order to receive ongoing benefits, Mr. Bunch provide proof of disability within a required timeframe.  His cooperation in providing the requested information is essential to our claim investigation.

If we do not receive all of the requested information by March 19, 2020, 45 days from the date of this request, Mr. Bunch's benefits will be suspended. If we do not receive all of this requested information by April 18, 2020, 30 days from the date of suspension, his claim will be closed.

We ask that Mr. Bunch provide us with this information no later than April 18, 2020 as required under the terms of the Policy.

If Mr. Bunch has any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
Ltd Specialist I
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

Attachments:   Claimant Information Form

2  of 2

**Lincoln/Bunch 0414**



# CLAIMANT INFORMATION FORM

Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

**Return To:** Danielle Davis

EMPLOYEE/CLAIMANT NAME: Mark Bunch

CLAIM NO: 8220685

EMPLOYER/SPONSOR: Charter Communications, Inc.          DATE OF BIRTH:

**TO BE COMPLETED BY EMPLOYEE:**

Please provide us with the names of all medical providers, hospitals, medical insurance carriers, and pharmacies used during the time period from 11/01/2019 to present.  *If additional space is needed, please use a separate sheet of paper.*

## MEDICAL PROVIDERS/THERAPISTS/CLINICS/HOSPITALS:

Name: _____          Name: _____
Specialty: _____          Specialty: _____
Address: _____          Address: _____
_____          _____
Telephone No. :(___)_____ Fax No. :(___)_____          Telephone No. :(___)_____ Fax No. :(___)_____

Name: _____          Name: _____
Specialty: _____          Specialty: _____
Address: _____          Address: _____
_____          _____
Telephone No. :(___)_____ Fax No. :(___)_____          Telephone No. :(___)_____ Fax No. :(___)_____

## MEDICAL INSURANCE CARRIER(S):

Name: _____          Name: _____
Specialty: _____          Specialty: _____
Address: _____          Address: _____
_____          _____
Telephone No. :(___)_____ Fax No. :(___)_____          Telephone No. :(___)_____ Fax No. :(___)_____

## PHARMACY(S):

Name: _____          Name: _____
Specialty: _____          Specialty: _____
Address: _____          Address: _____
_____          _____
Telephone No. :(___)_____ Fax No. :(___)_____          Telephone No. :(___)_____ Fax No. :(___)_____

I hereby attest the above statement is true. I understand that any person who knowingly and with intent to injure, defraud, or deceive the insurance company files a statement or claim containing any false or misleading information may be guilty of a criminal act punishable under law.

**Lincoln/Bunch 0415**

**SIGNATURE:** _____ **DATE:** _____

**Lincoln/Bunch 0416**

# Billing Statement:

**ReleasePoint**

**Invoice Date: 01/02/2020**        **Invoice #: 710977-407**
**Liberty Mutual**

**Invoice for Requests for Medical Information completed between Dec 1 2019 and Dec 31 2019**

**LIBMT3**                                              **Bill Code: LIBSFU**

| RP # Cust ID | Patient Name Provider Name | Status | Date Req By | RP Fee | Med Fee | Rush | QC Amt Pages | Total |
|---|---|---|---|---|---|---|---|---|
| 5654345 8220685 | BUNCH, MARK OCCUPATIONAL & ENVIRONMENTAL ... | Complete | 09/07/19 D Davis | 8.00 | 0.00 | 0.00 | 0.00 11 | **8.00** |
| 5654344 8220685 | BUNCH, MARK PENROSE MAIN ST. FRANCIS HOSPI... | Canceled | 12/18/19 D Davis | 4.00 | 18.53 | 0.00 | 0.00 0 | **22.53** |

**ReleasePoint**

                                                        **Total Amount Due:**        30.53

**405 W. Foothill Blvd.**
**Suite 204**
**Claremont, CA 91711**                            **Tax ID: 95-2843455**

**Lincoln/Bunch 0417**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date:  January 9, 2020 | |
| To:  SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax:  (719) 635-0966 | |
| From:  Danielle Davis<br>Ltd Specialist I<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 | |
| Total Pages<br>(Including Cover):    2 | |
| RE:<br><br>Claim #:    8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1.  de septiembre de 2019, Liberty Life Assurance Company of Boston cambi   su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto pla  o recibir   un Endoso que debe adjuntarse a su p  li  a una ve recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0418**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

January 9, 2020

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE 202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
Charter Communications, Inc.
Claim #: 8220685
Claimant: Mark Bunch

To Whom It May Concern:

We are writing with regard to Mark Bunch's claim for Long Term Disability (LTD) benefits under Charter Communications, Inc. s Group Disability Income Policy.

We are currently reviewing Mr. Bunch's eligibility for continued disability benefits, and are in need of additional information.

Mr. Bunch is currently receiving benefits based on his inability to perform the material and substantial duties of his own occupation.

To remain eligible for benefits beyond the August 14, 2020 month, Mr. Bunch must be disabled from any occupation.  As his benefits began on August 15, 2018, the change in definition will occur on August 15, 2020.  We are currently gathering information to assess his continued eligibility for benefits beyond this date.

If Mr. Bunch has any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
Ltd Specialist I
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

1  of  1

**Lincoln/Bunch 0419**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date: | January 9, 2020 |
| To: | SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE 202<br>COLORADO SPRINGS CO 80920 |
| Attn: | |
| Fax: | (719) 635-0966 |
| From: | Danielle Davis<br>Ltd Specialist I<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 |
| Total Pages<br>(Including Cover): | 2 |
| RE:<br><br>Claim #:   8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1. de septiembre de 2019, Liberty Life Assurance Company of Boston cambi  su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto pla o recibir  un Endoso que debe adjuntarse a su p li a una ve recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0420**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

January 9, 2020

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

I m managing the LTD claim for Mark Bunch and wanted to follow-up on his status.  Please provide an update on the claimant s current status and if he has treated with any providers or has any upcoming appointments.

If you have any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
Ltd Specialist I
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

1  of  1

**Lincoln/Bunch 0421**



Date:      November 13, 2019

Subject:   **Nursing Memorandum**

---

*Claim#: 8220685*

*Claimant:*   Bunch, Mark

*Clinical Assessment:*  NDC reviewed claim including multiple previous other peer reviews with the most recent  ophthalmology peer review on 6/24/19. Clmt separated from full time hours on 2/14/18 due to injuries from a car accident. Clmt has been under the care of Dr Higginbotham (PCP) OV on 5/7/19 notes clmt returns for follow up after last being seen 11/20/18. AP notes clmt has no current medical insurance. Ap notes clmt has traumatic brain injury with post-concussion, visual difficulties with spatial disorientation, neurocognitive disorder, adjustment disorder and persistent cervical strain. Upon exam AP notes clmt's head is significantly forward flexes and held. AP notes when coaxed to stand erect clmt has truncal imbalance and progressive dizziness. AP notes clmt has word finding difficulty with notes clmt does not make eye contact. AP notes clmt is unsure of world events, cannot repeat 3 words consecutively, and continues to be soft spoken with a stutter. AP notes clmt is unable to do finger to nose testing on the left  and has positive signs of dizziness often rocking back and forth and using wall for support. AP notes clmt cannot watch television due to double and blurred vision with light sensitivity. AP notes clmt requires assistance with driving ( clmt is not driving), simple task such as grocery shopping. AP notes clmt cannot stand longer than 5 min without becoming significantly dizzy. AP notes clmt is severely limited because of is visual – spatial disorientation, imbalance and prosody of speech. AP nots limited concentration, focus and pacing of any tasks and in incapable of substantial gainful employment at any level. Clmt is seen in follow up on 9/17/19. AP again notes clmt is paying for all care out of pocket due to lack of medical insurance. AP notes no significant changes in clmt's presentation, AP notes clmt is wearing corrective lenses, however notes they are an old prescription as clmt cannot afford follow up at this time. AP notes clmt remains unsteady on his feet with noted elevated blood pressure of 148/88 (normal 120/80) and no change to his speech or overall presentation.

Based on the additional medical on file, the clmt continues to present with dizziness, imbalance, reported blurred and double vision, inability to repeat words, abnormal gait, stance and speech. It is noted the clmt is not following up with providers due to loss of medical insurance. It is therefore reasonable given the AP reports that the clmt would have r/ls of less than occasional stand and walk, no task requiring concentration or repetitive steps, no working from heights driving for commercial or company purposes for at least 8-12 months from the date of this review to allow for continued reduction of symptoms and return to full function. IF the clmt has

FOR INTERNAL DISTRIBUTION ONLY

**Lincoln/Bunch 0422**

no improvement noted at that time, R/Ls should then be considered permanent. Suggest CCM obtain all updated ov notes from all treating providers at that time. CCM updated. Assignment complete


Jacqueline V. , RN

Nurse Disability Consultant, Lincoln Financial Group

**Lincoln/Bunch 0423**

**From:**Davis, Danielle
**Sent:**Mon, 28 Oct 2019 19:21:30 +0000
**To:**'status@releasepoint.com'
**Subject:**FW: CLAIM 8220685
**Attachments:**0000BF91.PDF

Good day,

Has an action been taken since receiving the updated form.

Thanks

---

**From:** Davis, Danielle
**Sent:** Tuesday, October 1, 2019 10:23 AM
**To:** status@releasepoint.com
**Subject:** CLAIM 8220685

Please add the authorization form to the medical request.

Thanks

**Lincoln/Bunch 0424**

10/07/2019  11:20    7196350966                                          PAGE 01/09

# SHAKESHAFT & GORMAN LAW FIRM, LLP

1935 Jamboree Dr. | Suite 202 | Colorado Springs, CO 80920
Tel 719.635.5886 | Fax 719.635.0966 | www.shakeshaftlawfirm.com

## FACSIMILE TRANSMISSION

**DATE:**            October 7, 2019

**TO:**              **Lincoln Financial Group – Danielle Davis**

**FROM:**            Brandy Newton| Paralegal

**PAGES INCLUDING COVER SHEET:**    9

**FAX NUMBER:**      603-559-0490

**REGARDING:**       Mark Bunch

**Comments:**        Claim Number: 8220685

                     Please see the following correspondence of today's date.

IF YOU DO NOT RECEIVE ALL THE PAGES OR IF ANY PART IS ILLEGIBLE, PLEASE CALL (719) 635-5886.

### NOTICE

THIS MESSAGE IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN PRIVILEGED OR CONFIDENTIAL INFORMATION WHICH IS EXEMPT FROM DISCLOSURE PURSUANT TO APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR IS NOT AN EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY OF THIS MESSAGE TO THE INTENDED RECIPIENT, DISTRIBUTION, COPYING OR OTHER DISSEMINATION OF THE INFORMATION CONTAINED IN THIS COMMUNICATION IS PROHIBITED. PLEASE CONTACT (719) 635-5886 AND RETURN THE ORIGINAL MESSAGE TO SHAKESHAFT LAW FIRM, 1935 JAMBOREE DRIVE, STE. 202, COLORADO SPRINGS, CO 80920.

PAGE 1/9 * RCVD AT 10/7/2019 12:20:46 PM [Eastern Daylight Time] * SVR:VA1PWFAX401/4 * DNIS:6035590490 * CSID:7196350966 * ANI:17196350966 * DURATION (mm-ss):02-10----

**Lincoln/Bunch 0425**



## SHAKESHAFT-GORMAN
### — LAW FIRM, LLP —

| | | |
|---|---|---|
| Kenneth J. Shakeshaft | • Attorney at Law | **Main Office** |
| Joseph M. Gorman | • Attorney at Law | Shakeshaft - Gorman Law Firm |
| Cindy Maddox | • Paralegal | 1935 Jamboree Drive, Suite 202 |
| Brandy Newton | • Paralegal | Colorado Springs, CO 80920 |

October 7, 2019

Via facsimile: 603-559-0490

Lincoln Financial Group
Attn: Danielle Davis
Charlotte, NC

      RE:    Our client:   Mark Bunch
               Claim No.:   8220685
               Charter Communications, Inc.

Dear Ms. Davis,

I wanted to make sure we are all on the same page regarding Mr. Bunch's claim.

First, in regard to Social Security, we advised Lincoln Financial in my correspondence of June 19, 2019, Mr. Bunch had filed for Social Security Disability and I provided Lincoln Financial a copy of his application.

Mr. Bunch has not yet received a decision on his application for Social Security.

Regarding records from Centura Health/Penrose Outpatient Rehabilitation my office has provided Lincoln Financial with a signed Release from Mr. Bunch so Lincoln Financial can obtain those records.

Regarding Dr. Higginbotham, I am enclosing records from Dr. Higginbotham's office from April 23, 2019 through August 6, 2019.

At this time, Mr. Bunch is still undergoing he is being treated by Dr. Higginbotham for his injuries. If you feel there is additional information which needs to be provided, please let us know.

**Lincoln/Bunch 0426**

At this point and time I believe all the information requested by Lincoln Financial has been
provided.

Sincerely,

Kenneth J. Shakeshaft

PAGE 3/9 * RCVD AT 10/7/2019 12:20:46 PM [Eastern Daylight Time] * SVR:VA1PWFAX401/4 * DNIS:6035590490 * CSID:7196350966 * ANI:17196350966 * DURATION (mm-ss):02-10—

**Lincoln/Bunch 0427**

Bunch, Mark                                                  **Phone Conference**
04/23/19
DOB:

A twenty-minute unscheduled phone conference was attended with Dr. Swotinsky of Lincoln Financial Group regarding Mr. Bunch's application for disability. A transcript of the conference call was reviewed with changes added and signed and faxed on 04/24/2019.

Thomas Higginbotham D.O.

cc:    Attorney Shakeshaft

**Lincoln/Bunch 0428**

BUNCH, Mark
05/07/19
DOB:

S:  Mr. Bunch returns for follow-up after last seeing him in 11/20/2018.
I forwarded a summary letter to his WC attorney on 02/19/2019.  I had
an insurance peer-peer phone conference on 04/23/2019.  Since then, I
have received multiple records, primarily those from the speech
therapist.

Mr. Bunch has been receiving regular care with the speech therapist.
He relates that he has been taking the blood pressure medicine
regularly.  He has not yet set up a treating relationship with a
primary care provider where he lives. He is requesting blood pressure
medication refills.

I received a request from Social Security for medical records.

He continues to wear corrective lenses from the neuro-optometrist,
but this correction is an older prescription. He has been wearing
them about 2 hours on and 1 hour off.  He has no scheduled
appointment with the neuro-optometrist.

When asked if he has had any visits to the emergency department since
I saw him last, he stated "I don't think so". He doesn't think that
he has seen the neurologist recently and is not sure when he saw the
neurologist last but thinks it was in November. He is not sure when
he has seen a psychologist last.

He continues to not drive and was driven here by a friend. I've asked
if he has had any falls recently and he stated, "I don't think so".

Albeit slowly, he relates that he could dress, eat, bathe, and attend
to hair care independently. He does no vacuuming or sweeping or
household chores.  Someone else does the cooking.  He does no outside
maintenance.  He will go grocery shopping but only with assistance.
He does grocery shopping very early or very late because crowds and
visual and auditory stimuli are too overwhelming for him. He has
difficulty reading.  He has difficulty watching TV because of blurred
vision and double vision.  He typically listens to TV.  He struggles
with stair climbing because of imbalance.  He has constant tinnitus
that affects his concentration.  He does very little socialization.
He does not listen much to the radio or music.

O:  He is unaccompanied. His presentation is concerning.  His gait and
stance are abnormal.  He grabs for the wall when walking because of
complaints of imbalance and visual spatial distortion.

Lincoln/Bunch 0429

10/07/2019  11:20    7196350966                                PAGE 06/09

Page 2
BUNCH, Mark
05/07/19

His head is significantly forward-flexed and held.  When coaxed to stand erect, he has truncal imbalance and progressive dizziness. He continues to have difficulty speaking and has difficulty with word finding.  He speaks very softly and "under his breath".  He does not make eye-to-eye contact.  He is unsure about current world events but does recognize that Mr. Trump is the president. He cannot recall 3 words after just repeating them, let alone 5 minutes later.  He continues to stutter. His finger to my finger testing is near normal for the right side, but he is unable to do so on the left side.  He misjudges reaching for items that I handed to him.  He has a positive Romberg's maneuver and rocks forward to backwards and falls backwards up against the wall repeatedly. Blood pressure is 132/82.  Heart rate is 100.  Pulse oximetry is 93% O2 on room air; he took his blood pressure medicine earlier today.  He has no pedal edema.  Heart is of regular rate and rhythm without murmur.  Lungs are clear to auscultation.  Thoracic expansion is fair.  He has no abdominal tenderness.  He is photosensitive.  He is wearing his corrective goggles.  Midline vision testing is abnormal.  Strength and sensation are normal for the upper and lower extremities.  On palpation he is tender about the left suprascapular musculature as well as along the left cervicoparaspinal muscles.  He has a mild degree of tension with mild limitations with side bending and rotation to the right and backward extension.  Backward extension of the neck causes him dizziness and a fall.

A:    Traumatic brain injury with post-concussion sequela of:
           Visual difficulties with spatial disorientation H53.30
           Neurocognitive disorder G31.84
           Adjustment disorder with depressed mood F06.30
      Persistent cervical strain S16.1XXD

P:    He is self-paying for his therapies as he has no health insurance. He is attending only speech therapy and no physical therapy.

      I refilled the Micardis 20 mg, #90.  I will hold off on the clonidine prescription at this point.  I've asked that he return in a month for me to monitor his blood pressure.

      He primarily vegetates.  He is severely limited because of his visual-spatial disorientation and imbalance and prosody of speech. He cannot drive.  He cannot walk and stand for even up to 5 minutes without moderate issues with imbalance and bumping into items and falling.

PAGE 6/9 * RCVD AT 10/7/2019 12:20:46 PM [Eastern Daylight Time] * SVR:VA1PWFAX401/4 * DNIS:6035590490 * CSID:7196350966 * ANI:17196350966 * DURATION (mm-ss):02-10----

**Lincoln/Bunch 0430**

Page 3
BUNCH, Mark
05/07/19

He has very limited concentration, focus, and pacing of any tasks,
even those of activities of daily living.    He is incapable of
substantial gainful employment even on a part-time basis.

Thomas Higginbotham D.O.

cc:    Kenneth Shakeshaft, Esq.

*Mark Bunch*

*6/4/19*  *BM*

PAGE 7/9 * RCVD AT 10/7/2019 12:20:46 PM [Eastern Daylight Time] * SVR:VA1PWFAX401/4 * DNIS:6035590490 * CSID:7196350966 * ANI:17196350966 * DURATION (mm-ss):02-10-·····

**Lincoln/Bunch 0431**

BUNCH, Mark
06/04/19
DOB:

S:    Mr. Bunch returns to monitor his blood pressure.  He is requesting a
      refill prescription for his muscle relaxants.  He is accompanied by
      his significant other.  She drove him here. There are no significant
      changes in his symptom complaints.

O:    Body habitus remains the same.  He is wearing corrective lenses.  He
      is not using assistive devices; however, he is not steady on his
      feet. Blood pressure is 148/88.  Heart rate is 84.  Pulse oximetry is
      95% O2 on room air; there is mild pedal edema.  Speech prosody is
      unchanged.  He significantly forward flexes his neck in resting
      posture. Romberg is positive with reeling backwards.

A:    Hypertension I10
      History of traumatic brain injury Z87.828, with
            Adjustment disorder with depressed mood F06.30
            Neurocognitive disorder G31.84
            Visual difficulties with spatial disorientation H53.30
      Persistent cervical strain S16.1XXD

P:    I refilled the cyclobenzaprine 10 mg, #90.  He will continue with the
      Micardis 40 mg daily for hypertension. His pursuit of disability
      through Social Security is pending. I will see him again in one
      month.

Thomas Higginbotham D.O.

*cc  with slukshift — 7/11/19 GH*

**Lincoln/Bunch 0432**

10/07/2019  11:20    7196350966                                    PAGE 09/09

BUNCH, Mark
08/06/19
DOB:

S:    Mr. Bunch is here primarily for refill prescription for his blood
      pressure medications.  He hasn't heard yet from the ALJ regarding his
      Social Security Disability claim.  He has no health insurance
      otherwise.  He has not received any monies from his long-term
      disability carrier, Liberty Mutual.  He does have an attorney
      assisting him with these.

      He relates that his neuro-optometrist had never gotten paid for the
      work he had done under his worker's compensation claim.

      He relates of no significant change in his condition since his work-
      related motor vehicle collision. He is still in need of care but is
      without insurance.

O:    Blood pressure is 160/94.  Heart rate is 80.  Pulse oximetry is 94%
      O2 on room air; there is mild pedal edema.  Heart is of regular rate
      and rhythm without murmur.  Lungs are clear to auscultation.
      Thoracic expansion is fair.

A:    Hypertension I10

P:    Micardis 40 will now be combined with hydrochlorothiazide 12.5 mg;
      #90 with one refill was prescribed to take one a day. Hopefully he
      will hear from Social security imminently, so he can begin
      appropriate medical care.

Thomas Higginbotham D.O.

**Lincoln/Bunch 0433**

09/30/2019  18:32   7196350966                                          PAGE 01/03

# SHAKESHAFT & GORMAN LAW FIRM, LLP
1935 Jamboree Dr. | Suite 202 | Colorado Springs, CO 80920
Tel 719.635.5886 | Fax 719.635.0966 | www.shakeshaftlawfirm.com

### FACSIMILE TRANSMISSION

**DATE:**           September 30, 2019

**TO:**             **Lincoln Financial Group**

**FROM:**           Brandy Newton| Paralegal

**PAGES INCLUDING COVER SHEET:** 3

**FAX NUMBER:**     603-559-0490

**REGARDING:**      Mark Bunch

**Comments:**       Claim Number: 8220685

Please see the following correspondence of today's date.

IF YOU DO NOT RECEIVE ALL THE PAGES OR IF ANY PART IS ILLEGIBLE, PLEASE CALL (719) 635-5886.

### NOTICE
THIS MESSAGE IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN PRIVILEGED OR CONFIDENTIAL INFORMATION WHICH IS EXEMPT FROM DISCLOSURE PURSUANT TO APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR IS NOT AN EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY OF THIS MESSAGE TO THE INTENDED RECIPIENT, DISTRIBUTION, COPYING OR OTHER DISSEMINATION OF THE INFORMATION CONTAINED IN THIS COMMUNICATION IS PROHIBITED. PLEASE CONTACT (719) 635-5886 AND RETURN THE ORIGINAL MESSAGE TO SHAKESHAFT LAW FIRM, 1935 JAMBOREE DRIVE, STE. 202, COLORADO SPRINGS, CO 80920.

PAGE 1/3 * RCVD AT 9/30/2019 7:32:38 PM [Eastern Daylight Time] * SVR:VA1PWFAX301/3 * DNIS:6035590490 * CSID:7196350966 * ANI:17196350966 * DURATION (mm-ss):01-31____

**Lincoln/Bunch 0434**



**SHAKESHAFT-GORMAN**
**— LAW FIRM, LLP —**

| | | |
|---|---|---|
| **Kenneth J. Shakeshaft** | • Attorney at Law | **Main Office** |
| **Joseph M. Gorman** | • Attorney at Law | Shakeshaft - Gorman Law Firm |
| Cindy Maddox | • Paralegal | 1935 Jamboree Drive, Suite 202 |
| Brandy Newton | • Paralegal | Colorado Springs, CO 80920 |

September 30, 2019

Via facsimile: 603-559-0490

Lincoln Financial Group
Attn: Danielle Davis
Charlotte, NC

RE:    Our client:    Mark Bunch
       Claim No.:     8220685
       Charter Communications, Inc.

Dear Ms. Davis,

Attached please find the executed Release for Centura Health.

Please contact our office with any questions.

Sincerely,

Brandy Newton / Paralegal
Attachments

PHONE 719.635.5886 - FAX 719.635.0966 - TOLL FREE 1.800.383.5886
WWW.SHAKESHAFTANDGORMANLAW.COM - OFFICE@SHAKESHAFTANDGORMANLAW.COM

**Lincoln/Bunch 0435**

09/30/2019   18:32   7196350966                                                    PAGE 03/03

Sep 09 2019 14:08:38 EDT Liberty Mutual Insur        MSG# 1661062260-006-1    Page 003 Of 003
                        5654344

## Centura Health. Page 1 of 1                          [ Patient Label ]

**Patient Authorization to Disclose Protected Health Information**
#CHCR-004 rev. 12/12

AUTNPH

## Patient Authorization to Disclose Protected Health Information

| Patient Name | Date of Birth | Last 4 of Social Security Number |
|---|---|---|
| BUNCH, MARK | | |
| Address | City, State, Zip Code | Telephone Number |

I hereby authorize the facility listed below to disclose/release the Protected Health Information specified in this request to the organization, agency or patient named.

| Release by: PENROSE MAIN ST. FRANCIS HOSPITAL | Release to: Lincoln Financial Group (c/o ReleasePoint) |
|---|---|
| Facility 2222 N NEVADA AVE | Organization, agency, individual |
| Address COLORADO SPRINGS CO 80907 | Attn: PO Box 1390 |
| City, State, Zip Code | Address: St. Peters MO 63376 |
| HIM Phone/Fax Numbers | City, State, Zip Code |

**Treatment Date(s):** FROM: Multiple TO: Present
**Purpose:** ☐ Further Medical Care ☐ Workers' Comp
☐ Personal Use ☐ Insurance ☐ Legal
☐ Marketing/Fundraising
☒ Other: Claims - Disability Insurance

**Type of Disclosure Authorized & Delivery Instructions:**
☒ Provide copies of records to organization/agency/individual
☒ Mail records directly to address above
☐ Call to pick-up records:
☐ Fax records to:

**Pertinent Protected Health Information Allowed to be Included:**

| ☐ Discharge Summary | ☐ Radiology | ☐ Special Studies | ☐ Entire Medical Record |
|---|---|---|---|
| ☐ History & Physical/Consult | ☐ Outpt Record | ☐ Medication Records | |
| ☐ Operative Report | ☐ Progress Notes | ☐ Psych Health Records | |
| ☐ Labs | ☐ Physician Orders | ☒ Other specify: all PHI excluding x-ray films | |

*Psychotherapy Notes are distinct and may not be included with the disclosure of any other protected health information. A Patient Authorization to Disclose Psychotherapy Notes must be completed.

**Authorization:** I certify that this request is made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time in writing by submitting my request in writing to the designated Health Information Management / Medical Records department. If I have authorized the disclosure of my health information to someone who is not legally required to keep it private, it may be re-disclosed and may no longer be protected. A copy or fax of this authorization will be as valid as the original.

I understand that authorizing disclosure of health information is voluntary. I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment, payment, or my eligibility to obtain benefits. I understand that I may inspect or obtain a copy of the information to be disclosed. I understand a fee may be charged for copies of my medical record. I understand the facility will provide me a copy of the signed authorization form. If I have questions about disclosure of my health information, I can contact the designated Corporate Responsibility and Privacy Officer.

**Expiration:** Without my express revocation, this authorization will automatically expire upon satisfaction of the need for disclosure, but in any event will expire 90 days from the date hereof, unless a different date is specified here: 180 days after signature date.

**Acknowledgement:** I understand that the information to be disclosed may include any or all information involving communicable or venereal disease, psychological or psychiatric conditions, drug or alcohol abuse and/or alcoholism. It may also include, but is not limited to, diseases such as hepatitis, syphilis, gonorrhea and human immunodeficiency viruses (HIV), also known as acquired immune deficiency syndrome (AIDS).

**For Marketing/Fundraising Purposes Only,** if applicable: I understand that Centura Health ☐ will ☐ will not receive remuneration, either direct or indirect, as a result of the marketing that I hereby authorize.

SIGNATURE: _____ Patient (Parent or Legal Guardian) _____ DATE: 9/19/19

Minor's signature is required for release of any records for treatment which the minor may authorize under Colorado Law.
Relationship (if other than patient): _____ ☐ Power of Attorney ☐ Death Certificate
Name of individual signing on behalf of patient:
Verification: ☐ Drivers License # _____ ☐ Other Appropriate ID: _____

**OFFICE USE ONLY: Attach copies of required identification.**
Number of pages released: _____ Completion date: _____ Delivery method: _____
Name of individual who received request: _____ Date received: _____
Patient Medical Record Number / Account Number: _____

PAGE 3/3 * RCVD AT 9/30/2019 7:32:38 PM [Eastern Daylight Time] * SVR:VA1PWFAX301/3 * DNIS:5035590490 * CSID:7196350966 * ANI:17196350966 * DURATION (mm-ss):01-31

**Lincoln/Bunch 0436**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date:  September 26, 2019 | |
| To:    SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax:    (719) 635-0966 | |
| From:  Danielle Davis<br>LTD Specialist 1<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 | |
| Total Pages<br>(Including Cover):    13 | |
| RE:<br><br>Claim #:    8220685<br>Claimant:  Mark Bunch<br><br>Charter Communications, Inc. | |

Important
Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston. Please be aware that in the near future you will receive an Endorsement that must be attached to your policy upon receipt.

Importante
Vigente a partir del 1.  de septiembre de 2019, Liberty Life Assurance Company of Boston cambi  su nombre a Lincoln Life Assurance Company of Boston. Tenga en cuenta que en el corto pla o recibir  un Endoso que debe adjuntarse a su p  li  a una ve  recibido.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0437**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

September 26, 2019

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

Lincoln Life Assurance Company of Boston is responsible for managing claims for Long Term
Disability (LTD) benefits under Charter Communications, Inc.'s Group Disability Policy.  We are
writing in reference to Mark Bunch's claim for LTD benefits under the Policy.

Please find the enclosed request(s) for information previously sent to Shakeshaft-Gorman Law Firm.
This is the second request for this information.  Further delay may result in an adverse claim
determination.  Please submit the requested information by November 10, 2019.

If you have any questions regarding this correspondence, please contact me.

Sincerely,

Danielle Davis
LTD Specialist 1
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

Attachments:   8220685-NOTIFY-CLAIMANT SOCIAL SECURITY-08.28.2019
               8220685-REQUEST-CLAIMANT PROOF OF DISABILITY/FORMS-08.28.2019
               8220685-REQUEST-CLAIMANT OTHER-09.09.2019

1  of 1

**Lincoln/Bunch 0438**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date: | August 28, 2019 |
| To: | SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 |
| Attn: | |
| Fax: | (719) 635-0966 |
| From: | Danielle Davis<br>LTD Specialist 1<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 |
| Total Pages<br>(Including Cover):    5 | |
| RE:<br><br>Claim #:    8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

**Welcome to Lincoln Financial Group.**
Effective May 1, 2018, Liberty Life Assurance Company of Boston was acquired by The Lincoln National Life Insurance Company, a Lincoln Financial Group company. During the transition, you may receive communications from both companies. Please open and read all correspondence you receive about your benefits.
Thank you.

**Bienvenido a Lincoln Financial Group.**
A partir del 1 de mayo de 2018, Liberty Life Assurance Company of Boston pasó a pertenecer a The Lincoln National Life Insurance Company, una compañía de Lincoln Financial Group. Durante la transición, es posible que reciba comunicados de ambas compañías. Abra y lea toda la correspondencia que reciba sobre sus beneficios.
Muchas gracias.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0439**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

August 28, 2019

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

Liberty Life Assurance Company of Boston, now a Lincoln Financial Group company is responsible for managing claims for Long Term Disability (LTD) benefits under Charter Communications, Inc.'s Group Disability Policy.  We are writing in reference to Mark Bunch's claim for LTD benefits under the Policy.

In addition to Mr. Bunch's Long Term Disability (LTD) benefit, he may qualify for additional benefits from the Social Security Administration.

There are a number of advantages for Mr. Bunch if Mr. Bunch is approved for Social Security Disability benefits.  These advantages are outlined in the attachment, and include:

- Increased Social Security Retirement benefits
- Cost of Living Adjustment (COLA) increases
- Expedited Medicare coverage
- Dependent and Spousal benefits
- Return to Work incentives

The purpose of this letter is to help Mr. Bunch apply for those benefits.

We realize that applying for Social Security Disability benefits can be intimidating. To help Mr. Bunch through the process, we are providing information on using the services of Doherty, Cella, Keane & Associates, a Social Security claimant representative.  Doherty, Cella, Keane & Associates specializes in preparing Social Security Disability claims and, when necessary, representing claimants.  They have a 90% success rate in obtaining awards.  Their professional and experienced staff will act on his behalf and will keep his contact with the Social Security Administration to a minimum.  If Mr. Bunch is using the services of this representative, their fee will be paid directly by

1  of 3

Lincoln/Bunch 0440

the Social Security Administration and the cost of this fee will be deducted from any disability overpayment created due to the receipt of retroactive Social Security Benefits. This will be explained to him in greater detail upon accepting representation by Doherty, Cella, Keane & Associates.

However, if Mr. Bunch is choosing to apply for Social Security benefits without utilizing our Social Security Claimant representative services, Mr. Bunch must initiate the process by either calling SSA toll free at 1-800-772-1213 (for TTY call 1-800-325-0778), applying directly online at www.socialsecurity.gov/disabilityssi/apply.html, or by visiting his local Social Security office.

If Mr. Bunch has any other family member (dependents) that may be eligible for benefits, please make sure Social Security is informed so application and payment for dependent benefits is not delayed.

Mr. Bunch is required to apply for Social Security benefits under the terms of Charter Communications, Inc.'s LTD Policy and it is important that Mr. Bunch begin this process immediately. Therefore, please initiate Mr. Bunch's application within 45 days from the date of this letter, October 11, 2019, and complete and return the enclosed forms. A return envelope has been provided for his convenience.

Per the terms of the disability Policy, failure to provide proof of filing within the stated timeframe will result in a reduction to his benefit from Liberty Life Assurance Company of Boston equal to an estimated amount of Social Security benefits. Therefore, if he does not file within the 45-day time frame, his benefit will be reduced by an estimated amount as deemed eligible by the Social Security Administration. If proof of filing is subsequently received, this reduction will be refunded to Mr. Bunch.

If Mr. Bunch is approved for Social Security Disability benefits, the disability benefits received by Mr. Bunch from Liberty Life Assurance Company of Boston will be reduced by the amount Mr. Bunch receive from Social Security. In other words, Mr. Bunch will continue to receive the same amount of monthly benefits, but the money will come from two sources. If Mr. Bunch is entitled to retroactive benefits, Mr. Bunch may receive a significant payment from Social Security. This money is essentially money that Liberty Life Assurance Company of Boston advanced to Mr. Bunch while Mr. Bunch was waiting for Social Security's decision, and he must repay it immediately upon our request.

If Mr. Bunch has any questions regarding this letter or the Social Security process, please contact us at the number below.

Sincerely,

Danielle Davis
LTD Specialist 1
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

2  of 3

**Lincoln/Bunch 0441**

Attachments:     Advantages of Social Security Disability Benefits Form

**Lincoln/Bunch 0442**

# Advantages of Social Security Disability Benefits

- **Increased Disability Benefits**
  - ° Though you and your dependents' initial Social Security benefit would be offset from your Long Term Disability payment, your future Social Security cost of living (COLA) increases would not.  Therefore you would maximize your combined benefits because they would increase each year.
- **Increased Retirement Benefits**
  - ° For any period within a year that you are not paying into Social Security (FICA) out of your earnings, zeros are being factored into your earnings record. If found eligible for SSDI for any period of time when there were zeros, they will be excluded from the calculation of future benefits.  As a result, the amount of your eventual Social Security Retirement Benefit could be _substantially higher_.
- **Cost of Living Adjustment (COLA) Raises**
  - ° SSA will provide you and any eligible dependents an increase annually.  These increases will not affect your Long Term Disability benefits.
- **Tax Free Income**
  - ° The majority of Social Security beneficiaries who receive Social Security Disability income are either entirely or partially tax free based on certain criteria set by SSA.
- **Medicare Coverage**
  - ° After you have received Social Security Disability benefits for 24 months, regardless of your age, you also become eligible for Medicare benefits.  This includes Part A Hospital benefits, and Part B Medical benefits, which added to any other health insurance coverage you might have, will increase your overall health insurance protection.
  - ° Once you establish Medicare Eligibility your premiums for any other health insurance you might have could decrease. With Medicare coverage available to help pay medical expenses, such premiums may be adjusted downwards.
  - ° Medicare Part A is at no cost while Medicare Part B has an associated premium. You can access http://www.socialsecurity.gov/medicare/ for more information and costs associated with the program.
- **COBRA Extension**
  - ° If you receive Social Security Disability benefits the length of your COBRA benefits may be extended an additional 11 months.
- **Return To Work Incentives**
  - ° Social Security will provide you opportunities to Return To Work while still paying you disability benefits.

**Lincoln/Bunch 0443**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date: August 28, 2019 | |
| To: SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE 202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax: (719) 635-0966 | |
| From: Danielle Davis<br>LTD Specialist 1<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 | |
| Total Pages<br>(Including Cover): 3 | |
| RE:<br><br>Claim #: 8220685<br>Claimant: Mark Bunch<br><br>Charter Communications, Inc. | |

**Welcome to Lincoln Financial Group.**
Effective May 1, 2018, Liberty Life Assurance Company of Boston was acquired by The Lincoln National Life Insurance Company, a Lincoln Financial Group company. During the transition, you may receive communications from both companies. Please open and read all correspondence you receive about your benefits.
Thank you.

**Bienvenido a Lincoln Financial Group.**
A partir del 1 de mayo de 2018, Liberty Life Assurance Company of Boston pasó a pertenecer a The Lincoln National Life Insurance Company, una compañía de Lincoln Financial Group. Durante la transición, es posible que reciba comunicados de ambas compañías. Abra y lea toda la correspondencia que reciba sobre sus beneficios.
Muchas gracias.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0444**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

August 28, 2019

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

Liberty Life Assurance Company of Boston, now a Lincoln Financial Group company is responsible for managing claims for Long Term Disability (LTD) benefits under Charter Communications, Inc.'s Group Disability Policy.  We are writing in reference to Mark Bunch's claim for LTD benefits under the Policy.

We are currently reviewing Mr. Bunch's eligibility for continued disability benefits, and are in need of additional information.

On August 28, 2019, we requested your medical records from Penrose Outpatient Rehabilitation and Dr. Higginbotham.    This information is necessary to complete our ongoing claims investigation. Please provide us with the following information to assist us with our review of Mr. Bunch's eligibility for benefits:

   •   Office treatment notes, test results, operative reports, prescription histories, and treatment
       plans from May 1, 2019 through present from Penrose Outpatient Rehabilitation and Dr.
       Higginbotham

If there are any other attending physicians or specialists, including physical therapy providers, that we are unaware of, please have them forward all medical records pertinent to Mr. Bunch's disability within the timeframe stated above.

Charter Communications, Inc.'s LTD Policy requires that, in order to receive ongoing benefits, Mr. Bunch provide proof of disability within a required timeframe.  His cooperation in providing the requested information is essential to our claim investigation.

If we do not receive all of the requested information by October 11, 2019, 45 days from the date of

Lincoln/Bunch 0445

this request, Mr. Bunch's benefits will be suspended. If we do not receive all of this requested information by November 10, 2019, 30 days from the date of suspension, his claim will be closed.

We ask that Mr. Bunch provide us with this information no later than November 10, 2019 as required under the terms of the Policy.

If Mr. Bunch has any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
LTD Specialist 1
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

**Lincoln/Bunch 0446**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date:   September 9, 2019 | |
| To:      SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax:     (719) 635-0966 | |
| From:  Danielle Davis<br>LTD Specialist 1<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 | |
| Total Pages<br>(Including Cover):      3 | |
| RE:<br><br>Claim #:      8220685<br>Claimant:    Mark Bunch<br><br>Charter Communications, Inc. | |

**Welcome to Lincoln Financial Group.**
Effective May 1, 2018, Liberty Life Assurance Company of Boston was acquired by The Lincoln National Life Insurance Company, a Lincoln Financial Group company. During the transition, you may receive communications from both companies. Please open and read all correspondence you receive about your benefits.
Thank you.

**Bienvenido a Lincoln Financial Group.**
A partir del 1 de mayo de 2018, Liberty Life Assurance Company of Boston pasó a pertenecer a The Lincoln National Life Insurance Company, una compañía de Lincoln Financial Group. Durante la transición, es posible que reciba comunicados de ambas compañías. Abra y lea toda la correspondencia que reciba sobre sus beneficios.
Muchas gracias.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0447**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

September 9, 2019

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE 202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

Please be advised that we have been informed that your medical provider is requesting a signed
HIPAA compliant authorization to be signed before records will be released. Please complete the
HIPAA compliant authorization and return it back to me.

If you have any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
LTD Specialist 1
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

Attachments:    8220685-MEDICAL-CORRESPONDENCE-09.09.2019

1  of  1

Lincoln/Bunch 0448

5654344

 **Centura Health**® **Page 1 of 1**

**Patient Authorization to Disclose Protected Health Information**
**#CHCR-004 rev. 12/12**

AUTHPHI

| Patient Label |
| --- |

# Patient Authorization to Disclose Protected Health Information

| Patient Name | Date of Birth | Last 4 of Social Security Number |
| --- | --- | --- |
| BUNCH, MARK | | |

| Address | City, State, Zip Code | Telephone Number |
| --- | --- | --- |
| | | |

**I hereby authorize the facility listed below to disclose/release the Protected Health Information specified in this request to the organization, agency or patient named.**

Release by: PENROSE MAIN ST. FRANCIS HOSPITAL
Facility
2222 N NEVADA AVE
Address
COLORADO SPRINGS CO 80907
City, State, Zip Code

HIM Phone/Fax Numbers

Release to: Lincoln Financial Group (c/o ReleasePoint)
Organization, Agency, Individual
Attn: PO Box 1390
Address St. Peters   MO   63376
City, State, Zip Code

**Treatment Date(s):** FROM: 05/01/2019    TO: Present
**Purpose:** ☐ Further Medical Care  ☐ Workers' Comp
☐ Personal Use  ☐ Insurance  ☐ Legal
☐ Marketing/Fundraising
☒ Other: Claims - Disability Insurance

**Type of Disclosure Authorized & Delivery Instructions:**
☒ Provide copies of records to organization/agency/individual
  ☒ Mail records directly to address above
  ☐ Call to pick-up records: _____
  ☐ Fax records to: _____

**Pertinent Protected Health Information Allowed to be Included:**

☐ Discharge Summary      ☐ Radiology          ☐ Special Studies       ☐ Entire Medical Record
☐ History & Physical/Consult ☐ Outpt Record      ☐ Medication Records
☐ Operative Report        ☐ Progress Notes      ☐ Psych Health Records
☐ Labs                    ☐ Physician Orders    ☒ Other (specify): all PHI, excluding x-ray films

*Psychotherapy Notes are distinct and may not be included with the disclosure of any other protected health information.*
*A Patient Authorization to Disclose Psychotherapy Notes must be completed.*

**Authorization:** I certify that this request is made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time in writing by submitting my request in writing to the designated Health Information Management / Medical Records department. If I have authorized the disclosure of my health information to someone who is not legally required to keep it private, it may be re-disclosed and may no longer be protected. A copy or fax of this authorization will be as valid as the original.
I understand that authorizing disclosure of health information is voluntary. I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment, payment, or my eligibility to obtain benefits. I understand that I may inspect or obtain a copy of the information to be disclosed. I understand a fee may be charged for copies of my medical record. I understand the facility will provide me a copy of the signed authorization form. If I have questions about disclosure of my health information, I can contact the designated Corporate Responsibility and Privacy Officer.
**Expiration:** Without my express revocation, this authorization will automatically expire upon satisfaction of the need for disclosure, but in any event will expire 90 days from the date hereof, unless a different date is specified here: 180 days after signature date
**Acknowledgement:** I understand that the information to be disclosed may include any or all information involving communicable or venereal disease, psychological or psychiatric conditions, drug or alcohol abuse and/or alcoholism. It may also include, but is not limited to, diseases such as hepatitis, syphilis, gonorrhea and human immunodeficiency viruses (HIV), also known as acquired immune deficiency syndrome (AIDS).
**For Marketing/Fundraising Purposes Only, if applicable:** I understand that Centura Health ☐ will  ☐ will not  receive remuneration, either direct or indirect, as a result of the marketing that I hereby authorize.

**SIGNATURE:** _____    **DATE:** _____
                Patient (Parent or Legal Guardian)

Minor's signature is required for release of any records for treatment which the minor may authorize under Colorado Law.

*Relationship (if other than patient):* _____   ☐ Power of Attorney    ☐ Death Certificate

*Name of individual signing on behalf of patient:* _____

**Verification:** ☐ Drivers License # _____   ☐ Other Appropriate ID: _____

**OFFICE USE ONLY: Attach copies of required identification.**

Number of pages released: _____ Completion date:        Delivery method: _____

Name of individual who received request: _____   Date received: _____

Patient Medical Record Number / Account Number: _____   /_____

**Lincoln/Bunch 0449**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date: September 9, 2019 | |
| To: SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE 202<br>COLORADO SPRINGS CO 80920 | |
| Attn: | |
| Fax: (719) 635-0966 | |
| From: Danielle Davis<br>LTD Specialist 1<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 | |
| Total Pages<br>(Including Cover):    3 | |
| RE:<br><br>Claim #:    8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

**Welcome to Lincoln Financial Group.**
Effective May 1, 2018, Liberty Life Assurance Company of Boston was acquired by The Lincoln National Life Insurance Company, a Lincoln Financial Group company. During the transition, you may receive communications from both companies. Please open and read all correspondence you receive about your benefits.
Thank you.

**Bienvenido a Lincoln Financial Group.**
A partir del 1 de mayo de 2018, Liberty Life Assurance Company of Boston pas   a pertenecer a The Lincoln National Life Insurance Company, una compa   a de Lincoln Financial Group. Durante la transici n, es posible que reciba comunicados de ambas compa   as. Abra y lea toda la correspondencia que reciba sobre sus beneficios.
Muchas gracias.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0450**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

September 9, 2019

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

Please be advised that we have been informed that your medical provider is requesting a signed HIPAA compliant authori ation to be signed before records will be released. Please complete the HIPAA compliant authori ation and return it back to me.

If you have any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
LTD Specialist 1
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

Attachments:   8220685-MEDICAL-CORRESPONDENCE-09.09.2019

**Lincoln/Bunch 0451**

5654344

 **Centura Health**® **Page 1 of 1**

**Patient Authorization to Disclose Protected Health Information**
**#CHCR-004 rev. 12/12**

AUTHPHI

| Patient Label |
|---|

## Patient Authorization to Disclose Protected Health Information

| Patient Name | Date of Birth | Last 4 of Social Security Number |
|---|---|---|
| BUNCH, MARK | | |

| Address | City, State, Zip Code | Telephone Number |
|---|---|---|
| | | |

**I hereby authorize the facility listed below to disclose/release the Protected Health Information specified in this request to the organization, agency or patient named.**

Release by: PENROSE MAIN ST. FRANCIS HOSPITAL
Facility
2222 N NEVADA AVE
Address
COLORADO SPRINGS CO 80907
City, State, Zip Code

HIM Phone/Fax Numbers

Release to: Lincoln Financial Group (c/o ReleasePoint)
Organization, Agency, Individual

Attn: PO Box 1390

Address St. Peters    MO    63376
City, State, Zip Code

**Treatment Date(s):** FROM: 05/01/2019    TO: Present
**Purpose:** ☐ Further Medical Care  ☐ Workers' Comp
☐ Personal Use  ☐ Insurance  ☐ Legal
☐ Marketing/Fundraising
☒ Other: Claims - Disability Insurance

**Type of Disclosure Authorized & Delivery Instructions:**
☒ Provide copies of records to organization/agency/individual
☒ Mail records directly to address above
☐ Call to pick-up records: _____
☐ Fax records to: _____

**Pertinent Protected Health Information Allowed to be Included:**

☐ Discharge Summary          ☐ Radiology          ☐ Special Studies          ☐ Entire Medical Record
☐ History & Physical/Consult  ☐ Outpt Record       ☐ Medication Records
☐ Operative Report            ☐ Progress Notes     ☐ Psych Health Records
☐ Labs                        ☐ Physician Orders   ☒ Other (specify): all PHI, excluding x-ray films

*Psychotherapy Notes are distinct and may not be included with the disclosure of any other protected health information.*
*A Patient Authorization to Disclose Psychotherapy Notes must be completed.*

**Authorization:** I certify that this request is made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time in writing by submitting my request in writing to the designated Health Information Management / Medical Records department. If I have authorized the disclosure of my health information to someone who is not legally required to keep it private, it may be re-disclosed and may no longer be protected. A copy or fax of this authorization will be as valid as the original.
I understand that authorizing disclosure of health information is voluntary. I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment, payment, or my eligibility to obtain benefits. I understand that I may inspect or obtain a copy of the information to be disclosed. I understand a fee may be charged for copies of my medical record. I understand the facility will provide me a copy of the signed authorization form. If I have questions about disclosure of my health information, I can contact the designated Corporate Responsibility and Privacy Officer.
**Expiration:** Without my express revocation, this authorization will automatically expire upon satisfaction of the need for disclosure, but in any event will expire 90 days from the date hereof, unless a different date is specified here: 180 days after signature date
**Acknowledgement:** I understand that the information to be disclosed may include any or all information involving communicable or venereal disease, psychological or psychiatric conditions, drug or alcohol abuse and/or alcoholism. It may also include, but is not limited to, diseases such as hepatitis, syphilis, gonorrhea and human immunodeficiency viruses (HIV), also known as acquired immune deficiency syndrome (AIDS).
**For Marketing/Fundraising Purposes Only, if applicable:** I understand that Centura Health ☐ will  ☐ will not  receive remuneration, either direct or indirect, as a result of the marketing that I hereby authorize.

SIGNATURE: _____  DATE: _____
Patient (Parent or Legal Guardian)

Minor's signature is required for release of any records for treatment which the minor may authorize under Colorado Law.

Relationship (if other than patient): _____  ☐ Power of Attorney  ☐ Death Certificate

Name of individual signing on behalf of patient: _____

**Verification:** ☐ Drivers License # _____  ☐ Other Appropriate ID: _____

**OFFICE USE ONLY: Attach copies of required identification.**

Number of pages released: _____ Completion date: _____  Delivery method: _____

Name of individual who received request: _____  Date received: _____

Patient Medical Record Number / Account Number: _____  /_____

**Lincoln/Bunch 0452**

**ReleasePoint**

**Medical Record Overview**

**Date:**    September 7, 2019

**Patient Name:**    BUNCH, MARK

**Records From:**    THOMAS HIGGINBOTHAM, DO          **RP ID:** 5654345
1430 S 21st STREET
COLORADO SPRINGS, CO  80904              **Client ID:** 8220685
(719) 260-8190
                                         **Source:** LIBMT3
**Request Scope:**  From May 10, 2019 to Present
                                         **Req By:**  D Davis
**Chart Range:**    06/04/2019 - 08/06/2019              04444809

**SSN:**

| | | | | Starts on |
|---|---|---|---|---|
| **Classification** | **From** | **To** | **Total** | **Page** |
| Progress Notes | Jun 4 2019 | Aug 6 2019 | 2 | 2 |
| Request Corr. | | | 5 | 4 |

**Total Page Count:**    7

**Notes From QC:**

**Lincoln/Bunch 0453**

**Progress Notes - 08/06/2019**

BUNCH, Mark
08/06/19
DOB:

S:  Mr. Bunch is here primarily for refill prescription for his blood
    pressure medications.  He hasn't heard yet from the ALJ regarding his
    Social Security Disability claim.  He has no health insurance
    otherwise.  He has not received any monies from his long-term
    disability carrier, Liberty Mutual.  He does have an attorney
    assisting him with these.

    He relates that his neuro-optometrist had never gotten paid for the
    work he had done under his worker's compensation claim.

    He relates of no significant change in his condition since his work-
    related motor vehicle collision. He is still in need of care but is
    without insurance.

O:  Blood pressure is 160/94.  Heart rate is 80.  Pulse oximetry is 94%
    O2 on room air; there is mild pedal edema.  Heart is of regular rate
    and rhythm without murmur.  Lungs are clear to auscultation.
    Thoracic expansion is fair.

A:  Hypertension I10

P:  Micardis 40 will now be combined with hydrochlorothiazide 12.5 mg;
    #90 with one refill was prescribed to take one a day. Hopefully he
    will hear from Social security imminently, so he can begin
    appropriate medical care.

Thomas Higginbotham D.O.

**Lincoln/Bunch 0454**

**Progress Notes - 06/04/2019**

BUNCH, Mark
06/04/19
DOB:

S:    Mr. Bunch returns to monitor his blood pressure.  He is requesting a
      refill prescription for his muscle relaxants.  He is accompanied by
      his significant other.  She drove him here. There are no significant
      changes in his symptom complaints.

O:    Body habitus remains the same.  He is wearing corrective lenses.  He
      is not using assistive devices; however, he is not steady on his
      feet. Blood pressure is 148/88.  Heart rate is 84.  Pulse oximetry is
      95% O2 on room air; there is mild pedal edema.  Speech prosody is
      unchanged.  He significantly forward flexes his neck in resting
      posture. Romberg is positive with reeling backwards.

A:    Hypertension I10
      History of traumatic brain injury Z87.828, with
            Adjustment disorder with depressed mood F06.30
            Neurocognitive disorder G31.84
            Visual difficulties with spatial disorientation H53.30
      Persistent cervical strain S16.1XXD

P:    I refilled the cyclobenzaprine 10 mg, #90.  He will continue with the
      Micardis 40 mg daily for hypertension. His pursuit of disability
      through Social Security is pending. I will see him again in one
      month.

Thomas Higginbotham D.O.

cc  Atty Skcolofl — 7/11/19 ph

**Lincoln/Bunch 0455**

Request Corr.

## Occupational
## And
## Environmental Health Services

Thomas W. Higginbotham, D.
Board Certified
Occupational And
Environmental Medicine

### FAX COVER SHEET

TO: _Kathryn Lembruno_      FAX NO. _415-491-0277_

FROM: _____Thomas Higginbotham, D.O.___      FAX NO. ___(719) 260-6086___

DATE: _3-5-19_  NO. OF PAGES __7__    (INCLUDES COVER SHEET)

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CONTACT US AS SOON AS
POSSIBLE FOR RE-TRANSMISSSION.

Re: Mark Bunch
DOB :-

The information contained in this facsimile transmission is intended solely for the
addressee(s) named above and is privileged and/or confidential. If the reader of this
message is not the intended recipient or the person responsible to deliver it to the
intended recipient, you are prohibited from reading or disclosing the information
contained in this transmission. Any examination, use, dissemination, distribution, or
copying of this communication is strictly prohibited. If you have received this
communication in error, please notify us immediately by phone for instructions.

1430 South 21st Street, Suite 101
Colorado Springs, CO 80904
(719)260-8190
FAX 260-6086

Lincoln/Bunch 0456

# Lincoln
### Financial Group

**Lincoln Financial Group**
c/o RP Claims Processing
P.O. Box 1390
St. Peters, MO 63376

**OCCUPATIONAL & ENVIRONMENTAL HEALTH**
1430 S 21st Street Suite 101
ATTN: MEDICAL RECORDS
Colorado Springs, CO 80904

Date:    Aug 29, 2019
Re: Long-Term Disability Benefits
Claim#  8220685      5654345
Claimant:  BUNCH, MARK
Claimant DOB:
  Provider Postal: https://portal.releasepoint.com
    Access Key: OCC034

Dear  Medical Records,

Lincoln Financial is the Disability Claim Administrator for your patient, listed above.

To evaluate your patient's eligibility for disability benefits and help facilitate a return to work when appropriate, we are requesting the following information:
**From May 10, 2019 to Present**
Please provide medical records from the time frame requested. -
Seen By: THOMAS HIGGINBOTHAM, DO

We ask that you provide this information within a week of the date of this mailing. Failure to provide the requested information may result in an adverse benefit or claim determination. The information can be faxed to our office at our secure fax number                    or mailed to the above address.

If prepayment is required, please fax an invoice indicating the number of pages, the Federal TAX ID, and the amount due. If you're a hospital, only abstract records are required: admission, history/physical, OP reports, DX summaries, etc. Fees from Copy Services and Hospitals require approval if over $100.00.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored LTD benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by your patient allowing the release of information to our company. This authorization specifically allows you to release medical information to Lincoln Financial, and is valid for 2 years from the date of signature.

If you have any questions regarding this matter, please contact me.

Sincerely,
Alter Paul Paulete
Disability Information Specialist
Phone No.: (213) 266-5038
Fax No:



**Lincoln/Bunch 0457**



Liberty
Mutual
INSURANCE

AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED
HEALTH INFORMATION

I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:

STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

Name of claimant (print)

Name of legal representative, if applicable (print)                              Relationship

Signature of claimant or legal representative

Date of birth: _____    Claim Number: _____    Date: _____

A copy of this authorization will be considered as valid as the original.

pg. 1 Authorization-Standard-2016

**Lincoln/Bunch 0458**

 Lincoln Financial Group®

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

The Lincoln National Life
Insurance Company
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

11/6/2018

To Whom It May Concern,

Liberty Life Assurance Company of Boston, a Lincoln Financial Group company, authorizes ReleasePoint to act on its behalf for the purpose of obtaining medical records in connection with the administration of your patient's disability claim.

The enclosed Authorization to obtain and release information, as executed by the patient, directs the release of protected medical information to Lincoln Financial Group.

We request that you please send records to ReleasePoint by one of the options below:
- Electronic mail to: charts@releasepoint.com
- Secure fax to: (415) 491-0277. There is no limit on the number of pages faxed.

If you have any questions, please contact ReleasePoint at (800) 999-9589.

Sincerely,

Kathryn Leombruno
Director, Claims Operations
Lincoln Financial Group Claims

ReleasePoint
PO Box 1390
St. Peters, MO 63376

©2015 Lincoln National Corporation www.lincolnbenefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Lincoln/Bunch 0459

## Save Time and Avoid Follow-up Calls
## Use our Secure Status and Upload Portal

Using our secure online portal, you can provide us with status information on our request for medical records, and upload records directly to our system.

Here's how it works:

**STEP 1:**    Go to https://portal.releasepoint.com to bring up the portal on your browser.

**STEP 2:**    Enter the RPID and Access Key:

Patient Name:    BUNCH, MARK
RP ID:           5654345
Access Code:     OCC034

**STEP 3:**    Select either "Upload Records" or "Update Status" and follow the instructions on the screen.

**STEP 4:**    Record your confirmation number, and you're done.

**Thank you for using the ReleasePoint Provider Portal.**

Provider Portal

RPNET PROVIDER PORTAL LOGIN
Enter the 7-digit RP Number and Portal Access Key to Continue:

RP Number:    1234567

Access Key:   CVGI02

LOGIN

Powered By (S) ReleasePoint

**Lincoln/Bunch 0460**

# Quality Assurance Report

## Request Information

Report Date:    September 7, 2019

**RP ID: 5654345**

Patient Name:   BUNCH, MARK

Provider Name: OCCUPATIONAL & ENVIRONMENTAL HEALTH

## Quality Assurance Information

Scope Requested: **From May 10, 2019 to Present**

Special Request:
Please provide medical records from the time frame requested. - Seen By: THOMAS HIGGINBOTHAM, DO

Special Request Included? YES

Secondary Request Confirmed? YES

QC Notes:

Chart Reviewed By: MOKAM

**Lincoln/Bunch 0461**

 **Centura Health**® **Page 1 of 1**

**Patient Authorization to Disclose Protected Health Information**
**#CHCR-004  rev. 12/12**

AUTHPHI

| | Patient Label |
|---|---|

# Patient Authorization to Disclose Protected Health Information

| Patient Name | Date of Birth | Last 4 of Social Security Number |
|---|---|---|
| BUNCH, MARK | | |

| Address | City, State, Zip Code | Telephone Number |
|---|---|---|

**I hereby authorize the facility listed below to disclose/release the Protected Health Information specified in this request to the organization, agency or patient named.**

**Release by:** PENROSE MAIN ST. FRANCIS HOSPITAL
Facility
2222 N NEVADA AVE
Address
COLORADO SPRINGS CO 80907
City, State, Zip Code

HIM Phone/Fax Numbers

**Release to:** Lincoln Financial Group (c/o ReleasePoint)
Organization, Agency, Individual

Attn:
PO Box 1390
Address
St. Peters    MO    63376
City, State, Zip Code

**Treatment Date(s):** FROM: 05/01/2019 TO: Present
**Purpose:** ☐ Further Medical Care ☐ Workers' Comp
☐ Personal Use ☐ Insurance ☐ Legal
☐ Marketing/Fundraising
☒ Other: Claims - Disability Insurance

**Type of Disclosure Authorized & Delivery Instructions:**
☒ Provide copies of records to organization/agency/individual
☒ Mail records directly to address above
☐ Call to pick-up records: _____
☐ Fax records to: _____

**Pertinent Protected Health Information Allowed to be Included:**

☐ Discharge Summary    ☐ Radiology    ☐ Special Studies    ☐ Entire Medical Record
☐ History & Physical/Consult    ☐ Outpt Record    ☐ Medication Records
☐ Operative Report    ☐ Progress Notes    ☐ Psych Health Records
☐ Labs    ☐ Physician Orders    ☒ Other (specify): all PHI, excluding x-ray films

*Psychotherapy Notes are distinct and may not be included with the disclosure of any other protected health information.*
*A Patient Authorization to Disclose Psychotherapy Notes must be completed.*

**Authorization:** I certify that this request is made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time in writing by submitting my request in writing to the designated Health Information Management / Medical Records department. If I have authorized the disclosure of my health information to someone who is not legally required to keep it private, it may be re-disclosed and may no longer be protected. A copy or fax of this authorization will be as valid as the original.
I understand that authorizing disclosure of health information is voluntary. I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment, payment, or my eligibility to obtain benefits. I understand that I may inspect or obtain a copy of the information to be disclosed. I understand a fee may be charged for copies of my medical record. I understand the facility will provide me a copy of the signed authorization form. If I have questions about disclosure of my health information, I can contact the designated Corporate Responsibility and Privacy Officer.
**Expiration:** Without my express revocation, this authorization will automatically expire upon satisfaction of the need for disclosure, but in any event will expire 90 days from the date hereof, unless a different date is specified here: 180 days after signature date
**Acknowledgement:** I understand that the information to be disclosed may include any or all information involving communicable or venereal disease, psychological or psychiatric conditions, drug or alcohol abuse and/or alcoholism. It may also include, but is not limited to, diseases such as hepatitis, syphilis, gonorrhea and human immunodeficiency viruses (HIV), also known as acquired immune deficiency syndrome (AIDS).
**For Marketing/Fundraising Purposes Only, if applicable:** I understand that Centura Health ☐ will ☐ will not receive remuneration, either direct or indirect, as a result of the marketing that I hereby authorize.

**SIGNATURE:** _____ **DATE:** _____
Patient (Parent or Legal Guardian)
Minor's signature is required for release of any records for treatment which the minor may authorize under Colorado Law.
*Relationship (if other than patient):* _____ ☐ Power of Attorney ☐ Death Certificate
*Name of individual signing on behalf of patient:* _____
**Verification:** ☐ Drivers License # _____ ☐ Other Appropriate ID: _____

**OFFICE USE ONLY: Attach copies of required identification.**

Number of pages released: _____ Completion date: _____ Delivery method: _____

Name of individual who received request: _____ Date received: _____

Patient Medical Record Number / Account Number: _____ / _____

**Lincoln/Bunch 0462**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date: | August 28, 2019 |
| To: | SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 |
| Attn: | |
| Fax: | (719) 635-0966 |
| From: | Danielle Davis<br>LTD Specialist 1<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 |
| Total Pages<br>(Including Cover): | 3 |
| RE:<br><br>Claim #:    8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

**Welcome to Lincoln Financial Group.**
Effective May 1, 2018, Liberty Life Assurance Company of Boston was acquired by The Lincoln National Life Insurance Company, a Lincoln Financial Group company. During the transition, you may receive communications from both companies. Please open and read all correspondence you receive about your benefits.
Thank you.

**Bienvenido a Lincoln Financial Group.**
A partir del 1 de mayo de 2018, Liberty Life Assurance Company of Boston pas   a pertenecer a The Lincoln National Life Insurance Company, una compa   a de Lincoln Financial Group. Durante la transici  n, es posible que reciba comunicados de ambas compa   as. Abra y lea toda la correspondencia que reciba sobre sus beneficios.
Muchas gracias.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0463**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

August 28, 2019

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

Liberty Life Assurance Company of Boston, now a Lincoln Financial Group company is responsible for managing claims for Long Term Disability (LTD) benefits under Charter Communications, Inc.'s Group Disability Policy.  We are writing in reference to Mark Bunch's claim for LTD benefits under the Policy.

We are currently reviewing Mr. Bunch's eligibility for continued disability benefits, and are in need of additional information.

On August 28, 2019, we requested your medical records from Penrose Outpatient Rehabilitation and Dr. Higginbotham.     This information is necessary to complete our ongoing claims investigation. Please provide us with the following information to assist us with our review of Mr. Bunch's eligibility for benefits:

> Office treatment notes, test results, operative reports, prescription histories, and treatment plans from May 1, 2019 through present from Penrose Outpatient Rehabilitation and Dr. Higginbotham

If there are any other attending physicians or specialists, including physical therapy providers, that we are unaware of, please have them forward all medical records pertinent to Mr. Bunch's disability within the timeframe stated above.

Charter Communications, Inc.'s LTD Policy requires that, in order to receive ongoing benefits, Mr. Bunch provide proof of disability within a required timeframe.  His cooperation in providing the requested information is essential to our claim investigation.

If we do not receive all of the requested information by October 11, 2019, 45 days from the date of

1  of  2

**Lincoln/Bunch 0464**

this request, Mr. Bunch's benefits will be suspended. If we do not receive all of this requested information by November 10, 2019, 30 days from the date of suspension, his claim will be closed.

We ask that Mr. Bunch provide us with this information no later than November 10, 2019 as required under the terms of the Policy.

If Mr. Bunch has any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
LTD Specialist 1
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

**Lincoln/Bunch 0465**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date: | August 28, 2019 |
| To: | SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 |
| Attn: | |
| Fax: | (719) 635-0966 |
| From: | Danielle Davis<br>LTD Specialist 1<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 |
| Total Pages<br>(Including Cover): | 2 |
| RE:<br><br>Claim #:    8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

**Welcome to Lincoln Financial Group.**
Effective May 1, 2018, Liberty Life Assurance Company of Boston was acquired by The Lincoln National Life Insurance Company, a Lincoln Financial Group company. During the transition, you may receive communications from both companies. Please open and read all correspondence you receive about your benefits.
Thank you.

**Bienvenido a Lincoln Financial Group.**
A partir del 1 de mayo de 2018, Liberty Life Assurance Company of Boston pas   a pertenecer a The Lincoln National Life Insurance Company, una compa   a de Lincoln Financial Group. Durante la transici n, es posible que reciba comunicados de ambas compa   as. Abra y lea toda la correspondencia que reciba sobre sus beneficios.
Muchas gracias.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0466**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

August 28, 2019

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

In response to your request Mark Bunch, effective August 15, 2018 is receiving a monthly disability check for $ 4045.53 and will continue to do so as long as he meets the terms of his contract. Please also note this amount will be adjusted if he receives any additional income in the future.

Benefit Monthly Amount $8,961.96

Benefit Percentage 60%

Gross Modal Benefit $5,377.18

Regarding the Workers  Compensation (WC) we added a WC offset from the benefit begin date of August 1, 2018-October 16, 2018 in the amount of $4108.65 monthly.   Which was based on the weekly rate on the WC information that was received on July 17, 2019, which showed a weekly rate of $948.15. We took this weekly rate of $948.15 x 52 weeks /12 months= $4108.65 monthly WC offset. We then took the lump sum settlement dated January 3, 2019, amount of $79899.00 and added a monthly offset of $1331.65 from January 3, 2019-January 2, 2024 based on the lump sum provision in the contract stating we offset over the lesser of max benefit date or 5 years. $79899.00/60 months= $1331.65 monthly WC offset from January 3, 2019-January 2, 2024.


If you have any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
LTD Specialist 1
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

1  of 1

**Lincoln/Bunch 0467**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date: | August 28, 2019 |
| To: | SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 |
| Attn: | |
| Fax: | (719) 635-0966 |
| From: | Danielle Davis<br>LTD Specialist 1<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 |
| Total Pages<br>(Including Cover): | 5 |
| RE:<br><br>Claim #:    8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

**Welcome to Lincoln Financial Group.**
Effective May 1, 2018, Liberty Life Assurance Company of Boston was acquired by The Lincoln National Life Insurance Company, a Lincoln Financial Group company. During the transition, you may receive communications from both companies. Please open and read all correspondence you receive about your benefits.
Thank you.

**Bienvenido a Lincoln Financial Group.**
A partir del 1 de mayo de 2018, Liberty Life Assurance Company of Boston pas   a pertenecer a The Lincoln National Life Insurance Company, una compa   a de Lincoln Financial Group. Durante la transici  n, es posible que reciba comunicados de ambas compa   as. Abra y lea toda la correspondencia que reciba sobre sus beneficios.
Muchas gracias.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0468**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

August 28, 2019

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:     Long Term Disability (LTD) Benefits
        Charter Communications, Inc.
        Claim #: 8220685
        Claimant: Mark Bunch

To Whom It May Concern:

Liberty Life Assurance Company of Boston, now a Lincoln Financial Group company is responsible
for managing claims for Long Term Disability (LTD) benefits under Charter Communications,
Inc.'s Group Disability Policy.  We are writing in reference to Mark Bunch's claim for LTD benefits
under the Policy.

In addition to Mr. Bunch's Long Term Disability (LTD) benefit, he may qualify for additional
benefits from the Social Security Administration.

There are a number of advantages for Mr. Bunch if Mr. Bunch is approved for Social Security
Disability benefits.  These advantages are outlined in the attachment, and include:

        Increased Social Security Retirement benefits
        Cost of Living Adjustment (COLA) increases
        Expedited Medicare coverage
        Dependent and Spousal benefits
        Return to Work incentives

The purpose of this letter is to help Mr. Bunch apply for those benefits.

We reali e that applying for Social Security Disability benefits can be intimidating. To help Mr.
Bunch through the process, we are providing information on using the services of Doherty, Cella,
Keane & Associates, a Social Security claimant representative.  Doherty, Cella, Keane & Associates
speciali es in preparing Social Security Disability claims and, when necessary, representing
claimants.  They have a 90% success rate in obtaining awards.  Their professional and experienced
staff will act on his behalf and will keep his contact with the Social Security Administration to a
minimum.  If Mr. Bunch is using the services of this representative, their fee will be paid directly by

Lincoln/Bunch 0469

the Social Security Administration and the cost of this fee will be deducted from any disability overpayment created due to the receipt of retroactive Social Security Benefits.  This will be explained to him in greater detail upon accepting representation by Doherty, Cella, Keane & Associates.

However, if Mr. Bunch is choosing to apply for Social Security benefits without utili ing our Social Security Claimant representative services, Mr. Bunch must initiate the process by either calling SSA toll free at 1-800-772-1213 (for TTY call 1-800-325-0778), applying directly online at www.socialsecurity.gov/disabilityssi/apply.html, or by visiting his local Social Security office.

If Mr. Bunch has any other family member (dependents) that may be eligible for benefits, please make sure Social Security is informed so application and payment for dependent benefits is not delayed.

Mr. Bunch is required to apply for Social Security benefits under the terms of Charter Communications, Inc. s LTD Policy and it is important that Mr. Bunch begin this process immediately.  Therefore, please initiate Mr. Bunch's application within 45 days from the date of this letter, October 11, 2019, and complete and return the enclosed forms.  A return envelope has been provided for his convenience.

Per the terms of the disability Policy, failure to provide proof of filing within the stated timeframe will result in a reduction to his benefit from Liberty Life Assurance Company of Boston equal to an estimated amount of Social Security benefits.  Therefore, if he does not file within the 45-day time frame, his benefit will be reduced by an estimated amount as deemed eligible by the Social Security Administration.  If proof of filing is subsequently received, this reduction will be refunded to Mr. Bunch.

If Mr. Bunch is approved for Social Security Disability benefits, the disability benefits received by Mr. Bunch from Liberty Life Assurance Company of Boston will be reduced by the amount Mr. Bunch receive from Social Security.  In other words, Mr. Bunch will continue to receive the same amount of monthly benefits, but the money will come from two sources.  If Mr. Bunch is entitled to retroactive benefits, Mr. Bunch may receive a significant payment from Social Security.  This money is essentially money that Liberty Life Assurance Company of Boston advanced to Mr. Bunch while Mr. Bunch was waiting for Social Security s decision, and he must repay it immediately upon our request.

If Mr. Bunch has any questions regarding this letter or the Social Security process, please contact us at the number below.

Sincerely,

Danielle Davis
LTD Specialist 1
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

**Lincoln/Bunch 0470**

Attachments:   Advantages of Social Security Disability Benefits Form

3  of  3

**Lincoln/Bunch 0471**

# <u>Advantages of Social Security Disability Benefits</u>

- **Increased Disability Benefits**
  - ° **Though you and your dependents' initial Social Security benefit would be offset from your Long Term Disability payment, your future Social Security cost of living (COLA) increases would not.  Therefore you would maximize your combined benefits because they would increase each year.**

- **Increased Retirement Benefits**
  - ° **For any period within a year that you are not paying into Social Security (FICA) out of your earnings, zeros are being factored into your earnings record. If found eligible for SSDI for any period of time when there were zeros, they will be excluded from the calculation of future benefits.  As a result, the amount of your eventual Social Security Retirement Benefit could be <u>*substantially higher*</u>.**

- **Cost of Living Adjustment (COLA) Raises**
  - ° **SSA will provide you and any eligible dependents an increase annually.  These increases will not affect your Long Term Disability benefits.**

- **Tax Free Income**
  - ° **The majority of Social Security beneficiaries who receive Social Security Disability income are either entirely or partially tax free based on certain criteria set by SSA.**

- **Medicare Coverage**
  - ° **After you have received Social Security Disability benefits for 24 months, regardless of your age, you also become eligible for Medicare benefits.  This includes Part A Hospital benefits, and Part B Medical benefits, which added to any other health insurance coverage you might have, will increase your overall health insurance protection.**
  - ° **Once you establish Medicare Eligibility your premiums for any other health insurance you might have could decrease. With Medicare coverage available to help pay medical expenses, such premiums may be adjusted downwards.**
  - ° **Medicare Part A is at no cost while Medicare Part B has an associated premium. You can access <u>http://www.socialsecurity.gov/medicare/</u> for more information and costs associated with the program.**

- **COBRA Extension**
  - ° **If you receive Social Security Disability benefits the length of your COBRA benefits may be extended an additional 11 months.**

- **Return To Work Incentives**
  - ° **Social Security will provide you opportunities to Return To Work while still paying you disability benefits.**

**Lincoln/Bunch 0472**

3P214190026



# SHAKESHAFT-GORMAN
## LAW FIRM, LLP

| | | **Main Office** |
|---|---|---|
| **Kenneth J. Shakeshaft** • Attorney at Law | | Shakeshaft - Gorman Law Firm |
| **Joseph M. Gorman** • Attorney at Law | | 1935 Jamboree Drive, Suite 202 |
| Cindy Maddox • Paralegal | | Colorado Springs, CO 80920 |
| Brandy Newton • Paralegal | | |

July 26, 2019

Lincoln Financial Group
Attn: Danielle Davis
P.O. Box 7207
London, KY 40742-7207

> RE:   Our client:   Mark Bunch
>         Claim No.:   8220685
>         Charter Communications, Inc.

Dear Ms. Davis,

Please advise on the status of Mark Bunch's Disability payments.

Sincerely,

Kenneth J. Shakeshaft
KJS/bn
Attachments

**Lincoln/Bunch 0473**

07/16/2019   15:21   7196350966                                           PAGE 01/11

# SHAKESHAFT & GORMAN LAW FIRM, LLP

1935 Jamboree Dr. | Suite 202 | Colorado Springs, CO 80920
Tel 719.635.5886 | Fax 719.635.0966 | www.shakeshaftlawfirm.com

## FACSIMILE TRANSMISSION

**DATE:**          July 16, 2019

**TO:**            **Lincoln Financial Group**

**FROM:**          Brandy Newton| Paralegal

**PAGES INCLUDING COVER SHEET:**   11

**FAX NUMBER:**    603-559-0490

**REGARDING:**     Mark Bunch

**Comments:**      Claim Number: 8220685

Please see the following correspondence of today's date.

IF YOU DO NOT RECEIVE ALL THE PAGES OR IF ANY PART IS ILLEGIBLE, PLEASE CALL (719) 635-5886.

### NOTICE

THIS MESSAGE IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN PRIVILEGED OR CONFIDENTIAL INFORMATION WHICH IS EXEMPT FROM DISCLOSURE PURSUANT TO APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR IS NOT AN EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY OF THIS MESSAGE TO THE INTENDED RECIPIENT, DISTRIBUTION, COPYING OR OTHER DISSEMINATION OF THE INFORMATION CONTAINED IN THIS COMMUNICATION IS PROHIBITED. PLEASE CONTACT (719) 635-5886 AND RETURN THE ORIGINAL MESSAGE TO SHAKESHAFT LAW FIRM, 1935 JAMBOREE DRIVE, STE. 202, COLORADO SPRINGS, CO 80920.

**Lincoln/Bunch 0474**



## SHAKESHAFT-GORMAN
#### — LAW FIRM, LLP —

| | | | |
|---|---|---|---|
| Kenneth J. Shakeshaft | • Attorney at Law | **Main Office** | |
| Joseph M. Gorman | • Attorney at Law | Shakeshaft - Gorman Law Firm | |
| Cindy Maddox | • Paralegal | 1935 Jamboree Drive, Suite 202 | |
| Brandy Newton | • Paralegal | Colorado Springs, CO 80920 | |

July 16, 2019

Via facsimile: 603-559-0490

Lincoln Financial Group
Attn: Danielle Davis
Charlotte, NC

        RE:    Our client:    Mark Bunch
                    Claim No.:   8220685
                    Charter Communications, Inc.

Dear Ms. Davis,

Attached please find Mr. Bunch's complete Settlement Agreement regarding the Workers' Compensation claim. I also attached the Final Admission of Liability. I am not certain as to what information you assert is not included in the Final Admission of Liability. It is clear from the FAL what Mr. Bunch was paid. I have highlighted the area of where the information shows his payments.

Sincerely,

Kenneth J. Shakeshaft
KJS/bn
Attachments

PHONE 719.635.5886 - FAX 719.635.0966 - TOLL FREE 1.800.383.5886
WWW.SHAKESHAFTANDGORMANLAW.COM - OFFICE@SHAKESHAFTANDGORMANLAW.COM

**Lincoln/Bunch 0475**

07/16/2019   15:21    7196350966                                              PAGE 03/11

# FINAL ADMISSION OF LIABILITY

| | | | |
|---|---|---|---|
| Workers' Compensation (WC) # | 5070376 | Average Weekly Wage | 1923.08 |
| Claimant's Name  MARK BUNCH | | Date First Payment of TTD | 3/5/18 |
| | | Date of MMI    10/17/18 | |
| Date of Injury    2/13/18 | | Date First Payment of PPD | n/a |
| Carrier Claim #    2D338776817591 | | Employer   CHARTER COMMUNICATIONS | |
| Insurance Carrier    NEW HAMPSHIRE INS CO | | Third Party Administrator    ESIS | |

## NOTICE TO CLAIMANT:

This Final Admission of Liability is a legal document listing benefits that have been or will be paid. You have the right to disagree or object to benefits admitted or not admitted. If you do not object to this admission within 30 calendar days of the date of the final admission, your file will automatically close. Objection information is attached.

If you disagree with the benefits admitted or not admitted you must do the following:

1. Within 30 days, complete the attached objection form or write a letter to the Division of Workers' Compensation, 633 17th St., Suite 400 Denver, CO 80202-3660 with a copy to the insurance carrier or self-insured employer stating that you object to this admission. You must also file an application for hearing with the Office of Administrative Courts on any disputed issues.

2. Within the same 30 days, if you disagree with the date of MMI or whole person impairment rating, complete the attached Notice and Proposal to Select an Independent Medical Examiner form and send it to the insurance carrier or self-insured employer and the Division.

3. If an IME is requested, you are not required to file an application for hearing until after the IME is completed.

4. If your date of injury is prior to July 1, 1991, the provisions regarding an Independent Medical Examination do not apply.

See page 2 for codes, definitions and other important notices.

BENEFIT SUMMARY (Check box & list amount for admitted benefits)

| | | |
|---|---|---|
| ☒ Medical to Date (total) $ | 26,503.00 | |
| ☐ Disfigurement (total) $ | 0.00 | |
| ☐ Vocational Rehabilitation Services (total) $ | 0.00 | |
| ☒ Temporary Total Disability (TTD) (total) $ | 33,185.25 | |
| ☐ Temporary Partial Disability (TPD) (total) $ | 0.00 | |
| ☐ Stipulation $ | 0.00 | |
| ☐ Permanent Total Disability (PTD) | $0.00 | |
| ☐ Safety Rule Violation  ☐ Offset (Attach Calculation) | | |

| Permanent Partial Disability (PPD): | | | |
|---|---|---|---|
| Whole Person Impairment    0    %    Age | | | |
| or | | | |
| Scheduled Impairment  0    %    Part of Body Code | | | |
| Scheduled Impairment  0    %    Part of Body Code | | | |
| (See page 2 for Part of Body Codes) | | | |

Position on Medical Benefits after Maximum Medical Improvement (MMI): Respondents deny liability for post-MMI medical treatment on the grounds that it is not reasonable, necessary, or related to the compensable injury. Any and all benefits & penalties not specifically admitted to are hereby denied. Remarks and basis for permanent disability award PER THE ATTACHED REPORT FROM DR. POLANCO DATED 10/17/18. THE CLAIMANT IS AT MMI WITHOUT IMPAIRMENT AS OF 10/17/18. AN OVERPAYMENT IN THE AMOUNT OF $1896.30 EXISTS. ESIS RESERVES THE RIGHT TO (Attach additional pages, if needed) RECOUP THE OVERPAYMENT FROM FUTURE BENEFITS IF APPLICABLE.

BENEFIT HISTORY

| Type of Benefits | | Time Periods | | Weeks | | Rate per Week | | Totals |
|---|---|---|---|---|---|---|---|---|
| TTD | 2/14/18 | through | 10/16/18 | = 35 | x $ | 948.15 | = $ | 33,185.25 |
| | | through | | = | x $ | | = $ | |
| | | through | | = | x $ | | = $ | |
| | | through | | = | x $ | | = $ | |
| | | through | | = | x $ | | = $ | |
| | | through | | = | x $ | | = $ | |
| | | through | | . | x $ | | = $ | |

The above time periods include the dates specified.

Amount of Interest Paid $  0.00
Amount of Penalties Paid $  0.00

(Attach additional pages, if needed)

Amount Overpaid $  1,896.30        (See Remarks)

| | | | |
|---|---|---|---|
| Claims Representative    Landon Wallis | Phone #  (303) 728-9013 | Toll-Free Phone #  800-992-7578 | |
| Address    PO Box 6569, Scranton, PA 18505-6569 | | | |

CERTIFICATE OF MAILING: Copies of this document were placed in the U.S. mail or delivered to the following parties this 7 day of NOVEMBER , 2018

List names and addresses of all persons copied:        Name              Address

Claimant: MARK BUNCH
Claimant's Attorney: SHAKESHAFT & GORMAN                1938 JAMBOREE DR., STE 202 COLORADO SPRINGS, CO 80920
Employer: CHARTER COMMUNICATIONS
Carrier's Attorney: ERIC POLLART, ESQ.                 5700 S. QUEBEC ST., STE 200 GREENWOOD VILLAGE, CO 80111
Division of Workers' Compensation, 633 17th Street, Suite 400, Denver, CO 80202-3660
By _____

| | | | | |
|---|---|---|---|---|
| WC4 Rev 04/11 | Page 1 of 4 | see page 2 for important notices and codes | Block # 269 | Adj. Code NO |

Lincoln/Bunch 0476

07/16/2019   15:21    7196350966                                                    PAGE 04/11

STATE OF COLORADO
DIVISION OF WORKERS' COMPENSATION

Workers' Compensation No. 5-070-376
Carrier No. 2D338776817591

---

## WORKERS' COMPENSATION CLAIM(S) SETTLEMENT AGREEMENT

---

IN THE MATTER OF THE WORKERS' COMPENSATION CLAIM(S) OF:

MARK BUNCH,
    Claimant,

v.

CHARTER COMMUNICATIONS,
    Employer,

and

NEW HAMPSHIRE INSURANCE COMPANY,
    Insurer,
    Respondents.

---

The parties named above have disputes regarding the amount of Workers' Compensation Benefits, if any, to which Claimant may be entitled. Because they wish to avoid the expense and uncertainty of litigation, the parties wish to FOREVER settle this matter and therefore state and agree as follows:

1.    Claimant sustained or alleges injuries or occupational diseases arising out of and in the course of employment with the employer on or about February 13, 2018 including, but not limited to head, neck, back, cognitive, mental, and visual. Other disabilities, impairments and conditions that may be the result of these injuries or diseases but that are not listed here are, nevertheless, intended by all parties to be included in and resolved FOREVER by this settlement.

2.    In **full and final** settlement of all benefits, compensation, penalties and interest to which Claimant is or might be entitled as a result of these alleged injuries or occupational diseases, Respondents agree to pay and Claimant agrees to accept the following **$79,899 (SEVENTY NINE THOUSAND EIGHT HUNDRED NINETY NINE DOLLARS)**, in addition to all benefits that have been previously paid to or on behalf of Claimant. This amount will be reduced by the total amount owed by Claimant as indicated in any Writ of Garnishment, Notice of Administrative Lien and Attachment or any other legally authorized procedure served upon Respondents for court-ordered support pursuant to §8-42-124 C.R.S. All parties agree that this settlement is not an admission of liability by the Respondents.

3.    As consideration for the amount paid under the terms of this settlement, Claimant rejects, waives, and forever gives up the right to claim all compensation and benefits to which Claimant might be entitled for each injury or occupational disease claimed here, including but not limited to the following, unless specifically provided otherwise in paragraph 9A of this agreement:

    a.  Temporary total and temporary partial disability benefits to compensate Claimant for time missed from work; and

    b.  Permanent total disability benefits payable to Claimant for life if Claimant is totally incapable of earning any wages; and

**Lincoln/Bunch 0477**

c.  Permanent impairment (also known as vocational impairment, medical impairment or permanent partial disability) benefits, payable up a maximum amount of $182,251.37; and

d.  A lump sum payment of up to $91,126.84 against an award of permanent impairment or permanent total disability; and

e.  Vocational rehabilitation benefits, including job training, income maintenance or any other benefits payable as vocational rehabilitation; and

f.  Benefits of up to $10,457.52 for disfigurement, scarring, discoloration, and/ or a limp; and

g.  All penalties, interest, costs, and attorneys' fees up to the date this settlement is approved by the Division. The parties do not waive the right to seek post-approval penalties should either side fail to comply with the terms of the approved settlement agreement.

h.  Medical, surgical, hospital, and all other health care benefits, including chiropractic care and mileage reimbursement incurred after the date of the approval of this settlement agreement by the Division of Workers' Compensation or by an Administrative Law Judge from the Office of Administrative Courts.

4.     **The parties stipulate and agree that this claim will never be reopened except on the grounds of fraud or mutual mistake of material fact.**

5.     Respondents specifically    ☒ retain    ☐ waive their subrogation rights.

6.     Claimant realizes that there may be unknown injuries, conditions, diseases or disabilities as a consequence of these alleged injuries or occupational diseases, including the possibility of a worsening of the conditions. In return for the money paid or other consideration provided in this settlement, Claimant rejects, waives and FOREVER gives up the right to make any kind of claim for workers' compensation benefits against Respondents for any such unknown injuries, conditions, diseases, or disabilities resulting from the injuries or occupational diseases, whether or not admitted, that are the subject of this settlement. Claimant and Respondents agree that this settlement, when approved by the Division of Workers' Compensation or by an Administrative Law Judge from the Office of Administrative Courts, ends FOREVER Claimant's right to receive any further workers' compensation money and benefits even if Claimant later feels that Claimant made a mistake in settling this matter or later regrets having settled.

7.     Claimant understands that **this is a final settlement** and that approval of this settlement by the Division of Workers' Compensation or by an Administrative Law Judge from the Office of Administrative Courts dismisses this matter with prejudice and FOREVER closes all issues relating to this matter. Claimant is agreeing to this settlement of Claimant's own free will, without force, pressure or coercion from anyone. Claimant is not relying upon any promises, guarantees, or predictions made by anyone as to Claimant's physical or mental condition; the nature, extent, and duration of the injuries or occupational diseases or as to any other aspect of this matter.

8.     Neither Claimant nor Respondents intend to waive or give up any available rights, claims, privileges or defenses by signing this Settlement Agreement unless and until it is approved by the Division of Workers' Compensation or by an Administrative Law Judge from the Office of Administrative Courts. The parties acknowledge and agree that approval by the Division of Workers' Compensation or by an Administrative Law Judge from the Office of Administrative Courts applies only to those matters set forth in this agreement that are subject to the *Workers' Compensation Act* and that the approval by the Division or by an Administrative Law Judge from the Office of Administrative Courts has no effect on any separate or contingent agreement(s) that the parties may have reached.

9.     A.)

        i.      Charter Communications is the employer listed in the caption of this settlement agreement. The parties agree the releases in this settlement agreement apply to the Charter Communications and its officers, directors, shareholders, insurers, employees, affiliates, agents, administrators, attorneys,

**Lincoln/Bunch 0478**

successors, assigns, subsidiaries and any other related entities and all of these persons and entities are included in the term "Respondents" for purposes of the releases in this settlement agreement.

ii.      Claimant acknowledges that he has disclosed to Respondents any and all KNOWN job related accidents, injuries or occupational diseases, and hereby waives his right to receive workers' compensation benefits from Respondents resulting from any and all KNOWN job-related accidents, injuries or occupational diseases occurring during his employment with Charter Communications.

iii.     The parties agree that the waivers in paragraph 3 include all admitted or accrued but unpaid temporary total and temporary partial disability benefits, permanent total disability benefits, permanent impairment benefits, vocational rehabilitation benefits, benefits for disfigurement, scarring, discoloration, and/ or a limp, mileage reimbursement, and all penalties, interest, costs, and attorneys' fees. This waiver in paragraph 9(A)(iii) of admitted or accrued but unpaid benefits prior to the date of the settlement does not apply to medical, surgical, hospital, and all other health care benefits, including chiropractic care with the exception of mileage reimbursement. The waiver of medical benefits is addressed in paragraph 9(A)(iv) below.

iv.      Medical benefits are not a disputed issue in this claim. Claimant rejects, waives, and forever gives up the right to claim all medical, surgical, hospital, chiropractic, and all other health care benefits and expenses accrued after **November 29, 2018** to which Claimant might be entitled for each injury or occupational disease claimed herein. For medical benefits and bills prior to this date, Respondents will only pay the bills to the extent that the medical treatment was reasonable, necessary, authorized and causally related to the work injury. The parties agree that Respondents will pay for reasonable, necessary, related and authorized care for dates of service up through and including November 29, 2018. This includes care by Dr. Thomas Higginbotham, Dr. Saxerud, Dr. Brinley, Dr. Staudenmayer, and chiropractic care and speech therapy based on a referral by Dr. Higginbotham.

v.       It is further understood and agreed payment of **$79,899 (SEVENTY NINE THOUSAND EIGHT HUNDRED NINETY NINE DOLLARS)** shall be made to Claimant in one lump sum, without discount. If Claimant is represented by an attorney, Claimant authorizes Respondents to send the settlement check directly to Claimant's attorney.

vi.      If temporary or permanent workers' compensation disability benefits are being paid, these benefits will terminate on as of **November 29, 2018.**

B.)  THIS ITEM INTENTIONALLY LEFT BLANK.

C.)  The parties attach the following agreement(s) to this settlement:

i.       Waiver and Release of Claims, **Exhibit A.**

10.     This settlement agreement contains the entire agreement between the parties and shall be binding upon the parties when approved by the Division of Workers' Compensation or by an Administrative Law Judge from the Office of Administrative Courts.

**Lincoln/Bunch 0479**

*When applicable, the statement below is to be completed by the interpreter* and the interpreter is to sign where appropriate and include the interpreter's PRINTED name and complete address.

I, _____ (interpreter) affirm that on this_____day of
_____, 20___, I read this document in its entirety to the individual whose name appears below as the claimant in this settlement in that person's native language and that the person indicated to me that that person understood each and every term of the settlement and, by signing this agreement, consents to and accepts the settlement as written.

_____          _____
Interpreter's name (please print)          Interpreter's signature

Interpreter's address (please print):   _____

                                        _____

                                        _____


___MARK BUNCH___                           _____
Claimant's printed name                    Claimant's signature

STATE OF COLORADO
County of __EL PASO__

Subscribed and sworn to before me this __21st__ day of __Dec__, 20_18_

By __Brandy Newton__                       _____
   Notary Public's printed name            Notary Public's signature

                                           BRANDY NEWTON
                                           NOTARY PUBLIC
                                           STATE OF COLORADO
My Commission expires: __07/27/2022__      NOTARY ID 20104026878
                                           MY COMMISSION EXPIRES JULY 27, 2022

**Claimant's Attorneys:**

Kenneth J. Shakeshaft, Esq.                _____
Claimant Attorney's printed name           Claimant Attorney's signature

Shakeshaft and Gorman Law Firm, LLP        #12618
1935 Jamboree Drive, Suite 202             _____
Colorado Springs, CO 80920                 Claimant Attorney's
Telephone: (719) 635-5886                  Registration Number


**Respondents Attorneys:**

Eric J. Pollart, Esq./Hayleigh P. Lidbury, Esq.   _____
Respondents Attorneys' printed names              Respondent Attorney's signature

Pollart Miller LLC                         #27625/#51478
5700 S. Quebec Street, Suite 200           _____
Greenwood Village, CO 80111                Respondents Attorneys'
Telephone: (720) 488-9586                  Registration Numbers

2

**Lincoln/Bunch 0480**

07/16/2019  15:21   7196350966                                                      PAGE 08/11

**EXHIBIT A – ATTACHMENT TO WORKERS'**
**COMPENSATION CLAIM(S) SETTLEMENT AGREEMENT**

**WAIVER AND RELEASE OF CLAIMS**

1.      This Waiver and Release of Claims, hereinafter "Agreement" is by and between Mark Bunch (hereinafter referred to as "Claimant") and Charter Communications and New Hampshire Insurance Company (hereinafter collectively referred to as "Respondents"). Claimant and Respondents will be collectively referred to as "the parties."

2.      The Parties have agreed to settle Claimant's Workers' Compensation Claim/Claims for the lump sum amount of **$79,899 (SEVENTY NINE THOUSAND EIGHT HUNDRED NINETY NINE DOLLARS)**, hereinafter referred to as the "Workers' Compensation Claim(s) Settlement Agreement."

3.      The parties, by entering into this Agreement, do not admit to any wrongdoing or liability whatsoever and, on the contrary, expressly deny the same. This Agreement does not constitute any admission by the parties of any violation of the laws of Colorado and the United States.

4.      In consideration for this Agreement, Respondents shall pay to Claimant **$1.00 (ONE DOLLAR)**. The parties agree the entering into the Workers' Compensation Claim(s) Settlement Agreement and the money paid under the terms of the Workers' Compensation Claim(s) Settlement Agreement provides additional consideration for this Agreement.

5.      In further consideration for the amount paid under this Agreement and the terms of the Workers' Compensation Claim(s) Settlement Agreement and the covenants therein and herein, the sufficiency of which is hereby acknowledged, Claimant hereby releases Respondents, their employees, agents, third party administrator (ESIS), affiliates, insurers and successors and assigns, from any and all other causes of action of any kind or nature whatsoever which in any way relate to the injuries or occupational diseases or the processing of claims by Respondents, their employees, agents, third party administrators, affiliates, insurers and successors and assigns, including but not limited to, negligence, breach of duty to act in good faith, outrageous conduct, intentional acts, breach of contract, or breach of any other duty owed to Claimant.

6.      If any paragraph, clause or provision of this Agreement shall for any reason be held invalid or unenforceable, the invalidity or unenforceability of such paragraph, clause or provision shall not affect any of the remaining provisions of this Agreement.

7.      This Agreement shall be binding upon the parties, their heirs, successors and assigns.

8.      Claimant has been advised to and has had an opportunity to consult with an attorney before entering into this Agreement.

9.      This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute one and the same document. A facsimile copy of signature to this Agreement shall be effective as the original signature.

10.     Claimant agrees not to disclose the terms of this Agreement to anyone other than his tax preparer, marital partner or if compelled to do so by law. Claimant specifically agrees not to disclose this information to anyone affiliated with Charter Communications.

I HAVE READ THIS AGREEMENT AND I UNDERSTAND AND AGREE WITH THE TERMS AND CONDITIONS OF THIS AGREEMENT. I HAVE RECEIVED A COPY OF THIS AGREEMENT FOR MY RECORDS.

1

**Lincoln/Bunch 0481**

*When applicable, the statement below is to be completed by the interpreter and the interpreter is to sign where appropriate and include the interpreter's PRINTED name and complete address.*

I, _____ (interpreter) affirm that on this _____ day of _____, 20__, I read this document in its entirety to the individual whose name appears below as Claimant in this settlement in that person's native language and that the person indicated to me that that person understood each and every term of the settlement and, by signing this agreement, consents to and accepts the settlement as written.

| | |
|---|---|
| Interpreter's name (please print) | Interpreter's signature |
| Interpreter's address (please print): | |

MARK BUNCH
Claimant's printed name                     Claimant's signature

STATE OF COLORADO
County of __EL PASO__

Subscribed and sworn to before me this __21st__ day of __Dec__, 20__18__

By __Brandy Newton__                     _Brandy Newton_
Notary Public's printed name              Notary Public's signature

```
BRANDY NEWTON
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20104026878
MY COMMISSION EXPIRES JULY 27, 2022
```

My Commission expires: __07/27/2022__

**Claimant's Attorneys:**

Kenneth J. Shakeshaft, Esq.
Claimant Attorney's printed name          Claimant Attorney's signature

Shakeshaft and Gorman Law Firm, LLP       #12618
1935 Jamboree Drive, Suite 202            Claimant Attorney's
Colorado Springs, CO 80920                Registration Number
Telephone: (719) 635-5886

**Respondents Attorneys:**

Eric J. Pollart, Esq./Hayleigh P. Lidbury, Esq.
Respondents Attorneys' printed names       Respondent Attorney's signature

Pollart Miller LLC                         #27625/#51478
5700 S. Quebec Street, Suite 200           Respondents Attorneys'
Greenwood Village, CO 80111                Registration Numbers
Telephone: (720) 488-9586

**Lincoln/Bunch 0482**

STATE OF COLORADO
DIVISION OF WORKERS' COMPENSATION

Workers' Compensation Number (s): 5-070-376

IN THE MATTER OF THE CLAIM OF

MARK BUNCH
    Claimant

vs

CHARTER COMMUNICATIONS                          **SETTLEMENT
    Employer,                                    ORDER**

and

NEW HAMPSHIRE INSURANCE COMPANY
    Insurer,
    Respondents.

The parties filed a stipulation for settlement, with Claimant's notarized signature dated:
_____12/21_____, 2018.


IT IS ORDERED: that the parties' stipulation for settlement is approved.

IT IS FURTHER ORDERED: that payments to Claimant shall be made in accordance with the
stipulation.

Dated this ____3____ day of __January, 2018x 2019__

DIVISION OF WORKERS' COMPENSATION

By_____
      Director or Administrative Law Judge

**Lincoln/Bunch 0483**

07/16/2019   15:21   7196350966                                                    PAGE 11/11

## DIVISION CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Order was served upon the following party by email, on ___1/3/19___.

Eric J. Pollart, Esq.
Pollart Miller LLC
5700 South Quebec Street, Suite 200
Greenwood Village, CO  80111
Email: pm-oac@pollartmiller.com


Kenneth J. Shakeshaft, Esq., Esq.
Shakeshaft and Gorman Law Firm, LLP
1935 Jamboree Drive, Suite 202
Colorado Springs, CO 80920
E-mail: office@shakeshaftlawfirm.com


                                        _Brenda Evans_

**Lincoln/Bunch 0484**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date: | July 16, 2019 |
| To: | SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 |
| Attn: | |
| Fax: | (719) 635-0966 |
| From: | Danielle Davis<br>LTD Specialist 1<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 |
| Total Pages<br>(Including Cover): | 5 |
| RE:<br><br>Claim #:    8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

**Welcome to Lincoln Financial Group.**
Effective May 1, 2018, Liberty Life Assurance Company of Boston was acquired by The Lincoln National Life Insurance Company, a Lincoln Financial Group company. During the transition, you may receive communications from both companies. Please open and read all correspondence you receive about your benefits.
Thank you.

**Bienvenido a Lincoln Financial Group.**
A partir del 1 de mayo de 2018, Liberty Life Assurance Company of Boston pas   a pertenecer a The Lincoln National Life Insurance Company, una compa   a de Lincoln Financial Group. Durante la transici n, es posible que reciba comunicados de ambas compa  as. Abra y lea toda la correspondencia que reciba sobre sus beneficios.
Muchas gracias.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0485**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

July 16, 2019

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

Liberty Life Assurance Company of Boston, now a Lincoln Financial Group company is responsible for managing claims for Long Term Disability (LTD) benefits under Charter Communications, Inc.'s Group Disability Policy.  We are writing in reference to Mark Bunch's claim for LTD benefits under the Policy.

We are in need of additional information so that we may evaluate Mr. Bunch's continued eligibility for benefits. Please complete the forms indicated below and return them in the envelope provided by August 15, 2019:

     Completion of the Enclosed Forms:

   X   Authori ation - Medical
   X   Authori ation
   ___  Other


If you have any questions regarding this correspondence, please contact me.

Sincerely,

Danielle Davis
LTD Specialist 1
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

Attachments:   Authori ation - Medical

Lincoln/Bunch 0486

Authori ation

Lincoln/Bunch 0487



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

## AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., and any insurance support organi ations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information**: The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authori ed representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organi ations providing claims management services.

**Description of the information that may be used or disclosed**: This Authori ation specifically includes the release of all information related to:

* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
* Job duties, earnings, personnel records and other work related information and credit reports, bank records, and federal and state tax returns.
* Information concerning Social Security benefits, including any records pertaining to me and my dependents

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

**STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:**

**I understand** that information used or disclosed pursuant to this authori ation could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authori ation in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authori ation, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authori ation will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authori ing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authori ation.  If I choose not to sign this authori ation, insurance coverage or claim payments may be denied or delayed.

This authori ation shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration.  The information obtained under this authori ation will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authori ation.

Name of claimant (print) _____

Name of legal representative, if applicable (print) _____    Relationship _____

Signature of claimant or legal representative _____

Date of Birth: __ _____    Claim Number: __8220685__    Date: _____

**A copy of this authorization will be considered as valid as the original.**

pg. 1 Authori ation-Standard-2018

**Lincoln/Bunch 0488**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

## AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF HEALTH INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, Plan Sponsor/ Administrator, governmental agency, MIB Inc., and any insurance support organi ations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information**: The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authori ed representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organi ations providing claims management services.

**Description of the information that may be used or disclosed**: This Authori ation specifically includes the release of all psychotherapy notes relating to me, without restriction, including psychotherapy notes recorded in any medium documenting or analy ing the contents of conversations during private counseling sessions and/or group, joint or family counseling sessions.

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

## STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

**I understand** that information used or disclosed pursuant to this authori ation could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authori ation in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authori ation, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authori ation will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authori ing the disclosure of this health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authori ation. If I choose not to sign this authori ation, insurance coverage or claim payments may be denied or delayed.

**This authorization** shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authori ation will be retained in accordance with the Company s standard retention policy and applicable law. I understand that I may request a copy of this authori ation.

Name of claimant (print) _____

Name of legal representative, if applicable (print) _____ Relationship _____

Signature of claimant or legal representative _____

Date of Birth: __ _____ Claim Number: __8220685__ Date: _____

## A copy of this authorization will be considered as valid as the original

pg. 1 Psychotherapy.2015

**Lincoln/Bunch 0489**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date: | July 16, 2019 |
| To: | SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE  202<br>COLORADO SPRINGS CO 80920 |
| Attn: | |
| Fax: | (719) 635-0966 |
| From: | Danielle Davis<br>LTD Specialist 1<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 |
| Total Pages<br>(Including Cover): | 2 |
| RE:<br><br>Claim #:    8220685<br>Claimant:   Mark Bunch<br><br>Charter Communications, Inc. | |

**Welcome to Lincoln Financial Group.**
Effective May 1, 2018, Liberty Life Assurance Company of Boston was acquired by The Lincoln National Life Insurance Company, a Lincoln Financial Group company. During the transition, you may receive communications from both companies. Please open and read all correspondence you receive about your benefits.
Thank you.

**Bienvenido a Lincoln Financial Group.**
A partir del 1 de mayo de 2018, Liberty Life Assurance Company of Boston pas   a pertenecer a The Lincoln National Life Insurance Company, una compa   a de Lincoln Financial Group. Durante la transici n, es posible que reciba comunicados de ambas compa  as. Abra y lea toda la correspondencia que reciba sobre sus beneficios.
Muchas gracias.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0490**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

July 16, 2019

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

Please be advised that the following information is needed before we can process your Long Term
Disability Benefits (LTD) payment.

- The Final admission of Liability document is missing pages 2,3 and 4.  We will need these
  pages as that is where the breakdown of the settlement should be.
- On the WC Claim Settlement Agreement there are several amounts listed throughout and we
  are not clear on what the actual settlement amount was.
- On the WC Claim Settlement Agreement there is no signature from the judge (see page 11 of
  12).  We will need a copy of the final signed document.
- On the WC Claim Settlement Agreement there is no signature from the Respondent Attorney
  (see page 12 of 12).  We will need a copy of the final signed document.

If you have any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
LTD Specialist 1
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

**Lincoln/Bunch 0491**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

| | |
|---|---|
| Date: | July 16, 2019 |
| To: | SHAKESHAFT-GORMAN LAW FIRM<br>1935 JAMBOREE DRIVE<br>SUITE 202<br>COLORADO SPRINGS CO 80920 |
| Attn: | |
| Fax: | (719) 635-0966 |
| From: | Danielle Davis<br>LTD Specialist 1<br>Phone No.: Phone No.: (844) 384-5858<br>Secure Fax No.: (603) 559-0490 |
| Total Pages<br>(Including Cover): | 4 |
| RE:<br><br>Claim #:    8220685<br>Claimant:  Mark Bunch<br><br>Charter Communications, Inc. | |

**Welcome to Lincoln Financial Group.**
Effective May 1, 2018, Liberty Life Assurance Company of Boston was acquired by The Lincoln National Life Insurance Company, a Lincoln Financial Group company. During the transition, you may receive communications from both companies. Please open and read all correspondence you receive about your benefits.
Thank you.

**Bienvenido a Lincoln Financial Group.**
A partir del 1 de mayo de 2018, Liberty Life Assurance Company of Boston pas a pertenecer a The Lincoln National Life Insurance Company, una compa a de Lincoln Financial Group. Durante la transici n, es posible que reciba comunicados de ambas compa as. Abra y lea toda la correspondencia que reciba sobre sus beneficios.
Muchas gracias.

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (844) 384-5858 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Bunch 0492**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

July 16, 2019

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

Liberty Life Assurance Company of Boston, now a Lincoln Financial Group company is responsible for managing claims for Long Term Disability (LTD) benefits under Charter Communications, Inc.'s Group Disability Policy.  We are writing in reference to Mark Bunch's claim for LTD benefits under the Policy.

In addition to Mr. Bunch's Long Term Disability (LTD) benefit, he may qualify for additional benefits from the Social Security Administration.

There are a number of advantages for Mr. Bunch if Mr. Bunch is approved for Social Security Disability benefits.  These advantages are outlined in the attachment, and include:

       Increased Social Security Retirement benefits
       Cost of Living Adjustment (COLA) increases
       Expedited Medicare coverage
       Dependent and Spousal benefits
       Return to Work incentives

The purpose of this letter is to help Mr. Bunch apply for those benefits.

We reali e that applying for Social Security Disability benefits can be intimidating. To help Mr. Bunch through the process, we are providing information on using the services of Doherty, Cella, Keane & Associates, a Social Security claimant representative.  Doherty, Cella, Keane & Associates speciali es in preparing Social Security Disability claims and, when necessary, representing claimants.  They have a 90% success rate in obtaining awards.  Their professional and experienced staff will act on his behalf and will keep his contact with the Social Security Administration to a minimum.  If Mr. Bunch is using the services of this representative, their fee will be paid directly by

1  of  2

**Lincoln/Bunch 0493**

the Social Security Administration and the cost of this fee will be deducted from any disability overpayment created due to the receipt of retroactive Social Security Benefits. This will be explained to him in greater detail upon accepting representation by Doherty, Cella, Keane & Associates.

However, if Mr. Bunch is choosing to apply for Social Security benefits without utili ing our Social Security Claimant representative services, Mr. Bunch must initiate the process by either calling SSA toll free at 1-800-772-1213 (for TTY call 1-800-325-0778), applying directly online at www.socialsecurity.gov/disabilityssi/apply.html, or by visiting his local Social Security office.

If Mr. Bunch has any other family member (dependents) that may be eligible for benefits, please make sure Social Security is informed so application and payment for dependent benefits is not delayed.

Mr. Bunch is required to apply for Social Security benefits under the terms of Charter Communications, Inc. s LTD Policy and it is important that Mr. Bunch begin this process immediately. Therefore, please initiate Mr. Bunch's application within 45 days from the date of this letter, August 29, 2019, and complete and return the enclosed forms. A return envelope has been provided for his convenience.

Per the terms of the disability Policy, failure to provide proof of filing within the stated timeframe will result in a reduction to his benefit from Liberty Life Assurance Company of Boston equal to an estimated amount of Social Security benefits. Therefore, if he does not file within the 45-day time frame, his benefit will be reduced by an estimated amount as deemed eligible by the Social Security Administration. If proof of filing is subsequently received, this reduction will be refunded to Mr. Bunch.

If Mr. Bunch is approved for Social Security Disability benefits, the disability benefits received by Mr. Bunch from Liberty Life Assurance Company of Boston will be reduced by the amount Mr. Bunch receive from Social Security. In other words, Mr. Bunch will continue to receive the same amount of monthly benefits, but the money will come from two sources. If Mr. Bunch is entitled to retroactive benefits, Mr. Bunch may receive a significant payment from Social Security. This money is essentially money that Liberty Life Assurance Company of Boston advanced to Mr. Bunch while Mr. Bunch was waiting for Social Security s decision, and he must repay it immediately upon our request.

If Mr. Bunch has any questions regarding this letter or the Social Security process, please contact us at the number below.

Sincerely,

Danielle Davis
LTD Specialist 1
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

Attachments:   Advantages of Social Security Disability Benefits Form

2  of  2

Lincoln/Bunch 0494

# Advantages of Social Security Disability Benefits

- **Increased Disability Benefits**
  - ° Though you and your dependents' initial Social Security benefit would be offset from your Long Term Disability payment, your future Social Security cost of living (COLA) increases would not.  Therefore you would maximize your combined benefits because they would increase each year.

- **Increased Retirement Benefits**
  - ° For any period within a year that you are not paying into Social Security (FICA) out of your earnings, zeros are being factored into your earnings record. If found eligible for SSDI for any period of time when there were zeros, they will be excluded from the calculation of future benefits.  As a result, the amount of your eventual Social Security Retirement Benefit could be _substantially higher_.

- **Cost of Living Adjustment (COLA) Raises**
  - ° SSA will provide you and any eligible dependents an increase annually.  These increases will not affect your Long Term Disability benefits.

- **Tax Free Income**
  - ° The majority of Social Security beneficiaries who receive Social Security Disability income are either entirely or partially tax free based on certain criteria set by SSA.

- **Medicare Coverage**
  - ° After you have received Social Security Disability benefits for 24 months, regardless of your age, you also become eligible for Medicare benefits.  This includes Part A Hospital benefits, and Part B Medical benefits, which added to any other health insurance coverage you might have, will increase your overall health insurance protection.
  - ° Once you establish Medicare Eligibility your premiums for any other health insurance you might have could decrease. With Medicare coverage available to help pay medical expenses, such premiums may be adjusted downwards.
  - ° Medicare Part A is at no cost while Medicare Part B has an associated premium. You can access http://www.socialsecurity.gov/medicare/ for more information and costs associated with the program.

- **COBRA Extension**
  - ° If you receive Social Security Disability benefits the length of your COBRA benefits may be extended an additional 11 months.

- **Return To Work Incentives**
  - ° Social Security will provide you opportunities to Return To Work while still paying you disability benefits.

**Lincoln/Bunch 0495**

# SHAKESHAFT & GORMAN LAW FIRM, LLP

1935 Jamboree Dr. | Suite 202 | Colorado Springs, CO 80920
Tel 719.635.5886 | Fax 719.635.0966 | www.shakeshaftlawfirm.com

## FACSIMILE TRANSMISSION

**DATE:**            July 10, 2019

**TO:**              **Lincoln Financial Group**

**FROM:**            Brandy Newton| Paralegal

**PAGES INCLUDING COVER SHEET:**  5

**FAX NUMBER:**      603-559-0490

**REGARDING:**       Mark Bunch

**Comments:**        Claim Number: 8220685

Please see the following correspondence of today's date.

IF YOU DO NOT RECEIVE ALL THE PAGES OR IF ANY PART IS ILLEGIBLE, PLEASE CALL (719) 635-5886.

## NOTICE

THIS MESSAGE IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN PRIVILEGED OR CONFIDENTIAL INFORMATION WHICH IS EXEMPT FROM DISCLOSURE PURSUANT TO APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR IS NOT AN EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY OF THIS MESSAGE TO THE INTENDED RECIPIENT, DISTRIBUTION, COPYING OR OTHER DISSEMINATION OF THE INFORMATION CONTAINED IN THIS COMMUNICATION IS PROHIBITED. PLEASE CONTACT (719) 635-5886 AND RETURN THE ORIGINAL MESSAGE TO SHAKESHAFT LAW FIRM, 1935 JAMBOREE DRIVE, STE. 202, COLORADO SPRINGS, CO 80920.

**Lincoln/Bunch 0496**



## SHAKESHAFT-GORMAN
— LAW FIRM, LLP —

| | | |
|---|---|---|
| Kenneth J. Shakeshaft | • Attorney at Law | **Main Office** |
| Joseph M. Gorman | • Attorney at Law | Shakeshaft - Gorman Law Firm |
| Cindy Maddox | • Paralegal | 1935 Jamboree Drive, Suite 202 |
| Brandy Newton | • Paralegal | Colorado Springs, CO 80920 |

July 10, 2019

Via facsimile: 603-559-0490

Lincoln Financial Group
Attn: Danielle Davis
Charlotte, NC

RE:  Our client:    Mark Bunch
     Claim No.:      8220685
     Charter Communications, Inc.

Dear Ms. Davis,

This is to follow up and provide answers to questions you presented regarding Mr. Bunch's perceived activities.

You inquired as to whether Mr. Bunch was involved with any pawn shops. Mr. Bunch advises he used to own a pawn shop but is no longer engaged in any business with a pawn shop. He is not receiving income from any pawn shop. He has not reported any income on his tax returns in 2017 or 2018 from any pawn shop employment.

You asked as to whether Mr. Bunch is authoring any blogs. Mr. Bunch used to write blogs or articles on survivor related/prepping areas. The last time he was published was sometime in 2016 to the best of his recollection. He has never received any compensation for writing any blogs or articles. He has not written any blogs or articles since the date of his disability.

Please advise as to the current status of Mr. Bunch's payment.

Mr. Bunch does not want to do a direct deposit and would rather receive checks directly through the mail.

Mr. Bunch has signed the Social Security Reimbursement Agreement. This document is attached. We have previously provided you his Workers' Compensation information.

Mr. Bunch has signed the Survivor/Estate Information form which is attached.

PHONE 719.635.5886 - FAX 719.635.0966 - TOLL FREE 1.800.388.5886
WWW.SHAKESHAFTANDGORMANLAW.COM - OFFICE@SHAKESHAFTANDGORMANLAW.COM

**Lincoln/Bunch 0497**

We are working on finalizing the rest of the forms requested.  However, since this matter was approved on June 12, 2019, please advise as to the status of his payment.

Sincerely,

Kenneth J. Shakeshaft
KJS/by
Attachments

**Lincoln/Bunch 0498**



**LINCOLN FINANCIAL GROUP
LIBERTY LIFE ASSURANCE COMPANY OF BOSTON**

**SOCIAL SECURITY/REIMBURSEMENT AGREEMENT**

INSTRUCTIONS: The policy/plan under which you are covered provides that Short Term, Statutory and/or Long Term Disability benefits (herein referred to as "disability benefits") will be reduced by the amount of Social Security benefits which you and your dependents (if applicable) are eligible to receive. This may affect your future disability benefits as well as prior disability benefits which have been issued to you.

The policy/plan also provides that in the event you do not apply for Social Security Disability benefits, your disability benefits will be reduced by the amount of Social Security Disability benefits you and your dependents (if applicable) would be eligible to receive if application had been made. Please review, sign and return this form to our office. We recommend you maintain a copy for your records.

Claimant: Mark Bunch                                                          Date of Birth:

Employer: Charter Communications, Inc.                                 Policy/Plan Sponsor No. 04 - 444809

A) If disability benefits are approved I request that Liberty Life Assurance Company of Boston, now a Lincoln Financial Group company (Liberty Life) pay me my benefit with no reduction for estimated Social Security Disability benefits until Social Security makes a decision. I understand that this may result in an overpayment of disability benefits paid to me if Social Security subsequently awards benefits to me, and I understand that I must repay this overpayment to Liberty Life. In consideration of Liberty Life paying me a disability benefit with no reduction for estimated Social Security benefits until Social Security makes a decision, I agree to the following:

   1) I agree to apply for Social Security Benefits within 45 days of Liberty Life's written request and provide proof of such application.
   2) I agree to comply with the policy/plan provision applicable for appealing a denial, if not awarded and provided proof of such appeal.
   3) I agree to notify Liberty Life immediately if awarded Social Security Benefits.
   4) I authorize Liberty Life to release information concerning Social Security benefits to any employer for administration of my employer sponsored benefits.
   5) If Social Security awards benefits to me, I agree that Liberty Life has a first lien on all such benefits to the extent of any overpayment or debt, and I agree to hold all such Social Security benefits in a trust for the benefit of Liberty Life until the amount of Liberty Life's overpayment has been repaid in full.
   6) I agree to repay Liberty Life in full within the time period specified in my policy/plan provision.

B) Social Security benefits will be estimated if:

   1) I do not sign and return this form to Liberty Life within 45 days of receipt.
   2) I do not apply for Social Security benefits within 45 days of Liberty Life's written request and provide proof of such application, or I have failed to actively pursue my Social Security claim according to the policy/plan provisions.

If I do not repay any overpayment due to Liberty Life in full, I understand Liberty Life will discontinue payment of benefits to me, including payments for insurance premiums and other deductions paid on my behalf, and Liberty Life may withhold future disability benefits until the overpayment is recovered in full. In addition, Liberty Life may also pursue other means permitted by law to collect the overpayment amount owed.

(Insured/Employee signature) _Mark Bunch_

(Address) _____

(Date) _____6-25-17_____

*Please retain a copy for your records or one can be provided upon request.*

**Lincoln/Bunch 0499**

# Survivor / Estate Information Form

*This information is required in the event that any benefits are payable after your death.*

## TO BE COMPLETED BY EMPLOYEE:

| YOUR SPOUSE: | YOUR DOMESTIC PARTNER: |
|---|---|
| Name: | Name: |
| Address: | Address: |
| Telephone Number: | Telephone Number: |

CHILDREN: List ALL children. Use reverse side if necessary.

| Name: | Date of Birth: |
|---|---|
| Address: | |
| Telephone Number: | |

| Name: | Date of Birth: |
|---|---|
| Address: | |
| Telephone Number: | |

| Name: | Date of Birth: |
|---|---|
| Address: | |
| Telephone Number: | |

GUARDIANSHIP: For all children under age 18 listed above:

| Name: |
|---|
| Address: |
| Telephone Number: |

DO YOU HAVE A WILL?   YES____   NO____              DO YOU HAVE A TRUST?   YES____   NO____

ADMINISTRATOR OR EXECUTOR OF YOUR WILL AND/OR YOUR ESTATE:

| Name of Executor or Administrator: | |
|---|---|
| Address: | |
| Telephone Number: | |

The above statements are true and correct to the best of my knowledge and I understand that any person who knowingly, and with intent to injure, defraud, or deceive the Company and/or Plan Sponsor, files a statement or claim containing any false, incomplete, or misleading information may be guilty of a criminal act punishable under law. A photocopy of this form will be as valid as the original.

DATE: _____    EMPLOYEE'S PRINTED NAME: _____

EMPLOYEE'S SIGNATURE: _____

**Lincoln/Bunch 0500**

 

6/24/2019


RE:     Claimant Name        :       Mark Bunch
        Client               :       LIBERTY MUTUAL INSURANCE CO - NH 92
        Referred By          :       Grygiel, Courtney
        Type of Review       :       Disability
        Type of Service      :       LTD
        Claim Number:        :       8220685

**MEDICAL DOCUMENTATION REVIEWED**

I have reviewed all of the documents provided.


| Progress notes | Centura Health | 02/27/18-04/24/19 |
|---|---|---|
| Progress notes | Colorado Springs Neuro Associates | 10/19/18 |
| Progress notes | T. Higginbotham DO, FAADEP | 05/03/18-11/20/18 |
| Progress notes | Parkview Medical Center | 02/13/18 |
| Progress notes | M. Saxerud OD | 11/02/18 |
| IME/IMO/FCE/PCE | D. Helffenstein PhD, CRC | 06/01/18 |
| UR Report | B. Davitt MD | 05/23/19 |
| UR Report | D. Helffenstein PhD, CRC | 03/12/19 |
| Misc | | 04/23/19-06/12/19 & undated |
| ROI | | 10/03/18 |


**SUMMARY OF PEER OUTREACH**

TELECONFERENCE #1:
        1) AP NAME: Dr. Dennis Helffenstein
        2) DATE: 6/19/2019
        3) TIME: 11:48 AM MT
        4) PERSON SPOKEN WITH: Brian
        5) POSITION OF PERSON SPOKEN WITH: Receptionist

SUMMARY OF CONVERSATION: I left a message for the provider to return my call.

TELECONFERENCE #2:
        1) AP NAME: Dr. Dennis Helffenstein
        2) DATE: 6/24/2019

**Lincoln/Bunch 0501**

Page - 2  Claimant Name: Mark Bunch Claim Number: 8220685

> 3) TIME: 1:55 PM MT
> 4) PERSON SPOKEN WITH: Voicemail
> 5) POSITION OF PERSON SPOKEN WITH: N/A

SUMMARY OF CONVERSATION: I left a voicemail message for the provider to return my call.

TELECONFERENCE #3:
> 1) AP NAME: Centura Health Outpatient Rehabilitation Speech Therapy
> 2) DATE: 6/19/2019
> 3) TIME: 11:50 AM MT
> 4) PERSON SPOKEN WITH: Voicemail
> 5) POSITION OF PERSON SPOKEN WITH: N/A

SUMMARY OF CONVERSATION: I left a voicemail message for the provider to return my call.

TELECONFERENCE #4:
> 1) AP NAME: Centura Health Outpatient Rehabilitation Speech Therapy
> 2) DATE: 6/20/2019
> 3) TIME: 2:19 PM MT
> 4) PERSON SPOKEN WITH: Speech Therapist
> 5) POSITION OF PERSON SPOKEN WITH: Voicemail received

SUMMARY OF CONVERSATION: A Speech Therapist (couldn't make out name left on my voicemail) stated that it was their policy that they could not discuss patient information. No information would be provided.

**SUMMARY OF MEDICAL DOCUMENTATION**

An exam by Dr. Saxerud dated 11/2/18 documents the claimant complaining of declining vision again.  The claimant noted trouble with near vision, and his OTC readers were broken.  Double vision was only occasional, depth perception was improving, and stairs were not as difficult.  Vision was 20/20 OU and full range of motility was documented.  Near point break was 8 inches. Final diagnoses included post-concussional syndrome, visual distortions of shape and size, diplopia, and dizziness/giddiness.

**QUESTION**

**1. Provide a description of the claimant's current impairments and if they have changed since your last review on 5/31/2019, and outline how any impairment translates to restrictions and limitations. Please include the expected duration for any supported restrictions.**

There is no change.  At the time of the last review on 5/31/19, ophthalmologic diagnoses

**Lincoln/Bunch 0502**

Page - 3  Claimant Name: Mark Bunch Claim Number: 8220685

supported by the records included convergence insufficiency, vertical heterophoria, and myopic astigmatism. The medical evidence supported the claimant as having convergence insufficiency as manifested by remote near point of convergence causing functional impairment from 8/15/18 to present. As such, functional impairment translated to restrictions on the length of time the claimant would be required to read or use a computer. The claimant would be limited to performing these tasks for 15 minutes at a time followed by a 15 minute break from such activities throughout an 8 hour day.  It was noted that restrictions were not supported beyond the present without reassessment as the claimant's most recent records provided was from 11/21/18, over six months ago.

Upon review, the only additional ophthalmologic information provided was from a note by Dr. Saxerud dated 11/2/18 which supported a remote near point of convergence.  No more recent information is provided to change the outcome of prior review.

**2. Please review the treatment plan. Please indicate whether or not it is consistent with the current standard of care. If not, please provide evidence based documentation to support your opinion.**

Optometric vision therapy for treatment of convergence insufficiency secondary to traumatic brain injury is among current standard of care.

**3. Please contact tx provider(s): Dr. Dennis Helffenstein PH 720-529-0130 FX: 720-529-1099 Centura Health outpatient Rehabilitation Speech Therapy PH 719-776-5200 FX 719-776-5392, In order to assist the claimant in accommodating them back to work in a safe manner when possible please contact the treating provider(s) please clarify the information reviewed and discuss any factors that are supporting an inability to work that may not be contained in the medical records to help us understand reason for disability. During the conversation, the employee's functional abilities should be discussed for return to work plan/goals. Document information obtained from the call and resulting updates if applicable in the reasonably supported medical necessity for restrictions and limitations and their timeframes.**

See documentation of provider contact attempts above.

CONFLICT OF INTEREST:

*I certify that I have no relationship or affiliation with the beneficiary of this independent review or a significant past or present relationship with the Attending Provider and/or the treatment facility.  I further certify that I have no familial or material professional or business relationship or incentive to promote the use of a certain product or service associated with the review of this case.  I further certify that I have no direct or indirect financial incentive for a particular determination or ownership interest of greater than 5% between any affected parties.*

*This attestation certifies that the peer reviewer named below has the appropriate scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review and has current, relevant experience and/or knowledge to render a determination for the case under review.*

**Lincoln/Bunch 0503**

Page - 4  Claimant Name: Mark Bunch Claim Number: 8220685

Sincerely,

Bradley Davitt, M.D.
Board Certified: American Board of Ophthalmology
Fellowship, Pediatric Ophthalmology & Adult Strabismus
Professor of Ophthalmology, Saint Louis University Health Sciences Center
Associate Professor of Pediatrics, Cardinal Glennon Children's Medical Center
American Academy of Ophthalmology
American Association for Pediatric Ophthalmology and Strabismus
Christian Medical and Dental Society
Christian Ophthalmology Society
Missouri Society for Eye Physicians and Surgeons
St. Louis Ophthalmology Society

*MLS attests to the fact that there is no conflict of interest with this review MLS attests that its compensation is not dependent on the specific outcome of this review.  All opinions in this report are solely the opinions of the author. All opinions are advisory only, independently developed by the author and are based upon a reasonable degree of medical certainty and evidence-based medical concepts, considering the data available at the time of this report.*

**Lincoln/Bunch 0504**

**Invoice**    **53991-1**

**Date of Invoice**  6/24/2019

**MLS Group of Companies**

P.O. Box 492417
Redding CA  96049
248-945-9001  Fax:  248-356-6757

LIBERTY MUTUAL INSURANCE CO - NH 92
P.O. Box 1525
Dover, NH 03821

**Attention:**
Courtney Grygiel

| | |
|---|---|
| **Case ID:** | 8220685 |
| **Referral ID:** | 53991 |
| **Name:** | Mark Bunch |
| **Employer:** | |
| **Physician:** | Bradley Davitt |
| **Specialty:** | Ophthalmology |
| **Svc Date:** | 6/24/2019 |

| Item | Rate |
|---|---|
| Peer Review | $577.50 |

| | |
|---|---|
| **Invoice Total** | $577.50 |
| **Receipt Total** | $0.00 |
| **Invoice Balance** | $577.50 |

Please visit our new web-site address located at www.mlsgroupllc.com

MLS Tax ID #: 38-3341904

Please make checks payable to:
MLS Group of Companies

**Lincoln/Bunch 0505**



## CONFIDENTIAL INVESTIGATIVE REPORT
**Monday, June 17, 2019**

| | | |
|---|---|---|
| **ATTN: Danielle Davis**<br>**Lincoln Financial Group**<br>**Group Benefits Disability Claims**<br>**PO Box 7206**<br>**London, KY 40742** | **YOUR FILE NO.** | 8220685 |
| | **OTHER FILE NO.** | Davis, D |
| | **OUR FILE NO.** | 201906-2133.1 |
| | **INSURED/EMPLOYER** | Charter Communications, Inc. |
| | **ASSIGNMENT OPEN** | 6/12/2019 |
| **TYPE OF CLAIM** | Disability (DI) | |
| **REPORTED INJURY** | Not Provided | |
| **DATE OF LOSS** | 2/14/2018 | |
| **INVESTIGATOR** | Robert K. Morando | |
| **DATES OF INVESTIGATION** | June 17, 2019 | |

| CLAIMANT | |
|---|---|
| **NAME:** | **Mark Bunch** |
| **ADDRESS:** | |
| **DOB:** | |

**PHOTO IDENTIFICATION**

**SUMMARY**

A search was completed using but not limited to database sources Google, Bing, Facebook, Pinterest, Instagram, LinkedIn, Myspace, Twitter, and YouTube. **The following matches were located for the subject.**

**Facebook Royal Gorge Gun and Pistol Club, Inc.**
**Facebook Lincoln Park Pawn & Auto**

A Facebook profile was located for the subject's business Royal Gorge Gun and Pistol Club, Inc. with the most recent post of May 23, 2017. Limited activity and photos of the subject were noted. No information on the subject's loss was located.

A Facebook profile was located for the subject's business Lincoln Park Pawn & Auto with the most recent post of March 14, 2010. No information on the subject's loss was located.

9485 Regency Square Blvd, Suite 200 | Jacksonville, FL 32225 | 888-932-7364 | http://coventbridge.com

**Lincoln/Bunch 0506**

Name: Mark Bunch                                                                                    Page: 2
Claim Number: 8220685

A Search of the Colorado Secretary of States shows the subject the Registered Agent for Royal Gorge Gun and Pistol Club Inc.
.

A Search of the Colorado Secretary of States shows the subject the Registered Agent for Lincoln Park Pawn LLC                                                                .

A search of the Fremont County, CO County Clerk produced no records for the subject.

A search of the city of Canon City, CO City Clerk produced no records for the subject.

Search criteria included variations of names, places of residence, telephone numbers and other information.

| ANALYSIS |
| --- |

| MAPPING | • A search of Google Maps produced a satellite image and a map of the area surrounding the subject's most current residence |
| DIRECTORY ASSISTANCE | • The provided phone number _____ is a Verizon Wireless mobile registered in West Chester, Ohio. |
| SOCIAL NETWORKING | • The subject was located on Facebook. |

**Lincoln/Bunch 0507**

Name: Mark Bunch                                                                          Page: 3
Claim Number: 8220685

<table>
<tr><td>SOURCES</td></tr>
</table>

<u>Mapping</u>

A search of Google Maps produced a satellite image and a map of the area
surrounding the subject's provided address
.

**Lincoln/Bunch 0508**

Name: Mark Bunch                                                                 Page: 4
Claim Number: 8220685



Directory Assistance

- The provided phone number                    is a Verizon Wireless mobile registered in West Chester, Ohio.



**Lincoln/Bunch 0509**

Name: Mark Bunch

Claim Number: 8220685

Page: 5

<u>Social Media</u>

<u>Facebook</u>
No profiles associated with the subject were located.
https://www.facebook.com/royalgorgegunclub/



**Lincoln/Bunch 0510**

Name: Mark Bunch                                                                                    Page: 6
Claim Number: 8220685



**Lincoln/Bunch 0511**

Name: Mark Bunch                                                                    Page: 7
Claim Number: 8220685



Name: Mark Bunch                                                           Page: 8
Claim Number: 8220685





**Lincoln/Bunch 0513**

Name: Mark Bunch                                                    Page: 9
Claim Number: 8220685



Name: Mark Bunch                                                                                       Page: 10
Claim Number: 8220685



Name: Mark Bunch                                                                    Page: 11
Claim Number: 8220685

**Facebook**

The following profile associated with the subject was located.

https://www.facebook.com/Lincoln-Park-Pawn-Auto-409965279288/



**Lincoln/Bunch 0516**

Name: Mark Bunch

Page: 12

Claim Number: 8220685





**LinkedIn**

No profiles associated with the subject were located.

**YouTube**

No profiles associated with the subject were located.

**Vimeo**

No profiles associated with the subject were located.

**Lincoln/Bunch 0517**

Name: Mark Bunch                                                                           Page: 13
Claim Number: 8220685

**Myspace**
No profiles associated with the subject were located.

**Instagram**
No profiles associated with the subject were located.

**Twitter**
No profiles associated with the subject were located.

**Pinterest**
No profiles associated with the subject were located.

**ETSY**
No profiles associated with the subject were located.

**Indeed**
No profiles associated with the subject were located.

**Soundcloud**
No profiles associated with the subject were located.

**Flickr**
No profiles associated with the subject were located.

**Tumblr**
No profiles associated with the subject were located.

### *(Other Online Sources)*

http://www.royalgorgegunclub.org/index.html



**Lincoln/Bunch 0518**

Name: Mark Bunch                                                                   Page: 14
Claim Number: 8220685



**Lincoln/Bunch 0519**

Name: Mark Bunch

Page: 15

Claim Number: 8220685



Lincoln/Bunch 0520

Name: Mark Bunch

Claim Number: 8220685

Page: 16



Lincoln/Bunch 0521

Name: Mark Bunch                                                                 Page: 17
Claim Number: 8220685



**Lincoln/Bunch 0522**

Name: Mark Bunch                                                                                     Page: 18
Claim Number: 8220685

http://www.royalgorgegunclub.org/pdf/2018%20Meeting%20Minutes.pdf



Greetings Fellow Gun Club Members,

This past Saturday Jan 13th we held our annual meeting with 29 members present. The following items were discussed, nominated and approved unanimously by all in attendance.

Electronic Gates are fully operational for THOSE MEMBERS who have completed gate training/re-activation process. If you haven't been thru gate training/re-activation then your gate card will not work and you will not have access to the any of our ranges until such time as you come by to make an appointment. There are 6 of you with waivers, everyone else bring cash!

We have purchased internal heating elements for gate openers and will be getting them installed as soon as weather permits. Projects for our upcoming work days of April 7th, and May 12th are insulating our new building, hanging ceiling fans, making target frames, range clean up, etc... I have a number of people signed up for both days but we would love to have MORE OF YOU OUT there show up to help.

For those of you who have been patiently waiting on me/us to get our trap range back into operation, that will be happening in a couple of months and don't worry everyone who paid for our trap range will be given an entire year for free. Everyone else will have to pay $20 and we will have a couple of training days on how to operate our new Atlas 250 with wobble base. YES this is a direct result of our fund raising efforts for the NRA...HINT

I have also attached a schedule of events for the upcoming year since we were all too busy last year with the gate apocalypse to run any events, hopefully everyone will pay attention to what transpires around them and what transpires around our cool new gates so John, Jon, Donna, Mike, Evan, Mike, Mike, Bill, Jerry, Larry, Bill, Jock, Ron and whoever else I may have missed can actually come out to the range and shoot this year!!! Lol

**Lincoln/Bunch 0523**

Name: Mark Bunch                                                                                                      Page: 19
Claim Number: 8220685

One of the items brought up at our annual meeting is the LACK OF HELP that the majority of members provide to the club. IE...the same 10 to 15 people who are always willing to help are also the ONLY MEMBERS to help. Upon calling around to approximately a dozen other clubs in the state of Colorado, it was discovered that every single one of the ones we called require all members to either come out to help on work days OR BUY THEIR WAY OUT of doing so. The average price at those other clubs to buy your way out of work days was a low of $40 to a high of $125.

WE, meaning the club members in attendance with the Executive Board have decided upon a $10 labor fee to be collected up front ON ALL memberships, regardless of whether you are a senior, active duty military, family OR LIFE member. When you renew your dues for this coming year, which you may do so IMMEDIATELY since we always need money early to plan our work days, your dues are now $10 higher. IF YOU ARE ABLE, WILLING and you actually SHOW UP for a work day, we, meaning me, will gladly refund your $10 labor buy out dues... ONCE AGAIN...ALL MEMBER DUES HAVE GONE UP $10 PER YEAR REGARDLESS OF WHAT KIND OF MEMBERSHIP YOU HAVE... IF YOU show up to a work day, we will REFUND your $10. That sounds pretty clear to me so please read it a couple of times if you need to, lol...

OUR annual Friends of NRA dinner is JUST AROUND the corner, less than one month away and I still need 350 of you to make an effort to come buy a ticket PLEASE... YOU get the benefit of OUR running around and busting our ass trying to raise as much money as possible and frankly the majority of you are pissing me off by not making an effort to support this event..... That is a HINT... lol

Our dinner is FRIDAY, FEBRUARY 9th, and some of you might have received a mailer that incorrectly has it listed as Saturday February 9th. My fault as I am the one who proof reads everything and I simply missed it. ONCE AGAIN, it is FRIDAY February 9th at the Holy Cross Abbey Event Center and a good portion of what you spend is tax deductible AND we get to keep half of the money here in Fremont County. For those of you torn between supporting us or some other event feel free to ask any of the people who run those other events how much money they have donated to local shooting sports OR how much of that money goes to help defend people's 2nd Amendment rights.... After you stop laughing at their replies to those questions, feel free to ask if you can come shoot on any of their ranges sometime.... If that doesn't make things crystal F'ing clear to you then I would like to talk to you about a couple of Bridges that I have for sale in New Jersey, lol...

Special thanks to the following members for coming by Lincoln Park Pawn and purchasing tickets to our dinner event February 9th. Roger Fuller, Ray Hart, Jon and Donna Hoff, Cecil Reaves, Karl Leeson, Paul Donovan, Justin Scott, Robert Drake, Les Payne, Dave Shipman, Dan Carroll, Dave Edgar, Ken Kile, Harvey Barnhart.

Congratulations to Myra Smallwood of Remax Properties for being our new Classroom Sponsor. I spoke with her a few days ago and was very impressed with her knowledge and business savvy. She is a proud supporter of OUR 2nd amendment rights and her family are also hunters as well so don't hesitate to call her with your real estate needs.

Have you bought your FNRA tickets yet? If not, get your ass down here please!!

Sincerely,

**Mark Bunch/President Royal Gorge Gun Club/Chairman Fremont/Chaffee County Friends of NRA**

www.royalgorgegunclub.org
lincolnparkpawn@hotmail.com

**Lincoln/Bunch 0524**

Name: Mark Bunch                                                                             Page: 20
Claim Number: 8220685

## Changes to Membership Requirements

There is a membership cap now in place! If you are a current member be sure to renew early to avoid being put on the waiting list. If you have any questions, please call John, Nick or Mark at 719-276-3030.

ALL NEW MEMBERS wanting to join the RGGC will have to go thru a criminal background check **PRIOR** to being accepted for membership which is an additional $15.

Existing members who let their memberships lapse will have to pay an additional $15, undergo a background check and pay the $25 NRA insurance dues again, **provided** we have not met our cap; otherwise you will be placed on the waiting list.

Click here to renew your membership or become a new member.

At the January 2018 annual meeting, WE, meaning the club members in attendance with the Executive Board have decided upon a $10 labor fee to be collected up front ON ALL memberships, regardless of whether you are a senior, active duty military, family OR LIFE member. When you renew your dues for this coming year, which you may do so IMMEDIATELY since we always need money early to plan our work days, your dues are now $10 higher. IF YOU ARE ABLE, WILLING and you actually SHOW UP for a work day, we, meaning me, will gladly refund your $10 labor buy out dues... **ONCE AGAIN: ALL MEMBER DUES HAVE GONE UP $10 PER YEAR REGARDLESS OF WHAT KIND OF MEMBERSHIP YOU HAVE... IF YOU show up to a work day, we will REFUND your $10.**

**Lincoln/Bunch 0525**

Name: Mark Bunch                                                                                    Page: 21
Claim Number: 8220685

## Training

Classes to be offered are:

- Concealed Carry--1 day (Classroom instruction and Live Fire Range Time) 100 rounds ammunition, 3, 7, 15 yards

- Beginner Pistol--2 days (Classroom instruction and Live Fire Range Time) 250 rounds ammunition 3, 7, 15, 25 yards

- Intermediate Pistol--2 days (Classroom instruction and Live Fire Range Time) 400 rounds ammunition 3, 7, 15, 25, 35, 45, 50 yards

- Combat Pistol Advanced--2 days (Classroom instruction and Live Fire Range Time) 500 rounds ammunition 3, 7, 15, 25, 35, 45, 50, 75, 85 yards

- Combat Shotgun--1 day (Classroom instruction and Live Fire Range Time) 100 rounds birdshot, 20 slugs, 10 00-Buck, 3, 7, 15, 25, 50, 100 yards

- Urban Rifle--2 days (Classroom instruction and Live Fire Range Time) 300 rounds, 7, 25, 50, 100, 250 yards

- Urban Rifle Advanced--2 days (Classroom instruction and Live Fire Range Time) out to 600 yards

- Precision Rifle--2 days (Classroom instruction and Live Fire Range Time) 100 rounds, 100 to 700 yards

- Long Range Rifle--3 days (Classroom instruction and Live Fire Range Time) 300 rounds 300, 400, 500, 600, 700, 900, 1000, 1100, 1200, 1300 yards

- Tactical Long Range Rifle--2 days (Classroom instruction and Live Fire Range Time) 300 rounds, 300, 400, 500 yards moving targets, 600 yards to 1 mile

- Precision Rifle Night Vision Class 2 days (Classroom instruction and Live Night Fire Range Time) 2 days/nights, 2 pm to 10 pm, 200 rounds, unknown distances

**Lincoln/Bunch 0526**

Name: Mark Bunch                                                    Page: 22
Claim Number: 8220685



**DOMAIN**

https://www.whois.com/whois/royalgorgegunclub.org

**Lincoln/Bunch 0527**

Name: Mark Bunch                                                                                           Page: 23
Claim Number: 8220685



## Registrant Contact

| | |
|---|---|
| Organization: | Royal Gorge Gun & Pistol Club, LLC |
| State: | CO |
| Country: | US |

## Raw Whois Data

```
Domain Name: ROYALGORGEGUNCLUB.ORG
Registry Domain ID: D160689120-LROR
Registrar WHOIS Server: whois.godaddy.com
Registrar URL: http://www.whois.godaddy.com
Updated Date: 2017-03-20T03:13:17Z
Creation Date: 2010-11-17T00:55:57Z
Registry Expiry Date: 2020-11-17T00:55:57Z
Registrar Registration Expiration Date:
Registrar: GoDaddy.com, LLC
Registrar IANA ID: 146
Registrar Abuse Contact Email: abuse@godaddy.com
Registrar Abuse Contact Phone: +1.4806242505
Reseller:
Domain Status: clientDeleteProhibited https://icann.org/epp#clientDeleteProhibited
Domain Status: clientRenewProhibited https://icann.org/epp#clientRenewProhibited
Domain Status: clientTransferProhibited https://icann.org/epp#clientTransferProhibi
Domain Status: clientUpdateProhibited https://icann.org/epp#clientUpdateProhibited
Registrant Organization: Royal Gorge Gun & Pistol Club, LLC
Registrant State/Province: CO
Registrant Country: US
Name Server: NS73.DOMAINCONTROL.COM
Name Server: NS74.DOMAINCONTROL.COM
DNSSEC: unsigned
URL of the ICANN Whois Inaccuracy Complaint Form https://www.icann.org/wicf/)
>>> Last update of WHOIS database: 2019-06-17T16:19:54Z <<<

For more information on Whois status codes, please visit https://icann.org/epp

Access to Public Interest Registry WHOIS information is provided to assist persons

The Registrar of Record identified in this output may have an RDDS service that can
```

**Lincoln/Bunch 0528**

Name: Mark Bunch

Page: 24

Claim Number: 8220685

https://uscorporates.com/business/co/caon-city/royal-gorge-gun-and-pistol-club-inc/1460546



Lincoln/Bunch 0529

Name: Mark Bunch                                                                 Page: 25
Claim Number: 8220685

**Business Licensing**

https://www.sos.state.co.us/biz/BusinessEntityDetail.do?quitButtonDestination=BusinessE
ntityResults&nameTyp=ENT&masterFileId=19921045518&entityId2=19921045518&fileId=19
921045518&srchTyp=ENTITY

## Summary

**Details**

| Name | ROYAL GORGE GUN AND PISTOL CLUB INC. | | |
|---|---|---|---|
| Status | Good Standing | Formation date | 05/04/1992 |
| ID number | 19921045518 | Form | Nonprofit Corporation |
| Periodic report month | December | Jurisdiction | Colorado |
| Principal office street address | | , United States | |
| Principal office mailing address | n/a | | |

**Registered Agent**

| Name | Mark Bunch | |
|---|---|---|
| Street address | | , United States |
| Mailing address | States | , United |

https://www.sos.state.co.us/biz/BusinessEntityDetail.do?quitButtonDestination=BusinessE
ntityResults&nameTyp=ENT&masterFileId=20091356327&entityId2=20091356327&fileId=20
091356327&srchTyp=ENTITY

## Summary

**Details**

| Name | Lincoln Park Pawn LLC | | |
|---|---|---|---|
| Status | Good Standing | Formation date | 07/02/2009 |
| ID number | 20091356327 | Form | Limited Liability Company |
| Periodic report month | December | Jurisdiction | Colorado |
| Principal office street address | | , United States | |
| Principal office mailing address | | , United States | |

**Registered Agent**

| Name | Mark Bryan Bunch |
|---|---|
| Street address | United States |
| Mailing address | United States |

**Lincoln/Bunch 0530**

Name: Mark Bunch                                                                Page: 26
Claim Number: 8220685

**Email**

FREEDOMRUNNER@MSN.COM

FREEDOMRUNNER69@COMCAST.NET

HEALTHEHORAN50@HOTMAIL.COM

JPOWELL@TWCNY.RR.COM

MBUNCH@PDIPUEBLO.ORG

MARK@PDIPUEBLO.COM

BUNCHM@QWEST.NET

NFO@PDIPUEBLO.ORG

This report does not guarantee the accuracy or truthfulness of the information as to the subject of the investigation, but only that it is accurately copied from publicly available sources. Information generated as a result of identity theft, including evidence of criminal activity, may be inaccurately associated with the consumer who is the subject of the report.

| Enclosures |
|---|

NCR

**END OF REPORT**

**Lincoln/Bunch 0531**

06/19/2019   14:16   7196350966                                                PAGE 01/12

# SHAKESHAFT & GORMAN LAW FIRM, LLP

1935 Jamboree Dr. | Suite 202 | Colorado Springs, CO 80920
Tel 719.635.5886 | Fax 719.635.0966 | www.shakeshaftlawfirm.com

### FACSIMILE TRANSMISSION

**DATE:**            June 19, 2019

**TO:**              **Lincoln Financial Group – Danielle Davis**

**FROM:**            Brandy Newton| Paralegal

**PAGES INCLUDING COVER SHEET:**       12

**FAX NUMBER:**      603-559-0490

**REGARDING:**       Mark Bunch

**Comments:**        Claim Number: 8220685

Please see the following correspondence of today's date.

IF YOU DO NOT RECEIVE ALL THE PAGES OR IF ANY PART IS ILLEGIBLE, PLEASE CALL (719) 635-5886.

### NOTICE

THIS MESSAGE IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN PRIVILEGED OR CONFIDENTIAL INFORMATION WHICH IS EXEMPT FROM DISCLOSURE PURSUANT TO APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR IS NOT AN EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY OF THIS MESSAGE TO THE INTENDED RECIPIENT, DISTRIBUTION, COPYING OR OTHER DISSEMINATION OF THE INFORMATION CONTAINED IN THIS COMMUNICATION IS PROHIBITED. PLEASE CONTACT (719) 635-5886 AND RETURN THE ORIGINAL MESSAGE TO SHAKESHAFT LAW FIRM, 1935 JAMBOREE DRIVE, STE. 202, COLORADO SPRINGS, CO 80920.

**Lincoln/Bunch 0532**



**SHAKESHAFT-GORMAN**
— LAW FIRM, LLP —

| | | | |
|---|---|---|---|
| Kenneth J. Shakeshaft | • Attorney at Law | | **Main Office** |
| Joseph M. Gorman | • Attorney at Law | | Shakeshaft - Gorman Law Firm |
| Cindy Maddox | • Paralegal | | 1935 Jamboree Drive, Suite 202 |
| Brandy Newton | • Paralegal | | Colorado Springs, CO 80920 |

June 19, 2019

Via facsimile: 603-559-0490

Lincoln Financial Group
Attn: Danielle Davis
Charlotte, NC

RE:    Our client:    Mark Bunch
       Claim No.:     8220685
       Charter Communications, Inc.

Dear Ms. Davis,

Regarding the above claim of Mark Bunch, I am providing information for Lincoln Life regarding Mr. Bunch's Social Security disability status and Workers' Compensation status.

Mr. Bunch has filed for Social Security Disability. I attach a copy of his application. He has not yet received a decision on his initial application.

Mr. Bunch did have a Workers' Compensation claim arising out of the incident which caused his disability. I attach a copy of the Final Admission of Liability from the Workers' Compensation carrier dated November 7, 2018.

Mr. Bunch objected to the Final Admission of Liability and eventually a settlement was reached with the Workers' Compensation carrier regarding his claim for Workers' Compensation benefits for disability, permanent disability and medical. I attach a copy of the Workers' Compensation Settlement Agreement of Mr. Bunch.

Please advise as to what further information you folks need to get this finalized for payment to Mr. Bunch.

Sincerely,

Kenneth J. Shakeshaft
KJS/bn
Attachments

PHONE 719.635.5886 - FAX 719.635.0966 - TOLL FREE 1.800.383.5886
WWW.SHAKESHAFTANDGORMANLAW.COM - OFFICE@SHAKESHAFTANDGORMANLAW.COM

**Lincoln/Bunch 0533**

~~06/19/2019   14:16~~   /196350966

Form **SSA-16** (06-2018) UF
Discontinue prior editions
Social Security Administration

Page 1 of 7
OMB No. 0960-0618

## APPLICATION FOR DISABILITY INSURANCE BENEFITS

(Do not write in this space)

I apply for a period of disability and/or all insurance benefits for which I am eligible under Title II and Part A of Title XVIII of the Social Security Act, as presently amended.

| 1. | **PRINT** your name | FIRST NAME, MIDDLE INITIAL, LAST NAME |
| | | Mark B Bunch |

| 2. | Enter your Social Security Number | 521251291 |

| 3. | Check (X) whether you are | ☐ Female   ☒ Male |

Answer question 4 if English is not your preferred language.  Otherwise, go to item 5.

| 4. | Enter the language you prefer to:   speak English    write English |

| 5. | (a) Enter your date of birth | 9-17-1963 |
| | (b) Enter name of city and state or foreign country where you were born. | Denver Colorado |
| | (c) Was a public record of your birth made before you were age 5? | ☐ Yes   ☐ No   ☐ Unknown |
| | (d) Was a religious record of your birth made before you were age 5? | ☐ Yes   ☐ No   ☐ Unknown |

| 6. | (a) Are you a U.S. citizen? | ☒ Yes   ☐ No |
| | | (If "Yes," go to item 7)   (If "No," answer (b)) |
| | (b) Are you an alien lawfully present in the U.S.? | ☐ Yes   ☐ No |
| | | (If "Yes," answer (c))   (If "No," go to item 7) |
| | (c) When were you lawfully admitted to the U.S.? | |

| 7. | (a) Enter your name at birth if different from item (1) | |
| | (b) Have you used any other names? | ☐ Yes   ☐ No |
| | | (If "Yes," answer (c))   (If "No," go to item 8) |
| | (c) Other name(s) used. | |

| 8. | (a) Have you used any other Social Security number(s)? | ☐ Yes   ☐ No |
| | | (If "Yes," answer (b))   (If "No" go to item 9) |
| | (b) Enter Social Security number(s) used. | |

| 9. | When do you believe your condition(s) became severe enough to keep you from working (even if you have never worked)? | February 13th, 2018 |

| 10. | (a) Have you (or has someone on your behalf) ever filed an application for Social Security benefits, a period of disability under Social Security, Supplemental Security Income, or hospital or medical insurance under Medicare? | ☐ Yes   ☒ No   ☐ Unknown |
| | | (If "Yes," answer (b) and (c))   (If "No," or "Unknown," go to item 11) |
| | (b) Enter name of person on whose Social Security record you filed the other application. | |
| | (c) Enter Social Security Number of person named in (b).  *If unknown, check this block.* ☐ Unknown | |

**Lincoln/Bunch 0534**

06/19/2019   14:16    7196350966

Form **SSA-16** (06-2018) UF

Page 2 of 7

| 11. | (a) Were you in the active military or naval service (including Reserve or National Guard active duty or active duty for training) after September 7, 1939 and before 1968? | ☐ Yes (If "Yes," answer (b) and (c)) | ☐ No (If "No," go to item 12) |
|---|---|---|---|
| | (b) Enter dates of service | FROM: (Month, Year) | TO: (Month, Year) |
| | (c) Have you ever been (or will you be) eligible for a monthly benefit from a military or civilian Federal agency? (Include Veteran's Administration benefits only if you waived military retirement pay.) | ☐ Yes | ☐ No |
| 12. | Did you or your spouse (or prior spouse) work in the railroad industry for 5 years or more? | ☐ Yes | ☐ No |
| 13. | (a) Do you have Social Security credits (for example, based on work or residence) under another country's Social Security System? | ☐ Yes (If "Yes," answer (b)) | ☐ No (If "No," go to item 14) |
| | (b) List the country(ies): | | |
| 14. | (a) Are you entitled to, or do you expect to be entitled to, a pension or annuity (or a lump sum in place of a pension or annuity) based on your work after 1956 not covered by Social Security? | ☐ Yes (If "Yes," answer (b) and (c)) | ☐ No (If "No," go to item 15) |
| | (b) ☐ I became entitled, or expect to become entitled, beginning | MONTH | YEAR |
| | (c) ☐ I became eligible, or expect to become eligible, beginning | MONTH | YEAR |
| | I AGREE TO PROMPTLY NOTIFY the Social Security Administration if I become entitled to a pension or annuity based on my employment not covered by Social Security, or if such pension or annuity stops. | | |
| 15. | (a) Have you ever been married? | ☐ Yes (If "Yes," answer (b)) | ☐ No (If "No," go to item 16) |

(b) Give the following information about your current marriage. If not currently married, write "None." None        (If "None," go on to item 15(c))

| Spouse's name (including maiden name) | When (Month, day, year) | Where (Name of City and State) |
|---|---|---|
| Marriage performed by: ☐ Clergyman or public official ☐ Other (Explain in Remarks) | Spouse's date of birth (or age) | Spouse's Social Security Number (If none or unknown, so indicate) |

(c) Enter information about any other marriage if you:

- Had a marriage that lasted at least 10 years; or

- Had a marriage that ended due to the death of your spouse, regardless of duration; or

- Were divorced, remarried the same individual within the year immediately following the year of the divorce, and the combined period of marriage totaled 10 years or more. If none, write "None." None_____ Go on to item 15 (d) if you have a child(ren) who is under age 16 or disabled or handicapped (age 16 or over and disability began before age 22) and you are divorced from the child's other parent who is now deceased and the marriage lasted less than 10 years.

| Spouse's name (including maiden name) | When (Month, day, year) | Where (Name of City and State) |
|---|---|---|
| How marriage ended | When (Month, day, year) | Where (Name of City and State) |
| Marriage performed by: ☐ Clergyman or public official ☐ Other (Explain in Remarks) | Spouse's date of birth (or age) | Date of spouse's death | Spouse's Social Security Number (If none or unknown, so indicate) |

**Lincoln/Bunch 0535**

Form **SSA-16** (06-2018) UF                                                        Page 3 of 7

15. (d) Enter information about any marriage if you:

- Have a child(ren) who is under age 16 or disabled or handicapped (age 16 or over and disability began before age 22); and

- Were married for less than 10 years to the child's mother or father, who is now deceased; and

- The marriage ended in divorce

    If none, write "None."   None

| Spouse's name (including maiden name) | When (Month, day, year) | Where (Name of City and State) |
|---|---|---|
| Date of divorce (Month, day, year) | Where (Name of City and State) | |
| Marriage performed by:<br>☐ Clergyman or public official<br>☐ Other (Explain in Remarks) | Spouse's date of birth (or age) | Date of spouse's death | Spouse's Social Security Number (If none or unknown, so indicate) |

**Use the "REMARKS" space on page 5 for marriage continuation or explanation.**

16. If your claim for disability benefits is approved, your children (including adopted children, and stepchildren) or dependent grandchildren (including stepgrandchildren) may be eligible for benefits based on your earnings record.

List below: FULL NAME OF ALL such children who are now or were in the past 12 months UNMARRIED and:

- UNDER AGE 18
- AGE 18 TO 19 AND ATTENDING ELEMENTARY OR SECONDARY SCHOOL FULL-TIME
- DISABLED OR HANDICAPPED (age 18 or over and disability began before age 22)

| | |
|---|---|

17. (a) Did you have wages or self-employment income covered under Social Security in all years from 1978 through last year?   ☐ Yes   ☐ No
(If "Yes," go to item 18)   (If "No," answer (b))

(b) List the years from 1978 through last year in which you did not have wages or self-employment income covered under Social Security.   1978

18. Enter below the names and addresses of all the persons, companies, or Government agencies for whom you have worked this year and last year. IF NONE, WRITE "NONE" BELOW AND GO TO ITEM 19.

| NAME AND ADDRESS OF EMPLOYER (If you had more than one employer, please list them in order beginning with your last (most recent) employer) | Work Began | | Work Ended (If still working show "Not Ended") | |
|---|---|---|---|---|
| | MONTH | YEAR | MONTH | YEAR |
| Charter Communications | January | 2016 | Not Ended | Not Ended |
| | | | | |
| | | | | |

**(If you need more space, use "Remarks".)**

**Lincoln/Bunch 0536**

06/19/2019  14:16    7196350966

PAGE 06/12

Form **SSA-16** (06-2018) UF

Page 4 of 7

| 19. | Complete item 19 even if you were an employee. | | |
|---|---|---|---|
| | (a) Were you self-employed this year or last year? | | ☐ Yes ☐ No (If "Yes," answer (b)) (If "No," go to item 20) |
| | (b) Check the year (or years) you were self-employed | In what type of trade/business were you self-employed? (For example, storekeeper, farmer, physician) | Were your net earnings from the trade or business $400 or more? (Check "Yes" or "No") |
| | ☐ This year | | |
| | ☐ Last year | | ☐ Yes ☐ No |
| 20. | (a) How much were your total earnings last year? Count both wage and self-employment income. (If none, write "None.") | | Amount $   103,698.71 |
| | (b) How much have you earned so far this year? (If none, write "None.") | | Amount $   49,057.97 |
| 21. | (a) Are you still unable to work because of your illnesses, injuries, or conditions? | | ☒ Yes ☐ No (If "Yes," go to item 22) (If "No," answer (b)) |
| | (b) Enter the date you became able to work. | | MONTH, DAY, YEAR |
| 22. | Are your illnesses, injuries, or conditions related to your work in any way? | | ☒ Yes ☐ No |
| 23. | Are you blind or do you have low vision even with glasses or contacts? | | ☒ Yes ☐ No |
| 24. | (a) Have you filed, or do you intend to file, for any other public disability benefits (including workers' compensation, Black Lung benefits and SSI)? | | ☐ Yes ☐ No (If "Yes," answer (b)) (If "No," to item 25) |
| | (b) The other public disability benefit(s) you have filed (or intend to file) for is (Check as many as apply): | | |
| | ☐ Veterans Administration Benefits          ☐ Welfare | | |
| | ☐ Supplemental Security Income          ☐ Other  (If "Other," complete a Workers' Compensation/Public Disability Benefit Questionnaire) | | |
| 25. | (a) Did you receive any money from an employer(s) on or after the date in item 9 when you became unable to work because of your illnesses, injuries, or conditions?  If "Yes", give the amounts and explain in "Remarks". | | ☐ Yes ☐ No Amount $ _____ |
| | (b) Do you expect to receive any additional money from an employer, such as sick pay, vacation pay, other special pay?  If "Yes," please give amounts and explain in "Remarks". | | ☐ Yes ☐ No Amount $ _____ |
| 26. | Do you, or did you, have a child under age 3 (your own or your spouse's) living with you in one or more calendar years when you had no earnings? | | ☐ Yes ☐ No |
| 27. | Do you have a dependent parent who was receiving at least one-half support from you when you became unable to work because of your disability? If "Yes," enter the parent's name and address and Social Security number, if known, in "Remarks". | | ☐ Yes ☐ No |
| 28. | If you were unable to work before age 22 because of an illness, injury or condition, do you have a parent (including adoptive or stepparent) or grandparent who is receiving social security retirement or disability benefits or who is deceased? If yes, enter the name(s) and Social Security number, if known, in "Remarks" (if unknown, check "Unknown"). | | ☐ Yes ☐ No ☐ Unknown |

**Lincoln/Bunch 0537**

06/19/2019   14:16     7196350966

Form **SSA-16** (06-2018) UF                                                                 Page 5 of 7

**REMARKS** (You may use this space for any explanation. If you need more space, attach a separate sheet.)

I declare under penalty of perjury that I have examined all the information on this form, and on any accompanying statements or forms, and it is true and correct to the best of my knowledge. I understand that anyone who knowingly gives a false statement about a material fact in this information, or causes someone else to do so, commits a crime and may be subject to a fine or imprisonment.

| SIGNATURE OF APPLICANT | Date (Month, Day, Year) |
|---|---|
| | November 17th, 2017 |
| Signature (First name, middle initial, last name) (Write in ink) | Telephone Number(s) at which you may be contacted during the day. (Include the area code) |

**DIRECT DEPOSIT PAYMENT INFORMATION (FINANCIAL INSTITUTION)**

| Routing Transit Number | Account Number | ☐ Checking | ☐ Enroll in Direct Express |
|---|---|---|---|
| | | ☐ Savings | ☐ Direct Deposit Refused |

Applicant's Mailing Address (Number and street, Apt No., P.O. Box, or Rural Route) (Enter Residence Address in "Remarks," if different.)

| City and State | ZIP Code | County (if any) in which you now live |
|---|---|---|
| | | USA |

Witnesses are required ONLY if this application has been signed by mark (X) above. If signed by mark (X), two witnesses to the signing who know the applicant must sign below, giving their full addresses. Also, print the applicant's name in Signature block.

| 1. Signature of Witness | 2. Signature of Witness |
|---|---|
| Address (Number and street, City, State and ZIP Code) | Address (Number and street, City, State and ZIP Code) |

**Lincoln/Bunch 0538**

06/19/2019  14:16    7196350966    PAGE 08/12

# FINAL ADMISSION OF LIABILITY

| | | | |
|---|---|---|---|
| Workers' Compensation (WC) # | 5070376 | Average Weekly Wage | 1923.08 |
| Claimant's Name | MARK BUNCH | Date First Payment of TTD | 3/5/18 |
| Social Security # | | Date of MMI | 10/17/18 |
| Date of Injury | 2/13/18 | Date First Payment of PPD | n/a |
| Carrier Claim # | 2D338776817591 | Employer | CHARTER COMMUNICATIONS |
| Insurance Carrier | NEW HAMPSHIRE INS CO | Third Party Administrator | ESIS |

## NOTICE TO CLAIMANT:

This Final Admission of Liability is a legal document listing benefits that have been or will be paid. You have the right to disagree or object to benefits admitted or not admitted. If you do not object to this admission within 30 calendardays of the date of the final admission, your file will automatically close. Objection information is attached.

If you disagree with the benefits admitted or not admitted you must do the following:

1. Within 30 days, complete the attached objection form or write a letter to the Division of Workers' Compensation, 633 17th St., Suite 400 Denver, CO 80202-3660 with a copy to the insurance carrier or self-insured employer stating that you object to this admission. You must also file an application for hearing with the Office of Administrative Courts on any disputed issues.

2. Within the same 30 days, if you disagree with the date of MMI or whole person impairment rating, complete the attached Notice and Proposal to Select an Independent Medical Examiner form and send it to the insurance carrier or self-insured employer and the Division.

3. If an IME is requested, you are not required to file an application for hearing until after the IME is completed.

4. If your date of injury is prior to July 1, 1991, the provisions regarding an Independent Medical Examination do not apply.

See page 2 for codes, definitions and other important notices.

BENEFIT SUMMARY (Check box & list amount for admitted benefits)

| | |
|---|---|
| ☒ Medical to Date (total) $ 26,503.00 | |
| ☐ Disfigurement (total) $ 0.00 | |
| ☐ Vocational Rehabilitation Services (total) $ 0.00 | |
| ☒ Temporary Total Disability (TTD) (total) $ 33,185.25 | |
| ☐ Temporary Partial Disability (TPD) (total) $ 0.00 | |
| ☐ Stipulation $ 0.00 | |
| ☐ Permanent Total Disability (PTD) $0.00 | |
| ☐ Safety Rule Violation ☐ Offset (Attach Calculation) | |

**Permanent Partial Disability (PPD):**

Whole Person Impairment   0   %  Age _____
or
Scheduled Impairment  0   %  Part of Body Code _____
Scheduled Impairment  0   %  Part of Body Code _____
(See page 2 for Part of Body Codes)

Position on Medical Benefits after Maximum Medical Improvement (MMI): Respondents deny liability for post-MMI medical treatment on the grounds that it is not reasonable, necessary, or related to the compensable injury. Any and all benefits & penalties not specifically admitted to are hereby denied.
Remarks and basis for permanent disability award: PER THE ATTACHED REPORT FROM DR. POLANCO DATED 10/17/18, THE CLAIMANT IS AT MMI WITHOUT IMPAIRMENT AS OF 10/17/18. AN OVERPAYMENT IN THE AMOUNT OF $1896.30 EXISTS. ESIS RESERVES THE RIGHT TO (Attach additional pages, if needed) RECOUP THE OVERPAYMENT FROM FUTURE BENEFITS IF APPLICABLE.

**BENEFIT HISTORY**

| Type of Benefits | | Time Periods | | Weeks | | Rate per Week | | Totals |
|---|---|---|---|---|---|---|---|---|
| TTD | 2/14/18 | through | 10/16/18 | ≈ 35 | x | $ 948.15 | = | $ 33,185.25 |
| | | through | | = | x | $ | = | $ |
| | | through | | = | x | $ | = | $ |
| | | through | | = | x | $ | = | $ |
| | | through | | = | x | $ | = | $ |
| | | through | | = | x | $ | = | $ |
| | | through | | = | x | $ | = | $ |

The above time periods include the dates specified.

Amount of Interest Paid $ 0.00
Amount of Penalties Paid $ 0.00
(Attach additional pages, if needed)    Amount Overpaid $ 1,896.30 _____ (See Remarks)

| | | | | |
|---|---|---|---|---|
| Claims Representative | Landon Wallis | Phone # (303) 728-9013 | Toll-Free Phone # | 800-992-7578 |
| Address | PO Box 6569, Scranton, PA 18505-6569 | | | |

CERTIFICATE OF MAILING: Copies of this document were placed in the U.S. mail or delivered to the following parties this 7 day of NOVEMBER , 2018
List names and addresses of all persons copied:    Name    Address
Claimant: MARK BUNCH
Claimant's Attorney: SHAKESHAFT & GORMAN    1935 JAMBOREE DR., STE 302 COLORADO SPRINGS, CO 80920
Employer: CHARTER COMMUNICATIONS
Carrier's Attorney: ERIC POLLART, ESQ.    5700 S. QUEBEC ST., STE 200 GREENWOOD VILLAGE, CO 80111
Division of Workers' Compensation, 633 17th Street, Suite 400, Denver, CO 80202-3660
By _____ Landon Wallis.

| | | | |
|---|---|---|---|
| WC4 Rev 04/11 | Page 1 of 4 | see page 2 for important notices and codes | Block # 269  Adj. Code NO |

**Lincoln/Bunch 0539**

STATE OF COLORADO
DIVISION OF WORKERS' COMPENSATION

Workers' Compensation No. 5-070-376
Carrier No. 2D338776817591

## WORKERS' COMPENSATION CLAIM(S) SETTLEMENT AGREEMENT

IN THE MATTER OF THE WORKERS' COMPENSATION CLAIM(S) OF:

MARK BUNCH,
    Claimant,

v.

CHARTER COMMUNICATIONS,
    Employer,

and

NEW HAMPSHIRE INSURANCE COMPANY,
    Insurer,
    Respondents.

The parties named above have disputes regarding the amount of Workers' Compensation Benefits, if any, to which Claimant may be entitled. Because they wish to avoid the expense and uncertainty of litigation, the parties wish to FOREVER settle this matter and therefore state and agree as follows:

1.    Claimant sustained or alleges injuries or occupational diseases arising out of and in the course of employment with the employer on or about February 13, 2018 including, but not limited to head, neck, back, cognitive, mental, and visual. Other disabilities, impairments and conditions that may be the result of these injuries or diseases but that are not listed here are, nevertheless, intended by all parties to be included in and resolved FOREVER by this settlement.

2.    In **full and final** settlement of all benefits, compensation, penalties and interest to which Claimant is or might be entitled as a result of these alleged injuries or occupational diseases, Respondents agree to pay and Claimant agrees to accept the following **$79,899 (SEVENTY NINE THOUSAND EIGHT HUNDRED NINETY NINE DOLLARS)**, in addition to all benefits that have been previously paid to or on behalf of Claimant. This amount will be reduced by the total amount owed by Claimant as indicated in any Writ of Garnishment, Notice of Administrative Lien and Attachment or any other legally authorized procedure served upon Respondents for court-ordered support pursuant to §8-42-124 C.R.S. All parties agree that this settlement is not an admission of liability by the Respondents.

3.    As consideration for the amount paid under the terms of this settlement, Claimant rejects, waives, and forever gives up the right to claim all compensation and benefits to which Claimant might be entitled for each injury or occupational disease claimed here, including but not limited to the following, unless specifically provided otherwise in paragraph 9A of this agreement:

    a.    Temporary total and temporary partial disability benefits to compensate Claimant for time missed from work; and

    b.    Permanent total disability benefits payable to Claimant for life if Claimant is totally incapable of earning any wages; and

**Lincoln/Bunch 0540**

c.  Permanent impairment (also known as vocational impairment, medical impairment or permanent partial disability) benefits, payable up a maximum amount of $182,251.37; and

d.  A lump sum payment of up to $91,126.84 against an award of permanent impairment or permanent total disability; and

e.  Vocational rehabilitation benefits, including job training, income maintenance or any other benefits payable as vocational rehabilitation; and

f.  Benefits of up to $10,457.52 for disfigurement, scarring, discoloration, and/ or a limp; and

g.  All penalties, interest, costs, and attorneys' fees up to the date this settlement is approved by the Division. The parties do not waive the right to seek post-approval penalties should either side fail to comply with the terms of the approved settlement agreement.

h.  Medical, surgical, hospital, and all other health care benefits, including chiropractic care and mileage reimbursement incurred after the date of the approval of this settlement agreement by the Division of Workers' Compensation or by an Administrative Law Judge from the Office of Administrative Courts.

4.    **The parties stipulate and agree that this claim will never be reopened except on the grounds of fraud or mutual mistake of material fact.**

5.    Respondents specifically    ☒ retain    ☐ waive their subrogation rights.

6.    Claimant realizes that there may be unknown injuries, conditions, diseases or disabilities as a consequence of these alleged injuries or occupational diseases, including the possibility of a worsening of the conditions. In return for the money paid or other consideration provided in this settlement, Claimant rejects, waives and FOREVER gives up the right to make any kind of claim for workers' compensation benefits against Respondents for any such unknown injuries, conditions, diseases, or disabilities resulting from the injuries or occupational diseases, whether or not admitted, that are the subject of this settlement. Claimant and Respondents agree that this settlement, when approved by the Division of Workers' Compensation or by an Administrative Law Judge from the Office of Administrative Courts, ends FOREVER Claimant's right to receive any further workers' compensation money and benefits even if Claimant later feels that Claimant made a mistake in settling this matter or later regrets having settled.

7.    Claimant understands that **this is a final settlement** and that approval of this settlement by the Division of Workers' Compensation or by an Administrative Law Judge from the Office of Administrative Courts dismisses this matter with prejudice and FOREVER closes all issues relating to this matter. Claimant is agreeing to this settlement of Claimant's own free will, without force, pressure or coercion from anyone. Claimant is not relying upon any promises, guarantees, or predictions made by anyone as to Claimant's physical or mental condition; the nature, extent, and duration of the injuries or occupational diseases or as to any other aspect of this matter.

8.    Neither Claimant nor Respondents intend to waive or give up any available rights, claims, privileges or defenses by signing this Settlement Agreement **unless and until** it is approved by the Division of Workers' Compensation or by an Administrative Law Judge from the Office of Administrative Courts. The parties acknowledge and agree that approval by the Division of Workers' Compensation or by an Administrative Law Judge from the Office of Administrative Courts applies only to those matters set forth in this agreement that are subject to the *Workers' Compensation Act* and that the approval by the Division or by an Administrative Law Judge from the Office of Administrative Courts has no effect on any separate or contingent agreement(s) that the parties may have reached.

9.    A.)

i.    Charter Communications is the employer listed in the caption of this settlement agreement. The parties agree the releases in this settlement agreement apply to the Charter Communications and its officers, directors, shareholders, insurers, employees, affiliates, agents, administrators, attorneys,

**Lincoln/Bunch 0541**

successors, assigns, subsidiaries and any other related entities and all of these persons and entities are included in the term "Respondents" for purposes of the releases in this settlement agreement.

ii.       Claimant acknowledges that he has disclosed to Respondents any and all KNOWN job related accidents, injuries or occupational diseases, and hereby waives his right to receive workers' compensation benefits from Respondents resulting from any and all KNOWN job-related accidents, injuries or occupational diseases occurring during his employment with Charter Communications.

iii.      The parties agree that the waivers in paragraph 3 include all admitted or accrued but unpaid temporary total and temporary partial disability benefits, permanent total disability benefits, permanent impairment benefits, vocational rehabilitation benefits, benefits for disfigurement, scarring, discoloration, and/ or a limp, mileage reimbursement, and all penalties, interest, costs, and attorneys' fees. This waiver in paragraph 9(A)(iii) of admitted or accrued but unpaid benefits prior to the date of the settlement does not apply to medical, surgical, hospital, and all other health care benefits, including chiropractic care with the exception of mileage reimbursement. The waiver of medical benefits is addressed in paragraph 9(A)(iv) below.

iv.      Medical benefits are not a disputed issue in this claim. Claimant rejects, waives, and forever gives up the right to claim all medical, surgical, hospital, chiropractic, and all other health care benefits and expenses accrued after **November 29, 2018** to which Claimant might be entitled for each injury or occupational disease claimed herein. For medical benefits and bills prior to this date, Respondents will only pay the bills to the extent that the medical treatment was reasonable, necessary, authorized and causally related to the work injury. The parties agree that Respondents will pay for reasonable, necessary, related and authorized care for dates of service up through and including November 29, 2018. This includes care by Dr. Thomas Higginbotham, Dr. Saxerud, Dr. Brinley, Dr. Staudenmayer, and chiropractic care and speech therapy based on a referral by Dr. Higginbotham.

v.       It is further understood and agreed payment of **$79,899 (SEVENTY NINE THOUSAND EIGHT HUNDRED NINETY NINE DOLLARS)** shall be made to Claimant in one lump sum, without discount. If Claimant is represented by an attorney, Claimant authorizes Respondents to send the settlement check directly to Claimant's attorney.

vi.      If temporary or permanent workers' compensation disability benefits are being paid, these benefits will terminate on as of **November 29, 2018**.

B.)  THIS ITEM INTENTIONALLY LEFT BLANK

C.)  The parties attach the following agreement(s) to this settlement:

i.       Waiver and Release of Claims, **Exhibit A.**

10.     This settlement agreement contains the entire agreement between the parties and shall be binding upon the parties when approved by the Division of Workers' Compensation or by an Administrative Law Judge from the Office of Administrative Courts.

**Lincoln/Bunch 0542**

06/19/2019   14:16    7196350966                                      PAGE 12/12

*When applicable, the statement below is to be completed by the **interpreter** and the Interpreter is to sign where appropriate and include the interpreter's PRINTED name and complete address.*

I, _____ (Interpreter) affirm that on this _____ day of _____, 20__, I read this document in its entirety to the individual whose name appears below as Claimant in this settlement in that person's native language and that the person indicated to me that that person understood each and every term of the settlement and, by signing this agreement, consents to and accepts the settlement as written.

| | |
|---|---|
| Interpreter's name (please print) | Interpreter's signature |

Interpreter's address (please print): _____

_____

_____

| | |
|---|---|
| MARK BUNCH | |
| Claimant's printed name | Claimant's signature |

STATE OF COLORADO
County of _EL PASO_

Subscribed and sworn to before me this _21st_ day of _Dec_, 20_18_

By _Brandy Newton_          _[signature]_
　　Notary Public's printed name          Notary Public's signature

My Commission expires: _07/27/2022_

BRANDY NEWTON
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20104026878
MY COMMISSION EXPIRES JULY 27, 2022

**Claimant's Attorneys:**

| | |
|---|---|
| Kenneth J. Shakeshaft, Esq. | |
| Claimant Attorney's printed name | Claimant Attorney's signature |

Shakeshaft and Gorman Law Firm, LLP
1935 Jamboree Drive, Suite 202
Colorado Springs, CO 80920
Telephone: (719) 635-5886

#12618
Claimant Attorney's
Registration Number

**Respondents Attorneys:**

| | |
|---|---|
| Eric J. Pollart, Esq./Hayleigh P. Lidbury, Esq. | |
| Respondents Attorneys' printed names | Respondent Attorney's signature |

Pollart Miller LLC
5700 S. Quebec Street, Suite 200
Greenwood Village, CO 80111
Telephone: (720) 488-9586

#27625/#51478
Respondents Attorneys'
Registration Numbers

**Lincoln/Bunch 0543**



## CONFIDENTIAL INVESTIGATIVE REPORT
**Monday, June 17, 2019**

| ATTN: Danielle Davis<br>Lincoln Financial Group<br>Group Benefits Disability Claims<br>PO Box 7206<br>London, KY 40742 | YOUR FILE NO. | 8220685 |
|---|---|---|
| | OTHER FILE NO. | Davis, D |
| | OUR FILE NO. | 201906-2133.1 |
| | INSURED/EMPLOYER | Charter Communications, Inc. |
| | ASSIGNMENT OPEN | 6/12/2019 |
| TYPE OF CLAIM | Disability (DI) | |
| REPORTED INJURY | Not Provided | |
| DATE OF LOSS | 2/14/2018 | |
| INVESTIGATOR | Robert K. Morando | |
| DATES OF INVESTIGATION | June 17, 2019 | |

| CLAIMANT | |
|---|---|
| NAME: | **Mark Bunch** |
| ADDRESS: | |
| DOB: | |

| PHOTO IDENTIFICATION |
|---|

| SUMMARY |
|---|

A search was completed using but not limited to database sources Google, Bing, Facebook, Pinterest, Instagram, LinkedIn, Myspace, Twitter, and YouTube.
**The following matches were located for the subject.**

**Facebook Royal Gorge Gun and Pistol Club, Inc.**
**Facebook Lincoln Park Pawn & Auto**

A Facebook profile was located for the subject's business Royal Gorge Gun and Pistol Club, Inc. with the most recent post of May 23, 2017. Limited activity and photos of the subject were noted. No information on the subject's loss was located.

A Facebook profile was located for the subject's business Lincoln Park Pawn & Auto with the most recent post of March 14, 2010. No information on the subject's loss was located.

9485 Regency Square Blvd, Suite 200 | Jacksonville, FL 32225 | 888-932-7364 | http://coventbridge.com

**Lincoln/Bunch 0544**

Name: Mark Bunch                                                                            Page: 2
Claim Number: 8220685

A Search of the Colorado Secretary of States shows the subject the Registered Agent for Royal Gorge Gun and Pistol Club Inc.

A Search of the Colorado Secretary of States shows the subject the Registered Agent for Lincoln Park Pawn LLC                                                    .

A search of the Fremont County, CO County Clerk produced no records for the subject.

A search of the city of Canon City, CO City Clerk produced no records for the subject.

Search criteria included variations of names, places of residence, telephone numbers and other information.

| ANALYSIS |
|---|

**MAPPING**

- A search of Google Maps produced a satellite image and a map of the area surrounding the subject's most current residence                                      .

**DIRECTORY ASSISTANCE**

- The provided phone number                  is a Verizon Wireless mobile registered in West Chester, Ohio.

**SOCIAL NETWORKING**

- The subject was located on Facebook.

**Lincoln/Bunch 0545**

Name: Mark Bunch                                                          Page: 3
Claim Number: 8220685

**SOURCES**

**<u>Mapping</u>**

A search of Google Maps produced a satellite image and a map of the area
surrounding the subject's provided address

.

**Lincoln/Bunch 0546**

Name: Mark Bunch                                                                        Page: 4
Claim Number: 8220685



**<u>Directory Assistance</u>**

- The provided phone number                    is a Verizon Wireless mobile registered in West Chester, Ohio.



Type: Mobile    Carrier: Verizon Wireless

**Lincoln/Bunch 0547**

Name: Mark Bunch

Claim Number: 8220685

Page: 5

## Social Media

### Facebook

No profiles associated with the subject were located.

https://www.facebook.com/royalgorgegunclub/



**Lincoln/Bunch 0548**

Name: Mark Bunch                                                                                    Page: 6
Claim Number: 8220685



Name: Mark Bunch                                                                                          Page: 7
Claim Number: 8220685



**Lincoln/Bunch 0550**

Name: Mark Bunch

Claim Number: 8220685

Page: 8





Name: Mark Bunch                                                                                  Page: 9
Claim Number: 8220685

Name: Mark Bunch

Page: 10

Claim Number: 8220685



**Lincoln/Bunch 0553**

Name: Mark Bunch                                                                    Page: 11
Claim Number: 8220685

**Facebook**

The following profile associated with the subject was located.

https://www.facebook.com/Lincoln-Park-Pawn-Auto-409965279288/



**Lincoln/Bunch 0554**

Name: Mark Bunch                                                                    Page: 12
Claim Number: 8220685





**LinkedIn**
No profiles associated with the subject were located.

**YouTube**
No profiles associated with the subject were located.

**Vimeo**
No profiles associated with the subject were located.

**Lincoln/Bunch 0555**

Name: Mark Bunch                                                                                     Page: 13
Claim Number: 8220685

**Myspace**
No profiles associated with the subject were located.

**Instagram**
No profiles associated with the subject were located.

**Twitter**
No profiles associated with the subject were located.

**Pinterest**
No profiles associated with the subject were located.

**ETSY**
No profiles associated with the subject were located.

**Indeed**
No profiles associated with the subject were located.

**Soundcloud**
No profiles associated with the subject were located.

**Flickr**
No profiles associated with the subject were located.

**Tumblr**
No profiles associated with the subject were located.

(Other Online Sources)

http://www.royalgorgegunclub.org/index.html



**Lincoln/Bunch 0556**

Name: Mark Bunch                                                                      Page: 14
Claim Number: 8220685



**Lincoln/Bunch 0557**

Name: Mark Bunch

Claim Number: 8220685

Page: 15



Range Improvements



Lincoln/Bunch 0558

Name: Mark Bunch                                                                Page: 16
Claim Number: 8220685



Lincoln/Bunch 0559

Name: Mark Bunch                                                                                    Page: 17
Claim Number: 8220685



**Lincoln/Bunch 0560**

Name: Mark Bunch                                                                    Page: 18
Claim Number: 8220685

http://www.royalgorgegunclub.org/pdf/2018%20Meeting%20Minutes.pdf



Greetings Fellow Gun Club Members,

This past Saturday Jan 13th we held our annual meeting with 29 members present. The following items were discussed, nominated and approved unanimously by all in attendance.

Electronic Gates are fully operational for THOSE MEMBERS who have completed gate training/re-activation process. If you haven't been thru gate training/re-activation then your gate card will not work and you will not have access to the any of our ranges until such time as you come by to make an appointment. There are 6 of you with waivers, everyone else bring cash!

We have purchased internal heating elements for gate openers and will be getting them installed as soon as weather permits. Projects for our upcoming work days of April 7th, and May 12th are insulating our new building, hanging ceiling fans, making target frames, range clean up, etc... I have a number of people signed up for both days but we would love to have MORE OF YOU OUT there show up to help.

For those of you who have been patiently waiting on me/us to get our trap range back into operation, that will be happening in a couple of months and don't worry everyone who paid for our trap range will be given an entire year for free. Everyone else will have to pay $20 and we will have a couple of training days on how to operate our new Atlas 250 with wobble base. YES this is a direct result of our fund raising efforts for the NRA...HINT

I have also attached a schedule of events for the upcoming year since we were all too busy last year with the gate apocalypse to run any events, hopefully everyone will pay attention to what transpires around them and what transpires around our cool new gates so John, Jon, Donna, Mike, Evan, Mike, Mike, Bill, Jerry, Larry, Bill, Jock, Ron and whoever else I may have missed can actually come out to the range and shoot this year!!! Lol

**Lincoln/Bunch 0561**

Name: Mark Bunch                                                                Page: 19
Claim Number: 8220685

One of the items brought up at our annual meeting is the LACK OF HELP that the majority of members provide to the club. IE...the same 10 to 15 people who are always willing to help are also the ONLY MEMBERS to help. Upon calling around to approximately a dozen other clubs in the state of Colorado, it was discovered that every single one of the ones we called require all members to either come out to help on work days OR BUY THEIR WAY OUT of doing so. The average price at those other clubs to buy your way out of work days was a low of $40 to a high of $125.

WE, meaning the club members in attendance with the Executive Board have decided upon a $10 labor fee to be collected up front ON ALL memberships, regardless of whether you are a senior, active duty military, family OR LIFE member. When you renew your dues for this coming year, which you may do so IMMEDIATELY since we always need money early to plan our work days, your dues are now $10 higher. IF YOU ARE ABLE, WILLING and you actually SHOW UP for a work day, we, meaning me, will gladly refund your $10 labor buy out dues... ONCE AGAIN...ALL MEMBER DUES HAVE GONE UP $10 PER YEAR REGARDLESS OF WHAT KIND OF MEMBERSHIP YOU HAVE... IF YOU show up to a work day, we will REFUND your $10. That sounds pretty clear to me so please read it a couple of times if you need to, lol...

OUR annual Friends of NRA dinner is JUST AROUND the corner, less than one month away and I still need 350 of you to make an effort to come buy a ticket PLEASE... YOU get the benefit of OUR running around and busting our ass trying to raise as much money as possible and frankly the majority of you are pissing me off by not making an effort to support this event..... That is a HINT... lol

Our dinner is FRIDAY, FEBRUARY 9th, and some of you might have received a mailer that incorrectly has it listed as Saturday February 9th. My fault as I am the one who proof reads everything and I simply missed it. ONCE AGAIN, it is FRIDAY February 9th at the Holy Cross Abbey Event Center and a good portion of what you spend is tax deductible AND we get to keep half of the money here in Fremont County. For those of you torn between supporting us or some other event feel free to ask any of the people who run those other events how much money they have donated to local shooting sports OR how much of that money goes to help defend people's 2nd Amendment rights.... After you stop laughing at their replies to those questions, feel free to ask if you can come shoot on any of their ranges sometime.... If that doesn't make things crystal F'ing clear to you then I would like to talk to you about a couple of Bridges that I have for sale in New Jersey, lol...

Special thanks to the following members for coming by Lincoln Park Pawn and purchasing tickets to our dinner event February 9th. Roger Fuller, Ray Hart, Jon and Donna Hoff, Cecil Reaves, Karl Leeson, Paul Donovan, Justin Scott, Robert Drake, Les Payne, Dave Shipman, Dan Carroll, Dave Edgar, Ken Kile, Harvey Barnhart.

Congratulations to Myra Smallwood of Remax Properties for being our new Classroom Sponsor. I spoke with her a few days ago and was very impressed with her knowledge and business savvy. She is a proud supporter of OUR 2nd amendment rights and her family are also hunters as well so don't hesitate to call her with your real estate needs.

Have you bought your FNRA tickets yet? If not, get your ass down here please!!

Sincerely,

**Mark Bunch/President Royal Gorge Gun Club/Chairman Fremont/Chaffee County Friends of NRA**

www.royalgorgegunclub.org
lincolnparkpawn@hotmail.com

**Lincoln/Bunch 0562**

Name: Mark Bunch
Claim Number: 8220685

Page: 20

## Changes to Membership Requirements

There is a membership cap now in place! If you are a current member be sure to renew early to avoid being put on the waiting list. If you have any questions, please call John, Nick or Mark at 719-276-3030.

ALL NEW MEMBERS wanting to join the RGGC will have to go thru a criminal background check **PRIOR** to being accepted for membership which is an additional $15.

Existing members who let their memberships lapse will have to pay an additional $15, undergo a background check and pay the $25 NRA insurance dues again, **provided** we have not met our cap; otherwise you will be placed on the waiting list.

Click here to renew your membership or become a new member.

At the January 2018 annual meeting, WE, meaning the club members in attendance with the Executive Board have decided upon a $10 labor fee to be collected up front ON ALL memberships, regardless of whether you are a senior, active duty military, family OR LIFE member. When you renew your dues for this coming year, which you may do so IMMEDIATELY since we always need money early to plan our work days, your dues are now $10 higher. IF YOU ARE ABLE, WILLING and you actually SHOW UP for a work day, we, meaning me, will gladly refund your $10 labor buy out dues... **ONCE AGAIN: ALL MEMBER DUES HAVE GONE UP $10 PER YEAR REGARDLESS OF WHAT KIND OF MEMBERSHIP YOU HAVE... IF YOU show up to a work day, we will REFUND your $10.**

**Lincoln/Bunch 0563**

Name: Mark Bunch

Page: 21

Claim Number: 8220685

## Training

Classes to be offered are:

- Concealed Carry--1 day (Classroom instruction and Live Fire Range Time) 100 rounds ammunition, 3, 7, 15 yards

- Beginner Pistol--2 days (Classroom instruction and Live Fire Range Time) 250 rounds ammunition 3, 7, 15, 25 yards

- Intermediate Pistol--2 days (Classroom instruction and Live Fire Range Time) 400 rounds ammunition 3, 7, 15, 25, 35, 45, 50 yards

- Combat Pistol Advanced--2 days (Classroom instruction and Live Fire Range Time) 500 rounds ammunition 3, 7, 15, 25, 35, 45, 50, 75, 85 yards

- Combat Shotgun--1 day (Classroom instruction and Live Fire Range Time) 100 rounds birdshot, 20 slugs, 10 00-Buck, 3, 7, 15, 25, 50, 100 yards

- Urban Rifle--2 days (Classroom instruction and Live Fire Range Time) 300 rounds, 7, 25, 50, 100, 250 yards

- Urban Rifle Advanced--2 days (Classroom instruction and Live Fire Range Time) out to 600 yards

- Precision Rifle--2 days (Classroom instruction and Live Fire Range Time) 100 rounds, 100 to 700 yards

- Long Range Rifle--3 days (Classroom instruction and Live Fire Range Time) 300 rounds 300, 400, 500, 600, 700, 900, 1000, 1100, 1200, 1300 yards

- Tactical Long Range Rifle--2 days (Classroom instruction and Live Fire Range Time) 300 rounds, 300, 400, 500 yards moving targets, 600 yards to 1 mile

- Precision Rifle Night Vision Class 2 days (Classroom instruction and Live Night Fire Range Time) 2 days/nights, 2 pm to 10 pm, 200 rounds, unknown distances

**Lincoln/Bunch 0564**

Name: Mark Bunch                                                                                          Page: 22
Claim Number: 8220685



**DOMAIN**

https://www.whois.com/whois/royalgorgegunclub.org

**Lincoln/Bunch 0565**

Name: Mark Bunch

Page: 23

Claim Number: 8220685



## Registrant Contact

| | |
|---|---|
| Organization: | Royal Gorge Gun & Pistol Club, LLC |
| State: | CO |
| Country: | US |

## Raw Whois Data

```
Domain Name: ROYALGORGEGUNCLUB.ORG
Registry Domain ID: D160689120-LROR
Registrar WHOIS Server: whois.godaddy.com
Registrar URL: http://www.whois.godaddy.com
Updated Date: 2017-03-20T03:13:17Z
Creation Date: 2010-11-17T00:55:57Z
Registry Expiry Date: 2020-11-17T00:55:57Z
Registrar Registration Expiration Date:
Registrar: GoDaddy.com, LLC
Registrar IANA ID: 146
Registrar Abuse Contact Email: abuse@godaddy.com
Registrar Abuse Contact Phone: +1.4806242505
Reseller:
Domain Status: clientDeleteProhibited https://icann.org/epp#clientDeleteProhibited
Domain Status: clientRenewProhibited https://icann.org/epp#clientRenewProhibited
Domain Status: clientTransferProhibited https://icann.org/epp#clientTransferProhibi
Domain Status: clientUpdateProhibited https://icann.org/epp#clientUpdateProhibited
Registrant Organization: Royal Gorge Gun & Pistol Club, LLC
Registrant State/Province: CO
Registrant Country: US
Name Server: NS73.DOMAINCONTROL.COM
Name Server: NS74.DOMAINCONTROL.COM
DNSSEC: unsigned
URL of the ICANN Whois Inaccuracy Complaint Form https://www.icann.org/wicf/)
>>> Last update of WHOIS database: 2019-06-17T16:19:54Z <<<

For more information on Whois status codes, please visit https://icann.org/epp

Access to Public Interest Registry WHOIS information is provided to assist persons

The Registrar of Record identified in this output may have an RDDS service that can
```

**Lincoln/Bunch 0566**

Name: Mark Bunch

Page: 24

Claim Number: 8220685

https://uscorporates.com/business/co/caon-city/royal-gorge-gun-and-pistol-club-inc/1460546



Name: Mark Bunch                                                                                                          Page: 25
Claim Number: 8220685

**Business Licensing**

https://www.sos.state.co.us/biz/BusinessEntityDetail.do?quitButtonDestination=BusinessEntityResults&nameTyp=ENT&masterFileId=19921045518&entityId2=19921045518&fileId=19921045518&srchTyp=ENTITY

## Summary

| Details | | | |
|---|---|---|---|
| Name | ROYAL GORGE GUN AND PISTOL CLUB INC. | | |
| Status | Good Standing | Formation date | 05/04/1992 |
| ID number | 19921045518 | Form | Nonprofit Corporation |
| Periodic report month | December | Jurisdiction | Colorado |
| Principal office street address | | , United States | |
| Principal office mailing address | n/a | | |

| Registered Agent | |
|---|---|
| Name | Mark Bunch |
| Street address | , United States |
| Mailing address | , United States |

https://www.sos.state.co.us/biz/BusinessEntityDetail.do?quitButtonDestination=BusinessEntityResults&nameTyp=ENT&masterFileId=20091356327&entityId2=20091356327&fileId=20091356327&srchTyp=ENTITY

## Summary

| Details | | | |
|---|---|---|---|
| Name | Lincoln Park Pawn LLC | | |
| Status | Good Standing | Formation date | 07/02/2009 |
| ID number | 20091356327 | Form | Limited Liability Company |
| Periodic report month | December | Jurisdiction | Colorado |
| Principal office street address | | , United States | |
| Principal office mailing address | | , United States | |

| Registered Agent | |
|---|---|
| Name | Mark Bryan Bunch |
| Street address | United States |
| Mailing address | United States |

**Lincoln/Bunch 0568**

Name: Mark Bunch                                                                        Page: 26
Claim Number: 8220685

**Email**

FREEDOMRUNNER@MSN.COM
FREEDOMRUNNER69@COMCAST.NET
HEALTHEHORAN50@HOTMAIL.COM
JPOWELL@TWCNY.RR.COM
MBUNCH@PDIPUEBLO.ORG
MARK@PDIPUEBLO.COM
BUNCHM@QWEST.NET
NFO@PDIPUEBLO.ORG

This report does not guarantee the accuracy or truthfulness of the information as to the subject of the investigation, but only that it is accurately copied from publicly available sources. Information generated as a result of identity theft, including evidence of criminal activity, may be inaccurately associated with the consumer who is the subject of the report.

| Enclosures |
|---|

NCR

**END OF REPORT**

**Lincoln/Bunch 0569**



## CONFIDENTIAL INVESTIGATIVE REPORT
### Monday, June 17, 2019

| ATTN: Danielle Davis<br>Lincoln Financial Group<br>Group Benefits Disability Claims<br>PO Box 7206<br>London, KY 40742 | YOUR FILE NO. | 8220685 |
| | OTHER FILE NO. | Davis, D |
| | OUR FILE NO. | 201906-2133.1 |
| | INSURED/EMPLOYER | Charter Communications, Inc. |
| | ASSIGNMENT OPEN | 6/12/2019 |
| TYPE OF CLAIM | Disability (DI) | |
| REPORTED INJURY | Not Provided | |
| DATE OF LOSS | 2/14/2018 | |
| INVESTIGATOR | Robert K. Morando | |
| DATES OF INVESTIGATION | June 17, 2019 | |

| CLAIMANT | |
| --- | --- |
| NAME: | **Mark Bunch** |
| ADDRESS: | |
| DOB: | |

| PHOTO IDENTIFICATION |
| --- |

| SUMMARY |
| --- |

A search was completed using but not limited to database sources Google, Bing, Facebook, Pinterest, Instagram, LinkedIn, Myspace, Twitter, and YouTube. **The following matches were located for the subject.**

**Facebook Royal Gorge Gun and Pistol Club, Inc.**
**Facebook Lincoln Park Pawn & Auto**

A Facebook profile was located for the subject's business Royal Gorge Gun and Pistol Club, Inc. with the most recent post of May 23, 2017. Limited activity and photos of the subject were noted. No information on the subject's loss was located.

A Facebook profile was located for the subject's business Lincoln Park Pawn & Auto with the most recent post of March 14, 2010. No information on the subject's loss was located.

9485 Regency Square Blvd, Suite 200 | Jacksonville, FL 32225 | 888-932-7364 | http://coventbridge.com

**Lincoln/Bunch 0570**

Name: Mark Bunch                                                                    Page: 2
Claim Number: 8220685

A Search of the Colorado Secretary of States shows the subject the Registered Agent for Royal Gorge Gun and Pistol Club Inc.
.

A Search of the Colorado Secretary of States shows the subject the Registered Agent for Lincoln Park Pawn LLC                                                      .

A search of the Fremont County, CO County Clerk produced no records for the subject.

A search of the city of Canon City, CO City Clerk produced no records for the subject.

Search criteria included variations of names, places of residence, telephone numbers and other information.

| ANALYSIS |
|---|

**MAPPING**

- A search of Google Maps produced a satellite image and a map of the area surrounding the subject's most current residence                          .

**DIRECTORY ASSISTANCE**

- The provided phone number                     is a Verizon Wireless mobile registered in West Chester, Ohio.

**SOCIAL NETWORKING**

- The subject was located on Facebook.

**Lincoln/Bunch 0571**

Name: Mark Bunch                                                                    Page: 3
Claim Number: 8220685

**SOURCES**

**Mapping**

A search of Google Maps produced a satellite image and a map of the area
surrounding the subject's provided address
.

**SOURCES**

**Lincoln/Bunch 0572**

Name: Mark Bunch                                                                              Page: 4
Claim Number: 8220685



## Directory Assistance

- The provided phone number                    is a Verizon Wireless mobile registered in West Chester, Ohio.



**Lincoln/Bunch 0573**

Name: Mark Bunch                                                                                          Page: 5
Claim Number: 8220685

<u>**Social Media**</u>

<u>**Facebook**</u>
No profiles associated with the subject were located.
https://www.facebook.com/royalgorgegunclub/



**Lincoln/Bunch 0574**

Name: Mark Bunch                                                                      Page: 6
Claim Number: 8220685



**Lincoln/Bunch 0575**

Name: Mark Bunch                                                                                                    Page: 7
Claim Number: 8220685



**Lincoln/Bunch 0576**

Name: Mark Bunch                                                                 Page: 8
Claim Number: 8220685





Name: Mark Bunch                                                                    Page: 9
Claim Number: 8220685



**Lincoln/Bunch 0578**

Name: Mark Bunch

Claim Number: 8220685

Page: 10



Name: Mark Bunch                                                        Page: 11
Claim Number: 8220685

**Facebook**

The following profile associated with the subject was located.

https://www.facebook.com/Lincoln-Park-Pawn-Auto-409965279288/



**Lincoln/Bunch 0580**

Name: Mark Bunch                                                                            Page: 12
Claim Number: 8220685





**LinkedIn**
No profiles associated with the subject were located.

**YouTube**
No profiles associated with the subject were located.

**Vimeo**
No profiles associated with the subject were located.

**Lincoln/Bunch 0581**

Name: Mark Bunch                                                                          Page: 13
Claim Number: 8220685

**Myspace**
No profiles associated with the subject were located.

**Instagram**
No profiles associated with the subject were located.

**Twitter**
No profiles associated with the subject were located.

**Pinterest**
No profiles associated with the subject were located.

**ETSY**
No profiles associated with the subject were located.

**Indeed**
No profiles associated with the subject were located.

**Soundcloud**
No profiles associated with the subject were located.

**Flickr**
No profiles associated with the subject were located.

**Tumblr**
No profiles associated with the subject were located.

(Other Online Sources)

http://www.royalgorgegunclub.org/index.html



**Lincoln/Bunch 0582**

Name: Mark Bunch                                                                                    Page: 14
Claim Number: 8220685



Annual Friends of the NRA Banquet - February 9, 2018

Please join us at The Abbey in Canon City on February 9 for our annual Friends of NRA banquet!
Check out our flyers:

Click on each picture for more info

Be sure to buy your raffle tickets -- limited amount of tickets being sold! Click here for more info!

**Lincoln/Bunch 0583**

Name: Mark Bunch

Page: 15

Claim Number: 8220685



Lincoln/Bunch 0584

Name: Mark Bunch                                                                                          Page: 16
Claim Number: 8220685



**Lincoln/Bunch 0585**

Name: Mark Bunch                                                         Page: 17
Claim Number: 8220685



**Lincoln/Bunch 0586**

Name: Mark Bunch                                                                      Page: 18
Claim Number: 8220685

http://www.royalgorgegunclub.org/pdf/2018%20Meeting%20Minutes.pdf



Greetings Fellow Gun Club Members,

This past Saturday Jan 13th we held our annual meeting with 29 members present. The following items were discussed, nominated and approved unanimously by all in attendance.

Electronic Gates are fully operational for THOSE MEMBERS who have completed gate training/re-activation process. If you haven't been thru gate training/re-activation then your gate card will not work and you will not have access to the any of our ranges until such time as you come by to make an appointment. There are 6 of you with waivers, everyone else bring cash!

We have purchased internal heating elements for gate openers and will be getting them installed as soon as weather permits. Projects for our upcoming work days of April 7th, and May 12th are insulating our new building, hanging ceiling fans, making target frames, range clean up, etc... I have a number of people signed up for both days but we would love to have MORE OF YOU OUT there show up to help.

For those of you who have been patiently waiting on me/us to get our trap range back into operation, that will be happening in a couple of months and don't worry everyone who paid for our trap range will be given an entire year for free. Everyone else will have to pay $20 and we will have a couple of training days on how to operate our new Atlas 250 with wobble base. YES this is a direct result of our fund raising efforts for the NRA...HINT

I have also attached a schedule of events for the upcoming year since we were all too busy last year with the gate apocalypse to run any events, hopefully everyone will pay attention to what transpires around them and what transpires around our cool new gates so John, Jon, Donna, Mike, Evan, Mike, Mike, Bill, Jerry, Larry, Bill, Jock, Ron and whoever else I may have missed can actually come out to the range and shoot this year!!! Lol

**Lincoln/Bunch 0587**

Name: Mark Bunch                                                                              Page: 19
Claim Number: 8220685

One of the items brought up at our annual meeting is the LACK OF HELP that the majority of members provide to the club. IE...the same 10 to 15 people who are always willing to help are also the ONLY MEMBERS to help. Upon calling around to approximately a dozen other clubs in the state of Colorado, it was discovered that every single one of the ones we called require all members to either come out to help on work days OR BUY THEIR WAY OUT of doing so. The average price at those other clubs to buy your way out of work days was a low of $40 to a high of $125.

WE, meaning the club members in attendance with the Executive Board have decided upon a $10 labor fee to be collected up front ON ALL memberships, regardless of whether you are a senior, active duty military, family OR LIFE member. When you renew your dues for this coming year, which you may do so IMMEDIATELY since we always need money early to plan our work days, your dues are now $10 higher. IF YOU ARE ABLE, WILLING and you actually SHOW UP for a work day, we, meaning me, will gladly refund your $10 labor buy out dues... ONCE AGAIN...ALL MEMBER DUES HAVE GONE UP $10 PER YEAR REGARDLESS OF WHAT KIND OF MEMBERSHIP YOU HAVE... IF YOU show up to a work day, we will REFUND your $10. That sounds pretty clear to me so please read it a couple of times if you need to, lol...

OUR annual Friends of NRA dinner is JUST AROUND the corner, less than one month away and I still need 350 of you to make an effort to come buy a ticket PLEASE... YOU get the benefit of OUR running around and busting our ass trying to raise as much money as possible and frankly the majority of you are pissing me off by not making an effort to support this event..... That is a HINT... lol

Our dinner is FRIDAY, FEBRUARY 9th, and some of you might have received a mailer that incorrectly has it listed as Saturday February 9th. My fault as I am the one who proof reads everything and I simply missed it. ONCE AGAIN, it is FRIDAY February 9th at the Holy Cross Abbey Event Center and a good portion of what you spend is tax deductible AND we get to keep half of the money here in Fremont County. For those of you torn between supporting us or some other event feel free to ask any of the people who run those other events how much money they have donated to local shooting sports OR how much of that money goes to help defend people's 2nd Amendment rights.... After you stop laughing at their replies to those questions, feel free to ask if you can come shoot on any of their ranges sometime.... If that doesn't make things crystal F'ing clear to you then I would like to talk to you about a couple of Bridges that I have for sale in New Jersey, lol...

Special thanks to the following members for coming by Lincoln Park Pawn and purchasing tickets to our dinner event February 9th. Roger Fuller, Ray Hart, Jon and Donna Hoff, Cecil Reaves, Karl Leeson, Paul Donovan, Justin Scott, Robert Drake, Les Payne, Dave Shipman, Dan Carroll, Dave Edgar, Ken Kile, Harvey Barnhart.

Congratulations to Myra Smallwood of Remax Properties for being our new Classroom Sponsor. I spoke with her a few days ago and was very impressed with her knowledge and business savvy. She is a proud supporter of OUR 2nd amendment rights and her family are also hunters as well so don't hesitate to call her with your real estate needs.

Have you bought your FNRA tickets yet? If not, get your ass down here please!!

Sincerely,

**Mark Bunch/President Royal Gorge Gun Club/Chairman Fremont/Chaffee County Friends of NRA**

www.royalgorgegunclub.org
lincolnparkpawn@hotmail.com

**Lincoln/Bunch 0588**

## Changes to Membership Requirements

There is a membership cap now in place! If you are a current member be sure to renew early to avoid being put on the waiting list. If you have any questions, please call John, Nick or Mark at 719-276-3030.

ALL NEW MEMBERS wanting to join the RGGC will have to go thru a criminal background check **PRIOR** to being accepted for membership which is an additional $15.

Existing members who let their memberships lapse will have to pay an additional $15, undergo a background check and pay the $25 NRA insurance dues again, **provided** we have not met our cap; otherwise you will be placed on the waiting list.

Click here to renew your membership or become a new member.

At the January 2018 annual meeting, WE, meaning the club members in attendance with the Executive Board have decided upon a $10 labor fee to be collected up front ON ALL memberships, regardless of whether you are a senior, active duty military, family OR LIFE member. When you renew your dues for this coming year, which you may do so IMMEDIATELY since we always need money early to plan our work days, your dues are now $10 higher. IF YOU ARE ABLE, WILLING and you actually SHOW UP for a work day, we, meaning me, will gladly refund your $10 labor buy out dues... **ONCE AGAIN: ALL MEMBER DUES HAVE GONE UP $10 PER YEAR REGARDLESS OF WHAT KIND OF MEMBERSHIP YOU HAVE... IF YOU show up to a work day, we will REFUND your $10.**

**Lincoln/Bunch 0589**

## Training

Classes to be offered are:

- Concealed Carry--1 day (Classroom instruction and Live Fire Range Time) 100 rounds ammunition, 3, 7, 15 yards

- Beginner Pistol--2 days (Classroom instruction and Live Fire Range Time) 250 rounds ammunition 3, 7, 15, 25 yards

- Intermediate Pistol--2 days (Classroom instruction and Live Fire Range Time) 400 rounds ammunition 3, 7, 15, 25, 35, 45, 50 yards

- Combat Pistol Advanced--2 days (Classroom instruction and Live Fire Range Time) 500 rounds ammunition 3, 7, 15, 25, 35, 45, 50, 75, 85 yards

- Combat Shotgun--1 day (Classroom instruction and Live Fire Range Time) 100 rounds birdshot, 20 slugs, 10 00-Buck, 3, 7, 15, 25, 50, 100 yards

- Urban Rifle--2 days (Classroom instruction and Live Fire Range Time) 300 rounds, 7, 25, 50, 100, 250 yards

- Urban Rifle Advanced--2 days (Classroom instruction and Live Fire Range Time) out to 600 yards

- Precision Rifle--2 days (Classroom instruction and Live Fire Range Time) 100 rounds, 100 to 700 yards

- Long Range Rifle--3 days (Classroom instruction and Live Fire Range Time) 300 rounds 300, 400, 500, 600, 700, 900, 1000, 1100, 1200, 1300 yards

- Tactical Long Range Rifle--2 days (Classroom instruction and Live Fire Range Time) 300 rounds, 300, 400, 500 yards moving targets, 600 yards to 1 mile

- Precision Rifle Night Vision Class 2 days (Classroom instruction and Live Night Fire Range Time) 2 days/nights, 2 pm to 10 pm, 200 rounds, unknown distances

**Lincoln/Bunch 0590**

Name: Mark Bunch                                                        Page: 22
Claim Number: 8220685



**DOMAIN**

https://www.whois.com/whois/royalgorgegunclub.org

| royalgorgegunclub.org | Updated 1 second ago |
| --- | --- |

**Domain Information**

| | |
| --- | --- |
| Domain: | royalgorgegunclub.org |
| Registrar: | GoDaddy.com, LLC |
| Registered On: | 2010-11-17 |
| Expires On: | 2020-11-17 |
| Updated On: | 2017-03-20 |
| Status: | clientDeleteProhibited clientRenewProhibited clientTransferProhibited clientUpdateProhibited |
| Name Servers: | ns73.domaincontrol.com ns74.domaincontrol.com |

**Registrant Contact**

| | |
| --- | --- |
| Organization: | Royal Gorge Gun & Pistol Club, LLC |
| State: | CO |
| Country: | US |

**Lincoln/Bunch 0591**

Name: Mark Bunch                                                                        Page: 23
Claim Number: 8220685



## Registrant Contact

| Organization: | Royal Gorge Gun & Pistol Club, LLC |
| --- | --- |
| State: | CO |
| Country: | US |

## Raw Whois Data

```
Domain Name: ROYALGORGEGUNCLUB.ORG
Registry Domain ID: D160689120-LROR
Registrar WHOIS Server: whois.godaddy.com
Registrar URL: http://www.whois.godaddy.com
Updated Date: 2017-03-20T03:13:17Z
Creation Date: 2010-11-17T00:55:57Z
Registry Expiry Date: 2020-11-17T00:55:57Z
Registrar Registration Expiration Date:
Registrar: GoDaddy.com, LLC
Registrar IANA ID: 146
Registrar Abuse Contact Email: abuse@godaddy.com
Registrar Abuse Contact Phone: +1.4806242505
Reseller:
Domain Status: clientDeleteProhibited https://icann.org/epp#clientDeleteProhibited
Domain Status: clientRenewProhibited https://icann.org/epp#clientRenewProhibited
Domain Status: clientTransferProhibited https://icann.org/epp#clientTransferProhibi
Domain Status: clientUpdateProhibited https://icann.org/epp#clientUpdateProhibited
Registrant Organization: Royal Gorge Gun & Pistol Club, LLC
Registrant State/Province: CO
Registrant Country: US
Name Server: NS73.DOMAINCONTROL.COM
Name Server: NS74.DOMAINCONTROL.COM
DNSSEC: unsigned
URL of the ICANN Whois Inaccuracy Complaint Form https://www.icann.org/wicf/)
>>> Last update of WHOIS database: 2019-06-17T16:19:54Z <<<

For more information on Whois status codes, please visit https://icann.org/epp

Access to Public Interest Registry WHOIS information is provided to assist persons

The Registrar of Record identified in this output may have an RDDS service that can
```

**Lincoln/Bunch 0592**

Name: Mark Bunch  Page: 24
Claim Number: 8220685

https://uscorporates.com/business/co/caon-city/royal-gorge-gun-and-pistol-club-inc/1460546



**Lincoln/Bunch 0593**

Name: Mark Bunch                                                                    Page: 25
Claim Number: 8220685

**Business Licensing**

https://www.sos.state.co.us/biz/BusinessEntityDetail.do?quitButtonDestination=BusinessEntityResults&nameTyp=ENT&masterFileId=19921045518&entityId2=19921045518&fileId=19921045518&srchTyp=ENTITY

## Summary

| Details | | | |
|---|---|---|---|
| Name | ROYAL GORGE GUN AND PISTOL CLUB INC. | | |
| Status | Good Standing | Formation date | 05/04/1992 |
| ID number | 19921045518 | Form | Nonprofit Corporation |
| Periodic report month | December | Jurisdiction | Colorado |
| Principal office street address | , United States | | |
| Principal office mailing address | n/a | | |

| Registered Agent | |
|---|---|
| Name | Mark Bunch |
| Street address | , United States |
| Mailing address | , United States |

https://www.sos.state.co.us/biz/BusinessEntityDetail.do?quitButtonDestination=BusinessEntityResults&nameTyp=ENT&masterFileId=20091356327&entityId2=20091356327&fileId=20091356327&srchTyp=ENTITY

## Summary

| Details | | | |
|---|---|---|---|
| Name | Lincoln Park Pawn LLC | | |
| Status | Good Standing | Formation date | 07/02/2009 |
| ID number | 20091356327 | Form | Limited Liability Company |
| Periodic report month | December | Jurisdiction | Colorado |
| Principal office street address | , United States | | |
| Principal office mailing address | , United States | | |

| Registered Agent | |
|---|---|
| Name | Mark Bryan Bunch |
| Street address | United States |
| Mailing address | United States |

**Lincoln/Bunch 0594**

Name: Mark Bunch                                                                                              Page: 26
Claim Number: 8220685

**Email**

FREEDOMRUNNER@MSN.COM
FREEDOMRUNNER69@COMCAST.NET
HEALTHEHORAN50@HOTMAIL.COM
JPOWELL@TWCNY.RR.COM
MBUNCH@PDIPUEBLO.ORG
MARK@PDIPUEBLO.COM
BUNCHM@QWEST.NET
NFO@PDIPUEBLO.ORG

This report does not guarantee the accuracy or truthfulness of the information as to the subject of the investigation, but only that it is accurately copied from publicly available sources. Information generated as a result of identity theft, including evidence of criminal activity, may be inaccurately associated with the consumer who is the subject of the report.

| Enclosures |
|---|

NCR

**END OF REPORT**

**Lincoln/Bunch 0595**

**Initial Payment Set up Worksheet**

**Claimant's Name**          Mark Bunch                                        **DOB**

**Customer**                 Charter Communications Inc

**LTD Claim #**              8220685                              **Work State:** CO

**Associated Claims**                   Type  STD - n/a as WC Claim          Type

**Benefit End date of associated claims**

**Contractual EP**           Greater of End of STD Benefits or 26 weeks

**LTD Benefit begin date**   8/15/2018              **DOD**  2/14/2018  **AGE**  54

**Max Benefit date**         9/16/2030       Age 67

**Does policy include COLA provision**          No

**Sources used to verify BME amount**    Elig file Eff 01/01/18 indicates Annual $107,543.52 / 12 mos = $8961.96 BME

**BME amount**               $8,961.96          **Benefit percentage**          60.00

                                                **Gross modal benefit**      $5,377.18

**Benefit Begin date**       8/15/2018

**Approved thru date**       8/14/2020       24 months own occupation

**Offsets entered**          Type                          Amount
                             WCOF - pending pay hx; dcm will refer for offset/set-up pymt upon receipt

**Deductions entered**       **Effective:**              **Through**

| **Type** | **Amount** | **Type** | **Amount** |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**Tax Withholding**              **Federal**                        **State**

**Completed by:**        **Jackie M.**              **Approved by:**

**Lincoln/Bunch 0596**

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207

MR. MARK BUNCH

**Lincoln/Bunch 0597**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

June 12, 2019

Mr. Mark B. Bunch

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685

Dear Mr. Mark Bunch:

Liberty Life Assurance Company of Boston, now a Lincoln Financial Group company is responsible
for managing claims for Long Term Disability (LTD) benefits under Charter Communications,
Inc.'s Group Disability Policy.  We are writing in reference to your claim for LTD benefits under the
Policy.

In addition to your Long Term Disability (LTD) benefit, you may qualify for additional benefits
from the Social Security Administration.

There are a number of advantages for you if you are approved for Social Security Disability
benefits.  These advantages are outlined in the attachment, and include:

- Increased Social Security Retirement benefits
- Cost of Living Adjustment (COLA) increases
- Expedited Medicare coverage
- Dependent and Spousal benefits
- Return to Work incentives

The purpose of this letter is to help you apply for those benefits.

We realize that applying for Social Security Disability benefits can be intimidating. To help you
through the process, we are providing information on using the services of Doherty, Cella, Keane &
Associates, a Social Security claimant representative.  Doherty, Cella, Keane & Associates
specializes in preparing Social Security Disability claims and, when necessary, representing
claimants.  They have a 90% success rate in obtaining awards.  Their professional and experienced
staff will act on your behalf and will keep your contact with the Social Security Administration to a
minimum.  If you are using the services of this representative, their fee will be paid directly by the
Social Security Administration and the cost of this fee will be deducted from any disability
overpayment created due to the receipt of retroactive Social Security Benefits.  This will be

Lincoln/Bunch 0598

explained to you in greater detail upon accepting representation by Doherty, Cella, Keane & Associates.

However, if you are choosing to apply for Social Security benefits without utilizing our Social Security Claimant representative services, you must initiate the process by either calling SSA toll free at 1-800-772-1213 (for TTY call 1-800-325-0778), applying directly online at www.socialsecurity.gov/disabilityssi/apply.html, or by visiting your local Social Security office.

If you have any other family member (dependents) that may be eligible for benefits, please make sure Social Security is informed so application and payment for dependent benefits is not delayed.

You are required to apply for Social Security benefits under the terms of Charter Communications, Inc.'s LTD Policy and it is important that you begin this process immediately. Therefore, please initiate your application within 45 days from the date of this letter, July 26, 2019, and complete and return the enclosed forms. A return envelope has been provided for your convenience.

Per the terms of the disability Policy, failure to provide proof of filing within the stated timeframe will result in a reduction to your benefit from Liberty Life Assurance Company of Boston equal to an estimated amount of Social Security benefits. Therefore, if you do not file within the 45-day time frame, your benefit will be reduced by an estimated amount as deemed eligible by the Social Security Administration. If proof of filing is subsequently received, this reduction will be refunded to you.

If you are approved for Social Security Disability benefits, the disability benefits received by you from Liberty Life Assurance Company of Boston will be reduced by the amount you receive from Social Security. In other words, you will continue to receive the same amount of monthly benefits, but the money will come from two sources. If you are entitled to retroactive benefits, you may receive a significant payment from Social Security. This money is essentially money that Liberty Life Assurance Company of Boston advanced to you while you were waiting for Social Security's decision, and you must repay it immediately upon our request.

If you have any questions regarding this letter or the Social Security process, please contact us at the number below.

Sincerely,

Danielle Davis
Short Term Disability Case Manager
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

Attachments:   Advantages of Social Security Disability Benefits Form

2  of  2

Lincoln/Bunch 0599

# Advantages of Social Security Disability Benefits

- **Increased Disability Benefits**
  - **Though you and your dependents' initial Social Security benefit would be offset from your Long Term Disability payment, your future Social Security cost of living (COLA) increases would not.  Therefore you would maximize your combined benefits because they would increase each year.**

- **Increased Retirement Benefits**
  - **For any period within a year that you are not paying into Social Security (FICA) out of your earnings, zeros are being factored into your earnings record. If found eligible for SSDI for any period of time when there were zeros, they will be excluded from the calculation of future benefits.  As a result, the amount of your eventual Social Security Retirement Benefit could be _substantially higher_.**

- **Cost of Living Adjustment (COLA) Raises**
  - **SSA will provide you and any eligible dependents an increase annually.  These increases will not affect your Long Term Disability benefits.**

- **Tax Free Income**
  - **The majority of Social Security beneficiaries who receive Social Security Disability income are either entirely or partially tax free based on certain criteria set by SSA.**

- **Medicare Coverage**
  - **After you have received Social Security Disability benefits for 24 months, regardless of your age, you also become eligible for Medicare benefits.  This includes Part A Hospital benefits, and Part B Medical benefits, which added to any other health insurance coverage you might have, will increase your overall health insurance protection.**
  - **Once you establish Medicare Eligibility your premiums for any other health insurance you might have could decrease. With Medicare coverage available to help pay medical expenses, such premiums may be adjusted downwards.**
  - **Medicare Part A is at no cost while Medicare Part B has an associated premium. You can access http://www.socialsecurity.gov/medicare/ for more information and costs associated with the program.**

- **COBRA Extension**
  - **If you receive Social Security Disability benefits the length of your COBRA benefits may be extended an additional 11 months.**

- **Return To Work Incentives**
  - **Social Security will provide you opportunities to Return To Work while still paying you disability benefits.**

**Lincoln/Bunch 0600**

06/12/2019  12:38    7196350966                                          PAGE 01/05

# SHAKESHAFT & GORMAN LAW FIRM, LLP

1935 Jamboree Dr. | Suite 202 | Colorado Springs, CO 80920
Tel 719.635.5886 | Fax 719.635.0966 | www.shakeshaftlawfirm.com

### FACSIMILE TRANSMISSION

**DATE:**            June 12, 2019

**TO:**              **Liberty Life Assurance Company**

**FROM:**            Brandy Newton| Paralegal

**PAGES INCLUDING COVER SHEET:**         5

**FAX NUMBER:**      603-559-9400

**REGARDING:**       Mark Bunch

**Comments:**        Claim Number: 8220685

Please see the following Supplemental Appeal on behalf of Mark Bunch along with supporting documents.

IF YOU DO NOT RECEIVE ALL THE PAGES OR IF ANY PART IS ILLEGIBLE, PLEASE CALL (719) 635-5886.

### NOTICE

THIS MESSAGE IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN PRIVILEGED OR CONFIDENTIAL INFORMATION WHICH IS EXEMPT FROM DISCLOSURE PURSUANT TO APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR IS NOT AN EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY OF THIS MESSAGE TO THE INTENDED RECIPIENT, DISTRIBUTION, COPYING OR OTHER DISSEMINATION OF THE INFORMATION CONTAINED IN THIS COMMUNICATION IS PROHIBITED. PLEASE CONTACT (719) 635-5886 AND RETURN THE ORIGINAL MESSAGE TO SHAKESHAFT LAW FIRM, 1935 JAMBOREE DRIVE, STE. 202, COLORADO SPRINGS, CO 80920.

**Lincoln/Bunch 0601**



# SHAKESHAFT-GORMAN
## — LAW FIRM, LLP —

| | | | |
|---|---|---|---|
| **Kenneth J. Shakeshaft** | • Attorney at Law | **Main Office** | |
| **Joseph M. Gorman** | • Attorney at Law | Shakeshaft - Gorman Law Firm | |
| Cindy Maddox | • Paralegal | 1935 Jamboree Drive, Suite 202 | |
| Brandy Newton | • Paralegal | Colorado Springs, CO 80920 | |

June 12, 2019

**<u>Via U.S. Mail & Facsimile: 603-559-9400</u>**

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
Adjuster – Courtney Grygiel
P.O. Box 7213
London, KY  40742-7213

**RE:**    **Claimant:**    **Mark Bunch**
       **Employer:**    **Charter Communications, Inc.**
       **Claim No.:**    **8220685**

Dear Ms. Grygiel:

Attached please find an additional report from Thomas Higginbotham, D.O. dated May 7, 2019.

Please consider this as part of Mr. Bunch's appeal.

Please contact our office with any questions.

Sincerely,

Kenneth J. Shakeshaft
KJS/bn
Enclosures

**Lincoln/Bunch 0602**

BUNCH, Mark
05/07/19
DOB:

S:    Mr. Bunch returns for follow-up after last seeing him in 11/20/2018.
      I forwarded a summary letter to his WC attorney on 02/19/2019.  I had
      an insurance peer-peer phone conference on 04/23/2019.  Since then, I
      have received multiple records, primarily those from the speech
      therapist.

      Mr. Bunch has been receiving regular care with the speech therapist.
      He relates that he has been taking the blood pressure medicine
      regularly.  He has not yet set up a treating relationship with a
      primary care provider where he lives. He is requesting blood pressure
      medication refills.

      I received a request from Social Security for medical records.

      He continues to wear corrective lenses from the neuro-optometrist,
      but this correction is an older prescription. He has been wearing
      them about 2 hours on and 1 hour off.  He has no scheduled
      appointment with the neuro-optometrist.

      When asked if he has had any visits to the emergency department since
      I saw him last, he stated "I don't think so". He doesn't think that
      he has seen the neurologist recently and is not sure when he saw the
      neurologist last but thinks it was in November. He is not sure when
      he has seen a psychologist last.

      He continues to not drive and was driven here by a friend. I've asked
      if he has had any falls recently and he stated, "I don't think so".

      Albeit slowly, he relates that he could dress, eat, bathe, and attend
      to hair care independently. He does no vacuuming or sweeping or
      household chores.  Someone else does the cooking.  He does no outside
      maintenance.  He will go grocery shopping but only with assistance.
      He does grocery shopping very early or very late because crowds and
      visual and auditory stimuli are too overwhelming for him. He has
      difficulty reading.  He has difficulty watching TV because of blurred
      vision and double vision.  He typically listens to TV.  He struggles
      with stair climbing because of imbalance.  He has constant tinnitus
      that affects his concentration.  He does very little socialization.
      He does not listen much to the radio or music.

O:    He is unaccompanied. His presentation is concerning.  His gait and
      stance are abnormal.  He grabs for the wall when walking because of
      complaints of imbalance and visual spatial distortion.

**Lincoln/Bunch 0603**

Page 2
BUNCH, Mark
05/07/19

His head is significantly forward-flexed and held.  When coaxed to stand erect, he has truncal imbalance and progressive dizziness. He continues to have difficulty speaking and has difficulty with word finding.  He speaks very softly and "under his breath".  He does not make eye-to-eye contact.  He is unsure about current world events but does recognize that Mr. Trump is the president. He cannot recall 3 words after just repeating them, let alone 5 minutes later.  He continues to stutter. His finger to my finger testing is near normal for the right side, but he is unable to do so on the left side.  He misjudges reaching for items that I handed to him.  He has a positive Romberg's maneuver and rocks forward to backwards and falls backwards up against the wall repeatedly. Blood pressure is 132/82.  Heart rate is 100.  Pulse oximetry is 93% O2 on room air; he took his blood pressure medicine earlier today.  He has no pedal edema.  Heart is of regular rate and rhythm without murmur.  Lungs are clear to auscultation.  Thoracic expansion is fair.  He has no abdominal tenderness.  He is photosensitive.  He is wearing his corrective goggles.  Midline vision testing is abnormal.  Strength and sensation are normal for the upper and lower extremities.  On palpation he is tender about the left suprascapular musculature as well as along the left cervicoparaspinal muscles.  He has a mild degree of tension with mild limitations with side bending and rotation to the right and backward extension.  Backward extension of the neck causes him dizziness and a fall.

A:    Traumatic brain injury with post-concussion sequela of:
            Visual difficulties with spatial disorientation H53.30
            Neurocognitive disorder G31.84
            Adjustment disorder with depressed mood F06.30
      Persistent cervical strain S16.1XXD

P:    He is self-paying for his therapies as he has no health insurance. He is attending only speech therapy and no physical therapy.

      I refilled the Micardis 20 mg, #90.  I will hold off on the clonidine prescription at this point.  I've asked that he return in a month for me to monitor his blood pressure.

      He primarily vegetates.  He is severely limited because of his visual-spatial disorientation and imbalance and prosody of speech. He cannot drive.  He cannot walk and stand for even up to 5 minutes without moderate issues with imbalance and bumping into items and falling.

**Lincoln/Bunch 0604**

Page 3
BUNCH, Mark
05/07/19

He has very limited concentration, focus, and pacing of any tasks,
even those of activities of daily living.   He is incapable of
substantial gainful employment even on a part-time basis.

Thomas Higginbotham D.O.

cc:   Kenneth Shakeshaft, Esq.

Lincoln/Bunch 0605

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207

SHAKESHAFT-GORMAN LAW FIRM
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS CO 80920

**Lincoln/Bunch 0606**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

June 12, 2019

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

Liberty Life Assurance Company of Boston, now a Lincoln Financial Group company is responsible for managing claims for Long Term Disability (LTD) benefits under Charter Communications, Inc.'s Group Disability Policy.  We are writing in reference to Mark Bunch's claim for LTD benefits under the Policy.

We have completed a thorough review of the information submitted and have approved Mr. Bunch's claim for benefits.

The Policy states that to be eligible for benefits Mr. Bunch must meet the definition of disability as defined in the LTD Policy:

>    **"*Disability*"** or **"*Disabled*"** *means:*
>
> 1. *For persons other than pilots, co-pilots, and crewmembers of an aircraft:*
>
>    i.   *that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*
>
>    ii.  *thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*
>
> 2. *With respect to Covered Persons employed as pilots, co-pilots and crewmembers of an aircraft:*
>
>    **"*Disability*"** or **"*Disabled*"** *means as a result of Injury or Sickness: (a) the Covered Person cannot perform the material and substantial duties of his own*

**Lincoln/Bunch 0607**

*occupation; and (b) after benefits have been paid for 12 months, the Covered Person is unable to perform the Material and Substantial Duties of Any Occupation*

Based on the medical and vocational information contained in our claim file, we have determined that Mr. Bunch is unable to perform the duties of his occupation.

We have determined that his date of disability is February 14, 2018 and his benefits begin on August 15, 2018. Benefit payment will be sent under separate cover.

The Policy provides benefits at 60% of his pre-disability earnings less benefits from other income. These include, but are not limited to benefits under the United States Social Security Act, the Public Employees' Retirement Fund and Workers' Compensation benefits.

He will continue to receive benefits provided all contractual provisions continue to be met or until Mr. Bunch returns to work or other income benefits are awarded as defined by the Policy.

Mr. Bunch may have his benefit checks automatically deposited into his checking or savings account by completing the enclosed Direct Deposit Form and returning it to our office.

While Mr. Bunch is eligible to receive Long Term Disability benefits, we will not require payment of any LTD premiums normally due.

In addition to Mr. Bunch's LTD benefits he may also qualify for disability benefits from the Social Security Administration. The Policy requires that he apply for Social Security benefits should his disability be expected to extend for twelve months. The enclosed Social Security fact sheet explains the advantages of obtaining an award. To apply, contact Mr. Bunch's local Social Security office or call 1-800-772-1213. Once Mr. Bunch has applied, please let us know and provide a copy of his proof of application.

We ask that he complete the forms indicated below and return them to our office by July 27, 2019.

|     |                                                    |
| --- | -------------------------------------------------- |
| X   | Third Party Liability Information Form              |
| X   | Activities Questionnaire Form                       |
| X   | Claimant Information Form                            |
| X   | Claimant Supplementary Statement                    |
| X   | Direct Deposit Application                           |
| X   | Family Information Questionnaire                     |
| X   | Reimbursement Agreement Form                         |
| X   | SS Reimbursement Agreement                           |
| X   | Training Education Experience                        |
| X   | Workers' Compensation Information Form               |
| X   | Advantages of Social Security Disability Benefits Form |
| X   | Survivor / Estate Information Form                   |

**Lincoln/Bunch 0608**

<u>  X  </u>  Charter Dual Auth
<u>  X  </u>  W-4S 2019
<u>     </u>  Other

Please be aware that the condition for which Mr. Bunch is approved disability benefits is subject to the following limitation:

***Mental Illness and/or Substance Abuse and/or Non-Verifiable Symptoms Limitation***

*The benefit for Disability due to Mental Illness and/or Substance Abuse and/or Non-Verifiable Symptoms will not exceed a combined period of 24 months of Monthly Benefit payments while the Covered Person is insured under this policy.*

*If the Covered Person is in a Hospital or Institution for Mental Illness and/or Substance Abuse at the end of the combined period of 24 months, the Monthly Benefit will be paid during the confinement.*

*If the Covered Person is not confined in a Hospital or Institution for Mental Illness and/or Substance Abuse, but is fully participating in an Extended Treatment Plan for the condition that caused Disability, the Monthly Benefit will be payable to a Covered Person for up to a combined period of 36 months.*

*In no event will the Monthly Benefit be payable beyond the Maximum Benefit Period shown in the Schedule of Benefits.*

*"**Mental Illness**" means a psychiatric or psychological condition classified as such in the most current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) regardless of the underlying cause of the Mental Illness. If the DSM is discontinued, Liberty will use the replacement chosen or published by the American Psychiatric Association.*

*"**Non-Verifiable Symptoms**" means the Covered Person's subjective complaints to a Physician which cannot be diagnosed using tests, procedures or clinical examinations typically accepted in the practice of medicine. Such symptoms may include, but are not limited to, dizziness, fatigue, headache, loss of energy, numbness, pain, ringing in the ear, and stiffness.*

We have determined that Mr. Bunch is disabled from vertical heterophoria and depression.  As his disability is related to a mental nervous condition, his claim is subject to the above limitation.

If Mr. Bunch's condition no longer meets the criteria of the above limitation but remains disabling as supported by medical documentation, his claim will be evaluated for continued benefits beyond this limitation.

We will continue to review Mr. Bunch's claim and request medical documentation to evaluate his

**Lincoln/Bunch 0609**

continued eligibility for benefits. Please note that approval at this time does not guarantee payments through the maximum benefit duration. It is imperative that he assist with the management of his claim going forward by providing prompt responses to our requests for information. Please notify our office immediately if his condition changes or his physicians alter his treatment plan.

If Mr. Bunch's benefit is overpaid Liberty Life Assurance Company of Boston has the right to recover the amount overpaid in full. To avoid an overpayment, please notify our office immediately if Mr. Bunch begins receiving other income for this same time period as outlined in his LTD Policy.

If Mr. Bunch has any questions regarding this matter, please contact me.

Sincerely,

Danielle Davis
Short Term Disability Case Manager
Phone No.: (844) 384-5858 Ext. 18338
Secure Fax No.: (603) 559-0490

Attachments:    Third Party Liability Information Form
Activities Questionnaire Form
Claimant Information Form
Claimant Supplementary Statement
Direct Deposit Application
Family Information Questionnaire
Reimbursement Agreement Form
SS Reimbursement Agreement
Training Education Experience
Workers' Compensation Information Form
Advantages of Social Security Disability Benefits Form
Survivor / Estate Information Form
Charter Dual Auth
W-4S 2019

4  of 4

**Lincoln/Bunch 0610**

# THIRD PARTY LIABILITY INFORMATION FORM



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

**Return To:**  Danielle Davis

---

EMPLOYEE/CLAIMANT NAME: Mark Bunch

CLAIM NO: 8220685

EMPLOYER/SPONSOR: Charter Communications, Inc.          DATE OF BIRTH:

---

We have received your disability claim and it is our understanding that a Third Party has caused your Injury or Sickness.  Please provide the following information and return this form to my attention in order to avoid any delay in processing.

**Did any one of the following cause your Injury or Sickness?**

|  | | |
|---|---|---|
| Motor Vehicle accident | Yes ☐ | No ☐ |
| Slip and fall accident | Yes ☐ | No ☐ |
| Occupational injury or sickness | Yes ☐ | No ☐ |
| Faulty Product/Product Liability | Yes ☐ | No ☐ |
| Medical Malpractice | Yes ☐ | No ☐ |

1. Date of Injury/Sickness: _____

2. Location of Injury (please include town and state): _____

3. Description of Injury/Sickness (please include copy of accident report, if applicable): _____
_____

4. Is someone else responsible for your damages?          Yes ☐     No ☐

  If "Yes":     Name: _____
               Address: _____
               Telephone No.: ( ) _____

5. Are any claims being made?          Yes ☐     No ☐

  If "Yes":     Insurance Carrier: _____
               Address: _____
               Telephone No.: ( ) _____
               Claim Representative: _____
               Claim No.: _____

6. Are you receiving no fault/personal income protection benefits from your own auto insurance carrier?          Yes ☐     No ☐

  If "Yes":     Insurance Carrier: _____
               Address: _____
               Telephone No.: ( ) _____
               Claim Representative: _____
               Claim No.: _____
               Weekly Benefit $ _____

7. Are you using the services of an attorney?          Yes ☐     No ☐

  If "Yes":     Name: _____
               Address: _____
               Telephone No.: ( ) _____

DRIVER'S LICENSE #: _____

SIGNATURE: _____          DATE: _____

DP 447D Rev. 12/02

**Lincoln/Bunch 0611**

## ACTIVITIES QUESTIONNAIRE



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

**Return To:** Danielle Davis

*page 1 of 3*

EMPLOYEE/CLAIMANT NAME: Mark Bunch

CLAIM NO: 8220685                                      DATE OF BIRTH:

EMPLOYER/SPONSOR: Charter Communications, Inc.

**TO BE COMPLETED BY THE CLAIMANT:**

Please answer the following questions and return the form to Liberty Life Assurance Company of Boston, now a Lincoln Financial Group company.

How long are you able to:

sit _____ stand _____ walk _____

How many hours a day do you:

sit _____ stand _____ walk _____

Do you take a nap during the day?

Yes_____ No _____

If Yes, for how long? _____ At what time of the day?_____

How many hours a day do you spend in bed?_____

Do you require any assistive devices such as a:

cane _____ walker_____ crutches _____ wheelchair _____ other _____

How long are you able to sit in a car?_____

Do you hold a valid driver's license?

Yes_____ No _____

If No, please explain: _____

If Yes, how long are you able to drive a car? _____

**Please provide a copy of your driver's license when returning this form.**

How do you maintain contact with people or activities that matter most to you?

Do you have children?

Yes_____ No _____ If Yes, what are their dates of birth _____

Do you need help caring for your children?

Yes _____ No _____

Are you responsible for taking care of any grandchildren, an elderly parent or grandparent?

Yes_____ No _____ If Yes, please explain _____

How many times a day do you leave the house during the week? _____

On the weekends? _____

How often do you run errands? _____

Please describe what errands you most commonly run: _____

**Lincoln/Bunch 0612**



How often do you get outdoors? _____

Are you left or right hand dominant?          Left _____    Right _____

Are you able to work in your garden?          Yes _____    No _____

Are you able to work on your house?          Yes _____    No _____

Are you able to wash your car?          Yes _____    No _____

How much time is spent daily on your home computer?
_____ None _____ 0-1 hours _____ 1-2 hours _____ 2-3 hours _____ 3+ hours

How much time is spent weekly on your home computer?
_____ None _____ 0-1 hours _____ 1-2 hours _____ 2-3 hours _____ 3+ hours

What activities do you perform on your home computer.   Please check all that apply:
_____ Pay bills _____ Read news/articles _____ Use search engines _____ Send emails
_____ Visit chat rooms _____ Photos   Other: _____

What computer software applications do you utilize.  Please check all that apply:
_____ Word processing (Word) _____ Spreadsheets (Excel) _____ Database (Access) _____ Graphics
_____ Photo software (Photoshop) _____ Programming  Other: _____

Do you have a working home copy machine/fax machine? _____ Yes _____ No

If yes, please explain purpose and usage: _____

The following questions intend to identify whether or not you are able to independently conduct routine daily

activities.  If assistance is required, please clarify.

| How are the following accomplished? | By Whom? | Assistance Required? |
|---|---|---|
| Grocery Shopping | | |
| Carrying groceries into the house | | |
| Cooking meals | | |
| Cleaning after meals | | |
| Cleaning bathrooms | | |
| Vacuuming | | |
| Doing the laundry | | |
| Opening and responding to mail | | |
| Managing your finances | | |
| Balancing your checkbook | | |
| Bathing yourself | | |
| Styling your own hair | | |
| Getting dressed | | |
| Going up and down stairs | | |

Have you been confined to a hospital within the last 12 months? Yes _____ No _____

If Yes, please provide reason and hospital contact Information: _____

**Lincoln/Bunch 0613**



How often do you travel or take vacation? _____

Where do you go?  How do you get there (transportation method)? _____

_____

Are you able to pursue your hobbies?          Yes _____      No _____

If Yes, please describe _____

Do you participate in an exercise program?          Yes _____      No _____

If Yes, please describe _____

Do you do any Volunteer work?          Yes _____      No _____

If Yes:

    how many hours per day? _____

    how many hours per week? _____

    for whom? _____

Are you working for wages?          Yes _____      No _____

If Yes, please provide employer's name _____

**Describe in your own words, what prevents you from engaging in <u>any gainful employment</u>.**

_____

_____

_____

_____

_____

**Please describe your daily routine: (if more space is needed, please use the back of this form)**

_____

_____

_____

_____

Is there a daytime number where you can be reached in the event we have any questions regarding your responses?

_____

In the event we cannot reach you, please provide an alternate contact's name and telephone number.

_____

**Upon completion of this form, please sign and date below and return in the envelope provided to you.  Thank you for your cooperation.

The above statements are true and complete to the best of my knowledge and belief and I hereby authorize any hospital or physician who has treated me or other person who has attended me or examined me or any company or Government agency to furnish the Insurance Company providing this firm or their representative, any and all information with respect to any illness, injury, medical history, consultations, prescriptions, treatments or benefits and copies of all applicable records.  A photo static copy of this form will be as valid as the original.  I understand that if this information changes at any time, I will contact Lincoln Financial Group.

Name: _____      Date: _____

Signature: _____

**Lincoln/Bunch 0614**

# CLAIMANT INFORMATION FORM



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

**Return To:**  Danielle Davis

---

EMPLOYEE/CLAIMANT NAME:  Mark Bunch

CLAIM NO:  8220685

EMPLOYER/SPONSOR:  Charter Communications, Inc.          DATE OF BIRTH:

---

**TO BE COMPLETED BY EMPLOYEE:**

Please provide us with the names of all medical providers, hospitals, medical insurance carriers, and pharmacies used during the time period from 01/01/2019 to present.  *If additional space is needed, please use a separate sheet of paper.*

## MEDICAL PROVIDERS/THERAPISTS/CLINICS/HOSPITALS:

Name: _____          Name: _____
Specialty: _____          Specialty: _____
Address: _____          Address: _____
_____          _____
Telephone No. :(___)_____ Fax No. :(___)_____          Telephone No. :(___)_____ Fax No. :(___)_____

Name: _____          Name: _____
Specialty: _____          Specialty: _____
Address: _____          Address: _____
_____          _____
Telephone No. :(___)_____ Fax No. :(___)_____          Telephone No. :(___)_____ Fax No. :(___)_____

## MEDICAL INSURANCE CARRIER(S):

Name: _____          Name: _____
Specialty: _____          Specialty: _____
Address: _____          Address: _____
_____          _____
Telephone No. :(___)_____ Fax No. :(___)_____          Telephone No. :(___)_____ Fax No. :(___)_____

## PHARMACY(S):

Name: _____          Name: _____
Specialty: _____          Specialty: _____
Address: _____          Address: _____
_____          _____
Telephone No. :(___)_____ Fax No. :(___)_____          Telephone No. :(___)_____ Fax No. :(___)_____

I hereby attest the above statement is true. I understand that any person who knowingly and with intent to injure, defraud, or deceive the insurance company files a statement or claim containing any false or misleading information may be guilty of a criminal act punishable under law.

**SIGNATURE:** _____  **DATE:** _____

**Lincoln/Bunch 0615**

# CLAIMANT SUPPLEMENTARY STATEMENT



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

**Return to:**  Danielle Davis

---

**EMPLOYEE/CLAIMANT NAME:**  Mark Bunch          **CLAIM #:** 8220685

**EMPLOYER:** Charter Communications, Inc.          **DATE OF BIRTH:**

| Full Name (Last, First, Middle Int.) | Social Security # | Email Address | |
|---|---|---|---|
| Street Address | City | State | Zip Code |
| Telephone Number (include area code) | Cell Phone Number (include area code) | Marital Status | |

| Spouse's Full Name and Date of Birth | Number of Children | Dates of Birth of Children |
|---|---|---|

Next of Kin/Emergency Contact (required should additional benefits be payable in the event of your death).
Name                    Relationship to you?                    Tel #.

Have you returned to any type of employment or activity that provides you money? If yes, please provide name of employer, start date, hours worked per/wk and rate of pay.

Do you own a business, or are you involved or affiliated with any type of business, corporation, partnership, or sole proprietary? If yes, please explain and provide proof of income from prior year.

Do you have a tax identification number (TIN) or employer identification number (EIN)? If yes, for what purpose?

Do you hold a professional license? If yes, for what purpose?

Are you associated with an Internet business of any kind? Do you have a website? If yes, please explain and provide website address(es) and the date started.

Are you pursuing money from a third party or involved in any litigation? If yes, please explain why and provide your attorney's contact information.

Are you pursuing moneys from a third party: Workers' Compensation  Carrier, Insurance Co., or Individual? If yes, please explain.

Identify other income you are receiving or for which you have applied. You have an ongoing obligation to notify us immediately of receipt of any other income or any other changes to this information, including supporting documentation confirming the amount you receive and the effective date:

| Yes | No | Type | Amount per Week/Month | Date Began Receiving | Date Ceased Receiving | Date Income Applied for |
|---|---|---|---|---|---|---|
| ☐ | ☐ | Wages/ Income/ Money/ Unemployment | $ | | | |
| ☐ | ☐ | Social Security (disability or retirement) | $ | | | |
| ☐ | ☐ | Social Security (for your spouse/dependents) | $ | | | |
| ☐ | ☐ | Short Term Disability or  State Disability | $ | | | |
| ☐ | ☐ | Pension or Retirement benefits (lump sum/ongoing) | $ | | | |
| ☐ | ☐ | Workers' Compensation | $ | | | |
| ☐ | ☐ | Severance or Employment Separation payment (provide Agreement) | $ | | | |
| ☐ | ☐ | Other income/money/benefit  (describe) | | | | |

**If my claim is overpaid, I understand and agree that Lincoln Financial Group has the right to recover such overpayment from me, including the right to reduce future disability benefits, or pursue other collection methods as appropriate. The above statements are true and complete to the best of my knowledge and I understand that any person who knowingly, and with intent to injure, defraud, or deceive Lincoln Financial Group and/or Plan Sponsor, files a statement or claim containing any false, incomplete, or misleading information may be guilty of a criminal act punishable under law. A photo static copy of this form will be valid as the original.**

**EMPLOYEE'S PRINTED NAME:**

**DATE:**          **EMPLOYEE'S SIGNATURE:**

---

DP 409

**Lincoln/Bunch 0616**

# DIRECT DEPOSIT APPLICATION



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

**Return To:**  Danielle Davis

EMPLOYEE/CLAIMANT NAME:  Mark Bunch

CLAIM NO:  8220685

EMPLOYER/SPONSOR:  Charter Communications, Inc.          DATE OF BIRTH:

**CHECK ONE:**  ☐ **New**    ☐ **Change**

**YOUR TELEPHONE NUMBER:**    (          )

**ADDRESS:**                    **CITY:**              **STATE:**      **ZIP:**

### AUTHORIZATION AGREEMENT FOR PRE-AUTHORIZED DEPOSITS

I (We) hereby authorize and request Liberty Life Assurance Company of Boston, now a Lincoln Financial Group company, to make payment of any Disability payments owing to me (either of us) by initiating credit entries or adjustment entries to my account indicated below in the bank named below, hereinafter called BANK, and I (we) authorize and request BANK to accept any credit entries or adjustment entries initiated by LIBERTY LIFE ASSURANCE COMPANY OF BOSTON to such account and to enter the same to such account without responsibility for the correctness thereof.

## REQUIRED FIELDS ARE BOLDED BELOW
### ***All must be completed or your form will be rejected***

**TYPE OF ACCOUNT:**    ☐ **Checking**    ☐ **Savings**      **BANK NAME:**

**9 DIGIT ABA ROUTING NUMBER:**              **BANK ADDRESS:**

**YOUR ACCOUNT NUMBER:**              **CITY:**        **STATE:**      **ZIP:**

**BANK PHONE:**    (      )

### ***You must check yes or no to BOTH of the following two questions***

**WILL THESE DIRECT DEPOSIT BENEFIT PAYMENTS BE SENT TO A BANK OUTSIDE THE U.S.?**
☐ **YES**    ☐ **NO**

**DOES YOUR BANK HAVE STANDING ORDERS FROM YOU TO MOVE FUNDS FROM THE ACCOUNT WE CREDITED TO A BANK OUTSIDE THE U.S.?**
☐ **YES**    ☐ **NO**

It is my understanding that this agreement may be terminated by me (either of us) at any time by written notification to LIBERTY LIFE ASSURANCE COMPANY OF BOSTON or BANK.  Any such notification to LIBERTY LIFE ASSURANCE COMPANY OF BOSTON shall be effective only with respect to entries initiated by LIBERTY LIFE ASSURANCE COMPANY OF BOSTON after receipt of such notification and a reasonable opportunity to act on it. Any such notification to BANK shall be effective only with respect to entries credited to my (our) account by BANK after receipt of such notification and a reasonable time to act on it.  I also understand that it is my responsibility to confirm payments or funds have been deposited into the specified account before authorizing payment or making withdrawals from specified account.

Signed:                    Date:

The term "BANK" as used on this application includes Credit Unions, Savings and Loans, etc

**ATTACH VOIDED CHECK HERE**
**Your application will be rejected unless included with the form.**

DP481 DD APLICATION 01/10

**Lincoln/Bunch 0617**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

Liberty Life Assurance Company of Boston is pleased to offer you the security and convenience of having your Disability Benefit check deposited electronically to your bank account.  Direct Deposit, often referred to as electronic fund transfer (EFT), means no more mail delays or trips to the bank to cash your check.

**How does direct deposit work?**
Lincoln Financial Group's bank will transfer your benefit payment directly into your bank account.
Lincoln Financial Group recommends this payment option because it is predictable, safe and convenient.

**How do I sign up?**
Complete the enclosed Pre-Authorized Direct Deposit Application.  Fold it and insert it into the enclosed pre addressed and postage paid envelope along with the **necessary voided check or savings account deposit slip** and drop in the nearest mailbox.  Be sure to print all the information clearly, and sign the application.  Unfortunately, we cannot accept applications by phone.

**How soon can my direct deposits begin?**
To ensure accuracy, Direct Deposit will actually begin within 10 business days following successful notification to, and verification from your bank.  Generally, this means you will receive several benefit checks by mail after you send in your direct deposit application.

**C**a**n I sign up for Direct Deposit and forward my benefit payment to a foreign bank account**?
No, at this time Liberty Life Assurance Company of Boston will not allow benefit payment to be paid via EFT if they are funded to a foreign bank or intended to be forwarded to a foreign bank account.

**What if I move to a non US State or territory and receiving Direct Deposit payments?**
You will receive a notification that your direct deposit is being deactivated and provided a new form to complete for consideration of ongoing direct deposit payments.

**Will I continue to receive an Explanation of Benefits (EOB) Statement in the mail?**
Yes. Each deposit will also be confirmed by your bank on your regular bank statement each month.  Funds    will be deposited to your account within 3 - 5 days after the payment date shown on the Explanation of Benefits (EOB) Statement.

**What happens if I am out of town when the payment is due?**
Your deposit is in your account.  You may access it any time after it is deposited.

**What if I change bank accounts?**
Notify your Disability Case Manager and a new form will be sent to you for completion with the information about your new account.  We can continue the direct deposit process with your new bank following notification to and verification from your new bank.  You may receive several benefit checks by mail in the interim.  Do not close your original bank account until you confirm that we have discontinued the Direct Deposit process to that account.

**Can I change my mind?**
Yes. You can start or stop Direct Deposit at any time. Just notify your Disability Case Manager.

**What if I have questions?**
Call your assigned Disability Case Manager.  They are available Monday through Friday from 8:30 - 4:30 P.M EST.

**What happens if I fail to complete my direct deposit application?**
Incomplete applications will be mailed back to you along with a new application for you to complete.

Liberty Life Assurance Company of Boston

Group Benefits

**Lincoln/Bunch 0618**

# FAMILY INFORMATION QUESTIONNAIRE



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

**Return to:** Danielle Davis

EMPLOYEE/CLAIMANT NAME: Mark Bunch

CLAIM NO: 8220685

EMPLOYER/SPONSOR: Charter Communications, Inc.          DATE OF BIRTH:

To document your Long Term Disability Claim file and properly administer benefits, we need the following information. Please complete and return this form in the envelope provided. Thank you for your prompt attention to this request for information.

What is your marital status?          Single _____          Married _____          Divorced _____

If married, please indicate your spouse's name and date of birth.   Name: _____          DOB: _____

Do you have children or dependents*?     Yes _____                No _____

If yes, please provide additional details below, using additional space as needed.

\* An eligible dependent may include:
- Biological child(ren)
- Stepchildren
- Children not residing in your household
- Custodial Grandchildren
- A child 18 or older with a disability that started before age 22
- Adopted Children
- A child 18-19 and a full-time student (not higher than grade 12)

| Name | DOB | If Divorced or Separated, Indicate Custodial or Non-Custodial | High School Student? Yes or No | Anticipated/Actual Last Month/Year of High School |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

Is your spouse and/or children receiving Social Security benefits?     Yes: _____   No: _____

If yes, please complete the information below and include a copy of their Social Security Award Certificate(s).

If no, however, they were previously receiving Social Security benefits in the past and are no longer, please include a copy of the Social Security Termination notice (s), if this information has not already been provided to Liberty Life Assurance Company of Boston, now a Lincoln Financial Group company.

| Name | DOB | Awarded as: Dependent, Spouse or Disabled | Current Monthly Benefit Amount | Date of Entitlement to Benefits | Benefit Termination Date (if applicable) |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

Your Name: _____          Date: _____

**Lincoln/Bunch 0619**

## REIMBURSEMENT AGREEMENT



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

**Return To:** Danielle Davis

Please complete, sign, and return a copy to Lincoln Financial Group.

---

**TO BE COMPLETED BY LINCOLN FINANCIAL GROUP**

Claimant Name: **Mark Bunch**

Address:

Name of Employer: **Charter Communications, Inc.**

---

In consideration of the receipt of disability benefit payments received by me from the Plan Sponsor, I

( **Mark Bunch** ) hereby agree:

(Claimant Name)

(a)    to repay the Plan Sponsor for such benefits to the extent they are for losses for which compensation is paid to the covered person by or on behalf of the person at fault;

(b)    to allow the Plan Sponsor a lien on such compensation and to hold such compensation in a trust for the Sponsor, and;

(c)    to execute and give to the Plan Sponsor any instruments needed to secure the rights under (a) and (b).

Further, when the Plan Sponsor has paid benefits to or on behalf of the injured covered person, the Plan Sponsor will be subrogated to all rights of recovery that the covered has against the person at fault. These subrogation rights will extend only to recovery of the amount the Plan Sponsor has paid.  The covered person must execute and deliver any instruments needed and do whatever else is necessary to secure those rights to the Plan Sponsor.

_____          _____
(Date)                                          (Signature of injured individual or legal representative)

**PLEASE RETAIN A COPY FOR YOUR RECORDS, OR ONE MAY BE PROVIDED FOR YOU UPON REQUEST.**

**Lincoln/Bunch 0620**



**LINCOLN FINANCIAL GROUP
LIBERTY LIFE ASSURANCE COMPANY OF BOSTON**

**SOCIAL SECURITY/REIMBURSEMENT AGREEMENT**

**INSTRUCTIONS:  The policy/plan under which you are covered provides that Short Term, Statutory and/or Long Term Disability benefits (herein referred to as "disability benefits") will be reduced by the amount of Social Security benefits which you and your dependents (if applicable) are eligible to receive.  This may affect your future disability benefits as well as prior disability benefits which have been issued to you.**

**The policy/plan also provides that in the event you do not apply for Social Security Disability benefits, your disability benefits will be reduced by the amount of Social Security Disability benefits you and your dependents (if applicable) would be eligible to receive if application had been made.  Please review, sign and return this form to our office.  We recommend you maintain a copy for your records.**

**Claimant:** Mark Bunch                                                                          **Date of Birth:**

**Employer:** Charter Communications, Inc.                              **Policy/Plan Sponsor No.** 04 - 444809

**A)  If disability benefits are approved I request that Liberty Life Assurance Company of Boston, now a Lincoln Financial Group company (Liberty Life) pay me my benefit with <u>no reduction</u> for estimated Social Security Disability benefits until Social Security makes a decision.  I understand that this may result in an overpayment of disability benefits paid to me if Social Security subsequently awards benefits to me, and I understand that I must repay this overpayment to Liberty Life.  In consideration of Liberty Life paying me a disability benefit with no reduction for estimated Social Security benefits until Social Security makes a decision, I agree to the following:**

**1)  I agree to apply for Social Security Benefits within 45 days of Liberty Life's written request and provide proof of such application.**
**2)  I agree to comply with the policy/plan provision applicable for appealing a denial, if not awarded and provided proof of such appeal.**
**3)  I agree to notify Liberty Life immediately if awarded Social Security Benefits.**
**4)  I authorize Liberty Life to release information concerning Social Security benefits to my employer for administration of my employer sponsored benefits.**
**5)  If Social Security awards benefits to me, I agree that Liberty Life has a first lien on all such benefits to the extent of any overpayment or debt, and I agree to hold all such Social Security benefits in a trust for the benefit of Liberty Life until the amount of Liberty Life's overpayment has been repaid in full.**
**6)  I agree to repay Liberty Life in full within the time period specified in my policy/plan provision.**

**B)  Social Security benefits <u>will be estimated</u> if:**

**1)  I do not sign and return this form to Liberty Life within 45 days of receipt.**
**2)  I do not apply for Social Security benefits within 45 days of Liberty Life's written request and provide proof of such application, or I have failed to actively pursue my Social Security claim according to the policy/plan provisions.**

**If I do not repay any overpayment due to Liberty Life in full, I understand Liberty Life will discontinue payment of benefits to me, including payments for insurance premiums and other deductions paid on my behalf, and Liberty Life may withhold future disability benefits until the overpayment is recovered in full.  In addition, Liberty Life may also pursue other means permitted by law to collect the overpayment amount owed.**

**(Insured/Employee signature)**

**(Address)**

**(Date)**

*Please retain a copy for your records or one can be provided upon request.*

**Lincoln/Bunch 0621**

# TRAINING-EDUCATION-EXPERIENCE FORM (TEE)



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

EMPLOYEE/CLAIMANT NAME: Mark Bunch

CLAIM NO: 8220685

EMPLOYER/SPONSOR: Charter Communications, Inc.                DATE OF BIRTH:

## Please fill out each section completely

**EDUCATIONAL BACKGROUND:**                **(If you have a resume, please attach)**

Highest Grade Completed: _____    Check if earned: ☐ GED  ☐ HS Diploma

Vocational Training: _____    Certificate Program completed: _____

Associates Degree: _____    College: number of years: _____

Bachelor's Degree:  BA /BS Major: _____    Graduate School: MA ☐  MS ☐  CAGS ☐  PHD Degree: _____

Professional Training, License, Certificates(s): _____

Are you currently attending any classes:  ☐ Y    ☐ N    If yes, provide name of school: _____

List any other Training or Classes Attended or Plan to Attend: _____

Additional Skills, Hobbies & Volunteer Work _____

Did you serve in the Armed Forces?  ☐ Y    ☐ N    From: _____    To: _____

Branch of Service: _____    Specialty: _____

**WORK EXPERIENCE:** (If you've held different positions for the same employer, please include them below)
Please list chronologically (starting with the most recent) all the jobs/positions you have held in the past 15 years.
(add additional pages if needed for a complete work history).

1.  Company: _____ Department: _____ From: _____ To: _____
    Job Title(s): _____
    Supervisory Experience  ☐ Y   ☐ N
    Tasks/Duties (please be specific): _____
    _____

2.  Company: _____ Department: _____ From: _____ To: _____
    Job Title(s): _____
    Supervisory Experience  ☐ Y   ☐ N
    Tasks/Duties (please be specific): _____
    _____

A Lincoln Financial Group Company

**Lincoln/Bunch 0622**

3.  Company: _____ Department: _____ From: _____ To: _____

    Job Title(s): _____

    Supervisory Experience ☐ Y   ☐ N

    Tasks/Duties (please be specific): _____

    _____

4.  Company: _____ Department: _____ From: _____ To: _____

    Job Title(s): _____

    Supervisory Experience ☐ Y   ☐ N

    Tasks/Duties (please be specific): _____

    _____

5.  Company: _____ Department: _____ From: _____ To: _____

    Job Title(s): _____

    Supervisory Experience ☐ Y   ☐ N

    Tasks/Duties (please be specific): _____

    _____

## Computer Utilization:

Computer Training/Courses, Certifications: _____

|  | Home | Work |  | Home | Work |
|---|---|---|---|---|---|
| Email | ☐ | ☐ | Graphics Software | ☐ | ☐ |
| Internet | ☐ | ☐ | Installation/Repair Hardware | ☐ | ☐ |
| Word Processing (MS Word) | ☐ | ☐ | | | |
| Spread Sheet (MS Excel) | ☐ | ☐ | Installation/Repair Programming | ☐ | ☐ |
| Database | ☐ | ☐ | Project Management | ☐ | ☐ |
| Photo Software | ☐ | ☐ | Other: _____ | | |

How much time is spent daily on your work computer? ☐ None  ☐ 1-2 hours  ☐ 2-3 hours  ☐ 3+ hours

How much time is spent daily on your home computer? ☐ None  ☐ 1-2 hours  ☐ 2-3 hours  ☐ 3+ hours

Keyboarding/Typing Experience: ☐ Yes  ☐ No   If yes, WPM (words per minute) _____
(We recommend- http://typingtest.com to determine WPM)

Please provide your email address: Personal: _____  Work: _____

SIGNATURE: _____  PHONE NO: ( __ ) _____

2

**Lincoln/Bunch 0623**

# Workers' Compensation
# INFORMATION FORM



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 559-0490

Return To: Danielle Davis

EMPLOYEE/CLAIMANT NAME: Mark Bunch

CLAIM NO: 8220685

EMPLOYER/SPONSOR: Charter Communications, Inc.        DATE OF BIRTH:

We received your disability claim form. The form indicates that your disability is the result of a work related Injury/Sickness. Please provide the following information and return this form to my attention in order to avoid any delay in processing.

1. Date of Injury/Sickness:

2. Location of Injury (please provide complete address):

3. Description of Injury/Sickness (please include copy of accident report):

4. Please provide the name of your Employer:

    Company Name:

    Address:

    Supervisor Name:                    Telephone:  (     )

5. Please provide the name of your Employer's Workers' Compensation Carrier or Administrator:

    Insurance Carrier:

    Address:

    Telephone:  (     )

    Claim Representative:

6. Are you collecting benefits from your Employer's Workers' Compensation Insurance Company or Administrator?

    Yes ☐        No ☐

    If "Yes":        Weekly Benefit Amount $

        Claim No.:

7. Are you using the services of an attorney?

    Yes ☐        No ☐

    If "Yes":        Name:

        Address:

        Telephone:  (     )

SIGNATURE:                                DATE:

DP 539D – Rev. 12/02

**Lincoln/Bunch 0624**

# <u>Advantages of Social Security Disability Benefits</u>

- **Increased Disability Benefits**
  - ° **Though you and your dependents' initial Social Security benefit would be offset from your Long Term Disability payment, your future Social Security cost of living (COLA) increases would not.  Therefore you would maximize your combined benefits because they would increase each year.**

- **Increased Retirement Benefits**
  - ° **For any period within a year that you are not paying into Social Security (FICA) out of your earnings, zeros are being factored into your earnings record. If found eligible for SSDI for any period of time when there were zeros, they will be excluded from the calculation of future benefits.  As a result, the amount of your eventual Social Security Retirement Benefit could be <u>*substantially higher*</u>.**

- **Cost of Living Adjustment (COLA) Raises**
  - ° **SSA will provide you and any eligible dependents an increase annually.  These increases will not affect your Long Term Disability benefits.**

- **Tax Free Income**
  - ° **The majority of Social Security beneficiaries who receive Social Security Disability income are either entirely or partially tax free based on certain criteria set by SSA.**

- **Medicare Coverage**
  - ° **After you have received Social Security Disability benefits for 24 months, regardless of your age, you also become eligible for Medicare benefits.  This includes Part A Hospital benefits, and Part B Medical benefits, which added to any other health insurance coverage you might have, will increase your overall health insurance protection.**
  - ° **Once you establish Medicare Eligibility your premiums for any other health insurance you might have could decrease. With Medicare coverage available to help pay medical expenses, such premiums may be adjusted downwards.**
  - ° **Medicare Part A is at no cost while Medicare Part B has an associated premium. You can access http://www.socialsecurity.gov/medicare/ for more information and costs associated with the program.**

- **COBRA Extension**
  - ° **If you receive Social Security Disability benefits the length of your COBRA benefits may be extended an additional 11 months.**

- **Return To Work Incentives**
  - ° **Social Security will provide you opportunities to Return To Work while still paying you disability benefits.**

**Lincoln/Bunch 0625**

# Survivor / Estate Information Form

*This information is required in the event that any benefits are payable after your death.*

## TO BE COMPLETED BY EMPLOYEE:

**YOUR SPOUSE:**                                    **YOUR DOMESTIC PARTNER:**

| **Name:** | **Name:** |
|---|---|
| **Address:** | **Address:** |
| | |
| | |
| | |
| **Telephone Number:** | **Telephone Number:** |

**CHILDREN:  List ALL children.  Use reverse side if necessary.**

| **Name:** | **Date of Birth:** |
|---|---|
| **Address:** | |
| | |
| | |
| | |
| **Telephone Number:** | |

| **Name:** | **Date of Birth:** |
|---|---|
| **Address:** | |
| | |
| | |
| | |
| **Telephone Number:** | |

| **Name:** | **Date of Birth:** |
|---|---|
| **Address:** | |
| | |
| | |
| | |
| **Telephone Number:** | |

**GUARDIANSHIP:  For all children under age 18 listed above:**

| **Name:** |
|---|
| **Address:** |
| |
| |
| |
| **Telephone Number:** |

**DO YOU HAVE A WILL?   YES \_\_\_\_  NO \_\_\_\_**            **DO YOU HAVE A TRUST?   YES\_\_\_\_  NO\_\_\_\_**

**ADMINISTRATOR OR EXECUTOR OF YOUR WILL AND/OR YOUR ESTATE:**

| **Name of Executor or Administrator:** |
|---|
| **Address:** |
| |
| |
| |
| **Telephone Number:** |

**The above statements are true and correct to the best of my knowledge and I understand that any person who knowingly, and with intent to injure, defraud, of deceive the Company and/or Plan Sponsor,  files a statement or claim containing any false, incomplete, or misleading information may be guilty of a criminal act punishable  under law.  A photocopy of this form will be as valid as the original.**

**DATE:**_____        **EMPLOYEE'S PRINTED NAME:**_____

**EMPLOYEE'S SIGNATURE:**_____

**Lincoln/Bunch 0626**

| Form **W-4S** Department of the Treasury Internal Revenue Service | **Request for Federal Income Tax Withholding From Sick Pay** ▶ **Give this form to the third-party payer of your sick pay.** ▶ Go to *www.irs.gov/FormW4S* for the latest information. | OMB No. 1545-0074 **2019** |
|---|---|---|

| Type or print your first name and middle initial | Last name | Your social security number |
|---|---|---|

Home address (number and street or rural route)

City or town, state, and ZIP code

Claim or identification number (if any)   . . . . . . . . . . . . . . . . . . . . . . . . . . .

I request federal income tax withholding from my sick pay payments. I want the following amount to be withheld from each payment. (See **Worksheet** below.)   . . . . . . . . . . . . . . . . . . .   **$**

Employee's signature ▶                                                                        Date ▶

.....................................................**Separate here and give the top part of this form to the payer. Keep the lower part for your records.** .........................................................

### Worksheet (Keep for your records. Do not send to the Internal Revenue Service.)

| | | | |
|---|---|---|---|
| 1 | Enter amount of adjusted gross income that you expect in 2019   . . . . . . . . . . . . . . . | **1** | |
| 2 | If you plan to itemize deductions on Schedule A (Form 1040), enter the estimated total of your deductions. See Pub. 505 for details. If you don't plan to itemize deductions, enter the standard deduction. (See the instructions on page 2 for the standard deduction amount, including additional standard deductions for age and blindness.) **Note:** There is no deduction for personal exemptions for 2019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **2** | |
| 3 | Subtract line 2 from line 1   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **3** | |
| 4 | Tax. Figure your tax on line 3 by using the **2019** Tax Rate Schedule X, Y-1, Y-2, or Z on page 2. **Do not** use any tax tables, worksheets, or schedules in the 2018 Form 1040 instructions   . . . . . . | **4** | |
| 5 | Credits (child tax and higher education credits, credit for child and dependent care expenses, etc.) . | **5** | |
| 6 | Subtract line 5 from line 4   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **6** | |
| 7 | Estimated federal income tax withheld or to be withheld from other sources (including amounts withheld due to a prior Form W-4S) during 2019 or paid or to be paid with 2019 estimated tax payments  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **7** | |
| 8 | Subtract line 7 from line 6   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **8** | |
| 9 | Enter the number of sick pay payments you expect to receive this year to which this Form W-4S will apply   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **9** | |
| 10 | Divide line 8 by line 9. Round to the nearest dollar. This is the amount that should be withheld from each sick pay payment. Be sure it meets the requirements for the amount that should be withheld, as explained under *Amount to be withheld* below. If it does, enter this amount on Form W-4S above | **10** | |

## General Instructions

**Purpose of form.** Give this form to the third-party payer of your sick pay, such as an insurance company, if you want federal income tax withheld from the payments. You aren't required to have federal income tax withheld from sick pay paid by a third party. However, if you choose to request such withholding, Internal Revenue Code sections 3402(o) and 6109 and their regulations require you to provide the information requested on this form. Don't use this form if your employer (or its agent) makes the payments because employers are already required to withhold federal income tax from sick pay.

**Note:** If you receive sick pay under a collective bargaining agreement, see your union representative or employer.

**Definition.** Sick pay is a payment that you receive:
• Under a plan to which your employer is a party, and
• In place of wages for any period when you're temporarily absent from work because of your sickness or injury.

**Amount to be withheld.** Enter on this form the amount that you want withheld from each payment. The amount that you enter:
• Must be in whole dollars (for example, $35, not $34.50).
• Must be at least $4 per day, $20 per week, or $88 per month based on your payroll period.

• Must not reduce the net amount of each sick pay payment that you receive to less than $10.

For payments larger or smaller than a regular full payment of sick pay, the amount withheld will be in the same proportion as your regular withholding from sick pay. For example, if your regular full payment of $100 a week normally has $25 (25%) withheld, then $20 (25%) will be withheld from a partial payment of $80.

**Caution:** You may be subject to a penalty if your tax payments during the year aren't at least 90% of the tax shown on your tax return. For exceptions and details, see Pub. 505, Tax Withholding and Estimated Tax. You may pay tax during the year through withholding or estimated tax payments or both. To avoid a penalty, make sure that you have enough tax withheld or make estimated tax payments using Form 1040-ES, Estimated Tax for Individuals. You may estimate your federal income tax liability by using the worksheet above.

**Sign this form.** Form W-4S **is not** valid unless you sign it.

**Statement of income tax withheld.** After the end of the year, you'll receive a Form W-2, Wage and Tax Statement, reporting the taxable sick pay paid and federal income tax withheld during the year. These amounts are reported to the Internal Revenue Service.

*(continued on back)*

**For Paperwork Reduction Act Notice, see page 2.**          Cat. No. 10226E          Form **W-4S** (2019)

**Lincoln/Bunch 0627**

**Changing your withholding.** Form W-4S remains in effect until you change or revoke it. You may do this by giving a new Form W-4S or a written notice to the payer of your sick pay. To revoke your previous Form W-4S, complete a new Form W-4S and write "Revoked" in the money amount box, sign it, and give it to the payer.

## Specific Instructions for Worksheet

You may use the worksheet on page 1 to estimate the amount of federal income tax that you want withheld from each sick pay payment. Use your tax return for last year and the worksheet as a basis for estimating your tax, tax credits, and withholding for this year.

You may not want to use Form W-4S if you already have your total tax covered by estimated tax payments or other withholding.

If you expect to file a joint return, be sure to include the income, deductions, credits, and payments of both yourself and your spouse in figuring the amount you want withheld.

**Caution:** If any of the amounts on the worksheet change after you give Form W-4S to the payer, you should use a new Form W-4S to request a change in the amount withheld.

### Line 2—Deductions

**Itemized deductions.** Itemized deductions include qualifying home mortgage interest, charitable contributions, state and local taxes (up to $10,000), and medical expenses in excess of 10% of your adjusted gross income. See Pub. 505 for details.

**Standard deduction.** For 2019, the standard deduction amounts are:

| Filing Status | Standard Deduction |
|---|---|
| Married filing jointly or qualifying widow(er) . . . . . . . | $24,400* |
| Head of household . . . . . . . . . . . . . . . | $18,350* |
| Single or Married filing separately . . . . . . . . . . | $12,200* |

* If you're age 65 or older or blind, add to the standard deduction amount the additional amount that applies to you as shown in the next paragraph. If you can be claimed as a dependent on another person's return, see *Limited standard deduction for dependents,* later.

*Additional standard deduction for the elderly or blind.* An additional standard deduction of $1,300 is allowed for a married individual (filing jointly or separately) or qualifying widow(er) who is 65 or older or blind, $2,600 if 65 or older **and** blind. If both spouses are 65 or older or blind, an additional $2,600 is allowed on a joint return ($2,600 on a separate return if your spouse is your dependent). If both spouses are 65 or older **and** blind, an additional $5,200 is allowed on a joint return ($5,200 on a separate return if your spouse is your dependent). An additional $1,650 is allowed for an unmarried individual (single or head of household) who is 65 or older or blind, $3,300 if 65 or older **and** blind. See Pub. 505, Worksheet 2-4.

*Limited standard deduction for dependents.* If you are a dependent of another person, your standard deduction is the greater of (a) $1,100 or (b) your earned income plus $350 (up to the regular standard deduction for your filing status). If you're 65 or older or blind, see Pub. 505 for additional amounts that you may claim.

*Certain individuals not eligible for standard deduction.* For the following individuals, the standard deduction is zero.

- A married individual filing a separate return if either spouse itemizes deductions.
- A nonresident alien individual.
- An individual filing a return for a period of less than 12 months because of a change in his or her annual accounting period.

### Line 5—Credits

Include on this line any tax credits that you're entitled to claim, such as the child tax and higher education credits, credit for child and dependent care expenses, earned income credit, or credit for the elderly or the disabled. See Pub. 505, Table 1-2, for credits.

### Line 7—Tax Withholding and Estimated Tax

Enter the federal income tax that you expect will be withheld this year on income other than sick pay and any payments made or to be made with 2019 estimated tax payments. Include any federal income tax already withheld or to be withheld from wages and pensions.

## 2019 Tax Rate Schedules

### Schedule X—Single

| If line 3 is: Over— | But not over— | The tax is: | of the amount over— |
|---|---|---|---|
| $0 | $9,700 | $0 + 10% | $0 |
| 9,700 | 39,475 | 970.00 + 12% | 9,700 |
| 39,475 | 84,200 | 4,543.00 + 22% | 39,475 |
| 84,200 | 160,725 | 14,382.50 + 24% | 84,200 |
| 160,725 | 204,100 | 32,748.50 + 32% | 160,725 |
| 204,100 | 510,300 | 46,628.50 + 35% | 204,100 |
| 510,300 | and greater | 153,798.50 + 37% | 510,300 |

### Schedule Z—Head of household

| If line 3 is: Over— | But not over— | The tax is: | of the amount over— |
|---|---|---|---|
| $0 | $13,850 | $0 + 10% | $0 |
| 13,850 | 52,850 | 1,385 + 12% | 13,850 |
| 52,850 | 84,200 | 6,065 + 22% | 52,850 |
| 84,200 | 160,700 | 12,962 + 24% | 84,200 |
| 160,700 | 204,100 | 31,322 + 32% | 160,700 |
| 204,100 | 510,300 | 45,210 + 35% | 204,100 |
| 510,300 | and greater | 152,320 + 37% | 510,300 |

### Schedule Y-1—Married filing jointly or Qualifying widow(er)

| If line 3 is: Over— | But not over— | The tax is: | of the amount over— |
|---|---|---|---|
| $0 | $19,400 | $0 + 10% | $0 |
| 19,400 | 78,950 | 1,940 + 12% | 19,400 |
| 78,950 | 168,400 | 9,086 + 22% | 78,950 |
| 168,400 | 321,450 | 28,765 + 24% | 168,400 |
| 321,450 | 408,200 | 65,497 + 32% | 321,450 |
| 408,200 | 612,350 | 93,257 + 35% | 408,200 |
| 612,350 | and greater | 164,709.50 + 37% | 612,350 |

### Schedule Y-2—Married filing separately

| If line 3 is: Over— | But not over— | The tax is: | of the amount over— |
|---|---|---|---|
| $0 | $9,700 | $0 + 10% | $0 |
| 9,700 | 39,475 | 970.00 + 12% | 9,700 |
| 39,475 | 84,200 | 4,543.00 + 22% | 39,475 |
| 84,200 | 160,725 | 14,382.50 + 24% | 84,200 |
| 160,725 | 204,100 | 32,748.50 + 32% | 160,725 |
| 204,100 | 306,175 | 46,628.50 + 35% | 204,100 |
| 306,175 | and greater | 82,354.75 + 37% | 306,175 |

**Paperwork Reduction Act Notice.** We ask for the information on this form to carry out the Internal Revenue laws of the United States.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue

law. Generally, tax returns and return information are confidential, as required by Code section 6103.

The average time and expenses required to complete and file this form will vary depending on individual circumstances. For estimated averages, see the instructions for your income tax return.

If you have suggestions for making this form simpler, we would be happy to hear from you. See the instructions for your income tax return.

**Lincoln/Bunch 0628**

## VOLUNTARY AUTHORIZATION FOR RELEASE OF INFORMATION (ROI)

**Note:** This authorization is designed to comply with HIPPA and relates to information necessary to administer coverage, benefits and services made available to you by your Employer. You are not required to sign this authorization, but if you do not, the individuals and entities who administer the coverage and services may not be able to process your request for coverage, benefits or services.

Employee Name:  Mark Bunch                              Telephone #: (844) 384-5858

Claim #: 8220685                                        Employer Name:  Charter Communications, Inc.

Last Day Worked:  02/13/2018                            Disability Begin Date: 02/14/2018

I authorize any health plan, physician, health care professional, medical practitioner, hospital, clinic, laboratory, pharmacy, medical or medically related facility, or other health care provider that has information about my health, health history, or insurance claims or benefits that relate to my health condition or disability status to provide access to or copies of this information to any individual or entity who administers absence, disability or return-to-work coverage, insurance, benefits or services on behalf of my Employer, including but not limited to Sedgwick Claims Management Services, Inc. (Sedgwick) or Lincoln Financial Group. Information about my health may relate to any disorder or the immune system including but not limited to HIV and AIDS; use of drugs or alcohol; and mental and physical history, condition, advice or treatment, but does not include psychotherapy notes.

I understand that any information obtained with this authorization will be used for evaluating and administering my request for absence, disability or return-to-work coverage, insurance, benefits or services offered by my Employer, including requests for reasonable accommodation(s), workers' compensation and/or disability benefits; or other leave. I understand that information disclosed under this authorization is subject to re-disclosure and may no longer be protected by certain federal regulations governing the privacy of health information, such as HIPAA, though it may continue to be protected by other applicable privacy laws and regulations.

For any claim for insurance benefits, this authorization is valid for the shorter of 24 months or the duration of my claim. For all other permitted disclosures, this authorization is valid for 12 months from the date below. I am entitled to a copy of this authorization and a photographic or electronic copy of it is as valid as the original. Sedgwick may use my information obtained pursuant to this authorization in any other claim matter that Sedgwick may administer or handle related to me.

**I understand that I do not have to give this authorization.** If I choose not to give the authorization – or if I later revoke it – I understand that Sedgwick and/or Lincoln Financial Group may not be able to evaluate or administer my request for coverage, benefits or services and that my request for any such coverage, benefits or services may be delayed or denied as a result.

The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. "Genetic Information" as defined by GINA includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

## IMPORTANT INFORMATION ABOUT YOUR RIGHTS

I may revoke this authorization at any time before its expiration date by notifying Sedgwick at (P.O. Box 14667, Lexington KY 40512-4667)) and Lincoln Financial Group at (P.O. Box 7207, London KY 40742-7207) in writing but, the revocation will not have any effect on any actions the party took before it received the revocation.

_____          _____
Employee's Signature                         Date Signed

_____          _____
Signature of Personal Representative who has the authority to    Name of Personal Representative who has authority to Sign on Behalf of
Behalf of the Employee                       the Employee (Please attach copy of document conferring authority).

Complete and return this form via fax to (859) 280-2880 or mail to Sedgwick/ P.O. Box 14667 / Lexington, KY 40512-4667. *For assistance, call Sedgwick at* (877) 892-6707.

**Lincoln/Bunch 0629**

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213

SHAKESHAFT-GORMAN LAW FIRM
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS CO 80920

**Lincoln/Bunch 0630**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 422-7909

June 7, 2019

Shakeshaft-Gorman Law Firm
1935 JAMBOREE DRIVE
SUITE  202
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 8220685
       Claimant: Mark Bunch

To Whom It May Concern:

We have completed our review of your client's request for reconsideration of LTD disability benefits, and have determined that benefits will be approved.  This determination is based on a review of the documentation contained in his file.  Any benefit payment will be sent under separate cover.

Mr. Bunch's file has been returned to Danielle Davis, Disability Claim Case Manager in our Charlotte office for payment disbursement.  Ms. Davis may be reached at (877) 353-6404 ext. 18338.  For further assistance, please contact the Disability Claim Case Manager.

If you have any questions regarding this matter, please contact me.

Sincerely,

Courtney Grygiel
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 13301
Secure Fax No.: (603) 422-7909

1  of 1

Lincoln/Bunch 0631

06/04/2019  16:30    7196350966                                          PAGE 01/99

# SHAKESHAFT & GORMAN LAW FIRM, LLP

1935 Jamboree Dr. | Suite 202 | Colorado Springs, CO 80920
Tel 719.635.5886 | Fax 719.635.0966 | www.shakeshaftlawfirm.com

## FACSIMILE TRANSMISSION

**DATE:**                   June 4, 2019

**TO:**                     **Liberty Life Assurance Company**

**FROM:**                   Brandy Newton| Paralegal

**PAGES INCLUDING COVER SHEET:**          110

**FAX NUMBER:**             603-559-9400

**REGARDING:**              Mark Bunch

**Comments:**               Claim Number: 8220685

Please see the following Appeal on behalf of Mark Bunch along with supporting documents.

IF YOU DO NOT RECEIVE ALL THE PAGES OR IF ANY PART IS ILLEGIBLE, PLEASE CALL (719) 635-5886.

### NOTICE

THIS MESSAGE IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN PRIVILEGED OR CONFIDENTIAL INFORMATION WHICH IS EXEMPT FROM DISCLOSURE PURSUANT TO APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR IS NOT AN EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY OF THIS MESSAGE TO THE INTENDED RECIPIENT, DISTRIBUTION, COPYING OR OTHER DISSEMINATION OF THE INFORMATION CONTAINED IN THIS COMMUNICATION IS PROHIBITED. PLEASE CONTACT (719) 635-5886 AND RETURN THE ORIGINAL MESSAGE TO SHAKESHAFT LAW FIRM, 1935 JAMBOREE DRIVE, STE. 202, COLORADO SPRINGS, CO 80920.

**Lincoln/Bunch 0632**



**SHAKESHAFT-GORMAN**
— LAW FIRM, LLP —

Kenneth J. Shakeshaft  • Attorney at Law
Joseph M. Gorman     • Attorney at Law
Cindy Maddox         • Paralegal
Brandy Newton        • Paralegal

Main Office
Shakeshaft - Gorman Law Firm
1935 Jamboree Drive, Suite 202
Colorado Springs, CO 80920

June 4, 2019

**Via U.S. Mail & Facsimile: 603-559-9400**

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
Adjuster – Courtney Grygiel
P.O. Box 7213
London, KY  40742-7213

**RE:  Claimant:    Mark Bunch**
**Employer:    Charter Communications, Inc.**
**Claim No.:    8220685**

Dear Ms. Grygiel:

Please consider this as additional information in support of Mr. Mark Bunch's appeal for long-term disability benefits.

We are providing additional information for Liberty Life Assurance's review.

I attach a statement from Mr. Bunch. Mr. Bunch confirms the events of the motor vehicle collision which lead to his injury. Mr. Bunch confirms he still has issues with his post-concussion/mild TBI such as headaches, ringing in ears, balance, insomnia, depression at times, neck pain and loss of range of motion. He also experiences double vision and difficulties with focusing and reading.

Mr. Bunch confirms in his statement he has followed the recommendations of Dr. Higginbotham in seeing a neurologist, Dr. Julia Brinley, seen a speech therapy therapist for treatment, undergone physical therapy and also treated with Dr. Saxerud.

It appears some of the information provided by the document reviewing doctors are questioning Mr. Bunch's financial motivation.

I am attaching a copy of Mr. Bunch's 2017 W-2 which documents Mr. Bunch's earnings were $103,698.71.

**Lincoln/Bunch 0633**

At the time of the crash, Mr. Bunch was employed earning over six figures per year.

In regard to so called "litigation" motivation, Mr. Bunch did have a claim for damages against the at-fault driver. I attach a copy of the injury Release dated October 3, 2018, confirming the bodily injury claim was resolved. There is no pending claim. Additionally, there never was any litigation involving this motor vehicle collision.

Mr. Bunch also had a Workers' Compensation claim arising out of the motor vehicle collision since he was on duty, that claim has also been fully resolved.

I provide a copy of the following medical records:

- Dr. Thomas Higginbotham records dated 5/3/18 through 11/20/18;
- Lincoln Group correspondence dated 4/23/19 to Dr. Higginbotham with hand written notes on letter from Dr. Higginbotham;
- Dr. Steven Olson – Report dated 2/27/18;
- Dr. Dennis Helffenstein reports dated 6/1/18 through 3/12/19;
- Parkview Medical Center report dated 2/13/18;
- St. Thomas More Hospital Physical Therapy Report dated 5/31/18;
- Dr. Julia Brinley report dated 10/19/18;
- Centura Health Outpatient Rehabilitation Speech Therapy records dated 10/31/18 through 4/24/19;
- Dr. Saxerud report dated 11/2/18; and
- Photo of head injury.

Mr. Bunch has been undergoing speech therapy as recommended by Dr. Higginbotham. He has received the speech therapy at Centura Health Outpatient Rehabilitation. We have included these records.

It appears that the review of Mr. Bunch's claim is focused on his financial motivation, potential litigation and whether he is malingering. As shown, Mr. Bunch was earning over $100,000.00 per year. His income since that time has been strictly limited to the minor settlements he received, and, the limited amount of Workers' Compensation benefits. At this juncture, he is still not working. He is losing over $100,000.00 annually by not working. There is no financial motivation he has to continue not working other than he has medical problems which prevent him from working.

In regard to malingering, I would refer you to the specialist, Dr. Helffenstein's report of March 12, 2019. Dr. Helffenstein notes:

> With regard to malingering, again I do not have enough data to render an opinion regarding this issue. I am the only provider that has administered Performance Validity Tests to Mr. Bunch. It remains my opinion that the bulk of his suboptimal scores on Performance Validity Testing are, in fact, explained by his residual high level of pain, depression, anxiety and fatigue at the time of my assessment with him. This is an opinion that seems to be corroborated by a number of his providers and evaluators, including Dr. Higginbotham and Dr. Ricci. At this point, there is

**Lincoln/Bunch 0634**

06/04/2019  16:30    7196350966                                        PAGE 04/99

only one score from one test that would suggest malingering. That is not enough data for any provider to render the professional opinion (or diagnosis) of malingering.

In summary, unfortunately Mr. Bunch has significant medical problems resulting from the concussion syndrome which have prevented him from returning to any employment. Mr. Bunch has undergone appropriate treatment. However, Mr. Bunch is also in a situation where he does not have health insurance as a result of the loss of his job.

While Mr. Bunch has shown improvement, he has not been released to work by his physicians. Mr. Bunch's conditions and limitations are verified not only by Dr. Higginbotham, a board certified occupational medicine physician, but also Dr. Dennis Helffenstein, and Dr. Michael Saxerud who has performed the neuro-vision therapy.

We would request a full favorable decision be issued for Mr. Bunch.

If you need any further information please let us know.

Sincerely,

Kenneth J. Shakeshaft
KJS/bp
Enclosures

**Lincoln/Bunch 0635**

On February 13th, 2018 I was injured in a accident car in Pueblo while coming home from working in Lamar and La Junta Colorado. That particular day I had left my house at around 7:30 in the morning in order to drive to my territory working in Lamar Colorado, approximately a 3 hour trip one way just to get there. After working day all long in both Lamar and La Junta, I made the daily journey back home after dark. I was hit by driver another in Pueblo Colorado and suffered a moderate concussion and cervical sprain.

Since that day, I have been unable to return to work due to the associated problems with this accident. I still headaches, ringing in ears my, balance problems, insomnia, sometimes depressed, neck pain and loss of range of motion. I still cannot go up stairs as my balance is still shaky because of my vision. I still have double vision and probelems focusing and reading. For months after my accident I was unable to even watch tv, I had to just listen to it. I can watch slow moving things now, but anything moving quickly like sports I am unable to watch as it makes me dizzy and gives me a headache as does flurescent lights.

For months I have been seen by a certified speec pathologist for trouble swallowing and speaking. I was diagnosed with dysphagia resulting from my head trauma and concussion. Thankfully I have seen improvement but anytime I get nervous I start stuttering which is very embarrassing.

I have been following the recommendations of my treating physician Dr. Higginbotham, who recommended/prescribed speech therapy, PT, chiropractic care and also to a vision specialist Dr. Saksenrud. I do not have any health insurance so it has been challenging to see and follow thru with everything at the same time but I have been doing my best to seek the treatment that I still need.

I had been set to be married on valentines day of 2018, the very next day after my accident. Since then with all the added stress of this accident, huge loss of income my relationship with my fiance' has been very strained. I went from making over $100,000 annually to having absolutely no income whatsoever. Thankfully at the end of 2018 I reached a settlement agreement with Worker's Comp for my injuries which have allowed me to at least stay in my home. I do not have any pending lawsuits or legal actions currently going on, but have applied for long term disability under my companies ltd insurance which hopefully they will approve.

I'm not sure what my holds future for me or what is going to happen which is very nerve racking and scary. From being in the top 5 % of sales reps for Charter communications on a national level, making more than $100,000 per year to not being able to walk stairs or even close my eyes in the shower for fear of losing my balance and falling again is a huge difference in my quality of life thru no fault of my own.

Sincerely,

Mark Bunch

**Lincoln/Bunch 0636**

06/04/2019   16:30    7196350966                                      PAGE 06/99

## 2017 W-2 and EARNINGS SUMMARY

| Employee | Reference | Copy |
| --- | --- | --- |

**W-2** Wage and Tax Statement **2017**
Copy C for employee's records. OMB No. 1545-0008

| d Control number | Dept. | Corp. | Employer use only |
| --- | --- | --- | --- |
| 1531239  VSP | | | 111875 |

c Employer's name, address, and ZIP code
CHARTER COMM HOLDING CO, LLC
AS AGENT FOR CHARTER COMMUNICATI
7800 CRESCENT EXECUTIVE DRIVE
CHARLOTTE, NC  28217

e/f Employee's name, address, and ZIP code
MARK BRYAN BUNCH

| b Employer's FED ID number 43-1854210 | a Employee's SSA number |
| --- | --- |
| 1 Wages, tips, other comp. 97427.13 | 2 Federal income tax withheld 2484.32 |
| 3 Social security wages 103698.71 | 4 Social security tax withheld 6429.32 |
| 5 Medicare wages and tips 103698.71 | 6 Medicare tax withheld 1503.63 |
| 7 Social security tips | 8 Allocated tips |
| 9 | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a See instructions for box 12  C  107.64 |
| 14 Other | 12b D  6271.58 |
| | 12c DD  6938.76 |
| | 12d |
| | 13 Stat emp Ret plan 3rd party sick pay  X |
| 15 State Employer's state ID no. CO  01808828 | 16 State wages, tips, etc. 97427.13 |
| 17 State income tax 4400.00 | 19 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

MARK BRYAN BUNCH                     Social Security Number: 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

© 2016 ADP, LLC

PAGE 01 OF 01

| 1 Wages, tips, other comp. 97427.13 | 2 Federal income tax withheld 2484.32 |
| --- | --- |
| 3 Social security wages 103698.71 | 4 Social security tax withheld 6429.32 |
| 5 Medicare wages and tips 103698.71 | 6 Medicare tax withheld 1503.63 |
| d Control number Dept. 1531239  VSP | Corp. Employer use only 111875 |

c Employer's name, address, and ZIP code
CHARTER COMM HOLDING CO, LLC
AS AGENT FOR CHARTER COMMUNICATI
7800 CRESCENT EXECUTIVE DRIVE
CHARLOTTE, NC  28217

| b Employer's FED ID number 43-1854210 | a Employee's SSA number |
| --- | --- |
| 7 Social security tips | 8 Allocated tips |
| 9 | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a See instructions for box 12  C  107.64 |
| 14 Other | 12b D  6271.58 |
| | 12c DD  6938.76 |
| | 12d |
| | 13 Stat emp Ret plan 3rd party sick pay  X |

e/f Employee's name, address and ZIP code
MARK BRYAN BUNCH

| 15 State Employer's state ID no. CO  01808828 | 16 State wages, tips, etc. 97427.13 |
| --- | --- |
| 17 State income tax 4400.00 | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

Federal  Filing  Copy
**W-2** Wage and Tax Statement **2017** OMB No. 1545-0008
Copy B to be filed with employee's Federal Income Tax Return.

| 1 Wages, tips, other comp. 97427.13 | 2 Federal income tax withheld 2484.32 |
| --- | --- |
| 3 Social security wages 103698.71 | 4 Social security tax withheld 6429.32 |
| 5 Medicare wages and tips 103698.71 | 6 Medicare tax withheld 1503.63 |
| d Control number Dept. 1531239  VSP | Corp. Employer use only 111875 |

c Employer's name, address, and ZIP code
CHARTER COMM HOLDING CO, LLC
AS AGENT FOR CHARTER COMMUNICATI
7800 CRESCENT EXECUTIVE DRIVE
CHARLOTTE, NC  28217

| b Employer's FED ID number 43-1854210 | a Employee's SSA number |
| --- | --- |
| 7 Social security tips | 8 Allocated tips |
| 9 | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a  C  107.64 |
| 14 Other | 12b D  6271.58 |
| | 12c DD  6938.76 |
| | 12d |
| | 13 Stat emp Ret plan 3rd party sick pay  X |

e/f Employee's name, address and ZIP code
MARK BRYAN BUNCH

| 15 State Employer's state ID no. CO  01808828 | 16 State wages, tips, etc. 97427.13 |
| --- | --- |
| 17 State income tax 4400.00 | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

CO. State  Filing  Copy
**W-2** Wage and Tax Statement **2017** OMB No. 1545-0008
Copy 2 to be filed with employee's State Income Tax Return.

| 1 Wages, tips, other comp. 97427.13 | 2 Federal income tax withheld 2484.32 |
| --- | --- |
| 3 Social security wages 103698.71 | 4 Social security tax withheld 6429.32 |
| 5 Medicare wages and tips 103698.71 | 6 Medicare tax withheld 1503.63 |
| d Control number Dept. 1531239  VSP | Corp. Employer use only 111875 |

c Employer's name, address, and ZIP code
CHARTER COMM HOLDING CO, LLC
AS AGENT FOR CHARTER COMMUNICATI
7800 CRESCENT EXECUTIVE DRIVE
CHARLOTTE, NC  28217

| b Employer's FED ID number 43-1854210 | a Employee's SSA number |
| --- | --- |
| 7 Social security tips | 8 Allocated tips |
| 9 | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a  C  107.64 |
| 14 Other | 12b D  6271.58 |
| | 12c DD  6938.76 |
| | 12d |
| | 13 Stat emp Ret plan 3rd party sick pay  X |

e/f Employee's name, address and ZIP code
MARK BRYAN BUNCH

| 15 State Employer's state ID no. CO  01808828 | 16 State wages, tips, etc. 97427.13 |
| --- | --- |
| 17 State income tax 4400.00 | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

City or Local  Filing  Copy
**W-2** Wage and Tax Statement **2017** OMB No. 1545-0008
Copy 2 to be filed with employee's City or Local Income Tax Return.

**Lincoln/Bunch 0637**

## BODILY INJURY RELEASE

Claim #: 18-4409205

Date: 10/3/2018

KNOW ALL BY THESE PRESENTS, THAT I/WE, Mark Bunch, a single male, for and in consideration of the sum of seventeen thousand and 0/100 dollars ($17,000.00), the receipt of which is hereby acknowledged, do hereby for myself/ourselves release and forever discharge Lisa Medina and Alexander Medina from any and all claims, actions, causes of action, demands, damages, costs and any compensation whatsoever, including any claims for loss of consortium, which the undersigned now has/have or which may hereafter accrue on account of or in any way arising out of an accident which occurred on or about 2/13/18, at or near I-25 and Highway 50 in Pueblo, Colorado/Pueblo County.

The undersigned reserve(s) their right to pursue and recover future medical expenses, health care and related expenses from any person, firm, or organization who may be responsible for payment of such expenses, including any first party health or first party automobile coverage, if so entitled. However, said reservation does not include the party(ies) released who is/are given a full and final release of all claims.

Nothing herein shall be construed to release, remise, or discharge any person, entity or subsequent tortfeasor other than the parties specifically named in this release for the specific incident described. No claim for medical negligence/malpractice which the undersigned now has, or hereafter may have, arising out of the incident described herein is released.

**The execution of this Release does not affect the property damage portion of this claim, if any.**

It is understood and agreed that this settlement is full compromise of a disputed claim as to questions of liability and as to the nature and extent of the injuries and damages. Further, neither this release, nor the payment pursuant hereto, shall be construed as an admission of liability.

**THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT.**

Printed name _Mark Bunch_

Signature _____   Date _10/3/18_

Printed name _____

Signature _____   Date _____

**Lincoln/Bunch 0638**

06/04/2019  16:30    7196350966                                    PAGE 08/99

# Occupational
# And
# Environmental Health Services

Thomas W. Higginbotham, DO
Board Certified,
Occupational And
Environmental Medicine

NEW PATIENT EVALUATION/WC

BUNCH, Mark
05/03/18
DOB:

Mr. Bunch was referred here by Dr. Steven Olson of Centura Health Primary
Care at St. Thomas-Moore Hospital in Canon City, Colorado.   The referral
reads, 'for evaluation of traumatic brain injury'.

DOI:                    02/13/2018

CARRIER:                ESIS
CARRIER #:              2D338776817591
CLAIM REPRESENTATIVE:   Landon Wallis (303-728-9013)
CARRIER ATTORNEY:       NA
CLAIMANT ATTORNEY:      Kenneth Shakeshaft, Esq. (719-635-5886

EMPLOYER AT TIME OF INJURY:   Charter Communications
EMPLOYED AT TIME OF INJURY:   2.5 years
JOB TITLE AT TIME OF INJURY:  Direct Sales Representative

DUTIES:
At the time of his injury, he worked full-time-plus.  He did not have a
second job at the time of his injury.  He relates that he would travel in
his vehicle for up to 6 hours a day and sees clients an additional 6-8
hours.  He relates it wasn't uncommon for him work 12-hour days.  They do
not do much in the way of lifting or carrying.

PRESENT EMPLOYER: The same
EMPLOYED:         The same
JOB TITLE:        The same
DUTIES:           He hasn't worked since the date of injury, 02/13/2018.

MECHANISM OF INJURY:
Mr. Bunch was involved in a motor vehicle collision on 02/13/2018 at about
6 p.m.  There was a police report.  The collision occurred at the off-ramp
intersection of I-25 and Highway 50 West in Pueblo, Colorado.  Weather was
not a factor. Construction was not a factor.

1430 South 21ˢᵗ Street, Suite 101
Colorado Springs, CO 80904
(719)260-8190
FAX: 260-6086

**Lincoln/Bunch 0639**

Page 2
BUNCH, Mark
05/03/18

He was the driver of a Ford Taurus, wearing seatbelt and shoulder harness.
There were no passengers.

He was struck about the front of his vehicle when another vehicle sped
backwards. He was traveling about 20-25 mph. The striking vehicle, a 1990's
Jeep Cherokee, was traveling backwards at about 5-10 mph. He was unaware of
the impending impact until the moments before.  He had come off the
interstate with the green light for a left turn underneath the
intersection. Mr. Bunch surmises that the other driver was trying to get
back into another lane and decided to back into it quickly, unaware of on-
coming traffic.  He recalls driving, looking straight ahead with his hands
on the steering wheel in a 11:00 and 5:00 o'clock position.  The airbag did
not deploy.  There was no second impact.  The force of the impact caused
his vehicle to arrest in a diagonal manner to his right.  His vehicle was
eventually completely totaled.

He denies loss of consciousness.  He relates of head trauma; his forehead
hit the steering wheel forcibly.  He recalls his knees hitting the under
dash. He relates of being dazed and stunned momentarily.  He then noticed
the other driver preparing to leave the scene of the collision.  He gave
chase for about a mile that involved going down the road and then turning
into a shopping center and around the shopping center until the other
driver finally stopped.  Mr. Bunch relates that he was attempting to take
pictures of the other vehicle's license plate when he gave chase.  It was
quite obvious to Mr. Bunch that the other driver was evading
responsibility.

He called 911 and about 20-25 minutes later, the police came.  He also
summoned his boss who also came to the scene about the time that the police
arrived.  He didn't get out of the vehicle but once to take pictures of the
other car.  When he stepped out, he held onto the door and took the
pictures and sat back in the vehicle.  He attempted to get out of the
vehicle when his boss arrived.  He summarily got dizzy and fell to the
ground.  He doesn't recall this but was reminded about the incident by his
boss.  He began noting pain and discomfort immediately. He experienced pain
about the head and neck.  His boss helped him deal with the police report.
His boss then transported him to Parkview Medical Center emergency
department.  He doesn't recall much of those events.

**Lincoln/Bunch 0640**

Page 3
BUNCH, Mark
05/03/18

He does not recall much of the trip to the emergency room. However, when he got out of the vehicle to walk to the ED, he again lost his balance, got dizzy and fell. According to his boss who told him later, several people assisted him up onto a wheelchair and into the emergency department room. He, again, has poor recollection of those events.

At the emergency room, he received diagnostics that included a CT of the head and neck. He recalls having visual difficulties with the left eye. He recalls having difficulties dealing with the bright fluorescent lights. There were no lacerations to repair. He was observed and eventually released after ~6 hours. He does recall that there was some discussion as to whether they would admit him for observation.

His first medical assessment since the emergency room visit/collision was with his PCP, Dr. SW Olson. He relates that eventually the worker's compensation carrier admitted liability about 2 weeks after the injury. Dr. Olson referred him to see a neuropsychologist, Dr. Helfenstein. He saw Dr. Helfenstein this morning. A neuropsychologic testing is scheduled. He asked for chiropractic care, but it hasn't been authorized yet. He had asked for physical therapy, and it starts tomorrow with Centura Hospital in in Canon City, Colorado. He relates that he is not driving, as he is disoriented with visual difficulties and with headache.

MEDICAL RECORDS REVIEW:
02/23/2018:   Dr. SW Olson, PCP: Follow-up from a car accident; did not have loss of consciousness; did have head trauma with some vision changes and balance/coordination issues; CT scan at that time was negative; diagnosed with a concussion; speech fluent; positive Romberg's; cranial nerve exam unremarkable other than difficulty tracking; eye movement was intact but he is not fluidly tracking; blood pressure 150/90; diagnoses were traumatic brain injury without loss of consciousness with cranial nerve impairment, balance problem; referred to neurologist; MRI of the brain ordered

03/21/2018:   MRI of the brain: White matter disease possibly from multiple sclerosis; white matter lesion showed perpendicular pattern suggesting demyelinating white matter disease from MS; the sinuses and mastoids were clear; no evidence of hemorrhage

04/13/2018:   Dr. SW Olson, PCP: Seen for TBI; had significant eye findings but those had resolved; a referral for neurology to evaluate was considered;

**Lincoln/Bunch 0641**

06/04/2019  16:30    7196350966                                          PAGE 11/99

Page 4
BUNCH, Mark
05/03/18

Referrals were made for chiropractic care and physical therapy for chronic neck pain; he continued with headaches and neck pain; MRI of the brain was done showing some white matter change possibly MS; no history of neuro deficits before the trauma; 180/122..82..95% O2 on room air; BMI 31.7; prescribed extra strength Tylenol and Flexeril

PAST MEDICAL HISTORY:
Surgical history is positive for a 1970 tonsillectomy and a 2017 umbilical hernia repair. Past medical history is positive for a bout of pneumonia around 2004 for which he denies any ongoing sequela. THERE IS A KNOWN DRUG ALLERGY TO PENICILLIN. His present medication is over-the-counter Tylenol. He takes no nutritional or herbal supplements.

PRIOR INJURIES:
He relates of fracturing his right fingers and ankle in 2004 and in 2007. He denies any prior motor vehicle collisions that required treatment. He denies any prior work-related injuries. He denies any prior traumatic brain injuries or loss of consciousness.

SOCIAL HISTORY:
Smoking history is negative. He denies ever being treated for drug or alcohol problems. He is engaged to be married. Education history is a BS in Communications and a Master's in Business. He is a native to the Canon City, Colorado area. Prior hobbies included target shooting, ATV riding, and movies. With respect to exercise, he did none regularly but relates that his work involved a lot of walking.

OCCUPATIONAL HISTORY:
Occupationally, he has been involved in some form of sales for years. He also worked in a long-term care facility for years.

REVIEW OF SYSTEMS:
Mr. Bunch has completed a clinical pain picture diagram. He identifies pain and discomfort about the head, left scapulothoracic area, left upper hip, left elbow, and left thumb. He identifies numbness and tingling sensations about the dorsum of the left hand and the back of his head.

On a symptom checklist, the following are identified: Dizziness; headaches; muscle cramps; depression and nervousness; nausea; recent change in vision with blurred vision and photophobia; sonophobia with ringing in the ears; marked tiredness; trouble falling and staying asleep; and mood swings with panic attacks. He relates of headaches and neck and back pains.

**Lincoln/Bunch 0642**

Page 5
BUNCH, Mark
05/03/18

He relates of sensitivity to fluorescent lights not only from their
brightness but also from the sound.

A neuropsychologic symptom screening was reviewed and positive for the
following:
    Change in sense of taste and smell
    Headaches
    Ringing in the ears
    Change in vision with difficulty focusing, double vision or blurred
        vision and problems seen at night
    Changes in sensitivity to sound and light
    Sense of weakness of the left side
    Dizziness that is better presently than initially
    Fatigue, described as rapid onset with mild activity
    Numbness and tingling sensations of the left hand and neck/head
    Disrupted sleep patterns with only 1 hour of sleep continuously
    Difficulty remembering things
    Problems with attention
    Distractibility particularly with noise
    Trouble finding the right words, but this has improved since
        initially
    Difficulty with arithmetic
    Irritability and less patient

He denies any hearing changes, excessive energy, coughing, trouble
breathing, vomiting, problems with handwriting, or weight loss.

He relates that his headache is constant. He denies having headaches prior
to the MVC. He relates that physical and emotional stressors may worsen
the headache. The headache is about the forehead but will generalize about
the head. He relates of tunnel vision when the headache gets bad enough.
He is sensitive to sound and light. Bright lights and loud sounds will
aggravate the headache. He describes the pain quality of the headache as
throbbing. He did have nausea with the headaches soon after the accident
but not so now. He does relate of dizziness with the headaches. He does
experience nasal stuffiness.

PHYSICAL EXAMINATION:
Mr. Bunch is a 54-year-old, Caucasian male that is in no acute distress,
but he is quite uncomfortable with his headaches and neck discomforts. He
is accompanied by his significant other. He shows me pictures of his head
and face that were taken within the hour of the collision. He has a
positive Romberg's sign in that he falls to the back rather readily.

Lincoln/Bunch 0643

Page 6
BUNCH, Mark
05/03/18

He cannot recognize a pencil being in the center of his vision when coming
from the periphery of either side. He has difficulty tracking,
particularly to the right horizon, but the eyes do move in all directions.
Pupils are equal and reactive to light. He puffs his cheeks symmetrically,
and his smile is symmetrical and can shrug his shoulders symmetrically.
Tongue protrusion is midline. Blood pressure is 188/100. Heart rate is
87. Pulse oximetry is 97% O2 on room air. There is no pedal edema. Heart
is of regular rate and rhythm with a 1/6 systolic ejection murmur heard
best at the mid-sternal and fifth intercostal space. Lungs are clear to
auscultation. There are no carotid bruits. Backward extension of the head
results in dizziness. He is diffusely tender about the cervical anterior
and posterior musculature.

ASSESSMENTS:
History of a work-related motor vehicle collision
History of head trauma without loss of consciousness

Postconcussion sequala with spatial disorientation, imbalance, cervicalgia,
headache, tinnitus, cognitive difficulties, and sound and light sensitivity

Cervical myofascial strain
Thoracic myofascial strain
Right thumb sprain

PLAN:
Mr. Bunch will return as soon as practical for a complete physical
examination. In the meantime, I will referrals for him to see a
neurologist and a neuro-optometrist. He is to attend to physical therapy.
I hope to get a copy of the neuropsychologic report. I do not endorse him
to drive; hence, he cannot attend to his usual duties at work.

Thomas W. Higginbotham, DO, FAADEP
Board Certified, Occupational Medicine

cc:    Mr. Bunch
       Dr. SW Olson
       Neurologist
       Neurooptometrist
       WC carrier
       Atty. Shakeshaft          via email 5/4/18 E mstw

Encl:   Clinical pain diagram

**Lincoln/Bunch 0644**



**Lincoln/Bunch 0645**

06/04/2019  16:30    7196350966                                      PAGE 15/99

BUNCH, Mark                                                  MVC
05/10/18
DOB:

S:   Mr. Bunch returns for a second visit.  He is accompanied by his
     significant other.  The new patient evaluation report was reviewed,
     and a correction was made under work duties on page 1, noting that he
     does very little in the way of lifting or carrying.

     He still describes headache and neck pain, visual difficulties,
     imbalance and dizziness and cognitive issues such as forgetfulness
     and word finding.  He denies any radicular component into the upper
     extremities.

     He is still pending the neurology and neuro-optometry consults.

     He has questions about work restrictions.

O:   His visual perception of objects is grossly not centered.  He has
     difficulty with gaze to his right.  He still has a positive Romberg's
     sign.  There is palpatory tenderness about the suboccipital, scalp
     and cervical paraspinal musculature.  Deep tendon reflexes are
     symmetrical.

A:   History of a work-related motor vehicle collision
     History of closed head trauma with visual spatial disorientation,
         posttraumatic headache and cognitive sequela
     Cervicalgia
     Cervical strain without signs of radiculopathy

P:   Counseling was offered with strategies to minimize frustration and
     anxiety with respects to his cognitive difficulties.

     I recommended a trial of triple drug combination of an anti-
     inflammatories and muscle relaxant of betamethasone 0.75 mg,
     methocarbamol 210 mg and indomethacin 25 mg to use one a night for
     the next 3 nights and then every 3 nights thereafter.  I reviewed its
     use, indications and side effects.

     I completed a WC 164 form.  I provided him with a prescription,
     noting he is unable to return to work in any capacity for 1 month
     until further evaluation.

Thomas Higginbotham D.O.

**Lincoln/Bunch 0646**

BUNCH, Mark                                                                    wc
05/22/18
DOB:

S:    Mr. Bunch returns for follow-up evaluation of injuries related to a
      work related motor vehicle collision.  He denies any new trauma.  He
      has been attending to physical therapy.  He notes that the triple
      drug combination of betamethasone-Robaxin-indomethacin has been
      helpful and would like a refill prescription if possible.  He has
      been resting and doing general self-care stretch exercises.

      We are still awaiting authorization for neuro-optometry and neurology
      consults.  He drove himself to this visit.

O:    Body habitus remains the same.  He is alert and oriented.  Sitting
      tolerance is reasonable. Gait and stance seem unremarkable.  Sitting
      tolerance is reasonable.  Hydration is adequate.

      He seems to be more cogent today.  He has negative Romberg's
      maneuver.  Balance is reasonable.  He is still with a midline shift
      on testing but somewhat improved. Cervical range of motion is still
      quite limited with sharp pain about the left mid cervical area
      radiating into the left scapulothoracic area.  Deep tendon reflexes
      are symmetrical. He has negative Spurling's maneuver.

      With his consent, osteopathic manipulative therapy was performed to
      the cervical, thoracic, upper rib, and upper quadrant areas using
      combination of soft tissue and vertebral mobilization.  He responded
      quite well. He had better range of motion of his neck after the
      treatment and felt that his headaches were lessened.

A:    Posttraumatic headache G44.309
      Muscle tension headache G47.3
      Closed head injury with sequela S06.2XOD
      Visuospatial disorientation H 53.30
      Cognitive changes, unspecified R 41.89
      Cervicalgia M54.2
      Cervical strain S16.1XXD
      Thoracalgia M54.6
      Thoracic strain S23.5XXD
      Osteopathic segmental and somatic dysfunction of the cervical spine
            M9901
      Osteopathic segmental and somatic dysfunction of the thoracic region
            M9902
      Osteopathic segmental and somatic dysfunction of the rib cage M9908

**Lincoln/Bunch 0647**

06/04/2019  16:30    7196350966                                        PAGE 17/99

Page 2
BUNCH, Mark
05/22/18

P:    He remains off work as previously identified.

      Self-care strategies were reviewed including strategies to help him
      with his cognition and particularly involving his work as a customer
      service representative. I also emphasized auto-massage techniques.

      I refilled the betamethasone 0.75 mg, Robaxin 215 mg and indomethacin
      25 mg, #10 to use one every other night.  I asked that he return to
      see me in 1-2 weeks.  He is to coordinate with his attorney to
      facilitate referrals to the neuro-optometrist and neurologist.

Thomas Higginbotham D.O.

**Lincoln/Bunch 0648**

WC-MVC

BUNCH, Mark
06/05/18
DOB:

S:   Mr. Bunch returns for further evaluation and treatment for injuries
     stemming from a work-related motor vehicle collision.   The injury
     occurred on 02/13/2018.    His first visit with myself was on
     05/03/2018.  This is his third follow-up visit. He is accompanied by
     his fiancée.

     In the interim, I received from his attorney those medical records
     from Parkview Medical Center involving an ED visit of 02/14/2018 at
     about 1 AM.

     From my initial visit, he raised concerns for post-concussion
     syndrome with visual spatial disorientation and cognitive and
     behavioral concerns.  Based on the initial exam, he was referred for
     neuro-optometry and neurology consults.

     A number of issues have evolved since he was seen on 05/22/2018.
     First, the claims adjuster stopped all involvement on his claim.
     This seemingly was based on me not being recognized by the claims
     adjuster as an authorized treating provider.   This is in part based
     on confusing his primary care provider, Dr. Olson, with the workers
     compensation provider also by the name Dr. Olson. Unfortunately, his
     temporary total disability wage protection was stopped, as well as
     the appointments for the neuro-optometrist and neurologist.
     Apparently, his attorney got involved and, as of this date, the
     misperceptions and mismanagements have been corrected.
     Unfortunately, the appointment for the neuro-optometrist now was
     rescheduled for 07/23/2018.

          Given his affective visual spatial disorientation stemming from
          this motor vehicle related concussion, he cannot afford to wait
          any longer.  I called and attempted to move the appointment up
          earlier but, due to the neuro-optometrist's schedule, he is
          booked that that far away, and is now 7th on the list for
          cancellation.

     Secondly, there apparently has already been video surveillance of Mr.
     Bunch.  Apparently, he was driving about a half a mile from his home
     to a grocery/retail store and back. I had recommended that he not
     drive given his visuospatial disorientation and imbalance and
     dizziness. Mr. Bunch relates that he needed food and personal items
     and had no one to help him in a timely manner.  He also wanted to
     test his ability to drive.

**Lincoln/Bunch 0649**

Page 2
BUNCH, Mark
06/05/18

He relates that he was successful with his errand but also relates that he feels compromised with respects to safely operating a vehicle.

I again recommended that he not drive, particularly for work, and only for urgent issues and with caution that he drive otherwise. He was driven here today through a contracted transportation service, Coach Transportation Inc. Total miles was identified as being 96 miles.

Thirdly, Mr. Bunch and his fiancé feel victimized, affronted and adversarial as a consequence of the claims adjuster's actions and the private investigation. Apparently, the claims adjuster wanted to steer him to another provider for which he declined.

There is an undertow of distrust now. I reviewed the mores of the workers' compensation system. I attempted to depersonalize the claims adjuster's actions, noting that he is just doing his job on behalf of his employer. I emphasized the importance of trying to get back on track and to be positive with his health expectations.

On a good note, he does seem to be responsive to the anti-inflammatories/muscle relaxant combination. He did respond to last visit's osteopathic manipulative treatment. He still has evidence of not visualizing items in the midline of his vision. He still demonstrates issues with imbalance, albeit slightly improved. He continues with headache and neck tension. He continues with facial pain. He is having difficulty sleeping. His fiancé notes irritability. He is attempting simple recollection strategies that we have discussed previously. He is attending to self-care with auto-massage techniques and stretching. He continues with physical therapy.

I reviewed the ED notes of Dr. Wilson.
Blood pressures averaged ~180/120. PERLA. Speech pattern was normal. Coma scale was 15. Patient denied visual changes. Had dizziness and eye pain which resolved. Left scalp tenderness with mild abrasion noted; some left masseter muscle tenderness noted; appeared to be developing a right periorbital ecchymosis; noted cervicoparaspinal muscle tenderness; noted normal gait with no ataxia and with no neuromotor or neurosensory deficits of the upper or lower extremities.

Lincoln/Bunch 0650

Page 3
BUNCH, Mark
06/05/18

CT of the head and cervical spine revealed no evidence for any acute traumatic process. Noted the elevated blood pressures; was stable at discharge with diagnoses of concussion with closed head injury, dizziness, cervical strain, right periorbital ecchymosis and elevated blood pressure.

A:    History of a head trauma with
Emotional and behavioral disturbance/changes F59
Neurocognitive disorder G31.84
Visual difficulties with spatial disorientation H53.30
Cervicalgia
Cervical strain
Cephalgia, combination of myofascial tension and posttraumatic
Situational adjustment reactions with anxiety and depressed mood

P:    Given that it has been almost 4 months since his injury and he persists with concussion sequela, I have asked that he attend to a neuropsychologic screening with considerations for cognitive behavioral therapy. I called and talked to Dr. Staudenmayer (303-758-8934/fax 303-736-4373) who is able and capable of evaluating him and, more importantly, he maintains a presence in Pueblo, Colorado, closer to Mr. Bunch's residence.

To facilitate a quicker evaluation and likely treatment for the visuospatial issues, I wrote a referral to Dr. Blair (719-999-8404), neuro-optometrist. Dr. Blair also maintains a presence in Pueblo, Colorado. I left a message for Dr. Blair to discuss the referral.

I completed a WC 164 form and identified no return to work until 07/04/2018. I've asked that he return in the next 1-2 weeks for directing treatment and evaluation and a course of osteopathic manipulative therapy. Several questions were asked and answered. Reassurances were given. (Time spent face to face with patient: 75 minutes)

Thomas Higginbotham D.O.

cc:    Mr. Bunch
WC adjuster
Dr. Blair
Dr. Staudenmayer
Atty. Shakeshaft

**Lincoln/Bunch 0651**

MVC/WC

BUNCH, Mark
06/19/18
DOB:

S:    Mr. Bunch returns for a follow-up visit for injuries stemming from a work-related motor vehicle collision. He was last seen on 06/05/2018.

In the interim, I reviewed a short video and commented about that on a separate dictation. I shared with him my follow-up conversation with the neuro-optometry's office and shared that dictation to his attorney for assistance in expediting this neuro-optometry referral.

He denies any subsequent injuries. We haven't heard regarding the referral for a neuropsych evaluation. He continues with physical therapy and I received some notes from the therapist. The therapist apparently concurs with my concerns of visuals vestibular disruption related to his head injury. The therapist is working on strategies on helping Mr. Bunch. My hope is to have a neuropsych evaluation and based on the findings, direct cognitive-behavioral therapy through early speech-language pathologist.

O:    On observation of walking in and about the exam room and with positive Romberg's maneuver and balance testing, there are still concerns with coordination and proprioception. He still has a positive visual midline shift testing that regressed from the last visit and consistent with our initial visit. He relates of having a fall in physical therapy when trying to attend to some balance exercises while under the care of the therapist.

I took time discussing and recommending nutritional support for his condition. I reviewed briefly the DOWC Medical Treatment Guidelines for Traumatic Brain Injury. I noted that there is no consensual acceptance of specific nutritional supplements in the Guidelines and he likely will need to have to self-pay for these.

A:    Concussion with
      Emotional and behavioral disturbance/changes F59
      Neurocognitive disorder G31.84
      Visual difficulties with spatial disorientation H53.30
      Posttraumatic headache, not intractable G44.309
    Cervicalgia M54.2
    Cervical strain S16.1XXD

**Lincoln/Bunch 0652**

Page 2
BUNCH, Mark
06/19/18

P:    I am concerned about the delays in the initial referrals for
      neurology, neuropsychology, and neuro-optometry and cognitive
      behavioral therapy.

      His visual-spatial disorientation is concerning that I again have
      recommended that he not drive unless absolutely necessary for urgent
      needs.

      He raised concerns about his ability to continue in his usual
      capacity with what he is experiencing presently.   He is about 17
      weeks past his motor vehicle collision.  He is not at MMI.   It is too
      early to assess permanent impairment but he does have concerns for
      such.

      I've asked that he return to see me in 1-2 weeks to continue review
      of self-care strategies, monitor his progress, and await
      authorizations for the referrals. (Time spent: 40 minutes with 100%
      of the time spent in face-to-face)

Thomas Higginbotham D.O.

Cc:    Mr. Bunch
       Atty. Ken Shakeshaft
       Landon Wallis, Adjuster

**Lincoln/Bunch 0653**

BUNCH, Mark                                                          WC MVA
07/03/18
DOB:

S:     Mr. Bunch returns for a follow-up visit after last seeing him on
       06/19/2018. He is about 30 minutes late for his appointment, and he
       is frustrated with the tardiness of the prearranged driver.

       He relates that when he gets stressed, his headaches worsen and he
       gets tunnel vision. He denies any of these complexes happening prior
       to his motor vehicle collision. He relates that he rarely took an
       Advil perhaps only after many hours of working hard in his property.

       I relayed the gist of the SAMMS conference on 06/22/2018.
       Unfortunately, my recommendations for a neurologist, a neuro-
       optometrist and a neuropsychologist/psychologist has not happened to
       date. He was able to get the rescheduled appointment for the other
       neuro-optometrist earlier on 07/16 instead of 07/26. The initial
       referral was made on 05/03/2018.

       He is attending to physical therapy and they are doing balance
       exercises. He has also not heard about the speech therapy referral.

O:     He is with photosensitivity and the office blinds were brought down
       in to minimize the light. He holds his head in his hands,
       complaining of a throbbing headache. His gait is slightly unsteady.
       He cannot attend to left-sided finger-to-nose testing even while
       watching the finger. He still persists with a midline visual shift
       on testing. The Romberg's testing is improved in that he doesn't
       fall readily backwards, but he does rock and reel and must catch
       himself a couple times during the 10 second test.

       I reviewed Dr. Hellfenstein's report, and it is likely invalid
       because of his visual difficulties, headaches and inability to
       concentrate and focus. I believe these issues were brought up by Dr.
       Helffenstein. I believe the respondent attorney finds the word
       'invalid' as meaning something else. Probably the basic premise that
       a neuropsychologist is to understand the nature of the medical
       conditions that are present when evaluating a person for
       neuropsychologic sequela from a head injury.

       When I provided Mr. Bunch with something to read, he can't see it
       very well, complaining of double vision and blurred vision and moves
       the paper and his neck in angles in order to see it and, even when he
       sees it, he cannot maintain his glance but for a couple seconds.

**Lincoln/Bunch 0654**

Page 2
BUNCH, Mark
07/03/18

I cannot imagine him attending to detailed questioning of validity testing, let alone psychometric testing with his visual difficulties.

A:    Concussion with
      Emotional and behavioral disturbance and changes F59
            Neurocognitive disorder G 31.84
            Visual difficulties with spatial disorientation H53.30
      Cervicalgia M 54.2
      Cephalgia, posttraumatic and intermittently intractable G 44.311

P:    I will contact his attorney regarding the status of these referrals.

      I described a potential worker's comp scenario in an attempt to prepare him. This is a possible scenario whereby the adjuster and the respondent attorney doubt his veracity enough to schedule a flurry of independent medical evaluations that will no less discredit him and all involved. Only to run months later an ALJ undoubtedly will rule in his favor because of how these circumstances prevail. He needs to get his finances in order and prepare his fiancée for this as well. I invited his fiancée to his next visit.

      I reiterated self-directed strategies. I would like to see him again in 2 weeks, the day or so after his neuro-optometry evaluation.

Thomas Higginbotham D.O.


cc:   WC carrier
      Atty. Pollart
      Atty. Shakeshaft
      Dr. Saxerud

Lincoln/Bunch 0655

06/04/2019  16:30     7196350966                                    PAGE 25/99

BUNCH, Mark                                        MVC/WC
07/17/18
DOB:

S:    Mr. Bunch had his neurooptometry evaluation yesterday.  He was
      provided corrective lenses and other measures for his vision
      difficulties.  I await the neurooptometrist's report.  He has noted
      marked improvement with the corrective lenses already.  In fact, last
      night and this morning, he was able to watch the news on TV.  He has
      not been able to focus well enough to watch TV since the accident.
      He has avoided reading because of visual difficulties.  This, no
      doubt, affected his initial neuropsychologic testing which was
      invalidated.  This may have led to misinterpretation by respondent
      attorney.  It is important for a neuropsychologist to fully appreciate
      any medical conditions that may affect testing measures.

      The previous video surveillance capturing him driving 0.4 miles from
      his home did not entail him going to a grocery store or to a pawn
      shop but rather to the car repair shop to discuss further details on
      repairing his vehicle.  He apparently was told by the
      neurooptometrist not to drive.  There is a follow-up appointment in
      one month.

      He is more alert and oriented today.  Headaches seem to be improved.
      He still has neck stiffness and discomfort.  He still is undergoing
      physical therapy.

      We have not heard from the referral for speech therapist for
      cognitive behavioral therapy for his head injury or the
      neuropsych/psychologist evaluation.  I placed a call in to his
      attorney asking for the status of these referrals; we have been
      playing phone tag in the last day or so.

      Mr. Bunch still relates of sensory overload with photosensitivity and
      with motion resulting in headache and dizziness.

O:    With the corrective visual measures, his vision is in the midline and
      much improved.  He was observed unknowingly, walking from the waiting
      room to the exam room and back without swaying or bumping into items.
      In fact, he was able to gaze to his right at a picture on the wall
      and maintain a straight course for the few paces.  This is something
      he had not been able to do before the corrective measures.

      Romberg's maneuver is equivocal now.  He is able to maintain the
      posture longer but still has a sense of falling backwards.  Tandem
      gait with heel-to-toe is improved but still marginal.

Lincoln/Bunch 0656

06/04/2019  16:30    7196350966    PAGE 26/99

Page 2
BUNCH, Mark
07/17/18

Cervical range of motion is limited and with palpatory tenderness about the paraspinal, suboccipital and scalp musculature as well as about the suprascapular regions bilaterally.  Deep tendon reflexes are symmetrical.  He has negative Spurling's maneuver.

A:  History of closed head injury with,
        Neurocognitive disorder, improved G31.84
        Emotional/behavioral disturbance and changes, improved F59
        Visual difficulties with spatial neglect and disorientation
        with early improvement with corrective lenses H53.30
    Cervicalgia M54.2
    Cervical strain S16.1 XXD
    Cephalgia, posttraumatic and intermittent in improved G 44.311

P:  I hope we can get on track with referrals for neuropsych, psychologist and speech therapy.  He is to continue with the physical therapy.  He is precluded from work as he is precluded from driving. He will follow up with the neuro-optometrist in one month.

    Upon his queries, we discussed MMI, impairment, and disability issues.  Self-care strategies were reviewed.  I encouraged that he continue with the memory improving exercises we've discussed over our visits.

Thomas Higginbotham D.O.

CC:  WC Adjuster
     Atty. Pollart
     Atty. Shakeshaft

**Lincoln/Bunch 0657**

BUNCH, Mark                                                      WC
09/11/2018
DOB:

S:    Mr. Bunch returns for follow-up for injuries stemming from a work-related motor vehicle collision.  He denies any new trauma.  He has not been driving.

He saw Dr. Staudenmeyer yesterday, and I have his report.  He sees the neuro-optometrist, Dr. Saxerud, tomorrow.  We have not heard from the WC carrier for authorization for the neurologist or for the speech language pathology consults.  Apparently, physical therapy was discontinued because of nonpayment.  He had improved with his balance from their treatment.  He has transitioned to chiropractic care which has been helpful for his cervical complaints.

He feels that the intermittent use of Buspar has been helpful for his anxiety experiences.

O:    His body habitus remains the same.  He is polite and cooperative.  He is alert and oriented.  Mood and affect give the sense of an undertone of frustration.  While observed, his gait and stance are abnormal.  His body posture is such that his head and shoulders are forward-rolled, and he tilts his head to the right and has an unsure gait with listing to the left.  He did lightly brush against the hallway while walking to the treatment room.  Pivoting gives a sense of imbalance.  Although improved, Romberg's maneuver still is positive with falling backwards.

Vision is still difficult with blurred vision and, again, with reading a document, he must cover his left eye and hold the document at arm's length to read it.  He again did not see an object accurately in the midline of his vision.  When reaching to grab an object, he swings his arm far to the periphery before coming to the object instead of directly reaching towards it.

Neck range of motion on gross observation is improved but not full.

A:    History of head injury S06.2X0D
Imbalance R26.2
Visual spatial disorientation/neglect H53.30
Cervicalgia, improved M54.2
Posttraumatic cephalgia, improved G44.309
Cervical strain, improved S16.1XXD
Adjustment reactions with anxiety and frustration F43.22

**Lincoln/Bunch 0658**

06/04/2019  16:30    7196350966

Page 2
BUNCH, Mark
09/11/2018

P:    He is still unsafe to drive. I anticipate a corrective measure with
      his lenses at the neuro-optometry visit tomorrow.

      I've asked that he continue with the psychologic evaluations and
      treatment.    He would benefit from further vestibular therapy.    A
      prescription was provided.    I've asked for a speech-language
      pathology consult as he has some difficulty with word finding and
      stammers with his voice and still has manifestations of cognitive
      difficulties. I am still requesting a neurology consult for any other
      evaluation and treatment considerations.

      No medication changes were made.    He uses the Buspar once every 2-3
      days.    Self-care strategies were reemphasized.    A WC 164 form was
      completed.

Thomas Higginbotham D.O.

Lincoln/Bunch 0659

BUNCH, Mark                                                    WC
11/06/18
DOB:

S:    Mr. Bunch returns for follow-up for his worker's compensation claim.

      In the interim,
      He had seen the neuro-optometrist on 11/02/2018 and further
      adjustments were made which seems to have offered early improvement.
      He has a follow-up appointment on 11/28/2018

      He had a speech therapy evaluation last week with an initial
      treatment session scheduled for on 11/09/2018

      He followed-up with the neurologist on 12/26/2018 with notable
      improvement with sleep from the prescribed nortriptyline; initial
      evaluation is still pending;

      He has a follow-up appointment scheduled with the psychologist, Dr.
      Staudenmeyer, on 11/12/2018 with notable improved treatment
      relationship

      He has continued chiropractic care with Dr. Christiansen with latest
      treatment performed early this morning at treatment frequency of once
      a week with notable improvement in cervical and left shoulder
      conditions

      He had Independent Medical Examination performed by Dr. Lesniak on
      09/18/2018 which I have not yet reviewed in its entirety.

      He had seen Dr. Polanco and his report is still pending.

O:    His body habitus remains the same. He is oriented x4. His alertness
      is not as sharp as it had been since around June. Psychologically he
      has decompensated since June with posttraumatic stress features. His
      speech is slow and quiet with an episode or two of some stammering.
      This is not related to his traumatic brain injury but more so to
      psychologic stress reactions. Gait is still off but somewhat
      improved. He still has evidence of midline vision shifting but
      somewhat improved with present corrective measures. Romberg testing
      is still met with falling backwards. Sitting tolerance is
      reasonable. Postural obliquities still evident with an extensively
      forward held head in resting posture. 175/110... 94... 95% O2 on room
      air; thoracic expansion is fair; there is no pedal edema.

**Lincoln/Bunch 0660**

06/04/2019  16:30     7196350966                                          PAGE 30/99

Page 2
BUNCH, Mark
11/06/18

A:     History of a motor vehicle collision with facial/head trauma
       TBI with
              adjustment disorder with depressed mood F06.30
              emotional and behavioral disturbance/changes F59
              neurocognitive disorder G31.84
              visual difficulties with spatial disorientation H53.30
       Posttraumatic stress disorder

P:     He is now on track with speech/cognitive and vestibular therapy.  He
       will continue with chiropractic care.  He is to follow-up with
       specialty care as noted above.

       Cyclobenzaprine 10 mg, #30 was prescribed to take one at night along
       with the nortriptyline.

       Reassurances were given. I've asked that he return in 2 weeks for
       follow-up.



Thomas Higginbotham D.O.

ADDENDUM:
I referred him to his PCP for management of his hypertension.  In the
interim of seeing his PCP, I prescribed clonidine 0.1 mg to take twice a
day for his elevated blood pressure; #30.  I prescribed Micardis 20 mg once
a day to begin tomorrow.  He is to call back in 1-2 days to inform me how
he has been feeling with the blood pressure medications.

**Lincoln/Bunch 0661**

## Occupational
## And
## Environmental Health Services

Thomas W. Higginbotham, DO
Board Certified,
Occupational And
Environmental Medicine

November 20, 2018

Kenneth Shakeshaft, Esq.
1935 Jamboree Drive, Suite 202
Colorado Springs, CO 80920

RE:   Mark Bunch
      DOB:

Dear Atty. Shakeshaft:

I received your letter of 11/20/2018. A correction is necessary from a
visit note generated by myself on 05/26/2018. I commented that Mr. Bunch
drove himself to his appointment with me.

It is obvious that he did not drive himself to this appointment. You
provided evidence to the contrary. He had transportation arranged by the
insurance company on that day.

Please accept this letter as a correction that Mr. Bunch did not drive
himself to that appointment. I apologize for any inconveniences.

Sincerely,

Thomas Higginbotham D.O.

1430 South 21st Street, Suite 101
Colorado Springs, CO 80904
(719)260-8190
FAX: 260-6086

Lincoln/Bunch 0662

06/04/2019  16:30    7196350966                                                PAGE 32/99
APR-24-2019(WED) 09:49    DR HIGGINBOTHAM              (FAX)715 288 2222        P. 002
Rx Date/Time      APR-23-2019(TUE) 08:49

Apr 23 2019 11:53:26 EDT Liberty Mutual Insur    MSG# 1523921621-006-1    Page 002 OF 004

Liberty Life Assurance
Company of Boston, a Lincoln
Financial Group company

Group Benefits Disability Claim
P.O. Box 7206
London, KY 40742-7206
Secure Fax 866-841-1415

**Lincoln**
Financial Group®

April 23, 2019

Thomas Higginbotham DO
1430 South 21st Street, Suite 101
Colorado Springs, CO 80904
By fax: 719-260-6086

Re: Disability Benefits
Claimant Name: Mark Bunch
Claimant DOB:
Claim Number: 8220685

Dear Dr. Higginbotham:

Thank you for taking my call earlier today. I am the physician who was asked by Lincoln Financial Group to review the medical records Mr. Bunch submitted in support of his request for disability benefits. I appreciated the chance to speak with you and I'm writing to summarize my understanding of our conversation. My questions, and your responses, were:

Q1.    Did you see this patient between 08/13/18 and 02/18/19?
A1.    No. I saw him as part of a contested workers compensation claim. My understanding was that the claim had settled, the patient could not return to work, and he was applying for disability, Social Security disability.

Q2.    Have you seen this patient since 02/19/19?
A2.    No. I had conferences with the attorney in November and December 2018. And, I saw the patient on 02/19/19 for a report for his Social Security disability claim.

Q3.    Your 02/19/19 report lists recommendations for vestibular therapy, occupational therapy, and physical therapy. Has the patient gone on to see these therapists?
A3.    I don't know.

Q4.    The patient is off work based on postconcussion syndrome. The records that were sent to the insurer consist of the PCP notes, some physical therapy notes for a neck strain per the PCP, your notes, some chiropractic notes, and two neuropsychological evaluations, each deemed invalid. Typically, if someone is severely impaired by postconcussion syndrome, the expectation would be that they'd see a neurologist, undergo diagnostic workup for their symptoms (vestibular, eye, etc.), and if the symptoms continue be seen at a headaches center, a tertiary care provider. The records that were sent to the insurer include no neurology evaluation, and no records from vestibular, vision, or other specialists.
A4.    Many of the referrals got held up by insurance coverage issues. The patient had seen occupational medicine Dr. Frank Polanco, who treated this like he was doing an IME for the insurance company, and dismissed the patient. The insurer then started questioning further referrals. The

**Lincoln/Bunch 0663**

Apr 23 2019 11:54:05 EDT Liberty Mutual Insur  MSG# 1523921621-006-1 .  Page 003 OF 004

Re: Mark Bunch                                                    April 23, 2019
                                                                 Page 2

patient did see neurologist Dr. Brinley in Colorado Springs on 10/19/18, and she recognized he had
ongoing postconcussion symptoms and suggested vestibular therapy. I also have a paragraph that the
neuro-optometrist wrote on 11/21/18 stating the patient has perception problems. I think the
neuropsychological tests were compromised because the patient had vision and balance problems. *[handwritten]*

Q5.    I understand the patient reports vision and balance problems. But, we've not received any vision test
result, balance test results, or records of treatment for vision or balance problems.
A5.    It sounds like you need to gather those records.

Q6.    The disability insurance company probably already asked the patient to provide all of the records. I'm
not sure how much more record gathering takes place at this appeal stage of the claim.

———————

To ensure that I have accurately summarized our conversation, please make any corrections or
comments to this letter if necessary, sign below in the space provided, and fax this letter to Lincoln
Financial at the toll free and secure return fax number (866) 841-1415.

Thank you for your help. Lincoln Financial is willing to reimburse you for any reasonable costs incurred
in responding to requests for information.

Respectfully yours,

-Electronically Signed-

Robert Swotinsky MD
Consulting Physician
Board Certified, Occupational Medicine
978 337 4479 c, 866 81 1415 f

___ No changes/comments, OR
✓ With changes/comments as noted above

_____
Thomas Higginbotham, DO        Date

*Please fax to 866 841 1415*

Enclosure: Signed release form

cc, Atty E. Shukanh-Pat

Liberty Mutual Insurance                                         Page 2 of 2

**Lincoln/Bunch 0664**

Bunch, Mark Bryan (MR # CEUL0963303) DOB:                Encounter Date: 02/27/2018

Letter by Steven Wayne Olson, MD on 2/27/2018



## Centura
## Health®    CHPG PRIMARY CARE ST THOMAS MORE
CHPG PRIMARY CARE ST THOMAS MORE
### Referral to External Consultant

February 27, 2018

CSNA
2312 N. Nevada Avenue, Suite 100 Colorado Springs, CO 80907
719.473.3272
719.389.1191

Patient:    **Mark Bryan Bunch**
Date of Birth:
Date of Visit: **2/27/2018**

Dear CSNA:

I am referring my patient, Mark Bunch, to you for evaluation of **Traumatic brain injury, without loss of consciousness, subsequent encounter,Cranial nerve impairment, - Balance problem** .

He has a past medical history of Allergy; Bronchitis; Bunion; Pneumonia; and Umbilical hernia. His has a past surgical history that includes Tonsillectomy and Tonsillectomy (1970). He reports that he has never smoked. He has never used smokeless tobacco. He reports that he does not drink alcohol or use drugs.

He has a current medication list which includes the following prescription(s): acetaminophen, hydrocodone-acetaminophen, and tadalafil. He is allergic to penicillins.

I appreciate your assistance in his care and look forward to your findings and recommendations.

Sincerely,

Steven Wayne Olson, MD

Bunch, Mark Bryan (MR # CEUL0963303) Printed at 5/18/18 4:48 PM                Page 1 of 6

**Lincoln/Bunch 0665**

06/04/2019  16:30    7196350966                                              PAGE 35/99

Bunch, Mark Bryan (MR # CEUL0963303) DOB:                    Encounter Date: 02/27/2018

**Assessment/Plan:**

**Problem List Items Addressed This Visit**
None

**Visit Diagnoses**
**Traumatic brain injury, without loss of consciousness, subsequent encounter**  -
Primary
   Relevant Orders
      MR Brain without Contrast
      Ambulatory Referral to Neurology

**Cranial nerve impairment**
   Relevant Orders
      MR Brain without Contrast
      Ambulatory Referral to Neurology

**Balance problem**
   Relevant Orders
      MR Brain without Contrast
      Ambulatory Referral to Neurology

Patient is here for follow up TBI.  He has significant eye findings, namely coordination problems.
He doesn't exactly have cranial nerve deficits.  His eyes have full ROM but the coordination
and smoothness of tracking is not present.  Romberg also positive.  Since the CT scan was
negative and symptoms are perhaps worse, I am going to Order an MRI.

Follow up in 2 weeks.

25 minutes spent in patient encounter with 15 minutes spent face to face counseling physical
activity, reviewing medications, chart review

**Subjective:**

   Mark Bryan Bunch is a 54 y.o. male here for follow up car accident.  The other driver reversed
full speed and hit him.  He did not have loss of consciousness.  He had a head trauma with
some vision changes and balance/coordination issues.  CT scan at the time was negative.  He
was diagnosed with a concussion and sent home.  No fevers, chills.  No nausea, vomiting.  He
had no neurological problems before the car accident.

The following portions of the patient's history were reviewed and updated as appropriate:
allergies, current medications, past family history, past medical history, past social history, past
surgical history and problem list.

**Review of Systems**

Bunch, Mark Bryan (MR # CEUL0963303) Printed at 5/18/18 4:48 PM                Page 2 of 6

**Lincoln/Bunch 0666**

Bunch, Mark Bryan (MR # CEUL0963303) DOB:    Encounter Date: 02/27/2018

**General:** No fevers, chills
**Psychological:** Mood normal, no anxiety or depression
**ENT:** Denies sore throat, ear pain, hearing changes·
**Respiratory:** Denies cough, shortness of breath, wheezing
**Cardiovascular:** No chest pain, peripheral edema, palpitations
**Gastrointestinal:** Denies abdominal pain, constipation, bloody stools
**Genito-Urinary:** Denies incontinence, dysuria
**Musculoskeletal:** joint aches in back, shoulders, knees
**Neurological:** headaches, balance problems, vision changes.
**Dermatological:** Denies rashes, lesions, pruritis

**Objective:**

**EXAM:**

**Vital Signs**
BP          150/90
Pulse       63
Temp        36.3 °C (97.3 °F) (Touch free)
Wt          106 kg (234 lb)
SpO2        97%
BMI         31.74 kg/m²

**General Appearance:** Alert, cooperative, no distress, comfortable
**Lungs:** Clear to auscultation bilaterally, respirations unlabored
**Heart:** Regular rate and rhythm, S1 and S2 normal, no murmur
**Neurologic:** Speech fluent, answers questions appropriately. Romberg positive. CN2-12 normal but he has difficulty tracking. Eye movement is intact but he is not fluidly tracking.
**Psych:** Pleasant, cooperative, affect normal, judgement normal

Current Outpatient Prescriptions:
• acetaminophen (TYLENOL) 500 MG tablet, Take 500 mg by mouth every 6 (six) hours as needed for mild pain., Disp: , Rfl:
• HYDROcodone-acetaminophen (NORCO) 7.5-325 mg per tablet, Take 1 tablet by mouth every 6 (six) hours as needed for moderate pain. Max Daily Amount: 4 tablets, Disp: 40 tablet, Rfl: 0
• tadalafil (CIALIS) 10 MG tablet, Take 1 tablet (10 mg total) by mouth daily as needed for erectile dysfunction., Disp: 10 tablet, Rfl: 3

Steven Wayne Olson, MD

**Lincoln/Bunch 0667**

RECEIVED  05/28/2018  03:05PM
2018/05/28 16:05:07     19 /42

**Parkview Medical Center**
**400 W 16th Street**
**Pueblo, CO 81003**
**719-584-4000**

**ED Physician Documentation**

Patient: BUNCH, MARK B
DOB:                          MRN: M000886127
Age: 54          Acct #: A00191377982
Sex: M          Loc: ED
Adm Date:
Disch. Date:

Admitting Physician:
Attending Physician:
PCP: Specified, None

Documenting Provider: David R Wilson

**Adult-HPI**

**- Note Date & Time**
Note Date & Time: 02/13/18  2236

**- Gen Info/Blank HPI**
**Note(s):**

This is a 54-year-old male who presents after a motor vehicle accident. He was going about 15 miles per hour and the exit ramp, when some he stopped in front of him and then started to back up. He estimates the total force of occlusion was around 25 miles per hour. No airbags deployed, though he does not believe his vehicle has airbags. He was restrained, but hit hard enough that his head struck the steering wheel on the left forehead region. He denies loss of consciousness. Initially he felt like he had some blurred vision and maybe even some left eye pain, but this has resolved. When he first got out of the car, he felt like his equilibrium was off, like he has felt previously with sports injuries to the head. He no longer has that symptom. He does have a pounding headache. He denies and anticoagulate use. No history of hypertension in the past, although his blood pressures were noted to be ultimately high here. No other acute complaints. He denies chest or abdominal injury.
**Chief Complaint:** Motor Vehicle Collision
**Stated Complaint:** MVC/neck pain
**Time Seen by Provider:** 02/13/18 22:32
**Source:** Patient

**- Triage Note - View Only**
**Triage Assessment/Note - Documented by Nursing Staff:** pt presents after MVC around 1840. pt states a another backed into him going about 25mps. pt states hitting head on steering wheel, denies LOC, pt states being dizzy after MVC. pt having left eye, neck/shoulder "muscle" pain. Pt denies visual changes, denies extremity numbness/weakness, nauses/vomiting.

**Adult-PMH**

**- Past Medical History**
**Past Medical History:** PMH:  Denies significant past medcial problems.  Social hx:  nonsmoker

1 of 4

**Lincoln/Bunch 0668**

RECEIVED  05/28/2018 03:05PM
2018/05/28 16:05:07    20 /42

BUNCH,MARK B
M000886127
A00191377982

## Adult-ROS

**- Review of Systems**
**Constitutional:** negative: Chills, Fever
**Neurological:** Dizziness - though the dizziness is now resolved, Headache.  negative: Fainting Spells
**Eyes:** Other - he was having some eye pain earlier but this has resolved.  negative: Photophobia, Pain
**ENT:** Other - some pain in the left jaw, which is now resolved other than tenderness over the left masseter muscle.  No chipped or loose teeth.

## Adult-Medical EXAM

CONSTITUTIONAL
Vital signs reviewed, Patient appears non toxic.
HEAD
        There is left scalp tenderness and a mild abrasion .  No cephalohematoma.
EYES
Pupils equally round and reactive to light, Extraocular muscles intact, Conjunctiva normal, Sclera normal.
No photophobia.  Anterior and posterior segments are unremarkable.  No evidence for hyphema or vitreous hemorrhage.
ENT
        MMM, No oral lesions.  Oropharynx is clear without tonsilar exudate.  No mandibular tenderness.
No tenderness over the maxilla or zygomatic arches.  There is some left masseter muscle tenderness.
There appears to be developing right periorbital ecchymosis.
NECK
Supple, no midline ttp.  No cervical adenopathy.  No JVD.  Paraspinal muscle tenderness bilaterally.
RESPIRATORY CHEST
        Breath sounds clear to auscultation bilaterally, No wheezing, No rales.  No crepitus or subcutaneous emphysema.  No significant tenderness to the chest wall.
CARDIOVASCULAR
        RRR, normal S1, normal S2, no murmurs, no rub, no thrills.
ABDOMEN
        Soft, nontender and non distended.  No guarding or rebound tenderness.
BACK
        No midline tenderness to palpation, range of motion normal, no costovertebral angle tenderness.
UPPER EXTREMITY
        Range of motion normal, Motor strength normal, Radial pulse normal.
LOWER EXTREMITY
        Range of motion normal, Motor strength normal, no cyanosis, no clubbing, no edema.  No palpable venous cords.
NEURO
        Awake, Alert and appropriate, Moves all extremities, Cranial nerves II-XII intact.  Normal gait.  No ataxia.
SKIN

**2 of 4**

**Lincoln/Bunch 0669**

RECEIVED  05/28/2018 03:05PM
2018/05/28 16:05:07    21 /42

BUNCH,MARK B
M000886127
A00191377982

Warm, dry and normal in color, no rash.

PSYCHIATRIC
Normal affect, Mood appropriate.

### Infant/Child/Adult-Data

**- Vital Signs**
**Vital Signs:**

**Vital Signs (All)**

|  | Temp | Pulse | Resp | BP | Pulse Ox |
|---|---|---|---|---|---|
| 02/13/18 22:24 |  | 74 | 16 | 182/119 | 95 |
| 02/13/18 20:05 | 98.3 F | 76 | 18 | 205/119 | 97 |

**Vital Signs - 12 hr**

|  | Temp | Pulse | Resp | BP | Pulse Ox |
|---|---|---|---|---|---|
| 02/13/18 22:24 |  | 74 | 16 | 182/119 | 95 |
| 02/13/18 20:05 | 98.3 F | 76 | 18 | 205/119 | 97 |

### Infant/Child/Adult-Doctor Note

**- ED Course**

This is a 54-year-old male who presents after a motor vehicle accident that is fairly low mechanism. He did strike his head, and had several neurologic symptoms such as blurred vision and dizziness, which is now resolved. This does seem consistent with concussion. CT of the head and cervical spine were performed revealing no evidence for any acute traumatic process. The patient was doing better. He was given acetaminophen for his headache, and we discussed concussion precautions, which she will be given. His blood pressures were elevated, but with the recent trauma, the headache, and being in the emergency department, I do not feel that immediate treatment with antihypertensives would be beneficial. I instructed the patient that this was very important to follow-up within one week with his primary care physician to have this rechecked and to initiate treatment of his blood pressures remained high. He verbalized understanding.

He was comfortable with the plan and stable at discharge.

**- Attending**
**Agree Statement:**

**\*ED Physician Scribe Agree**

Scribe documentation is identified by corresponding username and ID. Identified user acted as a scribe only, under the direct supervision of the Attending ED Provider as identified by that provider's signature authenticating this record.
In the event of a discrepancy between the scribe's transcription and that of the Attending, it should

3 of 4

**Lincoln/Bunch 0670**

06/04/2019  16:30    7196350966                                    PAGE 40/99

RECEIVED  05/28/2018 03:05PM
2018/05/28 16:05:07    22 /42

BUNCH,MARK B
M000886127
A00191377982

be understood that the attending's documentation is correct.

**Cosigned by:** David R Wilson

**Date:** 02/13/18 **Time:**2257

**Infant/Child/Adult-Diagnosis**
**Diagnosis:** concussion with closed head injury
**Secondary Diagnosis:** cervical strain
**Additional Diagnosis:** right periorbital ecchymosis
**Additional Diagnosis:** elevated blood pressure
**Additional Diagnosis:** Status post MVA

**Infant/Child/Adult-Disposition**

**- Departure**
**Follow up with::**
Specified,None [Primary Care Provider] -

<Electronically signed by David R Wilson MD> 02/13/18 2258

**4 of 4**

**Lincoln/Bunch 0671**

06/04/2019  16:30     7196350966
From:

Bunch, Mark Bryan (MR # CEUL0963303) DOB:                    Encounter Date: 05/31/2018

# Bunch, Mark Bryan

MRN: CEUL0963303

**Treatment** 5/31/2018          Provider: Ethan J Freedman, PT (Physical Therapy)
St Thomas More Hospital        Primary diagnosis: Cervical pain (neck)
Outpatient Rehabilitation Dept   Reason for Visit: Referred by Steven Wayne Olson, MD

## Progress Notes                    Ethan J Freedman, PT (Physical Therapist) - Physical Therapy

Expand All   Collapse All

✚ **Centura Health**

**St. Thomas More Hospital**
**Outpatient Rehabilitation**
**1338 Phay Avenue**
**Canon City, CO 81212**
**Phone: (719) 285-2000**
**Fax: (719) 285-2255**

**Physical Therapy Re-evaluation Note - Visit #5**

Treatment date: 05/31/18

Time Calculation
Start Time : 1002
Stop Time : 1057
Time Calculation (min): 55 min

Precautions: driving restrictions.

**Assessment/Plan:**

In 3 wks, pt will:
1. Demonstrate safety and independence with HEP--met
2. Decrease pain at worst to 6/10--met
3. Increase ROM of cervical spine to <50% restricted and pain free--not met
4. Increase ROM of L shoulder to: flexion and ABD 0-160--not met
5. Decrease score on NDI by 9 points (22/50)--not met

In 6 wks, pt will:
1. Decrease pain at worst to 4/10--not met
2. Increase strength of B UE to 5/5--met
3. Increase ROM of cervical spine to <20% restricted and pain free--not met
4. Increase ROM of L shoulder to WFL--not met
5. Decrease score on NDI by 18 points (13/50)--not met

At this time, patient has only made improvements on B UE strength, and all other goals there
has been minimal progress. Patient's re-evaluation shows inconsistent results with B UE
strength, visual tracking, and balance testing. Will follow up with PCP and neurology specialist
to inquire as to POC in PT. Requesting additional 6 visits to achieve PT goals.

**Subjective:**

Bunch, Mark Bryan (MR # CEUL0963303) Printed at 6/13/18 8:10 AM              Page 1 of 3

Bunch, Mark Bryan (MR # CEUL0963303) DOB:                    Encounter Date: 05/31/2018

**Subjective**

Mark Bryan Bunch is a 54 y.o. male c/o acute on chronic L sided cervical pain, muscle restrictions post MVA.
Current pain rated at 4/10 and at worst since last session rated at 6/10. Patient reported improved symptoms but was very sore after last session.

**Objective:**

Cervical Scan:
Cervical spine ROM (in % restricted): flexion 25% with pain in posterior cervical spine, extension 25% with tightness; R side bending 25%, increased with overpressure and hold; L side bending 25% restricted and no increased pain with overpressure and hold; R rotation 50% restricted and increased sharp pain with overpressure and no change with holds; L rotation 25% restricted and no increased pain from overpressure and holds.
Neurogenic fatigue: Cervical retraction and protraction painful, with protraction > retraction; L scapular elevation painful and weak; all others WFL.
Compression/Traction: increased pain with compression in neutral and extension; tractions in neutral no increased pain.
Reflexes: 2+
Sensation: Intact to light touch sensation to B UE.
UMN: Hoffman's and clonus absent.
Dural testing: Cervical slump (-).
Posture: FHP
Shoulder ROM (in degrees):
L shoulder flexion 0-160 and tightness; ABD 0-142 no increased pain; IR WFL at 0*, 1" difference behind back; ER WFL at 0*, no pain at 90*.
B UE Strength: B UE 5/5 and pain free.
Palpation: severe TTP L lateral neck, C2-6, and ~T6.
Outcome Measures--NDI: Evaluation score on 5/4/18: 31/50=62%; Re-evaluation score on 5/31/18: 30/50=60%.
CN testing: H-testing showed smooth tracking, no impairment, convergence slightly delayed on L; saccades showed smooth and direct tracking with no impairment.
Balance: EO shoulder width apart, narrow BOS, tandem good; EC with all situations instantaneous and inconsistent LOB, with resistance when guarded. No attempt to self correct.

Patient completed following exercises:
UBE lvl 2 x6mins

Consider specific segmental cervical spine mobility, quadruped stabilization as indicated.

Referring Provider: Olson

Ethan J Freedman, PT

**Additional Documentation**

Flowsheets:    PT Daily Treatment, PT Charges
Encounter Info:   Billing Info, History, Allergies, Detailed Report, Patient Education, Facesheet

**History**

Not marked as reviewed during this visit.

Bunch, Mark Bryan (MR # CEUL0963303) Printed at 6/13/18 8:10 AM                    Page 2 of 3

**Lincoln/Bunch 0673**

Bunch, Mark Bryan (MR # CEUL0963303) DOB:                    Encounter Date: 05/31/2018

## Linked Episodes

PT cervical spine pain 2018 Noted 5/4/2018

## Orders Performed

Ambulatory Referral to Physical Therapy Closed

## Medication Changes

As of 5/31/2018  3:51 PM

None

## Visit Diagnoses

Cervical pain (neck) M54.2
Chronic neck pain M54.2, G89.29

Lincoln/Bunch 0674

06/04/2019   16:30     7196350966

Bunch, Mark Bryan (MR # CEUL0963303) DOB:                          Encounter Date: 06/04/2018

# Bunch, Mark Bryan

MRN: CEUL0963303

**Treatment** 6/4/2018          Provider: Ethan J Freedman, PT (Physical Therapy)
St Thomas More Hospital      Primary diagnosis: Cervical pain (neck)
Outpatient Rehabilitation Dept   Reason for Visit: Referred by Steven Wayne Olson, MD

## Progress Notes                    Ethan J Freedman, PT (Physical Therapist) • Physical Therapy
Expand All   Collapse All

 **Centura Health**

**St. Thomas More Hospital**
**Outpatient Rehabilitation**
**1338 Phay Avenue**
**Canon City, CO 81212**
**Phone: (719) 285-2000**
**Fax: (719) 285-2255**

**Physical Therapy Daily Note - Visit #6**

Treatment date: 06/04/18

Time Calculation
Start Time : 0920
Stop Time : 1000
Time Calculation (min): 40 min

Precautions: driving restrictions.

**Assessment/Plan:**

Patient significantly improved the lazer stabilization ability, but continues to not tolerate manual
therapy well. Will follow up with PCP and neurology specialist to inquire as to POC in PT.
Patient to see Dr. Higginbathom tomorrow (6/5/18).

**Subjective:**

**Subjective**

  Mark Bryan Bunch is a 54 y.o. male c/o acute on chronic L sided cervical pain, muscle
restrictions post MVA.
Current pain rated at 3/10 and at worst since last session rated at 5/10. Patient reported
improved symptoms overall but was very sore after last session.

**Objective:**

Patient completed following exercises:
B UE 0.5kg ball CW/CCW circles 2x20ea.
Lateral band walks with lvl 2 tband x2 lengths
UBE lvl 3 x6mins
Lazer diode stabilization x1 ea:

Bunch, Mark Bryan (MR # CEUL0963303) Printed at 6/13/18 8:10 AM            Page 1 of 2

**Lincoln/Bunch 0675**

Bunch, Mark Bryan (MR # CEUL0963303) DOB: 09/17/          Encounter Date: 06/04/2018

Spiral balloon (improved from last session, but still requires more control at bottom of page); maze (improved ability to maintain center of maze); tracing lines (difficulty with curves more than diagonals).
Manual x10mins:
Supine: cervical SOR, B trap stretches, STM of suboccipital mm.
MHP on thoracic and cervical spine x10mins

Consider quadruped stabilization as indicated.

Not today:
Lvl 2 tcord rows, extensions, and reverse flys 2x10ea.

Referring Provider: Olson

Ethan J Freedman, PT

## Additional Documentation

Flowsheets:     Travel and Exposure Screening, PT Daily Treatment, PT Charges
Encounter Info:  Billing Info, History, Allergies, Detailed Report, Patient Education, Facesheet

## Media

Electronic signature on 6/4/2018 9:18 AM
Electronic signature on 6/4/2018 9:18 AM

## History

Not marked as reviewed during this visit.

## Linked Episodes

PT cervical spine pain 2018 Noted 5/4/2018

## Orders Placed

None

## Medication Changes

As of 6/4/2018 11:04 AM

None

## Visit Diagnoses

Cervical pain (neck) M54.2

**Lincoln/Bunch 0676**

Page 1 of 3



**BUNCH, MARK B**
55 Y old Male, DOB:
Account Number: 206490

Home:
Guarantor: BUNCH, MARK B   Insurance: w ESIS
PCP: STEVEN OLSON, MD   Referring: STEVEN OLSON, MD
Appointment Facility: Colorado Springs Neuro Assoc.

10/19/2018                          Progress Notes: JULIA BRINLEY, DO

### Current Medications
**Taking**
- Flexeril 10 mg Tablet 1 tab tid

### Past Medical History
Bronchitis.
Hernia.
Pneumonia.

### Surgical History
Tonsillectomy
Hernia repair

### Family History
COPD.

### Social History
Alcohol Use
  Did you have a drink containing alcohol in
the past year? *No*
  Points *0*
  Interpretation *Negative*
Tobacco Use
  Status *Never smoked*

### Allergies
penicillin: rash - Drug Allergy

### Review of Systems
General:
  no Fever. Fatigue yes. no Loss of
appetite. no Significant weight loss.
no Weight gain.
Dermatology:
  no Itching. no Redness. no Lumps.
no Rash. no Skin cancer.
Endocrinology:
  no Excessive sweating. no Excessive
thirst. no Temperature intolerance.
no Lactation.
Neurology:
  Headache yes. Memory Problems yes.
no Tremors. Balance difficulty yes.
no Numbness. no Weakness. Speech
problems yes. Dizziness yes. no Seizures.
Ophthalmology:
  Vision loss yes. Blurring of vision yes.
Double vision yes.

### Reason for Appointment
1. Brain injury

### History of Present Illness

General:
  55-year-old gentleman who presents today for evaluation of
traumatic brain injury. In February of this year he got an accident.
Patient describes that the car in front of them was put in reverse and
"stomped on the gas." He was hit rather hard in the front and he
reports that he hit his head on the steering wheel. He did lose
consciousness, unclear for how long. Directly after he reports that he
could not see out of his left eye and it felt as though somebody pulled a
shirt over his head. He did have a fall due to balance issue and he
reports disorientation, confusion along with neck pain and headache.
He did go to the ER for further evaluation and he was diagnosed with
concussion and "something else." He has been working with
Workmen's Comp. and overall he is undergone physical therapy,
psychotherapy, vision therapy and has had neuropsych testing. He
reports that overall he has gotten better but is not back to his baseline.
He continues to have balance issues, headaches, memory difficulties in
addition to speech difficulties and double vision. He is doing vision
therapy and is currently wearing prism glasses through Dr. Saxerud.
He continues to see a therapist to help with his significant mood
symptoms which he feels as though has gotten better. Reviewed
neuropsych testing that demonstrated postconcussive recovery with
frontal lobe just executive function although there was also mention of
symptom validity testing concerning for intentional lack of effort. He
also continues to have headaches. He reports that these are bilateral
temples, worse on the left side that will radiate everywhere. He also
has radiation into his neck, more so on the left and is described as a
throbbing pain. This is associated with light and sound sensitivity
along with nausea but no vomiting. These are currently lasting 2-3
times per week and can be up to an entire day. His pain skills
approximately a 5/10. He reports that he was tried on amitriptyline at
one point but this made him feel "weird" and his skin crawl. He does
report difficulty with sleeping both difficulty getting to sleep and
staying asleep. It is recommended that patient receive massage
therapy but he reports that this was never approved. There is also
recommended the patient undergo speech therapy due to significant
difficulty with communicating, the patient reports that again this was

Patient: BUNCH, MARK B   DOB: 09/17/1963   Progress Note: JULIA BRINLEY, DO   10/19/2018
*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

Sent to OC
11/06/2018
by PM LLC

**Lincoln/Bunch 0677**

06/04/2019   16:30   7196350966

Page 2 of 3

**Hematology:**
no History of transfusion. no Easy bruising.
**ENT-Respiratory:**
no Hearing loss. Ringing in ears yes. no Shortness of breath. no Sleep apnea. no Cold and cough. no Change in voice. no Difficulty swallowing.
**Cardiology:**
no Chest pain. no Palpitations/irregular heartbeat. no Leg swelling. no History of heart attack. no Atrial fibrillation.
**Musculoskeletal:**
no Joint pain. no Joint swelling. no Joint stiffness. no Muscle aches.
**Gastroenterology:**
no Abdominal pain. no Heartburn. Nausea yes. no Vomiting. no Blood in stool.

**Psychology:**
Anxiety yes. no Depression. Sleep disturbances yes. no Hyperactivity. Attention Deficit yes.
**Genitourinary:**
no Difficulty urinating. no Urinary urgency. no Increased urinary frequency. no Urinary incontinence.

has not been approved yet. He denies any of these issues prior to his accident and states that he has never had a focal neurologic issue in the past. An MRI of his brain was done that demonstrated white matter disease, mild, that could be in a pattern compatible with multiple sclerosis.

## Vital Signs

BP sitting 150/90 mm Hg, Pulse sitting 78, Respirations 16, Wt 230 lbs, Height 72 inches, BMI 31.19.

## Examination

General:
General pleasant, in NAD, thin, well-groomed.
Eyes normal lids and conjunctivae, pupils reactive, grossly normal funduscopic exam.
Back nontender to palpation.
Respiratory clear to auscultation, good effort.
Cardiovascular normal auscultation, normal carotid auscultation, no pedal edema.
Musculoskeletal normal tone, no atrophy, no cyanosis or clubbing.
Neurological:
Cortical Functions : normal attention span and concentration, normal recent remote memory, speech fluent although stuttering at times, comprehension and language intact, alert and oriented X 3, general knowledge and judgement within normal variation.
Cranial Nerves : I - Not Tested, II - Pupils 4mms reacting briskly to 2 mms, No afferent pupil defect, III , IV, VI - EOM were full with normal pursuit and saccade, No ptosis or nystagmus, V - Motor V intact, Pinprick, light touch intact in all three divisons, VII - No asymmetry or weakness, VIII - Actuity intact to finger rub bilaterally, IX , X- Palate rose in midile, XI - Sternocleidomastoid, trapezius strength intact, XII - Tongue protruded midline w/o atrophy or fasciculations.
Motor Strength : V/ V bilaterally.
Sensory : intact to light touch, temperature and vibration throughout.
Reflexes : bilaterally symmetrical, babinski absent.
Tremors : absent.
Coordination : with finger to nose patient will often miss my finger by an inch bilaterally, often has to close one eye.
Gait and Station : Romberg was positive, difficulty with tandem.

## Assessments

1. Post-concussional syndrome - F07.81 (Primary)
2. Intractable chronic migraine without aura and without status migrainosus - G43.719
3. Diplopia - H53.2
4. Other symptoms and signs involving appearance and behavior - R46.89
5. Other symptoms and signs involving cognitive functions and awareness - R41.89
6. Insomnia, unspecified type - G47.00
7. Imbalance - R26.89

Patient: BUNCH, MARK E   DOB:        Progress Note: JULIA BRINLEY, DO   10/19/2018
*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

Sent to OC
11/06/2018
by PM LLC

**Lincoln/Bunch 0678**

06/04/2019   16:30   7196350966

Page 3 of 3

**Treatment**
**1. Post-concussional syndrome**
Start nortriptyline capsule, 10 mg, 1 to 2 cap(s), orally, qd as directed,
30 day(s), Refills 2
  PROCEDURE: Speech therapy

**Follow Up**
2 Months

Electronically signed by JULIA BRINLEY on 10/31/2018 at
08:55 AM MDT

Sign off status: Pending

Colorado Springs Neuro Assoc.
2312 N. Nevada Avenue
Suite 100
Colorado Springs, CO 80907-3307
Tel: 719-473-3272
Fax: 719-389-1191

Patient: BUNCH, MARK B   DOB: 09/17/1963   Progress Note: JULIA BRINLEY, DO   10/19/2018
Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)

http://192.168.60.253:9090/mobiledoc/jsp/catalog/xml/printMultipleChartOptions.jsp?en...   10/31/2018

Sent to OC
11/06/2018
by PM LLC

**Lincoln/Bunch 0679**

Penrose Hospital                                          Bunch, Mark Bryan
2222 N Nevada Ave                                         MRN: CEUL0963303, DOB:        , Sex: M
COLORADO SPRINGS CO 80907                                 Visit date: 4/24/2019

### 04/24/2019 - Treatment in Penrose Hospital Outpatient Rehabilitation Services

Notes

Progress Notes

Carolyn K Lyon, CCC-SLP at 4/24/2019 12:40 PM

 Centura Health.

Centura Health Outpatient Rehabilitation
Penrose Hospital
2222 N. Nevada Ave.
Colorado Springs, CO  80907
719-776-5200 (P)
719-776-5392 (F)

### Daily Speech Therapy Treatment

**General:**
Time Calculation
Start Time: 1240
Stop Time : 1320
Time Calculation (min): 40 min
Visit # 17
Re-Assessment due: **5/1/19**
Pain: 2/10 neck

**Subjective:**

Pt arrived to the visit, alert and cooperative.

**Objective:**

Automatics - counting to 15 - 90% fluent with hand tapping as a pacing technique, until he reached the teens, was approximately 75% fluent - worked to decrease the tapping to be less visual by using foot tapping, noted a decrease in fluency on the teens to approximately 60%. SLP recommended using a finger to be less noticeable on more difficult utterances and work to decrease anxiety about difficult words ahead, since it decreases fluency.
Days of the week - overall 70% fluent with mod cues for use of melodic intonation therapy/rhythm - 5/7
Months - 9/12 - 75% with difficulty
/k - final position of words (pt has marked difficulty on this phoneme - pt educated on using less pronounced production of /k/ and increased fluency was noted.
/k/, /s/, and /g/ in initial position of words (pt has HEP for these) - pt educated on using relaxation (use tongue/jaw release for tension in between words if needed. Overall fluency was 80%.
SLP instructed on using /k/ in phrases - pt produced at 60% acc.
pt completed oral motor exercise home program with min-mod assist.

**Assessment:**

Marked decrease in overall fluency due to pt's emotional state in the session. HEP was advanced and pt appeared to benefit from practicing relaxation from a dysfluency at the first of a word. SLP discussed plans to d/c on or before 5/1/19 as pt progress dictates, pt verbalized understanding.
SHORT TERM GOALS:
1. Pt will use speech fluency techniques with min-mod assist at the phrase/sentence level with 70% acc (word level - 80%, phrase level 60% acc for /k/ - progressing).

Printed on 4/24/19  1:47 PM

Page 1

**Lincoln/Bunch 0680**

06/04/2019  16:30    7196350966                                                     PAGE 50/99

Penrose Hospital                                    Bunch, Mark Bryan
2222 N Nevada Ave                                   MRN: CEUL0963303, DOB:        , Sex: M
COLORADO SPRINGS CO 80907                           Visit date: 4/24/2019

**04/24/2019 - Treatment in Penrose Hospital Outpatient Rehabilitation Services (continued)**

Notes (continued)

2. Pt will complete oral motor exercise home program with min assist. (currently min-mod assist) for speech and
swallowing.
3. Pt will achieve 60% speech fluency at the sentence level with min assist. (70% word level with max cues).
4. Pt will use compensatory memory strategies for attention and recall tasks and home program with min-mod
assist. (GOAL MET).
5. Pt will tolerate po trials of liquids/solids with less than 3-4 sec delay in bolus propulsion for 4/5 trials. (goal met)

Plan (Next Session):

Continue ST plan of care for speech -  Complete HEP and d/c with max potential reached next session.

Printed on 4/24/19  1:47 PM                                                         Page 2

**Lincoln/Bunch 0681**

Penrose Hospital
2222 N Nevada Ave
COLORADO SPRINGS CO 80907

Bunch, Mark Bryan
MRN: CEUL0963303, DOB:
Visit date: 3/27/2019

Sex: M

### 03/27/2019 - Treatment in Penrose Hospital Outpatient Rehabilitation Services

Notes

**Progress Notes**

Carolyn K Lyon, CCC-SLP at 3/27/2019 12:40 PM

 **Centura Health.**

Centura Health Outpatient Rehabilitation
Penrose Hospital
2222 N. Nevada Ave.
Colorado Springs, CO  80907
719-776-5200 (P)
719-776-5392 (F)

### Daily Speech Therapy Treatment

**General:**

Time Calculation
Start Time: 1245
Stop Time : 1325
Time Calculation (min): 40 min
Visit # 16
Re-Assessment due: **5/1/18**
Pain: 2/10 headache

**Subjective:**

Pt arrived late to the visit due to having a new driver, alert and cooperative. Pt stated that they nearly had an accident on the way there with the driver running a red light, speech fluency was markedly reduced, pt was tearful and appeared anxious during most the session. SLP recommended at the first of the session that the pt call and ask for another driver, and the pt refused.

**Objective:**

Breathing ex's - blowing on the corner of a Kleenex, noted slighlty less spasticity of lips, min cues for keeping lips open but pursed - overall 70% acc.
Sustained "ah" - noted sign spasms at first, SLP had pt perform in unison - 9, 9, 10, 11, avg 9.75 sec (pt could not sustain an "ah" at the start of therapy).
Pt counted 1-10 with SLP in unison with hand tapping - noted increased fluency and SLP stopped the unision pt was still using a louder, more fluent voice.
Days of the week -
Singing - nursery rhymes - using hand tapping.
Speech/naming room objects and their functions - overall fluency was 40%, SLP educated on tension/release for first syllable with pt intentionally stuttering for the first syllable and then focusing on release for the rest of the word, pt's fluency for the rest of the word increased to 75%.
Pt was given list of automatics for home practice, verbalized understanding of the instructions.

**Assessment:**

Printed on 4/24/19  1:47 PM

Page 3

**Lincoln/Bunch 0682**

Penrose Hospital
2222 N Nevada Ave
COLORADO SPRINGS CO 80907

Bunch, Mark Bryan
MRN: CEUL0963303, DOB:     , Sex: M
Visit date: 3/27/2019

**03/27/2019 - Treatment in Penrose Hospital Outpatient Rehabilitation Services (continued)**

Notes (continued)

Marked decrease in overall fluency due to pt's emotional state in the session. HEP was advanced and pt appeared to benefit from practicing relaxation from a dysfluency at the first of a word. SLP discussed plans to d/c on or before 5/1/19 as pt progress dictates, pt verbalized understanding.

SHORT TERM GOALS:

1. Pt will use speech fluency techniques with min-mod assist at the phrase/sentence level with 70% acc (word level - 75% - progressing).

2. Pt will complete oral motor exercise home program with min assist. (currently mod assist) for speech and swallowing.

3. Pt will achieve 60% speech fluency at the sentence level with min assist. (70% word level with max cues).

4. Pt will use compensatory memory strategies for attention and recall tasks and home program with min-mod assist. (GOAL MET).

5. Pt will tolerate po trials of liquids/solids with less than 3-4 sec delay in bolus propulsion for 4/5 trials. (goal met)

**Plan (Next Session):**

Continue ST plan of care for speech, advance complexity of skilled therapy tasks as pt tolerates.

Electronically signed by Carolyn K Lyon, CCC-SLP at 3/27/2019  1:38 PM

**Lincoln/Bunch 0683**

06/04/2019  16:30    7196350966                                                    PAGE 53/99

Penrose Hospital                            Bunch, Mark Bryan
2222 N Nevada Ave                           MRN: CEUL0963303, DOB:          , Sex: M
COLORADO SPRINGS CO 80907                   Visit date: 3/20/2019

## 03/20/2019 - Treatment in Penrose Hospital Outpatient Rehabilitation Services

Notes

Progress Notes

Carolyn K Lyon, CCC-SLP at 3/20/2019 12:40 PM



Centura Health Outpatient Rehabilitation
Penrose Hospital
2222 N. Nevada Ave.
Colorado Springs, CO  80907
719-776-5200 (P)
719-776-5392 (F)

### Daily Speech Therapy Treatment

**General:**
Time Calculation
Start Time: 1240
Stop Time : 1320
Time Calculation (min): 40 min
Visit # 15
Re-Assessment due: **5/1/19**
Pain: 0/10

**Subjective:**

Pt arrived to the visit, alert and cooperative. Pt missed his session last week due to the OP dept being closed due to a blizzard/adverse weather conditions.

**Objective:**
Pt was eating the last of a package of peanut butter crackers at the start of the session, noted less than 4 sec delay in initiating the swallow for 5/5 trials, is not c/o dysphagia.
Pt completed tongue ex's for /l/ CV syllables - 5 rep's each - noted overall fluency of 60%, used finger tapping as a pacing technique with min cues, noted increased acc with less cues.
Speech for naming 3 items of 10 concrete categories  -  using hand tapping pacing, rhythm/melodic intonation therapy, and semantic cueing as a speech compensatory technique - overall fluency was 65-70%
Pt completed words without blends/with blends (bond/blonde) -  Pt had to use hand tapping and intonation - 75-80% fluency (15/20 pairs) vs  than 30% fluency no hand tapping. Pt was given 2 sheets for home practice.
Pt used decreased intonation in his speech, which further reduced his overall speech intelligibility for the listener, completed speech drills with use of interrogative vs declarative stress to assist with speech fluency and intelligibility, less than 25% at first with max cues but increased to 50% at the end of 6 trials with mod cues. Pt was given task as part of his HEP.

**Assessment:**
Feel that pt is completing home program and is making slow but steady gains in speech fluency. Goals have been met for cognition and swallowing. Pt would benefit from continued ST sessions for unmet goals.
SHORT TERM GOALS:
1. Pt will use speech fluency techniques with min-mod assist at the phrase/sentence level with 70% acc (word level - 75% - progressing).

Printed on 4/24/19  1:47 PM                                                       Page 5

**Lincoln/Bunch 0684**

06/04/2019  16:30    7196350966                                           PAGE 54/99

Penrose Hospital                              Bunch, Mark Bryan
2222 N Nevada Ave                             MRN: CEUL0963303, DOB:            Sex: M
COLORADO SPRINGS CO 80907                     Visit date: 3/20/2019
### 03/20/2019 - Treatment in Penrose Hospital Outpatient Rehabilitation Services (continued)
Notes (continued)

2. Pt will complete oral motor exercise home program with min assist. (currently mod assist) for speech and swallowing.
3. Pt will achieve 60% speech fluency at the sentence level with min assist. (70% word level with max cues).
4. Pt will use compensatory memory strategies for attention and recall tasks and home program with min-mod assist. (GOAL MET).
5. Pt will tolerate po trials of liquids/solids with less than 3-4 sec delay in bolus propulsion for 4/5 trials. (goal met)

**Plan (Next Session):**

Continue ST plan of care at once a week for 4-6 weeks for speech production, advance complexity of skilled therapy tasks as pt tolerates.

Electronically signed by Carolyn K Lyon, CCC-SLP at 3/20/2019  1:32 PM

Printed on 4/24/19  1:47 PM                                                        Page 6

**Lincoln/Bunch 0685**

06/04/2019  16:30    7196350966                                                    PAGE 55/99

Penrose Hospital                                    Bunch, Mark Bryan
2222 N Nevada Ave                                   MRN: CEUL0963303, DOB:        Sex: M
COLORADO SPRINGS CO 80907                           Visit date: 3/6/2019

**03/06/2019 - Treatment in Penrose Hospital Outpatient Rehabilitation Services**

Notes

Progress Notes

Carolyn K Lyon, CCC-SLP at 3/6/2019  2:40 PM

 **Centura Health**

Centura Health Outpatient Rehabilitation
Penrose Hospital
2222 N. Nevada Ave.
Colorado Springs, CO  80907
719-776-5200 (P)
719-776-5392 (F)

## Daily Speech Therapy Treatment

**General:**
Time Calculation
Start Time: 0240
Stop Time : 0320
Time Calculation (min): 40 min
Visit #  14
Re-Assessment due: **5/1/19**
Pain: 4/10 headache

**Subjective:**

Pt arrived to the visit, alert and cooperative.

**Objective:**

Pt completed tongue ex's for rapid CV /l/ /k/ and /n/ syllable production - 5 rep's of 4 words (la, lee, loo, low) - overall fluency for /l/ and /n/ was 75% with marked increase in fluency and breath control. Pt had marked difficulty with the pressure consonant of /k/ with only 40% fluency.
Picture naming - Photo ID cards - using hand tapping pacing, rhythm, and semantic cueing as a speech compensatory technique - noted increased speech fluency with object naming using a lead-in sentence by using the function of the word (ie, you sit on a _____). Pt named 1-3 syllable words using hand tapping, sentence completion, using singing type rhythm with max cues at first, mod cues at the end of task and 60% overall fluency with repetition. SLP noted increased use of all self cueing methods this session.

**Assessment:**
Noted increased speech fluency this session, pt is using more of the cueing strategies with greater effectiveness.
NEW SHORT TERM GOALS:
1. Pt will use speech fluency techniques with min-mod assist at the phrase/sentence level with 70% acc (word level - 75% - progressing).
2. Pt will complete oral motor exercise home program with min assist. (currently mod assist) for speech and swallowing.
3. Pt will achieve 60% speech fluency at the sentence level with min assist. (70% word level with max cues).
4. Pt will use compensatory memory strategies for attention and recall tasks and home program with min-mod assist. (GOAL MET).

Printed on 4/24/19  1:47 PM                                                        Page 7

**Lincoln/Bunch 0686**

06/04/2019   16:30     7196350966                                                        PAGE 56/99

Penrose Hospital                                    Bunch, Mark Bryan
2222 N Nevada Ave                                   MRN: CEUL0963303, DOB:          Sex: M
COLORADO SPRINGS CO 80907                           Visit date: 3/6/2019
### 03/06/2019 - Treatment in Penrose Hospital Outpatient Rehabilitation Services (continued)
Notes (continued)

5. Pt will tolerate po trials of liquids/solids with less than 3-4 sec delay in bolus propulsion for 4/5 trials.

**Plan (Next Session):**

Continue ST plan of care at once a week for speech/swallowing skills, advance complexity of skilled therapy tasks as pt tolerates.

Electronically signed by Carolyn K Lyon, CCC-SLP at 3/6/2019  5:00 PM

**Lincoln/Bunch 0687**

Penrose Hospital                          Bunch, Mark Bryan
2222 N Nevada Ave                         MRN: CEUL0963303, DOB:          Sex: M
COLORADO SPRINGS CO 80907                 Visit date: 3/1/2019

**03/01/2019 - Treatment in Penrose Hospital Outpatient Rehabilitation Services**

Notes

Progress Notes

Carolyn K Lyon, CCC-SLP at 3/1/2019 12:40 PM

 **Centura Health**

Centura Health Outpatient Rehabilitation
Penrose Hospital
2222 N. Nevada Ave.
Colorado Springs, CO  80907
719-776-5200 (P)
719-776-5392 (F)

**Daily Speech Therapy Treatment**

**General:**
Time Calculation
Start Time: 1240
Stop Time : 1320
Time Calculation (min): 40 min
Visit # 13
Re-Assessment due: **5/1/19**
Pain: 0/10

**Subjective:**

Pt arrived to the visit, alert and cooperative.

**Objective:**

Pt's speech was notably more fluent for greetings/social conversation, pt stated "I practiced a lot".
Picture naming - using hand tapping pacing and semantic cueing as a speech compensatory technique - noted
increased speech fluency with object naming using a lead-in sentence by using the function of the word (ie, you sit on
a _____). Pt was over 75% fluent for name 5/15 for 2-3 syllable words using hand tapping and sentence completion
with max cues.
Pt was able to respond to automatic sentence completion with 40% fluency on single syllable word responses.
Pt questioned at length by SLP re independence of memory/cognition at home and for use of compensatory memory
strategies - Pt stated he felt he was close to baseline level "doing ok" - cognitive goals will be considered met and
d/c'd.
 Home practice tasks of automatic speech were given, pt verbalized understanding of instructions.

**Assessment:**
 Noted increased speech fluency this session, HEP was advanced. Cognitive goals have been met.
NEW SHORT TERM GOALS:
1. Pt will use speech fluency techniques with min-mod assist at the phrase/sentence level with 70% acc (word level -
75% - progressing).
2. Pt will complete oral motor exercise home program with min assist. (currently mod assist) for speech and
swallowing.
3. Pt will achieve 60% speech fluency at the sentence level with min assist. (70% word level with max cues).
4. Pt will use compensatory memory strategies for attention and recall tasks and home program with min-mod assist.

Printed on 4/24/19  1:47 PM                                              Page 9

**Lincoln/Bunch 0688**

Penrose Hospital                                    Bunch, Mark Bryan
2222 N Nevada Ave                                  MRN: CEUL0963303, DOB:          Sex: M
COLORADO SPRINGS CO 80907                          Visit date: 3/1/2019

### 03/01/2019 - Treatment in Penrose Hospital Outpatient Rehabilitation Services (continued)

**Notes (continued)**

(GOAL MET).
5. Pt will tolerate po trials of liquids/solids with less than 3-4 sec delay in bolus propulsion for 4/5 trials.

**Plan (Next Session):**

Continue ST plan of care at once a week for speech/swallowing skills, advance complexity of skilled therapy tasks as pt tolerates.

Electronically signed by Carolyn K Lyon  CCC-SLP at 3/1/2019  1:32 PM

**Lincoln/Bunch 0689**

06/04/2019  16:30   7196350966                                    PAGE 59/99

Penrose Hospital                          Bunch, Mark Bryan
2222 N Nevada Ave                         MRN: CEUL0963303, DOB:        Sex: M
COLORADO SPRINGS CO 80907                 Visit date: 2/22/2019

**02/22/2019 - Treatment in Penrose Hospital Outpatient Rehabilitation Services**

Notes

Progress Notes

Carolyn K Lyon, CCC-SLP at 2/22/2019  3:20 PM

 **Centura Health.**                    Centura Health Outpatient Rehabilitation
                                                                 Penrose Hospital
                                                                 2222 N. Nevada Ave.
                                                          Colorado Springs, CO  80907
                                                                 719-776-5200 (P)
                                                                 719-776-5392 (F)

**Daily Speech Therapy Treatment**

**General:**
Time Calculation
Start Time: 0320
Stop Time : 0400
Time Calculation (min): 40 min
Visit # 12
Re-Assessment due: 5/1/10
Pain: 4/10 right ear from ear infection

**Subjective:**

Pt arrived to the visit, alert and cooperative.

**Objective:**

Breath control and lip control ex's - blowing on Kleenex 2-3 sec  to decrease laryngeal tension and spasm which appears to occur during speech - mod cues.
Pt produced /h/ CV syllables while blowing on his hand to decrease vocal tension - overall acc was 5/8, noted less tension.
Singing - Pt sang in chorus for several songs - approximately 40-50% fluent and more relaxed voicing. Recommended practicing to his favorite music.
Tongue exercises - 2 sets of 10 rep's each to increase speech coordination and oral swallowing control - including  protrusion, lateralization, and for alternating elevation/depression, tongue clicks, and 1 set of 10 rep's for, licking lips circumoral outside his mouth - min-mod cues.
Pt completed rapid lateralization for 15 sec duration - 5.5, 5, 5, 5.5, 6.0 - 5.4 sec avg - noted lingual tremor.
Pt completed 5 sets of 5 for  rapid CV /t/   Pt required min-mod cues overall for ex's, noted increased fluency for all of the rep's with markedly less vocal tension/dysfluency.
Pt educated that his progress in ST was overall reduced, and if greater progress was not noted in the next 2 sessions, d/c would be considered. Pt stated "I will practice really hard."

**Assessment:**
 Pt is possibly reaching max potential from ST, will re-assess pt's progress in the next 2 sessions.
NEW SHORT TERM GOALS:
1. Pt will use speech fluency techniques with min-mod assist at the phrase/sentence level with 70% acc.

Printed on 4/24/19  1:47 PM                                              Page 11

**Lincoln/Bunch 0690**

Penrose Hospital                                  Bunch, Mark Bryan
2222 N Nevada Ave                                 MRN: CEUL0963303, DOB:          Sex: M
COLORADO SPRINGS CO 80907                         Visit date: 2/22/2019

### 02/22/2019 - Treatment in Penrose Hospital Outpatient Rehabilitation Services (continued)

**Notes (continued)**

2. Pt will complete oral motor exercise home program with min assist. (currently mod assist) for speech and swallowing.
3. Pt will achieve 60% speech fluency at the sentence level with min assist.
4. Pt will use compensatory memory strategies for attention and recall tasks and home program with min-mod assist.
5. Pt will tolerate po trials of liquids/solids with less than 3-4 sec delay in bolus propulsion for 4/5 trials

**Plan (Next Session):**

Continue ST plan of care for eech/swallowing/cognitive-communication skills -  advance complexity of skilled therapy tasks as pt tolerates, consider d/c in next 2 sessions.

Electronically signed by Carolyn K Lyon, CCC-SLP at 2/22/2019  4:40 PM

Printed on 4/24/19  1:47 PM                                                        Page 12

**Lincoln/Bunch 0691**

06/04/2019  16:30    7196350966                                                    PAGE 61/99

Penrose Hospital                                    Bunch, Mark Bryan
2222 N Nevada Ave                                   MRN: CEUL0963303, DOB:        Sex: M
COLORADO SPRINGS CO 80907                           Visit date: 2/5/2019

**02/05/2019 – Treatment in Penrose Hospital Outpatient Rehabilitation Services**

Notes

Progress Notes

Carolyn K Lyon, CCC-SLP at 2/5/2019 12:40 PM

 **Centura Health**

Centura Health Outpatient Rehabilitation
Penrose Hospital
2222 N. Nevada Ave.
Colorado Springs, CO  80907
719-776-5200 (P)
719-776-5392 (F)

**Daily Speech Therapy Treatment**

**General:**
Time Calculation
Start Time: 1240
Stop Time : 1320
Time Calculation (min): 40 min
Visit # 11
Re-Assessment due: **5/1/19**
Pain: 0/10

**Subjective:**

Pt arrived to the visit, alert and cooperative.

**Objective:**

Breath control and lip control ex's – blowing on Kleenex 2-3 sec  to decrease laryngeal tension and spasm which appears to occur during speech – mod cues.
Pt produced /h/ CV syllables while blowing on his hand to decrease vocal tension – overall acc was 4/10.
Singing – Pt sang in chorus for several songs – approximately 40-50% fluent and more relaxed voicing.
Pt educated on tongue exercises at 5 rep's each to increase speech coordination and oral swallowing control – including  protrusion, lateralization, and for alternating elevation/depression, tongue clicks, tongue resistance inside of his cheek against his finger, licking lips circumoral outside and inside his mouth. Pt completed 5 sets of 5 for  rapid CV /l/ syllables with marked increase in speed/coordination.  Pt required mod cues overall.
Pt was given written instructions for all ex's for home practice.
Pt reported no choking in the past 2 past weeks.

**Assessment:**

Pt with increased oral and respiratory control at this session.
 NEW SHORT TERM GOALS:
1. Pt will use speech fluency techniques with min-mod assist at the phrase/sentence level with 70% acc.
2. Pt will complete oral motor exercise home program with min assist. (currently mod assist) for speech and swallowing.
3. Pt will achieve 60% speech fluency at the sentence level with min assist.
4. Pt will use compensatory memory strategies for attention and recall tasks and home program with min-mod assist.

Printed on 4/24/19  1:47 PM                                                           Page 13

**Lincoln/Bunch 0692**

06/04/2019  16:30    7196350966                                                    PAGE 62/99

Penrose Hospital                                    Bunch, Mark Bryan
2222 N Nevada Ave                                  MRN: CEUL0963303, DOB:        Sex: M
COLORADO SPRINGS CO 80907                          Visit date: 2/5/2019
         **02/05/2019 - Treatment in Penrose Hospital Outpatient Rehabilitation Services (continued)**

Notes (continued)

5. Pt will tolerate po trials of liquids/solids with less than 3-4 sec delay in bolus propulsion for 4/5 trials

**Plan (Next Session):**

Continue ST plan of care for speech and swallowing, advance complexity of skilled therapy tasks as pt tolerates.

Electronically signed by Carolyn K Lyon, CCC-SLP at 2/5/2019  1:19 PM

Printed on 4/24/19  1:47 PM                                                        Page 14

**Lincoln/Bunch 0693**

Penrose Hospital                          Bunch, Mark Bryan
2222 N Nevada Ave                         MRN: CEUL0963303, DOB:           Sex: M
COLORADO SPRINGS CO 80907                 Visit date: 1/30/2019

### 01/30/2019 - Treatment in Penrose Hospital Outpatient Rehabilitation Services

**Notes**

**Progress Notes**

Carolyn K Lyon, CCC-SLP at 1/30/2019  2:00 PM

 **Centura Health**

Centura Health Outpatient
Rehabilitation
Penrose Hospital
2222 N. Nevada Ave.
Colorado Springs, CO  80907
719-776-5200 (P)
719-776-5392 (F)

Insurance requires a physician signature on this plan of care. Please sign and fax back to 719-776-5392 at your earliest convenience.

> I CERTIFY THE NEED FOR THESE SERVICES FURNISHED UNDER THIS PLAN OF TREATMENT AND WHILE UNDER MY CARE
> Based upon review of the patient's progress and continued therapy plan, it is my medical opinion that **Mark Bryan Bunch** should continue speech therapy at Penrose Hospital Outpatient Rehabilitation Services:
>
> Signed: _____
>
> Date: _____
>
> Julia Brinley, DO

#### 90 DAY RE-ASSESSMENT/10TH VISIT SPEECH THERAPY UPDATE

> **General:**

Time Calculation
Start Time: 1400
Stop Time : 1440
Time Calculation (min): 40 min
Visit # 10
Re-Assessment due: **1/31/19**
Pain: 2/10 headache

ONSET DATE: 2/13/18
PRIMARY DIAGNOSIS: Post concussive syndrome
TREATMENT DIAGNOSIS: cognitive-communication deficits, dysarthria, possible dysphagia

INITIAL ASSESSMENT: Patient is a 55 year old male referred for cognitive evaluation/treatment. Pt reports he arrived with assist of a transportation company. Noted flat affect and reduced eye contact during the session.

**Lincoln/Bunch 0694**

06/04/2019  16:30    7196350966                                              PAGE 64/99

Penrose Hospital                           Bunch, Mark Bryan
2222 N Nevada Ave                          MRN: CEUL0963303, DOB:        , Sex: M
COLORADO SPRINGS CO 80907                  Visit date: 1/30/2019
_____
     01/30/2019 - Treatment in Penrose Hospital Outpatient Rehabilitation Services (continued)

Notes (continued)
_____

PMHX: obtained from the patient/medical records includes but may not be limited to the following:
     Medical History

     Past Medical History:
     Diagnosis                                             Date
          · Allergy
          · Bronchitis
          · Bunion
            Left foot
          · Pneumonia
            12 yrs ago
          · Umbilical hernia

MRI of the brain without contrast on 3/19/18 revealed FINDINGS: The ventricles and sulci are normal.
There are no masses.
There is no evidence of hemorrhage. Mild scattered areas of high
signal intensity seen on FLAIR and T2-weighted sequences in the
periventricular white matter regions. Some of these white matter
lesions show perpendicular pattern suggesting demyelinating white
matter disease from multiple sclerosis. The sinuses and mastoids are
clear. Calvarium is unremarkable.

IMPRESSION:
Mild white matter disease possibly from multiple
sclerosis.


Pt requires assist to drive, pay bills, and has significant residual balance problems. Pt has unsteady
gait, is at fall risk due to balance and visual-spatial deficits. Deficits are affecting the pt's ability to
work. Pt has s/s of dysphagia, was seen for MBS this date for evaluation. Pt stated he had muscle
function testing due to MRI results, he reported the results were "normal".

PRIOR ST TREATMENT: Pt has been seen for the past 3 months for ST but only 10 visits total thus
far. His attendance was markedly reduced for half of the treatment time due to transportation
problems (worker's comp provides transportation). Pt was initally recommended for 2 times a week ST,
but could only attend once due to transportation problems. Pt had MBS this date.

**RE-ASSESSMENT/OBJECTIVE:**

ORAL MOTOR: Oral mechanism eval demonstrated labial and lingual deficits with good strength, fair
ROM but markedly decreased coordination, noted apraxic type errors.

SWALLOWING: MBS this date -
RESULTS: adequate acceptance of all boluses given this date. No anterior labial leakage.
Initial bolus control within functional limits, mild spillover on thin liquids when patient begins pumping
and rocking bolus.
Pt demonstrated significant lingual pumping and rocking with multiple swallows to clear oral cavity
across all consistencies.
Pt also demonstrated visible neck tension, facial grimacing and upper body rocking while trying to
initiate the swallow.
Complete oral clearance after last swallow on all consistencies except the 13 mm barium pill. Pt
expectorated the pill. Pt not able to propel the pill posteriorly with the pill remaining between the lips
_____
Printed on 4/24/19  1:47 PM                                               Page 16

**Lincoln/Bunch 0695**

06/04/2019  16:30    7196350966                                               PAGE 65/99

Penrose Hospital                           Bunch, Mark Bryan
2222 N Nevada Ave                          MRN: CEUL0963303, DOB:          Sex: M
COLORADO SPRINGS CO 80907                  Visit date: 1/30/2019

**01/30/2019 - Treatment in Penrose Hospital Outpatient Rehabilitation Services (continued)**

**Notes (continued)**

and front teeth. Once bolus is propelled to the base of tongue, swallow is triggered in a timely manner. Mildly reduced tongue base retraction. Pharyngea phase within functional limits for age. No evidence of penetration
or aspiration on any of the consistencies presented. No residual in the pharynx after the swallows


PLAN:
*Compensatory Strategies for speech, cognition, and swallowing
 Speech fluency tasks
*Cognitive-communication Exercises
 Oral motor exercises including lip/facial and lingual ex's
 Swallowing precautions
*HEP
*Patient/Family Education and Training

Patient agrees with goals and plan of care
SHORT TERM GOALS:
  1.  Patient will complete speech fluency tasks with 70% accuracy. (50-60% at the word/phrase level for structured tasks - mod-max cues).
  2.  Patient will complete selective attention tasks with 90% accuracy. (50-60% acc - goal d/c'd).
  3.  Patient will complete moderately complex organization/problem solving tasks with 90% accuracy. (60% acc - goal d/c'd.).
  4.  Patient will recall a series of 7 items (visual) with 80% accuracy. (GOAL MET).
  5.  Patient will recall a series of 7 items (auditory) with 80% accuracy. (GOAL MET).
  6.  Patient will complete working memory tasks with 80% accuracy. (goal d/c'd).
  7.  Patient will complete memory tasks with a distractor with 80% accuracy (GOAL MET).
  8.  Patient will complete oral motor exercise home program with min assist. (currently mod assist).
9. Pt will use speech fluency techniques with min-mod assist at the phrase/sentence level with 70% acc. (currently at 40-50% although inconsistent).

LONG TERM GOALS:
  1.  Patient will improve functional cognitive/linguistic skills for home and in the community.
  2.  Patient will use learned compensatory strategies for cognition at home and in the community with min-mod assist.
      3. Patient improve functional speech skills at at home and in the community with mod assist.
      4. Pt will tolerate the least restrictive diet without s/s of aspiration per MBS results. (GOAL
MET).


NEW SHORT TERM GOALS:
1. Pt will use speech fluency techniques with min-mod assist at the phrase/sentence level with 70% acc.
2. Pt will complete oral motor exercise home program with min assist. (currently mod assist) for speech and swallowing.
3. Pt will achieve 60% speech fluency at the sentence level with min assist.
4. Pt will use compensatory memory strategies for attention and recall tasks and home program with min-mod assist.
5. Pt will tolerate po trials of liquids/solids with less than 3-4 sec delay in bolus propulsion for 4/5 trials.

NEW LONG TERM GOALS:
1. Patient will improve functional cognitive/linguistic skills for home and in the community.
2. Patient will use learned compensatory strategies for cognition at home and in the community with

Printed on 4/24/19 1:47 PM                                                    Page 17

**Lincoln/Bunch 0696**

Penrose Hospital
2222 N Nevada Ave
COLORADO SPRINGS CO 80907

Bunch, Mark Bryan
MRN: CEUL0963303, DOB:         , Sex: M
Visit date: 1/30/2019

**01/30/2019 - Treatment in Penrose Hospital Outpatient Rehabilitation Services (continued)**

Notes (continued)

min-mod assist.
3. Patient improve functional speech skills at at home and in the community with mod assist.
4. Pt will improve swallowing efficiency for po intake.

SUMMARY: Pt has increased his speech, cognitive, and swallowing skills, although progress was affected by attendance and inconsistency in pt's performance as a result. Pt continues to display the most difficulty with speech fluency, with milder cognitive and swallowing deficits. Pt has inconsistent responses at times, has responded with partial progress to voicing techniques for his speech deficits. Pt's cognition is variable in progress, although part of pt's goals were met, and SLP has noted a possible lack of effort in this area. Swallowing has increased with pt c/o coughing less than once a week, MBS showed no aspiration but oral incoordination of the swallow. Pt demonstrated unusual oral phase swallowing movements during the MBS on this date.

RECOMMENDATIONS:
1. Skilled ST to improve functional speech, cognitive/linguistic, and swallowing skills.
2. PT consult for continued fall risk – pt reports this is in progress.

FREQ/DURATION: 1 times a week for 6 weeks, will assess for the need for further therapy at that time.

CERTIFICATION DATE FROM: 2/1/19

CERTIFICATION DATE TO: 5/1/19

Electronically signed by Carolyn K Lyon, CCC-SLP at 2/1/2019 10:00 AM

Printed on 4/24/19  1:47 PM

Page 18

**Lincoln/Bunch 0697**

06/04/2019  16:30    7196350966                                                    PAGE 67/99

Penrose Hospital                              Bunch, Mark Bryan
2222 N Nevada Ave                             MRN: CEUL0963303, DOB:        Sex: M
COLORADO SPRINGS CO 80907                     Visit date: 1/23/2019

### 01/23/2019 - Treatment in Penrose Hospital Outpatient Rehabilitation Services

Notes

Progress Notes

Carolyn K Lyon, CCC-SLP at 1/23/2019  2:00 PM

 **Centura Health.**                Centura Health Outpatient Rehabilitation
                                                                Penrose Hospital
                                                                2222 N. Nevada Ave.
                                                          Colorado Springs, CO  80907
                                                                719-776-5200 (P)
                                                                719-776-5392 (F)

### Daily Speech Therapy Treatment

**General:**
Time Calculation
Start Time: 0200
Stop Time : 0240
Time Calculation (min): 40 min
Visit # 9
Re-Assessment due: **1/31/19**
Pain: 0/10

**Subjective:**

Pt arrived to the visit, alert and cooperative.  Stated his transportation provider had hired a driver, and he no longer has to take a cab.

**Objective:**

Pt was re-assessed for various speech and swallowing goals.
Pt educated re no straw. Pt ate soup last night without coughing, stated he coughs more when he's nervous, stressed or excited. SLP educated re swallowing precaution of not eating when distracted, and re-educated on swallowing anatomy, pt verbalized understanding.
Pt performed tongue ex's with mod cues for production, noted increased accuracy but pt still exhibited incoordination - overall acc was 60-70%.
Pt performed initial vowel VC production for easy onset voice - noted fluency increased to 60% for the words and pt required mod cues at first for easy onset and softer production of the final consonant.
Pt was given a phrase starting with the vowel words - 70% fluency with mod-max cues.
Memory tasks - recalling 6/7 numbers visual and 6/7 numbers (auditory) - 86% - goal met.
Memory tasks with a distractor - pt educated on the use of compensatory memory strategies - overall acc was 80% - goal met.

**Assessment:**

Printed on 4/24/19  1:47 PM                                                        Page 19

**Lincoln/Bunch 0698**

06/04/2019  16:30    7196350966                                            PAGE 68/99

Penrose Hospital                          Bunch, Mark Bryan
2222 N Nevada Ave                         MRN: CEUL0963303, DOB:        , Sex: M
COLORADO SPRINGS CO 80907                 Visit date: 1/23/2019
**01/23/2019 - Treatment in Penrose Hospital Outpatient Rehabilitation Services (continued)**
Notes (continued)

Pt met several cognitive goals this session for recall. Pt demonstrated increased speech fluency at the single and 2 syllable word level, speech is inconsistent overall. Pt was educated on SLP's re-assessment for continued therapy or not next week, has MBS on the same day, he verbalized understanding.
SHORT TERM GOALS:
1. Patient will complete speech fluency tasks with 70% accuracy. (60-70% at the word/phrase level for structured tasks - mod-max cues).
2. Patient will complete selective attention tasks with 90% accuracy.
3. Patient will complete moderately complex organization/problem solving tasks with 90% accuracy.
4. Patient will recall a series of 7 items (visual) with 80% accuracy. (GOAL MET).
5. Patient will recall a series of 7 items (auditory) with 80% accuracy. (GOAL MET).
6. Patient will complete working memory tasks with 80% accuracy.
7. Patient will complete memory tasks with a distractor with 80% accuracy (GOAL MET).
8. Patient will complete oral motor exercise home program with min assist. (currently mod assist).
9. Pt will use speech fluency techniques with min-mod assist at the phrase/sentence level with 70% acc.

**Plan (Next Session):**

Continue ST plan of care for speech, cognition and swallowing, advance complexity of skilled therapy tasks as pt tolerates. Consider d/c since SLP has concerns about pt's questionable effort in sessions and overall slow speech progress.

Electronically signed by Carolyn K Lyon, CCC-SLP at 1/23/2019  5:09 PM

Printed on 4/24/19  1:47 PM                                                Page 20

**Lincoln/Bunch 0699**

06/04/2019   16:30    7196350966                                    PAGE 69/99

Penrose Hospital                            Bunch, Mark Bryan
2222 N Nevada Ave                           MRN: CEUL0963303, DOB:        Sex: M
COLORADO SPRINGS CO 80907                   Visit date: 1/16/2019

01/16/2019 - Treatment in Penrose Hospital Outpatient Rehabilitation Services

### Notes

#### Progress Notes

Carolyn K Lyon, CCC-SLP at 1/16/2019 2:00 PM

 **Centura Health.**

Centura Health Outpatient Rehabilitation
Penrose Hospital
2222 N. Nevada Ave.
Colorado Springs, CO 80907
719-776-5200 (P)
719-776-5392 (F)

### Daily Speech Therapy Treatment

**General:**
Time Calculation
Start Time: 0200
Stop Time : 0240
Time Calculation (min): 40 min
Visit # 8
Re-Assessment due: **1/31/19**
Pain: 5/10 headache

**Subjective:**

Pt arrived to the visit, alert and cooperative.

**Objective:**

Pt reported that he has had to cancel so many sessions due to the fact that his worker's Comp carrier does not have a driver to take him from Canon City to therapy, and he can only come for once a week until Feb due to the fact that they are having to hire a driver. SLP educated pt on MBS and need to complete to assess pt's swallow to direct possible therapy efforts, pt asked SLP to assist with scheduling due to his speech deficits. SLP called Central Scheduling and scheduled for 1/30/19 at 1 pm, gave handout with times to pt, he verbalized understanding. Pt to be re-assessed for the need for further ST for speech/dysphagia based on speech progress at that time, pt was made aware.
Pt assessed with po intake since he stated he is still having problems at times, although he has stated it has improved in the last month or so. Pt now states that he used to cough at every meal, now 1-2 times per day on primarily particulate foods and "tart foods".
Solid/graham cracker - 3 trials, pt reported feeling of small amount of residual localized to the vocal folds, 2-3 swallows noted per bite.. Noted increased effort to initiate the swallow for the 3rd trial. Pt instructed
Peaches - 1 trial, pt choked immediately after the swallow, coughed for several minutes. Pt stated "It's too tart."
Pears - 2 trials , pt took 2 attempts to clear on 1st atttempt, took 3 swallows to clear the second attempt.
Applesauce - pt instructed to use the effortful swallow and noted immediate choking during the swallow. On second attempt, pt took only 2 attempts to clear.
Pt instructed not to use the effortful swallow with any po intake, but to use as an exercise with 2 sets of 5, 2-3 times per day or more if tolerated.
For speech tasks/easy onset, pt demonstrated the same voicing/strained onset/dysfluency as was noted in the previous 1-2 sessions.

Printed on 4/24/19  1:47 PM                                         Page 21

**Lincoln/Bunch 0700**

06/04/2019  16:30    7196350966                                        PAGE 70/99

Penrose Hospital                              Bunch, Mark Bryan
2222 N Nevada Ave                             MRN: CEUL0963303, DOB:          Sex: M
COLORADO SPRINGS CO 80907                     Visit date: 1/16/2019

### 01/16/2019 - Treatment in Penrose Hospital Outpatient Rehabilitation Services (continued)

Notes (continued)

**Assessment:**

Pt demonstrated s/s of aspiration this session that were inconsistent with previous reports of his swallowing improved.
SHORT TERM GOALS:
1. Patient will complete speech fluency tasks with 70% accuracy.
2. Patient will complete selective attention tasks with 90% accuracy.
3. Patient will complete moderately complex organization/problem solving tasks with 90% accuracy.
4. Patient will recall a series of 7 items (visual) with 80% accuracy.
5. Patient will recall a series of 7 items (auditory) with 80% accuracy.
6. Patient will complete working memory tasks with 80% accuracy.
7. Patient will complete memory tasks with a distractor with 80% accuracy.
8. Patient will complete oral motor exercise home program with min assist.
9. Pt will use speech fluency techniques with min-mod assist at the phrase/sentence level with 70% acc.

**Plan (Next Session):**

Continue ST plan of care for speech and swallowing, advance complexity of skilled therapy tasks as pt tolerates.
Consider d/c at a future date considering pt's MBS results and speech progress.

Electronically signed by Carolyn K Lyon, CCC-SLP at 1/16/2019  5:46 PM

Printed on 4/24/19  1:47 PM                                            Page 22

**Lincoln/Bunch 0701**

06/04/2019  16:30    7196350966                                          PAGE 71/99

Penrose Hospital                          Bunch, Mark Bryan
2222 N Nevada Ave                         MRN: CEU:0963303, DOB:          , Sex: M
COLORADO SPRINGS CO 80907                 Visit date: 1/2/2019

**01/02/2019 - Treatment in Penrose Hospital Outpatient Rehabilitation Services**

Notes

Progress Notes

Carolyn K Lyon, CCC-SLP at 1/2/2019 12:40 PM

 Centura Health.

Centura Health Outpatient Rehabilitation
Penrose Hospital
2222 N. Nevada Ave.
Colorado Springs, CO  80907
719-776-5200 (P)
719-776-5392 (F)

### Daily Speech Therapy Treatment

**General:**
Time Calculation
Start Time: 1241
Stop Time : 1320
Time Calculation (min): 39 min
Visit # 7
Re-Assessment due: **1/31/19**
Pain: 0/10

**Subjective:**

Pt arrived to the visit, alert and cooperative.

**Objective:**

Speech relaxation and breath support exercises due to spastic voice/apraxia which is affecting pt's fluency - tongue jaw release for sigh X 10, vowels with 66% for 5 rep's each, tended to tense on /u/. Pt completed initial vowel words tongue jaw release for first attempt and with less tongue release for 2nd attempt with marked increase in carryover of easy onset/breath support. Pt had near complete air stoppage for /k/ and /s/, SLP gave list of CVC words with /k/, /g/, and /s/ for practice, pt verbalized understanding of instructions. Pt also instructed to practice singing with rationale. Pt stated he will call to schedule MBS.
Pt recalled a series of 7 items (visual) with 80% accuracy - goal met.

**Assessment:**

Pt is carrying over speech techniques and breath support exercises with inconsistent results with his speech, although overall improvement is noted. Pt met his STG for visual recall and reports increased cognitive-communication skills.
SHORT TERM GOALS:
1.  Patient will complete speech fluency tasks with 70% accuracy.
2.  Patient will complete selective attention tasks with 90% accuracy.
3.  Patient will complete moderately complex organization/problem solving tasks with 90% accuracy.
4.  Patient will recall a series of 7 items (visual) with 80% accuracy.
5.  Patient will recall a series of 7 items (auditory) with 80% accuracy.
6.  Patient will complete working memory tasks with 80% accuracy.

Printed on 4/24/19  1:47 PM                                              Page 23

**Lincoln/Bunch 0702**

06/04/2019   16:30    7196350966

Penrose Hospital                              Bunch, Mark Bryan
2222 N Nevada Ave                            MRN: CBUL0963303, DOB:        Sex: M
COLORADO SPRINGS CO 80907                    Visit date: 1/2/2019

### 01/02/2019 – Treatment in Penrose Hospital Outpatient Rehabilitation Services (continued)

**Notes (continued)**

7. Patient will complete memory tasks with a distractor with 80% accuracy.
8. Patient will complete oral motor exercise home program with min assist.
9. Pt will use speech fluency techniques with min-mod assist at the phrase/sentence level with 70% acc.

**Plan (Next Session):**

Continue ST plan of care for speech, swallowing and cognitive-communication skills, advance complexity of skilled therapy tasks as pt tolerates.

Electronically signed by Carolyn K Lyon, CCC-SLP at 1/2/2019  3:48 PM

Printed on 4/24/19  1:47 PM

**Lincoln/Bunch 0703**

06/04/2019   16:30    7196350966

Penrose Hospital                          Bunch, Mark Bryan
2222 N Nevada Ave                         MRN: CSLL0963303, DOB:          Sex: M
COLORADO SPRINGS CO 80907                 Visit date: 12/26/2018

12/26/2018 - Treatment in Penrose Hospital Outpatient Rehabilitation Services

Notes

Progress Notes

Carolyn K Lyon, CCC-SLP at 12/26/2018 12:40 PM

## Daily Speech Therapy Treatment

**General:**
Time Calculation
Start Time: 1240
Stop Time : 1320
Time Calculation (min): 40 min
Visit # 6
Re-Assessment due: 1/31/19
Pain: 0/10

**Subjective:**

Pt arrived to the visit, alert and cooperative, had strep throat last week and missed ST sessions.

**Objective:**

Pt completed speech/voicing/fluency tasks for tongue/jaw release with easy onset for sigh, falling pitch sigh,  rising pitch sigh, and vowels. Pt required mod-max cues for easy onset to decrease vocal spasticity, achieved approximately 50% acc with markedly less vocal spasticity and dysfluency for vowels and /m/ words. Pt given home practice sheet and verbalized understanding of instructions.
SLP educated re consideration of decreasing particulate foods, using lingual sweep and small bites to control any oral residual (pt c/o having small pieces in his mouth after swallowing). SLP re-educated re pt needing to reschedule his MBS and gave # to Central Scheduling, pt verbalized understanding. SLP discussed pt keeping to twice a week ST schedule due to many missed sessions in order to increase his progress, and he was in agreement.

**Assessment:**

Pt demonstrated increased fluency with use of tongue/jaw release at this session, still having "coughing spells" at times, needs to be rescheduled for his MBS.
SHORT TERM GOALS:
1.   Patient will complete speech fluency tasks with 70% accuracy.
2.   Patient will complete selective attention tasks with 90% accuracy.
3.   Patient will complete moderately complex organization/problem solving tasks with 90% accuracy.
4.   Patient will recall a series of 7 items (visual) with 80% accuracy.
5.   Patient will recall a series of 7 items (auditory) with 80% accuracy.
6.   Patient will complete working memory tasks with 80% accuracy.
7.   Patient will complete memory tasks with a distractor with 80% accuracy.
8.   Patient will complete oral motor exercise home program with min assist.
9. Pt will use speech fluency techniques with min-mod assist at the phrase/sentence level with 70% acc.

**Plan (Next Session):**

Printed on 4/24/19  1:47 PM

**Lincoln/Bunch 0704**

06/04/2019   16:30     7196350966                                                    PAGE 74/99

Penrose Hospital                                    Bunch, Mark Bryan
2222 N Nevada Ave                                   MRN: CEUL0963303, DOB:         Sex: M
COLORADO SPRINGS CO 80907                           Visit date: 12/26/2018

**12/26/2018 - Treatment in Penrose Hospital Outpatient Rehabilitation Services (continued)**

Notes (continued)

Continue ST plan of care for swallowing, speech and cognitive-communication deficits, advance complexity levels as pt tolerates.

Electronically signed by Carolyn K Lyon, CCC-SLP at 12/26/2018  8:36 AM

**Lincoln/Bunch 0705**

06/04/2019  16:30    7196350966                                                PAGE 75/99

Penrose Hospital                          Bunch, Mark Bryan
2222 N Nevada Ave                         MRN: CEUL0963303, DOB:        , Sex: M
COLORADO SPRINGS CO 80907                 Visit date: 12/12/2018

**12/12/2018 - Treatment in Penrose Hospital Outpatient Rehabilitation Services**

Notes

Progress Notes

Carolyn K Lyon, CCC-SLP at 12/12/2018 12:40 PM

 **Centura Health**

Centura Health Outpatient Rehabilitation
Penrose Hospital
2222 N. Nevada Ave.
Colorado Springs, CO  80907
719-776-5200 (P)
719-776-5392 (F)

### Daily Speech Therapy Treatment

**General:**
Time Calculation
Start Time: 1245
Stop Time : 1320
Time Calculation (min): 35 min
Visit # 5
Re-Assessment due: **1/31/19**
Pain: 5/10 headhcache

**Subjective:**

Pt has been out of town for the past several weeks due to the accidental death of his brother, missed his MBS while out for the funeral.

**Objective:**

Pt stated he has problems with solid foods sticking, with choking on particulate foods and thin liquids. Pt choked on cornbread and steak while out of town. SLP educated at length re the anatomy and physiology of normal and abnormal swallowing using multiple videos from the Dysphagia app, pt verbalized understanding re aspiration and penetration, as well as risks/consequences. Pt re-educated re small bites/sips, no consecutive swallows, no straws, no particulate foods.  Pt was educated re 2 second hold for thin liquids to prevent possible premature spillage with thin liquids until MBS can determine pt's swallowing status, he verbalized understanding. Pt speech was less fluent this session with decreased breath support until the end of the session, when he appeared to be more relaxed.

**Assessment:**

Pt is increasing his understanding of his dysphagia disease process, speech was less fluent this session.
SHORT TERM GOALS:
1. Patient will complete speech fluency tasks with 70% accuracy.
2. Patient will complete selective attention tasks with 90% accuracy.
3. Patient will complete moderately complex organization/problem solving tasks with 90% accuracy.
4. Patient will recall a series of 7 items (visual) with 80% accuracy.
5. Patient will recall a series of 7 items (auditory) with 80% accuracy.

Printed on 4/24/19  1:47 PM                                                    Page 27

**Lincoln/Bunch 0706**

06/04/2019  16:30    7196350966

Penrose Hospital                                    Bunch, Mark Bryan
2222 N Nevada Ave                                  MRN: CEUL0963303, DOB:        Sex: M
COLORADO SPRINGS CO 80907                          Visit date: 12/12/2018

### 12/12/2018 - Treatment in Penrose Hospital Outpatient Rehabilitation Services (continued)

Notes (continued)

6.  Patient will complete working memory tasks with 80% accuracy.
7.  Patient will complete memory tasks with a distractor with 80% accuracy.
8.  Patient will complete oral motor exercise home program with min assist.
9. Pt will use speech fluency techniques with min-mod assist at the phrase/sentence level with 70% acc.

Plan (Next Session):

Continue ST plan of care for speech, cognitive-communication skills and swallowing, advance complexity of skilled therapy tasks as pt tolerates. Pt to reschedule MBS study.

Electronically signed by Carolyn K Lyon, CCC-SLP at 12/12/2018  3:58 PM

**Lincoln/Bunch 0707**

06/04/2019   16:30    7196350966                                                    PAGE 77/99

Penrose Hospital                          Bunch, Mark Bryan
2222 N Nevada Ave                         MRN: CEUL0963303, DOB:           Sex: M
COLORADO SPRINGS CO 80907                 Visit date: 11/21/2018

### 11/21/2018 - Treatment in Penrose Hospital Outpatient Rehabilitation Services

**Notes**

**Progress Notes**

Carolyn K Lyon, CCC-SLP at 11/21/2018 12:40 PM

 **Centura Health**

Centura Health Outpatient Rehabilitation
Penrose Hospital
2222 N. Nevada Ave.
Colorado Springs, CO  80907
719-776-5200 (P)
719-776-5392 (F)

### Daily Speech Therapy Treatment

**General:**

Time Calculation
Start Time: 1240
Stop Time : 1320
Time Calculation (min): 40 min
Visit # 4
Re-Assessment due: 1/31/19
Pain: 0/10

**Subjective:**

Pt arrived to the visit, alert and cooperative.

**Objective:**

Pt completed ex's for blowing on a Kleenex for breath control X5 with  cues, increased breath control and less vocal spasms noted for last 2 rep's, markedly with mod-max cues at first, max at end of the tasks, overall acc was 80%. Pt given 10 rep's of 3-4 syllable phrase drills with the use of a breath in between words and the use of a sing-asong intonation (Melodic Intonation Therapy for increasing fluency). Pt required mod cues for both breath support and use of intonation, noted increased breath support (60%) and fluency (40-50% for the words spoken). Pt completed short sentence drills with a breath every 2-3 words, noted less tension and dysfluency with difficulty using intonation. Pt completed automatic sentence completion with 50% fluency.  Pt exhibited selective attention to tasks with 80% accuracy in the session. Pt recalled a series of 4 items with 3/4 acc with difficulty in repeat them due to speech fluency problems. SLP instructed re use of humming and singing as home practice ex's.

**Assessment:**

Pt is gradually increasing his speech fluency and is practicing his HEP outside of therapy session.
SHORT TERM GOALS:
1.  Patient will complete speech fluency tasks with 70% accuracy.
2.  Patient will complete selective attention tasks with 90% accuracy.
3.  Patient will complete moderately complex organization/problem solving tasks with 90% accuracy.
4.  Patient will recall a series of 7 items (visual) with 80% accuracy.
5.  Patient will recall a series of 7 items (auditory) with 80% accuracy.

Printed on 4/24/19  1:47 PM                                              Page 29

**Lincoln/Bunch 0708**

06/04/2019  16:30    7196350966

Penrose Hospital                                           Bunch, Mark Bryan
2222 N Nevada Ave                                          MRN: CEUL0963303, DOB:        Sex: M
COLORADO SPRINGS CO 80907                                 Visit date: 11/21/2018

### 11/21/2018 - Treatment in Penrose Hospital Outpatient Rehabilitation Services (continued)

**Notes (continued)**

6. Patient will complete working memory tasks with 80% accuracy.
7. Patient will complete memory tasks with a distractor with 80% accuracy.
8. Patient will complete oral motor exercise home program with min assist.
9. Pt will use speech fluency techniques with min-mod assist at the phrase/sentence level with 70% acc.

**Plan (Next Session):**

Continue twice a week ST for speech and cognitive functioning.

Electronically signed by Carolyn K Lyon, CCC-SLP at 12/4/2018  8:19 AM

**Lincoln/Bunch 0709**

Penrose Hospital                          Bunch, Mark Bryan
2222 N Nevada Ave                         MRN: CEUL0963303, DOB:          Sex: M
COLORADO SPRINGS CO 80907                 Visit date: 11/15/2018

**11/15/2018 - Treatment in Penrose Hospital Outpatient Rehabilitation Services**

Notes

Progress Notes

Carolyn K Lyon, CCC-SLP at 11/15/2018 11:00 AM

 **Centura Health**

Centura Health Outpatient Rehabilitation
Penrose Hospital
2222 N. Nevada Ave.
Colorado Springs, CO  80907
719-776-5200 (P)
719-776-5392 (F)

**Daily Speech Therapy Treatment**

**General:**
Time Calculation
Start Time: 1100
Stop Time : 1140
Time Calculation (min): 40 min
Visit # 3
Re-Assessment due: 1/31/19
Pain: 2/10 headache

**Subjective:**
Pt arrived to the visit with transportation, pt stated "I think that my speech is better, although I still stutter more when I am nervous".

**Objective:**

Pt completed ex's for blowing on a Kleenex for breath control X 6 with mod-max cues, increased breath control and less vocal spasms noted for last 2 rep's, had spastic lip closure unless cued.  Pt completed 10 rep's each of tongue out/jaw released sigh, humming, vowels for reducing significant vocal tension/spasm and increasing fluency with mod-max cues at first, max at end of the tasks, overall acc was 40%. Pt given 10 rep's of 3-4 syllable phrase drills with the use of a breath in between words and the use of a sing-song intonation (Melodic Intonation Therapy for increasing fluency). Pt required max cues for both breath support and use of intonation, but was able to produce more relaxed vocal control and breath support at then end of the session. Pt noted to have no spastic vocal pattern for automatic functions such as laughing X2. Pt counted 1-10 with breath in between numbers, 40% fluent/ 20% with relaxed voicing with max cues. Pt exhibited selective attention to tasks with 70% accuracy in the session.

**Assessment:**

Pt completed tasks with less cues and more vocal control than last session, still needs considerable cue for control of breath support/onset of voicing.

SHORT TERM GOALS:

Printed on 4/24/19  1:47 PM                                          Page 31

**Lincoln/Bunch 0710**

06/04/2019   16:30    7196350966                                          PAGE 80/99

Penrose Hospital                          Bunch, Mark Bryan
2222 N Nevada Ave                         MRN: CEUL0963303, DOB:          Sex: M
COLORADO SPRINGS CO 80907                 Visit date: 11/15/2018

### 11/15/2018 - Treatment in Penrose Hospital Outpatient Rehabilitation Services (continued)

Notes (continued)

1. Patient will complete speech fluency tasks with 70% accuracy.
2. Patient will complete selective attention tasks with 90% accuracy.
3. Patient will complete moderately complex organization/problem solving tasks with 90% accuracy.
4. Patient will recall a series of 7 items (visual) with 80% accuracy.
5. Patient will recall a series of 7 items (auditory) with 80% accuracy.
6. Patient will complete working memory tasks with 80% accuracy.
7. Patient will complete memory tasks with a distractor with 80% accuracy.
8. Patient will complete oral motor exercise home program with min assist.
9. Pt will use speech fluency techniques with min-mod assist at the phrase/sentence level with 70% acc.

**Plan (Next Session):**

Continue ST plan of care for speech and cognitive-linguistic skills - check on carryover of HEP.

Electronically signed by Carolyn K Lyon, CCC-SLP at 12/4/2018  8:19 AM

Printed on 4/24/19  1:47 PM                                               Page 32

**Lincoln/Bunch 0711**

06/04/2019  16:30    7196350966                                         PAGE 81/99

Penrose Hospital                            Bunch, Mark Bryan
2222 N Nevada Ave                           MRN: CEUL0963303, DOB:           Sex: M
COLORADO SPRINGS CO 80907                   Visit date: 11/9/2018

**11/09/2018 - Treatment in Penrose Hospital Outpatient Rehabilitation Services**

Notes

Progress Notes

Carolyn K Lyon, CCC-SLP at 11/9/2018 10:20 AM

 **Centura Health.**

Centura Health Outpatient Rehabilitation
Penrose Hospital
2222 N. Nevada Ave.
Colorado Springs, CO  80907
719-776-5200 (P)
719-776-5392 (F)

### Daily Speech Therapy Treatment

**General:**
Time Calculation
Start Time: 1020
Stop Time : 1100
Time Calculation (min): 40 min
Visit # 2
Pain: 0/10

**Subjective:**

Pt arrived at the visit with transportation assist, flat affect.

**Objective:**

SLP reviewed deficit areas noted on the RBANS, and re-educated re goals, pt agreeable. MD order has been obtained for MBS, awaiting scheduling. Pt instructed to take small sips for thin liquids due to pt report of choking at times, he verbalized understanding. Noted significant vocal spasms in pt's connected speech. Pt completed ex's for blowing on a Kleenex for breath control X 8 with max cues, increased breath control and less vocal spasms noted for last 3 rep's. Pt completed 5 rep's each of tongue out/jaw released sigh, humming, vowels, and /m/ words for reducing significant vocal tension/spasm and increasing fluency with max cues at first, mod-max at end of the tasks, overall acc was 30%. Pt educated re breath support and of his habit of releasing most of his breath before initiating a word, then tensing after the word due to lack of breath control. SLP referred to those episodes as a "false start", and cued for pt to take a full breath in between words for exercise of counting to 5, pt required max cues and achieved appropriate timing of breath with 40% acc for the 5 words. It was noted that when the pt better approximated adequate breath control at the start of the word, the word was more fluent and the voicing was uninterrupted by spasms. Pt sang a few lines of "happy birthday" in unison with the SLP with approximately 30% fluency and accuracy.  The pt was given a written handout with home exercises (5 rep's) of the tasks covered in the session, verbalized understanding of the tasks and to d/c to another time if marked dysfluency occurred. Pt selectively attended to the task with 40% acc.   Pt verbalized being pleased with his responses in the session.

SHORT TERM GOALS:
1. Patient will complete speech fluency tasks with 70% accuracy.
2. Patient will complete selective attention tasks with 90% accuracy.
3. Patient will complete moderately complex organization/problem solving tasks with 90% accuracy.
4. Patient will recall a series of 7 items (visual) with 80% accuracy.

Printed on 4/24/19  1:47 PM                                              Page 33

**Lincoln/Bunch 0712**

Penrose Hospital                                   Bunch, Mark Bryan
2222 N Nevada Ave                                  MRN: CEUL0963303, DOB:      , Sex: M
COLORADO SPRINGS CO 80907                          Visit date: 11/9/2018

**11/09/2018 - Treatment in Penrose Hospital Outpatient Rehabilitation Services (continued)**

Notes (continued)

5. Patient will recall a series of 7 items (auditory) with 80% accuracy.
6. Patient will complete working memory tasks with 80% accuracy.
7. Patient will complete memory tasks with a distractor with 80% accuracy.
8. Patient will complete oral motor exercise home program with min assist.
9. Pt will use speech fluency techniques with min-mod assist at the phrase/sentence level with 70% acc.

**Assessment:**

Pt is progressing toward more fluent speech with adequate voice control, increased attention span noted in the session, waiting for MBS to be scheduled.

**Plan (Next Session):**

Continue ST POC for speech, cognitive-communication, and swallowing skills, check on pt's compliance and carryover with home program exercises.

Electronically signed by Carolyn K Lyon, CCC-SLP at 12/4/2018  8:20 AM

**Lincoln/Bunch 0713**

Penrose Hospital                                Bunch, Mark Bryan
2222 N Nevada Ave                               MRN: CEUL0983303, DOB:              Sex: M
COLORADO SPRINGS CO 80907                       Visit date. 10/31/2018

**10/31/2018 - Evaluation in Penrose Hospital Outpatient Rehabilitation Services**

**Notes**

**Progress Notes**

Carolyn K Lyon, CCC-SLP at 10/31/2018 10:40 AM

 **Centura Health.**

Centura Health Outpatient Rehabilitation
Penrose Hospital
2222 N. Nevada Ave.
Colorado Springs, CO  80907
719-776-5200 (P)
719-776-5392 (F)

**Insurance requires a physician signature on this plan of care. Please sign and fax back to 719-776-5392 at your earliest convenience.**

> I CERTIFY THE NEED FOR THESE SERVICES FURNISHED UNDER THIS PLAN OF TREATMENT AND WHILE UNDER MY CARE
> Based upon review of the patient's progress and continued therapy plan, it is my medical opinion that **Mark Bryan Bunch** should continue speech therapy at Penrose Hospital Outpatient Rehabilitation Services:
>
> Signed: _____
>
> Date:_____
>
> Julia Brinley, DO

## COGNITIVE/LINGUISTIC EVALUATION

Time Calculation
Start Time: 1140
Stop Time : 1330
Time Calculation (min): 110 min

ONSET DATE: 2/13/18
PRIMARY DIAGNOSIS: Post concussive syndrome
TREATMENT DIAGNOSIS: cognitive-communication deficits, dysarthria
PAIN: 2 ,mild headache
HAVE YOU EXPERIENCED ANY NEGLECT/ABUSE IN THE LAST YEAR: no

INITIAL ASSESSMENT: Patient is a 55 year old male referred for cognitive evaluation/treatment. Pt reports he arrived with assist of a transportation company. Noted flat affect and reduced eye contact during the session.

PMHX: obtained from the patient/medical records includes but may not be limited to the following:
Past Medical History:
Diagnosis                                                                                    Date
- Allergy
- Bronchitis
- Bunion
  *Left foot*

**Lincoln/Bunch 0714**

06/04/2019  16:30    7196350966                                                     PAGE 84/99

Penrose Hospital                                    Bunch, Merle Bryan
2222 N Nevada Ave                                   MRN: CEUL0963303, DOB:        Sex: M
COLORADO SPRINGS CO 80907                           Visit date: 10/31/2018

**10/31/2018 - Evaluation in Penrose Hospital Outpatient Rehabilitation Services (continued)**

Notes (continued)

- Pneumonia
  *12 yrs ago*
- Umbilical hernia

PLOF: Pt was independent in all areas prior to MVA, was working as a sales rep for a communications company at the time of the MVA.

CLOF: Pt has pronounced deficits in cognitive function, speech, and visual spatial skills. Pt requires assist to drive, pay bills, and has significant residual balance problems. Pt displayed difficulty in walking to the exam room and needed manual assist, is at fall risk due to balance and visual-spatial deficits. Deficits are affecting the pt's ability to work.

PRIOR TREATMENT: Pt reports he has not had any speech therapy sessions since the MVA, stating "they never got approved until now."

NEUROPSYCHOLOGICAL EVALUATION: review per Dr Brinley's note indicated post concussive recovery with frontal lobe executive function deficits "with mention of symptom validity testing concerning for intentional lack of effort."

ASSESSMENT: Cognitive skills were assessed using the Repeatable Battery for the Assessment of Neuropsychological Status (Rbans) Form D.

RBANS: Scores are as follows:

IMMEDIATE MEMORY
*Index score: 69
*Range: Extremely Low

VISUALSPATIAL/CONSTRUCTIONAL
*Index score: 64
*Range: Extremely Low

LANGUAGE
*Index score:79
*Range: Borderline

ATTENTION
*Index score: 64
*Range: Extremely Low

DELAYED MEMORY
*Index score: 56
*Range: Extremely Low

SUM OF INDEX SCORE: 332
TOTAL SCALE: 57
PERCENTILE RANK: 0.2

Classification in order of severity: very superior, superior, high average, average, low average, borderline, extremely low.

Printed on 4/24/19  1:47 PM                                                          Page 36

**Lincoln/Bunch 0715**

Penrose Hospital                                         Bunch, Mark Bryan
2222 N Nevada Ave                                       MRN: CEUL0963303, DOB:        Sex: M
COLORADO SPRINGS CO 80907                               Visit date: 10/31/2018

### 10/31/2018 - Evaluation in Penrose Hospital Outpatient Rehabilitation Services (continued)

**Notes (continued)**

RBANS SUMMARY: Results of the RBANS indicate overall classification of performance in the Extremely Low **range,** placing patient at the **0.2 %ile for age matched peers.** Greatest deficits are noted in the domains of memory (immediate and delayed), attention, visuospatial/construction. Areas of strength include motivation and prior level of functioning, language was . It was noted that the pt's speech dysfluencies could have affected part of the test scores requiring verbal skills, and his visual deficits for other sections of the test measure. Deficits in the above areas may likely impacts pt's overall independence in activities of daily living.Pt would likely benefit from skilled speech therapy services to educate/instruct pt in the use of compensatory strategies and skilled cognitive therapy to improve independence in home , work and social related tasks.

PHYSICAL SYMPTOMS: patient reports frequent and severe headaches, fatigue, vision changes including double vision, wears prism glasses, sleep disturbances, balance issues, memory loss, noise sensitivity, light sensitivity.

BEHAVIORAL SYMPTOMS: patient reports changes in comprehension, decreased attention ,increased frustration, decreased eye contact with frequent side to side eye movement when attempting to focus. Pt has decreased eye contact and flat affect.

ORAL MOTOR: Oral mechanism eval demonstrated labial, lingual and palatal weakness noted, as well as decreased mouth opening, noted bilateral  palatal elevation. Dentition WFL

SWALLOWING: Pt assessed with graham cracker and water via cup edge. Pt drooled from the right side during the first sip via cup edge and displayed mastication delay, states he cannot "eat soups any more" due to his drooling. Pt reports choking with OJ via cup edge this am, reported choking occurs on thin liquids more than solids but is uncertain of frequency, "maybe a few times a week or more."

SPEECH: Pt demonstrated marked dysfluencies throughout the evaluation with prolongations on initial phonemes (particularly sibilants) and vowels, with markedly disordered prosody and scanning intonation with monotone voice.Speech rate was significantly slow, noted tension and facial grimace on several severely dysfluent production for initial sibilants.  Pt reported "This is not what I sounded like at all before."

PATIENT GOAL:" I need to work again and be able to talk better".

PROGNOSIS: fair for increased cognitive and communication skills.

PLAN:
*Cognitive/Linguistic Exercises.
*Compensatory Strategies
 Speech fluency tasks
 Oral motor exercises including lip/facial and lingual ex's
 Swallowing compensatory strategies and diet rec's
*HEP
*Patient/Family Education and Training

Patient agrees with goals and plan of care

SHORT TERM GOALS:
1.  Patient will complete speech fluency tasks with 70% accuracy.
2.  Patient will complete selective attention tasks with 90% accuracy.
3.  Patient will complete moderately complex organization/problem solving tasks with 90% accuracy.
4.  Patient will recall a series of 7 items (visual) with 80% accuracy.
5.  Patient will recall a series of 7 items (auditory) with 80% accuracy.
6.  Patient will complete working memory tasks with 80% accuracy.
7.  Patient will complete memory tasks with a distractor with 80% accuracy.

**Lincoln/Bunch 0716**

Penrose Hospital
2222 N Nevada Ave
COLORADO SPRINGS CO 80907

Bunch, Mark Bryan
MRN: CEUL0963303, DOB:          Sex: M
Visit date: 10/31/2018

### 10/31/2018 - Evaluation in Penrose Hospital Outpatient Rehabilitation Services (continued)

Notes (continued)

8.  Patient will complete oral motor exercise home program with min assist.
9. Pt will use speech fluency techniques with min-mod assist at the phrase/sentence level with 70% acc.

LONG TERM GOALS:
1.  Patient will improve functional cognitive/linguistic skills for home and in the community.
2.  Patient will use learned compensatory strategies for cognition at home and in the community with min-mod assist.
3. Patient improve functional speech skills at at home and in the community with mod assist.
4. Pt will tolerate the least restrictive diet without s/s of aspiration per MBS results.

SUMMARY: Pt exhibited significantly impaired cognitive-linguistic and speech skills, also displayed s/s of oropharyngeal dysphagia.

RECOMMENDATIONS:
1.  Skilled ST to improve functional cognitive/linguistic, speech and swallowing skills.
2.  PT consult for continued fall risk.
3.  MBS for evaluation of s/s of dysphagia and report of choking on thin liquids.

FREQ/DURATION:  2 times a week for 10-12 weeks

CERTIFICATION DATE FROM: 11/1/2018

CERTIFICATION DATE TO: 1/31/2019

70 minutes session 1:  Test administration
40 mintues session 2:  Test interpretation and report generation

Due to the complexity of the treatment diagnosis, certification dates are for 3 months to cover any missed appointments and to allow for a decrease in frequency of visits as patient nears discharge. Patient will be re-assessed regularly to ensure progress toward goals.  A report will be generated and sent if there are any changes in current POC.

Electronically signed by Julia Marie Brinley, DO at 3/11/2019  4:50 PM

**Lincoln/Bunch 0717**

06/04/2019  16:30    7196350966                                              PAGE 87/99

Dennis A. Helffenstein, Ph.D., C.R.C.                 COLORADO         Primary Office
Licensed Clinical Psychologist                                                      10 Inverness Dr. East
Clinical Director                                     Neuropsychological            Suite 215
                                                                                    Englewood, CO 80112
Diana M. Helffenstein, M.A., L.P.C.                   ASSOCIATES, P.C.              (720) 529-0190
Licensed Professional Counselor                                                     (720) 529-1099 Fax

Brian D. Reusink, M. Ed.                                                            Also serving clients in
Director of Operations                                                             Colorado Springs

## NEUROPSYCHOLOGICAL SCREENING

**NAME:**      Mark B. Bunch              **EVALUATION DATES:**    5/03/18 & 5/18/18

**DOB:**                                  **REPORT PREPARED:**     6/01/18

## THIS REPORT REPRESENTS EIGHT (8) HOURS OF SERVICE

### REFERRAL INFORMATION

Mr. Bunch was referred for a Neuropsychological Evaluation by his Workers' Compensation physician, Steven Olson, M.D.  Mr. Bunch was involved in a work-related motor vehicle accident on February 13, 2018 at 6:37 p.m.  On that date, he was the driver of a 2003 Ford Taurus and he was on Colorado Highway 50 in Pueblo, Colorado.  Mr. Bunch reported that he was exiting I-25 onto Highway 50 West.  This was a three-lane exit and he was in the middle lane.  Traffic in the left lane was stopped for traffic.  As he came down the ramp, a Jeep Cherokee that was in the left lane pulled into the middle lane, at which point the driver of the Jeep put his vehicle in reverse and started backing up quickly.  Mr. Bunch is unsure why the driver of the Jeep took this action.  The rear of the Jeep crashed into the front of Mr. Bunch's Ford Taurus.  Mr. Bunch estimated that he was traveling at approximately 20 miles per hour at the time of impact and that the Jeep Cherokee was traveling at approximately 15 to 20 miles per hour.  Mr. Bunch reported that his Ford Taurus did not have airbags, but he was wearing a seatbelt and shoulder harness.  The impact propelled him forward and he struck his forehead on the steering wheel.  Mr. Bunch showed me pictures of his forehead from following the accident.  His forehead was red and swollen just to the right of center high on his forehead.  To the best of his awareness, Mr. Bunch did not lose consciousness.  He does report altered consciousness post-accident in the form of being dazed and confused.  He reported feeling "woozy" post-accident.  In addition, he experienced problems with communication such as transposing words when he talked.  He texted his fiancee post-accident and he noted that his text made no sense.  He reports that this altered consciousness lasted for approximately four weeks.

**Lincoln/Bunch 0718**

NEUROPSYCHOLOGICAL SCREENING
Mark B. Bunch
Page 2


I had an opportunity to review the State of Colorado Traffic Accident Report dated February 13, 2018. That report confirms that Mr. Bunch was driving a 2003 Ford Taurus Sedan. The Police Officer's report confirms Mr. Bunch's description of the accident. That report clarifies that the driver of the Jeep reversed his vehicle as he felt he was too close to the vehicle in front of him and did not see Mr. Bunch's vehicle in his rearview mirror. The report indicated there was "slight" damage to the front of Mr. Bunch's Ford Taurus. The report also indicates there was "slight" damage to the rear of the Jeep Grand Cherokee.

Mr. Bunch reports that he recalls seeing the brake lights of the Grand Cherokee. He does recall the sound and force of the accident as well as hitting his head on the steering wheel, although he described this memory as "vague." While Mr. Bunch felt "stunned" immediately post-accident, when he looked up, he saw the driver of the Jeep Cherokee leaving the scene of the accident. He followed the Jeep Cherokee for two to three minutes. The driver of the Jeep Cherokee ultimately pulled into the parking lot of some frontage road stores. When Mr. Bunch exited his vehicle, he felt "woozy." At that point, he sat back down in his vehicle and called 911 as well as his immediate supervisor. He believes it took the Police approximately 20 to 30 minutes to arrive on scene. His immediate supervisor arrived on scene shortly after the Police Officer. He remained in his vehicle while talking with the Police Officer. When his immediate supervisor arrived, he helped Mr. Bunch move into his vehicle. At that point, he was still feeling woozy and was also experiencing dizziness. His immediate supervisor took him to Parkview Hospital Emergency Room where he was evaluated and released. The Emergency Room physician apparently diagnosed a concussion with closed head injury as well as cervical sprain. A CT scan of the brain performed in the Emergency Room was negative. Mr. Bunch reports minimal memory of the Emergency Room evaluation. He was experiencing nausea and apparently vomited on two occasions but has no memory for doing so. Following release from the Emergency Room, his immediate supervisor drove him to his home in Canyon City. He believes he slept most of the way home. He reported feeling quite fatigued and lethargic for several weeks post-accident. The nausea, vomiting, dizziness and lethargy would all be behavioral indicators of a concussion. His memories for the day leading up to the accident are quite vague.

Mr. Bunch continues to report a constellation of physical, fatigue, visual, cognitive and emotional coping deficits consistent with a post-concussive syndrome. Dr. Olson has referred him for a Neuropsychological Evaluation as a way to more fully evaluate his current neurocognitive and neurobehavioral status. I was also asked to assist with treatment planning. Mr. Bunch is represented by an attorney, Kenneth Shakeshaft, Esq.

## BACKGROUND INFORMATION

### Developmental History

Mr. Bunch was born via normal vaginal delivery without complications.   He met all developmental milestones within normal limits.

Lincoln/Bunch 0719

NEUROPSYCHOLOGICAL SCREENING
Mark B. Bunch
Page 3

## Educational History

Mr. Bunch graduated from Canyon City High School in May of 1982. He reported his Grade Point Average was 3.84. He went on to attend the University of Southern Colorado. There, he completed a B.S. Degree in Communications in May of 1986. His Grade Point Average was 3.55. He obtained a M.A. in Organizational Management from the University of Phoenix in 2000. His Grade Point Average was 3.95. He reports no learning disabilities, involvement with special education or ever having been held back a grade.

## Work History

From 1975 to 1979 Mr. Bunch worked as a cook at Mr. Ed's Restaurant. From 1979 to 1981, he was a cook at Sambo's Restaurant. From 1981 to 1988, he worked in advertising sales for the Canyon City Daily Record newspaper. From 1988 to 1995, he worked for the Colorado Department of Corrections as a Security Officer. From 1995 to 1997, he worked in advertising sales for Telecom Yellow Pages. From 1997 to 1999, he worked as Director of Marketing for Pueblo Diversified Industries. From 1999 to 2001, he worked as Director of Sales for Knowledge Alliance. From 2001 to 2007, he worked as a Sales Representative for Organo Pharmaceuticals. From 2007 to 2008, he was the Director of Marketing for HealthSouth. From 2008 to 2013, he was Director of Business Development for Evercare Hospice. From 2013 to 2015, he was a Sales Manager at Goodwill.

From January of 2016 to present, Mr. Bunch has worked as a Direct Sales Representative for Charter Communications. He described Charter Communications is a high-speed fiber-optic company similar to Comcast. He sells their products residentially, door-to-door. His marketing area is all of Southern Colorado. Mr. Bunch remains off work post-accident.

## Medical History

Mr. Bunch does not use alcohol and has never abused alcohol in anyway. He has never used or experimented with illicit drugs. He does not use tobacco or marijuana products. His medical history is notable for a tonsillectomy in 1970 and an umbilical hernia repair in May of 2017. He currently does not use any prescription medications. He uses over-the-counter pain medication such as Advil or Tylenol for his headaches and body pains.

His neuropsychological history is unremarkable, having never sustained any other traumatic brain injuries or concussions of any type, periods of unconsciousness for any reason, epilepsy, toxic exposure or neurological illnesses.

Mr. Bunch's family psychological history is unremarkable. His personal psychological history is also unremarkable. He has never previously worked with a mental health professional. To the best of his awareness, he has never been given a psychological or psychiatric diagnosis. He has never been prescribed a psychotropic medication.

**Lincoln/Bunch 0720**

**NEUROPSYCHOLOGICAL SCREENING**
**Mark B. Bunch**
**Page 4**

## CLINICAL INTERVIEW

When asked about his current physical status, Mr. Bunch reports ongoing neck, back, and shoulder pain. He would rate this pain as ranging from 5 to 7 on a 10-point scale with 10 being pain so severe that he would go to the Emergency Room if he experienced it. He reports that he is now receiving physical therapy and chiropractic care for his neck, back, and shoulder pain. He reports a constant headache, which he rated as 4 to 8 on a 10-point scale. He denied any significant problems with headaches pre-accident. He is also now occasionally experiencing what he refers to as "migraine" headaches. He would rate this headache pain as 9 on a 10-point pain scale. With these headaches, he notes a decrease in his peripheral vision as well as significant light sensitivity. He reports that with these headaches he has to lie down in a dark quiet room. He denied any migraine headaches pre-accident. Mr. Bunch reports ongoing dizziness and vertigo post-accident. These are both severe enough to negatively impact his balance. Triggers include closing his eyes. He gave the example that he cannot close his eyes when he takes a shower, therefore, he now takes baths. He also experiences episodes of disequilibrium. He is particularly aware of this problem when he reaches over to pick something up and then stands back up. He reports that his sense of smell is hypersensitive post-accident. He also note some change in his taste post-accident. By this, he is referring to the fact that there are some foods and drinks that he used to like, but no longer likes post-accident (e.g., Pepsi and pizza). He reports an ongoing problem with tinnitus bilaterally post-accident. He experiences tinnitus approximately 75% of the time. He denied any tinnitus pre-accident. He reports an ongoing problem with noise sensitivity (phonophobia) post-accident. When in a noisy or loud environment, this causes him to feel irritable, edgy, and anxious. He reports an ongoing problem with fatigue post-accident. He finds he becomes more tired more easily whether performing physical or cognitive activities. He would rate his current stamina and endurance as 25% of normal for him. He noted that he was a very high-energy individual pre-accident.

When asked about his current visual status, Mr. Bunch reports ongoing problems with both double vision and blurry vision post-accident. He reports that when he is tired the vision in his left eye will become extremely blurry as though he is looking through some sort of mesh. He also notes some decrease in his peripheral vision at those times. He reports ongoing sensitivity for fluorescent lights post-accident. He is aware that he bumps into things more frequently most notably on his left side. When driving or walking in a straight line, he tends to be veer center to the left side. He reports an ongoing problem both eye fatigue and depth perception post-accident. Based on his description, objects seem further away from him than they actually are. He notes that his eyes are slow to refocus, suggesting a possible problem with accommodation. He reports difficulties with visual scanning such as missing things that he is looking for and losing his place when reading.

When asked about his current cognitive status, Mr. Bunch reports ongoing problems with attention and concentration. He finds his mind wanders more easily and that he is more easily distractible. He reports events that most likely relate to cognitive set-loss. He reports problems with multi-tasking post-accident. He has difficulty alternating his attention between several tasks and he can no longer attend to several things simultaneously. He reports a significant

**Lincoln/Bunch 0721**

**NEUROPSYCHOLOGICAL SCREENING**
Mark B. Bunch
Page 5

problem with short-term memory post-accident. He finds he will more frequently forget his intentions, appointments, what is said to him, what he is doing if he is distracted, what he has done or said, and that he loses and misplaces things more frequently. He uses written notes, alarms, and post-it notes as a means of compensation for his memory problem. He reports that cueing will most often help his memory but occasionally it does not. He also reports that there are times when his memory for events or conversations is distinctly different from the memory of other people who have participated in the same event or conversation. Based on his description, this appears to relate to some memory contamination and/or confabulation. He reports a slight problem at times accessing remote memories but indicates that cueing typically will help his memory. He reports a number of language-based problems post-accident including difficulties with word finding, paraphasic errors in his speech, language comprehension, reading comprehension, and spelling. Mental math and math on paper are more difficult for him post-accident. Problem-solving and decision-making activities are more difficult for him post-accident. He feels his speed of information processing is slower than prior to the accident. He notes that it takes him longer to complete all tasks at this time. When writing, he will at times transpose letters and numbers. He reports an ongoing problem with spatial disorientation, finding that he will more frequently get disoriented and lost. He is aware that he makes more mistakes than usual and has difficulty catching his mistakes. He also reports problems with initiation post-accident.

When asked about his current emotional and psychological status, Mr. Bunch acknowledges feelings of depression post-accident. He would rate his depression as 3 to 4 on a 10-point scale with 10 being depression so severe that he would seriously consider suicide. Issues which he remains depressed and concerned about include his ongoing physical and cognitive deficits and the limitations that these impose. He is extremely distressed at being unable to work, as this is causing significant financial stressors for him. He is also acknowledging grief and loss associated with his various limitations. He made observation, "I just want myself back." He denied any depression pre-accident. At this point, Mr. Bunch is acknowledging social isolation which to some degree he attributes to his significant fatigue. He also avoids social situations due to cognitive and stimulus overload. He reports that if there is too much stimuli in the environment or if too much information is presented to him too rapidly, he will become overloaded and overwhelmed. At those times, he has to leave the environment. He also reports that post-accident he has difficulty filtering out background noise, suggesting an ongoing problem with his auditory gating mechanism. He denied any suicidal ideation. He does acknowledge some anhedonia, emotional lability (crying more frequently and easily), mood swings, reduced motivation, and being more emotional when tired. He reports difficulty getting to sleep at night secondary to rumination. He made the observation, "I just can't my brain off." He reports that once he gets to sleep he will wake almost hourly and at times has difficulty falling back to sleep. He reports some decreased appetite post-accident. He also reports a significant ongoing problem with irritability and reduced stress tolerance. He finds he becomes more easily upset and angry over small things that would not have bothered him previously.

Mr. Bunch acknowledges some generalized feelings of anxiety post-accident as well as more specific performance anxiety. At this point, he drives occasionally, but keeps his driving to a

**Lincoln/Bunch 0722**